UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| The Cadle Company, et al. | : | Case No.: 3:01cv531 (AVC) |
| v. | : | |
| Charles A. Flanagan, et al. | : | November 12, 2003 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO QUASH SUBPOENA,
MOTION FOR PROTECTIVE ORDER,
MOTION FOR SANCTIONS / LOST EARNINGS**

I. THE SUBPOENA IN A CIVIL CASE SHOULD BE QUASHED, THE UNDERSIGNED SHOULD BE GRANTED PROTECTION, AND/OR THE SUBPOENA IN A CIVIL CASE SHOULD OTHERWISE BE DETERMINED TO HAVE NO LEGAL AND BINDING EFFECT AS IT WAS NOT PROPERLY SERVED.

A. Statements of Fact:

1. On or about November 4, 2003, the Subpoena in a Civil Case, *The Cadle Company, et al. v. Charles A. Flanagan, et al.*, Case No.: 3:01CV00531(AVC), a copy of which is attached hereto as Exhibit A (the "Subpoena"), was brought to the abode of the undersigned by some person / means unknown to the undersigned.

2. On or about November 4, 2003, the Subpoena was brought to the undersigned by a family member of the undersigned.

3. To the knowledge of the undersigned, no person over the age of eighteen (18) made personal service / in hand service of the Subpoena on the undersigned and paid the fees required by the Federal Rules of Civil Procedure.

4. The undersigned did not attempt to evade service of the Subpoena.

B. <u>Law and Argument</u>:

"Before [a] court will order compliance with a subpoena, the party seeking such an order must establish that it has complied with the requirements of Fed.R.Civ.P. 45. A party may only be compelled to comply with a properly issued and served subpoena." *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 686 (U.S. Dist., 1995). A motion to quash and a motion for protective order are the appropriate responses to a subpoena which is invalid. F.R.Civ.P. 26(c) and F.R.Civ.P. 45(c)(3)(A).

Broad authority exists for the proposition that a subpoena duces tecum must be personally served on a non-party witness. *See Conanicut Investment Co. v. Coopers & Lybrand*, 126 F.R.D. 461 (E.D.N.Y. 1989); *see also* F.R.Civ.P. 45(b)(1); *FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 205 U.S. App. D.C. 172, 636 F.2d 1300, 1312-13 (D.C. Cir. 1980); 5A Jeremy C. Moore et al., *Moore's Federal Practice* ¶ 45.06[1], at 45-49 (1994); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2461 (1971 & Supp. 1994); F.R.Civ.P. 45(b)(1). Admittedly, the undersigned non-party eventually received the Subpoena, and although it may seem pointless to require the party issuing the Subpoena to actually have the Subpoena personally served given its receipt by the undersigned non-party, the Court is without authority, under the circumstances, to sanction an alternative form of service. *See* <u>Conanicut Investment Co., 126 F.R.D. at 462</u> (Fed.R.Civ.P. 45 does not provide a court with discretion to permit service of a subpoena other than by personal delivery).[1]

---

[1] It is unknown to the undersigned whether the authority signing the Subpoena even has authority, under the most recent scheduling order in this case, which appears to have been entered on or about August 25, 2003, to seek the discovery from any person under the Subpoena. The undersigned, a non-party, was unable to retrieve a copy of the referenced scheduling order from the PACER system so as to confirm whether the same does or does not permit the issuance of the Subpoena and the demands made therein. To the extent that the existing scheduling order

2

Courts which have not required personal service of a subpoena on a non-party have done so for reasons which appear highly distinguishable from the present case. *See, e.g., Cordius Trust v. Kummerfeld, et al.*, 45 Fed. R. Serv. 3d 1151 (S.D.N.Y. 2000)(court entered an order authorizing service of a subpoena on an non-party after repeated unsuccessful attempts to serve the subpoena personally upon the non-party; "The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service...."); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997)(Court relied, in part, on the fact that "under modern New York procedural law even so-called "personal service" can be made other than by delivery in hand....").[2]

In the instant case, the undersigned did not attempt to evade service. Further, the undersigned is aware of no Connecticut procedural law or rule which permits the service of a subpoena on a non-party other than by delivery in hand.

---

does not permit document production from third parties under F.R.Civ.P. 45, the undersigned moves for protection from the Subpoena.

If the existing scheduling order does permit the authority signing the Subpoena to require the reasonable production of documentation from non-parties, such authority may choose not so to do given the other objections raised herein, the time constraints of the existing scheduling order, or other factors. Accordingly, compliance with proper service requirements is not a superfluous act.

[2] The *King* Court seemed to be relying on N.Y.C.P.L.R. § 308 ("Personal service upon a natural person shall be made . . . by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . and by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served.") Clearly, in the instant case, we are not dealing with a summons at all, nor are we dealing with the additional safeguards provided under New York procedural law for summons.

3

C.  Relief Requested:

The Subpoena should be quashed and the undersigned should be protected from having to comply with any portion thereof.

II.  THE SUBPOENA IN A CIVIL CASE SHOULD BE QUASHED, THE UNDERSIGNED SHOULD BE GRANTED PROTECTION, AND/OR THE SUBPOENA IN A CIVIL CASE SHOULD OTHERWISE BE DETERMINED TO HAVE NO LEGAL AND BINDING EFFECT AS IT SUBJECTS THE UNDERSIGNED TO ANNOYANCE, OPPRESSION AND UNDUE BURDEN AND EXPENSE.

A.  Statements of Fact:

In addition to the other facts set forth in the Argument section of this Part II, the undersigned offers the following facts:

1.  The issuance of the Subpoena and production of the documents in response thereto can, to the knowledge of the undersigned, serve no useful purpose in furthering the defendants' cause other than to afford them with an opportunity to vex and harass the person(s) subject to the Subpoena;

2.  Compliance with the Subpoena would expose Paul M. Gaide, a sole practitioner, to great oppression, burden and expense in the form of lost earnings, copy charges, preparation of appropriate privilege logs, negative impact on client relations, negative impact on his health, etc.;

3.  As more fully set forth below, defendants Bainer now have two discovery requests out to Paul M. Gaide; one in this case, and one in *Paul M. Gaide v. Lisa G. Flanagan, et al.,* Connecticut Superior Court, Judicial District of New Britain, Docket No. CV-03-0521353-S. Upon belief, the issuance of the Subpoena in this case was made for tactical reasons to oppress, burden and harass Paul M. Gaide in connection with the state court case, and to otherwise obtain

4

information to which the Bainer defendants are not entitled under the Connecticut Rules of Court;

4. It does not appear to the undersigned that the Bainer defendants have a legitimate need for the documents from whoever they were subpoenaed. All of the Requests demand the production of information which is or should be in the possession of one or more of the defendants or plaintiffs to this RICO case, or is subject to privilege.[3] The Subpoena and the demands contained therein appear to be nothing more than oppressive and burdensome make-work for a non-party over whom tactical advantages in other litigation are sought;

5. The undersigned is not in a position to assess the relevance of the demands made in the Requests to the pending RICO case. The undersigned respectfully believes that it is the burden of the issuing authority to demonstrate: (i) the relevance of; and (ii) a substantial need for the demanded information which outweighs the rights of the non-party;

6. Portions of the Subpoena span a time frame which commenced almost seven (7) years ago. Other portions of the Subpoena provide no time limitation whatsoever (Request 3 is limited only by the persons and the type of document requested, which itself is dubious);

7. The documents demanded in the Subpoena are not identified with any particularity, but represent the grandest of fishing expeditions. The subscribing authority appears to be casting a size 28 Blue Wing Olive, on 8x tippet, using a 4 wt. rod, in the middle of Long Island Sound, with the desire of catching every fish, of whatever description, emerging from the

---

[3] For instance, each and every one of the Requests, but certainly Requests 1-3, could conceivably require a person subject to the Subpoena to produce billing records between such person and his/its client(s), which, if normal processes were followed, likely have the mental impressions of counsel set forth therein.

Connecticut River. Fishing enthusiasts would know that the rig set up is more conducive, for example, to discretely fishing the Farmington River for the occasional 8-20 inch trout;

    8.    The Subpoena was apparently issued on October 31, 2003:

        a.    apparently over two (2) months after the entry of the last Scheduling Order pertaining to discovery, which was apparently filed August 25, 2003;

        b.    apparently just twenty-eight (28) days before the discovery bar date set forth in the last Scheduling Order (assuming that the last Scheduling Order permits the issuance of the Subpoena at issue); and

        c.    over two and one-half (2 ½) years after the filing of the Complaint in this RICO case. Under such circumstances, and the circumstances more fully set forth below, it is preposterous to expect the subpoenaed person(s) to comply with the Subpoena by November 20, 2003, the date for compliance set forth on the Subpoena itself.

    9.    Paul M. Gaide has known for months that the defendants wanted to conduct discovery on him in this RICO case. Waiting to the last minute and then issuing a patently overly broad subpoena is oppressive, harassing, and unduly burdensome and expensive. As more fully set forth below, Paul M. Gaide is of the belief that the Bainer defendants herein, in conjunction with their counsel, waited to that point in time where oppression on Paul M. Gaide could be maximized before issuing the Subpoena.

    10.    Absolutely no attempt was made by the subscribing authority to the Subpoena to limit to non-privileged documents. Attorney Charron knew, or reasonably should have known that the Requests are so broad so as to require the subpoenaed person(s) to produce massive privilege logs.

6

B.  Law and Argument:

F.R.Civ.P. 45(c)(3)(A)(iv) permits this Court to quash the subpoena or otherwise protect the undersigned from "undue burden". The liberal nature of the Federal discovery rules does not justify discovery "which can serve no useful purpose in furthering the defendants cause other than to afford an opportunity to vex and harass an opposing litigant." *New Sanitary Towel Supply, Inc. v. Consolidated Laundries Corp.*, 24 F.R.D. 186, 189 (S.D.N.Y. 1959). If an opposing litigant is afforded such protection, it would seem that a non-party should be entitled to equal, if not greater, protection.

F.R.Civ.P. 26(c) is "a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983). "Upon motion by ... the person from whom discovery is sought, ... the court ... may make any order which justice requires to protect a ... person from annoyance, embarrassment, oppression, or undue burden or expense...." F.R.Civ.P. 26(c).

> While a subpoena duces tecum may be served on a nonparty, *see, e.g., United States v. Allen* (D.C. Wis. 1982) 578 F. Supp. 468, the burden of establishing its appropriateness is on the serving party. *See e.g. Concord Boat Corp. v. Brunswick Corp.* 1996 U.S. Dist. LEXIS 18012 (N.D.Ill. Dec. 4, 1996) 1996 WL 705260, at *2; David D. Siegal, Fed. R. Civ. P. 45: Practice Commentaries C45-21 "Complying with Subpoena Duces Tecum; Objections by Subpoenaed Party; Motion to Compel," at 386. Thus, Lucent [, the party serving the subpoena on the non-party,] bears the burden of proving that compliance with its document request would not impose "significant expense" or "undue burden" on Bellcore [the non-party], in violation of Fed. R. Civ. P. 45(c)(1) and (2)(B).

*Bell Atl. Corp. v. AT&T Corp. (in Re Bell Communs. Research)*, 1997 U.S. Dist. LEXIS 191, 4-5 (U.S. Dist., 1997)(copy attached hereto).

> Whether a subpoena imposes upon a witness an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." IBM, 83 F.R.D. at 104. In

7

addition, the status of a witness as a non-party to the underlying litigation "entitles [the witness] to consideration regarding expense and inconvenience." Fed.R.Civ.P. 45(c)(2)(B)("an order to compel production shall protect any person who is not a party from significant expense. . . ."); *Semtek*, 1996 WL 238538, at *2. The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court. Id. at *3; 9A Wright & Miller, § 2463.

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (U.S. Dist., 1996).

> Factors relevant to the assessment [as to whether a motion to quash should be granted] include the relevance of the discovery requests to the lawsuit and the breadth of the requests. Analysis of the relevance of documents requested pursuant to Rule 45 "must be viewed in conjunction with the [broad] scope of discovery permissible under Rule 26." *In re Apollo Advisors, L.P.*, 1993 U.S. Dist. LEXIS 7927, No. M8-85, MDL No. 863, 22/93 Star. Dec. 484 (S.D.N.Y. June 4, 1993), *i.e.*, the Court must consider whether the requested information appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the same time, because Dow Jones is not a party to the underlying litigation, the Court must consider the expense and inconvenience involved in complying with the subpoena (and, therefore, in assessing Defendants' motion to compel). See Fed.R.Civ.P. 45(c)(2)(B) ("An order to compel production shall protect any person not a party or an officer of a party from significant expense resulting from [compliance]."); *Concord Boat*, 169 F.R.D. at 48.

*In re Dow Jones & Co.*, 1998 U.S. Dist. LEXIS 19635 (U.S. Dist., 1998)(copy attached hereto, footnotes omitted).

> [T]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *IBM*, 83 F.R.D. at 106-07. By their drafting of the Brunswick Subpoena, plaintiffs' counsel have run this risk and lost. (The plaintiffs' requests for documents effectively encompassed documents relating to every transaction undertaken by the non-party to whom the subpoena had been issued during the last ten years that it had served as its client's advisor and was determined to be overly broad on its face.)

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (U.S. Dist., 1996).

> Rule [45(c)(1)] permits a court to impose sanctions against any party that issues a subpoena on behalf of the Court but "fails to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Sanctions may include, but are not limited to, lost earnings and reasonable attorney's fees. FRCP 45(c)(1)...
>
> [A] the privilege may apply not only to communications by the client to the attorney, but also to "[legal] professional advice to those who can act on it." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 66 L. Ed. 2d 584, 101 S. Ct. 677

8


(1981). The communications by AIG with its attorney, Stephenson, in regard to the reason it filed the interpleader and the legal advice rendered by Stephenson plainly fall within the privilege for attorney-client communications. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2d Cir. 1984). Rudick [,the attorney issuing the subpoena at issue,] does not argue that the communications were not made in confidence, that the privilege was waived, or that fraud or illegality was involved, which might otherwise destroy the privilege. *See U.S. v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 504 (2d Cir. 1991), *In re Grand Jury Subpoena,* 731 F.2d at 1036. Accordingly, there is no dispute that the communications sought by Rudick are protected by the attorney-client privilege. Privileged attorney-client communications, however, are generally not available by subpoena, *e.g.,* FRCP 45. *Leve v. General Motors Corp.,* 43 F.R.D. 508, 510 n.2 (S.D.N.Y. 1967). Indeed, regardless of how relevant the privileged information may be to a party's case, it is well established that "the attorney-client privilege remains an exception that may withhold relevant information at the pre-trial or the trial stage of a criminal prosecution or civil proceeding." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943 (2d Cir. 1992).

Stephenson plainly communicated to Rudick that his client would not authorize him to testify. *See* Motion for Sanctions Exh. B. Despite the fair warning given by Stephenson, Rudick subpoenaed him. As innocuous as Rudick may have believed the communications to be with AIG, he knew or should have known that it was the client's privilege and that the privilege cannot be waived without AIG's consent. Indeed, not only may Stephenson "invoke the privilege in his client's behalf when the client is not a party to the proceeding in which the disclosure is sought, but he should do so for he is 'duty-bound to raise the claim in any proceeding in order to protect communications made in confidence.'" *Republic Gear Co., v. Borg-Warner Corp.,* 381 F.2d 551, 556 (2d Cir. 1967)(citations omitted). Furthermore, Stephenson is prohibited by New York law from divulging confidential information without a waiver by his client. N.Y. C.P.L.R. § 4503(a) n1. Moreover, Rudick must understand surely that "if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn,* 449 U.S. at 393. Breach of the attorney-client privilege cannot be compelled on the whim of a third-party who may believe that a waiver would not prejudice the client.

In light of the communications from Stephenson conveying his client's unwillingness to waive the attorney-client privilege, thus ethically and legally binding him from testifying, I am at a loss to understand how Rudick could in good faith believe that the communications sought through the subpoena he issued was appropriate. Rudick may be well advised to follow Stephenson's advice of returning to law school, TT at 8-9, if he actually believes that relevance and lack of prejudice to AIG, *see* Opp. Mem. at 2, Rudick Affid. at P 13, constitute valid grounds for Stephenson to violate the oldest privilege for confidential communications known to the common law. *Upjohn,* 449 U.S. 389,

9

66 L. Ed. 2d 584, 101 S. Ct. 677. Although Stephenson informed Rudick in an October 31, 2002 letter that his testimony at trial would not be forthcoming because of the attorney-client privilege, Rudick contends that had Stephenson asserted the privilege earlier, he would not have issued the subpoena. Rudick Affid. at 22. Rudick offers no valid reason, however, why he issued the subpoena the next day on November 1, to obtain testimony that he should have known could not be compelled.

Rudick failed to heed his obligation "to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." FRCP 45(c)(1). The sweeping subpoena seeking "any and all records pertaining to the [AIG interpleader]" was *prima facie* improper. *In re Circle K Corp.*, 199 B.R. 92, 102 (S.D.N.Y. 1996). The subpoena, served the Friday afternoon prior to the beginning of trial on Monday, unnecessarily compelled Stephenson and his associates to sift through every document in its files and to create a privilege log. Motion for Sanctions Exh. F at 2. Incredibly, Rudick contends that the time spent was unnecessary, and thus any costs incurred were solely self-inflicted. Opp. Mem. at 4. Rudick argues that it would have taken "no more than five minutes to gain the relief requested." n3 *Id.* I disagree, and at most, Rudick only obviates the undue burden and expense imposed by his subpoena. He overlooks the fact that Stephenson had to also take time to travel from Philadelphia, Pennsylvania and to attend trial, which collectively took a significant part of a day. Motion for Sanctions Exh. F at 2. In addition, Rudick disregards the Federal Rules of Civil Procedure, which requires persons objecting to a subpoena to serve written objections to the subpoena and produce a privilege log if objecting to the production of documents on the basis of privilege. FRCP 45(c) and (d). Furthermore, S.D.N.Y...

In addition to finding the scope of Rudick's subpoena inappropriate, I find the manner of service inappropriate as well. Although Rudick knew he wanted Stephenson's testimony, "at least four weeks before the scheduled trial date," Rudick Affid. at P 9, Rudick offers no valid justification why he issued the subpoena only one business day before trial. Demanding Stephenson to appear with "all records" pertaining to his client's interpleader action one business day before trial is patently unreasonable. *See In re Digital Resource, L.L.C.* 246 B.R. 357, 373 (8th Cir. 2000); *Judicial Watch, Inc.* v. *U.S. Dep't of Commerce*, 34 F. Supp. 2d 47, 49-50 (D.D.C. 1998). Having reviewed the Affidavit of Professional Services and Costs Incurred, Motion for Sanctions Exh. F, I find much of Stephenson's fees and costs fair and not unreasonable...

For the foregoing reasons, I find sanctions for much of Stephenson's fees and costs appropriate. Elliott Rudick, Esq. is hereby ordered to disburse payment in the amount of $ 4,436.00 directly to Mark C. Stephenson, Esq. and Cozen O'Connor, within 30 days of the date of this order.

*Am. Int'l Life Assur. Co. v. Vazquez*, 2003 U.S. Dist. LEXIS 2680 (U.S. Dist., 2003)(copy attached hereto, footnotes omitted).

      1.    As a preliminary matter, it cannot be discerned, from the Subpoena itself, to whom it is directed.

          a.    Is it directed to Paul M. Gaide, Esquire?

          b.    Is it directed to Gaide & Associates, LLC (a non-existent entity - *see* Exhibit B attached hereto)?

          c.    Is it directed to Paul M. Gaide, Esquire as a member or keeper of the records of Gaide & Associates, LLC (a non-existent entity)?

          d.    Is it directed to Gaide & Associates, LLC, Attorneys At Law, which had no existence prior to April 9, 1998 (over fifteen (15) months after the commencement of one of the requested compliance dates)? *See* Exhibit C hereto.

          e.    Is it directed to Paul M. Gaide, Esquire as a member or keeper of the records of Gaide & Associates, LLC, Attorneys at Law?

          f.    Is it directed to Paul M. Gaide, Esquire as a member or keeper of the records of Gaide & Associates, LLC, Attorneys at Law, with a d/b/a of Gaide & Associates, LLC?[4]

Clearly, there is no possible way to begin to fashion an appropriate compliance with the Subpoena without knowing to whom it is directed. Absent the same, the Subpoena is oppressive and unduly burdensome.

---

[4] For purposes of these Motions, the term "undersigned" is being used to include Paul M. Gaide, as a member of Gaide & Associates, LLC, Attorneys at Law; Paul M. Gaide, as the keeper of the records of Gaide & Associates, LLC, Attorneys At Law; Paul M. Gaide, Esquire; Gaide & Associates, LLC, Attorneys At Law; and Gaide & Associates, LLC, with a d/b/a of Gaide & Associates, LLC.

11

2.  The oppression, harassment, and undue burden and expense placed upon the undersigned is extreme and outrageous in one or more of the following respects:

   a.  Request 1 demands: "Any and all telephone records and logs ... which evidence telephone calls **to** any or all of the [**defendants in this action**]...", arguably between December 31, 1996 and January 31, 1999 (although the date limitation is ambiguous and could be read to apply only to the "bills from ... telephone service carriers...."). This Request is unduly oppressive, harassing and burdensome, *inter alia*, because:

      (1) if a call was made **to** any or all of the [**defendants in this action**-the persons identified in the Request], one would logically think that each such defendant ought to know about the call and that: (i) the documentation could be obtained from the other defendants; or (ii) the Request could be significantly narrowed to documents which have some legitimate relevancy to the case;

      (2) the authority signing the Subpoena is placing on the subpoenaed party (**a non-party**), whomever that may be, the burden of identifying each and every one of the telephone numbers of each and every one of the referenced **defendants in this action** over the relevant time period. Without this information, it would be impossible for the non-party witness to comply with that aspect of Request 1 which demands that the non-party witness review all of the witness's(s') telephone bills for evidence of telephone calls to the **defendants in this action**. This information, with even the slightest modicum of thought, could and should have been provided in the attachment to the Subpoena if the authority signing the Subpoena was attempting legitimate discovery (and not the imposition of oppression, harassment, and undue burden and expense)(see discussion below);

(3) depending on whom the subpoenaed person(s) is(are), it is known that Paul M. Gaide, Esquire was involved with at least the following litigations involving one or more of the **defendants** during the referenced time period:

(A) *The Cadle Company v. Charles A. Flanagan*, United States District Court, District of Connecticut, Case No.: 3:96-CV-02648 (AVC);

(B) *In re: Charles A. Flanagan*, United States Bankruptcy Court, District of Connecticut, Case No.: 99-30565 (ASD);

(C) *D.A.N. Joint Venture, A Limited Partnership v. Charles A. Flanagan, et al.*, Connecticut Superior Court, Judicial District of New Haven, Docket No.: CV-95-0378422-S, re-assigned to the Complex Litigation Docket, Connecticut Superior Court, Judicial District of New Britain, Docket No.: X-03-CV-9502795-S;

(D) *D.A.N. Joint Venture, A Limited Partnership v. Charles A. Flanagan, et al.*, Connecticut Superior Court, Judicial District of Litchfield, Docket No.: CV-95-0069365-S;

(E) *Webster Bank v. Charles A. Flanagan*, Connecticut Superior Court, Judicial District of New Haven, Docket No.: ____; Connecticut Appellate Court, Case No.: AC17530;

(F) *D.A.N. Joint Venture, A Limited Partnership v. Socrates Babacus / Charles A. Flanagan*, Hampden County (MA) Superior Court, Civil Action No.: 98-1248;

(G) *In re: Lisa G. Flanagan*, United States Bankruptcy Court, District of Connecticut, Case No.: 95-32150 (ASD);

13

(H)  *D.A.N. Joint Venture, A Limited Partnership v. Lisa G. Flanagan*, United States Bankruptcy Court, District of Connecticut, Case No.: 95-32150 (ASD), Adversary Proceeding No.: 96-03092; and

(I)  *People's Bank v. Charles A. Flanagan*, Connecticut Superior Court, Judicial District of Fairfield, at Bridgeport, Docket No.: CV-96-033436-S (which case may have been transferred to the Connecticut Superior Court, Judicial District of New Haven under the Docket No.: CV-96-0423622-S.

In addition to the foregoing cases, the undersigned has been involved in a number of other litigations with some of the **defendants**, subsequent to the January 31, 1999 cut off as arguably set forth in Requests 1-2, including, without limitation:

(A)  *Charles A. Flanagan v. Paul M. Gaide*, State of Connecticut, Statewide Grievance Committee, Complaint #98-0702;

(B)  *Matthew Flanagan, et al. v. Paul M. Gaide, et al.*, Connecticut Superior Court, Complex Litigation Docket, Judicial District of New Britain, Docket No.: CV-01-0513877-S;

(C)  *Matthew Flanagan, et al. v. Paul M. Gaide, et al.*, Connecticut Superior Court, Complex Litigation Docket, Judicial District of New Britain, Docket No.: CV-01-0513876-S;

(D)  *Paul M. Gaide v. Lisa G. Flanagan, et al.*, Connecticut Superior Court, Judicial District of New Britain, Docket No. CV-03-0521353-S;

(E)  *Paul M. Gaide, et al. v. Todd R. Bainer, et al.*, United States District Court, District of Connecticut, Civil Action No.: 3:02cv392 (SRU).

Assuming that the Subpoena is directed to Paul M. Gaide, Esquire and Gaide & Associates, LLC, Attorneys At Law, the undersigned would conservatively estimate that there are over thirty (30) banker's boxes of documentation pertaining to the referenced cases which would have to be culled through in order to locate and identify "Any and all telephone records and logs of calls..." as demanded in Request 1 (not counting the "bills from all of your telephone service carriers"). Some of the boxes would have to be pulled from storage. Other boxes would have to be located, as the undersigned recently moved his office, for the second time in approximately 14 months. Absent a very, very strong showing for the need for the undersigned non-party to expend his time consumed in such a project, the undersigned should be protected from the demands of Request 1. At a minimum, the undersigned is entitled to an Order of this Court compensating the undersigned at the rate of $185.00 per hour for lost earnings, all pursuant to F.R.Civ.P. 45(c)(1).[5]

    b. As to Request 2, the signing authority is once again demanding that the undersigned **non-party** produce boxes, and boxes and boxes of material, **which each of the defendants should already have**. Request 2, however, is even more outrageous than Request 1. This time, the signing authority asks that she be provided with **all communications, both to and from each of the defendants**, whatever form the document takes. The signing authority knows, or reasonably should know, that a good portion of such documentation consists

---

[5] The undersigned also moves this Court for protection from having to at this time produce a privilege log pertaining to any privileged matter / communication relative to the Subpoena. Due to the over breadth of the Subpoena, it is quite conceivable that the undersigned took notes (logs) (with his mental impressions) of telephone calls with one or more of the defendants during the time in question, or sent correspondence to the undersigned's client with respect to the same. Such material would certainly be protected under the attorney-work product doctrine and / or attorney-client privilege, and may be protected under other claims of privilege. Other privilege claims may also be available. To force the undersigned to cull through each and every box and produce an appropriate privilege log at this time, before the instant motions are ruled on, would in and of itself be oppressive, harassing and an undue burden and expense.

15

of pleadings and other publicly available records. Attorney Bainer was counsel in a large number of the referenced cases, or otherwise knew of them. The over breadth of Request 2 cannot be minimized or downplayed in any manner. Again, if forced to produce the documentation, at a minimum, the undersigned is entitled to an Order of this Court compensating the undersigned at the rate of $185.00 per hour for lost earnings, copy charges, and ancillary expenses, all pursuant to F.R.Civ.P. 45(c)(1).

    c. Request 3 is obnoxiously oppressive, harassing, and unduly burdensome and expensive to the undersigned. As an initial proposition, the signing authority does not define "recordings". Does she mean voice recordings? Does she mean written memoranda? Does she mean marginal notations? Just what does she mean? The undersigned certainly cannot attempt to comply without knowing the context of the Request.

    Request 3 is so overly broad that it strongly demonstrates a patent disregard for the rights of the undersigned. Quite clearly, the signing authority took absolutely no reasonable steps to avoid imposing undue burden or expense on the undersigned, all as required by F.R.Civ.P. 45(c)(1). Request 3 sets forth no subject restriction, no time restriction, or virtually any other restriction. Request 3 is not even limited to the scope of the instant litigation, whatever that might now be.

    It should be made known to this Court that Paul M. Gaide is currently suing, among others, Todd R. Bainer and Todd R. Bainer, LLC in *Paul M. Gaide v. Lisa G. Flanagan, et al.*, Connecticut Superior Court, Judicial District of New Britain, Docket No. CV-03-0521353-S. R. Bradley Wolfe, Esquire, who has appeared in this case for such defendants, is in the same law office with the authority signing the Subpoena at issue. On or about October 30, 2003, the day before Attorney Charron signed the subject Subpoena, Attorney