01CV531 memsup
part 1

FILED

2003 DEC 22 P 1: 5.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL | : | CIVIL ACTION NO. |
| Plaintiffs | : | 3:01CV00531 |
| | : | |
| VS. | : | |
| | : | |
| CHARLES A. FLANAGAN, ET AL | : | DECEMBER 18, 2003 |
| Defendants | | |

MEMORANDUM IN SUPPORT OF
MOTION FOR CLARIFICATION AND/OR MOTION FOR RECONSIDERATION

On November 4, 2003, Attorney Gaide was served a Subpoena for document

discovery.  By Motions dated November 12, 2003, Attorney Gaide sought to

Quash the Subpoena and moved for a Protective Order.  By e-mail dated November

19, 2003, this office notified him that we would not proceed.

Also on November 12, 2003, Attorney Gaide moved for Sanctions/Lost Earnings

in the amount of $2,849.00 alleging that he incurred 15.4 hours to prepare

and research said motions.  His motion failed to comply with U.S.D.C. L. Civ.

R. 37(a)2, as Attorney Gaide did not confer with counsel to discuss in detail

in a good faith effort to eliminate or reduce the areas of controversy.  Nor

did Attorney Gaide file with his Motion for Sanctions a Good Faith Affidavit

as required by the Rule and F.R.C.P. 37(a)2.  Defendants replied to said

Motion on December 17, 2003.

Attached to said Reply is the Affidavit of State Marshal Edward Jurgelas

setting forth the circumstances of the service of the Subpoena.  There was

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976

Telephone (860) 525-5361          Facsimile (860) 525-4849          Juris No. 24029

some delay in obtaining this Affidavit.

It is respectfully submitted that Attorney Gaide's Motion for Sanctions was defective in that he failed to file his Good Faith Affidavit required by both the Local Rules and Federal Rules of Civil Procedure.  This is grounds to deny the Motion.  See Richardson v. NYS Dept. of Correctional Services, 2001 WL 603705 (p. 8 of 8) (W.D.N.Y.); see also In re David Schick v. Fragin, 1997 WL 465217 (p. 4 of 11) (Bankr. S.D.N.Y.).

DEFENDANTS: TODD R. BAINER and<br>
TODD R. BAINER, L.L.C.

By _MaryAnne Allen_<br>
MARY ANNE A. CHARRON<br>
Federal Bar No. ct02274<br>
Gordon, Muir and Foley, LLP<br>
Ten Columbus Boulevard<br>
Hartford, CT 06106<br>
Telephone (860) 525-5361<br>
Facsimile (860) 525=4849

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on December 18, 2003, to the following:

F. Dean Armstrong, Esquire
639 Perth Avenue
Flossmoor, IL 60422

Jill Hartley, Esquire
Edward C. Taiman, Esquire
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT 06103-2205

David G. Hill, Esquire
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT 06103-4303

Todd R. Bainer, Esquire
71 Cedar Street
P.O. Box 1092
Branford, CT 06405-8092

Barbara L. Cox, Esquire
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT 06509-1925

Douglas S. Skalka, Esquire
James A. Lenes, Esquire
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT 06510-2026

Bradley K. Cooney, Esquire
69 Island Avenue
Madison, CT 06443

Paul M. Gaide, Esquire
713 Lovely Street
Avon, CT 06001

MARY ANNE A. CHARRON

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976
Telephone (860) 525-5361          Facsimile (860) 525-4849          Juris No. 24029

2001 WL 603705
**(Cite as: 2001 WL 603705 (W.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.


United States District Court, W.D. New York.

Vera RICHARDSON, Plaintiff,
v.
NYS DEPT. OF CORRECTIONAL SERVICES
and NYS Dept. of Civil Services, etc, et
al., Defendants. [FN1]

> FN1. Although plaintiff has included the
> terms "etc" and "et al." in the caption of
> her Amended Complaint, there are no
> other defendants in this action besides the
> New York State Department of
> Correctional Services and New York State
> Department of Civil Services and,
> therefore, such terms are superfluous.

**No. 97-CV-0818E(SR).**

May 29, 2001.

Pro Se, Rochester, for the Plaintiff.

Michael J. Russo, Esq., Asst. Attorney General for
NYS, Buffalo, for the Defendant.


MEMORANDUM and ORDER

ELFVIN, S.D.J.

**\*1** By Amended Complaint filed February 19,
1999 plaintiff, a *pro se* litigant, claims that
defendants discriminated against her on the basis of
race and sex, unlawfully subjected her to a hostile
work environment and retaliated against her after
she had filed a complaint with the New York State
Department of Human Rights, all such actions being
in violation of Title VII of the Civil Rights Act of
1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*
Presently before the undersigned is defendants'
motion for summary judgment [FN2] and plaintiff's
**motion for sanctions** under **Rule 37** of the Federal
Rules of Civil Procedure ("FRCvP"). For the
reasons that follow, defendants' motion is granted
and plaintiff's motion is denied.

> FN2. Prior to oral argument held April 13,
> 2001, plaintiff sought summary judgment
> on certain of her claims. At such hearing,
> however, plaintiff informed the
> undersigned that she wanted to withdraw
> her motion for summary judgment and
> requested that this Court treat the materials
> submitted in support thereof as having
> been submitted in opposition to the present
> motion for summary judgment.
> Consequently, the undersigned shall moot
> plaintiff's motion for summary judgment
> and the materials submitted in support
> thereof will be considered in accordance
> with her direction.

Summary judgment "shall be rendered forthwith if
the pleadings, depositions, answers to
interrogatories, and admissions on file, together
with the **affidavits**, if any, show that there is no
genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of
law." FRCvP 56(c). In seeking summary judgment,
the moving party "bears the burden of establishing
that no genuine issue of material fact exists" and
that party's "burden will be satisfied if he can point
to an absence of evidence to support an essential
element of the nonmoving party's claim." *Goenaga
v. March of Dimes Defects Found.,* 51 F.3d 14, 18
(2d Cir.1995). Accordingly, this Court's function is
not to determine issues of fact but to ascertain
whether there remain any such issues to be
determined. *See Sutera v. Schering Corp.,* 73 F.3d
13, 15-16 (2d Cir.1995). In so doing, this Court
resolves all ambiguities and draws all justifiable
inferences in favor of the nonmoving party. *See
Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255
(1986). Moreover and in an action that turns on the
intent of a party--as Title VII actions do--and
wherein a plaintiff proceeds without the assistance
of counsel, this Court must be especially mindful of
its duty to believe all evidence submitted by the
nonmovant and to draw "all justifiable inferences \*
\* \* in [her] favor." *Anderson,* at 255. This
heightened scrutiny does not mean that this Court
should abstain from granting summary judgment
where a party opposing summary judgment has
failed to provide any evidence in support of that
party's position because the "salutary purposes of
summary judgment--avoiding protracted, expensive
and harassing trials--apply no less to discrimination
cases than to commercial or other areas of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 603705
**(Cite as: 2001 WL 603705 (W.D.N.Y.))**

Page 2

litigation." *Meiri v. Dacon,* 759 F .2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829 (1985).

The parties' submissions reveal the following material facts. Plaintiff, an African-American female, began her employment with defendant New York State Department of Correctional Services ("DOCS") in 1986. Plaintiff's Statement ¶¶ 3, 4. During the course of such employment, plaintiff held the positions of Correctional Officer, Temporary Release Interviewer and Supervisor of the Inmate Grievance Program and, until early January 1996, received positive workplace performance evaluations. *Id.* ¶¶ 5, 8. At such time, plaintiff received "formal counseling for time and attendance" with regard to certain instances of absenteeism and tardiness which had occurred during the last nine months of 1995. Defendants' Statement ¶ 2. On or about January 13, 1996, plaintiff left work and did not attempt to return to her place of work until August 6, 1996. *Id.* ¶ 3. Such absence was claimed to have been necessitated by plaintiff's depression, stress and anxiety. Amended Comp. ¶ 71.

*2 When plaintiff attempted to return to work August 6, 1996, she advised the Deputy Superintendent of the Albion Correctional Facility, James Berbary, that she was medically fit to return to employment and produced a medical note indicating the same. Defendants' Statement ¶¶ 6, 8. In response, Berbary told plaintiff that inasmuch as she had been placed on a medical leave of absence, she would first need to be examined by defendants' Employee Health Service to determine if she was able to perform her occupational duties. *Id.* ¶¶ 7, 11. Plaintiff was then escorted out of the Albion Correctional Facility. Plaintiff's Statement ¶ 37.

Plaintiff was thereafter examined August 28, 1996 and September 16, 1996 by medical consultants hired by the Employee Health Service. Defendants' Statement ¶ 12. A subsequent review of the resulting medical evaluations led the Employee Health Service to conclude that plaintiff was not capable of performing her duties as a Correctional Officer and recommended that she be reevaluated in two months. *Id.* ¶ 13. By letter dated October 21, 1996, plaintiff was advised that she would not be able to return to active duty with DOCS and was informed, in accordance with Section 72 of New York's Civil Service Law, [FN3] that another health

examination was to occur November 5, 1996. *Id.* ¶ 14. Upon her failure to appear for such examination, plaintiff was again directed by the DOCS November 13, 1996 to appear for medical examinations scheduled for November 22, 1996 and December 12, 1996. *Id.* ¶¶ 15, 16. Plaintiff failed to appear for these evaluations and no further examinations were thereafter scheduled. *Id.* ¶ 18.

> FN3. Such section states, in part, that, "[w]hen in the judgment of an appointing authority an employee is unable to perform the duties of his or her position by reason of a disability, other than a disability resulting from occupational injury or disease as defined in the workers' compensation law, the appointing authority may require such employee to undergo a medical examination to be conducted by a medical officer selected by the civil service department or municipal commission having jurisdiction." N.Y. Civ. Serv. § 72(1). It further adds that, "[i]f an employee placed on leave pursuant to this section is not reinstated within one year after the date of commencement of such leave, his or her employment status may be terminated in accordance with the provisions of section seventy-three of this article." N.Y. Civ. Serv. § 72(4).

By letter dated January 6, 1997, plaintiff was told that, inasmuch as she had failed to submit to further medical evaluation, she would remain on a leave of absence pursuant to Section 72 of New York's Civil Service Law, to which plaintiff responded that she would appeal such determination because the circumstances of her particular case didn't implicate Section 72. *Id.* ¶¶ 19, 20; Richardson Dep. at 106. Specifically, plaintiff stated that she "was out" due to a workers' compensation law related injury. [FN4] *Ibid.* By letter dated March 10, 1997, DOCS acknowledged plaintiff's planned appeal. Plaintiff's Statement ¶ 21. For reasons not altogether clear, the hearing did not occur until September 28, 1998. [FN5] *Id.* ¶ 22. Plaintiff did not attend the hearing and instead drafted a letter to John Ludwin, Labor Relations Representative, which advised that she would not be attending the hearing. *Id.* ¶ 23. Despite being dated September 24, 1998, this letter arrived at the Albion Correctional Facility--where

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 603705
**(Cite as: 2001 WL 603705 (W.D.N.Y.))**

the hearing was to occur--only moments before the hearing was scheduled to start. *Ibid.* Nevertheless, the hearing commenced and, based on what had been presented before him, the hearing officer determined, by Report and Recommendations dated October 12, 1998 ("the October Recommendations"), that plaintiff "be found physically and psychologically unfit to perform the duties of a Correction Officer."

> FN4. In her papers, plaintiff repeatedly alludes to injuries she suffered at work in December 1993 as forming the basis for her disabling condition which began in January 1996. In light of plaintiff's representations to, for example, the Social Security Administration in August 1996 when she applied for disability benefits, however, such argument is specious. *See Simon v. Safelite Glass Corp.,* 128 F.3d 68, 71 (2d Cir.1997) (stating that "[j]udicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding"). Plaintiff candidly stated to the Administration that she has not been able to work since January of 1996 due to a "major depressive disorder" and makes no reference to any workplace-related injury. *See* Social Security Admin. Disability Report, signed August 9, 1996. Plaintiff was awarded disability benefits January 13, 1997 based on an "anxiety related disorder/functional nonpsychotic affective disorder" which began January 16, 1996. *See* Social Security Admin. Disability Determination and Transmittal, stamped January 15, 1997.

> FN5. In the "Report and Recommendations" issued by the hearing officer October 12, 1998, it is indicated that such hearing was initially held in abeyance pending plaintiff's release to DOCS of the name of her counsel.

**\*3** By letter dated October 26, 1998, DOCS informed plaintiff that a "separation" of her services with DOCS will occur November 2, 1998 under the provisions of Section 73 of New York's

Civil Service Law. [FN6] By letter dated November 3, 1998, DOCS amended its October 26, 1998 correspondence to plaintiff by adding that DOCS accepts the October Recommendations as final and that the "date of termination of service will be held in abeyance pending subsequent appeal or the expiration of the appeal period." After plaintiff had tried to appeal these decisions to the New York State Civil Service Commission, defendant New York State Department of Civil Service wrote plaintiff December 18, 1998 stating that, inasmuch as plaintiff's employment had been terminated pursuant to Section 73 of New York's Civil Service Law, there could be no appeal thereof to the New York State Civil Service Commission.

> FN6. Section 73 states, in relevant part, that, "[w]hen an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability, other than a disability resulting from occupational injury or disease as defined in the workmen's compensation law, his employment status may be terminated and his position may be filled by a permanent appointment."

Prior to her termination from employment and during the time she was on a leave of absence, plaintiff filed a complaint July 5, 1996 with the New York State Division of Human Rights, which she later amended on July 8, 1996 and February 5, 1997, charging defendants with unlawful discriminatory practices relating to her employment. In that charge, plaintiff alleges seven principal instances of discrimination based on her race and sex. Firstly, that she was denied a work "swap" July 7, 1995 by her supervisor, Sergeant William Reed, despite his allegedly granting a white male a similar request. Human Rights Compl. ¶ 3. Secondly, that, despite a previous physical injury allegedly known to her supervisors, plaintiff was placed in the "packaging room" of the Albion Correctional Facility which exacerbated her injury. *Id.* ¶ 4. Thirdly, that an alleged white staff member stole plaintiff's DOCS badge and identification card January 7, 1996 and that such items were never replaced. *Id.* ¶ 6. Fourthly, that plaintiff received a unfavorable performance evaluation that same January, allegedly in response to her opposing

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 603705
**(Cite as: 2001 WL 603705 (W.D.N.Y.))**

workplace discrimination. *Ibid.* Fifthly, that, after these events had caused her to go on a medical leave of absence in January 1996, plaintiff was denied sick leave at half pay. *Ibid.* Sixthly, that various supervisory officers of DOCS were aware of the allegedly discriminatory treatment perpetrated on plaintiff by Reed but that they had failed to correct such behavior. Human Rights Comp. Amend. ¶ 7. Seventhly, that plaintiff's escort out of the Albion Correctional Facility August 6, 1996, was in retaliation for her filing of a complaint with the Division of Human Rights. *Id.* ¶ 8(1). Moreover and as elaborated upon in her Amended Complaint, plaintiff's grievances regarding Reed are legion. They include allegations of discriminatory treatment regarding job assignments, the denial of time-off requests without justification, his creation and perpetuation of a unlawfully hostile work environment and the placement of a "formal counseling memorandum" in plaintiff's personnel folder where no such underlying event had ever taken place. *See, e.g.,* Amended Compl. ¶¶ 20-65. By Determination and Order After Investigation dated May 12, 1997, the Division of Human Rights concluded that there was insufficient evidence to support plaintiff's charge of discrimination. The Equal Employment Opportunity Commission thereafter concurred with these findings, prompting plaintiff to file the instant action. As set forth in the Amended Complaint, plaintiff asserts claims against the defendants for unlawful retaliation and retaliatory discharge, discriminatory treatment and a hostile work environment.

**\*4** Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, * * * [or] sex * * *." 42 U.S.C. § 2000e-2(a). Title VII claims are reviewed under the framework promulgated by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny. Such requires that plaintiff first "establish a prima facie case of discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). To establish a prima facie case of discrimination made actionable under Title VII, plaintiff must show (1) that she is a member of a protected class, (2) that she was performing her job in a satisfactory manner or was qualified for the position sought, (3)

that she suffered an adverse or detrimental employment decision made by her employer and (4) that the adverse employment decision was made under circumstances giving rise to an inference of discrimination based on her membership in a protected class. *See, e.g., Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997). Once established, defendants then have the burden of articulating a "legitimate, nondiscriminatory reason" for the allegedly discriminatory employment action. *Ibid.* If defendants carry this burden, all presumptions disappear and plaintiff must present evidence which proves "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). In this regard, plaintiff need not prove the falsity of the proffered reasons but rather only demonstrate, by a preponderance of the evidence, that defendants' "explanation is unworthy of credence." *Reeves,* at 143 (citing *Burdine,* at 256). In doing so, the plaintiff is permitted to rely solely on the evidence establishing the prima facie case and the inferences drawn therefrom to impugn defendants' explanation. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000).

Similarly, Title VII also prohibits employers from discriminating against an employee because the employee has opposed any practice made unlawful by the statute or has filed a charge thereunder. 42 U.S.C. § 2000e-3(a). To establish a prima facie case, plaintiff must show that she took part in an activity protected by Title VII, that her employer was aware of the activity, that plaintiff suffered an adverse employment action and that there is a causative link between the protected activity and the adverse employment action. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995). If plaintiff can make such a prima facie case, the claim is then analyzed according to the *McDonnell Douglas* burden-shifting analysis. *Sumner v. United States Postal Serv.,* 899 F.2d 203, 208 (2d Cir.1990).

**\*5** In order to establish her hostile work environment claim, plaintiff must show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was]

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 603705
(Cite as: 2001 WL 603705 (W.D.N.Y.))

Page 5

sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) ). Conduct sufficient to create a hostile work environment is that which "a reasonable person would find hostile or abusive." *Harris,* at 21. "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21-22. An isolated episode of harassment will generally not suffice to demonstrate a hostile work environment, unless the incident was "extraordinarily severe." *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000). Absent extraordinary severity, plaintiff must show that a "series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Ibid.* The Supreme Court has indicated that some factors germane to such analysis are the frequency of the discriminatory conduct, such conduct's severity, whether such conduct is physically threatening or humiliating or a mere offensive utterance, and whether such conduct unreasonably interferes with plaintiff's work performance. *Harris,* at 23.

Turning first to plaintiff's claim regarding retaliatory discharge, it is plain that there are no facts in the record upon which such allegation can succeed. Assuming that plaintiff has set forth a prima facie case of retaliatory discharge, she fails to articulate any reason why the proffered justification for terminating her was pretext--*viz.,* that her medical condition rendered her incapable of performing the duties of a correctional officer. *See* Gould Decl., filed November 17, 2000. [FN7] The evidence amply supports this conclusion and, as will be discussed more fully below, plaintiff's references to a retaliatory motive behind her discharge based on race and sex are, at best, conclusory assertions. Relatedly and insofar as plaintiff claims that there was some retaliatory motive behind her not being "reinstated" to the position of Supervisor of the Inmate Grievance Program at the Albion Correctional Facility in July 1996, such claim fails for two reasons. *See* Richardson Aff., filed October 12, 2000, at 33-34. Firstly, such claim was not raised in her administrative charge and this Court only has jurisdiction to hear such claims that either are

included in an administrative charge or are based on conduct subsequent to the administrative charge which is also "reasonably related" to that already alleged in the administrative charge. *See Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993). Inasmuch as plaintiff amended her complaint with New York's Division of Human Rights February 5, 1997, such allegation must have been included therein. Secondly and assuming plaintiff has established a prima face case of retaliation with regard to such claim, she has failed to proffer any reason as to why this Court should reject defendants' legitimate, nondiscriminatory reasons as to why she was not considered for this position--*viz.,* that as a result of a state-wide hiring freeze, the position could only be filled "through 'reassignment,' which is the filling of a position by a person already employed by the Department of Correctional Services who was currently serving in the title of Supervisor, Inmate Grievance." Lindsay Decl., filed Nov. 17, 2000, ¶ 3. Inasmuch as plaintiff was currently classified as a Correctional Officer with the DOCS at the time the desired position became vacant, she was not eligible for reassignment to such. *Id.* ¶ 4. The position was instead filled by an individual who had previously been serving as a supervisor of this program at a different facility. *Ibid.* Accordingly, plaintiff's allegation that some retaliatory motive lay behind the DOCS's failure to place her in the position of Inmate Grievance Supervisor is unfounded.

FN7. In response to many of the declarations submitted by witnesses on behalf of defendants, plaintiff argues that such may not be considered inasmuch as they do not meet the legal requirements of 28 U.S.C. § 1746, which allows unsworn declarations the same "force and effect" as properly executed **affidavits** where such are in substantial compliance with the statute. *See* Plaintiff's Mem. of Law in Opp'n, filed October 18, 2000, at 2-4. Plaintiff argues that the basic requirements of such statute require that the declaration state that it is "true and correct." *Id.* at 2-3. Nevertheless, there is no such requirement in the Second Circuit and the undersigned's review of the contested declarations finds such to be in substantial compliance with Section 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 603705
**(Cite as: 2001 WL 603705 (W.D.N.Y.))**

Page 6

61, 65-66 (2d Cir.1999) (determining that substantial compliance with Section 1746, not use of the words "true and correct," is all that is required of a declaration in order to be considered by a court).

**\*6** Plaintiff's claim for discriminatory treatment at her workplace is likewise without merit. Assuming that, with regard to each discriminatory incident alleged, plaintiff has established a prima facie case of discrimination, there is nothing in the record which acts to undermine the legitimate, nondiscriminatory reasons for the allegedly discriminatory actions. For instance, while plaintiff has made much of the fact that her proposed work "swap" on July 7, 1995 was denied under discriminatory circumstances--*see, e.g.,* Plaintiff's Mem. of Law in Opp'n at 5--, defendants' explanation therefor is unrebutted--*i.e.,* the proposed swap with a male Correctional Officer would have conflicted with the female designated position for which plaintiff was needed. Embury Decl., filed Sept. 20, 2000, ¶¶ 3-4. Her allegations with regard to discriminatory practices relating to her workplace assignments are similarly unavailing. For example, plaintiff asserts that it was discriminatory for her to be placed in the "packaging room" of the Albion Correctional Facility because, *inter alia,* this action violated a "[medically] mandated light duty assignment." Richardson Aff., filed Sept. 26, 2000, at 18. Nevertheless, plaintiff has failed to demonstrate that defendants' explanation therefor is unworthy of credence--*i.e.,* that Reed, as the supervising officer, did not know and, under the circumstances which transpired, would not have known of such limitation prior to her assignment there. *See* Reed Decl., filed Sept. 20, 2000, ¶¶ 3-6. In another incident involving Reed, plaintiff alleges that he discriminatorily classified her as "absent without leave" when plaintiff failed to show up for some required shifts. This apparently prompted Reed to file a "false" memorandum in plaintiff's personnel folder indicating that she had been counseled for these absences. Richardson Aff., filed Sept. 26, 2000, at 25. Inasmuch as plaintiff had priorly submitted a request for such time-off, she alleges that his actions are evidence of discriminatory treatment and of a hostile work environment. However and as indicated by defendants, an investigation of the incident revealed that Reed had not been aware of plaintiff's time-off requests. *See*

Berbary Decl., filed Sept. 20, 2000, Ex. A; Reed Decl., filed Nov. 17, 2000, ¶ 3. Moreover, the memorandum was removed from her personnel file. Berbary Dep. at 69-70. Defendants' response to plaintiff's allegations with regard to some discriminatory intent underlying her allegation that a white staff member stole her badge and identification card and that such items were never replaced is also unrebutted. Specifically, defendants have stated that, insofar as such allegations pertain to the perceived theft of plaintiff's materials, their investigation came to no such conclusion and that, *inter alia,* plaintiff could not receive a replacement badge so long as she remained on medical leave. *See* Berbary Dep. at 80-89. With regard to the unfavorable performance evaluation she received in January 1996, plaintiff has submitted nothing which calls into the question the basis for its issuance-- *i.e.,* that she had, during the previous year, been both tardy and absent on numerous occasions, for which she had been formally counseled, and that she was frequently argumentative with her supervisors and other employees. *See* Kelsey Decl., filed Sept. 20, 2000, ¶ 3. Relatedly, plaintiff has failed to show how defendants' denial of sick pay for her absences in January 1996, based on the DOCS policy that such was to be denied for those individuals in formal counseling for time and attendance, was mere pretext, inasmuch as she was in counseling for such problems. *See* Barbary Decl., filed Sept. 20, 2000, ¶¶ 6-7. Finally and insofar as plaintiff alleges that it was discriminatory and retaliatory for her to be escorted out of the Albion Correctional Facility August 6, 1996, defendants' stated reason therefor--*i.e .,* that, given plaintiff's visible distress after being informed that she would not be able to return to work before a medical examination was performed, such escort was necessary--overcomes any presumption of discrimination and there is nothing in the record which acts to undermine such stated reason. *See* Berbary Decl., filed Sept. 20, 2000, ¶ 5. In short, plaintiff's allegations of discriminatory treatment are conclusory.

**\*7** Insofar as plaintiff presses a hostile work environment claim made actionable under Title VII, the incidents alleged, even when viewed in their totality, do not support such conclusion. Although plaintiff has provided ample materials evidencing, for example, the strained relationship that existed between Reed and herself, such lack any proof that such treatment was motivated by race or sex. Relatedly, plaintiff's subjective belief that her work

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 603705
**(Cite as: 2001 WL 603705 (W.D.N.Y.))**

environment was hostile is not enough. *See* Richardson Aff., filed Sept. 26, at 5. Plaintiff must present evidence that the acts complained of were motivated by discriminatory intent, for which the record is lacking and for which conclusory allegations are no substitute. Of the various instances plaintiff alleges to establish her hostile work environment claim which are separate from those previously mentioned, four predominate. One incident involved an altercation with Reed wherein he allegedly stated to plaintiff that he "had a problem" with her and to which plaintiff, not any defendant, replied that he had a "problem with most black female officers." Amended Compl. ¶ 46; Reed Ex. A. This discourse further degenerated and allegedly resulted in Reed calling her a "bitch." Amended Compl. ¶ 47; Reed Ex. A. Another incident with Reed occurred when he tore up, in front of plaintiff, "a time off request slip that [she had just] submitted in order to leave work early." Richardson Aff., filed Sept. 26, 2000, at 23; Reed Dep. at 21. Plaintiff also appears to have had a strained relationship with some of her co-workers which, she alleges, helped to create and exacerbate the hostile work she was experiencing and which defendants did nothing to remedy. *See, e.g.,* Human Rights Compl. ¶ 5; Richardson Aff., filed Sept. 26, 2000, Ex. B(4) (anonymous memorandum addressed to plaintiff in 1994 calling her a "dirtbag" for failing to "show [to work] up on x-mas"). Finally, plaintiff points to an incident in November 1996 where she went to the Albion Correctional Facility to pick up a payroll check only to be "caged" and questioned by Berbary in his office. Plaintiff's Mem. of Law in Opp'n at 9. Nevertheless, these incidents--even when considered together with plaintiff's other allegations of discrimination--are not sufficiently severe such that a reasonable person would find that her working environment was hostile or abusive. Beyond conclusory assertions, moreover, plaintiff has failed to present any issue of material fact which would suggest that the conduct complained of was motivated by some discriminatory intent.

Plaintiff's motion for discovery sanctions is similarly unsubstantiated. Firstly, FRCvP 37(a)(2) requires that a party moving for sanctions certify "that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." No such **certification** has been proffered. In addition, plaintiff has not provided the Court with reason to question defendants' claim that they have made a good faith effort to comply promptly and completely with plaintiff's various discovery demands and with this Court's instructions. Similarly, plaintiff provides no evidence that defendants intended to mislead her or this Court with regard to plaintiff's discovery demands. To the extent plaintiff seeks sanctions for defendants' "unnecessary" interruptions during the conduct of a deposition, the undersigned has reviewed the transcript of such deposition and finds that conduct of defendants' counsel therein does not warrant the imposition of any sanctions.

*8 Accordingly, it is hereby *ORDERED* that defendants' motion for summary judgment is granted, that plaintiff's **motion** for **sanctions** is denied and that this case shall be closed.

2001 WL 603705, 2001 WL 603705 (W.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Westlaw Attached Printing Summary Report**
for
**CHIPMAN,CHRISTIN 4075987 Thursday, December 18, 2003 14:45:26 Central**

(C) 2003. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2003 West, a Thomson business. No claim to orig. U.S. govt. works."Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN. WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.

| | |
|---|---|
| Request Created Date/Time: | Thursday, December 18, 2003 14:45:00 Central |
| Client Identifier: | CLC |
| Database: | USER-DEFINED-MB |
| Citation Text: | 2001 WL 603705 |
| Query Text: | "RULE 37" & AFFIDAVIT & CERTIFICATION & "MOTION FOR SANCTIONS" |
| Lines: | 466 |
| Documents: | 1 |
| Images: | 0 |

Not Reported in B.R.
**(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States Bankruptcy Court, S.D. New York.

In re David SCHICK and VENTURE
MORTGAGE CORP., Debtors.
Aurora CASSIRER, Chapter 11 Trustee for the
Estate of David SCHICK, Debtor,
Plaintiff,
v.
Gary S. FRAGIN, Defendant.

**Nos. 96 B 42902(SMB), 96 B 43969(SMB),
96/9218A.**

Aug. 12, 1997.

Parker, Chapin, Flattau & Klimpl, LLP, New York,
New York, Lee Stremba, of Counsel, for Plaintiff.

Weil, Gotshal & Manges LLP, New York, New
York, Marvin E. Jacob, Mitchell D. Haddad, of
Counsel, for Defendant.

### MEMORANDUM DECISION REGARDING MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

BERNSTEIN, Bankruptcy Judge.

**\*1** The defendant in this preference action, Gary S.
Fragin, moves to compel discovery from the
plaintiff and trustee, Aurora Cassirer, and to impose
monetary sanctions based upon her failure to
comply with Fragin's document requests. In the
main, Fragin argues that the trustee and her counsel
waived the work product privilege because they
failed to properly assert it or provide a privilege log
when she responded to his document request. In
addition, Fragin seeks to compel the production of
other, non-privileged documents subsequently
created or acquired by the trustee or her counsel
during her continuing investigation and
administration of this bankruptcy case.

The motion is granted in part and denied in part. I
conclude that a limited waiver has occurred, and
direct the trustee to produce five documents
discussed in greater detail below. In addition,

Fragin shall recover monetary sanctions in the sum
of $500.00 from the trustee and her counsel, no
portion of which shall be paid from estate property.

### BACKGROUND

This adversary proceeding involves the trustee's
efforts to recover alleged preferences from Fragin.
Her amended complaint identifies two distinct and
seemingly unrelated transactions set out in two
separate claims. The first claim alleges that the
debtor, David Schick, sold his property to Zvi Tress
for $1 million, and directed Tress to pay the $1
million to Fragin on account of an antecedent debt.
[FN1] The second claim alleges that Schick and
FBW Renaissance, Ltd. borrowed $3 million from
Michael Koenig, and directed Koenig to wire
$750,000.00 to Fragin in satisfaction of an
antecedent debt.

> FN1. In her original complaint, the trustee
> alleged that the debtor borrowed $1
> million from Tress, and directed Tress to
> transfer the $1 million to Fragin on
> account of an antecedent debt. When the
> trustee moved to amend her complaint to
> change her theory, Fragin opposed the
> motion arguing that in light of the evidence
> he produced in opposition, the claim was
> futile. I granted the motion, but treated
> Fragin's opposition as a motion for
> summary judgment on the first claim.
> That motion is not yet before the Court.

### A. Fragin's Document Request and the Trustee's Response

On January 17, 1997, Fragin served a document
request, and granted the trustee two brief
extensions, or until March 3, 1997, to comply.
[FN2] Instead of serving the formal response and
objections required under Fed.R.Civ.P. 34(b),
Amos Alter, Esq., the trustee's counsel, responded
by letter dated March 7, 1997. The letter did not
address each specific request. Rather, the plaintiff
objected to requests 5, 6, 12 and 13 on grounds of
burdensomeness. [FN3] The letter also included a
general objection "insofar as [the request] seeks
attorney work product, or attorney-client or
otherwise privileged materials." Finally, the
plaintiff refused to produce documents "showing

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

the transfers here sued upon" because the transfers indisputably occurred and Fragin had also documented them. Fragin would have to specifically request the "transfer" documents if he wanted them. The plaintiff produced only three documents, all relating to the transaction involving Koenig; none pertained to the Tress transaction.

> FN2. According to my calculations, the trustee's responses and objections were originally due by February 19, 1997.

> FN3. Request nos. 5 and 12 related to the debtor's solvency at the time of each transfer. Request nos. 6 and 13 pertained to the allegation, in each claim, that the transfer enabled Fragin to receive more than he would receive if the case were in chapter 7, Fragin did not receive the transfer, and instead, received the statutorily mandated distribution on account of his claim.

By letter dated March 11, 1997, Fragin's counsel, Mitchell D. Haddad, Esq., asked Alter to provide a privilege log itemizing and identifying all documents withheld on grounds of privilege, and to amplify the claim of burdensomeness. Alter and Haddad apparently conferred on the telephone following this letter. On March 19, 1997, Haddad wrote to Alter confirming their telephone conversation five days earlier. According to the March 19 letter, Alter confirmed that the trustee had only the three documents that she had already produced. Apropos to the matters before me, Alter apparently acknowledged that the trustee and her representatives had spoken to Schick, Koenig and Tress, but had no notes or other documents concerning these conversations. Finally, Alter took the request for a privilege log under advisement, and promised to get back to Haddad shortly.

*2 Fragin continued to press, *inter alia,* for a privilege log. By letter dated March 31, 1997, Haddad reminded Alter that the trustee had not yet produced the privilege log or the documents relating to the transfers at issue. On April 18, 1997, Haddad again wrote asking Alter when he would produce the documents and the privilege log.

Alter finally responded in a letter dated April 25, 1997, categorically denying the very existence of any privileged documents. His letter states:

> There are no further documents. Despite your inference, no production is being withheld under claim of privilege, and hence no privilege log is applicable.

Fragin's counsel apparently did not (or could not) believe that witness notes did not exist, and continued to hound the trustee for production. On May 15, 1997, Haddad faxed yet another letter to Alter. Among other things, he repeated his request that, to the extent she had not already done so, the trustee should produce the requested documents "as well as any notes of any conversations or communications with trial witnesses, David Schick, Zvi Tress, Michael Koenig, or any entities owned by these individuals, and their agents, attorneys, or anyone else acting on their behalf, etc." He repeated this request in another letter written four days later.

After receiving what he presumably thought an unsatisfactory response, Haddad requested a chambers conference to address the discovery disputes. I held the conference on May 22, 1997. In response to my inquiry, Alter repeated his earlier assertions that all documents had been produced and that the trustee was not withholding any documents on grounds of privilege. Fragin's counsel then expressed incredulity that the trustee and her counsel interviewed witnesses but no notes or other documents existed that reflected those interviews. Alter reiterated that no notes existed.

As it turns out, this was not true. A few days later, the trustee testified at her deposition that she and other attorneys at her firm had taken notes during the witness interviews. When this was brought to my attention at a June 5, 1997 conference, I directed the trustee to prepare a privilege log. She provided her privilege log on June 9, 1997, in the form of a letter. [FN4]

> FN4. On June 10, 1997, I signed a scheduling order which, *inter alia,* directed the trustee to produce a privilege log within three days of the entry of the order. By that time, the trustee had already provided the log.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

## B. The Privilege Log

The trustee's privilege log identifies twenty specific documents prepared between October 1996 and June 1997. All but three concern handwritten or typed notes involving meetings between the trustee and her lawyers on the one hand, and the debtor or witnesses, sometimes with counsel, on the other. The other three documents are draft **affidavits** for signature to Tress, another individual named Salcman, and two individuals who the trustee declines to identify. The log also states that the trustee has not listed internal documents such as drafts of legal memoranda, deposition outlines, internal communications regarding strategies and draft communications.

## C. The Motion for Sanctions

**\*3** On or about June 25, 1997, Fragin moved pursuant to Fed.R.Civ.P. 37(a)(2)(B), made applicable by Fed. Bankr.R. 7037, to compel disclosure and for sanctions. While the motion focuses primarily on the trustee's failure to provide a privilege log, it also points to other deficiencies in her document production. **Rule 37(a)(2)(B)** requires the movant to certify that he has tried to work out the dispute with the other party:

The motion must include a **certification** that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action....

The **certification** requirement was included as part of the 1993 amendments to the Federal Rules of Civil Procedure based upon the "successful experience" with similar local court rules. Fed.R.Civ.P. 37 advisory committee's note (1993); *accord Shuffle Master, Inc. v. Progressive Games, Inc.,* 170 F.R.D. 166, 171 (D.Nev.1996); *see, e.g.,* S.D.N.Y. & E.D.N.Y. Civ. R. 3(f); Bankr.S.D.N.Y. R. 7007-1(a). Its goal is to encourage the parties to resolve their discovery disputes informally before filing a motion with the court. *Tri-Star Pictures, Inc. v. Unger,* 171 F.R.D. 94, 99 (S.D.N.Y.1997); *Shuffle Master, Inc. v. Progressive Games, Inc.,* 170 F.R.D. at 171. [FN5]

FN5. The June 10, 1997 scheduling order stated that Fragin "if so advised, may move under Bankruptcy Rule 7037 ... but must

comply with FRCP 37(a)(2)(A)." The latter provision governs motions to compel mandatory disclosure under Fed.R.Civ.P. 26(a), but mandatory disclosure is not at issue. Hence, the reference to **Rule 37** (a)(2)(A), which I interlineated, was erroneous. The order should have referred to **Rule** 37(a)(2)(B). In any event, the **certification** requirements exist under both provisions--independent of the June 10 order--and the same consequences flow under either subsection from the failure to certify.

Under the Court's local rules, the failure to file the **certification** closes the courthouse doors to the movant. Local Bankruptcy Rule 7007-1(a) states that "[n]o discovery related motion ... shall be heard unless counsel for the moving party files [the **certification**]." *Accord* S.D.N.Y. & E.D.N.Y. Civ. R. 3(f). Under ordinary circumstances, the violation of the "meet and confer" rule mandates denial of the motion to compel. *See Tri-Star Pictures, Inc. v. Unger,* 171 F.R.D. at 100. Nevertheless, courts have excused the failure to "meet and confer" where compromise is unlikely or the exigencies of the case require a prompt decision. *Reidy v. Runyon,* 169 F.R.D. 486, 490-91 (E.D.N.Y.1997).

Fragin has failed to file the required **certification**, and the trustee argues that I should not consider the motion. This argument has force, but I am inclined to decide the part of the motion dealing with the failure to provide the privilege log until June 9, 1997. First, Haddad's affirmation, dated June 25, 1997, although not called a **certification**, details counsels' communications on this issue. Second, the parties will never concur on this issue; *i.e.,* the trustee will not agree that she and her counsel have waived the work product protection and must produce otherwise privileged materials. [FN6] The balance of the other discovery issues, however, are not properly before me. In this regard, although Fragin's motion describes additional areas of dispute, it is unclear that the parties have exhausted informal efforts to resolve them.

FN6. I am not deciding that the documents on the privilege log are protected by the work product doctrine. The disposition of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

the waiver issue makes this unnecessary.

## DISCUSSION

### A. Introduction

**\*4** The party receiving a document request under Rule 34 must file her response and objections within thirty days. [FN7] She must respond to each request, and if she objects, she must state the reasons for the objection. Absent an objection, she must produce the documents in her possession, custody or control on the response date. An attorney or unrepresented party must sign the discovery response, and Rule 26(g) [FN8] of the Federal Rules of Civil Procedure imposes **certification** requirements similar to Rule 11.

> FN7. Rule 34(b) provides in pertinent part as follows:
> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties, subject to Rule 29. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

> FN8. Rule 26(g) states, in pertinent part, as follows:
> ....
> (2) Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. An unrepresented party shall sign the request, response, or objection and state the party's address. The signature of the attorney or party constitutes a **certification** that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the

request, response, or objection is:
(A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
(B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
(C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.
If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response, or objection, and a party shall not be obligated to take any action with respect to it until it is signed.
(3) If without substantial justification a **certification** is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the **certification**, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Objections based upon privilege must satisfy stricter requirements. Rule 26(b)(5) of the Federal Rules of Civil Procedure states:
> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Local rules amplify this requirement, and require a "privilege log". Bankr.S.D.N.Y. R. 7034-1(b), derived from S.D.N.Y. & E.D.N.Y. Civ. R. 46(e), *see S.N. Phelps & Co. v. Circle K Corp. (In re*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

*Circle K Corp.),* 1996 WL 529399, at \*2 n. 6 (Bankr.S.D.N.Y. June 11, 1996), *aff'd,* No. 96 Civ. 5801, 1997 WL 31197 (S.D.N.Y. Jan.28, 1997), states:

> If a claim of privilege is asserted in objecting to any document request or portion thereof, and an answer is not provided on the basis of the assertion, the objection shall identify:
>
> (1) the nature of the privilege being claimed, and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and
>
> (2) unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena *duces tecum,* including, where appropriate, the author of the document, the addressee of the document, the relationship of the author to the addressee, and the names of all entities receiving a copy of the document.

## B. Waiver of the Privilege

The failure to assert a timely privilege objection, and provide a privilege log, may result in a waiver of the privilege. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 166 (2d Cir.1992); *Hurst v. F.W. Woolworth Co.,* No. 95 Civ. 6584, 1997 WL 61051, at \*4 (S.D.N.Y. Feb.11, 1997); *Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.,* No. 93 Civ. 5375, 1996 WL 525862, at \*3 (S.D.N.Y. Sept.17, 1996) (citing cases); *Smith v. Conway Org., Inc.,* 154 F.R.D. 73, 76 (S.D.N.Y.1994) (citing cases); *AFP Imaging Corp. v. Philips Medizin Sys.,* No. 92 Civ. 6211, 1993 WL 541194, at \*3 (S.D.N.Y. Dec.28, 1993) (citing cases). Although waiver is a severe sanction, countervailing considerations often dictate the result. "Of relevance to such a determination is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties ." *AFP Imaging Corp.,* 1993 WL 541194, at \*3; *accord Hurst,* 1997 WL 61051, at \*4.

**\*5** *Hurst* illustrates when the sanction of waiver is appropriate. There, the plaintiff lost his job during a reduction in force, and sued alleging age discrimination. *Hurst,* 1997 WL 61051, at \*1. He served a document request which included an instruction that any objections based on privilege must be accompanied by a privilege log required under Southern District Civil Rule 46. *Id.* The defendant responded, producing some documents and raising confidentiality objections. *Id.*

At a subsequent discovery conference, the defendant represented that it had produced all responsive documents, and agreed to produce any additional documents that it located, or list them on a privilege log. *Id.* After the defendant had produced additional documents, the plaintiff expressed concern about the absence of a privilege log, and wrote to the defendant reminding it of its obligation to provide one. *Id.*

The plaintiff then took the defendant's deposition. At the first session, the witness revealed that he had prepared a written plan pertaining to the reduction in force, and had given it to counsel for review. *Id.* at \*2. After the deposition, the plaintiff demanded the written plan, stating that the defendant had waived any privilege by failing to provide a privilege log. *Id.* Eleven days later, the defendant served a privilege log that identified four documents, three of which related to the written plan. *Id.*

District Judge Haight concluded that the defendant had waived any privileges attaching to the four documents. First, the defendant had failed to produce a privilege log despite repeated warnings and threats of waiver. *Id.* at \*4. In fact, the defendant did not produce a privilege log until its witness identified the written plan at the deposition, and plaintiff asserted that any privilege had been waived. *Id.* Second, the defendant had failed to justify this delay. It did not claim that it was unaware that the documents existed or that it misunderstood the rule requiring the privilege log; it simply ignored the requirements of Local Civil Rule 46(e). *Id.* at \*5. Third, the plaintiff had suffered prejudice because he had to expend substantial time and expense to compel the defendant to comply with its discovery obligations. *Id.*

Fragin's motion presents a virtually identical fact pattern. Although the trustee's initial response to Fragin's document request raised a general objection "insofar as [the document request] seeks attorney work product, or attorney-client or otherwise privileged materials," it did not identify

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

any specific documents or provide a privilege log. Thereafter, Fragin prodded the trustee with at least three written requests--on March 19, March 31 and April 18, 1997--for a privilege log. The trustee's counsel represented on at least two occasions prior to the trustee's deposition that all responsive documents had been produced, and that no privileged documents existed.

*6 The trustee's counsel did not concede the existence of the witness interview notes, or provide a privilege log, until the trustee disclosed the existence of at least some witness interview notes at her deposition, and I expressly ordered the trustee to provide a privilege log. The latter identified five documents that existed prior to the date that the trustee responded by letter to Fragin's document request [FN9]:

> FN9. The first four documents listed plainly pre-date March 7, 1997. As to the fifth, the privilege log states that Henry Condell, Esq., counsel for the trustee, met with Michael Silberberg, Koenig's lawyer, "probably in or about early March 1997. Mr. Condell made two pages of notes, undated, at such meeting, which he retains." The trustee could have pinpointed the precise date of the meeting with Silberberg through a review of Mr. Condell's time records. Under the circumstances, I will treat these notes as having been written prior to March 7, 1997.

| --No. | Author   | No. of pages     | Description                                |
|-------|----------|------------------|--------------------------------------------|
| 1     | Condell  | 8 (handwritten)  | Meeting with Schick                        |
| 2     | Cassirer | 1 (typed)        | Conversation with Rokowsky                 |
| 3     | Condell  | 3 (handwritten)  | Meeting with Silberberg (Koenig's attorney)|
| 4     | Condell  | 1 (handwritten)  | Meeting with Silberberg (Koenig's attorney)|
| 5     | Condell  | 2 (handwritten)  | Meeting with Silberberg (Koenig's attorney)|

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

.Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

---------------------------------------------------------------------------------
---------------------------------------------------------------------------------

The trustee has not offered any justification for her failure to provide a privilege log initially or in the face of repeated requests, or for her counsel's representation, when specifically asked, that all responsive documents had been produced and that no witness interview notes existed. I do not mean to imply that the trustee or her counsel purposely hid these documents to prevent Fragin from learning that they existed. There is no evidence to support such a claim. However, it seems her counsel did not give the document request the serious attention it merited, and ignored the requirements imposed on producing parties under Rule 34. But for Fragin's persistence, these documents would have remained a secret. In this regard, Fragin suffered prejudice because he had to spend substantial time and money to compel the trustee to perform her discovery obligations.

Accordingly, I conclude that the trustee has waived any privilege with respect to these five documents, and must produce copies that have been redacted to exclude matters beyond the scope of Fragin's discovery request. The trustee has provided all of the documents for *in camera* review. The four handwritten documents are largely illegible, and unless the trustee produces each document in its entirety, she must provide typed versions of the handwritten notes to facilitate further *in camera* review and redaction. The one page typewritten document dated November 15, 1996, consists of two paragraphs and refers to two transactions. The first paragraph pertains to the transaction underlying the $1 million asset sale to Tress that is alleged in the trustee's first claim. Hence, the trustee may redact the second paragraph but must produce the first.

While this takes care of the pre-existing documents, Fragin also argues that the waiver extends to otherwise privileged documents that were prepared or came into the trustee's possession after March 7, 1997. Although neither party has briefed the issue, its resolution requires consideration of the rules governing the duty to supplement discovery responses.

**C. The Duty to Supplement Discovery Responses**

*7 Rule 26(e) of the Federal Rules of Civil Procedure governs the duty to supplement discovery responses. It provides as follows:

A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

(1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Rule 26(e)(1) applies to mandatory disclosure under Rule 26(a) which is not at issue. Further, the Court has not directed supplementary disclosure (beyond the production of a privilege log). Here, therefore, the trustee is under a duty to supplement or correct her original response and production "to include information thereafter acquired" only if (1) her prior response is "in some material respect incomplete or incorrect," and (2) Fragin has not otherwise learned of the additional or corrective information. [FN10]

FN10. Fragin's document request includes

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

.Not Reported in B.R.
**(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))**

an instruction describing his request as "continuing," and requires the trustee to produce additional responsive information and documents obtained subsequent to the production of the requested information. Fragin has not cited any authority authorizing one party to unilaterally impose greater discovery obligations on the other, and I doubt that the requesting party can do so. *Cf.* Fed.R.Civ.P. 26(f)(3) (parties' discovery plan shall indicate their views and proposals regarding changes in limitations on discovery imposed under the Federal Rules of Civil Procedure or local rules).

Admittedly, this may be a hard concept to grasp when applied to a document production. Unlike an interrogatory answer, it may be difficult to decide if an otherwise complete production is rendered *materially* incomplete or incorrect in light of information or documents acquired after the production. At a minimum, if a party responds to a request stating that no responsive documents exist, the party must modify the response and produce any responsive documents it subsequently discovers or obtains. *See, e.q., Llewellyn v. North American Trading,* No. 93 Civ. 8894, 1997 WL 177878, at *5-6 (S.D.N.Y. Apr.11, 1997) (after the plaintiffs asked for corporate documents and the defendants' initially responded that the subject entity was not a corporation, the defendants were required to produce later acquired documents relating to entity's merger into another corporation). In addition, a request addressed to the physical or mental condition, where the condition at the time of trial is itself material, may, by its nature, be continuing. *See, e.g., Arthur v. Atkinson Freight Lines Corp.,* 164 F.R.D. 19, 20 (S.D.N.Y.1995) (plaintiff in personal injury action required to produce records of subsequent medical treatment). But in the ordinary case, the subsequent acquisition of additional documents which would have been responsive to an earlier request had the responding party possessed them at that time, does not render the earlier response and production, without more, materially incomplete or incorrect.

**\*8** This brings us back to the extent of the waiver of the privilege. Fragin argues that the trustee waived her privilege through the date of the production of the privilege log--June 9, 1997--and

that he is also entitled to the documents acquired by the trustee after her original document response and created or acquired as part of her ongoing investigation and preparation. Fragin cannot prevail on a waiver argument unless he first establishes that the trustee was under an obligation to produce her later work product; absent an obligation to produce, there is no obligation to identify the documents in a privilege log. [FN11]

FN11. Fragin never explains the rationale for choosing the date of the privilege log as the bright line that divides the waived from the unwaived. Had the trustee complied with the privilege log rules, her log would have listed the five documents discussed above. Since the waiver results from the failure to log, it should go no further than the five unlogged documents. Even if the trustee had a continuing duty to update and supplement her privilege log, she would have to do so "seasonably," Fed.R.Civ.P. 26(e)(2), and not immediately as each new document was created. The June 9 log may constitute a "seasonable" supplementation of information relating to the documents created or obtained after March 7, 1997. Given the disposition of the motion, I need not address this issue which neither party has briefed.

Here, Fragin has failed to show how the later acquired documents or information render the trustee's prior responses or production incorrect or incomplete in a *material* way, [FN12] or that their production is necessary to correct or complete the prior production and response. Rather, Fragin's motion rests on the incorrect premise that the trustee is under a continuing and unconditional duty to produce responsive documents regardless of when or how they are created or obtained. This overstates the law. The responding party is under a continuing burden to monitor the accuracy of her prior responses in light of new information, Robert L. Haig & John P. Marshall, *Complex Litigation: Corporate Discovery Strategy,* 12-13-96 West's Legal News 13298, 1996 WL 711750, at 7, but Rule 26(e)(2) does not impose the duty to produce the new or additional information except in limited circumstances. [FN13]

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
**(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))**

FN12. Obviously, the March 7, 1997 response and production were misleading to the extent they implied that the five documents discussed above did not exist. As a result of the waiver of the privilege, the trustee must produce these documents in redacted form. Conversely, the failure to produce or specifically log drafts of legal memoranda, deposition outlines or internal communications regarding strategy does not render the prior response and production materially incomplete or incorrect. These internal documents are undoubtedly privileged and Fragin could not have expected to procure their production through his document request.

FN13. Under Fragin's approach, the trustee and her attorneys would be obligated to continually update privilege logs to reflect the subsequent creation of internal memoranda, drafts and other work product. Further, an unconditional obligation to produce newly-acquired non-privileged documents would enable Fragin to ride the tail of the trustee's continuing investigation, without doing his own.

Accordingly, I conclude that Fragin has failed to demonstrate that the trustee was under a duty to supplement her prior response and production, and produce (or identify in a privilege log) work product or non-privileged documents thereafter created by her or her attorneys or obtained through her own efforts.

**D. Sanctions**

The final aspect of Fragin's **motion** seeks **sanctions** against the trustee and her counsel. Although his notice of motion does not identify the statute or rule under which he seeks sanctions, his moving memorandum of law refers to **Rules 37**(a)(4) and 37(c) of the Federal Rules of Procedure. *Memorandum of Law in Support of Defendant's Motion to Compel Disclosure and for Sanctions,* dated June 25, 1997, at 16-18. **Rule 37**(c) [FN14] applies to the failure to make mandatory disclosures under Rules 26(a)(1) and Rule 26(e)(1) and the unreasonable failure to admit under Rule 36. Since Fragin's motion does not involve these provisions,

Rule 37(c) is inapplicable.

FN14. **Rule 37**(c) provides as follows:
(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.
(2) If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

Rule 37(a)(4), which is germane, provides, in pertinent part, as follows:
(A) If the motion [to compel discovery] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

. Not Reported in B.R.
(Cite as: 1997 WL 465217 (Bankr.S.D.N.Y.))

incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.
*9 ....
(C) If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

**Rule 37** sanctions serve several interrelated purposes. They prevent the offending party from profiting from its own noncompliance, compensate the moving party and the court, deter future violations by the offending party and other litigants and penalize the offending party, and sometimes, the party's attorney. *Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 71 (2d Cir.1988); *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1453 (11th Cir.1985); *see Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763-64, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Courts have broad discretion in imposing sanctions under **Rule 37.** *Corporation of Lloyd's v. Lloyd's U.S.,* 831 F.2d 33, 36 (2d Cir.1987); *Smith v. Conway Org ., Inc.,* 154 F.R.D. at 78. The court may apportion the fault between the party and its counsel and award sanctions in proportion to that fault. 7 James William Moore, *Moore's Federal Practice* § 37.23[4][a], at 37-47 to 37-48 (3d ed. 1997) (" *Moore's* "). If the court partially grants and partially denies the motion, **Rule 37**(a)(4)(C) permits the court to apportion the expenses between the parties "in a just manner," and to refuse to shift any expenses to the non-moving party if its objections were substantially justified. *Smith v. Conway Org., Inc.,* 154 F.R.D. at 78, 7 *Moore's* § 3723 [[[4][b], at 37-48 to 37-49.

Here, I may apportion the expenses between the parties because Fragin's motion has met with mixed success, garnering an order to compel the production of the relevant portions of only five documents. Moreover, the trustee's opposition to

the other disclosure sought by Fragin was substantially justified. She successfully argued that Fragin had failed to file the required good faith **certification,** and successfully challenged Fragin's fundamental and erroneous premise that she was under a continuing obligation to supplement her privilege logs and production as to documents created or obtained after March 7, 1997, *see Declaration of Lee Strembla In Opposition to Rule 37 Motion,* dated July 3, 1997, at ¶¶ 5, 6, 10-13, losing only on the waiver issue. Thus, much of the motion practice initiated by Fragin violated the rules governing motions to compel, and was unwarranted.

While the circumstances would permit me to require the parties to bear their own expenses, *see Tri-Star Pictures, Inc. v. Unger,* 171 F.R.D. at 103-04, some sanction is nevertheless appropriate. The trustee and her counsel should be penalized for their frequent disregard of the requirements and formalities of discovery under the Federal Rules of Civil Procedure and this Court's local rules. Further, neither the trustee nor her counsel have bothered to explain why Alter misrepresented the non-existence of the witness interview notes. If he did not conduct a diligent search or canvass the other attorneys working on the matter, that would at least be an explanation, although an unsatisfactory one. I find it troubling that counsel has never acknowledged the mistake. Finally, since the trustee is a partner in the firm that represents her, I am unable to apportion the award. Accordingly, I award a monetary sanctions in the sum of $500.00 against the trustee and her counsel, which shall not be paid from the estate.

**\*10** The parties are directed to settle an order in conformity with this decision.

1997 WL 465217 (Bankr.S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works