UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CADLE COMPANY, ET AL,            :        CIVIL ACTION NO.
                Plaintiff,        :        3:01- CV-531 (AVC)
                                  :
V.                                :
                                  :
CHARLES A. FLANAGAN, ET AL.       :
                Defendants.       :        MARCH 26, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL OR, IN THE ALTERNATIVE, MOTION TO PRECLUDE

Pursuant to Rule 7(a)(1) and Rule 37(a)(3) of the Local Civil Rules of the United States District Court for the District of Connecticut, the defendants, Stanley F. Prymas ("Prymas") and Thompson & Peck, Inc. ("T&P"), respectfully submit this memorandum of law in support of their Motion to Compel Compliance with the Court's Standing RICO Order ("Standing Order") and Discovery Requests or, in the Alternative, to Preclude, dated March 24, 2004.  In further support of this motion, and in accordance with local rules, defendants Prymas and T&P submit an affidavit of counsel regarding good faith efforts to resolve this issue among counsel.  Notwithstanding those efforts, the issues could not be resolved.

I.    **BACKGROUND FACTS**

Plaintiffs allege that in the early 1990s, defendants Flanagan and his wife Lisa Flanagan borrowed a substantial amount of money from banks and financial institutions to purchase investment properties.  See Second Amended Complaint dated August 30,

2002 ("Complaint") at ¶ 9. Plaintiffs allege that Flanagan transferred title of the investment properties to various "d/b/a's", and allegedly placed "bogus" liens on one of his parcels of property. (See Complaint at ¶ 10). Additionally, plaintiffs claim that Flanagan and his wife filed "Chapter 7 (no asset) bankruptcy" on October 19, 1995. (See Complaint at ¶ 17).

Plaintiffs assert that in 1996, plaintiff The Cadle Company (hereinafter "Cadle") filed suit against Flanagan in the United States District Court for the District of Connecticut ("Cadle I"[1]), obtaining a judgment against Flanagan in the amount of $93,519.38 on March 20, 1997. (See Complaint at ¶ 19). Plaintiffs allege that during these proceedings, Flanagan attempted to prevent plaintiffs from collecting on the debt by performing and undertaking a series of actions that were deceptive. (See Complaint at ¶¶ 20-26). However, plaintiffs admit that Flanagan ultimately paid the judgment in full. (See Complaint at ¶ 36).

Plaintiffs further admit that Flanagan and his father lawfully signed a pledge and security agreement for Flanagan's share of the Thompson stock, the effective date of which was the date that Judge Covello vacated the injunction prohibiting Flanagan from transferring his assets. (See Complaint at ¶ 36). Lastly, plaintiffs claim that Flanagan filed Chapter 11 bankruptcy protection in order to recoup the payment he made to the plaintiffs in satisfaction of the judgment previously mentioned.[2] (See Complaint at ¶ 70). Plaintiffs also allege that Flanagan committed bankruptcy fraud by listing a false debt

---

[1]  The Cadle Company v. Flanagan, 3 : 96 CV 02648 (AVC).
[2]  In connection with this allegation, plaintiffs have failed to inform the Court that Section 547(b) of the Bankruptcy Code prohibits the transfer for the benefit of the bankruptcy estate, and any recovery may only be distributed to Flanagan's creditors, including Cadle. (See Bankruptcy Code, 11 U.S.C. § 547(b)).

owed to the defendant Socrates Babacas (hereinafter "Babacas"), failing to list an alleged debt owed to Sharon Demetropoulous (hereinafter "Demetropoulous"), failing to list his ownership interests in three rental properties, testifying falsely at the creditors' Section 341 meeting that he did not own any real estate, and failing to disclose the rental income received from his rental properties (See Complaint at ¶ 72).

As to Prymas and T&P, specifically, plaintiffs claim that Prymas and/or T&P:  (1) directed T&P's corporate attorney, defendant Todd Bainer ("Bainer") to prepare a shareholders' buy-sell agreement (See Complaint ¶¶ 46-49;); (2) agreed to place a restrictive legend on Flanagan's T&P stock in connection with the shareholders' buy-sell agreement (Complaint ¶¶ 46-49); (3) recharacterized the reimbursement of monies owed to Flanagan by T&P as wages (Complaint ¶59); (4) submitted a claim exemption form, signed only by Flanagan on behalf of T&P, stating that T&P held no property due to Flanagan except wages (Complaint ¶60); and (5) on advice of their counsel, filed responses to post-judgment interrogatories stating the T&P knew of no funds that were owed to Flanagan except for wages (Complaint ¶¶ 61-62).

Significantly, even though plaintiffs allege that they were damaged by the above actions, **plaintiffs recovered the judgment against Flanagan in Cadle I in full.** (See Complaint at ¶ 36).  Plaintiffs' claim, therefore, apparently stems from their inability to collect other judgments in other cases against Flanagan in which Prymas and T&P had no involvement other than filing answers to post-judgment interrogatories, on the advice of counsel.

## II.  **PROCEDURAL POSTURE**

Plaintiffs commenced this action on April 4, 2001 with a 40-page complaint and 30 exhibits. The operative complaint (i.e., the Second Amended Complaint dated August 30, 2002) initially contained two counts: the First Count alleging violations of Sections 1962(b), (c), and (d) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and the Second Count alleged claims of tortious interference by defendants with plaintiffs' right to enforce and realize the benefits from their judgments against defendant Flanagan. Defendants filed a Motion to Dismiss on August 31, 2001, seeking to have all claims against them dismissed. On March 27, 2002, the Court granted the motion as to the tortious interference claim, but denied defendants' motions as to the RICO count. Consequently, the only remaining count against each defendants is the RICO claim. However, the operative complaint, the Second Amended Complaint does not allege any conduct by either Prymas or T&P that constitutes a "pattern of racketeering activity" sufficient for the imposition of substantive liability under RICO, under 18 U.S.C. §§ 1962(b) or (c), or conduct sufficient to establish a RICO conspiracy under § 1962(d)[3]. As a result, since the subsequent pleadings and discovery have also failed to produce any evidence of a pattern of predicate acts or a RICO conspiracy, defendants Prymas and T&P now seek an order requiring the plaintiff to disclose the basis for the claim against them.

---

[3]  It is black letter law in this Circuit that there can be no liability for participating in a RICO conspiracy under § 1962(d) without a finding of a substantive RICO violation under § 1962(b) or (c). E.g., Kades v. Organic, Inc., No. 00 Civ. 3671 LTSRLE, 2003 WL 470331 (S.D.N.Y. February 24, 2003) slip op. at 14.

III.   **PLAINTIFFS' RICO CASE STATEMENT**

On April 23, 2001, plaintiffs served and filed their RICO Case Statement. See plaintiffs' RICO Case Statement, dated April 23, 2001 ("RICO Case Statement"), attached as Exhibit A. The RICO Case Statement, much like the complaint, contains a series of conclusory allegations, in the nature of jury argument, particularly with respect to Prymas and T&P. More importantly, it fails to advise Prymas and T&P of the specific claims against them. Specifically, the RICO Case Statement fails to specify the purported predicate acts with sufficient specificity to apprise Prymas and T&P what predicate acts they are claimed to have committed and how they allegedly participated in a RICO conspiracy.

Plaintiffs have clearly failed to comply with Sections 2, 5(a), 5(b), 5(c), 5(f), 12, 13, and 14 of the Court's Standing RICO Order. Specifically, with respect to Prymas/T&P, plaintiffs failed to set forth : (1) the basis of liability as to each defendant (Standing Order § 2); (2) any alleged predicate acts and the specific statute that Prymas/T&P purportedly violated (id., §5a); (3) the dates, participants and background facts of the purported predicate acts (id., § 5b); (4) the requisite specificity as to the time, place and contents of any misrepresentations, as well as the identity of persons to whom and by whom the alleged misrepresentations were made (id., § 5c); (5) the manner in which the predicate acts form a pattern of racketeering activity (id., § 5f); (6) the identities of individuals who are employed by or associated with the alleged enterprise (id., § 13a); and (7) the details of an alleged conspiracy (id., § 14).

Counsel for the defendants have made good faith efforts at obtaining information by contacting plaintiffs' counsel to request more particular statements and supporting

5

documents pertaining to the alleged predicate acts as put forth in the RICO Case
Statement.  See Affidavit of Barbara L. Cox dated March 24, 2004 ("Cox Affidavit") at ¶¶
2-5, attached as Exhibit C.  However, plaintiffs refused, and continue to refuse,
defendants' request for more particular statements and documents pertaining to the
alleged predicate acts.  (See Cox Affidavit at ¶ 6).

Furthermore, Prymas and T&P sought to obtain this information through written
discovery.  Specifically, on May 23, 2003, plaintiff was asked to specify each and every
alleged predicate act committed by defendants Prymas and T&P.  However, plaintiffs
did not answer the interrogatory responsively.  Instead they simply incorporated (1) their
Second Amended Complaint and (2) "the discovery conducted or to be conducted in
this case . . . ."  See Plaintiffs' Responses to Interrogatories 6 and 7, dated November 7,
2003, attached as Exhibit B.  As a result, Prymas and T&P bring the instant motion to
compel plaintiffs compliance with the Court's Standing RICO Order, their interrogatories
6 and 7, or, in the alternative, Motion to Preclude plaintiffs from introducing evidence
regarding Prymas or T&P's alleged predicate acts in furtherance of the supposed
racketeering activity.

IV.    ARGUMENT

This District, like many others,[4] requires any civil RICO plaintiff to file, at the very
beginning of a case, a RICO Case Statement.  This requirement is not an empty

---

[4]  The practice in the District of Connecticut is not unusual.  In fact, the Federal
Judicial Center has prepared a model RICO case statement, which is contained in the
Manual For Complex Litigation, Sample Form 41.54(3d ed. 1995).  See also N.Y. State
Bar Ass'n Commercial & Fed. Litig. Section, The Civil RICO Case Statement 21-24
(1989), reprinted in [1990] RICO Bus. Disputes Guide (CCH) ¶ 7453 at 10,280-81 (May

formality.  Rather, the Case Statement is intended to require the plaintiff to "amplify[]
and clarify[] the allegations in the pleadings" and to "help narrow the issues and allow
early identification of claims insufficient on their face . . . ."  Manual For Complex
Litigation § 33.81, at 382.  See also Commercial Cleaning Services, L.L.C. v. Colin
Service Systems, Inc., 271 F.3d 374,  386 (2d Cir. 2001) ("A standing order of this
nature may appropriately require a plaintiff to set forth the information it possesses in
helpfully categorized form, as an aid to the court and to the accused defendant.")
(emphasis added).  The RICO Case Statement is a useful tool for the court in analyzing
the claims on dispositive motions.  See, e.g., McLaughlin v. Anderson, 962 F. 2d 187,
189, (2d Cir. 1992).

      Numerous courts have stressed the importance of complying with RICO case
statement orders.  See Marriott Bros. v. Gage, 911 F.2d  1105, 1107 (5th Cir. 1990) (a
RICO case statement is a "useful, sometimes indispensable, means to understand the
nature of the claims asserted and how the allegations satisfy the RICO statute").  In fact,
under certain circumstances, failure to comply with an order requiring a RICO case
statement may result in dismissal of the action or sanctions.  See Gould v. National
Westminster Bank, No. 3:99-CV-01892, 2000 WL 1339520 (D. Conn. August 8, 2000)
(dismissing plaintiff's RICO claims for non-compliance with the Standing Order in Civil
RICO Cases of the Local Rules of Civil Procedure for the United States District Court,

---

1990).  The requirement of a RICO Case Statement appears to be widespread.  See,
e.g., Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991) (District of Puerto Rico
requirement); Florida Evergreen Foliage v. E.I. DuPont de Nemours and Co., 165 F.
Supp.2d 1345, 1348 (S.D. Fla. 2001); Poling v. K. Hovnanian Enterprises, 99 F.
Supp.2d 502, 508 (D.N.J. 2000); Gomes v. Allstate Ins. Co., No CV98 6595 ABC
RNBX, 1998 WL 777056, *2 (Sept. 10, 1998, C.D. Cal.); Ifert v. Miller, No. 90-0758

District of Connecticut); Figueroa Ruiz v. Alegria, 896 F.2d 645, 648-649 (1st Cir. 1990)

(affirming dismissal of RICO claim with prejudice for failure to comply with order to file a

detailed explanation of the facts supporting the claim); Petrochem Insulation, Inc. v.

Northern Cal. & N. Nev. Pipe Trades Council, 1992 WL 131162 (N.D. Cal. 1992)

(dismissing plaintiff's RICO claim because of failure to comply with the court's standing

order regarding pleading with particularity in RICO cases) aff'd, 8 F.3d 29 (9th Cir.

1993); Davis v. A.G. Edwards & Sons, Inc., 687 F. Supp. 266, 267-69 (W.D. Louisiana,

1988) (dismissing RICO claim for failure to comply with Standing Civil RICO Order

because plaintiff could not meet the heightened pleading requirements of Fed.R.Civ.P.

9(b) that is required for RICO predicate acts).  As a result, our federal courts have

decreed that failing to comply with the Court's RICO Standing Order can be fatal.

### A.  Plaintiff's RICO Case Statement is Insufficient.

Plaintiffs' RICO Case Statement is wholly inadequate.  The RICO Case

Statement filed by plaintiff in this case does nothing to clarify, narrow or categorize

issues or information.  To the contrary, it is a cut-and-paste job that simply reproduces

the prolix complaint's conclusory allegations, essentially verbatim, with an occasional

new heading thrown in to complicate matters still further.  The document fails to do the

basic work required of a RICO Case Statement, which is to categorize the required

information in a prescribed form designed to facilitate analysis of the complaint's legal

sufficiency under RICO, a complex statutory scheme with manifold elements.

---

MISC, 1991 U.S. Dist. LEXIS 4813 (E.D. Pa. Apr. 12, 1991), aff'd, 981 F.2d 1297 (3d
Cir. 1192); Collective Fed. Sav. V. Creel, 746 F. Supp. 1307 (M.D. La. 1990).

First, Item 2 under the Standing Order requires a plaintiff to "state in detail" the following information: "The identity of each defendant and the alleged misconduct and basis of liability of each defendant." In response to this requirement, plaintiff has inserted a 29 page verbatim copy of paragraphs 6 through 76 of the complaint in unnumbered form. See RICO Case Statement, pp. 4-32. This cut-and-paste approach serves no useful function and does not comply with either the letter or spirit of the Standing Order.

Second, Item 5 under the Standing Order requires specification of seven categories of information about the "pattern of racketeering activity" alleged in each RICO claim. Plaintiffs have simply lifted, verbatim, pages of the Second Amended Complaint to supply an answer. See RICO Case Statement pp. 34-37 (reproducing pp. 38-41 of Second Amended Complaint).

Plaintiffs do not attempt to provide specific information as required by Section 5(a) of the RICO Case Statement (Pattern of Racketeering Activity). Rather, plaintiffs assert only general conclusory statements with respect to "defendants" in general.

With respect to Section 5(a), plaintiffs do not distinguish among any of the collective defendants, an omission that is insufficient to allow Prymas and T&P to identify each's purported conduct that constitutes an alleged predicate act under RICO.

The allegations, moreover, do nothing more than provide citations to the United States Code and recite the generic description of criminal conduct proscribed thereunder (e.g., bankruptcy fraud, mail fraud, wire fraud, etc.) Most egregiously, however, plaintiff does not identify which *particular* defendant(s) committed which *particular* predicate act, as required by Item 5(b)of the Standing Order; nor do they

provide (with respect to each allegation of wire or mail fraud) the time, place, contents, sender and receiver of the alleged misrepresentations, as required by Item 5(c) of the Standing Order.

By way of example, plaintiffs assert the following for the description of the pattern of racketeering activity:

> The Defendants engaged in a pattern of wrongful conduct involving bankruptcy fraud, mail fraud and wire fraud to acquire an interest in and to maintain control over the affairs of Flanagan's financial empire. Further, the Defendants combined together to engage in a pattern of wrongful conduct involving bankruptcy fraud, mail fraud and wire fraud to fraudulently transfer and otherwise maintain custodianship over Flanagan's assets.

See RICO Case Statement at p. 34. It is clear that plaintiffs have not set forth the pattern of racketeering activity with the specificity required under the law and the Standing Order.

In Sections 5(b) and 5(c), plaintiffs merely refer the defendants to the narrative set forth in Section 2 of the RICO Case Statement. For example, Section 5(c) requires a RICO plaintiff to provide:

> if the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the 'circumstances constituting fraud or mistake shall be stated **with particularity**.' Fed. R. Civ. P. 9(b). The time, place and contents of the alleged misrepresentation, and the identity of the persons to whom and by whom the alleged misrepresentations were made **shall be identified**. (emphasis added).

The response provided by plaintiffs is simply: "The circumstances constituting mail fraud and wire fraud are set forth in detail and discussed in §2 above." (RICO Case Statement at p. 36.)

However, § 2 of the RICO Case Statement, as noted above, merely reprints 29 pages of the complaint verbatim.  In other words, plaintiffs have defendants and the Court running in circles looking for the answers that plaintiffs are required to provide in organized fashion under the Standing Order.  In the end, defendants are told to wade through the very document that the RICO Case Statement is intended to clarify, narrow and categorize: the complaint.

Moreover, the 29 pages of narrative do not specify <u>any</u> predicate act committed by Prymas or T&P.  In fact, each of the references to Section 2 contains no specific dates of predicate acts, does not identify the participants in the predicate acts, and gives only a general description of the facts forming the basis of plaintiffs' claims.  <u>See</u> RICO Case Statement at § 2.

This same deficiency in more egregious form exists in plaintiff's RICO Case Statement in response to Item 5(f) (RICO Case Statement p. 37, referring reader to unspecified conduct "described herein."

Section 12 of the Court's Standing RICO Order provides "[i]f the complaint alleges a violation of 18 U.S.C. § 1962(b), describe **in detail** the acquisition or maintenance of any interest in or control of the alleged enterprise."  <u>See</u> Standing RICO Order at § 12 (emphasis added).  Plaintiffs fail to specify any "acquisition or maintenance of any interest" that Prymas or T&P had in any alleged enterprise.  Rather, the RICO Case Statement states simply that Prymas and T&P participated in the scheme, not how they allegedly participated.

Section 13 of the Standing Order requires that:

> [i]f the complaint alleges a violation of 18 U.S.C. Section 1962(b), provide the following information:

    a. The individuals who are employed by or associated with the enterprise; and

    b. Whether the same entity is both the liable 'person' and the 'enterprise' under § 1962(c).

Instead of naming the individuals, plaintiffs' Item 13 states merely that "[t]he *Defendants and other wrongdoers* are associated with the enterprise," without naming which defendants and which other "wrongdoers." Although the plaintiffs name individuals allegedly associated with certain events, they fail to clarify the alleged "enterprise" with which the individuals are associated, and they fail to specify any facts that supports their contention of the existence any alleged enterprise. See RICO Case Statement at § 13. Additionally, plaintiffs fail to state *with particularity* whether the same entity is both the liable "person" and the "enterprise" under Section 1962(c), an issue of particular importance to T&P, identified in the complaint as an enterprise.

Section 14 provides that "[i]f the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy." The RICO Case Statement obliquely refers to a quagmire of events in which Prymas and T&P are alleged to have participated, but nowhere in the RICO Case Statement do the plaintiffs provide sufficient particularized information as to Prymas or T&P's connection to the alleged conspiracy.

Conclusory statements without any basis for support are not sufficient to meet the requirements of the Standing Order in Civil RICO Cases. See Standing Order in Civil RICO Cases §§ 2, 5, 12, 13, and 14. It is not enough for the plaintiffs to construct a convoluted narrative of people, places, and events that are allegedly connected in some peculiar fashion to sustain a RICO cause of action. The Rules require the plaintiffs to set forth **in detail** specific information in precise categories, in order to

determine the predicate acts that each and every defendant participated in and the alleged connection each one had to the so-called enterprise. See Standing Order in Civil RICO Cases §§ 5, 12, 13, and 14 and Fed.R.Civ.P. 9(b). Plaintiffs have failed to provide this essential information.

The plaintiffs' failures to specify predicate acts are significant. The law requires that the plaintiffs plead the predicate acts with particularity in order to state a claim under RICO. Zito v. Leasecomm Corp., No. 02Civ. 8074 (GEL), 2003WL 222513 at *13 (S.D.N.Y. Sept. 30, 2003). More important, the courts have held that there is no valid RICO claim where the plaintiff fails sufficiently to allege predicate acts and, consequently, the claim must be dismissed. Medina v. Bauer, No. 02Civ.8837 (DC), 2004Wl136636 at *5 (S.D.N.Y. Jan. 27, 2004). In short, the plaintiffs are not permitted to give general information to support a RICO claim; they must instead state with specificity the predicate acts Prymas and T&P allegedly engaged in, how those acts allegedly violate RICO (i.e. the specific statute violated) and the manner in which the alleged predicate acts form a pattern of racketeering activity. Failure to do so can be fatal.

Needless to say, this Court has the authority to require compliance with the Standing Order. See Gould v. National Westminster Bank, No. 3:99-CV-01892 (EBB), 2000 WL 1339520, at *3 (Aug. 8, 2000 D, Conn.) (dismissing RICO count for failure to comply with Standing Order in Civil RICO Cases). While we do not at this time seek dismissal of plaintiffs' RICO claim based on their non-compliance, we respectfully ask this Court to compel plaintiffs to file an amended RICO Case Statement in compliance with the Standing Order, forthwith.

Typically, Prymas and T&P would seek only an order compelling a supplemental Case Statement. However, a supplement will not, at this late stage in the case, cure the confusion and circularity of this Case Statement. A supplemental Case Statement will only add to the prejudice, particularly if the supplemental statement adds new facts or claims not previously identified, which in turn will require additional discovery, postponement of trial, disclosure of experts, etc. Rather, plaintiffs must be required immediately to file a Case Statement that complies strictly with the Standing Order and does not simply repeat the hyperbolic allegations of the complaint, without the organization required by the Standing Order.

If plaintiff refuses to cure the defective Case Statement timely, the evidence of Prymas' and T&)'s "predicate Acts" must be precluded. Defendants sought to resolve this issue on several occasions, but each time, plaintiffs continued to prosecute this claim in bad faith. First, Prymas and T&P sought to elicit this information through written discovery, but plaintiffs did not comply. Instead, after months of delay, they simply incorporated their complaint and "the discovery conducted" for the past three years. Second, after a conference call specifically to address this issue, plaintiffs' counsel refused to supplement their interrogatory responses. As a result, respectfully, the only appropriate remedy is to preclude that which plaintiffs have failed to disclose in compliance with the Court's Standing Order.

## B. Plaintiff's Interrogatory and Production Request Responses are Likewise Inadequate.

Additionally, plaintiffs should be compelled to respond fully to Prymas and T&P's Interrogatories regarding predicate acts. Instead of answering Interrogatories 6 and 7,

plaintiffs simply incorporated (1) their Second Amended Complaint and (2) "the discovery conducted or to be conducted in this case . . . ." See Exhibit B. Such a response, particularly in light of an insufficient RICO Case Statement, is not simply inappropriate; it is egregious. More important, it is proof of plaintiffs' continued disregard of the Court's Order. As a result, at this late date, if the Court is not inclined to preclude evidence of RICO acts, it must compel full and fair disclosure of those acts, both in plaintiffs' RICO Case Statement, as well as their discovery compliance.

A plaintiff is required to respond to Interrogatories and Production Requests regarding RICO claims, including predicate acts, in the later stage of discovery. McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996). Moreover, the "later stage" in McCarthy was not as advanced as the proceedings in the present case. Since the parties are only two months from trial and the plaintiffs have refused to provide the information in discovery, the Court should preclude evidence of unidentified "predicate acts" by Prymas and T&P at trial. If, however, the Court is not inclined to preclude such evidence, the Court should compel plaintiffs to immediately amend both their Case Statement and their discovery compliance.

## V.    **CONCLUSION**

For the foregoing reasons, defendants Prymas and T&P respectfully request that the Court grant their Motion to Compel and/or Motion to Preclude as a result of plaintiffs' failure to comply with the Court's Standing Order, and failure to remedy their non-compliance through written discovery.

Finally, defendants Prymas and T&P also seek attorneys' fees, costs, and such other relief that the Court may deem proper, in connection with the instant motion.

RESPECTFULLY SUBMITTED,
THE DEFENDANTS STANLEY F.
PRYMAS and THOMPSON &
PECK, INC.

By: _____

BARBARA L. COX
Federal Bar #ct08523
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT  06509
Tel:  203-624-4165
Fax:  203-865-5598