**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

THE CADLE COMPANY, ET AL       :     CIVIL ACTION NO.
     Plaintiffs                :     3:01CV531(AVC)
                               :
VS.                            :
                               :
CHARLES A. FLANAGAN, ET AL      :     APRIL 27, 2004
     Defendants

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

I.      **BACKGROUND**

     Plaintiffs, The Cadle Company and D.A.N. Joint Venture, brought the instant civil RICO

action pursuant to 18 U.S.C. §1964, alleging that the defendants are jointly and severally liable

to them for scheming to defraud plaintiffs of money due them from defendant, Mr. Charles

Flanagan (herein "Flanagan"), pursuant to 18 U.S.C. §§1962 (b), (c), and (d).  Specifically,

plaintiffs allege to be the owners and holders of over $2.4 million in judgment and other debt

claims against Flanagan (Second Amended Complaint dated August 30, 2002 (herein

"Complaint") at paragraph 1).  Plaintiffs further claim that a fraudulent conspiracy existed

between Flanagan, his wife and other family relatives, friends and business associates to transfer,

hide and otherwise shield the substantial assets of Flanagan from the claims of plaintiffs

(Complaint at paragraph 1).

At all times relevant to the Complaint, defendants Todd R. Bainer and Todd R. Bainer, L.L.C. (herein "Bainer") was corporate counsel to defendant, Thompson & Peck, Inc. (herein "T & P"), an insurance agency co-owned by Flanagan and defendant, Stanley F. Prymas (herein "Prymas").

## II.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED.R.CIV.P. 56, a party seeking to recover upon or defeat a claim may, with or without supporting affidavits, move for a summary judgment in that party's favor upon all or any part of the claim, if the evidence submitted shows that there are no disputed issues of material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Id. at 327 (1986) (citations omitted).

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact (i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party) and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-252 (1986). The substantive law of the claim will identify which facts are material and only those

facts that might affect the outcome of the suit will properly preclude summary judgment.

Anderson, 477 U.S. at 248 (1986).  The trial judge's function is not to weigh the evidence to

determine the truth of the matter, but to determine whether there is a genuine issue for trial.  (Id.)

The court must resolve all ambiguities and draw all reasonable inferences in favor of the

non-moving party.  Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## III.    STANDING UNDER RICO

"Civil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear

device.  Because the mere assertion of a RICO claim … has almost inevitable stigmatizing effect

on those named as defendants, … courts should strive to flush out frivolous RICO allegations at

an early stage of the litigation."  Ideal Steel Supply Corp. v. Anza, 254 F. Supp. 2d 464,468

(S.D.N.Y. 2003).

RICO grants standing to sue to "(a)ny person injured in his business or property by

reason of a violation of §1962 of this chapter."  18 U.S.C. §1964(c).  The phrase "by reason of"

"limits standing to plaintiffs whose injuries were both factually and proximately caused by the

alleged RICO violation."  Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 262

(1992).  Further, as set forth in §1961(5) "a violation of §1962" means that a defendant must

have committed two or more predicate acts as defined by §1961(1).  Additionally, plaintiffs must

establish that each defendant's violations of the RICO statute proximately caused plaintiffs'

injuries in order to have standing for a RICO claim. <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 120-24 (2d Cir. 2003); <u>Oak Beverages, Inc. v Tomra of Massachusetts, L.L.C.</u>, 96 F. Supp.2d 336, 342-43 (2d Cir. 1995). "In other words, a plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately cased by some non-RICO violations committed by the defendants." <u>Baisch v. Gallina</u>, 346 F.3d 366, 373 (2d Cir. 2003).

Where a plaintiff bases RICO liability on predicate acts of fraud, the proximate cause requirement means that the plaintiffs must prove both transaction and loss causation. <u>Id</u>. at 343. "Transaction causation" means that the fraud must have led plaintiffs to enter into the transactions at issue. "Loss causation" means that the fraud must be both actual and a proximate source of the loss that plaintiffs suffered. <u>Odyssey re (London) Limited v. Stirling Cooke Brown Holdings Ltd.</u>, 85 F. Supp. 282, 302 (S.D.N.Y. 2000).

> Thus, in addition to showing that but for the defendant's misrepresentations the transaction would not have come about, the defendant must also show that the misstatements were the reason the transaction turned out to be a losing one. Additionally, when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.

<u>Oak Beverages, Inc.</u>, 96 F. Supp. 2d at 343 (quotations and citations omitted).

Also, when RICO liability is based on predicate acts of mail or wire fraud the plaintiff must adequately demonstrate reliance on the defendant's misrepresentations' in order to establish

4

proximate cause.  Metromedia Co. v. Fugazy, 983 F. 2d 350, 368 (2d Cir. 1992); Oak Beverages, Inc, 96 F. Supp. 2d at 343 (citations omitted); Difiore v. DiLorenzo, 1997 WL 722697 at p. 6 (E.D.N.Y. 1997).  Although detrimental reliance is not an element of mail or wire fraud claims generally, a plaintiff seeking to base RICO liability on these predicate acts must prove that its injuries are the result of reliance on the fraud.  Falise v. American Tobacco Company, 94 F. Supp. 2d 306, 334 (E.D.N.Y. 2000) (citing Arthur F. Mathew, Andrew B. Weissman, and John H. Sturc, 2 Civil RICO Litigation, Section 8.04 [B] [1] p. 8-44 (2d Ed. 1992).

Lastly, allegations of fraud must be pled with particularity under the heightened pleading requirements of FED.R.CIV.P. 9(b).  First Capital Asset Management, Inc. v. Brickellbush, Inc., 219 F. Supp. 2d 576, 581 (S.D.N.Y. 2000); Lakonia Management Ltd. v. Meriwether, 106 F. Supp. 2d 540, 553 (S.D.N.Y. 2000).  "Plaintiffs must allege the manner in which the allegedly fraudulent statement misled them and what defendants obtained as a consequence of the fraud". Lorentzen v. Curtis, 18 F. Supp. 2d 322, 329 (2d Cir. 1996).

> [3][4] Rule 9(b) requires that the circumstances of fraud be alleged with particularity.  This requires reasonable detail as well as the allegation of facts from which a strong inference of fraud reasonably may be drawn.  Moreover, allegations made on information and belief are insufficient "'unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief.'"

 First Capital Asset Management, Inc., 219 F. Supp. 2d at 581.

A.    **ANALYSIS OF ALLEGED PREDICATE ACTS FOR PROXIMATE CAUSATION**

To analyze proximate cause under this line of cases, one must look at plaintiffs' allegations against Bainer.  Plaintiffs have in both their Complaint and their RICO Case Statement dated April 23, 2001 (herein "RICO Statement") alleged three predicate acts:

1.    Bankruptcy Fraud in:

  (a)    that defendants provided knowing and substantial assistance to Flanagan in connection with the fraudulent transfer of Flanagan's assets;

  (b)    Flanagan's assertion of the "bogus Babacus debt"; and

  (c)    the "filing of fraudulent bankruptcy schedules and statements of financial affairs";

2.    Mail Fraud by use of the mails to execute a scheme to defraud or attempt to defraud plaintiffs in connection with:

  (a)    the "implementation and execution" of transfers of title to certain real property;

  (b)    "the formation of MJCC Corp. and MJCC Ltd.";

  (c)    "the acquisition of the North Haven House in the name of 'Angelo Cimono' and transfer of that property to MJCC Ltd. In June of 1995;

  (d)    the "children's checking account scheme";

  (e)    the "bogus Babacus debt scheme";

(f)     the "pay-off of the federal judgment and the pledge of Flanagan's Insurance Agency stock to Flanagan's father";

(g)     the "loaning of funds by Flanagan to Babacas";

(h)     the "settlement proceeds scheme"; and

(i)     the "Caporale property transfer scheme, including the mailing of the monthly rent checks from Flanagan's tenants to the P.O. box in Hamden, Connecticut"; and

3.     Wire Fraud by use of the telephone or fax to execute a scheme to defraud or attempt to defraud plaintiffs in connection with:

(a)     the "bogus Babacas debt scheme";

(b)     the "pay off of the federal judgment and the pledge of Flanagan's Insurance Agency stock to Flanagan's father"; and

(c)     the "loaning of funds by Flanagan to Babacas".

(Complaint at pp. 39-40; RICO Statement at pp. 34-36.)  With the exception of 1(a) above, each of the "schemes" represented by the lower case letters are headings for prior sections of the Complaint and RICO Statement, and plaintiffs refer the court back to these prior sections of the Complaint and RICO statement wherein specific allegations are made.  Of all of the acts and schemes alleged by the plaintiffs in connection with the three enumerated predicate acts, Bainer is only specifically implicated in the predicate act of mail fraud in connection with the "settlement proceeds scheme".  Due to the overly broad nonspecific language in the Complaint and RICO Statement, it is unclear whether any of Bainer's actions are alleged to be predicate

acts of bankruptcy fraud and/or wire fraud creating the basis of RICO liability to plaintiffs. For

the purposes of this motion, all three predicate acts will be addressed herein.

### B.    PREDICATE ACT OF BANKRUPTCY FRAUD

Plaintiffs claim in their Complaint and RICO Statement that:

the conduct of the defendants described herein constitutes bankruptcy fraud in violation of 18 U.S.C. §152, 18 U.S.C. §157 and 11 U.S.C. §548 in that the defendants provided knowing and substantial assistance to Flanagan in connection with the fraudulent transfer of Flanagan's assets as set forth above.

(Complaint, ¶80.1 at p. 39, RICO Statement at p. 34). 18 U.S.C. §152 (2000) states in pertinent

part:

§152.   Concealment of assets; false oaths and claims; bribery

A person who –

(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; …

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; …

shall be fined under this title, imprisoned not more than 5 years, or both.

With regard to 18 U.S.C. §157, said section of the Code is specifically exempted by 18

U.S.C. §1961 (1)(D) as an act that cannot constitute a predicate act.

> As used in this chapter (1) racketeering activity means … (D) any offense
> involving fraud connected with a case under title 11 (except a case under section
> 157 of this title).

18 U.S.C. §1961 (1)(D) (2000).  Therefore, a bankruptcy fraud claim under 18 U.S.C. §157 does

not constitute a predicate act and cannot support a claim under RICO.

Similarly, plaintiffs' claim that defendant's actions constitute bankruptcy fraud under 18

U.S.C. §548, are unsupported by the statute.  11 U.S.C. §548 captioned "Fraudulent transfers

and obligations" addresses the powers of a bankruptcy trustee to avoid any transfer within one

year before the date of the filing of the bankruptcy petition.  By its own terms, §548 is

inapplicable here.

Based on the foregoing, the only possible basis for asserting bankruptcy fraud against

Bainer is 18 U.S.C. §152.

**1.    Analysis of Allegations as Relates to 18 U.S.C. §152(1) Fraudulent
Concealment**

As stated in Section B above, 18 U.S.C. §152(1) makes it a crime for a person to:

(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or
other officer of the court charged with the control or custody of property, or, in
connection with a case under title 11, from creditors or the United States Trustee,
any property belonging to the estate of a debtor; …

Nowhere in the Complaint or RICO Statement is Bainer alleged to have concealed an asset.  Bainer is alleged to have come up with "a plan" to shield Flanagan's insurance agency stock from plaintiffs, prepared a Shareholder (Buy-Sell) Agreement (herein "Buy-Sell") and placed a restrictive legend on Flanagan's stock certificate.  (Complaint, ¶¶46-47 at p. 23; RICO Statement at p. 20).  Bainer is further alleged to have typed the restrictive legend on Flanagan's stock on August 21, 1998 and returned the stock certificate to Flanagan …

> at a time when Bainer knew of the property execution that had been served on the Insurance Agency and knew, must have known, or should have known of the federal court turnover order and the injunction restricting Flanagan's ability to transfer or alienate his property.

(Complaint, ¶49 at p. 24; RICO Statement at p. 21).

There is no allegation of concealment by Bainer in connection with Flanagan's stock.

Factually, it is important to note that although Bainer typed the restrictive legend on Flanagan's stock at a time when Bainer knew of the January 5, 1998 property execution, as of the date the legend was placed on the stock, there were no property executions in effect.  The January 5, 1998 execution by operation of law, had lapsed in May 1998.  Moreover, as the Complaint already acknowledges, Flanagan sued Prymas in 1996 over control of T & P, CV-96-0135292S (Complaint, ¶58 at p. 29; RICO Statement at p. 25).  The suit was resolved by way of a Settlement Agreement dated June 17, 1997 (Exhibit 21 to the Complaint) (herein "Settlement Agreement").  The Settlement Agreement specifically contemplates the preparation of a

Stockholders Agreement within one year of the date of settlement.  (Exhibit 21 at ¶10)  Bainer, as the T & P corporate attorney, was responsible for the drafting of that Agreement.  Nothing in the Complaint, RICO Statement, exhibits or deposition testimony can show that the act of creating the Buy-Sell was for a purpose other than to fulfill the intentions of the parties to the Settlement Agreement or that placing the restrictive legend on the stock was motivated by a purpose other than to fulfill the terms of the Buy-Sell.  In fact, if Bainer failed to legend the stock in connection with the Buy-Sell, he could be subject to a malpractice claim.

In Connecticut, restrictions on share transfers often are for one or more of the following purposes:

1.  To preserve close ownership of a corporation.

2.  To provide a minority shareholder of a closely held corporation a market for his or her shares should he or she die or elect to sell.

3.  To safeguard against loss of status as an electing small business corporation under subchapter S of the Internal Revenue Code.

4.  To fit into a program of financing, such as prohibiting transfers until the securities are registered, when the purchase acquires them under a private placement exemption.

There are all respectable purposes which are legal, provided the restrictions are reasonable in scope and time.

Connecticut Corporation Law and Practice, Second Edition, Marilyn J. Ford, Aspen Law & Business, Aspen Publishers, 2004, Section 4.05(B), page 4-75.

"When … a restriction is imposed on outstanding shares represented by certificates which have been issued, the shareholders or the corporation, as the case may be, must call in the certificates for the addition of a suitable notation in order to be sure the restriction will apply to any transfer of the shares to a third party…".  Id. at p. 4-78.

Pursuant to C.G.S. §33-678(b) "a restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transferee of the holder if the restriction is authorized by this section and its existence is noted conspicuously on the front or back of the certificate … Unless so noted, a restriction is not enforceable against a person without knowledge of the restriction."  If a purpose of an agreement among shareholders is to preserve "close ownership of the corporation", it would be negligent on the part of legal counsel not to legend, or advise a client to properly legend, stock certificates representing stock subject to such an agreement.

18 U.S.C. §152 at a minimum requires some nexus between the alleged concealment and the bankruptcy matter.  See, e.g., Bankers Trust Company v. Feldesman, 648 F. Supp. 17, 24 (S.D.N.Y. 1986).  (It is true that a defendant cannot be separately convicted of violating §152 by concealing an asset **during** bankruptcy....)  There is clearly no evidence that Bainer concealed any asset of Flanagan during Flanagan's bankruptcy.  Nor is there any allegation or any evidence that Bainer's alleged actions were in contemplation of Flanagan's filing bankruptcy or

of violating the bankruptcy code.  Without more, the preparation of the Buy-Sell at the direction

of the offices of T & P and the act of the placement of the restrictive legend on the stock

certificates of Flanagan and Prymas by Bainer cannot, legally, be a violation of §152(1).

Moreover, the fact that a stock certificate has a restrictive legend on it does not mean that it is

beyond the reach of bona fide creditors or that it cannot be executed on.  See Rouse &

Associates, Inc. v. Delp., 658 A.2d 1838 (Pa. Super 1995) (wherein attaching creditor

successfully obtained stock pursuant to an execution and sold same at auction).  Consequently,

there is no proximate cause between the acts alleged by Bainer and injuries alleged by plaintiffs.

Bainer is also alleged to have cooperated with Flanagan to recharacterize the settlement

payments due to Flanagan under the terms of the Settlement Agreement from 1099 income to

W-2 wages impliedly after T & P was served with a property execution in Cadle v. Flanagan,

3:96-CV-02648 (herein referred to as the "federal court action") on January 5, 1998.  Bainer's

alleged actions are referred to in the "Settlement Proceeds Scheme" section of plaintiffs'

Complaint and RICO Statement (§2M in Complaint at pp. 29-32 and RICO Statement at pp. 25-

27).  As with the allegations regarding the restrictive stock legend, there is conspicuously absent

from the Complaint, RICO Statement and all other evidence anything showing that Bainer's

alleged actions were done during the bankruptcy or in contemplation of Flanagan's filing

bankruptcy or as an attempt to violate the bankruptcy code.  After service of the January 5, 1998

13

execution, Flanagan, individually, prepared and executed the Exemption form, and Flanagan, through counsel, objected to the execution.  Said objection was never claimed for argument by plaintiffs and plaintiffs permitted the execution to lapse.  Thereafter, plaintiffs were made whole when Flanagan paid in full the judgment plus interest, costs and attorneys fees in November 1998.  Plaintiffs' own allegations in the Complaint state that Flanagan filed for bankruptcy "to recoup the $99,542.87 that he was forced to pay to TCC to avoid going to jail for contempt (Complaint, ¶30 at p. 34), not because of anything Bainer did or was alleged to have done.

### 2.     Analysis of Allegations as Relates to 18 U.S.C. §152(7) Fraudulent Transfer

18 U.S.C. §152(7) makes it a crime if a person:

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; …

The District Court has stated that in order to make out a violation of 18 U.S.C. §152(7) a plaintiff must allege specific facts demonstrating that defendant "made the transfer in contemplation of bankruptcy or otherwise with an intent to defraud a United States Bankruptcy Court or defeat the bankruptcy laws."  First Capital Asset Management, Inc. v. Brickellbush, Inc., 219 F. Supp. 2d 576, 582 (S.D.N.Y. 2002).

14

An intention to engage in a transfer for the purpose of hindering potential creditors does not alone rise to the level of bankruptcy fraud.  Id.  It is the intent to defeat the bankruptcy laws that is the requisite element of an offense under §152(7).  Burke v. Dowling, 944 F. Supp. 1036, 1066 (E.D.N.Y. 1995).  [Plaintiffs] must clearly allege that the defendants transferred or concealed the assets … with the ultimate intent to defraud a U.S. Bankruptcy Court."  Id. (Citations omitted).

Since there are neither allegations nor evidence sufficient to establish any intent by Bainer to defraud the bankruptcy court, none of Bainer's alleged acts can rise to the level of bankruptcy fraud and serve as a predicate act for purposes of RICO.

Clearly, plaintiffs have failed to plead bankruptcy fraud with particularity as required under FED.R.CIV.P. 9(b).

### C.      PREDICATE ACTS OF MAIL FRAUD

As stated in §III.A above, plaintiffs also claim mail fraud as a predicate act.  With regard to Bainer, he is alleged to have participated in a scheme to defraud or attempt to defraud plaintiffs through the use of the mails in connection with the "settlement proceeds scheme".

The "Settlement Proceeds Scheme" is set forth in Section 2M of both the Complaint and RICO Statement (Complaint at pp. 29-32; RICO Statement at pp. 25-27).  A review of Section 2M from the Complaint and the RICO Statement (which are identical) reveal that Bainer is

alleged to have known at some unspecified time that a payment of $75,000.00 to Flanagan pursuant to the Settlement Agreement was to be paid as 1099 income.  It is further alleged that Flanagan told Bainer that he wanted to place the money in a family trust.  It is also alleged that Flanagan, with the cooperation of, inter alia, Bainer agreed to recharacterize the settlement payments as "wages" (impliedly after plaintiff, The Cadle Company, served an Execution on T & P on January 5, 1998) for the purpose of delaying, hindering or defrauding plaintiffs in plaintiffs' efforts to execute on Flanagan's assets.  (Complaint, ¶59 at p. 30)

Plaintiffs further allege that in December 1998 when Prymas was served with Post Judgment Interrogatories propounded by plaintiff, The Cadle Company, in another state court action against Flanagan, Bainer advised Prymas to respond that no money was due by T & P to Flanagan.  Further, it is alleged that "in an effort to prevent plaintiffs from further inquiry about the settlement funds owed by the Insurance Agency to Flanagan, on December 15, 1998, December 31, 1998, and February 19, 1999, Bainer threatened plaintiffs' attorney with grievance filings should they persist in doing what Bainer knew they had a perfect right to do." (Complaint, ¶63 at p. 31; RICO Statement at p. 27).

The only allegations in Section 2M that involve the use of the U.S. mails are letters written by Bainer dated December 15, 1998, December 31, 1998 and February 19, 1999 (attached to the Complaint as Exhibits 27, 28 and 29).  Bainer's letter dated December 15, 1998

(Exhibit 27 to the Complaint) to Attorney Paul Gaide (herein "Gaide"), counsel for plaintiff, The

Cadle Company, does not mention any aspect of the "settlement proceeds scheme" nor does it in

any way relate to an alleged effort "to prevent further inquiry regarding such scheme".  Rather,

the letter addresses Bainer's concerns regarding false representations made by Gaide in the

federal court matter, which judgment had been fully paid by Flanagan prior to the date of the

letter.  In Bainer's letter, Bainer denies any knowledge of the existence of a federal court order

relating to Flanagan's stock and denies that he conspired to conceal Flanagan's stock.  He states:

> I made no such representation to you.  Nor did I make any representation which
> could even arguably lead to such a conclusion.  In point of fact, I made exactly the
> opposite representation to you.  I told you that Thompson & Peck, Inc. and its
> other Officers, were in the dark about what Court orders might be out there….
> The main expressed purpose of my call to you, as you will recall, was to request
> to be informed about all outstanding Court orders so that the Corporation does not
> inadvertedly (sic) participate in what might even arguable be perceived as any
> violation of any Court order.

Bainer's letters dated December 31, 1998 (Exhibit 28 to the Complaint) and February 19,

1999 (Exhibit 29 to the Complaint) written to Thomas G. Restelli (herein "Restelli") of Gaide &

Associates, LLC address the service of notices of deposition and subpoena duces tecums on T &

P as well as service of Post Judgment Interrogatories on T & P employees.  Bainer, as counsel

for T & P, stated in his December 31, 1998 letter that his client will not attend a post judgment

deposition in one of the state court collection matters against Flanagan, and that the executions

served on T & P and its employees were harassment.  The substance of the February 19, 1999

letter was similar: Bainer accused counsel for plaintiffs of harassment as a result of serving post judgment interrogatories on former and present employees of T & P. In both letters, Bainer states that it is his belief that service of the post judgment interrogatories and deposition notices were made solely to harass and annoy T & P and its officers and employees. Bainer further states that continued use of legal process to harass will result in action by T & P against Restelli.

Nothing in these three letters establishes proximate causation in order for plaintiffs to have standing to sue under RICO. As stated previously, plaintiffs must show that but for the misstatements, the transaction would not have come about and that the "transaction turned out to be a losing one". Oak Beverages, Inc. v. Tomra of Massachusetts, L.L.C., 96 F. Supp. 2d 336, 343 (S.D.N.Y. 2000). Further, as previously discussed in §III above, plaintiffs must show detrimental reliance by plaintiffs on such misstatements. With regard to the December 15, 1998 letter (Exhibit 27), plaintiffs have no evidence that what was represented by Bainer in his letter was false. Even assuming, for the sake of argument, that there is some misrepresentation in the letters, there is no evidence that plaintiffs relied on the information in that letter to their detriment. In fact, plaintiff, The Cadle Company, was paid in full, including interest, fees and costs in the federal court action that was the subject of the letter. The so called "settlement proceeds scheme" is not referenced in any part of that letter. Whatever injury plaintiffs are

alleged to have suffered as a result of the "settlement proceeds scheme" was not the result of the representations within, or the mailing of, this letter.

With regard to the other two letters (Exhibits 28 and 29), plaintiffs, likewise, cannot show proximate causation to their alleged injury. Bainer filed Motions to Quash in those litigations and the matter was addressed in court. Moreover, there simply is no evidence that due to Bainer's threat of action against plaintiffs counsel or the allegedly false representations in these letters that plaintiffs abandoned their depositions or were thwarted in their collection efforts against Flanagan as a result of or their reliance on "misinformation" in the letters. As the JIS records reflect, plaintiffs did not stop pursuing the location of assets for Flanagan in those litigations. Plaintiffs even pursued a prejudgment attachment of Flanagan's stock in what plaintiffs refer to as the New Haven litigation in its Complaint and RICO Statement, and although the court granted the prejudgment remedy, the court declined to order the attachment of the stock held by Flanagan. (Deposition of Alan Adams, February 13, 2004, at pp. 36-38). If there is any connection between these letters and the settlement proceeds scheme it is, at best, tenuous, especially given the fact that Bainer was acting in his capacity as counsel and his letter was directed to another attorney who was opposing counsel.

"Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in

pending litigation…. Subjecting the letter in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation." Morin v. Trupin, 711 F. Supp. 97, 105 (S.D.N.Y. 1989). See also, Kashelkar v. Rubin &Rothman, 97 F. Supp. 2d 383, 393 (S.D.N.Y. 2000) ("Such correspondence between attorneys cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation.")

Moreover, "central to the notion of proximate cause [under RICO] is the idea that a person is not liable to all those who may have been injured by his conduct, only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation and whose injury was reasonable foreseeable or anticipated as a natural consequence." Lerner v. Fleet Bank, N.A., 318 F.3d, 113, 123 (2d Cir. 2003) (quotations omitted). Here, plaintiffs have no evidence that whatever injuries it claims to have suffered are directly caused by Bainer's alleged mail fraud. As stated in Oak Beverages, Inc., "when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendants' actions" 96 F. Supp. 2d at 343. Flanagan, himself, was the source of the fraud upon which plaintiffs suffered damages, if any, and ultimately, it was his filing of bankruptcy which thwarted plaintiffs' efforts to collect on their judgments.

The Complaint and RICO Statement do reference two additional letters authored by Bainer, which letters are not identified by plaintiffs as mail fraud.  However, for the purpose of this motion, they will be briefly addressed.  Specifically, two letters to Fasano, counsel for Flanagan, respectively dated December 10 and December 16 are referenced (Complaint, ¶¶53-55 at pp. 26-28; RICO Statement at pp. 22-24).  (Exhibits 18-19)

As stated earlier, mail fraud requires proof of plaintiffs detrimental reliance on the alleged misrepresentations.  <u>Falise</u>, 94 F. Supp. 2d at 334.  Since these letters are not directed to plaintiffs or their counsel, there can be no reliance by plaintiffs on them.  Without reliance, plaintiffs mail fraud claim fails.

### 1.    <u>Allegations of Mail Fraud Not Adequately Pled</u>

Under 18 U.S.C. §1341 the elements of mail fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails to further the scheme.  <u>Lorentzen v. Curtis,</u> 18 F. Supp 2d 322, 329 (2d Cir. 1996) (citations omitted).

As discussed earlier, allegations of mail fraud must be pleaded with particularity under FED.F.CIV.P. 9(b), <u>Lorentzen</u>, 18 F. Supp. 2d at 330.  "Plaintiffs must allege the manner in which the allegedly fraudulent statement misled them and what the defendants obtained as a consequence of the fraud".  <u>Id</u>.  The Second Circuit has held that there is a deprivation of money or property within the meaning of the mail fraud statute only where a schemer appropriates a

benefit and there is a corresponding loss or injury to the victim of the fraud.  Id. at 331 (citations

omitted).  Plaintiffs have failed to show that anything Bainer wrote in these letters was (1)

fraudulent, (2) that they were misled by the allegedly fraudulently statements, and (3) that Bainer

obtained something as a consequence of the alleged fraud.  Simply writing the letters and

depositing them in the mails does not rise to the level of mail fraud.  "While some cases have

found otherwise unexceptional mailings to be predicate acts because they lulled plaintiffs into a

false sense of security", the mailings must still be relied on in a way that was a substantial factor

causing their injury.  DiFiore v. DiLorenzo, 1997 WL722697 at pp. 5-6 (E.D.N.Y. 1997).

Not only did plaintiffs fail to adequately plead mail fraud, there is no evidence that

plaintiffs were misled by the statements in the letters, assuming arguendo that those statements

were false.  The only testimony from plaintiffs relating to actions of Bainer was by Alan Adams

and it was unrelated to mail fraud.  Alan Adams, the Senior Account Officer, assigned by

plaintiffs to collect the Flanagan debts from November 1995 to March 2003 stated at his

deposition that he believed Bainer should have handed over Flanagan's stock certificate on

August 21, 1998, when Bainer placed the restrictive legend on the stock certificate because of

either, an outstanding Execution or Order in the federal court action.  (Deposition of Alan

Adams, February 13, 2004, at pp. 63-64).  However, as stated previously, no execution was

outstanding at that time and T & P was not served with any order in the federal court action.

Additionally, nowhere in the pleadings, RICO Statement, or exhibits is there proof that Bainer obtained something as a result or consequence of his alleged fraudulent mailings. Consequently, plaintiffs have failed to adequately plead the elements of mail fraud with particularity.

### D.     PREDICATE ACTS OF WIRE FRAUD

Plaintiffs also claim wire fraud by defendants as a predicate act. Neither ¶80.3 of the Complaint nor Section 5(iii) of the RICO Statement, wherein predicate acts are addressed by plaintiffs, includes reference to specific acts of wire fraud by Bainer in connection with any of the alleged "schemes". Notwithstanding, the allegations of wire fraud will be addressed herein.

A complaint alleging "wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of … transmission facilities in furtherance of the scheme. Odyssey re: (London) Limited v. Stirling Cooke Brown Holdings Ltd, 85 F. Supp. 282, 301 (S.D.N.Y. 2000) (citing S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996)).

Unlike mail fraud, however, the courts of the Second Circuit have confirmed that "[w]ire fraud requires the additional element of a communication crossing state lines", Center Cadillac, Inc. v. Bank Leumi Trust Company of New York, 808 F. Supp. 213, 227 (S.D.N.Y. 1992). In the case of Mathon v. Feldstein, 303 F. Supp. 2d 317 (E.D.N.Y. 2004), the court held that "where, as here, all parties are New York residents, all telephone calls are presumed to be

intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated" <u>Id</u>. at 324 (citations and quotations omitted).

Further, as with mail fraud, "[w]hen a civil plaintiff alleges wire fraud as a predicate act of racketeering activity in a RICO claim, ... he must show that he suffered an injury "in his business or property" and that the injury occurred 'by reason' of the alleged RICO violation.... In other words, a civil RICO plaintiff alleging predicate acts of wire fraud must allege detrimental reliance on the fraud", <u>Cougar Audio, Inc. v. Reich</u>, 2000 WL 420546 (S.D.N.Y). When wire fraud is the "alleged predicate act[s] forming the racketeering activity, justified reliance on the fraud is necessary to establish causation in fact", <u>Falise v. American Tobacco Company</u>, 94 F. Supp. 2d 306, 334 (E.D.N.Y. 2000).

The plaintiffs allege in the Complaint and RICO Statement only one instance of Bainer's use of wire communications as follows: "On December 9, 1998, Bainer and Fasano had a telephone conversation to discuss plaintiffs' efforts to execute on Flanagan's Insurance Agency stock and Fasano's concern that Plaintiffs would obtain Flanagan's stock" (Complaint, ¶52 at p. 25; RICO Statement at p. 22).

First, nowhere in the Complaint or the RICO Statement do plaintiffs allege that they relied on the representations of Bainer made in his telephone conversation with Fasano. Such an

allegation would be absurd given that plaintiffs were neither a participant in nor privy to such telephone conversation.

Secondly, plaintiffs fail to allege that such use of wire communications crossed state lines. Both Bainer and Fasano practice law and reside in the State of Connecticut and consequently, unless indicated otherwise, it is presumed that the telephone call was an intrastate call. Mathon, 303 F. Supp. 2d at 324. Consequently, the plaintiffs have failed to adequately plead wire fraud.

## IV.    STANDING UNDER 18 U.S.C. §1962(b)

Section 1962(b) states, in pertinent part that:

It shall be unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The Second Circuit has interpreted the language of §1962(b) to require that plaintiffs allege injury from defendant's acquisition or control of the enterprise, known as an "acquisition injury" separate and apart from the injury suffered as a result of the predicate acts of racketeering. Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 579 (S.D.N.Y. 1999), see also Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1062-63 (2d Cir. 1996).

Plaintiffs have failed to demonstrate through their pleadings or evidence that they have the requisite standing to bring suit under §1962(b).

25

Although plaintiffs allege that Bainer "vie[d] for control over the efforts to protect Flanagan's assets" in December 1998, there is no specific allegation or evidence to support that Bainer, through a pattern of racketeering acquired control over the enterprise and injured plaintiffs. Plaintiffs' Complaint alleges that Bainer and Fasano, personal counsel for Flanagan, exchanged two letters respectively dated December 10, 1998 and December 11, 1998 (Complaint, ¶52 at pp. 25-28; RICO Statement at pp. 22-24) wherein Bainer is critical of Fasano's handling of Flanagan's legal matters (Exhibits 18 and 19 to Complaint).

Then plaintiffs allege that at the December 11, 1998 Board of Directors Meeting, Bainer made a "pitch to take over efforts to thwart plaintiffs' ability to execute on Flanagan's Insurance Agency stock and that at that meeting, Flanagan, Prymas and Bainer agreed that they would work together in an effort to defeat the judgment claims of plaintiffs". (Complaint, ¶57 at p. 28; RICO Statement at p. 25). This allegation is absolutely denied by Bainer. However, even assuming, for purposes of this Motion, that this unsupported statement is the plaintiffs' manner of alleging Bainer's acquisition of control, plaintiffs have not demonstrated any "acquisitional" injury to themselves caused by this alleged acquisition.

Between December 11, 1998 (the date Bainer allegedly "vied" for control) and February 17, 1999, the date Flanagan filed bankruptcy allegedly due to Flanagan's desire to recoup a $99,542.87 he paid to plaintiff, The Cadle Co., in the federal court action (Complaint, ¶20 at p.

34), plaintiffs were deprived of nothing at the hands of Bainer.  Bainer didn't himself, nor did he suggest that Flanagan, take Flanagan's stock and move it somewhere.  Flanagan had done that already when he pledged his stock to his father in November 1998 as collateral to pay off the federal court judgment of $99,542.87.  Bainer didn't do anything other than (1) draft letters to plaintiffs' counsel objecting to harassing post judgment discovery and (2) file motions to quash and/or for protective orders which went before the court.  (See Complaint at p. 31 addressing Bainer's letters and §IIIC of this brief above).  On January 15, 1999, a Prejudgment Remedy Hearing was held in a state court collection matter, <u>D.A.N. v. Flanagan</u>, CV-95-0378422S, wherein Flanagan disclosed to plaintiff, D.A.N., that the stock was in possession of Flanagan's father.  The court granted D.A.N.'s Application for Prejudgment Remedy in the amount of $800,000.00, but refused to order the stock as security.  (Deposition of Alan Adams, February 13, 2004, pp. 36-38).  Bainer had no role in the court's decision.  Ultimately, the filing of the bankruptcy petition, only weeks after the entry of the Prejudgment Remedy, is what "thwarted" or put an end to plaintiffs' collection efforts, not Bainer's alleged acquisition of control over the enterprise.

  Without "a distinct injury caused not by predicate acts, but by the defendant's acquisition or maintenance of an interest in or control of an enterprise," plaintiffs lack standing under

§1962(b).  Id.  As plaintiffs have failed to allege any injury resulting from Bainer's alleged

vying for control, plaintiffs have no standing under §1962(b).

## V.    STANDING UNDER 18 U.S.C. §1962(c)

Under §1962(c) it is unlawful for any person who is "employed by or associated with any

enterprise … to conduct or participate, directly or indirectly, in the conduct of such enterprises

affairs through a pattern of racketeering activity…."

The U.S. Supreme Court in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) stated

that a "plaintiff only has standing [under §1962(c)] if, and can only recover to the extent that, he

has been injured in his business or property by the conduct constituting the violation.  Id. at 496-

97.  The court further stated that the violation "requires (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity."  Id.

In Reves v. Ernst & Young, 507 U.S. 170 (1993), the U.S. Supreme Court had the

opportunity to address the liability of those professionals rendering service to an alleged RICO

enterprise.  The Reves court addressed, inter alia, the term "participate" and established that to be

liable under §1962(c) "one must participate in the operation or management of the enterprise

itself."  Id. at 173.  Participation is not limited to those with a formal position in the enterprise,

but "some part in directing the enterprise's affairs is required."  Id.  "Aiding and abetting a

violation is insufficient to trigger liability under RICO … and performance of tasks that are

necessary or helpful to the enterprise, without more, is insufficient to bring a defense within the scope of §1962(c)" Lesavoy v. Lane, 2004 WL 99815 at p. 11 (S.D.N.Y. January 22, 2004).

The Second Circuit has held that the provision of standard legal services does not create liability under §1962(c), Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994); Madanes v. Madanes, 981 F. Supp. 241, 256 (S.D.N.Y. 1997), because "providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise. Madanes, 981 F. Supp. at 257 (citing Dept. of Economic Development v. Arthur Anderson & Co., 924 F. Supp. 449, 466 (S.D.N.Y. 1996)).  "This is true even when the provision of services is essential to the operation of the RICO enterprise." Id.  (quotations and citations omitted).

The Southern District of New York addressed the circumstances of when a lawyer's services are alleged to go beyond the provision of standard legal services and the attorney is alleged to be substantially involved in the affairs of the enterprise.  Madanes v. Madanes, 981 F. Supp. 241 (S.D.N.Y. 1997).  The court found that such an allegation failed to establish liability under §1962(c).  Id. at 257.  The Madanes court found that, despite allegations that the defendant's attorney knowingly concealed the fraudulent activities and recommended certain courses of fraudulent behavior, said allegations were not enough to defeat a Motion to Dismiss. The actions simply did not establish participation in the operation or management of a RICO enterprise.  Id. at 288.

Here, plaintiffs allege that Bainer cooperated in the reclassification of 1099 income to W-2 income, wrote threatening letters to plaintiffs' counsel and prepared a Buy-Sell and attendant stock legend. All of the plaintiffs' allegations are addressed in detail in Section III of this brief and will not be reiterated here. Suffice it to say that none of the alleged acts of Bainer exceed the actions of the <u>Madanes</u> defendant attorney or the defendant attorneys in the cases cited in <u>Madanes</u>. <u>Madanes</u>, 981 F. Supp. at 256-57.

## VI.     STANDING UNDER 18 U.S.C. §1962(d)

Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of §§1962(a), (b) or (c). "To state a claim under §1962(d), a plaintiff must allege that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise." <u>Kades v. Organic Inc.</u>, 2003 WL 470331 at 13 (S.D.N.Y. February 24, 2003) (citing <u>Colony at Holbrook, Inc. v. Strata G.C., Inc.</u>, 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996). Furthermore, "there can be no RICO conspiracy without a substantive RICO violation. Thus, if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations." <u>Kades</u>, 2003 WL 470331 at 14. (quotations and citations omitted). See also, <u>Lesavoy v. Lane</u>, 2004 WL 99815 at 11 (S.D.N.Y. January 22, 2004). ("In other words, a RICO conspiracy claim cannot stand where, as here, the elements of the

substantive RICO provisions are not met.")  Therefore, plaintiffs' §1962(d) claims will survive only if this court finds them to be successful in their §1962(b) and (c) claims against Bainer, which claims are addressed in §§IV and V above.

**VII.    PATTERN OF RACKETEERING**

To establish a "pattern of racketeering activity within the meaning of the RICO statute, a plaintiff must allege facts tending to show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.  The continued criminal activity/continuity necessary to prove a pattern can be either 'closed-ended continuity' or 'open-ended continuity'".  Kades v. Organic Inc., 2003 WL 470331 at p. 10.

**A.    THE ALLEGED PREDICATE ACTS AS INSUFFICIENTLY RELATED**

In order to satisfy the RICO relatedness requirements, plaintiffs must allege predicate acts having the same purpose, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999).

As discussed in §IIIA of this brief, plaintiffs allege predicate acts of bankruptcy fraud, mail fraud and wire fraud.  Although not specifically identified by plaintiffs in their Complaint and RICO Statement as predicate acts, Bainer is alleged to have placed a restrictive legend on the stock certificates as required by the Buy-Sell and contemplated by the Settlement Agreement;

31

advising his client, T & P, to respond that it held no property of Flanagan in response to Post Judgment Interrogatories, writing threatening letters to plaintiffs' counsel accusing them of harassment; and corresponding to Flanagan's counsel, Fasano, criticizing Fasano's legal representation of Flanagan. The purpose of the restrictive legend was to fulfill a provision in the Buy-Sell. It was neither directed at nor intended to avoid plaintiffs' collection efforts and in fact did not affect a creditor's ability to execute on the stock. See §III.B.1 of the brief above. The purpose of Bainer's letters to Gaide and Restelli was to stop their harassment. The letters were not aimed at thwarting plaintiffs' legitimate collection efforts. Bainer did, however, want to stop illegitimate efforts. The purpose of his letters to Fasano was to protect T & P from being involved with anything remotely improper. These letters weren't part of some plan. As Bainer's letters clearly reflect, he was angry at Fasano for withholding information Bainer felt was relevant in order to protect T & P. (See deposition of Todd Bainer, January 15, 2003, pp. 89-90, regarding Flanagan's movement of stock devalued corporation and would change ownership). Lastly, Bainer's advice to Prymas as to how to respond to the Post Judgment Interrogatories was part of his job as corporate counsel for T & P, which as the Madanes court clearly states does not constitute a RICO predicate act. See §V of the brief above. Although Bainer's actions arise out of and reflect his continued legal representation of T & P, his actions do not constitute predicate

acts under the caselaw. Such actions, therefore, do not constitute a pattern of racketeering and are isolated events, not related enough to impose RICO liability.

### B.    FAILURE TO SHOW CLOSED-ENDED CONTINUITY

Closed-ended continuity is defined as a series of related predicates amounting to continued criminal activity by a particular defendant extending over a substantial period of time. DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001); Cofacredit, 187 F.3d at 241. "Since the Supreme Court decided H.J. Inc., the Second Circuit has never held a period of less than two years to constitute a 'substantial period of time.'" DeFalco, 244 F.3d at 321.

Here, by plaintiffs' own allegations, Bainer's actions spanned 13 months: the earliest possible date is January 5, 1998, when T & P was served with an execution; the latest is February 19, 1999, the date of Bainer's second letter to Restelli. Moreover, Bainer's actions as alleged involve two finite acts: the drafting of the Buy-Sell and placing of the legend on the stock certificate, and knowledge of his client's reclassification of settlement proceeds as W-2 income instead of 1099 income and efforts related to the alleged reclassification. These actions of Bainer do not "amount to continued criminal activity". Such actions cannot be bootstrapped by plaintiffs to Flanagan's efforts to protect his assets and the span of time which Flanagan took to accomplish his goals, since Bainer never assisted, participated or even, as alleged, knew of Flanagan's acts during a period greater than 13 months.

C.     **FAILURE TO SHOW OPEN-ENDED CONTINUITY**

"Open-ended continuity exists where the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or where it is shown that the predicate acts are a regular way of conducting defendant's ongoing legitimate business. <u>Brookes v. August 22 Development, D/B/A</u>, 1997 WL 76664 at p. 3 (D. Conn. 1997) (citation omitted). Where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. <u>DeFalco</u>, 244 F.3d at 321.

Plaintiffs claim that Bainer's actions were intended to "delay, hinder or defraud plaintiffs in their efforts to execute (1) on Flanagan's stock" and (2) "on Flanagan's assets". (Complaint, ¶¶49, 59 at pp. 24 and 30; RICO Statement at pp. 21, 26). However, the act of placing a restrictive legend on stock certificates as part of a Shareholders Agreement and to fulfill the terms of the June 17, 1997 Settlement Agreement in no way "delays, hinders or defrauds" plaintiffs' ability to execute on the stock. See §III.B. The only thing that delayed, hindered or defrauded execution on the stock was Flanagan's personal transfer and pledge of his stock to various individuals. Bainer took no part in and is not alleged to have taken a part in the transfer or pledge of Flanagan's stock so as to avoid the execution efforts of plaintiffs.

Likewise, with regard to the reclassification of the settlement proceeds, Bainer's actions did not "delay, hinder or defraud" plaintiffs' ability to execute. Flanagan, through Fasano, objected to the January 5, 1998 execution and no action was taken by plaintiffs subsequent to the objection, which plaintiffs had a right to do. By operation of law, the execution lapsed and plaintiffs never renewed the execution, and, as we all know, plaintiffs were paid in full. No other execution was in effect.

Moreover, Bainer's actions were not criminal, therefore, there can be no threat of him continuing "criminal activity". Predicate acts must be unlawful as set forth in §1961(1). Without any unlawful predicate act, one cannot infer "that the predicate acts were the regular way of operating" for Bainer. Consequently, there is no open-ended continuity.

Without predicate acts to establish and support a pattern of racketeering there can be no RICO liability as to Bainer.

**VIII.  <u>CONCLUSION</u>**

RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint. Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate. <u>Lesavoy v. Lane</u>, 2004 WL 99815 at p. 9 (S.D.N.Y. January 22, 2004) (citations and quotations omitted).

It is respectfully submitted that plaintiffs have failed to meet the statutorily required elements in order to bring a RICO action against Bainer, including pleading fraud with particularity under FED.R.CIV.P. Rule 9(b). Plaintiffs lack standing under §1964 and lack standing under §§1962(b), (c) and (d). Moreover, plaintiffs cannot show a pattern of racketeering to establish liability. Thus, no matter the number of paragraphs in their Complaint, the number of pages in their RICO Statement and the quotation of statutory language, without substance, plaintiffs cannot create a RICO action where there is none.

Therefore, Bainer respectfully asks this court to grant his Motion for Summary Judgment.

DEFENDANTS:  TODD  R.  BAINER  and
TODD R. BAINER, L.L.C.


By_____
      R. BRADLEY WOLFE
      Federal Bar No. ct04332
      GERALD R. SWIRSKY
      Federal Bar No. ct05574
      MARY ANNE A. CHARRON
      Federal Bar No. ct02274
      Gordon, Muir and Foley, LLP
      Hartford, CT 06106-1976
      Telephone (860) 525-5361
      Facsimile (860) 525-4849

<u>CERTIFICATION OF SERVICE</u>

   This is to certify that a copy of the foregoing was mailed, postage prepaid, to all counsel and pro se parties of record on April 27, 2004:

F. Dean Armstrong, Esquire
639 Perth Avenue
Flossmoor, IL 60422

Edward C. Taiman, Esquire
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT 06103-2205

David G. Hill, Esquire
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT 06103-4303

Todd R. Bainer, Esquire
71 Cedar Street
P.O. Box 1092

Branford, CT 06405-8092

Barbara L. Cox, Esquire
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT 06509-1925

Douglas S. Skalka, Esquire
James A. Lenes, Esquire
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT 06510-2026

Bradley K. Cooney, Esquire
69 Island Avenue
Madison, CT 06443

_____
MARY ANNE A. CHARRON

::ODMA\PCDOCS\DOCS\361427\1