## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL | : | CIVIL ACTION NO. |
| Plaintiffs | : | 3:01CV531(AVC) |
| | : | |
| VS. | : | |
| | : | |
| CHARLES A. FLANAGAN, ET AL | : | MAY 14, 2004 |
| Defendants | | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    STATEMENT OF FACTS**

Stanley F. Prymas and Charles A. Flanagan were each 50% owners of Thompson & Peck Inc. ("T&P"), an insurance agency that had operated since 1928 in New Haven, Connecticut.  In 1995, having reached a stalemate with no mechanism to resolve their disagreements, Flanagan sued Prymas *inter alia* to recover wages Flanagan contended were owed to him. The case was settled by way of a confidential settlement agreement (Complaint Ex. 21, attached hereto as Ex. A), which was entered as a judgment, under seal, by the Connecticut Superior Court ("stipulated judgment" or "judgment") (Superior Court transcript, Ex. B).

The judgment required Prymas and Flanagan to execute a shareholders' agreement within one year, directed each of them to continue ownership of the corporate stock and prohibited transfer of the stock to "any other person or entity" (Exhibit A, ¶¶10, 13.)   Prymas, who knew generally that Flanagan had debt problems, was concerned that Flanagan might pledge or transfer shares of T&P stock, and wanted a restriction placed on the stock, similar to the restriction noted

on the T&P stock certificates when Prymas and Flanagan had purchased the agency in 1988.[1]  See Ex. A ¶¶ 10, 13.

The judgment required T&P to pay Charles Flanagan $75,000.00, in bi-monthly installments of $961.  (Ex. A, ¶ 12).   At the time Prymas and Flanagan settled, they were advised by T&P's accountant that the money could be paid either as 1099-Miscellaneous or W-2 income. (Prymas Deposition ("Prymas"), 21).[2]  Because T&P had a loan with a bank that placed a limit on employee salaries (Ex. A ¶ 4), Flanagan and Prymas agreed to treat the payments as 1099-Miscellaneous income, to avoid running afoul of the loan covenant (Prymas, 21-22).[3]

Payments were made to Flanagan as 1099-Miscellaneous income from August through December, 1997. In December, 1997 or January, 1998, Flanagan and his attorney, Leonard Fasano, demanded that the settlement income be paid to him as W-2 income, or he would sue Prymas and T&P for violation of the stipulated judgment (Fasano 2/8/98 letter, Ex. E; Prymas, 23-24, 34, 91-92, 127-28).

By 1998, Prymas and Flanagan had a very rough relationship.  (Prymas, 25).  They had a history of litigation and they disliked each other intensely (Prymas, 25-27).   Prymas was not interested in doing anything to help Flanagan (Prymas, 25-26, 27). Prymas was, however, very concerned about the potential disruption to the business created by Flanagan's  threats of more legal action against the corporation (Prymas, 39, 41).

---

[1] Thompson & Peck stock certificates had traditionally borne a restrictive legend.  (Prymas, 144).
[2] The deposition of Stanley F. Prymas is attached as Exhibit C.
[3] A letter from T&P's accountant confirmed that that payments were properly classified as 1099-Miscellaneous income.  (Reynor letter, June 17, 1997, Ex. D).

Prymas did not care whether the settlement moneys were classified as 1099 or W-2 income, as long as the payments were classified correctly. (Prymas, 32-33). At the time, there were garnishments against Flanagan's salary (Prymas, 36-37). Prymas could not understand why Flanagan was demanding to have the tax treatment changed to W-2 income, because the money would be garnished, and thus paid to creditors in any event (Prymas, 42).[4]       Prymas did not care if Flanagan's creditors received the settlement money and, in fact, hoped that the money would go to a creditor through garnishment, because he did not like Flanagan. (Prymas, 34-40).

On January 5, 1998, T&P was served with a property execution in <u>Cadle v. Flanagan</u>, Civ. Action No. 3: 96-CV-02648 (AVC)(D.Conn.) ("Cadle I"), demanding any property belonging to Flanagan that was held by T&P.[5] Neither T&P nor Prymas were parties to Cadle I. Prymas, anxious to avoid further litigation and disruption to the business, agreed, on advice of T&P's counsel, Todd Bainer, to suspend payments to Flanagan, pending a legal opinion from Flanagan's attorney on the proper tax classification of the stipulated judgment (Prymas, 24-30, 34, 42, 47, 91-92).

Unbeknownst to either Prymas or T & P management,[6] Flanagan unilaterally filed a claim of exemption in *Cadle I*, on behalf of T&P, stating that T&P owed no money other than wages to Flanagan (Complaint, Ex. 25). Flanagan's unilateral action violated the parties' construction of the stipulated judgment, which required both Prymas and Flanagan to sign any documents on

---

[4] Prymas did not understand at the time whether there was a difference in the amount a creditor got if the settlement proceeds were classified as 1099 or W-2 income (Prymas, 40-41).
[5] The execution was the only court ordered document served on T&P, in *Cadle I.*
[6] At the time, T&P was managed by a three-member Auxilliary Committee pursuant to the stipulated judgment.

behalf of T&P, and was thus an unauthorized action on behalf of T&P[7] (See Ex. A , ¶¶5, 6; Ex. H).

On February 10, 1998, Andrew D'Agostino, C.P.A., issued a professional opinion letter stating that the judgment payments to Flanagan should be classified as wages in order to avoid tax code violations that could subject T&P to various taxes, penalties and interest (Exhibit F, Prymas, 32-33). Based on the accountant's opinion, T & P reclassified the judgment payments to Flanagan as W-2 wages and, on advice of T&P's attorney, Bainer, resumed settlement payments in May, 1998 (Prymas, 46-49, 57).[8]

The property execution served on T&P expired on May 5, 1998. The Cadle Company did not subsequently file another property execution on T&P or any motion or objection contesting the exemption filed by Flanagan in January, 1998 in Cadle I (Cadle I docket sheet). On November 19, 1998, **Flanagan paid the full amount of the judgment in *Cadle I*** (Ex. G).

In the spring and summer of 1998, Flanagan and Prymas turned their attention to the preparation of a shareholders' agreement in compliance with Paragraphs 10 and 13 of the stipulated judgment. In August, 1998, as part of the shareholder's agreement, Prymas and Flanagan had T&P's corporate attorney, Todd Bainer, place restrictive legends on each of their stock certificates (Prymas, 144). The purpose of the restrictive legend was to control who could become a shareholder (Prymas, 144). At the time the restrictive legends were placed on the stock, Prymas had no knowledge of Judge Covello's injunction or turnover orders issued in *Cadle I*[9]

---

[7] Prymas and Flanagan construed the judgment as prohibiting either of them from signing documents unilaterally on behalf of T&P (Fasano letter 4/18/98, Ex. H).

[8] T&P never received the legal opinion from Flanagan's counsel, Leonard Fasano (Prymas, 47-48).

[9] Although the court's turnover order was directed to both Flanagan *and T&P*, neither the court nor the plaintiffs ever served T&P with a copy of the order (Plaintiffs' Answers to T&P Interrogatories, Ex. I).

(Prymas/T&P Answers to Plaintiffs' Interrogatoiries, Ex. I, ## 3, 4).  Prymas learned of the turnover order in December, 1998, after the <u>Cadle I</u> judgment had been paid in full (<u>Id</u>.).

In December, 1998, the plaintiffs' served post-judgment interrogatories on Prymas and other employees of T&P, seeking information about Flanagan's assets. (Complaint Ex. 26) Because the stipulated judgment payments had long been classified as wages, exempt from execution under Connecticut law, Prymas, on advice of Bainer, responded that he was not in "possession of nonexempt personal property belonging to the judgment debtor."  (Ex. K, L, M)

## II.    PLAINTIFFS' CIVIL RICO CLAIMS

Plaintiffs have in both their Complaint and their RICO Case Statement dated April 23, 2001 ("RICO Statement") allege three predicate acts as to all defendants generally:

1.    Bankruptcy Fraud in connection with:

    a)    knowing and substantial assistance to Flanagan in connection with the fraudulent transfer of assets;

    (b)    the "bogus Babacus debt"; and

    (c)    the "filing of fraudulent bankruptcy schedules and statements of financial affairs";

2.    Mail Fraud in connection with:

    (a)    the "implementation and execution" of transfers of title to certain real property;

    (b)    "the formation of MJCC Corp. and MJCC Ltd.";

    (c)    "the acquisition of the North Haven House in the name of 'Angelo Cimono' and transfer of that property to MJCC Ltd. In June of 1995;

    (d)    the "children's checking account scheme";

    (e)    the "bogus Babacus debt scheme";

       (f)     the "pay-off of the federal judgment and the pledge of Flanagan's Insurance Agency stock to Flanagan's father";

       (g)    the "loaning of funds by Flanagan to Babacas";

       (h)    the "settlement proceeds scheme"; and

       (i)     the "Caporale property transfer scheme, including the mailing of the monthly rent checks from Flanagan's tenants to the P.O. box in Hamden, Connecticut"; and

3.    Wire Fraud in connection with:

       (a)    the "bogus Babacas debt scheme";

       (b)    the "pay off of the federal judgment and the pledge of Flanagan's Insurance Agency stock to Flanagan's father"; and

       (c)    the "loaning of funds by Flanagan to Babacas".

(Complaint at pp. 39-40; RICO Statement at pp. 34-36.)  With the exception of 1(a) above, each of the "schemes" represented by the lower case letters are headings for sections of the Complaint and RICO Statement.

Of all of the acts and "schemes" alleged by the plaintiffs in connection with the three predicate acts identified in the complaint, Prymas and T&P are only specifically implicated in the predicate act of mail fraud in connection with the "settlement proceeds scheme."  The "stock shifting scheme" in which Prymas and T&P are alleged to have been involved is not listed as a predicate act in either the complaint or RICO statement.  Due to the overly broad general language in the bankruptcy fraud section 1(a) above, and the refusal of plaintiffs to define predicate acts by each defendant, it is unclear whether any of Prymas' or T&P's conduct is alleged to constitute bankruptcy fraud as a predicate act creating some form of RICO liability to plaintiffs.[10]  Because

---

[10] The failure of plaintiffs to specify the conduct they claim constitutes bankruptcy fraud contravenes Fed.R.Civ.P.'s 9(b) requirement that allegations of fraud be stated with particularity.

the bankruptcy fraud claims are not pleaded with the requisite specificity required by Rule 9(b),

the Court should dismiss them.

### III.     STANDARD FOR SUMMARY JUDGMENT

"Civil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear

device.  Because the mere assertion of a RICO claim … has almost inevitable stigmatizing effect

on those named as defendants, … courts should strive to flush out frivolous RICO allegations at

an early stage of the litigation." Ideal Steel Supply Corp. v. Anza, 254 F. Supp. 2d 464,468

(S.D.N.Y. 2003).

Pursuant to FED.R.CIV.P. 56, a party seeking to recover upon or defeat a claim may, with or

without supporting affidavits, move for a summary judgment in that party's favor upon all or any

part of the claim, if the evidence submitted shows that there are no disputed issues of material fact

and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett,

477 U.S. 317, 327 (1986).  "Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

which are designed to secure the just, speedy and inexpensive determination of every action." Id.

at 327 (1986) (citations omitted).

A motion for summary judgment may be granted if the court determines that there is no genuine issue of material fact (i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party) and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-252 (1986). The substantive law of the claim will identify which facts are material and only those facts that might affect the outcome of the suit will properly preclude summary judgment. Anderson, 477 U.S. at 248 (1986). The trial judge's function is not to weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial. (Id.) While the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994), the party opposing summary judgment must set forth specific evidence showing that there is a genuine issue for trial instead of resting on mere allegations of conspiracy or denials. Fed.R.Civ.P 56(c); Anderson, 477 U.S. at 249.

## IV.    SUMMARY OF ARGUMENT

Prymas and T&P have been seriously hindered in the defense of this action by the plaintiffs' steadfast refusal to identify the the conduct that forms the basis of their Civil RICO claims against Prymas and T&P. The plaintiffs have not filed a RICO Case Statement that complies with this Court's standing order, and they have refused to specifically identify the conduct of Prymas or T&P alleged to constitute predicate acts under Civil RICO. The only predicate act involving Prymas and T&P identified in the complaint is a claim of mail fraud, arising out of the so-called "settlement proceeds scheme" involving the change in tax treatment of

the judgment payments, insulating those monies from the Cadle I property execution and the consequent answers on post-judgment interrogatories.    Complaint ¶ 80.2(8), p. 40; RICO Statement, pp. 34-36.   The complaint further appears to claim that the unauthorized claim of exemption from execution filed by Flanagan in *Cadle I* constitutes mail fraud.

While the complaint alleges broadly that the defendants have engaged in bankruptcy fraud and wire fraud, the plaintiffs have not specified any acts by Prymas or T&P claimed to constitute either bankruptcy fraud or wire fraud.[11]   Complaint, ¶ 80 (pp. 39-41).   Notwithstanding plaintiffs' contentions, however, the conduct of Prymas and T&P alleged in the complaint does not constitute a "pattern of racketeering activity" sufficient for the imposition of liability under Civil RICO.

The placement of the restrictive legend on the stock (the so-called "stock shifting scheme") involves no performance of a predicate act of mail or bankruptcy fraud by either Prymas or T&P.   The implementation of a stockholder's agreement, in compliance with the Superior Court's judgment, cannot be considered acts of bankruptcy or mail fraud.

The claims against Prymas and T&P are not supported by the evidence developed during discovery.   At most, the evidence shows that Flanagan was desperately attempting to conceal his assets and evade his creditors.   The evidence does not support any claim that Prymas knowingly or intentionally participated in Flanagan's efforts to hinder, delay or defraud the Cadle Company.   The evidence demonstrates that Flanagan was neither truthful nor candid with Prymas or T&P's auxilliary committee concerning his mounting debt problems.   The facts do not support a claim of participation by Prymas or T&P in a pattern of racketeering activity.

---

[11] Prymas and T&P reserve the right to supplement this motion to address any claims of bankruptcy fraud or wire fraud that plaintiffs may subsequently identify.

The plaintiffs cannot prove either closed- or open-ended continuity required for liability under Civil RICO. There is no closed-ended continuity because the conduct took place within less than a year's duration. There is also no evidence to support a finding of open-ended continuity, which requires a basis to infer that Prymas or T&P would commit similar acts in the future or that the actions were inherently unlawful, such as murder.

Although the plaintiffs place great emphasis on the participation in a conspiracy to commit predicate acts, they conveniently ignore the black letter law of this Circuit that there can be no liability for participating in a RICO conspiracy without a finding of substantive Civil RICO violation under 18 U.S.C. §1962(b) or (c).

The plaintiffs have produced no evidence demonstrating that they sustained any injury to their "business or property" that was caused by any predicate act committed by Prymas or T&P. The complaint does not allege sufficient facts to support a finding of any harm flowing from either the "settlement proceeds scheme" or the restrictive legend placed on the stock. In fact, Prymas/T&P's conduct took place primarily within the context of *Cadle I* in which plaintiffs were paid **the full amount of the judgment**.

Although plaintiffs now apparently contend they are entitled to damages from Charles Flanagan's grievances against the plaintiffs' attorney, the complaint does not allege that the grievances, privileged conduct under Connecticut law, constituted predicate acts under RICO.

Prymas and T&P strongly believe that the claims asserted against them in this lawsuit are nothing more than a SLAPP suit, instituted to intimidate Prymas from testifying at the grievance

hearing against plaintiffs' collection lawyer.[12]  Because there is no basis in fact for the imposition

of Civil RICO liability on Prymas or T&P, summary judgment should be entered in their favor.


**V.    LEGAL ARGUMENT:**

   **A.    There is insufficient evidence to support allegations that Prymas or T&P engaged in at least two RICO predicate acts.**

   In order to prove violations of Civil RICO, the plaintiffs must prove that Prymas and/or

T&P engaged in a "pattern of racketeering activity" (18 U.S.C. §§1962(b)-(c)).  A pattern of

racketeering activity requires the commission of at least two predicate acts, that are related and

amount to, or threaten the continued likelihood of continued criminal activity (See 18 U.S.C.

§1961(5); H.J., Inc. v Northwestern Bell Tel. Co., 492 U.S. 229, 237-39 (1989); DeGeorge Fin.

Corp. v. Novak, Nos. 99-32300-02 (ASD), Civ. A. 3: 01 CV 009 (CFD).  2002 W.L. 310 96716,

at *9 (D.Conn. July 15, 2002)).

   To sustain a RICO claim, a plaintiff must show that defendant has violated
   the substantive RICO statute, 18 U.S.C. §1962, in (1) that the defendant (2)
   through the commission of two or more acts (3) consisting of a 'pattern' (4) of
   'racketeering activity' (5) directly or indirectly invests in, or maintains an interest
   in, or participates in (6) an 'enterprise' (7) the activities of which affects interstate
   or foreign commerce.

U.S. Fire Ins. Co. v. United Limousine Service, Inc., 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004)

(quoting Moss v. Morgan Stanley, 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S. 1025

(1984).).

---

[12] Prymas was given notice of the institution of this action the day before he was scheduled to
testify at the grievance hearing (Prymas, 105).

"Racketeering activity" means "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481-82 (1985). Thus, a pattern of racketeering under the allegations of the instant complaint may consist of at least two acts of mail fraud, wire fraud, or bankruptcy fraud that are related and amount to, or threaten the continued likelihood of criminal activity. H.J., Inc., 492 U.S. at 237-39). The evidence fails to show that Prymas or T&P committed at least two predicate acts of either mail or bankruptcy fraud.

### 1.        Neither Prymas nor T&P committed any predicate acts of mail fraud.

There is no evidence that Prymas or T&P participated in a scheme to defraud or attempt to defraud plaintiffs through the use of the mails in connection with the "settlement proceeds scheme." Under 18 U.S.C. §1341, the elements of mail fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails to further the scheme. E.g., Lorentzen v. Curtis, 18 F. Supp. 2d 322, 329 (S.D.N.Y. 1996) (citations omitted).

Allegations of mail fraud must be pleaded with particularity under FED.F.CIV.P. 9(b), Lorentzen, 18 F. Supp. 2d at 330. "Plaintiffs must allege the manner in which the allegedly fraudulent statement misled them and what the defendants obtained as a consequence of the fraud". Id. The Second Circuit has held that there is a deprivation of money or property within the meaning of the mail fraud statute only where a schemer appropriates a benefit and there is a corresponding loss or injury to the victim of the fraud. Id. at 331 (citations omitted). Despite

these legal requirements, plaintiffs have failed to show that the representations in the post-judgment interrogatories were (1) fraudulent, (2) how plaintiffs were misled by the allegedly fraudulently statements, and (3) that Prymas and T&P obtained something as a consequence of the alleged fraud.

There is no evidence supporting the complaint's allegation that Prymas agreed to recharacterize the settlement payments as "wages" (W-2 income) *for the purpose of depriving The Cadle Company of that asset*. Rather, the evidence shows that Prymas agreed to revisit the tax classification of the judgment payments on advice of an accountant and T&P's corporate counsel in response to demands of Flanagan, who was threatening more disruptive litigation.

The plaintiffs cannot point to sufficient evidence to demonstrate that Prymas acted with a specific intent to defraud the plaintiffs when, relying on the advice of counsel and an accountant, he agreed to reclassify the judgment payment monies as W-2 income. Intent to defraud is a necessary element to the crime of mail fraud. U.S. Fire Ins., 303 F. Supp. 2d at 144. The evidence supporting that intent must "giv[e] rise to a strong inference that the defendant knew the statements to be false and intended to defraud the plaintiff at the time they were made" Id. (quoting Quaknine v. MacFarlane, 897 F.2d 75, 79-80 (2d Cir. 1990)).

The record discloses no intent on the part of Prymas to defraud Flanagan's creditors. Rather, confronted with the execution and Flanagan's demand that the settlement monies be classified as wages for tax purposes, or face further litigation, Prymas responded as a prudent business person by seeking the advice of the corporation's attorney, Todd Bainer. Before a legal opinion was obtained, however, an accountant issued an opinion that the monies were more properly classified as W-2 income to avoid IRS penalties and interest.

Good faith reliance on the advice of counsel and accountants is a defense to mail fraud because it negates the element of intent necessary to the crime.  United States v. Evangelista, 122 F.2d 112, 117 (2d Cir., 1997); U.S. v. Goss, 650 F.2d 1336, 1344-45 (5th Cir., 1981), limited on other grounds, U.S. v. Rochester, 898 F.2d 971, 978 (5th Cir., 1990); L. Sand, Model Federal Jury Instructions, ¶8.04 (1999).

Good faith reliance on the advice of an accountant or an attorney has been recognized as a viable defense to the element of *scienter* in a variety of contexts.  E.g., SEC v. Caserta, 75 F. Supp. 2d 79, 94-95 (E.D.N.Y. 1999) (securities fraud); Kidder, Peabody & Company v. IAG International Acceptance Group, 14 F. Supp. 2d 391, 403 (S.D.N.Y. 1998) (breach of contract); United States v. West, 22 F.3d 586, 598 (5th Cir. 1994) (bankruptcy fraud and money laundering).

In a fraud crime involving *scienter*, the Court may grant summary judgment for the defense where the plaintiff has not produced evidence to counter a defense of good faith reliance on counsel or accountants.  E.g., Newton v. Uniwest Fin Corp., 802 F. Supp. 361, 367-68 (D. Nev. 1990), aff'd., 967 F.2d 340 (9th Cir. 1992) (granting summary judgment for defense in securities fraud case because plaintiff did not produce evidence to counter defense of good faith reliance on accountant); Mathews v. Centex Telemanagement, Inc., No. C-92-1837, 1994 WL 269734, at *7 (N.D. Cal. June 8, 1994) (granting summary judgment for defendants who conferred with and relied in good faith on their outside auditor).

The reclassification of the judgment payments as wages (W-2 income) and the resulting representation to the court, based on the accountant's and counsel's  opinion, do not constitute mail fraud.  At the time the post-judgment interrogatories were served in December, 1998, the settlement proceeds had long been classified as W-2 income, subject to garnishment but not to

execution.  There is no evidence that Prymas, who has testified that he disliked and distrusted

Flanagan, was motivated by any desire to help Flanagan avoid his creditors.

There is no evidence in this case refuting the evidence clearly establishing that Prymas and

T&P relied in good faith on advice of counsel and an accountant in determining that the judgment

payments owed to Flanagan should properly be classified as W-2 income.  Prymas and T&P's

good faith reliance on the advice of counsel and an accountant precludes any finding that the

reclassification of the settlement monies payable to Flanagan and the subsequent truthful answer

to post-judgment interrogatories constituted either mail fraud or a RICO predicate act.  Prymas

and T&P are entitled to summary judgment on any claims of mail fraud.

### 2.    Neither Prymas nor T&P engaged in any predicate act of bankruptcy fraud.

Plaintiffs claim that "the defendants" committed predicate acts of "bankruptcy fraud in

violation of 18 U.S.C. §152, 18 U.S.C. §157 and 11 U.S.C. §548" by providing "knowing and

substantial assistance to Flanagan in connection with the fraudulent transfer of Flanagan's assets"

(Complaint at ¶80.1(a), p. 39.  Although plaintiffs claim bankruptcy fraud as a predicate act,

nowhere in the complaint or RICO Statement do plaintiffs state with the particularity required by

Rule 9(b) which defendants committed which acts said to constitute "knowing and substantial

assistance" in connection with fraudulent transfers of assets in connection with Flanagan's

bankruptcy.  "Where multiple defendants are asked to respond to allegations of fraud, the

complaint should inform each defendant of the nature of his alleged participation in the fraud."

Divittorio v. Equidyne Extractive Industries Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (affirming

dismissal of fraud claims).  The complaint utterly fails to satisfy this pleading requirement with

respect to Prymas and T&P.  Any claim of bankruptcy fraud as to Prymas and T&P should be dismissed.  Id.

Because Prymas and T&P are not clealy alleged to have been involved in the other two schemes identified as bankruptcy fraud, only the vague claim of "assistance to Flanagan's fraudulent transfer" is addressed here in an excess of caution.

18 U.S.C. §152 states in pertinent part:

§152.  Concealment of assets; false oaths and claims; bribery

A person who –

(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; …

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; …

shall be fined under this title, imprisoned not more than 5 years, or both.

In order to make out a violation of 18 U.S.C. §152(7) a plaintiff must prove that defendant "made the transfer in contemplation of bankruptcy or otherwise with an intent to defraud a United States Bankruptcy Court or defeat the bankruptcy laws." First Capital Asset Management, Inc. v. Brickellbush, Inc., 219 F. Supp. 2d 576, 582 (S.D.N.Y. 2002).

Although plaintiffs identify 18 U.S.C. §157 as a predicate act, that section of the Bankruptcy Code is specifically exempted as a RICO predicate act. 18 U.S.C. §1961 (1)(D).[13] An act of bankruptcy fraud under 18 U.S.C. §157 does not constitute a predicate act under RICO.

Similarly, any conduct by Prymas or T&P cannot constitute bankruptcy fraud under 18 U.S.C. §548.  11 U.S.C. §548 addresses the power of *a bankruptcy trustee* to avoid any transfer within one year before the date of the filing of the bankruptcy petition.  By its own terms, §548 does not apply to any conduct o Prymas or T&P, who were never bankruptcy trustees.

The only possible basis for asserting bankruptcy fraud as a RICO predicate act against Prymas or T&P is 18 U.S.C. §152, in connection with alleged  "knowing and substantial assistance to Flanagan in connection with the fraudulent transfer of assets."  Complaint, ¶ 80.1(a). There is no evidence that any conduct of Prymas or T&P violated that section. 18 U.S.C. §152(1) makes it a crime for a person to:

> (1) knowingly and fraudulently conceal from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; …

Nowhere in the Complaint or RICO Statement are Prymas or T&P alleged to have concealed an asset in connection with Flanagan's bankruptcy case filed in February, 1999.  The statute does not, by its terms, make "assisting" someone else who conceals assets a crime.

The plaintiffs, by predicating a RICO violation of "assistance" appear to be claiming "aiding and abetting" liability.  It is by now well established that no Civil RICO liability lies for

---

[13] "As used in this chapter (1) racketeering activity means … (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title)" 18 U.S.C. §1961(1)(D) (emphasis added).

aiding or abetting the fraudulent schemes of another.  <u>Pennsylvania Association of Edwards Heirs v. Rightenour</u>, 235 F.3d 839, 844-45 (3d Cir. 2000) (affirming district court's dismissal of Civil RICO aiding and abetting claim); <u>Goldfine v. Sichenzia</u>, 118 F. Supp. 2d 392, 403, 405-06 (S.D.N.Y. 2000) (fact that defendant may have assisted in the alleged scheme to defraud even if intentional, does not give rise to liability under §1962(c)).

The restrictive legend placed to effectuate the shareholders agreement did not constitute bankruptcy fraud, because it was neither a concealment of assets nor a false oath "in connection with" a case under Chapter 11.  18 U.S.C. §152.  At the time of the placement of the restrictive legend, there was no bankruptcy case,[14] nor any evidence to suggest that Flanagan was contemplating bankruptcy.  There is no evidence that Prymas or T&P participated in a "transfer" of the stock or that they acted with "*actual intent*" to hinder, delay or defraud the Cadle Company, necessary for the imposition of liability under §152.

The restrictive legend was placed on Flanagan's stock as part of the court-ordered shareholders agreement.  There is no evidence suggesting that Prymas or T&P acted for any purpose other than to comply with the Superior Court judgment or that placing the restrictive legend on the stock was motivated by a purpose other than to fulfill the terms of the shareholders agreement.  Although there might be evidence that suggests that <u>Flanagan</u> intended to frustrate creditors by the restrictive legend, there is no basis to impute Flanagan's motives to Prymas, who was interested in acquiring Flanagan's stock for himself. There is simply no evidence that Prymas or T&P committed any acts of bankruptcy fraud by placing a restrictive legend on the stock certificates.

---

[14]  Flanagan filed for bankruptcy protection in February, 1999.

18 U.S.C. §152 at a minimum requires some nexus between the alleged concealment and the bankruptcy matter. See, e.g., Bankers Trust Company v. Feldesman, 648 F. Supp. 17, 24 (S.D.N.Y. 1986) (concealing an asset during bankruptcy). There is no allegation and no evidence that Prymas or T&P concealed any asset during Flanagan's bankruptcy. Nor is there any allegation or any evidence that the placement of the restrictive legend were in contemplation of Flanagan's filing bankruptcy or of violating the bankruptcy code. Without evidence of concealment, transfer, intent to defraud the court or violate the bankruptcy laws, Prymas and T&P's participation in placing restrictive legends on the stock cannot be a violation of §152(1).

Similarly, with respect to the so-called "settlement proceeds scheme," there is no evidence that Prymas knowingly concealed assets or made a false oath "in connection with" a case under Chapter 11. The oath Prymas took with respect to his response to the post-judgment interrogatories was truthful at the time it was made. There is also no evidence that Prymas or T&P made any transfer of the judgment payments "with actual intent" to hinder, delay or defraud the Cadle Company, and no basis to impute Flanagan's motives to Prymas or T&P. There is no evidence to suggest that Prymas, individually or on behalf of T&P, acted with any intent other than good faith reliance on professional advice. See §V.A.1., supra.

There is no evidence that at the time Prymas acquiesced to Flanagan's demand that the tax treatment of the settlement judgment proceeds be changed to W-2 income, Prymas had any reason to know that Flanagan would declare bankruptcy a year later. Moreover, the decision to alter the tax classification of the judgment payments, based on the advice of both corporate counsel and an accountant, cannot, under any theory, constitute a predicate act of bankruptcy fraud under Civil RICO. The fact that the legitimate allocation in tax treatment impeded

plaintiffs' collection efforts does not convert it to a RICO predicate act of bankruptcy fraud.
Goldfine, 118 F. Supp. 2d, 405-06.

As with the restrictive stock legend, there is no evidence demonstrating that the change in tax classification on answers to post-judgment interrogatories were done during the bankruptcy or in contemplation of Flanagan's filing bankruptcy or as an attempt to violate the bankruptcy code. After service of the execution, Flanagan, through counsel, objected to the execution and filed an unauthorized exemption on behalf of T&P. Plaintiffs never challenged the exemption claim filed by Flanagan or the objection filed by Flanagan's attorney and permitted the execution to lapse. Thereafter, plaintiffs were made whole when Flanagan paid the judgment plus interest, costs and attorneys fees in full in November 1998.

Neither Prymas nor T&P Fraudulently Transferred or Concealed any of Flanagan's Assets, in violation of 18 U.S.C. §152(7)

18 U.S.C. §152(7) makes it a crime if a person:

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; …

There is no evidence that Prymas and T&P made a transfer "in contemplation of bankruptcy or otherwise" with an intent to defraud a U.S. Bankruptcy Court or defeat the bankruptcy laws." First Capital Asset Management, Inc. v. Brickellbush, 219 F. Supp. 2d 576, 582 (S.D.N.Y. 2000) (citations omitted). The intent to defeat the bankruptcy laws is a requisite element of an offense under §152(7). Burke v. Dowling, 944 F. Supp. 1036, 1066 (E.D.N.Y. 1995). Plaintiffs must prove that Prymas and T&P transferred or concealed the assets … with the

ultimate intent to defraud a U.S. Bankruptcy Court.  Id.  There is no evidence of and no basis to infer that Prymas intended to defraud the bankruptcy court.

Since there are neither allegations nor evidence sufficient to establish any intent by Prymas or T&P to defraud the bankruptcy court, none of their alleged conduct constitutes a predicate act of bankruptcy fraud under RICO.

B.    **Plaintiffs may not recover for a RICO conspiracy under §1962(d) without proving substantive RICO violations.**

Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of §1962(a), (b) or (c).  "To state a claim under §1962(d), a plaintiff must allege that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise."  Kades v. Organic Inc., No. 00 Civ. 3671LTSRLE , 2003 WL 470331 at 13 (S.D.N.Y. February 24, 2003), *14 (citing Colony at Holbrook, Inc. v. Strata G.C., Inc., 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996); Discon, inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1978).  Furthermore, "***there can be no RICO conspiracy without a substantive RICO violation***. Thus, if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations."  Kades, 2003 WL 470331 at *14.  (emphasis added, quotation marks and citations omitted).  See also Lesavoy v. Lane, 2004 WL 99815 at 11 (S.D.N.Y. January 22, 2004).  ("In other words, a RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met."); Goldfine v. Sichenzia, 118 F. Supp. 2d at 406.

There is insufficient evidence that either Prymas or T&P committed at least two related predicate acts, constituting a pattern of racketeering sufficient for imposition of Civil RICO liability to plaintiffs. Because the plaintiffs cannot produce sufficient evidence that either Prymas or T&P committed at least two related predicate acts, constituting a pattern of racketeering sufficient for imposition of liability under §1962, summary judgment must enter in favor of those defendants on the RICO conspiracy claim under §1962(d).

**C.     Neither Prymas nor T&P engaged in a pattern of racketeering.**

To establish a "pattern of racketeering activity within the meaning of the RICO statute, a plaintiff must allege facts tending to show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. The continuity necessary to prove a pattern can be either 'closed-ended continuity' or 'open-ended continuity'" Kades v. Organic Inc., 2003 WL 470331 at *10 (S.D.N.Y. February 24, 2003); accord Watral v. Silvernails Farms, L.L.C., 177 F. Supp. 2d 141, 148 (E.D.N.Y. 2001) (Wexler, J.).

**1.     The alleged predicate acts are insufficiently related to constitute a pattern of racketeering.**

In order to satisfy the RICO relatedness requirements, the plaintiff must allege predicate acts having the same purpose, results, participants, victims or methods of commission, or [that] otherwise are interrelated by distinguishing characteristics and are not isolated events. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999). A RICO claim, "replete with the ruinous threat of treble damages," cannot be assembled by cobbling together unrelated acts under the rubrick of an alleged scheme to defraud. McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992) (affirming dismissal).

Plaintiffs allege predicate acts of mail fraud and possibly bankruptcy fraud against Prymas and T&P.  They are alleged to have changed the tax classification of the judgment payments, placed a restrictive legend on the stock certificates, responded that they held no non-exempt property of Flanagan in response to post judgment interrogatories. .  None of these acts was a part of a pattern when viewed in the order in which they occurred.  The change in tax treatment was in response to Flanagan's demands and threat of litigation, and on the advice of an accountant.  The purpose of restrictive legend was to fulfill a requirement of a Superior Court judgment.  There is no evidence that it was directed at or intended by Prymas or T&P to avoid plaintiffs' collection efforts against Flanagan and no evidence that it had that effect.  Prymas' responses to the post judgment Interrogatories, individually or on behalf of T&P, was truthful, in light of an earlier legitimate decision, based on the advice of counsel and an accountant, to change the tax classification of judgment payments in response to Flanagan's demands.

Each of these acts was a response to isolated, unrelated events by Prymas and T&P, nonparties to plaintiffs' collection efforts against Flanagan.  There is insufficient evidence to show that these isolated events were part of a plan by Prymas or T&P to shield Flanagan's assets from plaintiffs' collection efforts.  Although Flanagan may have intended to evade his creditors, there is absolutely no evidence upon which to impute Flanagan's motives or intent to either Prymas or T&P.  Insofar as Prymas and T&P are concerned, these acts were isolated events and are not sufficiently related to impose RICO liability.

### 2.     The evidence fails to demonstrate closed-ended continuity.

Closed-ended continuity is defined as a series of related predicates amounting to continued criminal activity by a particular defendant extending over a substantial period of time.  DeFalco v.

Bernas, 244 F.3d 286, 321 (2d Cir. 2001); Cofacredit, 187 F.3d at 242. "Since the Supreme Court

decided H.J. Inc., the Second Circuit has never held a period of less than two years to constitute a

'substantial period of time.'" DeFalco, 244 F.3d at 321; GICC Corp. v. Technology Finance

Group, Inc., 67 F. 3d 463, 467-68 (2d Cir. 1995).

Here, by plaintiffs' own allegations, Prymas and T&P's actions spanned less than a year:

the earliest act is January 5, 1998, when T & P was served with an execution; the latest is

December, 1998 when Prymas and T&P responded to post-judgment interrogatories. Moreover,

Prymas and T&P's conduct involved two finite acts: the drafting of the shareholder's agreement

with an agreement and stock restriction, in compliance with a judgment, and reclassification of

judgment payments as W-2 income, based on the advice of an accountant, with consequent

answers to post-judgment interrogatories, or advice of corporate counsel. These actions of

Prymas and T&P do not "amount to continued criminal activity" and cannot be bootstrapped by

plaintiffs to Flanagan's efforts to protect his assets and the span of time which Flanagan took to

accomplish his goals.

### 3. The plaintiffs cannot prove open-ended continuity.

"Open-ended continuity exists where the racketeering acts themselves include a specific

threat of repetition extending indefinitely into the future or where it is show that the predicate acts

are a regular way of conducting defendant's ongoing legitimate business. Brookes v. August 22

Development, D/B/A, 1997 WL 76664 at p. 3 (D. Conn. 1997). Where the enterprise primarily

conducts a legitimate business, there must be some evidence from which it may be inferred that

the predicate acts were the regular way of operating that business, or that the nature of the

predicate acts themselves implies a threat of continued criminal activity.  <u>DeFalco</u>, 244 F.3d at

321; <u>GICC Corp.</u>, 67 F.3d at 466.

There is no threat of continued criminal activity inherent in any of Prymas' or T&P's

conduct.  Neither the reclassification, the stock restriction or the answers to post-judgment

interrogatories constituted criminal activity.  There is also no basis upon which to conclude that

any of these acts will ever occur again.  Flanagan is no longer associated with T&P, having been

discharged from employment after his criminal conviction.  The Court may also take judicial

notice of Prymas' purchase of Flanagan's T&P stock in the course of the bankruptcy proceedings.

There is, quite simply, no indication that Prymas or T&P would ever again find themselves part of

the event underlying the present action.

**D.    Plaintiffs lack standing because they have not suffered a RICO injury.**

The plaintiffs lack standing under RICO because they have not suffered a RICO injury.

RICO grants standing to sue to "(a)ny person injured in his business or property <u>by reason of</u> a

violation of section 1962 of this chapter."  18 U.S.C. §1964(c) (emphasis added).  The phrase "by

reason of" "limits standing to plaintiffs whose injuries were both factually and proximately caused

by the alleged RICO violation."  <u>Holmes v. Securities Investor Protection Corp.</u>, 503 U.S. 258,

262 (1992).

In the Second Circuit, this "direct causation" requirement has been applied repeatedly to

terminate RICO cases failing to satisfy its strict terms.  "In practice," the Court has observed, "our

cases have held RICO plaintiffs to a more stringent showing of proximate cause than would be

required at common law."  <u>Moore v. Paine Webber</u>, 189 F.3d 165, 179 (2d Cir. 1999) (Calabrese,

J., concurring).[15]  The failure of plaintiffs to meet this  causation requirement requires the entry of summary judgment.

A "violation of §1962" means that a defendant must have committed two or more predicate acts as defined by §1961(1). 18 U.S.C. §1961(5).  Additionally, plaintiffs must establish that <u>each</u> defendant's violations of the RICO statute proximately caused their injuries in order to have standing for a RICO claim.  <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 120-24 (2d Cir. 2003); <u>Oak Beverages, Inc. v Tomra of Massachusetts, L.L.C.</u>, 96 F. Supp.2d 336, 342-43 (2d Cir. 1995).  "[A] plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, *even though the injury was proximately cased by some non-RICO violations* committed by the defendants." <u>Baisch v. Gallina</u>, 346 F.3d 366, 373 (2d Cir. 2003) (emphasis added).

> [C]entral to the notion of proximate cause [under RICO] is the idea that a person is not liable to all those who may have been injured by his conduct, only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation and whose injury was reasonably foreseeable or anticipated as a natural consequence.

 <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d, 113, 123 (2d Cir. 2003) (quotations omitted).

---

[15]  <u>See, e.g.</u>, <u>DeFalco v. Bernas</u>, 244 F.3d 286, 329-30 (2d Cir. 2001) (upholding district court's determination that real estate developer had not proved that their damages were proximately caused by the defendants' wrongful conduct);  <u>Laborers Local 17 Health and Benefit Fund vs. Philip Morris, Inc.</u>, 191 F.3d 229 (2d Cir. 1999) (dismissing RICO claim based on determination that pension fund did not have standing to sue for damages suffered as a result of injuries to its members);  <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 769 (2d Cir. 1994) (dismissing RICO claim based on determination that plaintiff had not adequately alleged causal nexus between real estate losses and defendant's fraudulent conduct); <u>Manson v. Stacescu</u>, 11 F.3d 1127 (2d Cir. 1993) (upholding dismissal of RICO claim based on determination that individual who was shareholder, employee and creditor of corporation did not have standing to sue under RICO for damage to company because his injuries were derivative);  <u>Hecht v. Commerce Clearing House</u>, 897 F.2d 21, 23 (2d Cir. 1990).

"[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendants' actions" <u>Oak Beverages</u> ,96 F. Supp. 2d at 343.  Here, plaintiffs have no evidence whatever that injuries they claim to have suffered are directly caused by the acts attributed to Prymas or T&P.

Plaintiffs' inability to collect the Flanagan debts was not the direct result of any predicate act by Prymas or T&P.  First, these defendants committed no predicate acts or pattern of racketeering, as demonstrated earlier in this brief.  Second, neither the reclassification of judgment payments, stock restrictions, nor post-judgment interrogatory responses caused plaintiffs' alleged inability to collect the full amount of Flanagan's debts.  Moreover, the reclassification and stock restrictions occurred in Cadle I, in which plaintiffs recovered the full amount of the judgment. Plaintiffs can demonstrate no losses stemming directly from any conduct of Prymas or T&P.

Where a plaintiff bases RICO liability on predicate acts of fraud, the proximate cause requirement means that the plaintiffs must prove both transaction and loss causation.  <u>Id</u>. at 343. "Transaction causation" means that the fraud must have led plaintiffs to enter into the transactions at issue.  "Loss causation" means that the fraud must be both actual and a proximate source of the loss that plaintiffs suffered.  <u>Odyssey re (London) Limited v. Stirling Cooke Brown Holdings Ltd.</u>, 85 F. Supp. 282, 302 (S.D.N.Y. 2000).

> Thus, in addition to showing that but for the defendant's misrepresentations the transaction would not have come about, the defendant must also show that the misstatements were the reason the transaction turned out to be a losing one. Additionally, when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.

<u>Oak Beverages, Inc.</u>, 96 F. Supp. 2d at 343 (quotations and citations omitted).  <u>See also</u> <u>Moore v. Paine Weber</u>, 189 F.3d at 174-180 (Calabrese, J., concurring).

Additionally, when RICO liability is based on predicate acts of mail or wire fraud the plaintiff must adequately demonstrate reliance on the defendant's misrepresentations' in order to establish proximate cause. Metromedia Co. v. Fugazy, 983 F. 2d 350, 368 (2d Cir. 1992); Oak Beverages, Inc, 96 F. Supp. 2d at 343 (citations omitted); Difiore v. DiLorenzo, 1997 WL 722697 at p. 6 (E.D.N.Y. 1997). A plaintiff seeking to base RICO liability on these predicate acts must prove that its injuries are the result of reliance on the fraud. Falise v. American Tobacco Company, 94 F. Supp. 2d 306, 334 (E.D.N.Y. 2000) (citing A. Mathew, A. Weissman, and J. Sturc, 2 Civil RICO Litigation, § 8.04 [B] [1] pp. 8-44 (2d Ed. 1992). The complaint is devoid of any claim of reliance on any act of Prymas or T&P, and no evidence of any such reliance has been forthcoming in discovery.

As the allegations in the complaint and the facts adduced during discovery amply demonstrate, the only fraud that caused plaintiffs' inability to collect debts subsequent to the full payment in Cadle I was Flanagan himself. It was Flanagan who transferred the T&P stock to Babacus and others to avoid execution by the plaintiffs. It was plaintiffs' failure to garnish Flanagan's wages after its execution produced no monies that accounts for their inability to collect any of the judgment payments to Flanagan. Ultimately, it was Flanagan's bankruptcy that brought plaintiffs' collection efforts in the Connecticut state courts to a halt.

The only direct cause of plaintiffs' lack of collection success stems directly from Flanagan's fraudulent efforts to evade his creditors and, ultimately his bankruptcy filing. Flanagan's bankruptcy is the intervening and sole cause of the inability to collect debts other than the judgment in Cadle I.[16]

---

[16] Even then, plaintiffs' collection efforts have not been thwarted, but rather shifted to another forum. Moreover, plaintiffs cannot prove that but for the conduct of Prymas and T&P, they would have collected the full amount of the debt.

VI.  **CONCLUSION**

The evidence fails to establish that Prymas or T&P engaged in any act cognizable under RICO as a pattern of racketeering activity.  There is no evidence that Prymas or T&P acquired an interest in, or knowingly participated in the operation and management of Flanagan's financial "empire."  There is insufficient evidence that Prymas or T&P committed at least two predicate acts, were involved in a pattern of racketeering, or that the plaintiffs suffered a direct injury as a result of any of Prymas' or T&P's conduct.  There are, consequently, no genuine issues of material fact precluding the entry of summary judgment in favor of Prymas and T&P.

Plaintiffs' claims against Prymas and T&P in this matter demonstrate the danger of abuse of civil RICO remedies.  "The Second Circuit has warned that 'the potentially broad reach of RICO poses a danger of abuse [through] attempts to apply the statute to situations for which it was not primarily intended.'"  <u>Morin II</u>, 835 F. Supp. 132.  The purposes of civil RICO liability is to deter ***criminal*** conduct.  <u>Mathon</u>, 875 F. Supp. 995, 1001.  "The purposes of civil RICO liability do not include deterrents of unlawful acts, not rising to criminal liability, for which there are state and common law remedies" <u>Id</u>., citing <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21 (2d Cir. 1990).

> [A]lleged RICO violations must be viewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations.

<u>Id</u>.

This case presents an example of the "fanciful invocation of the draconian RICO weapon in civil litigation," so disfavored in this Circuit..  <u>Town of West Hartford v. Operation Rescue</u>, 915 F.2d 92, 104 (2d Cir. 1990),   The plaintiffs have cast their net too wide in seeking to hold

Flanagan's business associate and his corporation liable under RICO's draconian remedies for Flanagan's own deceptive conduct. .There is no genuine issue of material fact or any of plaintiffs' claims against Prymas and T&P.  Accordingly, summary judgment should enter in their favor.

RESPECTFULLY SUBMITTED,

THE DEFENDANTS
STANLEY F. PRYMAS AND
THOMPSON & PECK, INC.

By:     _____

WILLIAM F. GALLAGHER
Federal Bar #ct04147
Barbara L. Cox
Federal Bar #ct08523
The Gallagher Law Firm
1377 Boulevard
P.O. Box 1925
New Haven, CT  06509
Tel:  203-624-4165
Fax:  203-865-5598

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 14th day of May, 2004, a copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone able to accept electronic filing.  Notice of this filing will be sent by mail to the following counsel of record.  Parties may access this filing through the Court's system.

Edward C. Taiman, Jr., Esq.
Sabia & Hartley, LLC
190 Trumbull Street, Ste. 202
Hartford, CT  06103-2205
Phone:  860-541-2077
Fax:  860-713-8944
e-mail:  etaiman@sabiahart.com
AND

David G. Hill, Esq.
June M. Sullivan, Esq.
Halloran & Sage LLP
225 Asylum Street
Hartford, CT  06103
Phone:  860-522-6103
Fax:  860-548-0006
e-mail:  hill@halloran-sage.com
**For Defendants Leonard A. Fasano &
Fasano, Ippolito & Lee, LLC**

F. Dean Armstrong, Esq.
Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, IL  60422
Phone:  708-798-1599
Fax:  708-798-1597
e-mail:  dino@dinolaw.com
**For Plaintiffs The Cadle Company &
D.A.N. Joint Venture, A Limited Partnership**

Douglas S. Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT  06510-2026
Phone:  203-821-2000
Fax:  203-821-2009
e-mail:  jal@npmlaw.com
**For Defendant Charles A. Flanagan**

Mary Anne Charron, Esq.
R. Bradley Wolfe, Esq.
Gerald R. Swirsky, Esq.
Gordon, Muir & Foley
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106-5123
Phone:  860-525-5361
Fax:  860-525-4849
e-mail:  mcharron@gmflaw.com
          gwswirsky@gmflaw.com

AND

Bradley K. Cooney, Esq.
Bradley K. Cooney, P.C.
69 Island Avenue
Madison, CT  06443
Phone:  203-318-0464
Fax:  203-318-0065
e-mail:  droogsite@erols.com
**For Defendant Thompson & Peck, Inc.**

Todd R. Bainer, Esq.
Todd R. Bainer, LLC
71 Cedar Street
Branford, CT  06405
Phone:  203-483-7500
Fax:  203-483-7053
e-mail:  bainertoddr@aol.com
**For Defendant Todd R. Bainer**

Lisa G. Flanagan, Pro Se
230 Millbrook Road
North Haven, CT  06473

Paul Morgan Gaide, Esq.
713 Lovely Street
Avon CT 06001
**For Defendant Paul M. Gaide & Gaide & Associates, LLC**

_____
Barbara L. Cox