**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL | : | CIVIL ACTION NO. |
| Plaintiffs | : | 3:01CV531(AVC) |
| | : | |
| VS. | : | |
| | : | |
| CHARLES A. FLANAGAN, ET AL | : | JULY 1, 2004 |
| Defendants | | |

**DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

I.    **LEGAL ARGUMENT**

    A.    **Standard of Review**

"A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion." Newport Elec., Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001). If the documents submitted in support of a motion for summary judgment contain inadmissible hearsay or conclusory statements; are incomplete; or have not been properly authenticated, a motion to strike is appropriate. See Spector v. Experian Information Services, Inc., No. 3:01-CV-1955 (EBB), 2004 WL 1242978 at *4 (D. Conn. 2004); Keene v. Hartford Hospital, 208 F. Supp. 2d 238, 242 (D. Conn. 2002). A motion to strike is also appropriate if depositions contain testimony that contains hearsay, speculation or conclusory

statements.  A motion to strike can also be used to challenge documentary evidence which has not been properly authenticated.  See e.g., <u>Dedyo v. Baker Engineering New York, Inc.</u>, 1998 WL 9376 at *4 (S.D.N.Y. 1998).  <u>Newport Elec., Inc.</u>, 157 F. Supp. 2d at 208.  "Materials submitted by a party in connection with a summary judgment motion may be challenged on grounds that would preclude consideration of the material for the purposes of the motion.  The vehicle to make this type of contention is a motion to strike."  <u>Rohman v. New York City Transit Authority</u>, 215 F.3d 208, 218 n.6 (2d Cir. 2000).  "The moving party must be specific with regards to what it is seeking to have stricken and must set forth reasons for why the materials should not be considered by the court."  <u>Keene v. Hartford Hospital</u>, 208 F. Supp. 2d 238, 242 (D. Conn. 2002).

Rule 12(f) of the Federal Rules of Civil Procedure permits the court, in its discretion, to strike "… from any pleading any … insufficient defense or redundant, immaterial, impertinent or scandalous matter."

Connecticut Federal District Court Local Rule (hereinafter "Local Rule") 56(a)(1) provides that "[t]here shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)(1) Statement', which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."

Local Rule 56(a)(3) provides "[e]ach statement of material fact by a movant in a Local Rule 56(a)(1) Statement … must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents contain g such evidence shall be filed and served with the Local Rule 56(a)(1) … Statement[s] in conformity with F.R.C.P. 56(e). Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including when the movant fails to comply, an order denying the motion for summary judgment."

**B.      Plaintiffs' Statement Fails to Conform to Local Rule 56 (a)(1)**

Despite the clear language of Local Rule 56, plaintiffs have failed to comply with its requirements. First, apparently plaintiffs preferred to create their own title to their statement, and in defiance of the Local Rule 56, plaintiffs entitled their statement "Plaintiffs' Statement of Undisputed Facts in Support of Plaintiffs' Motions for Summary Judgment" instead of 'Local Rule 56(a)(1) Statement', as mandated by the rule. As the Court will note, the plaintiffs' "facts" are anything but undisputed.

Second, Plaintiffs' Statement contains 33 pages and 225 paragraphs, which is contrary to the Local Rule 56(a)1 requirement to submit a "concise statement". In keeping with plaintiffs'

defiant approach, plaintiffs support a majority of their statements with inadmissible, hearsay, and conclusory statements that are redundant, immaterial, impertinent, or scandalous.  A majority of plaintiffs' proposed statements of fact are not facts at all, but rather argument, unsupported by the deposition and documentary evidence cited as support.  Additionally, plaintiffs fail to support a number of conclusory paragraphs with <u>any</u> citations to any evidence at all.  As such, the Court should strike entire Plaintiffs' Statement for failure to comply with Rule 56.

Third, Plaintiffs' Statement is so lacking in support that it is overly burdensome and unreasonable to require the defendants to frame an adequate objection.  Plaintiffs' Statement is inflammatory and argumentative and seeks to avoid the letter as well as the spirit of Rule 56.  Moreover, the Court should not be forced to expend its resources parsing through and deciphering what, if any, genuine issues of material facts exist for the purposes of deciding Plaintiffs' Motion for Summary Judgment.  Thus, the Court should strike the entire content of Plaintiffs' Statement and order costs in preparing this Motion and supporting Memorandum for plaintiffs' failure to comply with Local Rule 56(a)1 and Local Rule 56(a)3.

In the alternative, the Court should order costs in preparing this Motion and supporting Memorandum and strike certain paragraphs of Plaintiffs' Statement as follows.

1.     <u>Paragraphs 70, 98, 110, 111, 115, 121, 159, 162, 174, 187, 194, 196, 198, 200, 202, 206, 208, 211, 214, 215, 216, 217, 219, 220, 221, 222, 223, 224 and 225</u> of Plaintiffs'

Statement should be stricken on the basis that as to those statements plaintiffs' cite no evidence as required under Local Rule 56(a)(3).

    2.    <u>Paragraphs 13, 17, 32, 33, 37, 39, 40, 41, 44, 45, 46, 51, 52, 53, 55, 62, 63, 65, 66, 71, 72, 75, 78, 82, 90, 91, 94, 97, 100, 101, 105, 106, 109, 114, 116, 131, 133, 134, 144 (in part), 160, 161, 176, 188, 189 and 201</u> of Plaintiffs' Statement should be stricken as the evidence cited by plaintiffs in support of the stated facts alleged to be undisputed is clearly not supportive of all of the allegations.

        <u>Paragraph 13</u> states as follows:

> The purported Fifth Amendment IRS concerns, however, were simply a ruse concocted by Flanagan and his attorney to avoid or delay providing any information to plaintiffs about the location and transfer of Flanagan's assets.  (Px 105; Px A(1) pp. 197-98).

The Court should strike paragraph 13 for the reason that the evidence does not support it. Px 105 is a letter dated December 11, 1998 from Fasano to Bainer indicating that "to stop Charlie from testifying back in March of 1998, we plead the Fifth Amendment based upon outside issues."  No where does this letter indicate what the outside issues were, and in fact, there was an ongoing I.R.S. investigation of Flanagan.  Px A(1) pp.197-98 actually contradict Plaintiffs' Statement paragraph 13.  Px A(1) pp.197-98 is an excerpt from Flanagan's deposition which states in part:

Q.    Did you have a discussion about the strategy being you wouldn't testify as to the location of your stock by asserting the fifth amendment on outside issues?

A.    No.

Paragraph 17 states as follows:

According to Attorney William Gallagher (the former president of the Connecticut State Bar Association) (Px D p. 53) Flanagan "was probably the New Haven Judicial District's biggest debt [sic] beat. He had enormous number of debts against him." (Id. p. 28)

The "Id." citation refers to the support cited for paragraph 16.  None of the pages referenced as support to paragraph 16 provides any support for paragraph 17.  Item G(1) contains testimony given at the grievance hearing.  The witness providing this testimony is nowhere in the exhibit identified.  It is not admissible testimony; nor does it support any fact offered in paragraph 17.

Similarly, plaintiffs' Exhibit 175 (a handwritten memo of some of Flanagan's debts), does not support any fact offered in paragraph 17.  Plaintiffs' Exhibit H, testimony of the plaintiffs' designated witness, does not add any support to the facts of paragraph 17.  Finally, plaintiffs' Exhibit 20 discusses amounts of judgments one attorney had secured against Flanagan, but contains no evidence concerning the number of Flanagan debts relative to other debtors in the New Haven Judicial District.

Paragraph 32 states as follows:

> With the consent of Flanagan, on January 5, 1998 Prymas
> forwarded the property execution to Bainer for his legal opinion
> (Px 111), which was reviewed by Bainer on January 5, 1998.  (Px
> 65)

Px 111 is a memorandum dated January 5, 1998 from Prymas to Flanagan in which

states, "It appears to be another garnishment of some type and since I am unsure how to deal

with it, I think we should sent (sic) it to Todd and ask for his guidance.  Please let me know what

you think."  This memorandum provides no evidence that Flanagan consented to sending the

property execution to Bainer or that Prymas sent the property execution to Bainer.

Px 65 is a timesheet of Bainer which, while it may provide evidence that Bainer reviewed

the property execution, does not provide any evidence that he received the property execution

from Prymas or that Flanagan consented to his receipt or review of such document.

Consequently, plaintiffs have failed to comply with Local Rule 56(a)(3) as to paragraph

32 of Plaintiffs' Statement.

Paragraph 33 states as follows:

> Flanagan understood that as of January 5, 1998 T&P was to turn
> over to the sheriff all non-wage items that T&P held for Flanagan's
> benefit. (Px A(1) p. 58)

The deposition page cited contains no support for this asserted fact. Page 58 of Flanagan's deposition concerns monies expended for Flanagan's rental properties. This "fact" should be stricken.

> Paragraph 37 states as follows:
>
> Flanagan, however, was in a predicament: all parties had previously agreed that the ¶12 settlement payments were 1099 miscellaneous income, and T&P had previously treated the prior settlement payments to Flanagan as 1099 miscellaneous income. (Px B pp.217-218 & 223; Px 72)

Px B pp. 217-218 refers to pages from the January 15, 2003 deposition of Bainer and Px 72 refers to a letter dated February 25, 1998 from Bainer to Fasano. Neither of the cited pages remotely relate to the statement made by plaintiffs in paragraph 37.

> Paragraph 39 states as follows:
>
> In an effort to skirt the writ, however, Fasano told T&P's attorney, Bainer, that he (Fasano) wanted the characterization of the ¶12 Settlement Agreement payments changed from 1099 miscellaneous income to wages. (Px C pp. 60 and 63)

Px C pp. 60 and 63 refers to pages from the March 14, 2003 deposition of Fasano. Neither of the cited pages is even relevant to the characterization of the settlement payments.

> Paragraph 40 states as follows:
>
> On January 9, 1998 Flanagan, Prymas and T&P agreed to send the property execution issue to Flanagan's attorney, Fasano, and to

> T&P's attorney, Bainer, for their thoughts on how to handle that
> issue.  (Px 112)

Px 112 refers to minutes of the January 19, 1998 T&P Auxiliary Committee meeting.
The only language in that document that refers to sending anything to Fasano and Bainer is:
"Both CF & SP have agreed to send copies of the Settlement Agreement to Atty. Bainer who
represents T&P Inc. and to Atty. Fasano who represents CF.  Atty. Bainer and Atty. Fasano will
discuss the handling of this matter and report back to CF & SP."  The document does not support
the statement or provide evidence that the "property execution issue" was sent to Fasano and
Bainer.

> <u>Paragraph 41</u> states as follows:
>
> Bainer, however, full-well knew that Flanagan waned (sic) to
> recharacterize the ¶12 Settlement Agreement payments from 1099
> miscellaneous income to wages in an effort to avoid the federal
> court property execution that TCC had served on T&P.  (Px B p.
> 223)

Px B p. 223 refers to a page from the January 15, 2003 deposition of Bainer.  That page
includes the following excerpt of questions to and answers from Bainer:

> Q:     Did he ever tell you why he wanted it changed to W-2 income?
>
> A:     No.
>
> Q:     Did you ever think maybe it was to try to avoid the court execution that
>        was served?  Did that creep into the back of your mind at all?

A:       Probably.  I don't have a recollection of it, but probably.

Plaintiffs have clearly overstated and mischaracterized Bainer's testimony in paragraph 41.  In addition, the evidence cited is inadmissible opinion testimony.

> Paragraph 44 states as follows:
>
> Although Fasano had previously informed Bainer that he (Fasano) wanted the ¶12 settlement payments to be recharacterized as wages (and thus not subject to the federal property execution), on January 13, 1998 Bainer instructed Fasano that unless Fasano took 'some affirmative legal action in federal court to stay or otherwise obviate the property execution', T&P would be left with no choice but to turn the ¶12 settlement funds over to the executing creditor, TCC. (Px 23; Px B pp. 191-193; Px E pp. 116-117; and 119-120)

Px 23 is a January 13, 1998 letter from Bainer to Fasano, which plaintiffs accurately quoted but the letter certainly didn't "instruct" Attorney Fasano to do anything and nothing else in the letter supports this argument.  Additionally, Px B is a transcript of the January 15, 2003 deposition of Bainer and Px E is a transcript of the January 29, 2004 deposition of Prymas.  Nowhere in these deposition transcripts is evidence that Bainer "instructed" Fasano to do anything.  Moreover, the transcripts do not support the allegation that "Fasano had previously informed Bainer that he (Fasano) wanted the ¶12 settlement payments recharacterized as wages (and thus not subject to the federal property execution".

> Paragraph 45 states as follows:
>
> > Rather than take any affirmative legal action in federal court to stay the writ of execution, on January 20, 1998 Flanagan and Fasano simply filed a claim exemption form (Px 25) and an Objection to Property Execution (Px 24) which represented to TCC and Judge Covello that "other than wages, there was no other property belonging to Flanagan which was held by T&P." (Px 24; Px B p. 197).

The Court should strike paragraph 45 for the reason that the evidence does not support it. Although Px 24 is the Objection to Property Execution and Px 25 is the Claim Exemption Form, the documents do not state that the defendants filed them in lieu of taking any affirmative legal action in federal court. In fact, Px B p. 197 is an excerpt from Bainer's deposition that states in part:

> Q.    Mr. Bainer, Charlie Flanagan filed an objection with the court as to what, as to the settlement proceeds?
>
> A.    I don't know how it was phrased. He filed some kind of objection to the property execution. I believe he claimed that they were wages.
>
> Q.    Did it come to your attention in that timeframe, January/February of 1998, that Charlie Flanagan and Leonard Fasano were lying to the Court?
>
> A.    No.

Bainer did not have first hand knowledge of the facts. His deposition testimony clearly is his opinion only and cannot substantiate paragraph 45. Bainer's deposition testimony does not support or even begin to address any issues with regard to paragraph 45.

Paragraph 46 states as follows:

Although Bainer and Prymas knew that Flanagan's and Fasano's representations to TCC and Judge Covello were false (Px 69), they took no steps to honor the federal court property execution and have the ¶12 Settlement Agreement proceeds paid over to the sheriff.

Px 69 is a February 4, 1998 memorandum from Prymas to Bainer. In the only relevant portions of that memorandum, Prymas writes "I am concerned about item #6 that says, 'Furthermore, Thompson & Peck, Inc. claim to not have any money assts due to Mr. Flanagan'. Who represented this to the Court? As you know it is inaccurate because T&P does have an obligation to CF … I do not like or appreciate Attorney Fasano's 2/4/98 letter about me and my alleged improper conduct and the apparent misrepresentation to the Court that T&P does not have possession of any money or assets due CF." These statements do not serve as evidence of the alleged undisputed fact that Prymas and Bainer knew anything about statements made to the court and Judge Covello by Flanagan and Fasano. As the memorandum states, Prymas wanted to know "who represented this to the court?" Further, the second portion of Plaintiffs' Statement that begins with "they took no steps to honor the federal court property execution" is not supported by any cited evidence and therefore should be stricken on the basis that the Plaintiff has failed to fulfill the requirements of Local Rule 56(a)(3).

Paragraph 51 states as follows:

Shortly thereafter, a meeting was scheduled in New Haven to
discuss strategy on how to circumvent the federal court property
execution.  (Px  72)

Px 72 is a letter from Bainer to Fasano.  The cited evidence does not mention the

scheduling of a meeting in any location for any purpose and therefore the cited evidence does not

support the statement in paragraph 55.

Paragraph 52 states as follows:

On February 9, 1998 Flanagan and Fasano met with Prymas and
Bainer to discuss the federal court property execution and the plan
of Fasano and Flanagan to change the characterization of the
Settlement Agreement payments to wages.  (Px 65 p. 2; Px B pp.
221-22; Px E pp. 136-139)

Px 65 is Bainer's time sheet, Px B pp. 221-22 is an excerpt from Bainer's deposition and

Px E 136-139 is an excerpt from Prymas' deposition.  The cited evidence merely reflects the fact

that a meeting took place on February 9, 1998 and that Flanagan, Fasano, Prymas and Bainer

attended.  The cited evidence provides no support for the proposition that a "plan" between

Fasano and Flanagan existed to change the characterization of the Settlement Agreement

payments.

Paragraph 53 states as follows:

At that meeting Bainer warned the other defendants that changing
the characterization of the Settlement Agreement payments from

> 1099 miscellaneous income to wages in response to the federal
> court property execution would leave them all open to a claim that
> there was a civil conspiracy to help Flanagan defraud his creditors.
> (Px 65 p. 2;  Px B pp. 221-22;  Px E pp. 136-39)

Px 65 is Bainer's time sheet which refers to a meeting but not to the subject matter of the

meeting.  Px B pp. 221-22 is an excerpt from Bainer's deposition.  In that excerpt there is no

mention of any warning to any of the other defendants nor is there any mention of a conspiracy.

Px E pp. 136-39 is an excerpt from Prymas" deposition.  In that excerpt Mr. Prymas states that

he doesn't recall "the details of that meeting".  There is nothing in the text of that excerpt that

confirms that Bainer warned the defendants of anything at a meeting.

> Paragraph 54 states as follows:

> Bainer further warned that the conspiracy claim was a risk that
> they had to seriously consider.  (Px 65 p. 2; Px B pp. 221-22; Px E
> pp. 136-139)

Px 65 is Bainer's timesheet, Px B pp. 221-22 is an excerpt from Bainer's deposition and

Px E pp. 136-139 is an excerpt from Prymas' deposition.  There is nothing in the cited evidence

that supports the statements in ¶55.  Further, Bainer denied this allegation in paragraph 59 of his

Answer to Plaintiffs' Complaint.

> Paragraph 55 states as follows:

> Fasano and Flanagan, as well as Bainer, Prymas and T&P, all
> agreed to accept that risk.  (Id.)

The evidence cited in support of paragraph 55 is the same evidence cited in support of paragraphs 53 and 54.  There is no evidence whatever in Px 65, the Bainer deposition (Px B) or the Prymas deposition (Px E) that supports an agreement that the individuals named agree to accept a risk of a conspiracy claim.

> Paragraph 56 states as follows:
>
> Although no affirmative steps were taken in federal court to stay the writ of execution, not a single payment of the $75,000 settlement obligation was turned over to the sheriff, with the ¶12 settlement funds simply re-characterized as wages, and then paid directly to Flanagan.  (Px S 114; 115; 143 & 145; PX B pp. 207-08 & 217)

Px 114 reflects that the property execution had expired.  Px 115 reflects a discussion regarding amendment of §12 of the Settlement Agreement/Judgment in May 1998 and escrowed payments.  Exhibit 143 reflects expiration of the property execution and resumption of payments to Flanagan as wages and referral to Bainer for opinion regarding escrowed payments.  Exhibit 145 concerns the discontinuance of non-salary payments to Flanagan and payment of additional wages, effective May 15, 1998.  Bainer deposition (Px B) pp. 207-208 and 217 discuss the treatment of the settlement funds.  There is no support for the claim that "no affirmative steps were taken in the federal court to stay the writ of execution."  In fact, both the complaint and the federal court file reflect that Flanagan objected to the writ of execution and claimed an exception.

Paragraph 62 states as follows:

> To avoid the federal court property execution, the four issued but-not-cashed settlement checks were moved to the end of the Settlement Agreement's pay-out (after the writ of execution had expired), and then re-characterized as wages.  (Px F pp. 29-33 & 37-38)

None of the cited pages from the Steele deposition support the argumentative statement that the checks were moved to the end of the Settlement Agreement pay-out "to avoid the federal court property execution."  That part of the statement should be stricken.

Paragraph 63 states as follows:

> According to Prymas, it was Bainer who told him to hold the four issued but not cashed Settlement Agreement checks until the Writ of Execution expired, and then add those payments to the end of the settlement pay-out.  (Px E. 57)

Px E 57 is an excerpt from the deposition of Stanley Prymas.  The only relevant language on page 57 of that deposition is as follows: "… Attorney Bainer advised us to hold these in abeyance until Attorney Fasano could complete his legal analysis, and then, as I mentioned before, the writ of execution, there were delays, and the writ of execution expired, and then we were advised by Attorney Bainer that we could continue, we should continue paying Mr. Flanagan W-2 income until the balance that was owed to him was paid."  This evidence does not support the statement that Bainer told Prymas to hold the four checks until the Writ of Execution

expired nor that Bainer told Prymas to "add those payments to the end of the settlement pay-

out".

> Paragraph 65 states as follows:
>
> Although Prymas knew that the ¶12 Settlement Agreement
> payments had been recharacterized from 1099 income to wages to
> avoid the earlier writ of execution, he sought comfort from co-
> conspirator Bainer on how to respond to the federal court PJR
> Interrogatories.  (Px 116)

Px 116 is a November 12, 1998 memorandum from Prymas to Bainer.  The text of that

memo is as follows: "Today, I was served both personally and as agent for Thompson & Peck,

Inc. with the enclosed. I do not know of any nonexempt personal property that I have or T&P has

that belongs to Charlie.  So, I plan to answer both in the negative.  Do you know of any reason

that I should not answer this say for T&P?  Please let me know.  Thank you."  This memo

provides no evidence that Prymas knew of the recharacterization, no evidence that the

recharacterization was for the purpose of avoiding the writ of execution, no evidence that Prymas

"sought comfort" from Bainer and no evidence that Bainer was a co-conspirator.

> Paragraph 66 states as follows:
>
> Bainer affirmed that earlier conspiracy by concurring with Prymas
> that Flanagan was only paid wages by T&P (Px 118), and thus it
> was appropriate to respond to TCC that T&P was not in possession
> of any non-exempt property that belonged to Flanagan.  (Px 119)

Px 118 is a November 24, 1998 letter from Bainer and the relevant language of that document is as follows: "As to the Corporation, it is my understanding that Charlie is paid wages by the Corporation, only. These wages are based on his performance of his employment. It is also my understanding that these wages already have a garnishment or garnishments being taken from them by others…. If the Creditor also checked the IV on the Thompson & Peck set, and if all that Thompson & Peck conceivable would have of Charlie's, is future wages that are not yet earned, then you simply answer 'no' as to whether or not Thompson & Peck is holding his personal property." This statement does not in any way "confirm an earlier conspiracy" nor is it evidence that Bainer "concurs" with Prymas. Bainer merely says in his letter that it is "his understanding that Charlie is paid wages by the Corporation, only."

Px 119 is a November 30, 1998 memo from Prymas to Flanagan in which Prymas writes: "Todd Bainer's November 24, 1998 letter confirmed my belief that T&P does not have nonexempt property that belongs to you. Therefore, if you agree, I will complete the interrogatory by checking "NO" for item IV. Thank you." This statement does not evidence a conspiracy but merely reflects that Prymas and Bainer both believed that T&P did not have any nonexempt property that belonged to Flanagan.

> Paragraph 67 states as follows:
>
> On November 30, 1998 Flanagan agreed to the continuation of the re-characterization plan. (Id.)

Neither exhibit reflects an agreement to a continuation of a plan.  Px 118 is a November 24, 1998 letter from Bainer to Prymas.  Px 119, a memorandum from Prymas to Flanagan, reflects Flanagan's agreement to the proposed answer to post judgment remedy interrogatories.  Plaintiffs' assertion of "fact" is not supported by the referenced exhibits and should be stricken.

Paragraph 71 states as follows:

Pursuant to the plan worked out among Flanagan, Fasano, Prymas and Bainer, on January 19, 1999 Prymas mailed to Plaintiffs' counsel responses to the PJR Interrogatories which falsely represented that Prymas knew of no funds that were owed to Flanagan.  (Px 24)

Px 24 is Fasano's January 20, 1998 Objection to Property Execution filed on behalf of Flanagan in the Cadle v. Flanagan, federal court lawsuit.  Such objection is clearly unrelated to and provides no evidence in support of the statements in paragraph 71.

Paragraph 72 states as follows:

The defendants knew that the primary target of TCC's collection efforts was Flanagan's 50% stock ownership in T&P.  (Px B pp. 24 & 29)

Px B pp. 24 and 29 are excerpts from Bainer's deposition.  On page 29, is the following:

Q:     And at this time in December of 1998 you had the perception that the target, to use your terminology, the target of the Cadle Company's collection efforts against Charlie Flanagan was his stock in Thompson & Peck, correct?"

> A:     Was a target, yes.
>
> Q:     Well, he was the primary target wasn't he?
>
> A:     I don't know.  I don't know what their agenda was.  I mean, it was the only asset Thompson & Peck was aware of that he had, so…
>
> Q:     Not true.
>
> A:     Sorry?
>
> Q:     Thompson & Peck was aware that there was approximately $75,000 due on a settlement agreement owed to Charlie Flanagan, correct?

This deposition excerpt does not confirm that Bainer or any other defendant "knew that the primary target of TCC's collection efforts" was Flanagan's stock.  As the transcript reveals Bainer stated in the deposition excerpt that he doesn't know.

> <u>Paragraph 75</u> states as follows:
>
> Further, on January 5, 1998 T&P's attorney, Bainer, reviewed the property execution for at least an hour.  (Px 65)

Px 65 is Bainer's time sheet.  The relevant time entry on this time sheet is as follows: "01/05/98 TRB Receive/review fax transmission from S.P. w/ enclosures re: writ of execution to C.F./TPECK re: Cadle Co. claim 1.0".

This time sheet entry clearly does not provide evidence that Bainer "reviewed the property execution for at least an hour".  The entry doesn't even evidence that he looked at the

property execution itself let alone for the entire hour of the entry. The time sheet entry states that

Bainer reviewed a fax transmission with enclosures *regarding* the writ of execution.

Paragraph 78 states as follows:

Flanagan and Prymas' lawyer knew that if a creditor could get hold
of Flanagan's stock through execution, Flanagan would be forced
to pay off the creditor. (Id.; Px D p. 23; Px 3)

The Court should strike paragraph 78 for the reason that the evidence cited does not

support it. The evidence cited does not demonstrate that the attorneys knew or had reason to

know that Flanagan would be forced to pay off the creditor if it could get hold of the stock. In

fact, Px D is an excerpt from the deposition of William Gallagher, who did not testify as to what

the attorneys knew. The cited evidence is hearsay and cannot support paragraph 78. Px 3 is a

memo dated January 6, 1998 from defendant Flanagan to Fasano expressing Flanagan's concern

that someone may attempt to obtain his T&P stock. No where in the memo does it explain or

demonstrate why someone would obtain the stock. Paragraph 78 is a conclusory statement that

lacks an evidentiary basis.

Paragraph 82 states as follows:

In addition to the property execution which was served on January
5, 1998, on February 4, 1998 TCC filed a motion for turnover of
Flanagan's T&P stock, which was received by T&P and Bainer on
that same date. (Px 69A)

21

Px 69A is the Motion for Turnover Order dated February 2, 1998.  First, the motion is for the "turn over of all property in which the Judgment Debtor, Charles A. Flanagan, had an interest as of the date the Property Execution in this matter was served", not merely for the turnover of Flanagan's stock.  Secondly, there is nothing in the motion that would provide evidence that Bainer received a copy of the motion on that date or otherwise.

Paragraph 90 states as follows:

On April 22, 1998 it was represented to Judge Covello that Fasano and Flanagan had "gathered together thousands of documents to be produced for in-camera inspection", and estimated that the documents would be produced to the Court within the next week. (Px 73) …

The Court should strike paragraph 90 because Px 73 does not support paragraph 90.  Px 73 is a Modification of Settlement Agreement dated June 17, 1997, within which is never mentioned any documents to be produced to the Court.

Paragraph 90 continues:

… The relevant subpoenaed documents, however, where never produced to the Court or to plaintiffs.  (Px G(1) pp. 62-66, 67, 73-78 & 80-81; Px G(2) pp. 140, 180 & 182)

Px G(1) is an excerpt from a transcript of the State of Connecticut Statewide Grievance Committee dated September 19, 2001 in which the witness is not identified.  Px G(2) is an excerpt from a transcript of the State of Connecticut Statewide Grievance Committee dated

October 24, 2001 in which the witness is not identified.  Consequently, the documents cannot be authenticated and the court should strike paragraph 90 because of insufficient evidence to support it.

> Paragraph 91 states as follows:
>
> The relevant subpoenaed documents, however, were never produced to the Court or the Plaintiffs.  (Px G(1) pp. 62-66, 67, 73-78 & 80-81; Px G(2) pp. 140, 180 & 182)

Paragraph 91 is a reiteration of the second sentence in paragraph 90 and the Court should strike it for the same reasons.  Additionally, the court should strike paragraph 91 for the reasons stated above pertaining to paragraph 90 and for the reason that it is repetitive.

> Paragraph 94 states as follows:
>
> Despite Judge Covello's injunction against the transfer of Flanagan's assets and the turnover order requiring the turn over of Flanagan's T&P stock, the Defendants proceeded with their plan to place a restrictive legend on Flanagan's stock.  (Px 129)

Px 129 is a July 27, 1998 fax from Bainer directed to Flanagan and Prymas in which Bainer writes: "May I please have your original stock certificates for the corporations ASAP, so I can wrap-up everything this week before I leave on vacation.  Ideally, you should messenger them over to my office today or tomorrow so I can do everything for Wednesday's meeting and we can put this behind us."  There is nothing in the fax that suggests that the defendants were

aware of any order of Judge Covello, that "despite Judge Covello's injunction," or that they "proceeded with a plan."

Paragraph 97 states as follows:

On August 21, 1998 Flanagan, Prymas and Bainer met at T&P's office in New Haven to carry out the terms of their plan.  (Px B pp. 68 & 92-93)

Px B pp. 68 and 92-93 are excerpts from Bainer's deposition.  There is no reference in this deposition excerpt of any "plan" of Flanagan, Prymas and/or Bainer.

Paragraph 100 states as follows:

Flanagan, however, did not feel as though he was obligated to honor Judge Covello's orders because his attorney, Fasano, had told him he did not have to turn over his T&P stock.  (Px B pp. 120-21)

Px B p. 120 - 121 is an excerpt of the transcript of Bainer that fails to support paragraph 100.  Moreover, the deposition testimony is speculation by a third party and based only on opinion and therefore inadmissible evidence.  For those reasons, the Court should strike paragraph 100.

Paragraph 101 states as follows:

On September 23, 1998 Judge Covello again ordered Flanagan to turn over to Plaintiff TCC the T&P stock and the documentation showing the transfer of that stock.  (Px 74).

Plaintiffs fail to attach an Exhibit 74 in their Appendix of Documents. Plaintiffs' exhibits correspond to exhibits used at depositions and Exhibit 74 used at the deposition of Todd R. Bainer is a 1995 reported court decision from Mr. Bainer's divorce. Obviously, that court decision does not support paragraph 101.

<u>Paragraph 105</u> states as follows:

But Ms. Demetropoulous (who was one of Fasano's clients) (Px C p. 39) knew nothing about Flanagan's stock, and did not in fact have possession of Flanagan's stock. (Px J p. 23; Px C pp.67-69)

The Court should strike paragraph 105 because the evidence fails to support it. Px J p. 23 is an excerpt from a corrected transcript of a hearing before a reviewing committee dated October 24, 2001. The witness is unidentified. The transcript page does not mention the whereabouts of the Thompson and Peck stock nor does it mention Ms. Demetropoulous. Px C pp. 67-69 is an excerpt of a transcript of Fasano's deposition that states:

Q.     You understood physical possession of the stock was transferred from Charlie Flanagan to Sharon Demetropolous as part of this security interest?

A.     That's correct. That's what I understood.

The cited evidence fails to support paragraph 105. For that reason, the court should strike paragraph 105.

Paragraph 106 states as follows:

Fasano knew, must have known, or should have known that
Flanagan's representations to the Court were false.  (Px 62)

The Court should strike paragraph 106 because the evidence fails to support it.  Px 62 is

defendant's Response to plaintiffs' Objection to Amended Notice of Compliance dated October

27, 1998 in which Fasano explained that he did not know about the transfer of stock for a

significant period of time after the transfer occurred and explained his duty to maintain the

attorney/client privilege.  No where in Px 62 does it demonstrate that "Fasano knew, must have

known, or should have known that Flanagan's representations to the Court were false."  The

cited evidence fails to support paragraph 106 and for that reason the court should strike the

paragraph.

Paragraph 109 states as follows:

On October 26, 1998 Judge Covello issued a Show Cause Order
scheduling a contempt hearing on November 16, 1998 for
Flanagan's failure to turn over his stock and failure to provide an
accounting as to any disposition of the stock as required by the
turnover order.  (Px 77)

The Court should strike paragraph 109 because the evidence fails to support it.  Px 77 is a

Stipulation of Offense Conduct pertaining to defendant Flanagan's guilty plea in the IRS

investigation.  No where does Px 77 indicate there was a Show Cause Order by Judge Covello.

For that reason the cited evidence fails to support paragraph 109 and the court should strike

paragraph 109.

> Paragraph 114 states as follows:
>
> Flanagan and Fasano also represented that Babacas supposedly had loaned Flanagan "$120,000.00 on or about June 19, 1997, and has held said stock as security for the judgment [sic] since the above date until present …"(Id.)

Plaintiffs cite Px 6, the Second Notice of Compliance dated November 12, 1998, which

states "Mr. Babacus loaned Mr. Flanagan $120,000.00 on or about June 19, 1997, and has held

said stock as security for the judgment since the above date until present (see attached

documentation)".  The word "supposedly" does not appear in the supporting document and

therefore the court should strike the paragraph because it is unsupported by the evidence cited.

In the alternative, the court should strike the word "supposedly" from paragraph 114.

> Paragraph 116 states as follows:
>
> Indeed, Fasano knew that Flanagan had signed a Settlement Agreement on June 17, 1997 (Px 21) which, in ¶13, contained a commitment by Flanagan to not transfer his stock to any other person or entity.

The Court should strike paragraph 116 because the evidence fails to support it.  Px 21 is a

Settlement Agreement signed by Flanagan and Prymas pertaining to their business at T&P and

Flanagan/Prymas Insurance Group, Inc.  Fasano's name does not appear any where in the

document.  In fact, Fasano did not represent T&P or Flanagan/Prymas Insurance Group.

Plaintiffs implore the court to take a giant leap to believe that Fasano knew that Flanagan had

signed a Settlement Agreement on June 17, 1997.  At best, paragraph 116 is a conclusory

statement unsupported by the evidence cited and for that reason the court should strike it.

> Paragraph 131 states as follows:
>
> As admitted by T&P's attorney, Fasano made materially false and
> misleading statements to Judge Covello and the Plaintiffs as to the
> location and control of physical possession of Flanagan's T&P
> stock.  (Px 19 p. 2; Px B p. 147-48)

Px 19 is a December 16, 1998 letter from Bainer to Fasano and Px B pp. 147-48 are

excerpts from Bainer's deposition.  Bainer's accusation's regarding the statements of Fasano are

not evidence of those statements nor can Bainer make admissions regarding the actions or

statements of another party.

> Paragraph 133 states as follows:
>
> According to the attorney for T&P, Fasano's misrepresentations
> about the location of Flanagan's stock and the movement of the
> stock from one person to another was evidence of a conspiracy to
> defraud Flanagan's creditors.  (Px B pp. 22-24 & 211)

Px B pp. 22-24 and 211 are excerpts from Bainer's deposition.  In none of these excerpts

does Bainer say that the movement of the stock from one person to another was "evidence" of a

conspiracy to defraud creditors.  Bainer merely confirms that he was "concerned that there may

be a conspiracy to defraud Charlie's creditors because is seemed like the stock was moving around…" (Lines 19-23 of p. 23). Page 211 of Px B appears to be irrelevant to the allegedly undisputed fact.

Paragraph 134 states as follows:

> And, as admitted by T&P's attorney, it was Fasano who was allowing Flanagan to shift his stock all around in defiance of Judge Covello's orders, and in derogation of Plaintiffs' rights to obtain execution upon that stock in satisfaction of their judgments against Flanagan. (Px B p. 106; Px 167; Px 19 p. 2)

Px B p. 106 is an excerpt from Bainer's deposition in which there is not even any reference to the "shifting" of Flanagan's stock, Judge Covello's orders or the defiance of said orders, plaintiffs' rights, execution upon the stock or satisfaction of plaintiffs' judgments.

Px 167 is a May 26, 1998 memorandum from Prymas and Flanagan to Bainer requesting that Bainer prepare an amendment to their Bylaws and a draft of a buy-sell agreement. The memorandum provides no evidence of the alleged undisputed fact.

Px 19 p. 2 is the second page of a December 16, 1998 letter from Bainer to Fasano. On p. 2 of that letter the only relevant text is as follows: "It is your judgment of allowing Charlie to move the stock around, instead of dealing with the matter straight-up, which causes him to be in the current predicament in which he finds himself - - including a Federal Court Judge threatening to put him in prison." There is no reference in that text to the movement of the stock "in

defiance of Judge Covello's orders, and in derogation of Plaintiffs' rights to obtain execution

upon that stock in satisfaction of their judgments..."  Plaintiffs are not even mentioned on p. 2 of

the letter.  Further, Bainer cannot make admissions of the actions of another party.

> Paragraph 144 states as follows:
>
> Any pledge of Flanagan's stock to his father, however, would be in
> violation of the T&P buy-sell agreement (Px B p. 24), and would
> constitute an obvious attempt to frustrate Flanagan's creditors.  (Px
> B 115; Px 18 p. 2)

So much of the statement as says "Any pledge of Flanagan's stock to his father, however,

would be in violation of the T&P buy-sell agreement" should be stricken on the basis that the

evidence cited for that portion of the statement (Px B p. 24) is not supportive.  Px B p. 24 is an

excerpt from Bainer's deposition.  That excerpt, although it mentions the pledge of Flanagan's

stock to his father does not anywhere state that the pledge of Flanagan's stock would be in

violation of any agreement.  Again, plaintiffs have drawn an inference from deposition testimony

and improperly stated it as an undisputed fact.

> Paragraph 160 states as follows:
>
> At that meeting Flanagan, Prymas and Bainer agreed that they
> would work together in an effort to defeat the judgment claims of
> Plaintiffs.  (Px 185)

Px 185 are the minutes of the December 11, 1998 meeting of the Board of Directors of

T&P. There is no evidence set forth in those minutes to support an agreement to work together

in an effort to defeat the judgment claims of plaintiffs.

> Paragraph 161 states as follows:
>
> Flanagan agreed that Bainer would now be in charge of the efforts
> to shield Flanagan's assets from the judgment claims of Plaintiffs.
> (Px 122)

Px 122 is a December 28, 1998 memorandum from Flanagan to Bainer. There is no

evidence set forth in that memorandum in support of any such agreement.

> Paragraph 176 states as follows:
>
> In violation of Judge Covello's injunction, Flanagan not only
> placed a mortgage on one of his properties, but also transferred
> every penny of the $94,200 in mortgage proceeds. (Px A(1) pp.
> 160-66)

Plaintiffs' Exhibit A(1) contains portions of the transcript of the March 13, 2003

deposition of Charles Flanagan. The cited text contains a discussion of various expenditures

made by Flanagan to his rental properties in 1998. The cited pages contain no discussion of the

mortgage referenced in this paragraph nor do the cited pages contain an admission by Flanagan

that he violated Judge Covello's orders. Finally, the cited pages contain no basis to conclude that

Flanagan transferred the full $94,200.00. Simply put, the pages cited by the plaintiffs contain no

support for paragraph 176.

Paragraph 188 states as follows:

Fasano's November 16, 1998 assurance to the Court that Flanagan
had "not transferred any assets' (Px 109 p. 4) was false.

The Court should strike paragraph 188 because the evidence fails to support it.  Px 109 p.

4 is an excerpt from a transcript of a show cause hearing before Judge Covello dated November

16, 1998 in which Fasano states "let me assure the court, from the day that order has been

received, Mr. Flanagan has not transferred any assets".  There is no support in the transcript for

the notion that Fasano's representations to the court were false.  In fact, the testimony was an

assertion made by a commissioner of the court before a Federal Court Judge and, if anything,

tends to prove that it was truthful.  For that reason, the court should strike paragraph 188.

Paragraph 189 states as follows:

It was Fasano who advised Flanagan that it was perfectly
acceptable to transfer the funds out of Flanagan's nominee
checking accounts even in the face of the Court's March 9, 1998
injunction.  (Px A(1) pp. 15; 59-60; 64; 95 & 100-01)

The Court should strike paragraph 189 because the evidence fails to support it.  Px A(1)

is an excerpt from the transcript of the deposition of Flanagan.  The testimony on page 15 states:

Q.     Mr. Flanagan, in March of 1998 what attorneys were providing legal services to
       you?

A.     Attorney Fasano.

The testimony on pages 59-60 states:

> Q.    Did you obtain the advice or counsel from anyone that it was permissible to take money that you owned and transfer it?
>
> A.    I may have had a conversation with Attorney Fasano around that time because I was having some problems with this particular building, and I believe he had said …

Flanagan's counsel objected on the grounds of attorney/client privilege and Flanagan did not finish his answer.  Therefore, Flanagan did not testify as to what Fasano discussed and there is no support for paragraph 189.

The testimony on page 64 states:

> Q.    Did you receive any advice or counsel form anyone?
>
> A.    Yeah.  No, I believe I had a conversation or two with Attorney Fasano on, you now, is it appropriate to, you know, pay the bills associated with these properties from the rental income.
>
> Q.    What else did Mr. Fasano tell you?

Flanagan's counsel objected on the grounds of attorney/client privilege and Flanagan did not finish his answer.  Therefore, Flanagan did not testify as to what Fasano discussed and there is no support for paragraph 189.

The testimony on page 95 states:

> Q.    Did you receive the advise [sic] of counsel, of Mr. Fasano, as to your ability to take funds out of the MJCC Corporation account payable to cash?

Flanagan's counsel objected on the grounds of attorney/client privilege and Flanagan did not answer.  Therefore, Flanagan did not testify as to what Fasano discussed and there is no support for paragraph 189.

The testimony on pages 100-101 states:

> Q.     Did you ask Mr. Fasano if it was okay for you to send money that you owned from an account that you had in your son's name, whether or not it was okay for you to send that money to Socrates Babacus?  Did you ask him if it was okay to do that?

Flanagan's counsel objected on the grounds of attorney/client privilege and Flanagan did not answer.  Plaintiffs' counsel attempted to ask Flanagan several times throughout the deposition as to what Attorney Fasano advised Flanagan to do.  Each time Flanagan's counsel objected on the grounds of attorney/client privilege and Flanagan did not answer.  Therefore, Flanagan did not testify as to what Fasano discussed and there is no support for paragraph 189. For the above reasons, the court should strike paragraph 189.

Paragraph 201 states as follows:

> Rather, either Flanagan or Lisa Flanagan would forge Caporale's name on the back of each rent check, and then cash or deposit the checks in to the account for Flanagan's own use and benefit. (Id.)

The cited exhibits are K(1) – portions of the transcript of a hearing before the Bankruptcy Court on October  16, 2000, K(2) - portions of the transcript of a hearing before the Bankruptcy Court on October  26, 2000, and 184 – a collection of checks made payable to Joseph Caporale.

None of the exhibits support the contention that either Charles or Lisa Flanagan forged the checks, nor is there any discussion of how they allegedly used or benefited from those funds.

      3.      <u>Paragraphs 30, 35, 48, 50, 79, 85, 92, 93, 128, 129, 138, 143, 144, 145, 151, 155, 172, 177 and 178</u> of Plaintiffs' Statement should be stricken as the evidence cited by plaintiffs in support of the stated facts alleged to be undisputed consists of quotations taken out of documents entirely out of context or language of letters or memos which has been paraphrased or changed and presented as a statement of fact.

      <u>Paragraph 30</u> states as follows:

> At p. 2 of the writ, T&P was commanded to pay to the sheriff the amount of a debt owed by you [T&P] to the judgment debtor [Flanagan], provided, if the debt owed by you [T&P] is not yet payable, payment shall be made to the sheriff when the debt becomes due if it becomes due within four months after the date of issuance of this execution.

Plaintiffs incorrectly quote portions of the instructions contained in the writ which apply to the case when the judgment debtor is <u>not</u> a natural person. Obviously, this portion of the writ was inapplicable since Mr. Flanagan is a natural person.

      <u>Paragraph 35</u> states as follows:

> On the next day – January 6th – Flanagan asked Fasano whether it would make sense for Fasano to contact T&P's attorney, Bainer, to discuss how to handle the property execution which had been served on T&P.

Plaintiffs' Exhibit 3 contains no support for the asserted fact that the purpose of contacting Bainer was to "discuss how to handle the property execution which had been served on T&P."  This part of the fact should be stricken, because there is no support for the latter part of the statement.

Paragraph 48 states as follows:

And then on February 4, 1998 Prymas informed Bainer that any representation to Plaintiff TCC and Judge Covello that T&P "does not have any money assets due to Mr. Flanagan" was a misrepresentation because "T&P does have an obligation to [Flanagan]." (Px 69)

There is no support for the assertion that Prymas thought the representation made to the plaintiff and Judge Covello was a *misrepresentation*.  Exhibit 69 reflects that Prymas thought the representation was inaccurate, but did not say it was a misrepresentation, denoting an intent to mislead.

Paragraph 50 states as follows:

On February 4, 1998 Bainer wrote to Fasano reiterating that the 12 settlement payments were being treated by T&P as 1099 miscellaneous income, but suggested that Prymas and T&P would work with Flanagan to 'see that Charlie and none of his creditors receives the funds at issue.'  (Px 70 p. 1)

Px 70 p. 1 is the first page of a February 4, 1998 letter from Bainer to Fasano.  The relevant language of the letter is "Stanley has reassured me that he is quite willing to do anything

legally proper, if that is possible, to see that Charlie and none of his creditors receives the funds

at issue" and "Thompson & Peck, Inc. is spending money on my fee to try to cooperate with you,

again, to the extent it legally and properly can."  The allegedly undisputed fact is paraphrased

language taken from the cited letter out of context to create a false impression and therefore the

cited letter does not serve as evidence of the stated undisputed fact.

> Paragraph 79 states as follows:
>
> After service of the property execution on January 5, 1998,
> Flanagan wrote to his personal attorney, Fasano, on January 6,
> 1998, seeking advice on how to shield Flanagan's T&P stock form
> TCC's execution efforts:
>
> I wanted to make you aware that S. Prymas faxed to Atty. Bainer
> who represents T&P Inc. a copy of the Execution from Gaide that I
> faxed to you on Tues …
>
> ***
>
> Does it make sense for you to contact Atty. Bainer on my behalf
> and find out now what the issues are with T&P Inc. over this.  Why
> would Gaide have S. Prymas served over my matter?  I also do not
> want it disclosed where my Stock is presently kept.  There may be
> an attempt to grab this stock.  If there is a concern here, please let
> me know if I should be doing anything different than what is
> presently being done.
>
> (Px 3)

The Court should strike paragraph 79 because plaintiffs create an unsupported conclusory

statement that the plaintiffs derived from information in the letter.  No where in Px 3 does

Flanagan state that he was seeking advice on how to shield Flanagan's T&P stock from TCC's

execution efforts.  Plaintiffs paraphrase the language to create paragraph 79 and as such the court

should strike paragraph 79.

Paragraph 85 states as follows:

At the March 9th hearing, Flanagan pled the Fifth Amendment
"based upon outside issues"  (i.e., an IRS investigation) to avoid
testifying as to the whereabouts of his T&P stock.  (Px 105; Px
A(1) pp. 197-98)

Plaintiffs make a conclusory statement that is not supported by the evidence.  Px 105 is a

letter dated December 11, 1998 from Fasano to Bainer.  No where in the letter does Fasano state

that the purpose for pleading the Fifth Amendment was to avoid testifying as to the location of

Flanagan's T&P stock.  Flanagan had a lawful right to protect himself by pleading the Fifth

Amendment.  Plaintiffs' attempt to construe this lawful right guaranteed by the United States

Constitution into an alleged scheme is a conclusory assertion without merit.

Paragraph 92 states as follows:

Bainer, Prymas and T&P were still willing to do all that they could
to avoid TCC's collection efforts, and thereby prevent TCC from
seizing Flanagan's T&P stock.  (Px 67 p. 2; Px B p. 217; Px 72)

Px 67 p. 2 is the second page of a December 15, 1998 letter from Bainer to Fasano.  In

that letter the relevant language is "I think both Stanley and the Corporation are committed to

doing whatever is reasonably possible and legally proper to prevent such a 'hostile' take over of

Charlie's shares of stock."  There is a clear difference between the statements "do all they could"

and the text of the letter which is "[do] whatever is reasonably possible and <u>legally proper</u>".  The

cited evidence does not support the allegedly undisputed fact.

<u>Paragraph 93</u> states as follows:

One of the avenues discussed in mid 1998 was the execution of a
buy-sell and placement of a restrictive legend on Flanagan's T&P
stock, which would make Flanagan's T&P stock less attractive to
his creditors.  (Pxs 126; 128; 66 p. 1; 135 p.1)

None of the referenced exhibits support the implication of the alleged statement of

undisputed fact that the purpose of the execution of the buy-sell agreement and the placement of

the restrictive legend on Flanagan's stock was to make that stock less attractive to creditors. Px

126, a March 12, 1998 memo from Prymas to Bainer, refers to a discussion regarding a buy-sell

agreement but does not even mention the restrictive legend or anyone's creditors.  Px 128 is a

May 8, 1998 letter from Bainer to Prymas.  Although in the text of the letter Bainer refers to the

proposed buy-sell agreement and the placement of "restrictive language on the original stock

certificate to restrict transfer except through the utilization of a Buy-Sell agreement …" and later

mentions that the "restrictive covenant … would likely make Thompson & Peck, Inc. stock less

attractive to creditors of the individual stockholders", these statements are not, in and of

themselves, evidence supportive of the plaintiffs' insinuation that the purpose of the buy-sell

agreement and the restrictive legend was to "make Flanagan's T&P stock less attractive to his

creditors".  In Px 66, a December 14, 1998 letter from Bainer to Fasano, Bainer confirms that he

spoke to Mr. Gaide and "tried to convince him that Charlie's stock was not an attractive asset to

him because of the restriction on it".  Again, this statement by Bainer does not support the

implication that the *purpo*se of the restrictive legend was to make the stock less attractive to

creditors.  In Px 135, a December 15, 1998 letter from Bainer to Flanagan, Bainer writes that

Bainer told Mr. Gaide that Bainer had "placed a restrictive legend on the stock in August of

1998".  Again, this statement does not support the implied assertion that the purpose of the

placement of the restrictive legend was to make Flanagan's stock less attractive to creditors.

> Paragraph 128 states as follows:
>
>> Indeed, the representations by Fasano to Judge Covello and
>> Plaintiffs about the whereabouts and availability of Flanagan's
>> T&P stock were materially false.  (Px 67 p. 2; Px B p. 33)

Px 67 p. 2 is a letter dated December 15, 1998 from Bainer to Fasano in which Bainer

makes a blanket statement that "you have filed a pleading before the Federal Court stating that

Charlie's stock was out of his possession and control since June of 1997.  This representation by

you before the Federal Court was knowingly both false and misleading".  This third party

statement is not based on first hand knowledge.  Bainer had no first hand knowledge of the

events that supported the court document, he merely expressed an opinion.  In fact, in Px 67 p. 2

Bainer admits that he doesn't know what is going on:  "I don't have a warm and cozy feeling

about either your judgment in pursuing Charlie's interest, or in the fact that there is a full and fair

disclosure by you and/or Charlie as to what is going on so that Thompson & Peck, Inc. can make

intelligent decisions". Px 67 is speculative at best and fails to support paragraph 128. Px B p. 33

is an excerpt from the deposition transcript of Bainer. Again, it contains statements made by a

third party without first hand knowledge of the events and for that reason the court should strike

paragraph 128.

> Paragraph 129 states as follows:
>
> Further, Fasano's representations that Flanagan's T&P stock was
> out of Flanagan's possession and control since June of 1997 was
> knowingly both false and misleading. (Px 67 p.2; Px B p. 146)

Px 67 is a letter from Bainer to Fasano dated December 15, 1998 in which Bainer makes

a blanket statement that "you have filed a pleading before the Federal Court stating that Charlie's

stock was out of his possession and control since June of 1997. This representation by you

before the Federal Court was knowingly both false and misleading". Bainer had no first hand

knowledge of the events that supported the court document. In fact, in Px 67 p. 2 Bainer admits

that he doesn't know what is going on: "I don't have a warm and cozy feeling about either your

judgment in pursuing Charlie's interest, or in the fact that there is a full and fair disclosure by

you and/or Charlie as to what is going on so that Thompson & Peck, Inc. can make intelligent

decisions". Px 67 is speculative at best and fails to support paragraph 129. Px B p. 146 is an

excerpt from the deposition transcript of Bainer. Again, it contains statements made by a third

party without first hand knowledge of the events and for that reason the court should strike

paragraph 129.

Paragraph 138 states as follows:

> For Flanagan to stay out of jail, Flanagan and Fasano were
> supposed to produce to Judge Covello the documents which would
> show the bona fides of the purported $120,000 loan by Babacas to
> Flanagan, and the documents which would show the bona fides of
> the purported stock pledge by Flanagan to Babacas.  (Px C p. 57).

Plaintiffs' Exhibit C is portions of the transcript of the March 14, 2003 deposition of

Leonard A. Fasano.  At page 57 of the transcript, Fasano discusses a chambers discussion

between Judge Covello, Fasano and presumably Gaide, which apparently took place after the

March 9, 1998 hearing before the District Court.  Fasano then agreed that he represented on the

record that he would provide documents to support the loan from Babacas to Flanagan and the

corresponding transfer of possession of Flanagan's stock to Babacas.  Fasano then states that

before the disclosure was made, Flanagan simply satisfied the judgment awarded to Cadle by the

District Court.  Fasano also states on that page that Flanagan filed his bankruptcy petition after

satisfying the judgment.

Aside from being unduly inflammatory, p. 57 of the transcript simply does not support

paragraph 138.  Fasano does not make the if-then connection between producing documents and

staying out of jail as asserted by plaintiffs.

Paragraph 143 states as follows:

Accordingly, since neither Flanagan nor Fasano could produce the
documentation to show the bona fides of the purported Babacas
loan and stock pledge, Flanagan needed to payoff the federal court
judgment as his "get-out-of-jail card." (Px C p. 144)

The Court should strike paragraph 143 because the evidence cited to support it was taken

out of context. Px C p. 144 is an excerpt from the deposition of Fasano from which plaintiffs

surmise that neither Flanagan nor Fasano could produce the documentation. Plaintiffs' counsel

asks the leading question: "So Charlie needed the payment to The Cadle Company as his get-

out-of –jail card; fair enough?" and the deponent responds: "Oh, fair enough." In fact, on the

next page of the transcript the deponent responds "I don't want to say that we couldn't produce

the documents". Paragraph 143 is plaintiffs' attempt to extrapolate information by taking it out

of context of the evidence cited and for that reason the court should strike it.

Paragraph 144 states as follows:

Any pledge of Flanagan's stock to his father, however, would be in
violation of the T&P buy-sell agreement (Px B p. 24), and would
constitute an obvious attempt to frustrate Flanagan's creditors. (Px
B p. 115; Px 18 p. 2)

The Court should strike paragraph 144 because the evidence cited to support it was taken

out of context. Px B p. 24 is an excerpt from the deposition of Bainer in which he indicates

"Because we had just been, Thompson & Peck had just been informed that Charlie had pledged

his stock to his father, and that troubled us".  Plaintiffs' counsel responds: "Why did it trouble us?"  At that point, counsel for T&P objected on the grounds of attorney client privilege and consequently the deponent did not answer the question.  Px B is an excerpt from the deposition of Bainer in which he explains that it was his perception at the time he wrote a letter dated December 10, 1998 from Bainer to Fasano that Flanagan attempted to frustrate his creditors.  However, Bainer also states that, upon additional information, his perception changed to the extent that he did not know that there was a conscious effort to frustrate creditors.  In hindsight, Bainer was unsure if there was an attempt to frustrate Flanagan's creditors.  Px 18 is a letter dated December 10, 1998 from Bainer to Fasano, again, with remarks based on what information Bainer had at the time.  Bainer did not have first hand knowledge that the pledge of Flanagan's stock to his father constitute an obvious attempt to frustrate Flanagan's creditors.  Paragraph 144 is taken out of context from the evidence cited and therefore the court should strike it.

> Paragraph 145 states as follows:
>
> Further, with TCC pursuing Flanagan's T&P stock, and with
> Fasano acting as the lawyer for both the pedgor-debtor (Flanagan)
> and the pledgee (Flanagan's father), this was "strong evidence" of
> an effort by Flanagan and Fasano to defraud Flanagan's creditors".
> (Px B pp. 118-19; 115-16; Px 18)

The Court should strike paragraph 145 because the evidence cited to support it was taken out of context.  Px B is an excerpt from the deposition of Bainer in which he explains that it was

his perception at the time he wrote a letter dated December 10, 1998 from Bainer to Fasano that

Flanagan attempted to frustrate his creditors.  However, Bainer also states that, upon additional

information, his perception changed to the extent that he did not know that there was a conscious

effort to frustrate creditors.  In hindsight, Bainer was unsure if there was an attempt to frustrate

Flanagan's creditors.  Px 18 is a letter dated December 10, 1998 from Bainer to Fasano, again,

with remarks based on what information Bainer had at the time.  Bainer did not have first hand

knowledge that the pledge of Flanagan's stock to his father constitutes an obvious attempt to

frustrate Flanagan's creditors.  Paragraph 145 is taken out of context from the evidence cited and

therefore the court should strike it.

> Paragraph 151 states as follows:
>
> Further, Prymas was concerned that TCC's collection attorney,
> Paul Gaide, "has his sights on Charlie's stock and it now looks
> like he will get it."  (Id. [Px 20])

There is nothing in Exhibit 20 that shows that Prymas "was concerned" about collection

efforts focused on Flanagan's stock.  The assertion of fact attributes a state of mind to Prymas

that is not reflected in the document.

> Paragraph 155 states as follows:
>
> Prymas and T&P, however, were still willing to do all that they
> could to try to prevent Flanagan's T&P stock from falling into the
> hands of TCC. (Px 135, p. 2)

Px 135, p. 2 is a December 15, 1998 letter from Bainer to Flanagan.  The statement made in that letter was that "the Corporation and Stanley, to my understanding, intend to do everything <u>legally proper</u> to try to prevent your stock from falling into the hands of Attorney Gaide or his clients".  Again, the statement "do all they could" is a far cry from "[do] everything <u>legally proper</u>."  The cited evidence does not support the allegedly undisputed fact.

<u>Paragraph 172</u> states as follows:

As admitted by Fasano, if Flanagan had taken the proceeds from a rental property and used the proceeds to either put in his own pocket or to pay to third parties, that would have been a violation of Judge Covello's injunction.  (Px C p. 50)

Plaintiffs' Exhibit C contains portions of the transcript of the March 14, 2003 deposition of Leonard A. Fasano.  At p. 50 of the transcript, Fasano is confronted with a hypothetical which he never admitted mirrored the factual history of this case.  As such, Fasano's response to the hypothetical constitutes his opinion and is not admissible to prove that Flanagan violated Judge Covello's Order.  Rule 56 requires that the evidence cited to support the facts must be admissible.

<u>Paragraph 177</u> states as follows:

As admitted by Flanagan's attorney, Fasano, this was a violation of Judge Covello's injunction.  (Px C p. 52)

The Court should strike paragraph 177 because the evidence cited to support it was taken out of context.  Px C p. 52 is an excerpt from the transcript of Fasano's deposition which states:

> Q.     Hypothetically, if Charlie Flanagan converted equity in a property of cash, and then spent the cash, would you have viewed it as a violation of Judge Covello's injunction?
>
> A.     Yes.

In Px C, Fasano does not admit that Flanagan violated Judge Covello's order by placing a mortgage on one of his properties and transferring the $94,200 in mortgage proceeds, as the proceeding paragraph 176 indicates.  Rather, he is giving his opinion to hypothetical questions to claim that Px C supports paragraph 177 is a misrepresentation by plaintiffs.

Paragraph 178 states as follows:

> Further, based on Fasano's advice, Flanagan secretly ran the income from his rental properties through three checking accounts in the names of third parties:  one in the name of MJCC Corp., which was an entity controlled by Flanagan; the second in the name of Matthew Flanagan, which was one of Flanagan's sons; and the third in the name of Jeremy Flanagan, which was another of Flanagan's sons.  (Px A(1) pp. 22-23; 63-64; 99; 128-30 & 219-220; Px A(4) p. 184)

Px A(1) is an excerpt from the transcript of the deposition of Flanagan.  Pages 22-23 of Px A(1) do not substantively refer to any information contained in paragraph 178.  On pp. 63-64 of Px A(1), Flanagan states that he had a conversation with Fasano about the monies in the checking account but the testimony does not substantively support  that Fasano instructed

Flanagan to establish checking accounts, as in paragraph 178. The testimony on p. 99 of Px A(1) discusses Flanagan taking money out of MJCC Corp., but it does not support that he acted on the advice of Fasano. The testimony on pp. 128-30 of Px A(1) discusses Flanagan depositing money into checking accounts, but it does not support that he acted on the advice of Fasano. The testimony on pp. 219-220 states that Flanagan was a signatory on certain checking accounts, but it does not indicate that he acted on the advice of Fasano. Px A(4) p. 184 is an excerpt from the transcript of a Statewide Grievance Committee Hearing dated April 6, 2001 in which the deponent is not identified. Therefore it is impossible to authenticate the testimony. For the above stated reasons, the court should strike paragraph 178.

    4.    Paragraphs 96, 99, 146, 154, 193, 210 and 212 of Plaintiffs' Statement should be stricken as those paragraphs are not statements of fact but are merely legal conclusions, personal opinions, inferences or inflammatory comments.

Paragraph 96 states as follows:

Accordingly, Fasano knew that Flanagan had possession or control of his T&P stock and that a restrictive legend was to be placed on Flanagan's stock.  (Px B p. 105)

Px. B p. 105 is an excerpt from the deposition of Bainer who testified as to a letter that he wrote to Fasano.

Q.     … It was your understanding Leonard Fasano knew that a restrictive legend had been placed on Charlie Flanagan's Thompson & Peck stock?

A.     That's what this letter says, and I assume it's, you know, based on information I had at the time.  I don't have a present recollection of how I knew that.

Q.     How did you know that he knew?

A.     You know, how I --- I don't want to speculate.  My educated guess is that his firm, Mr. Fasano's firm, was involved in seeing drafts of the buy and sell agreement between Prymas and Flanagan as part of their representation of Flanagan.

And I think it was clear when those drafts were going back and forth and being negotiated, that part of the intent of the parties was to have a legend on the stock as part of the buy and sell agreement.

Px B p. 105 is speculation by a third party and based only on opinion and the evidence fails to support paragraph 96.  For that reason, the court should strike paragraph 96.

Paragraph 99 states as follows:

Bainer, as T&P's agent, was also subject to the turnover order and should have turned Flanagan's T&P stock over to TCC.  (Px 133)

Px 133 is a December 14, 1998 letter from Fasano to Bainer.  On p. 1 of that letter, Fasano writes: "I might add that Attorney Gaide has also placed blame on you.  On p. 4, Attorney Gaide states that you are the admitted agent of Thompson & Peck, Inc., and you and the corporation were subject to the turnover order and you should have turned the stock over to Attorney Gaide."  Fasano's representation of Gaide's opinions is not evidence in support of plaintiff's alleged undisputed fact.

Paragraph 146 states as follows:

According to T&P's attorney, Fasano was saying and doing whatever Flanagan wanted in an effort to get Flanagan out of the jam he was in.  (Px 67 p. 3)

Px 67 p. 3 is p. 3 of a December 15, 1998 letter from Bainer to Fasano.  The relevant language from p. 3 of that letter is "I won't say whatever a Client wants to advance his interest, especially before a Court, just to get a Client out of a jam."  This is not evidence of the alleged undisputed fact.  Plaintiffs have merely drawn an inference from the text of Bainer's letter and stated that inference as a fact.

Paragraph 154 states as follows:

Bainer was not overly impressed with Fasano's handling of the Flanagan stock crisis, and was more than willing to let Flanagan and Prymas know that he could do a much better job in fending off the execution efforts of Plaintiffs…  (Px 66 p. 2)

Px 66 p. 2 is p. 2 of a December 14, 1998 letter from Bainer to Fasano. This letter does not describe Bainer's alleged opinion of "Fasano's handling of the Flanagan stock crisis," nor does it describe Bainer's alleged belief that he could do a better job. Plaintiffs have merely drawn an inference from the text of Bainer's letter and stated that inference as a fact.

Paragraph 193 states as follows:

In November 1998 Flanagan met with Joseph Caporale to discuss Flanagan's property transfer scheme. (Pxs K91) & K(2))

Characterizing the alleged purpose of the meeting as "Flanagan's property transfer scheme" is inflammatory, argumentative and improper. Plaintiffs must not be permitted to mix prejudicial argument within proposed undisputed facts.

Paragraph 210 states as follows:

Flanagan has failed to explain satisfactorily his loss of assets or deficiency of assets to meet his liabilities. (Px I ¶ 3)

Plaintiffs' Exhibit I is an affidavit of plaintiffs' counsel Dean Armstrong. Paragraph 3 of this affidavit contains the same allegations in paragraph 207 of the plaintiffs' proposed undisputed facts and provides no support for this paragraph. While paragraph 4 of the affidavit is identical to paragraph 210 above, Attorney Armstrong's testimony constitutes his opinion is therefore not admissible to prove the proposed undisputed fact at issue. Rule 56 requires that the evidence cited to support the facts must be admissible.

<u>Paragraph 212</u> states as follows:

Further, at all relevant times, Plaintiffs conducted business in numerous states and their business activities involve banks, financial institutions and customers in numerous states.  (Px I ¶ 4)

Plaintiffs' Exhibit I is an affidavit of plaintiffs' counsel Dean Armstrong.  Paragraph 4 of this affidavit contains the same allegations listed in paragraph 210 of the plaintiffs' proposed undisputed facts and provides no support for this paragraph.  While paragraph 5 of the affidavit is identical to paragraph 212 above, Attorney Armstrong's testimony constitutes his opinion is therefore not admissible to prove the proposed undisputed fact at issue.  Rule 56 requires that the evidence cited to support the facts must be admissible.

5.     <u>Redundant Paragraphs</u>

Paragraphs 35, 79, and 107 are virtually identical as are the following groups of paragraphs:  128, 129, 131; 136, 138; 152 and 153; 14, 84, 167 and 171; 87, 168, 169 and 170; 120 and 173.  These paragraphs are redundant in that plaintiffs repeat and reassert the alleged facts.  Rule 12(f) of the F.R.C.P. requires, upon motion, that the Court strike any redundant matter.  Thus, respectfully, the Court should strike these specific paragraphs from Plaintiffs' Statement.

## II.     <u>CONCLUSION</u>

Plaintiffs' Local Rule 56 (a)(1) Statement of Undisputed Fact not only fails to comply with the local rules but such noncompliance is clearly an intentional one on the part of the plaintiffs.  Therefore, defendants ask this Court to strike Plaintiffs' Motions for Summary Judgment in their entirety or alternatively, to strike those paragraphs of the Plaintiffs' Local Rule 56(a)1 Statement that do not comply with the Local Rule, as well as order plaintiffs to pay defendants costs associated with preparing this Motion to Strike.

DEFENDANTS: TODD R. BAINER and
TODD R. BAINER, L.L.C.


By_____
      R. BRADLEY WOLFE
      Federal Bar No. ct04332
      GERALD R. SWIRSKY
      Federal Bar No. ct05574
      MARY ANNE A. CHARRON
      Federal Bar No. ct02274
      Gordon, Muir and Foley, LLP
      Ten Columbus Boulevard
      Hartford, CT 06106-1976
      Telephone (860) 525-5361
      Facsimile (860) 525-4849

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing was mailed, postage prepaid, to all counsel and pro se parties of record on July 1, 2004:

F. Dean Armstrong, Esquire
1324 Dartmouth Road
Flossmoor, IL 60422

Edward C. Taiman, Esquire
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT 06103-2205

David G. Hill, Esquire
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT 06103-4303

Todd R. Bainer, Esquire
71 Cedar Street
P.O. Box 1092

Branford, CT 06405-8092

Barbara L. Cox, Esquire
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT 06509-1925

Douglas S. Skalka, Esquire
James A. Lenes, Esquire
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT 06510-2026

Bradley K. Cooney, Esquire
69 Island Avenue
Madison, CT 06443

_____
MARY ANNE A. CHARRON

::ODMA\PCDOCS\DOCS\364619\1

DEFENDANTS: STANLEY F. PRYMAS
AND THOMPSON & PECK, INC.


By_____
  WILLIAM F. GALLAGHER
  Federal Bar No. ct04147
  BARBARA L. COX
  Federal Bar No. ct08523
  The Gallagher Law Firm
  1377 Boulevard
  P.O. Box 1925
  New Haven, CT 06590
  Telephone (203) 624-4165
  Facsimile (203) 865-5598

DEFENDANTS: LEONARD A. FASANO
AND FASANO, IPPOLITO & LEE, LLC


By_____
        DAVID G. HILL
        Federal Bar No. ct13435
        JUNE M. SULLIVAN
        Federal Bar No. ct24462
        Halloran & Sage, LLP
        One Goodwin Square
        225 Asylum Street
        Hartford, CT 06103
        Telephone (860) 522-6103
        Facsimile (860) 548-0006

DEFENDANT: CHARLES A.
FLANAGAN


By_____
       JAMES A. LENES
       Federal Bar No. ct10408
       Neubert, Pepe & Monteith
       195 Church Street, 13th Floor
       New Haven, CT 06510-2026
       Telephone (203) 821-2000
       Facsimile (203) 821-2009