UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | 3:01CV531(AVC) |
| | : | |
| vs. | : | |
| | : | |
| CHARLES A . FLANAGAN, ET AL | : | |
|     Defendants. | : | SEPTEMBER 17, 2004 |

MOTION FOR IN CAMERA INSPECTION AND TO COMPEL

      The Plaintiffs, The Cadle Company ("Cadle") and D.A.N. Joint Venture, a Limited Partnership ("DAN") (collectively, "Plaintiffs"), hereby request an order from the Court compelling Karen T. Gerber and the law firm of Nuzzo & Roberts, LLC (collectively "Respondents") to turn over to the Court all 93 documents identified by Respondents in their Revised Privilege Log dated August 13, 2004.  Plaintiffs further request the Court conduct an <u>in camera</u> inspection of the same to decide which documents are privileged and protected from disclosure.  As set forth below, it is Plaintiffs' position that Flanagan's practice of conspiring with attorneys to shield his assets has placed at issue in this case the operative fact as to the advice he received from his attorneys.  Flanagan has therefore waived the attorney client privilege which may have attached to those communications and which set forth operative facts relevant to the issues in this case.  In support thereof, Plaintiffs state as follows.

**I. Relevant Facts.**

Plaintiffs claim the Defendants engaged in a fraudulent conspiracy to transfer, hide and otherwise shield the assets of Charles A. Flanagan ("Flanagan") from the judgment and other debt claims of Plaintiffs. Plaintiffs' claims against Flanagan total over $2,400,000. On April 4, 2001, Plaintiffs filed this RICO suit against the Defendants for their fraudulent conspiracy with Flanagan to hide, transfer and otherwise shield the assets of Flanagan from the claims of Plaintiffs.

Various of the Defendants sued by Plaintiffs are lawyers. Defendants Leonard A. Fasano ("Fasano") and Todd R. Bainer ("Bainer"), including their respective law firms, have been sued on the basis that they participated in the fraudulent scheme to hide or otherwise shield the assets of Flanagan from Plaintiffs' claims. Although not named as a defendant herein, Attorney Robert Skelton ("Skelton") is known by Plaintiffs to have represented Flanagan in connection with a discrete matter involving a hearing before this court on March 9, 1998, involving Cadle v. Flanagan, case number 3:96-CV-02648(AVC) (the "District Court Action"). Both Skelton and Fasano represented Flanagan at an examination of judgment debtor held in open court where Flanagan invoked his Fifth Amendment right against self incrimination and refused to provide any evidence about his assets because he was allegedly under criminal investigation by the IRS and FBI for income tax matters. Flanagan contended that any documents or testimony about his assets would tend to incriminate him as to the IRS

matters. This court ultimately held Flanagan in contempt and committed him to the Department of Prisons for his behavior in connection with that matter. In November, 1998, Flanagan satisfied the judgment debt entered against him in the District Court action. Plaintiffs are unaware of any other case where Skelton entered an appearance on behalf of Flanagan.

In this RICO suit Plaintiffs claim that Flanagan and former defendant Angela Cimino Burr set up MJCC Corporation and MJCC Realty Limited Partnership (collectively "MJCC") as a vehicle to hide and shield from his creditors his real estate holdings, including rental income. Shortly after the institution of this case, Skelton entered an appearance on behalf of Defendants MJCC Corporation, MJCC Realty Limited Partnership, Fasano, Fasano & Ippolito, LLC, Lisa G. Flanagan, Angela Cimino Burr, and Socrates T. Babacas. Thereafter, Skelton died. Plaintiffs then reached a settlement with Angela Cimino Burr which resulted in her assignment of all her rights and interests in MJCC to DAN. As part of the settlement between the parties, Angela Cimino Burr executed a notarized letter dated January 21, 2003, to all counsel that might arguably have represented her or MJCC demanding that they turn over to DAN their files. See Exhibit A. Specifically, Ms. Burr's correspondence stated the following:

> This letter will constitute my formal written demand that you immediately and without delay turn over to F. Dean Armstrong, Esq., c/o Ed Taiman, Esq. at Sabia & Hartley, 190 Trumbull Street, Suite 202, Hartford, Connecticut any and all of the files, documents and recordings of any nature or form whatsoever that you have in connection with any representation or services that you provided to me, MJCC Realty Limited Partnership (by whatever name known) ("MJCC") and/or MJCC Corporation, or any agent or employee of the foregoing.

> Further, this letter will constitute my acknowledgment that you are to answer any and all questions posed to you by Mr. Armstrong about any representation or services provided by you to or on behalf of me or to or on behalf of MJCC or MJCC Corporation, and that I hereby expressly waive in favor of Mr. Armstrong any attorney/client, work product privileges or any other privileges that exist or may exist in my favor or in favor of MJCC or MJCC Corporation.

A copy of this letter was sent to, <u>inter alia</u>, Fasano and the last known address of Skelton. Copies of Ms. Burr's assignment to DAN are attached hereto as Exhibits B, C, and D.

On February 24, 2004, Plaintiffs' counsel attended a hearing at the Probate Court in Middletown, Connecticut in connection with the Estate of Robert Skelton. At the probate hearing, Plaintiffs' counsel had a discussion with the decedent's brother, James Skelton, Jr. During the course of that discussion Plaintiffs learned for the first time that Attorney Karen Gerber was in possession of all or substantially all of Skelton's old files. Plaintiffs learned that she had been retained to represent the Estate of Robert Skelton in a third party lawsuit.

On April 12, 2004, Plaintiffs' caused to be served upon Respondents a subpoena which requested the following:

> Copies of all documents which in any way relate to MJCC Realty Limited Partnership; MJCC Corporation; The Cadle Company; D.A.N. Joint Venture, a Limited Partnership; Angela Ciminio Burr; Charles Flanagan; Lisa Flanagan; Stanley F. Prymas; Thompson & Peck, Inc.; Leonard Fasano; Fasano & Ippolito; Fasano & Ippolito and Lee, LLC; Socrates Babacus; Todd R. Bainer, LLC; Joseph Caporale; 25 Queach Road, Branford, Connecticut; 230 Millbrook Road, North Haven, Connecticut; Sharon DeMetropolis, Sharon Flanagan, Sharon Rosen and John C. Flanagan.

The Respondents' filed a Motion to Quash, and the Revised Privilege Log followed.

**II. Legal Argument.**

    **The Respondents Have Failed In Their Burden To Show The Applicability Of The Attorney-Client Privilege.**

Respondents presume that all communications between an attorney and a client, or a former client as is the case here, are privileged. However, there is no presumption of privilege. See United States v. Zolin, 491 U.S. 554, 569, 109 S.Ct. 2619, 2628 (1989); People's Bank of Buffalo v. Brown, 112 F. 652, 654 (3d Cir.1902)[1]. Simply because an attorney-client relationship may exist does not necessarily mean that all communications between the client and the attorney are privileged from disclosure. Zolin, 491 U.S. at 569, 109 S.Ct. at 2627-28. Indeed, the mere fact that an attorney was somehow involved in the chain of communication does not, without more, shield that communication from disclosure. Id.

Rather, the party claiming the attorney-client privilege has the burden of proving all of the necessary elements of the privilege to shield a communication from disclosure. See United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir.1995); von Bulow, 811 F.2d at 144; Sackman v. Liggett Group, Inc., 920 F.Supp. 357, 364 (E.D.N.Y.1996). This, the Respondents have failed to do.

Moreover, as an exception to full disclosure of the truth, the attorney-client privilege is to be narrowly construed. See von Bulow, 811 F.2d at 147; Weil v. Investment/Indicators,

---

[1]     The instant case is a federal question case by virtue of the RICO claims. Accordingly, federal law governs the privilege issues in this case. See Fed.R.Evid.501; Zolin, 491 U.S. at 563, 109 S.Ct. at 2625; von Bulow By Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir.1987).

Research & Management, 647 F.2d 18, 24 (9th Cir. 1981); United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990). As noted by the Supreme Court in Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976):

> Since the [attorney-client] privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures -- necessary to obtain informed legal advice -- which might not have been made absent the privilege.

See, also, Matter of Fischel, 557 F.2d 209, 212 (9th Cir. 1977).

A party attempting to hide the truth under a claim of attorney-client privilege must prove the following elements:

(1) there was a communication by the client;
(2) to an attorney;
(3) which relates to a fact of which the attorney was informed
    (a) by the client;
    (b) without the presence of third parties;
    (c) for the purpose of receiving legal advice; but
    (d) not for the purpose of committing a crime or a tort; and
(4) the privilege has not been waived.

The Respondents' Revised Privilege Log reveals a number of allegedly privileged communications from Flanagan to third parties other than Skelton, and numerous allegedly privileged documents where there was no communication with an attorney at all. Therefore, as a threshold matter the Respondents have failed in their burden to show the applicability and non-waiver of the attorney-client privilege. Accordingly, the Court should order the Respondents to produce to Plaintiffs the documents listed on the privilege log.

### III. The Privilege Has Been Waived With Respect To All Documents Pertaining To MJCC.

Even if the Respondents have met their burden to show that the withheld information involved confidential communications by a client to an attorney, the Defendants have failed to show non-waiver of the attorney-client privilege. To the contrary, the facts show that the privilege has been waived with respect to any matter concerning MJCC or Angela Cimino Burr, as demonstrated in her January 21, 2003 correspondence to Skelton, and others. The Partnership Agreement of MJCC Realty Limited Partnership dated July 18, 1994, establishes that Angela Cimino Burr held a 95% interest in MJCC, and was also the managing partner. See, Exhibit E. She had full authority to waive both the attorney-client and work product privileges held by herself and MJCC.

Respondents' Revised Privilege Log identifies 93 separate documents, many of which involve communications between Flanagan and Skelton dated after March 9, 1999. However, as of that date the District Court Action wherein Skelton represented Flanagan had already been completely resolved when Flanagan satisfied the underlying judgment debt in November, 1998. Also, as of March 9, 1999, Flanagan had already filed for bankruptcy (February 17, 1999) and was being represented therein by attorneys Douglas Skalka and Fasano.

The Revised Privilege Log also identifies other documents dated after the RICO action was brought on April 4, 2001. Skelton was no longer Flanagan's attorney. Rather, he represented MJCC, and per Angela Cimino Burr's instructions, all such communications

between the parties are no longer privileged. Since Skelton represented numerous parties other than Flanagan in these proceedings, communications between Flanagan and Skelton dated after the initiation of these RICO proceedings cannot be privileged. Stated differently, since Flanagan had counsel other than Skelton, any communication between the two is not protected by privilege.

**IV. Any Allegedly Privileged Communications Between Flanagan and Skelton May Be Discoverable Under The Crime-Fraud Exception.**

While a wrongdoer certainly may consult in private with an attorney as to how to defend claims pertaining to prior indiscretions, the attorney-client privilege does not shield an attorney-client communication from discovery "where the desired advice refers not to prior wrongdoing, but to future wrongdoing." Zolin, 491 U.S. at 563, 109 S.Ct. at 2626. Accordingly, attorney-client communications about a fraud being committed or about to be committed are an exception to the privilege, and are discoverable. See Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1932); United States v. Ballard, 779 F.2d 287, 290 (5th Cir. 1986). History has proven that Flanagan received legal advice on how to hide his assets to defeat the legitimate claims of the Plaintiffs. (See, Pxs 3 & 72) He further retained counsel who were willing participants and made active misrepresentations to the court, and other counsel, to further his scheme.

The proponent of the crime-fraud exception must establish (1) probable cause to believe that a crime or fraud has been attempted or committed; and (2) probable cause to believe that

8

the communications were in furtherance thereof. Zolin, 491 U.S. at 563, 109 S.Ct. at 2626. See, also, United States v. Jacobs, 117 F.3d 82, 87 (2d Cir.1997); In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1039 (2d Cir.1984); Sackman v. Liggett Group, Inc., 920 F.Supp.357, 367 (E.D.N.Y.1996). The party seeking disclosure must show that "a prudent person [has] a reasonable basis to suspect a perpetration or attempted perpetration of a crime or a fraud and that the communications were in furtherance thereof." In re Grand Jury Subpoena, 731 F.2d at 1039; Sackman, 920 F.Supp. at 367. While the crime-fraud exception also applies to "intentional torts moored in fraud" (see Cooksey v. Hilton Intern. Co., 863 F.Supp. 150, 151 (S.D.N.Y.1994); Sackman, 920 F.Supp. at 367), it does not require proof of the commission of an actual fraud. Id.

If the client seeks legal advice for the purpose of being assisted or guided in the perpetuation of a fraud, the communication is not sheltered from disclosure. See Ballard, 779 F.2d at 290. The privilege for communications by the client to the attorney ceases "when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act." Id. at 292. As stated by Justice Cardozo:

> The [attorney-client] privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.

Clark, 289 U.S. at 15, 53 S.Ct. at 469. Indeed, it is the purpose of the crime-fraud exception

9

> to assure that the "seal of secrecy" . . . between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" . . ..

Zolin, 491 U.S. at 563, 109 S.Ct. at 2626.

An attorney's advice to the client about ways to conceal assets from creditors falls within the crime-fraud exception. See Ballard, 779 F.2d at 293. Further, even if the attorney was not the original architect of the fraudulent transfer scheme, but merely helped the plan along after it was initiated by the client, the crime-fraud exception still applies, and the attorney-client communications must be disclosed. Id. While Plaintiffs have no direct proof that Skelton was the architect of the fraudulent scheme, Skelton was counsel of record to Flanagan during the District Court Action and presumably was privy to communications between Flanagan and Fasano, including numerous misrepresentations to this court concerning the whereabouts of Flanagan's stock. See, Plaintiffs' Amended Response to Defendants' Motion for Summary Judgment, paras. 19-34. At the time of those misrepresentations, Fasano and Skelton worked out of the same building in New Haven. Plaintiffs would request that when this Court conducts its in camera inspection, any documents which in any way relate to his assets or any scheme to defraud Flanagan's creditors be ordered disclosed to Plaintiffs.

For all of the foregoing reasons, Plaintiffs request relief in accordance with the foregoing.

                                  THE CADLE COMPANY AND
                                  D.A.N. JOINT VENTURE, L.P.


By:_____
      Edward C. Taiman, Jr.
      Sabia & Hartley, LLC
      190 Trumbull Street, Suite 202
      Hartford, CT 06103
      (860) 541-2077
      Fed. Bar No. ct01319

and

      F. Dean Armstrong, Esq.
      1324 Dartmouth Road
      Flossmoor, IL 60422
      Federal Bar No. ct22417


## **CERTIFICATE OF CONFERENCE**

      This is to certify that on September 1, 2004, I spoke to Attorney Amber Branciforte of Nuzzo & Roberts, LLC, and after speaking at great length, we were unable to resolve this discovery dispute.


By:_____
      Edward C. Taiman, Jr.
      Sabia & Hartley, LLC
      190 Trumbull Street, Suite 202
      Hartford, CT 06103
      (860) 541-2077
      Fed. Bar No. ct01319

**CERTIFICATION OF SERVICE**

      I hereby certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this 17th day of September, 2004, to the following:

| | |
|---|---|
| William F Gallagher, Esq.<br>Barbara L. Cox, Esq.<br>Gallagher & Calistro<br>1377 Ella Grasso Boulevard<br>P.O. Box 1925<br>New Haven, CT 06509<br>(counsel for Stanley Prymas and Thompson & Peck, Inc.) | Mary Anne A. Charron, Esq.<br>Gerald R. Swirsky, Esq.<br>R. Bradley Wolfe, Esq.<br>Gordon, Muir and Foley, LLP<br>Hartford Square North<br>Ten Columbus Boulevard<br>Hartford, CT 06106-5123<br>(counsel for Todd Bainer) |
| Douglas S. Skalka, Esq.<br>James A. Lenes, Esq.<br>Neubert, Pepe & Monteith, P.C.<br>195 Church Street, 13th floor<br>New Haven, CT 06510<br>(counsel for Charles A. Flanagan) | Bradley K. Cooney, Esq.<br>Bradley K. Cooney, P.C.<br>69 Island Avenue<br>Madison, CT 06443<br>(counsel for Thompson & Peck, Inc.) |
| David G. Hill, Esq.<br>June Sullivan, Esq.<br>Halloran & Sage LLP<br>One Goodwin Square<br>225 Asylum Street<br>Hartford, CT 06443<br>(counsel for Leonard A. Fasano and Fasano & Ippolito, LLC) | Todd R. Bainer<br>71 Cedar Street<br>P.O. Box 1092<br>Branford, CT 06405<br><br>Amber J.Branciforte, Esq.<br>Nuzzo & Roberts LLC<br>One Town Center<br>P.O. Box 747<br>Cheshire, CT 06410-0747<br>(counsel for Karen T.Gerber) |

          By:_____
             Edward C. Taiman, Jr.
             Sabia & Hartley, LLC
             190 Trumbull Street, Suite 202
             Hartford, CT 06103
             (860) 541-2077
             Fed. Bar No. ct01319

E:\WPDOCS\CADLE\Flanagan\RICO\MtInCamera.wpd