UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL<br>　　Plaintiffs | : | CIVIL ACTION NO.<br>3:01CV531(AVC) |
| VS. | : | |
| CHARLES A. FLANAGAN, ET AL<br>　　Defendants | : | October 6, 2004 |

**STANLEY F. PRYMAS AND
THOMPSON & PECK, INC.'S SUPPLEMENTAL CORRECTED
<u>LOCAL RULE 56(a)1 STATEMENT</u>**

Notice is hereby given that defendants Stanley F. Prymas and Thompson & Peck hereby correct their Local Rule 56(a)(1) Statement in Support of their Motion for Summary Judgment, dated May 14, 2004 as follows: ¶¶ 1, 26, 33 and 35 have been corrected by supplying citation to evidence inadvertently omitted as a result of clerical error.  No change has been made to ¶ 6 because plaintiffs have admitted it in their Local Rule 56(a)(2) Statement dated September 3, 2004..

1.　　Stanley Prymas and Charles Flanagan were each fifty (50%) percent owners of Thompson & Peck, Inc. ("T&P"), an insurance agency that had operated since 1928 in New Haven, Connecticut (Exhibit A, Px 3).

2.　　On June 17, 1997, Flanagan and Prymas settled a lawsuit between them by entering a settlement agreement that was subsequently entered as a judgment by the Connecticut Superior Court ("stipulated judgment") (Exhibits A, B).

1

3. The stipulated judgment required Prymas/T&P to pay Flanagan a total of $75,000.00 in installments (Exhibit A, ¶12).

4. At the time of the Flanagan/Prymas settlement, T&P's accountant verbally told Prymas that the payments to Flanagan could be treated either as W-2 or 1099-Miscellaneous income for tax purposes (Prymas Dep. 21).

5. Because Prymas was concerned that classifying the stipulated judgment payments might exceed limits on employees' salaries imposed by a loan covenant, he and Flanagan agreed to treat the payments as 1099-Miscellaneous income to avoid running afoul of the covenant (Prymas 21-22).

6. Payments were made to Flanagan as 1099-Miscellaneous from August through December, 1997 (Admitted by plaintiffs).

7. By 1998, Prymas and Flanagan had a very rough relationship; they had a history of litigation and they disliked each other intensely (Prymas, 25-27).

8. In late December, 1997 or early the following January, Flanagan began demanding that T&P reclassify the judgment payments as W-2 income and subsequently threatened litigation if Prymas/T&P would not comply (Prymas 23-24, 34, 91-92, 127-28; Exhibit E).

9. In January of 1998 and before, Prymas knew that Flanagan's wages from T&P were subject to active garnishment from Flanagan's creditors (Prymas, 34-40).

10. On January 5, 1998, the Cadle Company served T&P with a property execution in Cadle Company v. Flanagan, Civ. Action No. 3:98-CV-02648 (AVC) (D.Conn.) ("Cadle I") (Cadle I, Execution). Faced with competing demands from the execution and Flanagan, T&P, on advice of the corporation's counsel, Todd Bainer,

suspended the stipulated judgment payments to Flanagan, pending a legal opinion from Flanagan's attorney, Leonard Fasano, Esq., as to the proper tax classification of the payments (Prymas, 24-30, 34, 42, 47, 91-92).

11. In 1998, Prymas was not interested in doing anything to help Flanagan (Prymas, 25-26, 27).

12. Prymas was very concerned about the potential disruption to the business created by Flanagan's threats of more legal action against the corporation (Prymas, 39, 41).

13. Prymas did not care if Flanagan's creditors received the settlement money, and, in fact, hoped that the money would go to a creditor through garnishment, because he did not like Flanagan (Prymas, 34-40).

14. On or about January 20, 1998, Flanagan signed a form claim of exemption, stating that T&P had no Flanagan assets other than wages, and filed the claim with the court in Cadle I (Complaint Ex. 25).

15. The 1997 stipulated judgment required Flanagan and Prymas to both sign checks and other important documents on behalf of T&P (Ex. A, ¶¶5, 6).

16. Neither Prymas nor T&P were parties to Cadle I (Judicial Notice, Cadle I).

17. Prymas and Flanagan construed paragraphs 5 and 6 of the stipulated judgment to require both of them to sign any important documents on behalf of T&P (Ex. A, ¶¶5, 6; Ex. H).

18. Flanagan was not authorized to sign the exemption unilaterally on behalf of T&P (Id.).

19. On February 10, 1998, Andrew D'Agostino, CPA, issued a professional opinion letter stating that the judgment payments to Flanagan should be classified as wages in order to avoid tax code violations that could subject T&P to various taxes, penalties and interest (Ex. F; Prymas, 32-33).

20. Based on the accountant's opinion, T&P reclassified the judgment payments to Flanagan as W-2 wages and, on advice, of T&P's attorney, Bainer, resumed settlement payments in May, 1998 (Prymas, 46-49, 57).

21. The Cadle I property execution served on T&P expired on May 5, 1998 (Execution).

22. The Cadle Company did not subsequently obtain another property execution to serve on T&P or file any motion or objection contesting the claim of exemption filed by Flanagan in January, 1998 (Cadle I docket sheet).

23. On November 19, 1998, Flanagan paid the Cadle I judgment, together with interest and attorney's fees, in full (Ex. G).

24. The stipulated judgment required Flanagan and Prymas to execute a shareholders' agreement within one year, directed each of them to continue ownership of the corporate stock, and prohibited transfer of the stock to "any other person or entity" (Ex. A, ¶¶10, 13).

25. In August, 1998, as part of their compliance with the stipulated judgment, Prymas and Flanagan had T&P's corporate attorney, Bainer, place restrictive legends on each of their stock certificates (Prymas, 144).

26. T&P stock had traditionally had restrictive legend on its stock certificates. The stock had restrictive legend when Prymas and Flanagan purchased the agency in 1988 (Prymas,144).

27. T&P was never served with the Court's Turnover Order in Cadle I. The only parties served with the Court's Turnover Order were The Cadle Co. (through its attorney) and Flanagan (through his attorney, Leonard Fasano).

28. At the time the restrictive legends were placed on the stock, neither Prymas nor Bainer had any knowledge of the injunction or turnover orders issued in Cadle I (Ex. I, Prymas/T&P Answers to Plaintiffs' Interrogatories, nos. 3, 4).

29. Leonard Fasano did not represent T&P in 1998, or at any time during Cadle I (Cadle I docket sheet).

30. Prymas did not learn of the Cadle I Turnover Order until December, 1998, after the Cadle I judgment had been paid in full (Ex. I, Prymas/T&P Answers to Plaintiffs' Interrogatories, nos. 3, 4).

31. In December, 1998, the plaintiffs served on Prymas and T&P post-judgment interrogatories, seeking to learn the whereabouts of Flanagan's assets (Complaint, ¶61; Complaint, Ex. 26).

32. Prymas, on behalf of T&P, requested the Corporation's attorney, Bainer, to advise him how to respond.

33. On Bainer's advice, Prymas responded to the interrogatories that neither he nor T&P knew of any non-exempt property belonging to Flanagan (Px 162, 118).

34. As of May, 1998, T&P treated the monies payable to Flanagan in compliance with the stipulated judgment as W-2 income, subject to withholding and

garnishment, on the advice of an accountant, Andrew D'Agostino, CPA on advice of the Corporation's attorney, Todd Bainer, and resumed payment to Flanagan as wages (Prymas, 46-49, 57; Ex. F).

35.   Prymas' response on behalf of himself and T&) that he did not know of any nonexempt property was truthful in light of the change in tax treatment of the judgment payments to Flanagan. (Ex. F; Prymas, 32-33, 46-49, 57).

36.   In February, 1999, Flanagan filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Laws.

       RESPECTFULLY SUBMITTED,

       THE DEFENDANTS
       STANLEY F. PRYMAS AND
       THOMPSON & PECK, INC.

By:   _____
     WILLIAM F. GALLAGHER
     Federal Bar #ct04147
     BARBARA L. COX
     Federal Bar #ct08523
     The Gallagher Law Firm
     1377 Boulevard
     P.O. Box 1925
     New Haven, CT  06509
     Tel:  203-624-4165
     Fax:  203-865-5598

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing was mailed on the date above writted t to the following counsel and pro se parties of record:

Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, IL 60422
Tel. 7-8/798-1599
Fax: 7-8/798-1597

Edward C. Taiman, Esq.
Michael G. Albano, Esq.
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT 06103-2205

Todd R. Bainer, Esq.
P.O. Box 1092
Branford, CT 06405

Mary Anne A. Charron, Esq.
Gerald R. Swirsky, Esq.
R. Bradley Wolfe, Esq.
Gordon, Muir & Foley
Hartford Square North
Ten Columbus Boulevard
Hartford, CT 06106

Douglas S. Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT 06510-2026

Bradley K. Cooney, Esq.
69 Island Avenue
Madison, CT 06443

David G. Hill, Esq.
June Sullivan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Lisa G. Flanagan, *pro se*
230 Millbrook Road
North Haven, CT 06473

_____
BARBARA L. COX