UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CADLE COMPANY, ET AL.　　　　:　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　　NO: 3:01-CV-531 (AVC)

V.　　　　　　　　　　　　　　　:

CHARLES A. FLANAGAN, ET AL.　　:　　　OCTOBER 25, 2004

## <u>DEFENDANTS LEONARD A. FASANO AND FASANO & IPPOLITO, N/K/A FASANO, IPPOLITO & LEE, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

## I.　　<u>INTRODUCTION</u>

Defendants Leonard A. Fasano and Fasano & Ippolitto, (collectively "Fasano"), submit this Memorandum of Law in response to Plaintiffs' Amended Consolidated Response to Defendants' Motions for Summary Judgment dated September 9, 2004.[1]

Plaintiffs' entire argument against Fasano is predicated on their belief that, under RICO, one person is liable for all of the other persons' predicate acts in a civil RICO conspiracy. This claim is simply untrue. <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512, 521 (2d Cir. 1994). It is particularly untrue when the individual is an attorney. <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d at 521, <u>Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants</u>, 832 F.Supp. 585, 590-91 (E.D.N.Y. 1993). In fact, this Court has already recognized that "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." <u>In re: SmithKline Beecham Clinical Laboratories, Inc.</u>

---

[1]　　Fasano incorporates by reference its Motion for Summary Judgment and Memorandum of Law in Support dated April 27, 2004, as well as Exhibits A through H, which are attached thereto.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

10361.0088
HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>Laboratory Test Billing Practices Litigation</u>, 108 F.Supp.2d 84, 92 (D. Conn. 1999, J. Covello).  In addressing a civil RICO claim, the "court's focus must be to ensure that RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetrate acts of racketeering."  <u>Id</u>. at 92-93.  "Courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."  <u>Id</u>. at 93.  "Further, in considering RICO Claims, courts must attempt to achieve results consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime."  <u>Id</u>. at 93, FN12. Each time Defendants try to pinpoint the specific claims against them, Plaintiffs do not respond substantively, but choose to wax poetic about "stale wines" in a different bottle. Plaintiffs do not address the substance of the issue before them.  In this instance, however, the failure to do so should be fatal.  Plaintiffs have offered no evidence  to support their RICO claims, especially a claim based on a RICO conspiracy.  Indeed, Plaintiffs have not alleged any facts, or offered any evidence, to differentiate this case from the decisions in <u>Azrielli</u> and/or <u>Biofeedtrac, Inc.</u>  The reason, respectfully, is that Defendants were at all times acting as counsel for the debtor Defendant Flanagan.  As a result, by law their actions are immune from a RICO claim.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

II.    **ARGUMENT**

A.  **Plaintiffs Have Not Refuted Defendants 56(a)(1) Statement**

Plaintiffs did not respond substantively to a number of Defendants' 56(a)(1) statements of facts.  The failure to respond should be fatal.  The most vivid example is Plaintiffs' response to ¶4.  In ¶4, Defendants stated: "Fasano had no other relationship with Flanagan, other than attorney/client relationship."  The obvious intent of this statement was to see if any evidence exists that differentiates this case from the decisions in <u>Azrielli</u> and <u>Biofeedtrac, Inc.</u>  Plaintiffs, however, did not respond.  Instead, they stated:

> "It is denied that Fasano had no other relationship with Flanagan other than an attorney/client relationship.  Indeed, the summary judgment evidence shows that Fasano did not simply provide legal advice to his client, but rather provided *illegal* advice to Flanagan on how Flanagan could further his scheme to hide, transfer and otherwise shield his substantial assets from the judgment claims of plaintiffs."

First, Plaintiffs' statement does not address Defendants' statement.  One was specific to the attorney/client relationship, the other alters the discussion to one of "illegal advice".  Second, Plaintiffs purport to deny this allegation, however, they provide no basis for said denial.  Third, the so-called denial is a speaking denial, which itself is impermissible.  Fourth, to the extent that this Court allows "speaking objections", Plaintiffs do not advise what "illegal advice" was provided, and how their claim of "illegal advice" is different from "legal advice".  Fifth, Plaintiffs do not offer evidence that is admissible at trial; instead, they boldly cite to their counsel's 44-page summary of facts

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

listed in the Plaintiffs' Response to Defendants' Motions for Summary Judgment.  The summary, it should be noted, is a broad narration of Plaintiffs' version of the facts.  It does not cite any particular evidence that is admissible, nor does it support the Plaintiffs' denial.

Local Rule 56 clearly states that a party opposing the motion for summary judgment shall supply a Local Rule 56(a)(2) Statement containing denials that are followed by specific citations, either to an affidavit of a witness competent to testify as to the facts at trial and/or evidence that would be admissible at trial.  Plaintiffs have clearly failed to provide anything remotely related to any evidence that may be admissible at trial to either support their denial or support their additional assertions.  The plaintiffs have no substantiating evidence for their response, and thus, rely simply on the same rendition of fictitious information compiled in preparation for this baseless action.  Absent any evidence to support their statement, the court must deem ¶4 as admitted by the Plaintiffs.  Once the court deems ¶4 admitted, the case is no different than those that have exempted legal counsel from RICO consideration.

**B.    Plaintiffs Instead Mischaracterize the Evidence that Exists**

Plaintiffs' response is nothing more than a diversionary tactic.  Moreover, in addition to ignoring Defendants' Statement of Undisputed Facts, Plaintiffs try to change

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the facts, or worse mischaracterize the evidence that forms the basis of their denial.

These are but a few examples.

First, Plaintiffs state: "In an effort to skirt the writ, however, Fasano told T&P's

attorney, Bainer, that he (Fasano) wanted the characterization of the ¶12 Settlement

Agreement payments changed from 1099 miscellaneous income to wages. (Px B pp. 60

& 63)" (Plaintiffs' Response pp. 12-13). In fact, the deposition testimony does not

reflect such an intent. Mr. Todd Bainer's deposition transcript reads as follows:

Page 60:

Q.    But it's true that you had discussions with Lenny Fasano
      about that subject, correct?

A.    Yes.

Q.    Tell me about those discussions.

A.    Mr. Fasano indicated that he wanted the payments
      characterized as W-2 wages, not as 1099 miscellaneous
      income.

Q.    Why?

A.    He didn't tell me why.

Q.    Did you have any understanding why?

A.    No.

Page 63:

Q.    So, Lenny Fasano told you that he wanted the payments
      changed; did you say "Changed from 1099 income to W-
      2 wages," is that what you said?

- 5 -


HALLORAN
& SAGE LLP

A.      "Characterized," "changed," I view those as the same.

Q.      Okay.  Lenny Fasano wanted the payments changed or recharacterized from 1099 income to W-2 wages; tell me the words that he used?

A.      I don't recall the exact words.

Q.      Give me your best summary of what he said?

A.      **My best recollection of the summary of what he said is that the bimonthly payments should never have been characterized as 1099, they were always intended to be wages, and he wants them to be characterized as wages, as he felt was originally intended.**  (emphasis added)

Contrary to Plaintiffs' assertions and mischaracterizations, Fasano indicated that the settlement payments should have always been wage income and not 1099 income.  Fasano was advocating for his client, in his client's best interest, as to how the settlement funds should be classified.  Plaintiffs' attempt to create some sort of "conspiracy" over the status of the Thompson & Peck settlement payments has no basis in reality.  Moreover, notwithstanding Plaintiffs' exaggerations and mischaracterizations, they have done nothing to refute the simple fact that Fasano acted only as Flanagan's attorney.

Second, in another instance, Plaintiffs cite speculative evidence as "facts".  Plaintiffs claim that "Fasano knew that Flanagan had possession or control of his T&P stock and that a restrictive legend was to be placed on Flanagan's stock. (Px B p. 105;

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Pxs 18, 56, & 195)"  (Plaintiffs' Response p. 23).  In fact, the deposition testimony that

the Plaintiffs cite contains the following:

Page 105:

> Q.     It was your understanding Leonard Fasano knew that a
>        restrictive legend had been placed on Charlie Flanagan's
>        Thompson & Peck stock?
>
> A.     That's what this letter says, and I assume it's, you know,
>        based on information I had at the time.  **I don't have a
>        present recollection of how I knew that**.
>
> Q.     How did you know that he knew?
>
> A.     You know, how I – I don't want to speculate.  My
>        educated *guess* is that his firm, Mr. Fasano's firm, was
>        involved in seeing drafts of the buy and sell agreement
>        between Prymas and Flanagan as part of their
>        representation of Flanagan.
>
> And I think it was clear when those drafts were going back and        forth
> and being negotiated, that part of the intent of the parties was to have a
> legend on the stock as part of the buy and sell agreement.
>
> So, *I don't know if that's what I'm referring to here* in this letter, or if
> there was some, you know, greater detail (p. 106) (emphasis added).

Clearly, this evidence is insufficient to support the Plaintiffs' alleged facts.  It is

based on speculation, not first hand knowledge, therefore, it is inadmissible.

Third, Plaintiffs' blatantly misrepresented the "evidence" in their statement

that  "Fasano knew, must have known, or should have known that the Babacas

debt/stock collateral representations were false.  (Px 3; Px  E pp. 152-53)"  (Plaintiffs'

Response, p. 27).  In fact, Mr. Prymas's deposition testimony states the following:

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Page 152:

Q.    You understood Charlie had loaned money to Socrates Babacas?

A.    Right.  In fact, I can tell you one of the signals to me that Mr. Babacas was not for real was that Charlie had agreed to go to Philadelphia, I think they were going to talk to the owners of the Philadelphia Phillies and they were going to rent a limousine to go down there to do that, and Mr. Babacas was taking care of all the expenses, according to Charlie, and then when Mr. Flanagan came back he submitted an expense account for a fairly expensive lunch, and when I asked him what had happened, you know, I thought Mr. Babacas was taking care of all this, and he had told me that Mr. Babacas forgot his credit card, and but he would pay him back, and never got paid back.  So I, you know, kind of sensed there was an issue there.  And then I think on one other occasion Mr. Flanagan in the discussion of business development with Mr. Babacas, Mr. Flanagan had mentioned to me that he loaned him money.

Q.    That Charlie loaned Socrates Babacas money?

A.    Yeah.

Q.    Did you understand how much?

Page 153:

A.    No, I didn't really get into that with him.  I wasn't chummy with him enough.

Q.    Charlie Flanagan told you that the money flowed, in terms of the loans, where Charlie Flanagan was sending money to Socrates Babacas, correct?

A.    Correct.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103



Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Q.     Not Socrates Babacas was lending money to Charlie?

A.     Well, **from what I had heard, it was both ways, that Charlie, and I don't know whether I heard it from Charlie directly or some other source, that Babacas was loaning money to Charlie,** but it seemed odd to me that on one hand he was loaning money to Charlie and on the other hand Charlie was loaning Babacas a few hundred dollars at a time.

Q.     You saw the written confirmation of Charlie lending money to Socrates Babacas, correct?

A.     Correct, that was in the packet of information that was left for me.

Q.     You later on heard these claims that Socrates Babacas had loaned thousands upon thousands of dollars to Charlie?

A.     Yes.

Q.     Which appeared to be directly contrary to what is said in those letters, correct?  I mean you read them

Nowhere in this deposition testimony citation does Mr. Prymas indicate that he has first hand knowledge that "Fasano knew, must have known, or should have known that the Babacas debt/stock collateral representations were false."  Mr. Prymas did not testify as to what Fasano knew about the arrangements between Flanagan and Babacas, nor can the Plaintiffs offer such proof because there is none.  Moreover, Mr. Prymas's deposition testimony is based on hearsay and, therefore, inadmissible as evidence at trial and should be disregarded by the court.  (Fed. R. Civ. P. 56 and CT L. Civ. R. 56).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Additionally, Plaintiffs offer no support to make the bald assertion that:

> Fasano knew that the purported Babacas loan of $120,000 to Flanagan was a sham. Flanagan did not want to turn the T&P stock over to Plaintiffs, and Judge Covello refused to allow Flanagan to get away with not producing all of the documents pertaining to the purported loan and the purported stock pledge to Babacas. Flanagan and Fasano were left with no alternative but to pay off the judgment, place the stock in the hands of Flanagan's father as collateral for the loan, and then file bankruptcy for the return of the funds paid to satisfy the judgment.

(Plaintiffs' Response, pp. 27-28). While all of this makes an intriguing story fit for a fictional novel, without the support of evidence, it is inadmissible at trial. Therefore, the court must disregard these assertions, and having done so, the court should grant Defendants' Motion for Summary Judgment.

Frankly, most of the assertions in Plaintiffs' Consolidated Response are inaccurate. For the sake of brevity, we will not address them all, only those relevant to the issue of summary judgment. Fourth, with regard to the Babacas loan to Flanagan, although Plaintiffs assert that "Fasano's representations [to the court on October 27, 1998 and November 16, 1998] were false," (Plaintiffs' Response pp. 28-29) and that Flanagan loaned money to Babacas, they offer no evidence to support their position that Fasano had knowledge that Flanagan loaned to Babacas. In fact, Plaintiffs offer copies of cancelled checks and correspondence between Flanagan and Babacas to support their theory that Flanagan loaned money to Babacas. Nowhere does any evidence infer that Fasano was involved or even had remote knowledge of the

- 10 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

professed Flanagan loans to Babacas.  Once again, the Plaintiffs' imagination and literary license create nothing more than illustrious fiction.

Fifth, Plaintiffs also cite the deposition transcript of Mr. Todd Bainer in support of their statement that "the representations by Fasano to Judge Covello and Plaintiffs about the whereabouts and availability of Flanagan's T&P stock were materially false. (Px 67 p. 2; Px B pp. 32-33)" (Plaintiffs' Response p. 30).  In fact, Mr. Bainer's deposition transcript reflects the following:

Page 33:

Q.    And you're accusing Lenny Fasano of making materially false representations to United Stated District Court Judge Covello, is that right?

A.    That's correct.

Q.    Why?

A.    Why what?

Q.    Do you make accusations like that recklessly?

A.    No.

Q.    All right.  Then why did you make it against Lenny?

A.    Because it was my feeling from seeing the documents that that's what occurred, and I wanted an explanation.

Q.    What led you to believe that Lenny Fasano was making materially false representations to United States District Court Judge Covello?

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

A.    As to the movement of the stock.  The pleadings in the file had indicated the stock was supposedly in Sharon Demetropoulous's hands, when it was not.

Q.    Any other reason you accused Lenny Fasano of engaging, of making materially false representations to United States District Court Judge Covello?

A.    Not that I recollect.

Mr. Bainer clearly speculated as to his own belief of why Fasano filed documents that

mistakenly reflected where the stock was held.  However, Mr. Bainer continued to testify

as to the following information, which Plaintiffs so conveniently omitted:

Page 37:

Q.    Did you ever talk to Lenny Fasano about your accusation against him that he had made materially false representations to Judge Covello?

A.    I don't recall having that discussion about that in particular.

Q.    How about in general?

A.    I don't recall a discussion.  I recall an explanation for it.

Q.    An explanation that he gave you orally?

A.    I don't recall if it was oral or in the letters, but my impression was that Charlie had told him that, and that's what was represented in the [court] papers.

Q.    Charlie told him what?

A.    Whatever the representations were in the pleadings about the location of the stock.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> Q.    It's your recollection that Lenny Fasano told you, either in letter form or orally, that Charlie had told Lenny about the locations of the stock, day one Sharon Demetropoulous, day two Socrates Babacas?
>
> A.    You're using day one and day two for purposes of example?
>
> Q.    Yes.
>
> A.    Yes.

At that point in the deposition, Mr. Armstrong pressed Mr. Bainer with additional questions regarding discussions with Flanagan.  Mr. Bainer declined to answer those questions based on the confidentiality of the attorney/client privilege.

Clearly, Mr. Bainer's testimony does not support Plaintiffs' claims.  In fact, on the contrary, it suggests that Fasano relied on his client's (Flanagan's) information as to where the location of the T&P stock was held.  Contrary to the Plaintiffs' claim, Mr. Bainer's testimony does not support the Plaintiffs' assertion that "the representations by Fasano to Judge Covello and Plaintiffs about the whereabouts and availability of Flanagan's T&P stock were materially false."

Sixth, Plaintiffs state that "Fasano's representations that Flanagan's T&P stock was out of Flanagan's possession and control since June of 1997 was knowingly both false and misleading.  (Px 67 p. 2; Px B pp. 146-147)" (Plaintiffs' Response, p. 30).  In support of that statement, Plaintiffs cite Mr. Bainer's deposition testimony that reflects a discussion between Mr. Armstrong and Mr. Bainer regarding a letter that Mr. Bainer

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

sent to Fasano in which Mr. Bainer accuses Fasano of filing a false and misleading pleading before the Federal Court stating that Flanagan's stock was out of his possession and control since June of 1997.  In the deposition transcript citation, there is no substantiation for the basis for Mr. Bainer's allegations in his letter.  The mere discussion of a letter sent by Mr. Bainer that contains Mr. Bainer's assumptions and speculations is not sufficient evidence to support the Plaintiffs' allegation.

Seventh, Plaintiffs further state that "[a]ccording to T&P's attorney [Mr. Bainer], Fasano knew that his representations to Judge Covello and Plaintiffs about the location of Flanagan's stock 'was substantively untrue.' (Px 67 p. 3)" (Plaintiffs' Response, p. 30).  Again, the Plaintiffs cite the same letter that contains Mr. Bainer's speculation and assumptions of what Fasano knew, without a basis for their allegations.

Eighth, Plaintiffs repeat their mantra that "[a]s admitted by T&P's attorney [Mr. Bainer], Fasano made materially false and misleading statements to Judge Covello and the Plaintiffs as to the location and control of physical possession of Flanagan's T&P stock. (Px 19 p. 2; Px B pp. 146-48)"  (Plaintiffs' Response p. 30) without evidence to support the same.  Again, Plaintiffs cite Mr. Bainer's deposition testimony which contains a  discussion between Mr. Armstrong and Mr. Bainer regarding a letter that Mr. Bainer sent to Fasano in which Mr. Bainer accuses Fasano of filing a false and misleading pleading before the Federal Court stating that Flanagan's stock was out of his possession and control since June of 1997.  In the deposition transcript citation, Mr.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ ʟʟᴘ

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Bainer offers no grounds as a basis for Mr. Bainer's allegations in his letter.  We repeat, the mere discussion of a letter sent by Mr. Bainer that contains Mr. Bainer's assumptions and speculations is not sufficient evidence to support the Plaintiffs' allegation.

Ninth, Plaintiffs claim that "based on Fasano's advice, Flanagan secretly ran the income from his rental properties through three checking accounts in the names of third parties…"  (Plaintiffs' Response p. 40).  However, once again, Plaintiffs fail to support their accusation with any evidence that is admissible at trial.  In fact, Plaintiffs cite the following testimony from Flanagan's deposition dated March 13, 2003:

Page 64:

Q.    And the MJCC Corp. that was the checking account receptacle for your rental property income generated by your rental properties, correct?

A.    Right.

Q.    Did you ask Judge Covello for permission to transfer assets, cash, to you?

A.    I didn't transfer any cash to me.

A.    The answer is no.

**Q.    Did you seek the advice or counsel from anyone as to whether or not you could transfer cash form MJCC Corp. to you in March of 1998?**

**A.    Well, no.  MJCC Corp. was the property management account for my properties, so any income would**

- 15 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**have come from, I believe, 17 Howe Street or 475 George Street, so.**

**Q.     Did you receive any advice or counsel for anyone?**

**A.     Yeah.  No, I believe I had a conversation or two with Attorney Fasano on, you know, is it appropriate to, you know, pay the bills associated with these properties from the rental income.**

Q.     What else did Mr. Fasano tell you?

MR. SKALKA:  Objection asks for (Page 65) attorney-client on a conversation that Mr. Flanagan may have had with his counsel at the time.  Same objection that I've raised previously.

Again, Plaintiffs misconstrue the deponent's testimony.  Flanagan stated that he had a *conversation* with Fasano; he never testified that Fasano told him to take the rental income and distribute it through various checking accounts.  There is no testimony as to what was said between Flanagan and Fasano.  In fact, ***nowhere*** in Mr. Flanagan's March 13, 2003 deposition transcript does it state that Fasano advised Flanagan to take the income from his rental properties and run it through three checking accounts in the names of third parties.  More importantly, Plaintiffs conveniently omitted the following testimony from Flanagan's March 13, 2003 deposition:

Page 12:

Q.     Now on May 8, 2001, you were on the witness stand in the Gaide grievance trial, correct?

A.     Could have been.

- 16 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Q.      And you raised your hand and swore to tell the truth, didn't you?

A.      Yeah.

Q.      Did you testify that you put the proceeds from your rental properties in your children's checking account on the advice of your attorney?

A.      Well, you're taking a four- or five-page excerpt from a transcript that, I mean, I may have elaborated on this further on.  I don't know.

        I mean, without looking at the completed transcript, I really need more backup to what exactly I did testify.  Do you have that transcript today that can refresh my memory?

Q.      Did you put the proceeds from your rental properties in your kid's checking accounts name?

MR. SKALKA:  At any time?

MR. ARMSTRONG:  Yes.

A.      I may have.

Q.      (BY MR. ARMSTRONG)  Did you receive the advice of anyone to put the rental proceeds in your children's checking account?

Page 13:

A.      Yes.

Q.      Who?

A.      My accountant told me, Andy D'Agostino.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

These are but a few of the liberties Plaintiffs have taken with the facts of this case.  If the courts requests, Defendants can provide more . . . much more.  Suffice it to say, despite considerable efforts, Plaintiffs have not produced any evidence upon which this court can rely with any certainty.  In fact, at times, Plaintiffs' efforts are at best misguided, and at worst, deceitful.  Either way, they provide no basis by which this court can find an issue of material fact.  As a result, Defendants' Motion for Summary Judgment should be granted.

### B. <u>An Attorney/Client Relationship Does Not Create a Conspiracy</u>

Plaintiffs continue to allege that Fasano engaged in a conspiracy with defendant Charles Flanagan ("Flanagan") to fraudulently transfer Flanagan's assets in an effort to defeat their judgment claims.  In their seventy-seven page Amended Consolidated Response to Defendants' Motions for Summary Judgment, the Plaintiffs assert that Fasano provided "illegal advice" and yet they do not support this statement with any credible references to any specific instances or occurrences.  Moreover, the Plaintiffs fail to cite any legal precedent that contradicts the fact that an attorney who provides legal advice and legal services to clients cannot be held liable under RICO §1962(b) where the attorney advised his client to minimize legal risks and performed ministerial legal tasks to that end.  <u>Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants</u>, 832 S. Supp. 585, 589-90 (E.D.N.Y. 1993).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ ʟʟᴘ

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiffs claim that the "facts as disclosed during discovery, and as summarized in Plaintiffs' summary judgment response … fully support the allegations in Plaintiffs' Second Amended Complaint," yet they do not offer reliable evidence that is admissible at trial of any specific instances wherein Fasano acted as a so-called "conspirator."

Contrary to Plaintiffs' claims, Plaintiffs offer substantial instances wherein Fasano acted as an attorney for Flanagan.  Plaintiffs cite the following instances: 1) Flanagan consulted with Fasano with regard to the Cadle's Property Execution served on Thompson and Peck (Plaintiffs' Amended Consolidated Response to Defendants' Motions for Summary Judgment (hereinafter Plaintiffs' Response) pp. 12 and 13; 2) Fasano filed documents and made representations to the court on behalf of Flanagan (Plaintiffs' Response pp. 14, 22, 24, 25, 26, 28, 30, 31, 32, 33, 39, 40, and 41; 3).  Fasano had contact with other attorneys and business professionals to advocate on behalf of Flanagan (Plaintiffs' Response pp. 15, 16, and 19; 4).  Flanagan contacted Fasano seeking advice (Plaintiffs' Response pp. 19, 20, and 24).

In fact, Plaintiffs fully admit in their Amended Consolidated Response to Defendants' Motions for Summary Judgment that Fasano was Flanagan's attorney. (Plaintiffs' Response pp. 33, 39 and 40).  An attorney who provides legal advice and legal services to clients cannot be held liable under RICO §1962(b) where the attorney advised his client to minimize legal risks and performed ministerial legal tasks to that

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

end.  Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants, 832 S. Supp. 585, 589-90

(E.D.N.Y. 1993).  Therefore, Defendants' Motion for Summary Judgment should be

granted.

### C.  Plaintiffs Fail to Rely on the Proper Standard for a Motion for Summary Judgment

The Plaintiffs erroneously rely on the standard for a Motion to Dismiss to put

forth the notion that somehow they have a viable claim to survive Defendants' Motion

for Summary Judgment.  Apparently, Plaintiffs' counsel does not appreciate the fact that

standard for granting a Motion to Dismiss is different from the standard for granting a

Motion for Summary Judgment.  Although this Court ruled earlier that Plaintiffs' claims

were sufficient to overcome a Motion to Dismiss, to successfully defeat a Motion for

Summary Judgment, the non-moving party must "go beyond the pleadings and by her

own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex

Crop. V. Catrett, 477 U.S. 317, 324 (1986); Fed. Rule of Civ. Pro. 56(e).  Plaintiffs have

failed to do so, and consequently, the court is left with no option but to grant Fasano's

Motion for Summary Judgment.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Respectfully submitted,

DEFENDANTS,
LEONARD A. FASANO and FASANO,
IPPOLITO & LEE, LLC


By_____/s/_____
        June M. Sullivan
        HALLORAN & SAGE  LLP
        Fed. Bar # ct24462
        One Goodwin Square
        225 Asylum Street
        Hartford, CT  06103
        (860) 522-6103

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>CERTIFICATION</u>

This is to certify that on this 25th day of October 2004, I hereby mailed a copy of the

foregoing to:

Edward C. Taiman, Jr., Esq.
Michael G. Albano, Esq.,
Sabia & Hartley, LLC
190 Trumbull Street, Ste. 202
Hartford, CT  06103-2205
&

Barbara L. Cox, Esq.
William F. Gallagher, Esq.
Gallagher & Calistro
1377 Ella Grasso Boulevard
P. O. Box 1925
New Haven, CT  06509-1925
**For Defendant Stanley Prymas
And Thompson & Peck, Inc.**

F. Dean Armstrong, Esq.
Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, IL  60422
**For Plaintiffs The Cadle Company &
D.A.N. Joint Venture, A Limited Partnership**

Bradley K. Cooney, Esq.
Bradley K. Cooney, P.C.
69 Island Avenue
Madison, CT  06443
**For Defendant Thompson & Peck, Inc.**

Mary Anne Charron, Esq.
R. Bradley Wolfe, Esq.
Gerald R. Swirsky, Esq.
Gordon, Muir & Foley
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106-5123
&
Todd R. Bainer, Esq.
Todd R. Bainer, LLC
71 Cedar Street
Branford, CT  06405
**For Defendant Todd R. Bainer**

Douglas S. Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT  06510-2026
**For Defendant Charles A. Flanagan**

Paul Morgan Gaide, Esq.
713 Lovely Street
Avon CT 06001
**For Defendant Paul M. Gaide & Gaide &
Associates, LLC**

US Trustee
U.S. Trustee Office
265 Church Street, Suite 1103
New Haven, CT 06510-7016

Amber J. Branciforte, Esq.
Nuzzo & Roberts, LLC
One Town Center
P.O. Box 747
Cheshire, CT 06410
**For Defendants Karen T. Gerber, Esq.
Nuzzo & Roberts, LLC, Movant**

_____
/s/
June M. Sullivan

598997_1.doc

- 22 -

