UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE CADLE COMPANY; | NO.: 3:01cv531(AVC) |
| D.A.N. JOINT VENTURE | |
|     plaintiffs | |
| v. | |
| CHARLES A. FLANAGAN; LISA G. FLANAGAN; | |
| MJCC CORP.; MJCC REALTY; SOCRATES T. BABACAS; | |
| LEONARD A. FASANO; FASANO & IPPOLITO; | |
| TODD R. BAINER; STANLEY F. PRYMAS; | |
| THOMPSON & PECK; JOSEPH CAPORALE | |
|     defendants | NOVEMBER 10, 2004 |

THE MOVANT'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO COMPEL

The Movant, Nuzzo & Roberts, LLC, hereby files its Memorandum of Law in Opposition to Motion for in Camera Inspection and to Compel of the plaintiffs, The Cadle Company and D.A.N. Joint Venture, dated September 17, 2004.

I.  PROCEDURAL HISTORY

The Movant was retained to represent the Estate of Attorney Robert Skelton in a matter brought in the United States District Court, District of Connecticut by Paul M. Gaide, No.:302cv392 (SRU). That action has since been dismissed. Subsequently, the Movant was retained to represent the Estate of Attorney Robert Skelton in a state court action filed by Paul M. Gaide, which action is currently pending in the Judicial District of New Britain, docket number CV 03 0521353 S. In connection with the representation of the Estate of Attorney

Robert Skelton as described, the Movant received files of Attorney Skelton relevant to the issues in the federal court and subsequent state court litigation.

Upon learning that the Movant possessed files of Attorney Skelton, counsel for the plaintiffs, Attorney Edward Taiman, issued a subpoena on the Movant on March 12, 2004. Said subpoena requested copies of all documents which in any way related to:

> MJCC Realty Limited Partnership; MJCC Corporation; The Cadle Company; D.A.N. Joint Venture; Angela Cimino Burr; Charles Flanagan; Lisa Flanagan; Stanley F. Prymas; Thompson & Peck, Inc.; Leonard Fasano; Fasano & Ippolito; Fasano & Ippolito and Lee, LLC; Socrates Babacus; Todd R. Bainer, LLC; Joseph Caporale; 25 Queach Road; 230 Millbrook Road; Karen DeMetropopolis; Sharon Flanagan; Sharon Rosen and John C. Flanagan.

On March 15, 2004, the Movant filed a Motion to Quash the subpoena on the grounds that it was overbroad, not limited in time or scope, subjected the Movant to undue burden and did not provide a reasonable time to comply. The Movant also moved to quash the subpoena on the basis that it required disclosure of privileged or otherwise protected matter, in part, because a review of the PACER system revealed that, prior to his death, Attorney Skelton represented the following defendants in this action: Socrates T. Babacas; Angela Cimino Burr; Joseph Caporale; Leonard A. Fasano; Fasano & Ippolito; Lisa G. Flanagan; MJCC Corp. and MJCC Realty. The plaintiffs filed an Objection to the Motion to Quash.

On June 25, 2004, the Court ordered that the Movant produce a privilege log with respect to the documents for which there was a good faith claim of privilege and

denied the Motion to Quash in all other respects. Accordingly, on June 28, 2004 and August 4, 2004, the Movant produced numerous documents responsive to the subpoena to the plaintiffs. The Movant thereafter filed a Revised Privilege Log dated August 13, 2004. On September 17, 2004, the plaintiffs filed a Motion for in Camera Inspection and to Compel.

As the Movant's client is deceased, the Movant conferred with parties and/or their counsel to which documents in its Revised Privilege Log relate. The Movant has produced a number of documents referenced in the privilege log to the plaintiffs to which these parties and/or their counsel had no objections to disclosing.[1] The Movant has provided the remaining documents in its Revised Privilege Log to the Court.

The Movant hereby sets forth its opposition to the plaintiffs' motion to compel production of the documents in the Revised Privilege Log. For the reasons stated herein, the documents in the Revised Privilege Log, not already produced, are irrelevant to this action and protected by the attorney-client, work product, common interest and joint defense privileges and should not be ordered disclosed.

II. ARGUMENT

    A. <u>The documents set forth in the Revised Privilege Log are irrelevant to this action and are privileged files that should not be disclosed.</u>

The plaintiffs seek documentation from Attorney Robert Skelton's files in order to find evidence showing that the defendants in this matter concealed Charles

---

[1] The Movant has produced document numbers 8, 19 (partial), 20, 34, 36, 56, 66, 68, 69, 71, 73, 75, 76, 77, 79, 80, 81, 83, 84 and 85. Document number 12 was subsequently produced because it had already been disclosed.

Flanagan's assets. The Court's in camera review will reveal that none of the documents in the Movant's Revised Privilege Log show such evidence. As such, no documents in the Revised Privilege Log are relevant to the plaintiffs' subpoena and the documents should not be disclosed.

Moreover, the documents are privileged. As stated in the affidavit of Attorney James Skelton, documents the Movant received and which are contained in the Revised Privilege Log consist of client files. After Attorney Skelton's death, his brother, Attorney James Skelton, reviewed Attorney Skelton's client files and provided applicable files to the Movant for the purpose of defending the suit in state court against the Estate of Attorney Robert Skelton. (Affidavit of James Skelton, ¶¶ 4, 7). Additionally, the attached affidavit of Charles Flanagan and other facts as set forth herein establish that the documents are protected by the attorney-client, work product, common interest and joint defense privileges.

    1.    <u>Attorney-client privilege</u>

"The attorney-client privilege serves to protect confidential communications between the client and the attorney." <u>In re In-Store Advertising Securities Litigation</u>, 163 F.R.D. 452, 458 (S.D.N.Y. 1995). "The privilege protects both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information." <u>United States v. United Technologies Corp.</u>, 979 F. Supp. 108, 110-111 (D. Conn. 1997). "The broad outlines of the attorney-client privilege are clear: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3)

4

the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997) (citation and internal quotation marks omitted).

      2.     Work product doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects, as work product, documents prepared "in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer or agent)." "Rule 26(b)(3) sets forth a three-pronged test for determining whether material is protected from disclosure under the work product doctrine. The materials must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party [to the action] or by or for his representative." Magee v. The Paul Revere Life Insurance Company, 172 F.R.D. 627, 639 (E.D.N.Y. 1997) (citations and internal quotation marks omitted).

"The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d. Cir. 1998). "Documents should be deemed prepared in anticipation of litigation . . . if in light of the nature of the

5

document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." Id., 1202 (citations and internal quotation marks omitted).

### 3.    Documents relating to Charles Flanagan

The documents in the Revised Privilege Log relating to Charles Flanagan are protected from disclosure by the attorney-client, work product and common interest privileges. A substantial amount of the documents in the Revised Privilege Log consist of correspondence as between Charles Flanagan and Attorney Skelton. As reflected in the affidavit of Charles Flanagan, from early 1999 through mid 2002, Charles Flanagan communicated with Attorney Skelton, in his capacity as an attorney, for the purpose of obtaining legal advice and Attorney Skelton, in turn, communicated legal advice to Charles Flanagan. (Affidavit of Charles Flanagan, ¶¶ 3, 4). Many of the documents in the Revised Privilege Log contain handwritten notes communicated to Attorney Skelton, in confidence, for the purposes of obtaining legal advice. (Affidavit of Charles Flanagan, ¶ 9). The documents in the Revised Privilege Log containing such notes include numbers 6, 7, 11, 13, 18, 28, 48, 50, 57 and 74.

Charles Flanagan sought legal advice from Attorney Skelton relating to Thompson & Peck, Inc., of which he was a partner with Stanley Prymas, and forwarded confidential business documentation to Attorney Skelton regarding the business. (Affidavit of Charles Flanagan, ¶¶ 7, 8, 10). Said confidential business documentation includes numbers 57, 86, 87, 88, 89, 90, 91, 92 and 93. (Affidavit

of Charles Flanagan, ¶ 10). All said communications were intended to be kept confidential and Charles Flanagan did not waive any privileges he had with Attorney Robert Skelton. (Affidavit of Charles Flanagan, ¶¶ 5, 12). As such, all correspondence as between Charles Flanagan and Attorney Skelton and all documentation forwarded to Attorney Skelton by Charles Flanagan are protected by the attorney-client privilege. The plaintiffs' arguments regarding Attorney Skelton's limited representation of Charles Flanagan on March 9, 1998 is factually incorrect. Contrary to the plaintiffs' arguments, Charles Flanagan did seek legal advice from Attorney Skelton in his capacity as an attorney, even while he was represented by other counsel, and documentation relating thereto is protected.

There is also documentation in the Revised Privilege Log as between Charles Flanagan and other counsel besides Attorney Skelton including Attorney Leonard Fasano, Attorney Douglas Skalka, Attorney Bradley Cooney and Attorney Todd Bainer. Charles Flanagan was represented by Attorney Leonard Fasano with respect to the matter of <u>Cadle v. Flanagan</u>, case number 3:96-CV-02648. (Affidavit of Charles Flanagan, ¶ 13). He was represented by Attorney Douglas Skalka with respect to the matter of <u>In re Flanagan</u>, case number 99-30565, chapter 11 and chapter 7 proceedings, and is currently represented by him in this matter. (Affidavit of Charles Flanagan, ¶ 14). Charles Flanagan was also represented by Attorney Bradley Cooney and Attorney Todd Bainer with respect to a grievance proceeding. (Affidavit of Charles Flanagan, ¶ 15). Attorney Todd Bainer also represented Thompson & Peck, Inc., which Charles Flanagan owned

7

with Stanley Prymas. (Affidavit of Charles Flanagan, ¶ 7). Pursuant to said counsels' representation of Charles Flanagan and Thompson & Peck, Inc., he communicated with them, in their capacities as attorneys, for the purpose of obtaining legal advice and they in turn communicated legal advice to him. (Affidavit of Charles Flanagan, ¶ 16). In connection with said representation, Charles Flanagan provided said counsel with documentation for the purpose of obtaining legal advice, in confidence, including confidential business documentation. (Affidavit of Charles Flanagan, ¶ 17). Said communications were intended to be kept confidential. (Affidavit of Charles Flanagan, ¶ 18). No privileges have been waived with respect to this counsel. (Affidavit of Charles Flanagan, ¶ 12). As such, all correspondence between Charles Flanagan and the counsel named herein and all documentation forwarded to them by Charles Flanagan are protected by the attorney-client privilege.

Additionally, Attorney Skelton and other counsel named herein prepared documentation on Charles Flanagan's behalf in anticipation of and/or because of ongoing litigation with respect to the matters set forth herein. (Affidavit of Charles Flanagan, ¶¶ 11, 19). No such privileges have been waived. (Affidavit of

Charles Flanagan, ¶ 12). As such, documentation is also protected by the work product privilege.[2]

Privileges have not been waived because documentation between Charles Flanagan and his counsel such as Attorney Skalka and Attorney Fasano was provided to Attorney Skelton as Charles Flanagan sought legal advise from Attorney Skelton relating to various matters for which he was represented by other counsel in conjunction with said other counsel. (Affidavit of Charles Flanagan, ¶ 6). Said documentation remains protected under the common interest rule. "The common interest rule extends the attorney client privilege to privileged communications revealed to a third party who shares a common legal goal with the party in possession of the original privilege. . . . The parties need not be actively involved in litigation: they must, however, demonstrate cooperation in formulating a common legal strategy." TIFD III-E Inc., the Tax Matters Partner of Castle Harbour-I Limited Liability Company v. United States, 223 F.R.D. 47, 50 (D. Conn. 2004) (citations omitted). "Confidential communications between a third party representative of the client, such as an accountant or other non-testifying expert, and the client's attorney, or between two different attorneys for a client, may be protected from disclosure if the communications are made on behalf of the client for the purpose of obtaining legal advice." In re Grand Jury

---

[2] The Movant has been advised that in Cadle v. Flanagan, 3:01CV531 (AVC), Thompson & Peck, Inc. has waived its attorney-client privilege with respect to the issues of (1) the classification of payments to Charles Flanagan pursuant to a stipulated Connecticut Superior Court judgment and (2) the placement of a restrictive legend on Flanagan's stock certificates in 1997. Thompson & Peck, Inc. has not waived its attorney-client privilege as it relates to any other matter. Additionally, there has been no waiver of the attorney work product privilege.

Subpoenas Dated March 9, 2001, 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) (citations and internal quotation marks omitted).

"Because the work product doctrine aims not only to preserve confidentiality, but also to protect the integrity of the adversary system, the privilege is not automatically waived by any disclosure to a third party. . . . Protection is waived only if such disclosure substantially increases the opportunity for potential adversaries to obtain the information."  Magee, supra, 172 F.R.D. 641 (citations and internal quotation marks omitted).  "Where . . . work product is disclosed to a third party aligned in interest with the author, the claim of work product protection may be maintained."  Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp., 2002 WL 31729693 *5 (S.D.N.Y. 2002).  Accordingly, attorney-client communications and work product exchanged among Charles Flanagan's counsel remain protected under the common interest rule.

Likewise, documentation from a certified public accountant as noted in number 51 of the Revised Privilege Log remains privileged for the same reasons. See also United Technologies Corp., supra, 979 F. Supp. 108, 111 ("[i]information provided to an accountant by a client at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation").

      a.    Crime fraud exception

Contrary to the plaintiffs' arguments, the documents set forth in the Revised Privilege Log are not discoverable under the crime fraud exception to the attorney-

client and work product privileges.  The crime fraud exception removes the privilege from documents that are "relate[d] to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."  United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) (citation and internal quotation marks omitted).  "The crime-fraud exception to the attorney-client privilege . . . is a limited one, and the burden of proof is on the party seeking to pierce the privilege."  Blumenthal v. Kimber Manufacturing, Inc., 265 Conn. 1, 18 (2003).

"A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime."  United States v. Jacobs, supra, 117 F.3d 87. "[T]he crime-fraud exception has a narrow and precise application:  It applies only when the communications between the client and his lawyer further a crime, fraud, or other misconduct.  It does not suffice that the communications may be related to a crime."  Id., 88  (citation and internal quotation marks omitted).

In In re Richard Roe, Inc., 168 F.3d 69 (2d Cir. 1999), the Second Circuit Court of Appeals reversed the District Court's ruling that the crime-fraud exception applied to certain documents.  In so holding, the court noted that for the crime-fraud exception to apply, there must be "(i) a determination that the client communication or attorney work product in question was *itself* in furtherance of a crime or fraud and (2) probable cause to believe that the particular communication

11

with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity." Id., 71 (citations and internal quotations omitted).

"Mere allegations of a crime or fraud cannot defeat a claim of privilege; prima facie evidence that the crime or fraud has some foundation in fact is required to invoke the exception." <u>Sony Electronics, Inc. v. Soundview Technologies, Inc.</u>, 217 F.R.D. 104, 113 (D. Conn. 2002) (citations omitted). See also <u>Bria v. United States</u>, 2002 WL 663862, *4 (D. Conn. 2002) (where the Connecticut District Court found that the government's speculations regarding a crime or fraud that may have been committed were insufficient to satisfy its burden of showing probable cause that a crime had been committed and that the communications were in furtherance of the crime or fraud).

The plaintiffs have failed in their burden to prove that the crime-fraud exception applies to destroy the attorney-client and work product protected documents set forth in the Revised Privilege Log. The plaintiffs' argument is devoid of any factual basis to support a showing: (1) of probable cause to believe that a crime or fraud was committed; and (2) that the specific documents set forth in the Revised Privilege Log constitute communications in furtherance of a crime or fraud themselves.

The plaintiffs' brief contains unsupported, conclusory allegations of misconduct. The allegations amount to nothing more than speculation, which is insufficient to establish the requisite factual predicate of a showing of probable cause to believe that a crime or fraud was committed. The only allegations that

come close to constituting facts in support of the allegations of misconduct are that, while represented by Attorney Skelton and Attorney Fasano, Charles Flanagan invoked his Fifth Amendment right at a hearing, was found in contempt for not disclosing assets sought to pay a judgment (which was subsequently paid) and that Attorney Skelton and Attorney Fasano worked out of the same office. By no stretch of logic can these facts be construed as prima facie evidence of a fraudulent scheme to hide assets from creditors or evidence that the documents set forth in the Revised Privilege Log are communications in furtherance of such a scheme. The crime-fraud exception is simply inapplicable and is not a basis for the disclosure of the privileged documents.

4.  Documents relating to Attorney Todd Bainer

The documents in the Revised Privilege Log relating to Attorney Todd Bainer are protected from disclosure by the attorney-client, work product and common interest/joint defense privileges. Attorney Bainer was named as a defendant in this matter as well as in Gaide v. Bainer, et al., case number 3:03 CV 392 (SRU) and Gaide v. Lisa Flanagan, et al., case number CV 03 0521353 S, along with other defendants.

All documents between Attorney Bainer and/or his counsel and other defendants and/or their counsel in relation to said litigation are protected by the common interest/joint defense privilege. "[T]he common interest rule preserves the protection where work product is shared between parties pursuing a joint defense strategy. . . . Because the work product doctrine protects information

13

against opposing parties, rather than against all others outside a particular confidential relationship, counsel may . . . share work product, including ideas, opinions, and legal theories with those having similar interests in fully preparing litigation against a common adversary." In re In-Store Advertising Securities Litigation, supra, 163 F.R.D. 456 (citations and internal quotation marks omitted). "The joint defense privilege is an extension of the attorney client privilege and it serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. . . . Where multiple clients share a common interest the common defense privilege arises. . . ." Sony Electronics, Inc., supra, 217 F.R.D. 108 (citations and internal quotation marks omitted). Accordingly, all documentation exchanged among Attorney Bainer and/or his counsel and other defendants and/or their counsel in connection with litigation is privileged and should not be ordered disclosed.

Moreover, all documentation relating to Attorney Bainer's representation of Thompson & Peck, Inc. is protected by the attorney-client and work product privileges. See Affidavit of Charles Flanagan. As discussed, there are no facts set forth in the plaintiffs' brief establishing probable cause to believe that a crime or fraud was committed as required to invoke the crime-fraud exception.

     5.     Documents relating to Attorney Leonard Fasano

The documents in the Revised Privilege Log relating to Attorney Leonard Fasano are protected from disclosure by the attorney-client, work product and

14

common interest privileges. The PACER system reveals that Attorney Skelton had entered an appearance for and represented Attorney Fasano in this matter. The Revised Privilege Log contains documentation relating to this representation, which is protected by the attorney-client and work product privileges.[3]

The Revised Privilege Log also contains documents between Attorney Skelton and Attorney Fasano's liability insurer. These documents are also protected. "[C]ommunications between [a] retained attorney and the insurer should be considered privileged, to the extent such communications request or provide legal advice or analysis. Indeed, it is generally accepted that, regardless of whether the retained attorney and the insurer can be said to have a distinct attorney-client relationship, their communications . . . concerning such matters as progress reports, case evaluations, and settlement should be regarded as privileged and otherwise immune from discovery by the claimant or another party to the proceeding." Bovis Lend Lease, LMB, Inc., supra, 2002 WL 31729693 *3. "Where an insurer has agreed that it has a duty to defend and indemnify its insured, they are both clients of the lawyer. The lawyer is retained to defend both in the underlying action and the attorney client privilege applies to protect communications between the lawyer and the insurer." Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc., 212 F.R.D. 567, 571 (E.D.Ca. 2002). As such,

---

[3] Attorney Fasano and his counsel consented to the disclosure of certain documents in the Revised Privilege Log, which have been provided to the plaintiffs. Attorney Fasano's consent to the disclosure of these documents from Attorney Skelton's files does not constitute his waiver of any attorney-client privilege he had with Attorney Skelton or the waiver of any work product protections.

15

documentation as between Attorney Skelton, Attorney Fasano and Attorney Fasano's professional liability insurer are protected from disclosure.

Moreover, all documentation relating to Attorney Fasano's representation of Charles Flanagan is protected by the attorney-client and work product privileges. See Affidavit of Charles Flanagan.

III.   CONCLUSION

Based on the foregoing, the documents in the Revised Privilege Log are irrelevant to this action. Moreover, said documents are protected by the attorney-client, work product and common interest and joint defense privileges. Said documents should, therefore, not be disclosed to the plaintiffs in this action.

                                      THE MOVANT
                                      NUZZO & ROBERTS, L.L.C.

By_____
  Anthony Nuzzo, Jr.
  Federal Bar No: ct 05397
  NUZZO & ROBERTS, L.L.C.
  One Town Center
  P.O. Box 747
  Cheshire, Connecticut 06410
  (203) 250-2000
  anuzzo@nuzzo-roberts.com

This is to certify that on November 10, 2004, a true copy of the foregoing Memorandum of Law in Opposition to Motion for In Camera Inspection and to Compel was mailed via first class postage prepaid mail to:

Edward C. Taiman, Jr., Esq.
Michael G. Albano, Esq.
Sabia & Hartley
190 Trumbull Street, Suite 202
Hartford, CT  06103-2205

F. Dean Armstrong, Esq.
Armstrong Law Firm
1324 Dartmouth Road
Floosmoor, IL  60422

Todd R. Bainer, Esq.
Cooney & Bainer
71 Cedar Street
Branford, CT  06405

Mary Anne Charron, Esq.
R. Bradley Wolfe, Esq.
Gordon Muir & Foley
Hartford Square North
10 Columbus Boulevard
Hartford, CT  06106-1976

Bradley K. Cooney, Esq.
69 Island Avenue
Madison, CT  06443

William G. Gallagher, Esq.
Barbara Cox, Esq.
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT  06509-1925

US Trustee
US Trustee Office
265 Church Street, Suite 1103
New Haven, CT  06510-7016

June M. Sullivan, Esq.
David G. Hill, Esq.
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT  06106

Douglas. S. Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT  06510-2026

                                              _____
                                              Anthony Nuzzo, Jr.

F:\WP\423002\086\Memo Opp in Camera and to Compel 11 10 04.doc