UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 FEB 11 P 2: 31

U.S. DISTRICT COURT
HARTFORD, CT.

```
THE CADLE COMPANY and D.A.N.   :
JOINT VENTURE, LTD.            :
     Plaintiffs,               :
                               :
                               :
VS.                            :
                               :   Civil No. 3:01CV1909 (AVC)
                               :
CHARLES A. FLANAGAN,           :
ET AL.,                        :
     Defendants.               :
```

### RULING ON CHARLES FLANAGAN'S MOTION FOR SUMMARY JUDGMENT

This is an action for damages and equitable relief brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. The defendant, Charles A. Flanagan, now moves for summary judgment pursuant to Fed. R. Civ. P. 56(a) arguing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.

The issue presented is whether the plaintiffs' voluntary decision to pay costs associated with defending their collections attorney in professional grievances filed by Flanagan constitute an injury cognizable under RICO. For the reasons hereinafter that follow, the court concludes that because these costs were voluntarily assumed, no RICO injury is stated as a matter of law. Accordingly, the motion for summary judgment is GRANTED.

### FACTS

Examination of the second amended complaint, affidavits, pleadings, Rule 56(a) statements, exhibits and supplemental materials accompanying the motion for summary judgment, and the

responses thereto, discloses the following undisputed, material facts.

In 1996, the plaintiffs, Cadle Company and D.A.N. Joint Venture Ltd., filed suit against Flanagan in the United States District Court for the District of Connecticut in connection with his default on a $75,000 loan. <u>The Cadle Company v. Charles Flanagan</u>, Civ. No. 3:96cv2648(AVC) ("Cadle I"). Cadle prevailed in the action and, on March 20, 1997, obtained a judgment against Flanagan in the amount of $99,542.87. Flanagan did not pay the judgment until November 19, 1998, and did so only after the court enjoined him from transferring his assets, held him in contempt for failure to turn over information relating to his assets, and ordered him committed to the Federal Bureau of Prisons until such time as he purged himself of that contempt.

On February 17, 1999, Flanagan filed a petition in the United States Bankruptcy Court for the District of Connecticut seeking relief under Chapter 11 of the United States Bankruptcy Code.[1] In his Chapter 11 filing, Flanagan stated that he owned no real estate and that his only asset of significance for purposes of his bankruptcy estate consisted of a 50% stock ownership in two business entities known as Thompson & Peck,

---

[1] On May 4, 1999, Flanagan commenced a bankruptcy adversary proceeding against Cadle to recover the transfer, alleging that the $99,542.87 that was paid to Cadle was a voidable preference, and thus subject to recoupment under § 547(b) of the Bankruptcy Code.

2

Inc., and Flanagan/Prymas Insurance Group, with an estimated fair market value of the stock at $1,000,000. During discovery in connection with that filing, however, Cadle and D.A.N. Joint Venture found evidence indicating that, contrary to Flanagan's representation in his bankruptcy petition, he owned three residential properties and had used various friends and family members as straw men to hide his ownership and his receipt of rental income. Flanagan also allegedly concealed from his creditors that he was owed $75,000 in settlement proceeds stemming from a lawsuit involving Thompson & Peck, Inc.

Cadle and D.A.N. Joint Venture also discovered evidence indicating that, in and around November of 1998 and in connection with Cadle I, Flanagan and his lawyer, Leonard Fasano, had misrepresented the whereabouts of Flanagan's stock certificates, had orchestrated multiple asset transfers in contravention to this court's order enjoining the transfer of assets, and that Flanagan, in conjunction with his partner, Stanley Prymus, and their attorney, one Todd Bainer, had further violated an order of this court by placing a restrictive legend on the back of Flanagan's stock certificates.

In seeking redress, on April 4, 2001, Cadle and D.A.N. Joint Venture filed the present action, alleging that Flanagan and his attorneys, among others, had engaged in a pattern of wrongful conduct involving bankruptcy fraud, mail fraud and wire fraud in

3

order to prevent Cadle and D.A.N. Joint Venture from collecting on various judgments. In this action, they seek money damages pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO")("Cadle II").

On April 20, 2001, Flanagan filed a motion in the United States Bankruptcy Court to enjoin Cadle and D.A.N. Joint Venture from proceeding with Cadle II, arguing that because the claims arose prior to the bankruptcy filing date, i.e., February 17, 1999, the lawsuit violated the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362(a). In response, Cadle and D.A.N. Joint Venture argued that the automatic stay was not applicable because they did not seek damages for Flanagan's pre-petition conduct and, in support thereof, pointed to paragraph 83 of the Cadle II complaint which expressly limited the lawsuit to Flanagan's post-bankruptcy petition conduct. In this regard, the complaint alleges:

> The damage claims against Flanagan, however, are limited to the damages caused by Flanagan's wrongful conduct which occurred from and after Flanagan's bankruptcy filing on February 17, 1999.

(Cadle II complaint at ¶ 83). According to the complaint, Flanagan's alleged wrongful conduct following the bankruptcy petition included the false characterization of debts (complaint at ¶¶ 39 and 40) and the collection of rental income through straw men on properties that he owned but failed to disclose in

4

his bankruptcy petition (complaint at ¶¶ 66, 67, 68 and 69). Under RICO, Cadle and D.A.N. Joint Venture argued that Flanagan's continuation, post-petition, of wrongful conduct rendered him liable for the full damages caused by his pre-petition conduct.

On May 16, 2001, the parties appeared for hearing in the bankruptcy court on Flanagan's motion for a finding that Cadle and D.A.N. Joint Venture violated the automatic stay by filing the present action, that is, Cadle II. At hearing, the court found that paragraph 83 of the complaint was not effective in limiting the claims to Flanagan's post-petition conduct. Specifically, the bankruptcy court held:

> As I previously indicated, Charles A. Flanagan is a named defendant, he's defined as a defendant, particularized as a defendant and of significance, at least, to this court, is that at page 32, paragraph 72, is included in the term, "Defendants," as that term [] is used [in the sentence] "All of the defendants are jointly and severally liable for the full amount of damages caused to the plaintiffs because they engaged in the affirmative conduct described therein in furtherance of the goals of conspiracy."
>
> Viewed in this context, even the respondents here by virtue of the positions they've taken would acknowledge that such a complaint violates the automatic stay. . .

The bankruptcy court therefore found a violation of the automatic stay and granted Flanagan's motion, and further ordered Cadle and D.A.N. Joint Venture to withdraw this matter as to Flanagan. Cadle and D.A.N. Joint Venture subsequently withdrew the action

with respect to Flanagan.

On June 20, 2002, Cadle and D.A.N. Joint Venture requested permission to amend their complaint for a second time so that only post-bankruptcy petition claims would be alleged against Flanagan. On August 21, 2002, the court granted that motion and Flanagan was reinstated as a party defendant. Thereafter, Cadle and D.A.N. Joint Venture served the Second Amended Complaint on Flanagan. In that pleading, Cadle and D.A.N. Joint Venture allege wrongful conduct from 1992 through 1999 and seek damages of $2,400,000 against the defendants other than Flanagan.

The damage claims asserted against Flanagan are limited to damages caused by Flanagan's alleged wrongful conduct which occurred from and after Flanagan's bankruptcy filing on February 17, 1999. According to Cadle and D.A.N. Joint Venture, the amount of compensatory damages due from Flanagan is approximately $50,000. This sum, they maintain, represents attorneys' fees and expenses incurred in defending Paul Gaide, their collections attorney, in grievances that Flanagan filed against him. Cadle and D.A.N. Joint Venture paid Gaide's attorneys' fees and expenses even though they were under no obligation to do so.

**STANDARD**

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgement

6

as a matter of law. Fed. R. Civ. P. 56(c). In determining whether the record presents genuine issue for trial, the court must view all inference and ambiguities in a light more favorable to the non-moving party. See Bryant v. Maffacci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 112 S. Ct. 152 (1991). A plaintiff raises a genuine issue of material fact if the "jury could reasonably find for the plaintiff."Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." Liberty Lobby, supra, at 247-48 (emphasis original). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to the trial, that the claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgement rule is to isolate and dispose of factually unsupported claims. . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 312, 323-324 (1986).

7

## DISCUSSION

Flanagan argues that he is entitled to summary judgment on grounds that, because Cadle and D.A.N. Joint Venture were under no obligation to pay attorneys' fees and costs incurred in defending attorney Paul Gaide against professional grievances that Flanagan filed against him, but instead voluntarily elected to pay these costs, they cannot claim damages as a matter of law. In Flanagan's view, a party cannot knowingly and freely choose to incur an alleged injury and then sue to recover under RICO for that same alleged injury.

In response, Cadle and D.A.N. Joint Venture argue that "because Flanagan's baseless grievance against Gaide was the direct result of Gaide taking collection activities at Cadle's request, [they] were of the belief that they had the duty or obligation to defendant Gaide in connection with that grievance," and hence, in their view, "disputed issues of fact [exist] as to whether [the] plaintiffs are entitled to recover as RICO damages [these] attorneys fees [and costs]."

The court agrees with Flanagan. In order to prevail on a cause of action under RICO, the plaintiffs must prove, among other things, injury to business or property as a result of the RICO violation. Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (citing 18 U.S.C. § 1964(c)). A plaintiff fails to establish a RICO injury where the injury

"'flow[ed] from [the plaintiffs'] voluntary decisions.'" Zito v. Leasecomm Corp., No. 02civ8074(GEL), 2003 WL 22251352, *19 (S.D.N.Y. Sept. 30, 2003); see also Doug Grant, Inc. V. Greate Bay Casino Corp., 232 F.3d 173, 187-88 (3d Cir. 2000) (voluntary participation in illegal but non-fraudulent gambling not compensable as plaintiff "can avoid any injury simply by walking away.")

Cadle and D.A.N. Joint Venture fail to direct the court to some basis, beyond conjecture, for their belief that they were under a duty or obligation to defend attorney Gaide in the grievances filed by Flanagan. Because its is undisputed that, indeed, no obligation existed, the court concludes that Cadle and D.A.N. Joint Venture voluntarily assumed the financial burden associated with that defense and, accordingly, cannot prove RICO injury as a matter of law.

## CONCLUSION

For the foregoing reasons, Charles A. Flanagan's motion for summary judgment (document no. 196) is GRANTED.

It is so ordered this 11th day of February, 2005 at Hartford, Connecticut.

                                            Alfred V. Covello
                                            United States District Judge