UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **THE CADLE COMPANY** and | § | No. 3:01CV531(AVC) |
| **D.A.N. JOINT VENTURE,** | | |
| **A LIMITED PARTNERSHIP,** | § | |
| | | |
| Plaintiffs, | § | |
| | | |
| vs. | § | |
| | | |
| **CHARLES A. FLANAGAN, et al.** | § | February 15, 2005 |
| | | |
| Defendants. | § | |

PLAINTIFFS' RESPONSE TO DEFENDANT BAINER'S
MOTION FOR SUMMARY JUDGMENT

This is the Response of Plaintiffs The Cadle Company ("TCC") and D.A.N. Joint Venture, A Limited Partnership ("DJV") to the Motion for Summary Judgment submitted by Defendants Todd R. Bainer and Todd R. Bainer L.L.C. (collectively, "Bainer").

Introduction

Most defendants don't confess. Rather, when a fraudfeasor is implicated in a scheme to defraud, the excuses start flowing like warm caramel over a rotten apple. While cross examination at depositions can strip away some of the sweet veneer, the best way to find out whether or not the core is rotten is to look at what was said and what was done before the suit was filed.

Here the pre-suit documents outline a concerted effort by the Defendants to hide, transfer and otherwise shield the substantial assets of Charles A. Flanagan ("Flanagan") from the

judgment claims of Plaintiffs. As shown by the following, Flanagan orchestrated a complex and complicated scheme to defraud the Plaintiffs out of the benefit of their judgments against him, and in the process enlisted the support of his friends, his family and his business associates -- who are the other Defendants named in this suit.

While most defendants won't confess their own wrongful conduct, sometimes -- as in this case -- one co-conspirator will turn on the other co-conspirator. Here Flanagan's co-conspirators have admitted that:

> (1) "[T]he evidence developed during discovery . . . shows that Flanagan was desperately attempting to conceal his assets and evade his creditors." (Prymas/T&P MSJ Mem. p. 9)

> (2) Flanagan's conduct in transferring and pledging his T&P stock to various individuals "delayed, hindered or defrauded [Plaintiffs'] execution on [Flanagan's T&P] stock." (Bainer MSJ Mem. p. 34)

> (3) "It was Flanagan who transferred the T&P stock to Babacus and others to avoid execution by the plaintiffs." (Prymas/T&P MSJ Mem. p. 28)

> (4) "As the . . . facts adduced during discovery amply demonstrate, the . . . fraud that caused Plaintiffs' inability to collect [on the judgment debts owed by Flanagan] was [committed by] Flanagan himself." (Prymas/T&P MSJ Mem. p. 28)

(5)   It was "Flanagan's fraudulent efforts to
      evade his creditors" that caused
      "Plaintiffs' lack of collection success . .
      .." (Prymas/T&P MSJ Mem. p. 28)

(6)   "Flanagan, himself, was the source of the
      fraud upon which Plaintiffs suffered damages
      . . .." (Prymas/T&P MSJ Mem. p. 20)

(7)   "The only thing that delayed, hindered or
      defrauded execution on [Flanagan's] stock
      was Flanagan's personal transfer and pledge
      of the stock to various individuals."
      (Bainer MSJ Mem. p. 34)

Indeed, Prymas has admitted that Flanagan has committed

bankruptcy fraud. (Px O)

Finally, as noted by Judge Buchmeyer in a very similar

case,

> [u]nder RICO one co-schemer is liable for
> the other co-schemers' predicate acts.
> Indeed, upon joining a fraudulent
> conspiracy, each defendant becomes liable
> for the prior conduct of the earlier
> conspirators, and remains liable for the
> subsequent conduct of the other
> conspirators.

Cadle Co. v. Schultz, 779 F.Supp. 392, 400 (N.D.Tex. 1991).

### I.   Bainer Has Failed To Meet
### His Summary Judgment Burden

Pursuant to Rule 56(c), Fed.R.Civ.P., summary judgment is

only appropriate

> if the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.

In deciding whether a genuine issue of material fact has been raised as to an issue, this Court "must construe the facts in the light most favorable to the non-moving party [Plaintiffs] and must resolve all ambiguities and draw all reasonable inferences against the movant [Defendants]." Baisch v. Gallina, 346 F.3d 366, 371-72 (2d Cir. 2003) See, also, Cosmos Forms, Ltd. v. Guardian Life Insurance Co., 113 F.3d 308, 310 (2d Cir. 1997).

Further, numerous allegations in Plaintiffs' Second Amended Complaint ("2AC") went unchallenged by the Defendants. Accordingly, the allegations in Plaintiffs' Second Amended Complaint not refuted by competent summary judgment evidence remain unresolved fact questions to be resolved at trial. See Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 426, 430 & 431 (5th Cir. 1990).

Finally, even if the underlying facts are undisputed, but the reasonable inferences which can be drawn therefrom are in dispute, summary judgment is inappropriate.

As shown by the following, Bainer has failed in his summary judgment burden, and Bainer's Motion for Summary Judgment should be denied.

## II.  <u>Summary Of Facts</u>

Please see the Summary of Facts set forth at pp. 5-53 of Plaintiffs' Amended Consolidated Response to Defendants' Motion for Summary Judgment filed herein on September 9, 2004, which is hereby incorporated by reference as if set forth verbatim.

### III. Plaintiffs Have Stated A Valid Conspiracy Claim Against Bainer For <u>Violations Of §1962(d) Of RICO</u>

#### A. <u>Introduction</u>

Fraudulent transfers are wrong.  Whether dressed-up in estate planning clothes, or deceitfully designed to circumvent a court order against transfers of assets, fraudulent transfers frustrate the collection of legitimate debts that a court has ordered to be paid.  Not only do fraudulent transfers harm creditors, they breed disrespect for the judicial process as well.

Here we have a wealthy debtor, Flanagan, who conspired with numerous family members, business associates and controlled entities to fraudulently transfer his substantial assets in an effort to defeat the judgment claims of Plaintiffs.  As shown by the detailed allegations in Plaintiffs' Second Amended Complaint, and as proven by the evidence gathered through discovery, the Defendants have gotten caught in a complicated and sophisticated scheme designed to shield Flanagan's assets

from the judgment claims of Plaintiffs.  The Defendants should be held accountable for all of the harm that they have caused.

In order to discourage the proliferation of fraudulent transfers, there must be some deterrent effect to the law.  If the only remedy for a fraudulent transfer is to simply unwind a transaction that was fraudulently implemented in the first instance, fraudulent transfers will not only continue, they will proliferate and grow in number.  Every debtor on the run and his or her co-conspirators will smugly transfer asset after asset because (a) they might not get caught; and (b) even if they did, they would only have to unwind a transaction that they shouldn't have done in the first place.  And that's a gamble that every crook would take, and that's no deterrence at all.

Not surprisingly, the essence of this case is a conspiracy -- a conspiracy among Flanagan and the other Defendants to hide, transfer and otherwise shield the substantial assets of Flanagan from the judgment claims of Plaintiffs.  Because (1) the Defendants engaged in the underlying wrongful conduct of mail fraud, wire fraud and bankruptcy fraud (referred to as "predicate acts") in connection with their fraudulent transfer scheme, and (2) their related wrongful conduct both (a) constitutes continuous wrongful conduct and (b) poses a threat of continuing wrongful activities (referred to as "continuity"),

Plaintiffs have brought suit under the civil damage provisions of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§1961-1968), the dreaded "RICO" statute.

We realize and appreciate that many district court judges have (to put it mildly) a very strong aversion to civil RICO suits. After all, the statute's too complicated; it federalizes state causes of action; and the label "racketeer" just doesn't seem to fit for a civil business dispute.[1]

But the statute is on the books; the Supreme Court has repeatedly struck down artificial barriers to the prosecution of a civil RICO action[2]; and there are certain patterns of wrongful conduct which can and should be prosecuted under RICO.    See

---

[1]    The term "racketeer" and the Act's acronym, "RICO", have caused many a district court judge to wince. However, a "racketeer" is one who engages in a "racket". A "racket" is a "business that obtains money or property through fraud ---; an illegal or dishonest practice". The American Heritage Dictionary of the English Language (Morris Ed. 1970). Regardless, perhaps there would have been less judicial resistance to a remedial act geared toward patterns of fraudulent conduct had the Act been given a more innocuous name.

[2]    See Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98 (1985) ("RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, . . . but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'"); H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 248-49 (1989) ("Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways."); National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994) As stated by the Fifth Circuit in R.A.G.S. Couture, Inc. v. Hyatt, 774 F.2d 1350, 1353 (5th Cir.1985), "[t]he Supreme Court's Sedima decision cautions us not to place barriers before RICO plaintiffs that are not found in the text of the statute." See, also, Sun Savings & Loan Association v. Dierdorff, 825 F.2d 187, 194 (9th Cir.1987) ("Although RICO cases might be pesky, courts should not erect artificial barriers -- metaphysical or otherwise -- as a means of keeping RICO cases off the federal dockets."); Sutliff, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 654 (7th Cir.1984).

Handeen v. Lemaire, 112 F.3d 1339 (8th Cir.1997); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158 (2d Cir.1993); Bankers Trust Company v. Rhoades, 859 F.2d 1096 (2d Cir.1988); Gutierrez v. Givens, 989 F.Supp. 1033 (S.D.Cal.1997); Gutierrez v. Givens, 1 F.Supp.2d (S.D.Cal.1998); and Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.Tex.1991).  This is just such a case.

### B. Plaintiffs Need Not Show That Bainer Personally Used The Mails Or Wires To Transmit A Misrepresentation

Bainer contends that Plaintiffs do not have standing to assert their RICO claims against Bainer because Bainer, himself, did not personally commit bankruptcy fraud, mail fraud or wire fraud.  (Bainer Mem. pp. 3-24)  What Bainer has overlooked, however, is that Plaintiffs have sued Bainer under the RICO conspiracy statute -- 18 U.S.C. §1962(d) -- for providing knowing and substantial assistance to Flanagan in the implementation and execution of Flanagan's fraudulent plan to hide, transfer and otherwise shield Flanagan's assets from the judgment claims of Plaintiffs.

Accordingly, so long as Flanagan has engaged in a RICO substantive violation under either §1962(b) or §1962(c) -- which has not been challenged by Bainer in his summary judgment motion -- Plaintiffs have standing to sue Bainer as a RICO co-

conspirator <u>even</u> <u>if</u> Bainer did not himself, personally, engage in all of the elements of bankruptcy fraud, mail fraud or wire fraud.  As recently noted by the Second Circuit:

> We also note that the requirements for RICO's conspiracy charges under §1962(d) are less demanding.  A "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." <u>Salinas v. United States</u>, 522 U.S. 52, 65 (1997).  In the civil context, a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme." <u>Id</u>. at 66.  Baisch [the RICO plaintiff] has presented a genuine question as to [the alleged RICO co-conspirator's] knowledge of the racketeering enterprise and his willingness to promote it.

<u>Baisch v. Gallina</u>, 346 F.3d 366, 37_ (2d Cir. 2003).

A plaintiff in a RICO case need not show that each defendant personally utilized the mails or long distance wire communications in connection with the execution of the overall fraudulent scheme.  <u>See</u> <u>United States v. Zichettello</u>, 208 F.3d 72, 105-06 (2d Cir. 2000); <u>Cadle Co. v. Schultz</u>, 779 F.Supp. 392, 339(?) (N.D.Tex. 1991; <u>Constellation Bank, N.A. v. C.L.A. Management Co</u>., 1995 WL 42285 at *4 (S.D.N.Y. Feb 1, 1995); <u>Morrow v. Black</u>, 742 F.Supp. 1199, 1203-04 (E.D.N.Y.1990); <u>Center Cadillac v. Bank Leumi Trust Company of New York</u>, 808 F.Supp. 213, 228 (S.D.N.Y. 1992); <u>131 Main Street Associates v.</u>

Manko, et al., 897 F.Supp. 1507, 1530 (S.D.N.Y.1995). The exhibits submitted with Plaintiffs' Response to Defendants' Motions for Summary Judgment (see Px P and, in particular, Pxs 18, 19, 23, 27, 28, 32, 56, 66, 67, 70, 72, 118, 129, 135 & 167), and the undisputed allegations in the Second Amended Complaint, show numerous instances whereby Bainer utilized the United States mails and interstate wires in furtherance of Flanagan's scheme to hide, transfer or otherwise shield the substantial assets of Flanagan from the judgment and other debt claims of the Plaintiffs.

For a mail fraud or wire fraud claim, a RICO plaintiff need only allege the connection of the defendant to the overall fraudulent scheme which, during some part thereof, involves the use of the mail or long distance wire communications. Zichettello, 208 F.3d at 105-06. Indeed, so long as one participant in a fraudulent scheme "causes" the use of the mail or interstate telephone wires in the execution of the fraudulent scheme, all other knowing participants in the scheme are legally liable for the use of the mail or the interstate wires. Id. A defendant "causes" a use of the mail or wires when that defendant does an act knowing that the use of the mail or wires will follow in the ordinary course of business, or if the defendant reasonably could foresee that the use of the mail or

wires would follow, even if the defendant did not actually intend for the use of the mail or wires to follow.  Id.  See, also, United States v. Amrep Corp., 560 F.2d 539, 545 (2d Cir.1977); United States v. Jones, 648 F.Supp. 225, 235 & n. 8 (S.D.N.Y.1996).

In addition, Plaintiffs have adequately alleged RICO conspiracy claims against Bainer under §1962(d).  As recently noted by the Second Circuit, §1962(d) does not require proof that each co-conspirator agreed to commit two predicate acts. Zichettello, 208 F.3d at 99 n. 13.  Indeed, the Supreme Court has ruled that:

> Even if [the conspirator] did not commit [two or more acts of racketeering activity], there was ample evidence that he conspired to violate [§1962](c).  The evidence showed that [the primary wrongdoer] committed at least two acts of racketeering activity . . . and that [the conspirator] knew about and agreed to facilitate the scheme.  This is sufficient to support a conviction under §1962(d).

United States v. Salinas, 522 U.S. 52, 118 S.Ct. 469, 478 (1997).  See, also, Baisch, 346 F.3d at 366-77 (citing Salinas as controlling in a civil conspiracy case under RICO).

Further, a RICO conspiracy claim can be proved if the defendant embraced the objective of the alleged conspiracy, and agreed to commit predicate acts in furtherance thereof. Zichettello, 208, F.3d at 99.  To prove a RICO conspiracy it

need only be shown that the defendants know the general nature of the conspiracy and that the conspiracy extends beyond their individual roles. <u>Id</u>. In applying this analysis, a court need inquire only whether an alleged conspirator knew what the other conspirators "were up to" or whether the situation would logically lead an alleged conspirator "to suspect he was part of a larger enterprise." <u>Id</u>.

In addition, there is no rule requiring that a plaintiff prove that a RICO conspirator knew of all predicate acts by insiders in furtherance of the conspiracy. <u>Id</u>. at 100. To be held liable as a RICO conspirator, a defendant need only be shown to have possessed knowledge of only the general contours of the conspiracy. <u>Id</u>. Simply, a plaintiff need not prove that a RICO conspirator-defendant agreed with every other conspirator, or knew all of the other conspirators, or had full knowledge of all the details of the conspiracy. <u>Id</u>. <u>See</u>, <u>also</u>, <u>Baisch</u>, 346 F.3d at ___.

Further, Bainer claims that bankruptcy fraud cannot serve as a predicate act under RICO because it was Flanagan who committed the bankruptcy fraud, and not Bainer. Bainer is wrong.

The Second Amended Complaint adequately alleges the predicate act of bankruptcy fraud under RICO. <u>See</u> 7/3/03 Ruling

on Flanagan's Motion to Dismiss p. 9.  See, also, Bankers Trust
Co. v. Feldesman, 648 F.Supp. 17, 23-4 (S.D.N.Y.1986), on
reargument, 676 F.Supp. 496, rev'd on other grounds, 859 F.2d
1096 (2d Cir.1988).  While it is correct that Bainer did not
commit each of the elements of bankruptcy fraud, it is alleged
that the bankruptcy fraud by Flanagan was part of the overall
fraudulent transfer scheme.  Accordingly, any of the Defendants
that joined the conspiracy and helped Flanagan accomplish the
goals of the conspiracy would be liable for the harm caused by
the predicate acts committed by the other conspirators.  As
noted by Judge Buchmeyer:

> Under RICO, one co-schemer is liable for the
> other co-schemers' predicate acts.  Indeed,
> upon joining a fraudulent conspiracy, each
> defendant becomes liable for the prior
> conduct of the earlier conspirators, and
> remains liable for the subsequent conduct of
> the other conspirators.

Cadle Co., 779 F.Supp. at 400.

    Next Bainer contends that Plaintiffs have not proved their
mail fraud allegations because there was "no evidence that what
was represented by Bainer in his letters was false." (Bainer
Mem. p. 18)  Plaintiffs need not, however, show that a mailing
in furtherance of an overall fraudulent scheme itself contained
a misrepresentation.

For a mail fraud or a wire fraud allegation[3], a Plaintiff need not plead or prove that the mailing or interstate wire communications, in and of themselves, contained any misrepresentations. See Carpenter v. United States, 484 U.S. 19, 27 (1987); Baisch, 346 F.3d at 374; Cadle Co., 779 F.Supp. at 400 (citing cases at n. 50). Rather, all that is necessary is that the mail or interstate telephone lines be a part of the execution of the overall fraudulent scheme. See Schmuck v. United States, 489 U.S. 705, 710-12 (1989); see, also, United States v. Finney, 714 F.2d 420, 423 (5th Cir.1983); United States v. Green, 494 F.2d 820, 823-24 (5th Cir.1974); Sun Savings, 825 F.2d at 196. Accordingly, even "'innocent' mailings -- ones that contain no false information -- may supply the mailing element." Schmuck, 489 U.S. at 715. Further, whether the Defendant's use of the mail and interstate wires was part of an overall fraudulent scheme "is a question of fact inappropriate for resolution before trial." R.A.G.S. Couture (need full cite), 774 F.2d at 1354-55. See, also, United States v. Lane, 474 U.S. 438, 452-53 (1986); United States v. Tony, 598 F.2d 1349, 1353-54 (5th Cir.1979). As recently noted by the Supreme Court:

---

[3]     The elements necessary to establish violations of the mail fraud and wire fraud statutes are essentially identical; hence, courts apply identical analyses to both statutes. See Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 257 (2d Cir.2004); Cadle Co., 779 F.Supp. at 399 n. 37.

> Under our interpretation, a plaintiff could, through a [RICO] §1964(c) [civil damage] suit for a violation of §1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962.

Beck v. Prupis, 529 U.S. 494, 506-07 (2000).

Finally, a plaintiff does not have to prove full knowledge of all of the details of the conspiracy, but only that each defendant was aware of the general nature of the conspiracy and that the conspiracy extended beyond the defendant's individual role. Zichettello, 208 F.3d at 99. See, also, Baisch, 346 F.3d at 376-77. The summary judgment evidence shows that there was a conspiracy orchestrated by Flanagan to hide, transfer and otherwise shield his assets from the judgment claims of Plaintiffs, and that it was foreseeable for the United States mails and interstate wire communications to be used in connection with that scheme. As in Baisch, Plaintiffs have presented a genuine question as to Bainer's knowledge of the racketeering enterprise and his willingness to promote it. See Baisch, 346 F.3d at 374. Accordingly, Bainer's motion for summary judgment should be denied.

Bainer also contends that Plaintiffs have "failed to plead bankruptcy fraud with the particularity as required under Fed.R.Civ.P. 9(b). (Bainer Mem. p. 15) Bainer, once again, is

wrong.  As noted by the Court in its July 3, 2003 ruling on Flanagan's motion to dismiss:

> The allegations in this case are that Flanagan fraudulently transferred a portion of his assets to others prior to filing bankruptcy and that he did so in order to keep those assets out of the bankruptcy estate and away from his creditors.  The second amended complaint further alleges that Flanagan filed false bankruptcy accounts in connection with his Title 11 proceeding.  Taken as true, these allegations are sufficient to establish that Flanagan engaged in racketeering activity for purposes of RICO.

(7/3/03 Ruling on Flanagan's Motion to Dismiss p. 9)  Plaintiffs have plead their bankruptcy fraud claims with sufficient particularity to put the Defendants on fair notice of the nature of Plaintiffs' claims.  See Quaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990); Update Traffic Systems v. Gould, et al., 857 F.Supp. 274, 281 (E.D.N.Y.1994); Center Cadillac v. Bank Leumi Trust Company of New York, 808 F.Supp. 213, 228 (S.D.N.Y.1992); Corwin v. Marney, Orton Investments, 788 F.2d 1063, 1068 n. 4 (5th Cir.1986); Cadle Co., 779 F.Supp. at 396.

### C.  For A RICO Fraudulent Transfer Case, Plaintiffs Need Not Allege Detrimental Reliance On Any Alleged Misrepresentations

Bainer also contends that Plaintiffs cannot prove their mail fraud and wire fraud allegations against him because Plaintiffs cannot show that they relied to their detriment on

any misleading mail or wire communications that were provided by Bainer to Plaintiffs.  (Bainer Mem. pp. 18-24)  Bainer, however, has overlooked the recent Second Circuit decision in Ideal Steel which held that if the RICO plaintiff was the intended target of the defendant's racketeering activity, the RICO plaintiff need not show that it detrimentally relied on any misleading mailings or interstate wire communications by the defendants.  373 F.3d at 254 & 256.  As noted by the Second Circuit:

> [T]he principle governing the present case is that where a complaint contains allegations of facts to show that the defendant engaged in a pattern of fraudulent conduct that is within the RICO definition of racketeering activity and that was intended to and did [cause harm to the plaintiff], the complaint adequately pleads proximate cause, and the plaintiff has standing to pursue a civil RICO claim.

Id. at 263.

In Summit Properties Inc. v. Hoechst Celanese Corp., 214 F.3d 556 (5th Cir.2000) the Fifth Circuit stated the general rule (cited by the Defendants) that

> when civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a commonsense liability limitation.

Id. at 562.

The Fifth Circuit in <u>Summit Properties</u> also recognized the exception to the general rule (as exists here) where a plaintiff need not allege or prove detrimental reliance on any alleged misrepresentation:

> [I]n <u>Holmes</u> [<u>v. Securities Investor Protection Corp</u>., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed. 2d 532 (1992)], the Court left open the possibility that the customers of an insolvent brokerage might recover under RICO for losses stemming from a series of fraudulent brokerage transactions despite the fact that those customers did not in any sense "rely" on a misrepresentation. <u>See</u> 503 U.S. at 272 n. 19, 112 S.Ct. 1311.
>
> In that situation, the fraudulent brokerage transactions imposed immediate risks on the brokerage's customers by increasing the likelihood of the brokerage's insolvency, even if the conspirators did not intend such risks to fall on those customers through their sham transactions.

<u>Summit Properties</u>, 214 F.3d at 561 n. 22.  The Fifth Circuit then went on to note:

> Nevertheless, when an action poses a high and foreseeable risk on a third party, we may view the resulting injury as deliberate for the purpose of liability. . . . In that sense, the brokerage customers [in <u>Holmes</u>] may be seen as direct and contemporaneous victims of the fraudulent scheme and within the scope of the already noted exception.

<u>Id</u>.

This RICO-fraudulent transfer case is the type of case that falls squarely within the exception noted in <u>Holmes</u> and confirmed by the Fifth Circuit in <u>Summit Properties</u>.  Here the

risk of injury to Plaintiffs did arise as a direct and contemporaneous result of the Defendants' fraudulent conduct. Indeed, Plaintiffs were the intended target and intended victims of the Defendants' fraudulent transfer scheme. See Baisch, 346 F.3d at 374-75.

Accordingly, for this RICO fraudulent transfer case, Plaintiffs need not allege or prove detrimental reliance on any alleged misrepresentations made by Bainer in his various mailings. Therefore, Bainer's Motion for Summary Judgment should be denied.

### D. Plaintiffs Need Not Show That Bainer Personally Benefited From His Wrongful Conduct

In addition, Bainer argues that Plaintiffs cannot state a RICO claim against them because they, supposedly, did not benefit from Flanagan's fraudulent scheme to hide, transfer or otherwise shield Flanagan's assets from the claims of Plaintiffs. (Bainer Mem. pp. 22-23) The Supreme Court, however, has ruled that RICO liability can be imposed against a co-conspirator even if the co-conspirator did not personally benefit from the wrongful conduct. See National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994).

**E.   Summary Judgment Is Not Appropriate On The
Question Of Interstate Wire Communications**

Further, Bainer contends that Plaintiffs' wire fraud
allegations are inadequate because Plaintiffs failed to allege
that the wire communications between Fasano and Bainer crossed
state lines. (Bainer Mem. p. 25) The unchallenged allegations
in the Second Amended Complaint, however, show interstate wire
communications (2AC ¶80.3), and Bainer has failed in his burden
to show that the wire communications did not, in fact, cross
state lines. See Ideal Steel, 373 F.3d at 265. Accordingly,
summary judgment is not appropriate on the question of
interstate wire communications. (Id.)

**F.   Plaintiffs Have Standing Under §1962(b)**

Next Bainer alleges that Plaintiffs do not have standing
under §1962(b) because Plaintiffs supposedly have not
established an "acquisitional" injury to themselves from
Bainer's wrongful conduct. (Bainer Mem. pp. 25-27) Bainer is
wrong.

First, for Plaintiffs' RICO conspiracy claims against
Bainer under §1962(d), Plaintiffs need not show that Bainer,
himself, personally engaged in conduct in violation of §1962(b).
See Beck, 529 U.S. at 506-07. See, also, United States v.
Persico, 832 F.2d 705, 714 (2d Cir. 1987); DeFalco, 244 F.3d at
306. And second, Plaintiffs have in fact shown an injury

stemming from the acquisition or maintenance of control over Flanagan's financial empire -- the §1962(b) enterprise -- and not simply injuries resulting from the commission of the underlying predicate acts.  (Px L ¶8; Px 175; Px H)

### G. __Plaintiffs Have Standing Under §1962(c)__

Bainer contends that he cannot be held liable for RICO violations because he simply acted as an attorney providing legal advice to his client, T&P.  (Bainer Mem. pp. 28-30) Bainer is wrong.

Bainer does not cite any summary judgment evidence to support his argument.  Indeed, the summary judgment evidence, shows that Bainer acted as co-conspirator and provided illegal advice to the fellow members of that conspiracy.  As noted by this Court in connection with Bainer's Motion for Reconsideration:

> While the court agrees with the defendant that an attorney violates no rule of law by simply providing legal advice and services to his clients, the amended complaint alleges conduct going far beyond that of simply furnishing legal services.  In particular, the amended complaint alleges that Bainer was a member of an <u>association-in-fact</u> constituting the RICO enterprise (amended complaint at ¶82.2) and in this capacity: (1) <u>willfully</u> <u>disobeyed</u> the court's property turn-over order and organized to keep certain stock certificates beyond the reach of the court; (2) <u>knowingly</u> <u>misrepresented</u> to the court that certain settlement proceeds belonging to Flanagan

> were wages and hence beyond the reach of
> creditors; and (3) participated in a
> <u>fraudulent</u> <u>scheme</u> to transfer Flanagan's
> assets for the purpose of defeating the
> claims of creditors. In the court's view,
> the alleged conduct crosses the line from
> providing legal services to conducting,
> operating and conspiring with an alleged
> RICO enterprise. . . . Further, the court
> is of the opinion that the amended complaint
> sufficiently alleges that Bainer
> participated in a pattern of racketeering
> activity involving mail fraud and wire
> fraud.

(May 16, 2002 Order)

The summary judgment evidence, and the reasonable inferences therefrom, prove Plaintiffs' RICO conspiracy allegations against Bainer. (Px 72 p. 2 & Pxs 18, 19, 23, 27, 28, 32, 56, 66, 67, 70, 118, 129, 135 & 167) Accordingly, Plaintiffs have presented sufficient facts to show a genuine question as to Bainer's knowledge of the racketeering enterprise and his willingness to promote it. <u>See</u> <u>Baisch</u>, 346 F.3d at 376-77. Therefore, Bainer's Motion for Summary Judgment should be denied.

## H.   <u>Plaintiffs Have Standing Under §1962(d)</u>

In addition, Bainer claims that since Plaintiffs do not have a §1962(b) or §1962(c) claim against Bainer, Plaintiffs cannot assert a RICO conspiracy claim against Bainer under §1962(d). Bainer, again, is wrong.

Plaintiffs have asserted -- and Bainer has not contested -- valid claims against Flanagan for violations of §1962(b) and §1962(c).  As noted by this Court

> The second amended complaint alleges that Flanagan and others willfully and knowingly committed various acts over a period of time in order the defraud Flanagan's creditors. As addressed previously, it also adequately alleges that Flanagan's acts constituted a pattern of racketeering activity.  Finally, the second amended complaint alleges that Flanagan was the lead conspirator in the entire scheme and that he and the other defendants agreed to shield his assets. Examining the second amended complaint in it entirety and viewing the facts in a light most favorable to the plaintiffs, the second amended complaint adequately alleges a civil RICO conspiracy under §1962(d).

(Ruling pp. 23-24)  Further, the Supreme Court has ruled that:

> a [RICO] plaintiff could, through a [RICO] §1964(c) [civil damage] suit for a violation of §1962(d) sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962.

Beck, 529 U.S. at 506-07.  Accordingly, Bainer's Motion for Summary Judgment should be denied.

### I.    Plaintiffs Have Adequately Alleged And Proved The Requisite Pattern Of Racketeering Activity

The pattern requirement under RICO was thoroughly discussed by this Court in its 7/3/03 Ruling on Flanagan's Motion to Dismiss. (Id. pp. 14-18)  In that Ruling, the Court concluded that:

The second amended complaint alleges that several persons, including friends, family members and various legal entities allegedly created by Flanagan, schemed together to defraud various financial institutions. The predicate acts supporting this scheme took place over several years, but within a ten-year period. Viewing the second amended complaint in a light most favorable to the plaintiffs, it sufficiently alleges closed-ended continuity by setting forth a series of related predicate acts extending over a substantial period of time that was within the statutory time frame. The second amended complaint also alleges that the "continuing custodianship" of Flanagan's assets involves "a distinct threat of repetition continuing indefinitely into the future" since the enterprise is "dedicated to hiding and shielding and continuing the custodianship of Flanagan's assets." Taken as true and drawing all reasonable inferences therefrom, the second amended complaint sufficiently alleges open-ended continuity. Consequently, under either rationale, the second amended complaint adequately sets forth a pattern of racketeering activity as defined in §1961(5).

(Ruling pp. 18-19)  None of the Defendants have challenged, by summary judgment motion, Plaintiffs' RICO allegations against Flanagan.  Accordingly, Plaintiffs' RICO allegations against Flanagan remain disputed factual matters to be resolved upon the evidence introduced at trial.  See Landry, 901 F.2d t 426, 430 & 431.

Bainer contends that Plaintiffs cannot demonstrate the existence of a RICO pattern of wrongful conduct because his

individual actions, standing alone, are not sufficiently related, and his individual conduct does not constitute either closed-ended continuity or open-ended continuity. Bainer is wrong.

First, the focus for a RICO conspiracy claim against Bainer under §1962(d) is not limited to his individual conduct, but rather on the pattern of wrongful conduct practiced by the entire group of co-conspirators. See Beck, 529 U.S. at 506-07; United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987); DeFalco, 244 F.3d at 306.

Further, Bainer has not challenged the fact that Flanagan's conduct is sufficiently related and constitutes both closed-ended continuity and open-ended continuity, as found by this Court in its 7/3/03 Ruling. (Id. pp. 14-18) Accordingly, the relatedness of Flanagan's conduct and the continuity of that conduct remain disputed factual matters to be resolved upon the evidence introduced at trial. See Landry, 901 F.2d at 426, 430 & 431.

Finally, the summary judgment evidence shows the existence of not only related wrongful conduct, but also closed-ended continuity and open-ended continuity to meet the pattern requirement under RICO. (See Chronology of Predicate Acts attached hereto as Px P) Accordingly, the jury would be

justified in finding that the pattern requirement of RICO has been met.

### (1)  **The Predicate Acts Are Sufficiently Related**

In <u>Cosmos Forms Ltd. v. Guardian Life Insurance Co</u>., 113 F.3d 308, 310 (2d Cir. 1997) the Second Circuit ruled:

> We reverse [summary judgment for the defendants] because the record presents disputed issues of material fact concerning the existence of a RICO pattern.
>
> * * *
>
> There is evidence in this case tending to show that the acts were not sporadic or isolated . . .. Evidence indicates that the purposes, results, participants, and methods of commission of the alleged acts are the same.

Here, the summary judgment evidence shows that the predicate acts/wrongful conduct of the Defendants were related in the sense that they involved the same or similar purposes, results, participants, victims and methods of commission, and did not involve isolated or sporadic events. (<u>See</u> Px P)  Accordingly, Plaintiffs have shown that the racketeering predicates are sufficiently related to support the RICO claims in this case. <u>See</u> <u>H.J</u>., 492 U.S. at 240; <u>Handeen</u>, 112 F.3d at 1353; <u>Cadle Co</u>., 779 F.Supp. at 398 nn. 32-33; <u>Landry</u>, 901 F.2d at 433; <u>George v. Blue Diamond Petroleum, Inc</u>., 718 F.Supp. 539, 551 (W.D.La.1999).

### (2)  **Plaintiffs Have Adequately Shown Continuity**

Further, Plaintiffs have adequately alleged both open-ended continuity (short term related wrongful conduct with a threat of continuing into the future) and closed-ended continuity (long-term related wrongful conduct over a fixed and closed period of time).  As noted by the Second Circuit in <u>Cosmos</u>:

> A relationship to show the existence of a pattern is indicated by temporal proximity of the acts, by common goal, methodology, and their repetition . . .. The requirement of continuity is met since the unlawful acts recurred with regularity over at least fifteen months, and the open-ended activity stopped only when [the plaintiffs started to investigate the defendants' conduct].

> *  *  *

Summary judgment was improvidently granted. 115 F.3d at 310.  Further, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes, are also relevant in determining whether closed-ended continuity exists.  <u>See</u> <u>GICC Capital Corp. v. Technology Fin. Group, Inc</u>., 67 F.3d 463, 467 (2d Cir. 1995).  Upon trial, the jury would be justified in finding closed-ended continuity. (<u>See</u> Px P)

In addition to proving that the RICO defendants engaged in interrelated wrongful conduct, "[t]o establish a RICO pattern it must be shown that the predicates themselves amount to, <u>or</u> that

-27-

they otherwise constitute a threat of, continuing racketeering activity." H.J., 492 U.S. at 240 (emphasis added). The continuity requirement for a RICO claim can be met by introducing evidence to show (a) long term related wrongful conduct; or (b) short term related wrongful conduct which poses a threat of continuing wrongful activities. Id. For short term wrongful conduct, a threat of continuing wrongful activities can be shown either through (i) the nature of certain kinds of wrongful acts; or (ii) the nature of certain kinds of business enterprises. Id. at 242-43. See, also, Akin v. Q-L Investments, Inc., 959 F.2d 521, 533 (5th Cir.1992); United States v. Busacca, 936 F.2d 232, 237-38 (6th Cir.1991).

For short term wrongful activities (i.e., covering only "a few weeks or months", H.J., 492 U.S. at 242), a RICO plaintiff must show, in addition to the related wrongful conduct, the threat of continuing wrongful activities. Id. This threat of continuing wrongful activities can be shown either through the nature of the wrongful acts themselves, or through the nature of the business enterprise. Id. at 242-43.

As made clear by the Supreme Court in H.J., the nature of certain predicate acts themselves may pose the threat of continuing wrongful activities:

> A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. . . . Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity.

492 U.S. at 242.

In addition, the very nature of Flanagan's past wrongful conduct poses a distinct threat of continuing wrongful conduct. See Busacca, 936 F.2d at 237-38. Further, here the allegations of mail fraud, wire fraud and bankruptcy fraud in connection with the fraudulent transfers and "continuing custodianship" of Flanagan's assets (2AC ¶82.2) involve a distinct threat of repetition continuing indefinitely into the future, and thus supply the requisite threat of continuity. H.J., 492 U.S. at 242. Although the wrongful acts of the Defendants constitute long-term related wrongful conduct, the nature of the wrongful acts themselves also pose a threat of long-term wrongful conduct. Thus under the pleadings and the summary judgment evidence, Plaintiffs will be able to prove facts sufficient to meet the continuity requirement of a RICO pattern. See H.J., 492 U.S. at 250; Landry, 901 F.2d at 426.

Even if the nature of the wrongful acts themselves do not pose a threat of long term wrongful activities, the threat of continuity may be established by showing the relationship of the predicate acts to the nature of the defendant's business enterprise.  In addition to showing the nexus between the predicate acts and the more traditional criminal enterprise,

> [t]he continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise".

H.J., 492 U.S. at 243.

In DeFalco the RICO defendants contended that "the alleged scheme . . . was inherently finite and therefore did not pose a threat of repetition."  214 F.3d at 323.  The Second Circuit disagreed:

> [t]he record reveals sufficient evidence from which a reasonable jury could infer that the nature of the predicate acts committed by the . . . defendants implied a threat of continued criminal activity.
>
> * * *
>
> In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and the predicate acts are relevant. . . .  Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of

> continued criminal activity, and thus open-
> ended continuity.

*DeFalco*, 244 F.3d at 323.  As in *DeFalco*, the nature of the enterprise in this case involves inherently unlawful activities. Indeed, as noted by this Court:

> The second amended complaint also alleges
> that the "continuing custodianship" of
> Flanagan's assets involves "a distinct
> thread of repetition continuing indefinitely
> into the future" since the enterprise is
> "dedicated to hiding and shielding and
> continuing the custodianship over Flanagan's
> assets."  Taken as true and drawing all
> reasonable inferences therefrom, the second
> amended complaint sufficiently alleges open-
> ended continuity.

(Ruling pp. 17-18)

Under the pleadings and the summary judgment evidence, a threat of continuing wrongful activities could be established at trial by showing that the predicate acts committed by Flanagan and the other Defendants were a regular way of conducting or participating in the conduct of the RICO enterprise, the association-in-fact enterprise dedicated to the purpose of hiding and shielding and continuing the custodianship over Flanagan's assets.  See *H.J*., 492 U.S. at 250. Simply, under the pleadings, the summary judgment evidence, and the teachings of the Supreme Court in *H.J*., Plaintiffs will be able to prove the existence of a threat of continuing wrongful activities by Flanagan and the other Defendants. See *id*.; *Akin*, 959 F.2d at

533; <u>Ticor Title Ins. Co. v. Florida</u>, 937 F.2d 447, 450-51 (9th Cir.1991); <u>Ikuno v. Yip</u>, 912 F.2d 306, 309-19 (9th Cir.1990).

Further, continuity is a prospective determination, made at the time of the wrongful conduct, not in hindsight after the Defendants have gotten caught. <u>Cosmos</u>, 113 F.3d at 310 <u>Busacca</u>, 936 F.2d at 238; <u>Morrow v. Black</u>, 742 F.Supp. 1199, 1207 (E.D.N.Y.1990). As stated by the court in <u>Busacca</u>:

> An analysis of the threat of continuity cannot be made solely from hindsight. All racketeering activity must necessarily come to an end sometime. The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict.
>
> Rather, in the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred.

936 F.2d at 238. <u>See</u>, <u>also</u>, <u>DeFalco v. Bernas</u>, 244 F.3d 286, 323 (2d Cir.2001); <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512, 521-22 (2d Cir.1994); <u>First International Advisors</u>, 956 F.Supp. at 486; <u>Welch Foods, Inc. v. Moran</u>, 1996 WL 107130 at *6 (W.D.N.Y. Mar. 6, 1996); <u>Morrow v. Black</u>, 742 F.Supp. 1199, 1207 (E.D.N.Y. 1990).

Moreover, at the time the Defendants were assisting Flanagan with his fraudulent transfer scheme and aiding with the "continuing custodianship" over Flanagan's assets (2AC ¶82.2),

Flanagan had no intention of stopping even if he had met some intermediate goal. See DeFalco, 244 F.3d at 323-24. Indeed, the Bainer letters threatening a grievance against Plaintiffs' attorneys (2AC ¶63; Pxs 27, 28 & 29) -- which were part of an attempt to intimidate Plaintiffs' attorneys from investigating Flanagan's fraudulent transfers -- continued not only to February of 1999, but continued even after the filing of this suit. (See Pxs 31 & 32) See Tabas v. Tabas, 47 F.3d 1280, 1296 (3d Cir.1995).

In addition, Flanagan's bankruptcy filing was a further step in the plot. (2AC ¶¶70-72) In addition, the hiding of Flanagan's rental property income continued to at least until October of 2000. (2AC ¶68) Also, with the multiple schemes, multiple predicate acts, multiple participants and multiple victims as alleged in the Second Amended Complaint, closed-ended continuity can be shown even if the predicate acts were only committed over a relatively short period of time. See Azrielli, 21 F.3d at 521; Metromedia Company v. Fugazy, 983 F.2d 350, 369 (2d Cir.1992); Barsam v. Pure Tech Int., Inc., 864 F.Supp. 1440, 1450 (S.D.N.Y.1994).

Also, while Flanagan's bankruptcy filing may, at this time, prohibit Plaintiffs from claiming damages from Flanagan's pre-petition wrongful conduct, his bankruptcy filing does not serve

to erase the _evidentiary_ _impact_ of Flanagan's prior fraudulent conduct in order to show that Flanagan engaged in the requisite "pattern" of wrongful activities. Simply, the existence of a RICO pattern is an evidentiary issue which can be proved by showing that Flanagan and the other Defendants engaged in interrelated wrongful conduct of a sufficiently continuous nature, even is some of the predicate acts did not necessarily cause injury or harm to the plaintiff. _Marshall & Isley Trust Co. v. Pate_, 819 F.2d 806, 809-10 (7th Cir. 1987). _See_, _also_, _Bankers Trust_, 859 F.2d at 1103; _Turkish v. Kasenetz_, 27 F.3d 23, 27-28 (2d Cir. 1994); _Jones v. Childers_, 18 F.3d 899, 913-14 (11th Cir. 1994); _Ticor Title Ins. Co. v. Florida_, 937 F.2d 447, 450-451 (9th Cir. 1991).

The RICO statute authorizes a civil suit for damages by "[a]ny person injured in his business or property by reason of a violation of [§1962]." 18 U.S.C. §1964(c). In order to prevail, a RICO plaintiff must prove (1) that there was a pattern of wrongful conduct in violation of §1962 and (2) that the plaintiff was injured by reason of a violation of §1962. _Marshall & Isley Trust_, 819 F.2d at 809-10. By its statutory terms, under RICO there is a difference between proof of a _pattern_ of wrongful conduct by the defendant over a 10-year period of time (as permitted under 18 U.S.C. §1961(5)), and

proof that some of the defendant's wrongful conduct proximately caused plaintiff's damages. <u>Marshall & Isley Trust</u>, 819 F.2d at 809-10. Therefore, in establishing that the defendant's wrongful acts are "related" and sufficiently "continuous" to constitute a RICO "pattern", a plaintiff is not limited in his proof to predicate acts that caused injury or harm to the plaintiff. <u>Id</u>. <u>See</u>, <u>also</u>, <u>Zervas v. Faulkner</u>, 861 F.2d 823, 833 (5th Cir. 1988).

Accordingly, in proving that Flanagan engaged in a RICO pattern of wrongful conduct, Plaintiffs will be able to show that Flanagan engaged in numerous inter-related predicate acts over a 10-year period of time (18 U.S.C. §1961(5)), even if some of the prior wrongful conduct predated Flanagan's bankruptcy filing and did not necessarily cause the injury or harm that is at issue in this case. <u>Cf</u>. <u>Kenworthy v. Conoco, Inc.</u>, 979 F.2d 1462, 1467-68 (10th Cir. 1992) (prior settlement did not bar the jury's consideration of pre-release conduct in determining the defendant's violations of the Federal Wage Act for the claim at issue).

Finally, the determination of a RICO "pattern" is a question of fact for resolution by the trier of fact. <u>See</u> <u>Handeen</u>, 112 F.3d at 1353; <u>Landry</u>, 902 F.2d at 426 & 433; <u>Brant v. Schal Associates, Inc</u>., 854 F.2d 948, 952 (7th Cir.1988);

George, 718 F.Supp. at 551.  Here the jury would be justified in finding a RICO pattern.  (See Px P)  Accordingly, Bainer's Motion for Summary Judgment should be denied.

### Conclusion

Flanagan and the other Defendants have gotten caught in a complicated and sophisticated fraudulent transfer scheme designed to shield Flanagan's assets from the judgment claims of Plaintiffs.  While this is not the first case to pursue fraudulent transfer co-conspirators under RICO[4], the vigorous prosecution of this case to a final judgment just might help slow down the proliferation of fraudulent transfers.

The RICO statute was enacted to provide new remedies for old problems that had, for whatever reason, slipped (or slithered) between the cracks in the law.  As noted by the Second Circuit, Congress enacted RICO

> to deal with a broadly based, deeply rooted problem by establishing new prohibitions, enhanced sanctions, and new remedies to deal with the activities of those engaged in illegal practices.

Bankers Trust, 859 F.2d at 1103.  The facts surrounding Flanagan's fraudulent transfer scheme, as implemented by the Defendants and as detailed in the Second Amended Complaint and

---

[4]     See Handeen v. Lemaire, 112 F.3d 1339 (8th Cir.1997); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158 (2d Cir.1993); Bankers Trust Company v. Rhoades, 859 F.2d 1096 (2d Cir.1988); Gutierrez v. Givens, 989 F.Supp. 1033 (S.D.Cal.1997); and Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.Tex.1991).

as unearthed during discovery, are tailor-made for prosecution under RICO.

Based on the foregoing, Plaintiffs respectfully request that the Court overrule Bainer's Motion for Summary Judgment and permit this important case to proceed to trial.

Respectfully submitted,
ARMSTRONG LAW FIRM


DATED: February 15, 2005.    By_____
                                 F. Dean Armstrong
                                 Ct. Fed. Bar #CT22417
                                 1324 Dartmouth Road
                                 Flossmoor, IL 60422
                                 (708) 798-1599
                                 Fax (708) 798-1597

                                 Edward C. Taiman, Esq.
                                 SABIA & HARTLEY, LLC
                                 190 Trumbull Street
                                 Suite 202
                                 Hartford, CT 06103-2205
                                 (860) 541-2077
                                 Fax (860) 713-8944

                                 Attorneys for Plaintiffs
                                 The Cadle Company and
                                 D.A.N. Joint Venture,
                                 A Limited Partnership

## **<u>Certificate of Service</u>**

I certify that a correct copy of the foregoing instrument was faxed and mailed on February 15, 2005 to all defense counsel as shown on the attached Service List.

_____
F. Dean Armstrong