UNITE STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THE CADLE COMPANY and             :
D.A.N. JOINT VENTURE,             :        Case No.: 3:01 cv 531 AVC
A LIMITED PARTNERSHIP             :
                                  :
                                  :
v.                                :
                                  :
CHARLES A. FLANAGAN, ET AL.       :        March 2, 2005


**MOTION TO SEVER ACTION OR FOR SEPARATE TRIALS and**
**MOTION TO REFER ACTION TO BANKRUPTCY COURT**

The defendant and debtor Charles Atwood Flanagan ("Flanagan" or the "Debtor"), by and

through his undersigned counsel, moves this court for an Order severing the action filed by plaintiffs' the

Cadle Company and D.A.N. Joint Venture, L.P. (the "Plaintiffs") seeking a denial of the Debtor's

bankruptcy discharge pursuant to 11 U.S.C. § 727 from the Plaintiffs' action seeking damages under

the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961, et seq.) ("RICO").

Alternatively, the Debtor requests that the two actions be tried separately. Additionally, should the

motion to sever be granted, the Debtor requests that the action seeking a denial of the Debtor's

discharge be referred back to the United States Bankruptcy Court for the District of Connecticut. In

support of this motion, the Debtor states the following:

## I.    Background

On February 17, 1999 (the "Petition Date"), Flanagan filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). On January 16, 2003, the Debtor's case was converted to one under Chapter 7 of the Bankruptcy Code and Bonnie C. Mangan was appointed Chapter 7 Trustee. On April 14, 2003, the Plaintiffs filed an adversary proceeding with the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") seeking to deny the Flanagan's discharge pursuant Section 727 of the Bankruptcy Code (the "Objection to Discharge Action"). The Debtor filed an answer to the complaint on June 12, 2003.

On July 14, 2003, the Plaintiffs moved to withdraw the reference to the Bankruptcy Court, pursuant to Local Bankruptcy Rule 5011-1. By Order dated February 4, 2004, the District Court granted the motion to withdraw reference and simultaneously consolidated the Objection to Discharge Action with the RICO action already pending between the Plaintiffs, Flanagan and 12 others (the "RICO Action").

The RICO Action was commenced on or about April 4, 2001. Along with Flanagan, the Plaintiffs also named the following individuals and entities as party defendants: Lisa G. Flanagan (Flanagan's wife), Angela Cimino Burr (Flanagan's mother-in-law). MJCC Corp., MJCC Realty Limited Partnership, Socrates T. Babacus, Leonard A. Fasano (Flanagan's attorney), Fasano & Ippolito, Todd R. Bainer (counsel to Flanagan's former business), Todd R. Bainer, LLC, Stanley F. Prymas (Flanagan's former business partner), Thompson & Peck, Inc. (Flanagan's former business)

and Joseph Caporale (related to Flanagan through marriage) (collectively, the "RICO Defendants"). In

the RICO Action, the Plaintiffs claim that from 1992 to 1999, the RICO Defendants engaged in a

pattern of wrongful conduct, involving bankruptcy fraud, mail fraud and wire fraud, in violation of RICO

to allegedly prevent the Plaintiffs from collecting upon various judgments they hold against Flanagan. On

April 30, 2004, Flanagan filed a motion for summary judgment in the RICO Action and that motion was

granted on February 11, 2005. Accordingly, Flanagan is no longer a defendant in the RICO Action, but

remains a part of this case as a defendant in the Objection to Discharge Action.

Flanagan now seeks to sever the Objection to Discharge Action from the RICO Action

primarily because it would be unfair and prejudicial to him to try the two cases together now that he is

no longer a defendant in the RICO Action. Alternatively, Flanagan request that the trials of the two

matters be conducted separately. Additionally, should the motion to sever be granted, the Debtor

requests that the Objection to Discharge Action be referred back to the Bankruptcy Court. In this

motion, Flanagan will first address the issue of severance and then discuss whether the Objection to

Discharge Action should be referred back to the Bankruptcy Court.

## II.    Law and Argument

### A.    Motion to Sever

Rules 21 and 42 of the Federal Rules of Civil Procedure discuss severance and consolidation of

actions. Rule 21 provides that "parties may be dropped or added by order of the court on motion of

any party or of its own initiative at any stage of the action and on such terms as are just. Any claim

against a party may be severed and proceeded with separately." Rule 42(b) permits severing an action

"in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to

expedition and economy." See Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir.1984). The "application

of Rule 42(b) involves primarily the consideration of convenience and fairness, [while] that of Rule 21

also presupposes basic conditions of separability in law and logic." Spencer, White & Prentis, Inc. v.

Pfizer, Inc., 498 F.2d 358, 362 (2d Cir. 1974).

Rule 42(a) permits consolidation as a matter of convenience and economy in administration, but

does not merge the suits into a single cause, or change the rights of the parties, or make those who are

parties in one suit parties in another.  Johnson v. Manhattan R. Co., 289 US 479, 496-97 (1933). A

consolidation order does not freeze future conduct of litigation, so that if certain issues arise which

should be tried separately, separate hearings may be ordered and conducted. Kelly v. Greer, 295 F2d

18, 21 (3d Cir. 1961).

Recently, this Court issued a ruling listing factors to be considered in deciding a motion to sever:

> Considerations in granting such motions include (1) whether the issues involved
> are significantly different, (2) whether the issues will be tried before a jury or to
> the court, (3) whether the posture of discovery favors a single trial, (4) whether
> the evidentiary issues overlap; and (5) whether the party opposing the motion
> will be prejudiced.

Strychasz v. Maron Constr. Co., 2002 U.S. Dist. LEXIS 27339 (D. Conn. 2002) (citing Dallas v.

Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001); German by German v. Federal Home Loan

Mortgage Corp., 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995)). Each of these factors will be addressed

below.

(1) <u>Whether the Issues Involved Are Significantly Different</u>

The issues involved in the two cases are significantly different; in fact, there is virtually no overlap between the issues involved in the RICO Action as compared to the Objection to Discharge Action. First, the legal issues will be completely different since the RICO Action was commenced pursuant to 18 U.S.C. § 1962, while the Objection to Discharge Action was commenced pursuant to 11 U.S.C. § 727.

Further, there would be little overlap in the factual evidence to be presented in the two cases. While the RICO Action contains allegations of Flanagan's alleged bankruptcy fraud as predicate acts of the alleged conspiracy, now that Flanagan is no longer a defendant in the RICO Action evidence of the alleged bankruptcy fraud should no longer be included in the RICO Action. Count One of the Complaint in the Objection to Discharge Action is captioned "Objection to Discharge for Knowingly and Fraudulently Making A False Oath" lists fourteen incidences of alleged false oaths which the Plaintiffs assert Flanagan made. These fourteen incidences concern statements made in Flanagan's bankruptcy schedules, statements made at Flanagan's Bankruptcy Code Section 341 Meeting of Creditors and statements made at deposition Flanagan gave in connection with his bankruptcy case. Flanagan's statements in his bankruptcy schedules or while giving testimony during his bankruptcy case do not form a material portion of the alleged conspiracy at the center of the RICO Action. Accordingly, Count One of the Objection to Discharge Action has little or no factual overlap with the RICO Action.

Count Two of the Objection to Discharge Action alleges that Flanagan failed to satisfactorily explain his loss or deficiency of assets in connection with three rental properties he owned. While the

rental properties are discussed in the Complaint in the RICO Action, Flanagan's alleged failure to

explain his loss or deficiency of assets is hardly an important factual issue in the RICO Action. Plainly,

the legal and factual issues between the two actions have little in common.  Although the complaints in

both actions contain many similar paragraphs, severance should not be determined simply by the

Plaintiffs' stylistic decisions in drafting the two complaints.


   (2) <u>Whether the Issues Will Be Tried Before a Jury or To the Court</u>

   The trial in the RICO Action will be before a jury and is expected to take three or four weeks.

The Objection to Discharge Action will be tried to the Court, and if severed from the RICO Action,

should last (at most) one to three days. It must not be forgotten that Flanagan is a bankrupt and his

financial resources are extremely limited. Should the Objection to Discharge Action remain consolidated

with the RICO Action, Flanagan will be forced to endure substantial additional attorney's fees and

costs.  Further, the remaining RICO Defendants have four sets of lawyers, each of whom will be calling

and cross-examining witnesses, offering various documents into evidence while advancing different

defenses. In fact, one defendant, Stanley F. Prymas, has alleged a counterclaim against the Plaintiffs.

Requiring Flanagan to participate in possibly three extra weeks of trial would be extraordinarily unfair

and would run counter to the purposes of bankruptcy, to provide debtors with a fresh start.


   (3) <u>Whether the Posture of Discovery Favors a Single Trial</u>

   Discovery is complete in both actions. Nevertheless, the discovery which has been conducted

indicates that separate trials are warranted. A significant theme throughout discovery in the RICO

Action has been the remaining RICO Defendants' efforts to discover the circumstances surrounding the

Plaintiffs' acquisition of Flanagan's obligations to other lenders for which the Plaintiffs have sought to

collect, the amount paid for those obligations, and the means by which the Plaintiffs have sought to make

collection. Clearly, an important portion of the trial of the RICO Action will be concerned with this

issue. Just as clearly, however, is that these issues will not be relevant to the Plaintiffs' claims in the

Objection to Discharge Action. Additionally, the Plaintiffs have conducted extensive discovery in

connection with the remaining RICO Defendants which have little bearing as to whether Flanagan is

entitled to a bankruptcy discharge. Discovery conducted to date provides little basis for trying these

cases together.


(4) Whether the Evidentiary Issues Overlap

The Debtor is not aware of any unusual evidentiary issues which will be present in either case.


(5) Whether the Party Opposing the Motion Will Be Prejudiced

It is difficult to see how the Plaintiffs will be prejudiced by granting this motion. As argued

above, the factual and legal issues in the two cases are primarily distinct. Evidence necessary for the

Objection to Discharge Action will have little relevance in the RICO Action and vice versa; accordingly,

if separated, the length of the trial in the RICO Action will likely be reduced by the length of the trial in

the Objection to Discharge Action. Indeed, the RICO Action would be simplified by severing the

- 8 -

actions since the Court would not have to be concerned with whether particular evidence should be

heard by the Court only or by the Court and the jury.

(6) <u>Other Factors-Prejudice to the Movant</u>

Since Flanagan is no longer a defendant in the RICO Action, it would be extremely prejudicial to require that he remain a part of that case. In the RICO Action, Flanagan's relatives, business associates, attorneys and others are being accused of illegal and otherwise improper conduct over approximately seven years. The Plaintiffs are accusing prominent attorneys and business people of egregious conduct. Naturally, the remaining defendants in the RICO case will vehemently oppose the Plaintiffs' accusations, and in the process, may seek to shift blame to Flanagan. Indeed, it may be in the remaining RICO Defendants' best interests to do so. Should any of the remaining RICO Defendants adopt that course, then Flanagan will be forced to defend himself from both the Plaintiffs and other defendants in order to obtain his bankruptcy discharge. Clearly that would not be consistent with the notions of a fair trial.

Even if other defendants do not seek to shift blame onto Flanagan, should the Plaintiffs show that other defendants actually acted improperly or dishonestly, such conduct could be unfairly imputed to Flanagan. It is entirely possible that certain alleged misconduct by others took place without Flanagan's knowledge or consent. Furthermore, certain alleged misconduct by others may have no relevance as to whether Flanagan is entitled to a discharge. Nevertheless, Flanagan could be unfairly "tarred by the same brush." Flanagan cannot have a fair hearing of his right to a discharge in bankruptcy if the inquiry is joined with the RICO trial of twelve other individuals and entities.

B.     Motion to Refer Action to Bankruptcy Court

District courts have original jurisdiction over all civil proceedings arising under the Bankruptcy

Code. 28 U.S.C. § 1334(b). "Each district court may provide that any or all cases or claims arising in

or relating to bankruptcy matters may be referred to the bankruptcy judges for the district. In this

district, by standing order issued pursuant to 28 U.S.C. § 157(a), the district court refers all cases

arising under Title 11 to the bankruptcy court." O'Neill v. New England Road, Inc., 2000 WL 435507,

*2 (D. Conn. 2000).

In determining whether to return the Objection to Discharge Action to the Bankruptcy Court,

the same factors would seem to control as that used to determine whether to withdraw the reference.

"A district court considering whether to withdraw a reference should first evaluate whether the claim is

core or non-core since it is upon this issue that questions of efficiency and uniformity will turn." In re

Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993), cert. dismissed, 511 U.S. 1026 (1994). A

core proceeding is one that invokes a substantive right provided by the Bankruptcy Code; a non-core

proceeding involves disputes over rights that have little or no relation to the Bankruptcy Code, that do

not arise under the federal bankruptcy law, and that would exist in the absence of a bankruptcy case.

Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP, 201 B.R. 635, 639 (S.D.N.Y. 1996).

Hearing core matters in a district court could be deemed inefficient, as the bankruptcy court generally

will be more familiar with the facts and issues. In re Orion Pictures Corp. at 1101.

Next, the court should weigh other factors such as the presence of a jury demand, efficient use

of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, and the

prevention of forum shopping. Id. These other factors must be considered regardless of the classification

of a matter as core or non-core, as that issue is not wholly determinative. In re Houbigant, 185 B.R.

680, 686 (S.D.N.Y. 1995). Nevertheless, whether the claim is core or non-core, is the most important

of the factors for consideration. In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996).

In its February 2, 2004 Order withdrawing the reference in the Objection to Discharge Action,

this Court determined that the Objection to Discharge Action is a core proceeding. The reference was

nonetheless withdrawn because this Court concluded that evidence relating to the Objection to

Discharge Action, the Debtor's alleged false oaths and his alleged failure to satisfactorily explain his loss

or deficiency of assets, "will be heard in the RICO action that is already pending here." As argued

above, now that Flanagan is no longer a defendant in the RICO Action, evidence of his alleged false

oaths and his alleged failure to satisfactorily explain his loss or deficiency of assets will no longer be a

component of the RICO Action.

Looking next at other factors normally reviewed in the withdrawal of reference context,

uniformity of bankruptcy administration and the efficient use of judicial resources are promoted by

returning this case to the Bankruptcy Court. The Bankruptcy Court regularly deals with

nondischargeability issues. Indeed, at least one district court within the Second Circuit has indicated that

nondischargeability should be determined by the bankruptcy court "because of its greater expertise in

such matters." In re Junod, 1991 WL 33257 (Bankr. N.D.N.Y 1991). Chief United States Bankruptcy

Judge Albert Dabrowski has been intimately involved in the Debtor's bankruptcy case since its

inception in February 1999.[1] Judge Dabrowski has already presided over numerous adversary

proceedings and other contested hearings in the Debtor's case. While the District Court is certainly

capable to hear and rule on all issues contained in the Objection to Discharge Action, having a

bankruptcy judge rule on core issues can only promote efficiency of judicial resources and uniformity of

bankruptcy administration.

Finally, unlike the RICO Action, the Objection to Discharge will not be tried to a jury. If the

two matters remain consolidated, the Court would be forced to make factual findings in the Objection to

Discharge Action which could, in theory, be inconsistent with the jury's findings in the RICO Action.

Trying the cases together would be, at best, unwieldy and unusually expensive for Flanagan. At worst, a

combined trial could deprive Flanagan of a fair trial in the Objection to Discharge Action. Returning the

Objection to Discharge Action to the Bankruptcy Court makes abundant sense for reasons of

efficiency, practicality, judicial economy and fairness.

---

[1] For example Judge Dabrowski has already presided over the three adversary proceedings between the parties: Charles A. Flanagan v. The Cadle Company, Adv. Pro. No. 99-3053 (An action to recover a preferential transfer which is currently on appeal.); The Cadle Company v. Charles Flanagan, Adv. Pro. No. 01-3056 (An earlier action in which Cadle sought to have the Debtor's discharge revoked. Cadle voluntarily dismissed this action after the Debtor filed a motion to dismiss.); and, The Cadle Company and D.A.N. Joint Venture, A Limited Partnership v. Charles Flanagan, et al., Adv. Pro. No. 02-03031 (An action in which the Plaintiffs sought a determination that a constructive trust or judicial lien should be imposed, in their favor, on the Debtor's stock in Thompson & Peck, Inc. and Flanagan/Prymas Insurance Group, Inc. The Debtor prevailed and the Plaintiffs have appealed.).

## Conclusion

The discharge provided by Section 727 of the Bankruptcy Code is arguably the most important component of relief provided to debtors and objections to discharge should be liberally construed in favor of a debtor and against a creditor who challenges a debtor's right to discharge. In re Gill, 159 B.R. 348, 352 (Bankr. M.D.Fla. 1993); see also In re Carletta, 189 B.R. 258, 262 (Bankr. N.D.N.Y. 1995). It is counterintuitive, therefore, for an objection to discharge trial to be combined with a complex and lengthy RICO trial, especially now that Flanagan is not a defendant in the RICO Action.

For all of these reasons, the Debtor and Defendant Charles A. Flanagan respectfully requests that:

1) The Objection to Discharge Action be severed from the RICO Action; and,

2) The Objection to Discharge Action be referred back to the Bankruptcy Court; or, in the alternative,

3) The trial of the Objection to Discharge Action be conducted separately from the RICO Action.

CHARLES A. FLANAGAN,

By: _____
Douglas S. Skalka (CT 00616 )
James A. Lenes (CT 10408)
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Telephone No.: 203-821-2000

- 14 -

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent, via United States mail, postage prepaid,

on March 2, 2005 to the following parties of record:

Edward C. Taiman, Jr.
Sabia & Hartley, LLC
190 Trumbull Street, Suite 202
Hartford, CT 06103-2205

F. Dean Armstrong
639 Perth Ave.
Flossmoor, IL 60422

David G. Hill
June Sullivan
Halloran & Sage
One Goodwin Sq.
225 Asylum St.
Hartford, CT 06103

Peter C. Schwartz, Mary Anne Charron
R. Bradley Wolfe, Gerald R. Swirsky
Gordon, Muir & Foley
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106-5123

Barbara L. Cox
William F. Gallagher
Gallagher & Calistro
1377 Boulevard, Po Box 1925
New Haven, CT 06509-1925

Todd R. Bainer
71 Cedar St.
Branford, CT 06405

- 15 -

Bradley K. Cooney
69 Island Avenue
Madison, CT  06443


By: _____
     James A. Lenes (CT 10408)
     Neubert, Pepe & Monteith, P.C.
     195 Church Street, 13th Floor
     New Haven, CT  06510
     Telephone No. (203) 821-2000