```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
```

**THE CADLE COMPANY** and           §        No. 3:01CV531(AVC)
**D.A.N. JOINT VENTURE,**
**A LIMITED PARTNERSHIP,**          §

    Plaintiffs,               §

vs.                                 §

**CHARLES A. FLANAGAN, et al.**     §        February 16, 2005

    Defendants.               §

### PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT FASANO'S MOTION FOR SUMMARY JUDGMENT

This is the Response of Plaintiffs The Cadle Company ("TCC") and D.A.N. Joint Venture, A Limited Partnership ("DJV") to the Motion for Summary Judgment submitted by Defendants Leonard A. Fasano and Fasano & Ippolito (n/k/a Fasano, Ippolito & Lee, L.L.C.) (collectively, "Fasano").

### Introduction

Most defendants don't confess.  Rather, when a fraudfeasor is implicated in a scheme to defraud, the excuses start flowing like warm caramel over a rotten apple.  While cross examination at depositions can strip away some of the sweet veneer, the best way to find out whether or not the core is rotten is to look at what was said and what was done before the suit was filed.

Here the pre-suit documents outline a concerted effort by the Defendants to hide, transfer and otherwise shield the substantial assets of Charles A. Flanagan ("Flanagan") from the

judgment claims of Plaintiffs. As shown by the following, Flanagan orchestrated a complex and complicated scheme to defraud the Plaintiffs out of the benefit of their judgments against him, and in the process enlisted the support of his friends, his family and his business associates -- who are the other Defendants named in this suit.

While most defendants won't confess their own wrongful conduct, sometimes -- as in this case -- one co-conspirator will turn on the other co-conspirator. Here Flanagan's co-conspirators have admitted that:

(1) "[T]he evidence developed during discovery . . . shows that Flanagan was desperately attempting to conceal his assets and evade his creditors." (Prymas/T&P MSJ Mem. p. 9)

(2) Flanagan's conduct in transferring and pledging his T&P stock to various individuals "delayed, hindered or defrauded [Plaintiffs'] execution on [Flanagan's T&P] stock." (Bainer MSJ Mem. p. 34)

(3) "It was Flanagan who transferred the T&P stock to Babacus and others to avoid execution by the plaintiffs." (Prymas/T&P MSJ Mem. p. 28)

(4) "As the . . . facts adduced during discovery amply demonstrate, the . . . fraud that caused Plaintiffs' inability to collect [on the judgment debts owed by Flanagan] was [committed by] Flanagan himself." (Prymas/T&P MSJ Mem. p. 28)

(5) It was "Flanagan's fraudulent efforts to evade his creditors" that caused

        "Plaintiffs' lack of collection success . . .." (Prymas/T&P MSJ Mem. p. 28)

(6)  "Flanagan, himself, was the source of the fraud upon which Plaintiffs suffered damages . . .." (Prymas/T&P MSJ Mem. p. 20)

(7)  "The only thing that delayed, hindered or defrauded execution on [Flanagan's] stock was Flanagan's personal transfer and pledge of the stock to various individuals." (Bainer MSJ Mem. p. 34)

Indeed, Prymas has admitted that Flanagan has committed bankruptcy fraud. (Px O)

Finally, as noted by Judge Buchmeyer in a very similar case,

> [u]nder RICO one co-schemer is liable for the other co-schemers' predicate acts. Indeed, upon joining a fraudulent conspiracy, each defendant becomes liable for the prior conduct of the earlier conspirators, and remains liable for the subsequent conduct of the other conspirators.

Cadle Co. v. Schultz, 779 F.Supp. 392, 400 (N.D.Tex. 1991).

### I.   Fasano Has Failed To Meet His Summary Judgment Burden

Pursuant to Rule 56(c), Fed.R.Civ.P., summary judgment is only appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In deciding whether a genuine issue of material fact has been raised as to an issue, this Court "must construe the facts in the light most favorable to the non-moving party [Plaintiffs] and must resolve all ambiguities and draw all reasonable inferences against the movant [Defendants]." Baisch v. Gallina, 346 F.3d 366, 371-72 (2d Cir. 2003). See, also, Cosmos Forms, Ltd. v. Guardian Life Insurance Co., 113 F.3d 308, 310 (2d Cir. 1997).

Further, numerous allegations in Plaintiffs' Second Amended Complaint ("2AC") went unchallenged by the Defendants. Accordingly, the allegations in Plaintiffs' Second Amended Complaint not refuted by competent summary judgment evidence remain unresolved fact questions to be resolved at trial. See Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 426, 430 & 431 (5th Cir. 1990).

Finally, even if the underlying facts are undisputed, but the reasonable inferences which can be drawn therefrom are in dispute, summary judgment is inappropriate.

As shown by the following, Bainer has failed in his summary judgment burden, and Bainer's Motion for Summary Judgment should be denied.

## II.  Summary Of Facts

Please see the Summary of Facts set forth at pp. 5-53 of Plaintiffs' Amended Consolidated Response to Defendants' Motion

for Summary Judgment filed herein on September 9, 2004, which is hereby incorporated by reference as if set forth verbatim.

### III. Plaintiffs Have Stated A Valid Conspiracy Claim Against Fasano For Violations Of §1962(d) Of RICO

**A. Introduction**

Fraudulent transfers are wrong. Whether dressed-up in estate planning clothes, or deceitfully designed to circumvent a court order against transfers of assets, fraudulent transfers frustrate the collection of legitimate debts that a court has ordered to be paid. Not only do fraudulent transfers harm creditors, they breed disrespect for the judicial process as well.

Here we have a wealthy debtor, Flanagan, who conspired with numerous family members, business associates and controlled entities to fraudulently transfer his substantial assets in an effort to defeat the judgment claims of Plaintiffs. As shown by the detailed allegations in Plaintiffs' Second Amended Complaint, and as proven by the evidence gathered through discovery, the Defendants have gotten caught in a complicated and sophisticated scheme designed to shield Flanagan's assets from the judgment claims of Plaintiffs. The Defendants should be held accountable for all of the harm that they have caused.

In order to discourage the proliferation of fraudulent transfers, there must be some deterrent effect to the law. If

the only remedy for a fraudulent transfer is to simply unwind a transaction that was fraudulently implemented in the first instance, fraudulent transfers will not only continue, they will proliferate and grow in number.  Every debtor on the run and his or her co-conspirators will smugly transfer asset after asset because (a) they might not get caught; and (b) even if they did, they would only have to unwind a transaction that they shouldn't have done in the first place.  And that's a gamble that every crook would take, and that's no deterrence at all.

    Not surprisingly, the essence of this case is a conspiracy -- a conspiracy among Flanagan and the other Defendants to hide, transfer and otherwise shield the substantial assets of Flanagan from the judgment claims of Plaintiffs.  Because (1) the Defendants engaged in the underlying wrongful conduct of mail fraud, wire fraud and bankruptcy fraud (referred to as "predicate acts") in connection with their fraudulent transfer scheme, and (2) their related wrongful conduct both (a) constitutes continuous wrongful conduct and (b) poses a threat of continuing wrongful activities (referred to as "continuity"), Plaintiffs have brought suit under the civil damage provisions of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§1961-1968), the dreaded "RICO" statute.

    We realize and appreciate that many district court judges have (to put it mildly) a very strong aversion to civil RICO

suits.  After all, the statute's too complicated; it federalizes state causes of action; and the label "racketeer" just doesn't seem to fit for a civil business dispute.[1]

But the statute is on the books; the Supreme Court has repeatedly struck down artificial barriers to the prosecution of a civil RICO action[2]; and there are certain patterns of wrongful conduct which can and should be prosecuted under RICO.  See Handeen v. Lemaire, 112 F.3d 1339 (8th Cir.1997); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158 (2d Cir.1993); Bankers Trust Company v. Rhoades, 859 F.2d 1096 (2d Cir.1988); Gutierrez v. Givens, 989 F.Supp. 1033 (S.D.Cal.1997); Gutierrez v. Givens, 1 F.Supp.2d (S.D.Cal.1998); and Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.Tex.1991).  This is just such a case.

---

[1] The term "racketeer" and the Act's acronym, "RICO", have caused many a district court judge to wince.  However, a "racketeer" is one who engages in a "racket".  A "racket" is a "business that obtains money or property through fraud ---; an illegal or dishonest practice." The American Heritage Dictionary of the English Language (Morris Ed. 1970).  Regardless, perhaps there would have been less judicial resistance to a remedial act geared toward patterns of fraudulent conduct had the Act been given a more innocuous name.

[2] See Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98 (1985) ("RICO is to be read broadly.  This is the lesson not only of Congress' self-consciously expansive language and overall approach, . . . but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'"); H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 248-49 (1989) ("Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways."); National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994)  As stated by the Fifth Circuit in R.A.G.S. Couture, Inc. v. Hyatt, 774 F.2d 1350, 1353 (5th Cir.1985), "[t]he Supreme Court's Sedima decision cautions us not to place barriers before RICO plaintiffs that are not found in the text of the statute."  See, also, Sun Savings & Loan Association v. Dierdorff, 825 F.2d 187, 194 (9th Cir.1987) ("Although RICO cases might be pesky, courts should not erect artificial barriers -- metaphysical or otherwise -- as a means of keeping RICO cases off the federal dockets."); Sutliff, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 654 (7th Cir.1984).

### B. For A RICO Conspiracy Claim, Plaintiffs Need Not Show That Fasano, Personally, Acquired An Interest In A RICO Enterprise

Fasano contends that Plaintiffs have failed to establish that Fasano, himself, acquired an interest in or control over the RICO enterprise -- Flanagan's financial empire.  (Fasano Mem. pp. 11 & 13)  Plaintiffs need not, however, show that Fasano, personally, acquired control over Flanagan's financial empire to state a RICO conspiracy claim against Fasano under §1962(d).  See Beck v. Prupis, 529 U.S. 494, 506-07 (2000); United States v. Presisco, 832 F.2d 705, 714 (2d Cir. 1987); DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001).

Rather, to state a RICO conspiracy claim against Fasano, Plaintiffs need only show that Fasano provided knowing and substantial assistance to Flanagan in the implementation or execution of Flanagan's fraudulent scheme to hide, transfer or otherwise shield his assets from the judgment claims of Plaintiffs.  See Baisch, 346 F.3d at 376-77.  Plaintiffs have made that showing.  (Px P; Px A(8) pp. 95-96; Px A(1) pp. 120-21; Px A(4) p. 184; Pxs 105; Px A(1) pp. 197-99; Px 186 p. 2 ¶¶5 & 10; Px 188 p. 3 #9; Pxs 1, 2, 3, 6, 24, 25, 25A, 25B, 62, 90, 130, 133, 188, 193 & 195; Pxs 18, 19, 56, 58, 67, 70, 72 & 175; Px A(1) pp. 15, 22-23, 26, 58-60, 62-64, 77-78, 93-95, 99, 100-01, 120-21, 123-27, 128-30, 133-34, 160-66 & 219-20; Px A(5) p. 28; Px A(8) pp. 4 & 96; Px C pp. 39, 49-52, 66-67, 67-70, 94,

144, 153-54 & 156; Px B pp. 22-24, 29, 32-33, 60, 63, 105, 107-08, 115-16, 118-19, 146-48, 152-57, 187-89 & 211; Px E pp. 152-53; Px J pp. 153-56)

### C. Plaintiffs Have Established That Fasano Participated In The Operation Or Management Of A RICO Enterprise

Next Fasano claims that Plaintiffs have failed to establish that Fasano participated in the operation or management of a RICO enterprise because he simply provided legal advice to his client. (Fasano Mem. pp. 14-17)  The summary judgment evidence, however, shows that there are disputed issues of fact as to whether or not Fasano participated in the operation or management of the RICO enterprise at issue in this case -- control over Flanagan's financial empire.

Under Second Circuit precedent, the operation or management test is a relatively low hurdle for a RICO plaintiff to clear. Baisch, 346 F.3d at 377.  Further, the issue of whether a RICO defendant "operated or managed" the affairs of an enterprise is essentially a question of fact. See United Stated v. Allen, 155 F.3d 35, 42-43 (2d Cir. 1998).

Here the summary judgment evidence shows Fasano's knowing and active participation in the conspiracy to hide, transfer and otherwise shield Flanagan's assets from the judgment claims of Plaintiffs.  (Px A(8) pp. 95-96; Px A(1) pp. 120-21; Px A(4) p. 184; Pxs 1, 2, 3, 6, 24, 25, 25A, 25B, 62, 90, 130, 133, 188,

193 & 195; Pxs 18, 19, 56, 58, 67, 70, 72, 105 & 175; Px A(1) pp. 15, 22-23, 26, 58-60, 62-64, 77-78, 93-95, 99, 100-01, 120-21, 123-27, 128-30, 133-34, 160-66 & 219-20; Px A(5) p. 28; Px C pp. 39, 49-52, 66-67, 67-70, 94, 144, 153-54 & 156; Px B pp. 22-24, 29, 32-33, 60, 63, 105, 107-08, 115-16, 118-19, 146-48, 152-57, 187-89 & 211; Px E pp. 152-53; Px J pp. 153-56)

As far as Fasano's claim that he did not develop the "strategy" to invoke the Fifth Amendment to prevent Flanagan from testifying about the location of his stock (Fasano Mem. p. 18), the summary judgment evidence shows that Fasano was, indeed, the architect of that strategy. (Pxs 105; Px A(1) pp. 197-99; Px 186 p. 2 ¶¶5 & 10; Px 188 p. 3 #9)

### D. Plaintiffs Have Asserted A Valid RICO Conspiracy Claim Against Fasano Under §1962(d)

Next Fasano contends that Plaintiffs have failed to establish a §1962(d) RICO conspiracy claim against him because he simply provided legal services to Flanagan in connection with Flanagan's efforts to hide, transfer or otherwise shield his assets from the judgment claims of Plaintiffs.  The summary judgment evidence, however, shows that there are disputed issues of fact on Fasano's knowing and active participation in Flanagan's fraudulent conspiracy. (Px A(8) pp. 95-96; Px A(1) pp. 120-21; Px A(4) p. 184; Pxs 105; Px A(1) pp. 197-99; Px 186 p. 2 ¶¶5 & 10; Px 188 p. 3 #9; Pxs 1, 2, 3, 6, 24, 25, 25A, 25B,

62, 90, 130, 133, 188, 193 & 195; Px A(1) pp. 15, 22-23, 26, 58-60, 62-64, 77-78, 93-95, 99, 100-01, 120-21, 123-27, 128-30, 133-34, 160-66 & 219-20; Px A(5) p. 28; Px C pp. 39, 49-52, 66-67, 67-70, 94, 144, 153-54 & 156; Px B pp. 22-24, 29, 32-33, 60, 63, 105, 107-08, 115-16, 118-19, 146-48, 152-57, 187-89 & 211; Px E pp. 152-53; Px J pp. 153-56)

Here the summary judgment evidence shows that Fasano acted as a co-conspirator and provided improper and, indeed, illegal advice, to several members of Flanagan's fraudulent conspiracy. As noted by this Court in connection with Fasano's Motion for Reconsideration:

> In the amended complaint it alleges that Fasano was a member of an association-in-fact (amended complaint at ¶82.2) and in this capacity: (1) lied to this court for Flanagan about an IRS investigation to shield Flanagan from disclosing asset information; (2) worked with Flanagan to create a fraudulent scheme to hide Flanagan's income from creditors; and (3) fabricated a bogus stock pledge agreement to shield Flanagan's stock from a turn-over order from the court.  In the court's view, the allegations allege conduct "cross[ing] the line between traditional rendition of legal services [to] active participation and directing the enterprise". . . .. Accordingly, the amended complaint sufficiently alleges a RICO cause of action against Fasano.

(May 7, 2002 Order)

The summary judgment evidence, and the reasonable inferences therefrom, prove Plaintiffs' RICO conspiracy

allegations against Fasano.  (Px A(8) pp. 95-96; Px A(1) pp. 120-21; Px A(4) p. 184; Pxs 105; Px A(1) pp. 197-99; Px 186 p. 2 ¶¶5 & 10; Px 188 p. 3 #9; Pxs 1, 2, 3, 6, 24, 25, 25A, 25B, 62, 90, 130, 133, 188, 193 & 195; Px A(1) pp. 15, 22-23, 26, 58-60, 62-64, 77-78, 93-95, 99, 100-01, 120-21, 123-27, 128-30, 133-34, 160-66 & 219-20; Px A(5) p. 28; Px A(8) pp. 4 & 96; Px C pp. 39, 49-52, 66-67, 67-70, 94, 144, 153-54 & 156; Px B pp. 22-24, 29, 32-33, 60, 63, 105, 107-08, 115-16, 118-19, 146-48, 152-57, 187-89 & 211; Px E pp. 152-53; Px J pp. 153-56)

Accordingly, Plaintiffs have presented sufficient facts to show a genuine question as to Fasano's knowledge of the racketeering enterprise and his willingness to promote it.  See Baisch, 346 F.3d at 376-77.  Therefore, Fasano's Motion for Summary Judgment should be denied.

    **E.    Plaintiffs Have Shown That Fasano Engaged In RICO Predicate Acts**

Fasano claims that Plaintiffs have not presented any evidence that Fasano engaged in any RICO predicate acts.  The summary judgment evidence, however, is to the contrary.  (Pxs 1, 2, 3, 6, 24, 25, 25A, 25B, 62, 90, 130, 133, 188, 193 & 195)

    **F.    Plaintiffs Have Shown That They Have Been Damaged By The Defendants' Wrongful Conduct**

Fasano contends that since Plaintiffs were paid in full in connection with the federal court judgment in Cadle I, they cannot show any damages.  The summary judgment evidence,

however, shows that although the face amount of the federal court judgment in <u>Cadle I</u> was paid in full, the Plaintiffs were never reimbursed their attorneys' fees for engaging in their efforts to execute on Flanagan's assets while the Defendants were foisting upon Plaintiffs the misrepresentations about the location of Flanagan's assets.  (Px L ¶8)

Further, Plaintiffs have over $1 million in judgment and other debt claims against Flanagan, and have not recovered on those claims because of the Defendants' conspiracy with Flanagan to delay, hinder or defraud Plaintiffs in their efforts to execute on Flanagan's assets.  (Px L ¶8; Pxs 20 & 175; Px G(1) pp. 44-45; Px H pp. 60-61, 84, 86, 89, 90 & 93-95)  Simply, had the Defendants responded truthfully to Plaintiffs' discovery requests, and had they not assisted Flanagan in the furtherance of his wrongful scheme, Plaintiffs would have been able to execute on Flanagan's assets towards satisfaction of the over $1 million in judgment and other debt claims that the Plaintiffs held against Flanagan.  (Px L ¶8)

## Conclusion

Flanagan and the other Defendants have gotten caught in a complicated and sophisticated fraudulent transfer scheme designed to shield Flanagan's assets from the judgment claims of Plaintiffs.  While this is not the first case to pursue

fraudulent transfer co-conspirators under RICO[3], the vigorous prosecution of this case to a final judgment just might help slow down the proliferation of fraudulent transfers.

The RICO statute was enacted to provide new remedies for old problems that had, for whatever reason, slipped (or slithered) between the cracks in the law.  As noted by the Second Circuit, Congress enacted RICO

> to deal with a broadly based, deeply rooted problem by establishing new prohibitions, enhanced sanctions, and new remedies to deal with the activities of those engaged in illegal practices.

Bankers Trust, 859 F.2d at 1103.  The facts surrounding Flanagan's fraudulent transfer scheme, as implemented by the Defendants and as detailed in the Second Amended Complaint and as unearthed during discovery, are tailor-made for prosecution under RICO.

Based on the foregoing, Plaintiffs respectfully request that the Court overrule Fasano's Motion for Summary Judgment and permit this important case to proceed to trial.

---

[3] See Handeen v. Lemaire, 112 F.3d 1339 (8th Cir.1997); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158 (2d Cir.1993); Bankers Trust Company v. Rhoades, 859 F.2d 1096 (2d Cir.1988); Gutierrez v. Givens, 989 F.Supp. 1033 (S.D.Cal.1997); and Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.Tex.1991).

                                        Respectfully submitted,
                                        ARMSTRONG LAW FIRM

DATED: February 16, 2005.     By_____
                                        F. Dean Armstrong
                                        Ct. Fed. Bar #CT22417
                                        1324 Dartmouth Road
                                        Flossmoor, IL 60422
                                        (708) 798-1599
                                        Fax (708) 798-1597

                                        Edward C. Taiman, Esq.
                                        SABIA & HARTLEY, LLC
                                        190 Trumbull Street
                                        Suite 202
                                        Hartford, CT 06103-2205
                                        (860) 541-2077
                                        Fax (860) 713-8944

                                        Attorneys for Plaintiffs
                                        The Cadle Company and
                                        D.A.N. Joint Venture,
                                        A Limited Partnership

### Certificate of Service

    I certify that a correct copy of the foregoing instrument was faxed and mailed on February 16, 2005 to all defense counsel as shown on the attached Service List.

                                        _____
                                        F. Dean Armstrong