### *1UNITED STATES DISTRICT COURT*

### *DISTRICT OF CONNECTICUT*

---

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL | : | Case No. 3:01-CV 531 |
| Plaintiff | : | (AVC) |
| | : | |
| VS. | : | |
| | : | |
| CHARLES A. FLANAGAN, ET AL | : | MARCH 18, 2005 |
| Defendants | | |

---

### REPLY IN SUPPORT OF PRYMAS AND THOMPSON & PECK'S MOTION FOR SUMMARY JUDGMENT

**I.     Prymas and T&P are entitled to summary judgment on plaintiffs' civil RICO conspiracy claim.**

Plaintiffs have expressly limited their claims against Prymas and T&P to a claim for RICO conspiracy under 18 U.S.C. §1962(d). Plaintiff's RICO conspiracy claim against Prymas and T&P must fail as a matter of law, because under the law of this Circuit a civil plaintiff cannot recover for injury allegedly arising solely out of a RICO conspiracy. Beck v. Prupis, 529 U.S. 494 (2000); First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

In Beck,  the Supreme Court concluded that an injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action for a civil RICO conspiracy. Id., 505.

> [W]e conclude that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO, . . . is not sufficient to give rise to a cause of action under §1964(c) for a violation of §1962(d).  As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury that caused by *any* act in furtherance of a conspiracy that might have caused the

1

> plaintiff injury.  Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an *act* that is analogous to an "ac[t] of a tortious character," . . . *meaning an act that is independently wrongful under RICO.*

Id., 505-06 (citation omitted, last emphasis added).

The Supreme Court's decision in Beck reaffirms the rule in this Circuit that there can be no liability for a RICO conspiracy without a substantive RICO violation. First Capital Management, 385 F.3d 182; Discon, Inc. v. NYNEX Corp., 93 F.3d] 1055,1064 (2d Cir. 1996), vacated on other (antitrust) grounds, 525 U.S. 128] (1978): Schmidt v. Fleet Bank, 16 F.Supp. 2d 340, 353-54 (S.D.N.Y. 1998), abrogation on other grounds recognized by Feinberg v. Katz, No. 99 CIV. 45(CSH), 2002 WL 1751135 (S.D.N.Y., July 26, 2002); Katzman v. Victoria's Secret Catalogues, 167 F.R.D. 649, 658 (S.D.N.Y. 1996); Hecht v. Commerce Clearing House, Inc., 897 F. 2d 21, 25 (2d Cir. 1990)(cited with approval in Beck, 529 U.S. 500).

The evidence demonstrates that Prymas and T&P's involvement in the change in tax classification of the stipulated judgment monies and in the restrictive stock legend were for legitimate purposes and were not acts of racketeering within the purview of RICO.  Consequently, no civil liability under RICO may be imposed on either Prymas or T&P.  They are entitled to summary judgment.

**A.  No Civil RICO liability may be imposed on either Prymas or T&P for the change in tax classification of the judgment monies payable to Flanagan.**

The evidence shows that Prymas and T&P role in the change in tax treatment of the payments due to Flanagan under the terms of the stipulated judgment was solely for legitimate purposes, based on the advice of an accountant and the corporate attorney.  The change in tax classification from 1099 income to wages was not racketeering activity for which civil liability under RICO may be imposed.

In the first place, plaintiffs have no standing to challenge the change in tax classification of the judgment payments to Flanagan. The purpose of a tax classification is to establish taxpayer's (and employer's) liability for payment of federal income tax.  The tax classification is not made for the benefit of third parties, such as creditors.   Although plaintiffs assume that they had some vested right in the tax treatment of the judgment monies, and that once one classification was selected, the classification could not be changed, they have cited no legal authority for either assumption.

Plaintiffs had no protected interest or right in the tax treatment of the stipulated judgment monies. Plaintiffs cannot seriously claim that T&P or Prymas had any superior duty to plaintiffs, or any of Flanagan's creditors, with respect to the tax treatment of the stipulated judgment monies.  T&P's obligation was to apply the most correct tax classification to the monies.  That obligation extended only to the United States government and to Flanagan.

Prymas's primary duty was to act in the best interests of T&P. See Arrigoni v. Adorno, 129 Conn. 673, 681 (1943). His agreement to change the tax classification to a more correct one, based on accounting advice, fulfilled his superior duty to the corporation, which superceded any conflicting duty he may have had to Flanagan's creditors. The mere fact that the change in tax treatment may have had *some* effect on Cadle's ability to execute[1] on the judgment monies does not transform a legitimate change in tax classification, based on accounting advice, into an illegal act, much less a RICO predicate act. No Civil RICO liability may be imposed on either Prymas or T&P for the change in the tax classification of the judgment monies payable to Flanagan.

There is ample authority that the payments pursuant to the stipulated judgment were properly classified as wages. Flanagan had sued Prymas to recover *inter alia* compensation from T&P. Flanagan v. Prymas, Complaint, Ex. B hereto. The sums payable to Flanagan were to equalize his compensation from T&P with Prymas. PX 21, ¶2, 12. The payments to Flanagan of past due compensation under the stipulated judgment were properly considered wages for federal income tax purposes. E.g., United States v. Cleveland Indians Baseball Company, 532 U.S. 200, 121 S.Ct. 1433, (2001)(settlement payments representing back wages subject to FICA and FUTA taxes according to year in which the wages were in fact paid); Hemelt v. United States, 122 F.3d 204, 210 (4th Cir. 1997)(settlement payments representing wage-based relief should be treated as wages).

---

[1] It should be noted that the change in tax treatment did not place the monies beyond plaintiffs' reach. Once classified as wages, Cadle could have, but did not seek to garnish Flanagan's wages.

Prymas and T&P were entitled to rely on the advice of professionals in choosing one of the alternative tax treatments available for the judgment payments to Flanagan. See Streber v. Commissioner of Internal Revenue, 138 F.3d 216, 222-23 (5th Cir. 1998)(no penalty could be assessed for selection of one of alternative tax treatments based on professional advice). No civil RICO liability may be imposed on them for the application of an appropriate tax treatment of the judgment monies, based on the advice of an accountant and counsel.

**B. There is no evidence that Prymas or T&P agreed to further Flanagan's scheme to evade his creditors.**

There is no evidence to demonstrate that Prymas/T& P agreed to and acted to further the asserted goal of the alleged conspiracy -- to defraud Flanagan's creditors, an element that is essential to plaintiffs' conspiracy claim. It is well settled that a civil RICO plaintiff must demonstrate that the defendant "'knew about and agreed to facilitate the scheme'" to defraud Flanagan's creditors, specifically the plaintiffs. Baisch v. Galina, 346 F.3d 366, 377 (2d Cir. 2003)(quoting Salinas v. United States, 522 U.S. 52, 65 (1997)). Cadle's reliance on Salinas and Zichitello, both criminal RICO conspiracy cases is misplaced. The Supreme Court has established that criminal conspiracy principles do not extend to civil RICO liability. In Beck, the Supreme Court expressly rejected Salinas as providing the appropriate rule in evaluating claims for civil liability for private injury under RICO:

> Petitioner suggests that we should look to criminal, rather than civil, common-law principles to interpret the [civil RICO]

statute.  We have turned to the common law of criminal conspiracy to define what constitutes a violation of §1962(d), see <u>Salinas v. United States</u> [citation omitted], a mere violation being all that is necessary for criminal liability.  *This case, however, does not present simply the question of what constitutes a violation of §1962(d), but rather the meaning of a civil cause of action for private injury by reason of such violation.*

529 U.S. 501 n. 6 (emphasis added).

There is no evidence that Prymas or T&P either knew about Flanagan's schemes or agreed to defraud his creditors.  In fact, Bainer informed Fasano, in no uncertain terms, that T&P would not agree to do anything improper in regard to Flanagan's creditors and expressly disavowed any plan to defraud creditors.[2]  PX 18, 23.  By December of 1998, it is clear that neither Flanagan or Fasano had informed Bainer, Prymas or Thompson & Peck about developments in the creditors' collection actions against Flanagan.[3]  PX 18.

There is no evidence to support plaintiffs' claims that Prymas/T&P had any specific knowledge of Flanagan's efforts to avoid Cadle's collection efforts.

[2] "While I am Corporate Counsel, no officer of the Corporation, except over my strong and vocal objection, is going to participate in anything which even smells like a conspiracy to defraud Charlie's creditors." PX 18.  "I will counsel Thompson & Peck, Inc. to do anything *legally proper* that will assist Charlie with his current financial difficulties …. but the main purpose of my letter is to make sure you understand that if we don't have a chance to speak, you guys need to be affirmatively taking action to protect Charlie from the execution *if there is a legitimate reason for doing so.*  Otherwise I have no option but to tell Thompson & Peck, Inc. that they will have to pay over the funds due Charlie, to the creditor – which we would prefer not to do if there is a *legally proper, legitimate and appropriate basis* for such refusal." PX 23 (emphasis added).
[3] "I'm very concerned for the Corporation about what has been going on that you and/or Charlie decided to omit from disclosure to me or the other Board of Directors.  This is a legitimate concern for the Corporation, whether you agree with it or not.  … That you and Charlie are unwilling to voluntarily provide information to the Corporation, so that it can understand what is going on and so that I can make sure the other officers – Mr. Prymas and Mr. Buckmir – do not violate *any court orders that may be out there … [T]hey don't know* what's going on behind the scenes and what representations have been made to third parties, and *what court orders have entered* [regarding Charlie's 50% interest] which arguably affect the Corporation and the officers – ultimately." PX 18, emphasis added.

6

Plaintiffs' claims are conclusory and the evidence they cite does not show that Prymas/T&P had knowledge of any of the procedural events in Cadle I, including the turnover order .  For example, plaintiffs cite PXs 196 p. 7 and 192 in support of their denial that Prymas/T&P did not know of the turnover order.  Plaintiff. Local Rule 56(a)(2). Statement ¶28.  However, neither exhibit shows that T&P ever received the Court's order.  Exhibit 196 is Cadle's motion for turnover with a **proposed** order attached.  Exhibit 196 is evidence that  Cadle served T&P with a copy of its motion with a proposed order[4], but is not evidence that T&P was served notice of the Court's ruling on the motion.  The Court did not sign Cadle's proposed order but entered its ruling in the margin of the motion. Cadle I, Ruling on Motion for Turnover Order, Docket item #23, 4/13/98. Exhibit 192 is a letter from Prymas's personal attorney, William Gallagher about making the terms of the confidential stipulated judgment in Flanagan v. Prymas available to Judge Covello for in camera review.  There is not a shred of evidence in that letter that either Attorney Gallagher or Prymas knew of the Court's turnover order.  Plaintiffs' contention that Exhibit 197 shows Prymas or T&P received notice of the Court's turnover order is a blatant misrepresentation to the Court.

Moreover, the fact that plaintiffs have admitted (as they must) that Judge Covello granted Flanagan's motion to reconsider the turnover order in Cadle I  is significant. Plaintiffs' Local Rule 56a(2) Statement in Opposition to Bainer Motion for Summary Judgment, ¶17.  The granting of the motion for reconsideration necessarily means that the turnover order was not in effect until September 23, 1998, the date the judge denied the substantive relief requested in the motion.

---

[4] In fact, the Court did not utilize the proposed order and instead ruled by an endorsement in the margin of Cadle's motion. Cadle I, Ruling on docket item # 23.

See National Union Fire Insurance Co. v. Employee Staffing of America, Inc., Docket No. CIV. 3:93 CV 2504 EBB, Civ. 590 CV 246 EBB, 2001 WL 107 8807 (D. Conn. July 9, 2001)*2 (effect of granting motion for reconsideration was to reopen the recommended ruling); see also Community Party of Indiana v. Whitcomb, 414 U.S. 441, 445 (1974)(motion for reconsideration suspends finality of order for which reconsideration is sought; denial of motion restores the order). The restrictive legend had been placed on the stock in August, 1998, *before* the turnover order became effective. As a factual matter, the legend was not placed on the stock in violation of the Court's turnover order, because it was placed while the turnover order was suspended by persons who were not aware of the order.

There is no indication on PX 25 that Flanagan signed the claim of exemption *on behalf of T&P* as the plaintiffs claim. Flanagan did not sign the exemption claim form as an officer or other representative of T&P. Rather, Flanagan signed as the "Judgment debtor," not as a representative of T&P. It was Flanagan's *individual* representation that T&P had none of Flanagan's property other than wages, and not a representation by T&P.

Prymas had no knowledge that Flanagan made such a representation at any time before it was filed with the court. See Prymas' memo to Bainer, February 4, 1998, PX 69. Moreover, because Prymas did not know about Flanagan's intended response to the exemption, he could not have authorized Bainer to either approve or modify Flanagan's unilateral claim of exemption. In fact, Prymas expressed surprise to Bainer that the representation had been

made. PX 69.  There is absolutely no evidence to support plaintiffs' speculative contention that Flanagan's objection was either approved or modified by Bainer.

Because there is no evidence that either Prymas or T&P agreed to or acted in furtherance of the goal of the alleged conspiracy, they are entitled to summary judgment on plaintiff's RICO conspiracy claim.


**II.      Prymas and T&P are entitled to summary judgment on plaintiffs' aiding and abetting claims.**

Subsequent to the filing of the instant motion for summary judgment by defendants Prymas and T&P, this Court granted the defendants' motion to compel answers to their interrogatory numbers 6 and 7, requesting that the plaintiffs "[i]dentify each and every RICO predicate act you contend was committed" by defendants Prymas and T&P. Ruling on defendants' motion to compel, dated June 18, 2004. On September 7, 2004, the plaintiffs identified "each and every RICO predicate act" committed by defendants Prymas and T&P as follows:

> the provision of knowing and substantial assistance to Defendant Charles A. Flanagan ("Flanagan") in connection with (a) the settlement proceeds scheme - - the scheme to assist Flanagan in the recharacterization of the $75,000 in settlement proceeds so as to avoid Plaintiffs' execution efforts; and (b) the shifting stock scheme - - the scheme to assist Flanagan in the movement, restrictions on and pledging of his T&P stock so as to avoid Plaintiffs' execution efforts. In connection with each of the above schemes, Defendant T&P [and Prymas] knew or could reasonably have anticipated that the United States mail and/or interstate wires would be used in connection with the execution of those schemes.

Plaintiffs' Supplemental Responses to the First Set of Interrogatories Submitted by Defendants Stanley F. Prymas and Thompson & Peck, dated September 7, 2004, attached hereto as Exhibit A.

The "predicate acts" plaintiffs have articulated describe only a claim that the defendants aided and abetted Flanagan's alleged RICO violations. See Lippe v. Bairnco Corp., 218 B.R. 294, 304 (S.D.N.Y. 1998). In Lippe, the court held that an allegation that the defendants "'knowingly, intentionally or recklessly' assisted in affecting the Transactions . . . " stated a non-cognizable civil claim for aiding and abetting a RICO violation, a claim. Id. 303-04. There is no claim that defendants Prymas or T&P had any part in *directing* the affairs of the alleged RICO enterprise, and, consequently, no basis for imposing civil RICO liability on them. Id., 304. The plaintiffs' characterization of the so-called "predicate acts" Prymas and T&P are alleged to have committed fails to describe conduct that may serve as a basis for the imposition of civil RICO liability as a matter of law. See also Prymas – T&P Memorandum of Law in Support of Motion for Summary Judgment, docket item 222, at 17-18. Consequently, summary judgment should be entered in favor of both Prymas and T&P.

III.    **Imposing civil RICO liability on defendants for Flanagan's fraudulent acts violates policies informing RICO's civil remedies.**

Plaintiffs ask this Court to ignore well-settled policies underlying RICO's civil remedies by turning every fraudulent transfer case into a civil RICO case, "in order to discourage the proliferation of fraudulent transfers," rather than following established state law remedies for those torts.  Plaintiffs' Memorandum

of Law at 5-6. Plaintiffs' arguments turn RICO's policies on their head and should be rejected.

This Court has recognized that "Civil RICO is an unusually potent weapon —the litigation equivalent of a thermonuclear device". In re SmithKline Beecham Clinical Laboratories, Inc. Laboratory Test Billing Practices Litigation, 108 F.Supp.2d 84, 92 (D. Conn. 1999, Covello, *J*). In addressing a civil RICO claim, the "court's focus must be to ensure that RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetrate acts of racketeering". Id at 92-93. *"Courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."* Id at 93. "Further, in considering RICO claims, courts must attempt to achieve results consistent with Congress's goal of protecting legitimate businesses from infiltration *by organized crime*". Id at 93, n. 12. "[I]nvoking RICO's punitive, financially ruinous treble damage remedy could conceivably interfere with the very market force that RICO was designed to protect." Gruber v. Prudential-Bache Securities, Inc., 679 F. Supp. 165, 181 (D. Conn. 1987)(Cabranes, J.)(internal punctuation omitted). Even with all of the Plaintiffs' hybolic language, when it comes down to the facts, there is no evidence that supports any of the plaintiffs' RICO claims against Prymas or T&P, especially any claim based on a RICO conspiracy.

Plaintiffs' claims against Prymas and T&P in this matter demonstrate the danger of abuse of civil RICO remedies. "The Second Circuit has warned that 'the potentially broad reach of RICO poses a danger of abuse [through] attempts

to apply the statute to situations for which it was not primarily intended.'" <u>Morin II</u>,

835 F. Supp. 132.   The purposes of civil RICO liability is to deter *criminal*

conduct.   <u>Mathon</u>, 875 F. Supp. 995, 1001.   "The purposes of civil RICO liability

do not include deterrents of unlawful acts, not rising to criminal liability, for which

there are state and common law remedies."   <u>Id</u>., citing <u>Hecht v. Commerce</u>

<u>Clearing House, Inc</u>.  897 F. 2d 21 (2d Cir. 1990).

> [A]lleged RICO violations must be viewed with appreciation of the
> extreme sanctions it provides, so that actions traditionally brought
> in state courts do not gain access to treble damages and attorneys
> fees in federal court simply because they are cast in terms of RICO
> violations.

<u>Id</u>.

This case presents an abuse of civil RICO.  The plaintiffs have cast their

net too wide in seeking to hold defendants liable under RICO's draconian civil

remedies for Flanagan's attempts to shield his assets.

**IV.    Defendants adopt the arguments asserted by the Bainer and Fasano
defendants in support of their motions for summary judgment.**

Prymas and T&P adopt all arguments made by defendants Bainer and

Fasano in support of their motions for summary judgment, including arguments

filed in reply to plaintiffs' opposing papers.

**CONCLUSION**

The evidence demonstrates that Prymas and T&P's involvement in the

change in tax classification of the stipulated judgment monies and in the

restrictive stock legend were for legitimate purposes and were not acts of

racketeering within the purview of RICO.  In addition, there is no evidence to

show that they knew of, agreed to or acted in furtherance of Flanagan's goal of evading his creditors. No civil liability under RICO may be imposed on either Prymas or T&P consistent with RICO's purpose. They are entitled to summary judgment on plaintiffs' claims.

*Respectfully Submitted,*

THE DEFENDANTS,
Stanley F. Prymas
and Thompson & Peck, Inc.

BY: _____

BARBARA L. COX,
Federal Bar #ct08523
The Gallagher Law Firm
1377 Boulevard – P.O. Box 1925
New Haven, CT 06509
Tel: (203) 624-4165
Fax: (203) 865-5598

*CERTIFICATION OF SERVICE*

      This is to certify that a copy of the foregoing was mailed on the date above written to all counsel and *pro se* parties of record, namely:

F. Dean Armstrong, Esq.
1324 Dartmouth Road
Flossmoor, Ill. 60422

Edward C. Taiman, Esq.
Michael G. Albano, Esq.
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT 06103-2205

Todd R. Bainer, Esq.
P.O. Box 1092
Branford, CT 06405
Box 747

Mary Anne A. Charron, Esq.
Gerald R. Swirsky, Esq.
R. Bradley Wolfe, Esq.
Gordon, Muir & Foley
Hartford Square North
Ten Columbus Boulevard
Hartford, CT 06106

Douglas S. Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT 06510-2026

Bradley K. Cooney, Esq.
69 Island Avenue
Madison, CT 06443

David G. Hill
June Sullivan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Lisa G. Flanagan, *pro se*
230 Millbrook Road
North Haven, CT 06473

Paul Morgan Gaide, Esq.
713 Lovely Street
Avon, CT 06001

Richard Roberts, Esq.
Karen T. Gerber, Esq.
Amber J. Branciforte, Esq.
Nuzzo & Roberts, LLC
   One Town Center - P.O.

Cheshire, CT 06410

.

_____
BARBARA L. COX

14