# EXHIBIT A

## AFFIDAVIT OF CHARLES FLANAGAN

The undersigned being duly sworn hereby deposes and says:

1. I am over the age of eighteen (18) and believe in the obligation of the oath.

2. I make the statements freely and voluntarily without any promise or request for consideration.

3. I make this affidavit with respect to the defendants Leonard Fasano and Fasano Ippolito and Lee (hereinafter referred to as "Fasano").

4. There was never a "scheme" to withhold the $75,000.00 settlement proceeds. Fasano did not orchestrate or participate in any such scheme, he did not exercise any judgment or discretion as to how those proceeds were to be characterized, and he did not counsel Thompson & Peck, Inc. ("T&P") as to how it should characterize the proceeds.

5. I told Fasano that I believed the settlement proceeds should be characterized as wages, as those proceeds were intended to be equivalent to the monies my partner Stanley Prymas ("Prymas") received from T & P. The settlement proceeds represented monies that T & P owed me to balance monies already paid to Prymas, and which Prymas himself also classified as wages.

6. I asked Fasano to investigate this issue and determine if I could receive said monies as wages. I further told Fasano that my accountant had already agreed that the $75,000.00 should be characterized as wages and not as 1099 miscellaneous income in accordance with the rules of accounting.

7. Fasano did not advise or dictate the manner in which said settlement funds would be characterized, but, in fact, deferred to my accountant. In fact, he informed me that he and I should be guided by whatever determination my accountant made.

8. Shortly thereafter, my accountant, Andrew D'Agostino, wrote a letter indicating that said funds should be characterized as wages. At that point, Fasano directed my accountant to talk directly to the T&P accountant and determine if, in fact, T & P agreed with his assessment. T&P's accountant agreed with my accountant's assessment and the monies were characterized as wages, not 1099 income.

9. To my knowledge, Fasano did not try to influence the determination of either accountant. On the contrary, he told me that T & P was obligated to follow its accountant's determination, not my own. Therefore, if T&P's accountants had decided that the monies should have been classified as 1099 income, T & P would have been obligated to classify them as such.

10. In short, Fasano's only role in classifying the settlement proceeds was to contact my accountant, ask for a determination as to how the monies should be classified, and request that T & P classify them appropriately.

11. The checking accounts used to operate the rental properties on George Street, Howe Street, and Whitney Avenue were opened without Fasano's knowledge, consent, advice or help.

12. Fasano never advised, managed nor consulted with the undersigned regarding the operation of these properties or the rental payments associated with them.

13. To my knowledge, Fasano was unaware of the George Street mortgage for $94,200.00. He never advised me, helped me or instructed me on this mortgage.

14. There was an action pending known as <u>Cadle Company vs. Charles Flanagan</u> 3: 96-CV-02648 (AVC) (also known as "Cadle I") in which Cadle sought a judgment against the undersigned for a debt owed and Fasano represented me with respect to that matter.

15. After judgment, Cadle took steps to collect said judgment including the filing of a motion for turnover order, which was granted by the court.

16. In an effort to comply with the turnover order, Fasano filed a number of documents with the court regarding the whereabouts of my T&P stock, some of which unfortunately contained inaccurate information due to an apparent miscommunication between Fasano and me. Neither Fasano nor I intentionally provided any inaccurate information to the court.

17. For example, it appears that Fasano mistakenly understoodthat Sharon Demetropolous ("Demetropolous") had possession of my T&P stock. Apparently, Fasano understood that the stock was held by Demetropolous as a result of loans that she gave me personally. As a result, the Notice of Compliance (as well as an Amended Notice of Compliance) that Fasano filed on my behalf contained inaccurate information. Unfortunately, I did not notice these inaccuracies prior to the filing of these documents with the court. At the time, neither Fasano nor I knew that inaccurate information was being submitted.

18. Shortly after filing the Amended Notice of Compliance, it became apparent that errors had been made since the stock was not with Ms. Demetropoulos, but with Socrates Babacas, a man who lived out of state. As a result, Fasano prepared a Second Amended Notice of Compliance indicating that Babacas had possession of the stock.

19. As far as I know, Fasano had no knowledge where this stock was other than what I told him. He never advised me, counseled, suggested or directed me to move the stock in any fashion whatsoever. Fasano was only acting as my lawyer and was attempting to provide a truthful disclosure to the court as to location of the stock.

20. On or about March of 1998, the court, through Judge Covello, enjoined me from transferring any assets that I own.

21. This injunction came after I pleaded the Fifth Amendment against self-incrimination. As far as I know, prior to the hearing, Fasano had no knowledge that I was going to plead the Fifth Amendment nor did he discuss with me my decision to plead the Fifth Amendment.

22. After hearing of the court's injunction, Fasano explained to me the court's order and indicated that I was not allowed to transfer any asset whatsoever without receiving express permission from the court.

23. In further compliance with the court's order, Fasano gathered documents to be produced for an in camera inspection by Judge Covello and filed the same with the court.

24. Fasano did indeed supply certain documents to the court for an in camera review, although I have been informed that the findings in the decision denying Fasano's motion for summary judgment found otherwise.

25. At some point in time a restrictive legend was placed on the T&P stock certificates. As far as I know, Fasano had no knowledge of the restrictive legend being placed on the stock, and had no knowledge as to whether anyone signed the legend.

26. I never sought the advice of Fasano nor did I ever request advice from Fasano regarding the restrictive language on the stock certificate.

27. I did drop off to Attorney Ippolito a draft of T&P shareholder's agreement which contained a paragraph regarding the restrictive legend to be placed on the stock certificate. Said draft was an initial draft that, as far as I know, was not drafted by Fasano, nor, as far as I know, was he consulted or asked to give advice regarding this agreement.

28. Similarly, the bankruptcy schedules filed by Fasano were based solely upon the information I gave Fasano.

29. Fasano never advised me as to the valuations of T&P stock nor did he ever advise me as to what matters I should include or leave off the schedules. In fact, he had no reason to believe that the schedules were

inaccurate or incomplete as to my assets and debts, primarily because he had no idea what assets I owned.

30. Shortly after the initial filing of the bankruptcy, Fasano no longer acted as my bankruptcy lawyer.

31. I reviewed the bankruptcy filing before it was submitted and found it to be accurate to the best of my knowledge and understanding at the time.

32. In order to satisfy the judgment against me in the Cadle I case, my father agreed to lend me money to pay the judgment, but asked to have the T&P stock as security for the loan.

33. Fasano met with Judge Flanagan, the undersigned's father, to get the money to pay the judgment and to discuss the entering into of a security agreement involving my stock in T&P.

34. It is my understanding that both my father and Fasano were concerned not to violate Judge Covello's order and, as a result, the security agreement contained language regarding Judge Covello's order.

35. Since my father is a Judge in the New Haven Superior Court, the language was specifically written to ensure that this transaction did not violate Judge Covello's order by requiring that if Judge Covello determined that the security agreement violated his order, it would be void. This specific language was designed to ensure that Judge Covello's order was not violated.

37. After receiving the money from my father, the plaintiff's lawyer, Paul Gaide, refused to accept the payoff of the debt.

38. After Fasano consulted with Judge Covello's clerk, I understand that a telephone hearing took place wherein Fasano explained to the Court that he had the monies sufficient to pay off the debt but the plaintiff refused to accept the funds, claiming that the money came from my father and the stock was transferred in violation of Judge Covello's order.

39. I understand that Fasano informed Judge Covello, during the conference, of how I received the money from my father in exchange for the pledge of stock, and Judge Covello ordered that the money be filed with the federal court and further ordered Fasano to draft the appropriate pleadings.

40. I gave permission to Fasano to send the money, as directed by Judge Covello, where it stayed until the plaintiff's lawyer made the proper motion to accept the money.

41. I was informed that the plaintiff's lawyer, Paul Gaide, filed a motion with the court claiming that the undersigned and/or Fasano violated

the court's injunction regarding the transferring of my assets when the stock was pledged to my father and asked for Judge Covello to enter a contempt order. I understand that this court, through Judge Covello, denied said motion and, I understand, that the court found that there was no contempt of court because the debt had been paid.

42. Therefore, it would appear that Judge Covello has already found that the transfer of the stock to my father did not violate his orders.

43. In summary, Fasano never instructed, orchestrated, planned, advised, managed or otherwise influenced or directed the undersigned to disregard any court order or in any way hinder or delay me from disclosing all of my assets. In fact, Fasano urged, required and demanded that I fully respect the orders of the court and always be forthright with the court. At all times, Fasano acted and advised me to act with the utmost respect for the court's orders. At all times I attempted to comply with Fasano's instructions and the court's orders.

44. I make this affidavit with full knowledge that it may be presented to the court by Fasano or his counsel at some point.

_____
CHARLES FLANAGAN

Subscribed and sworn to before me this 12th day of May 2005.

_____
Commissioner of the Superior Court

# EXHIBIT B

Case 3:01-cv-00531-AVC    Document 447-2    Filed 05/16/2005    Page 7 of 13

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY and D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP, | § § § | No. 3:01CV531(AVC) |
| Plaintiffs, | § | |
| vs. | § | |
| CHARLES A. FLANAGAN, et al. | § | September 7, 2004 |
| Defendants. | § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSES TO PLAINTIFFS' RESPONSES TO INTERROGATORIES SUBMITTED BY DEFENDANTS LEONARD A. FASANO AND FASANO, IPPOLITO & LEE, L.L.C.**

**INTERROGATORY NO. 23.** Identify each and every RICO predicate act you contend was committed by defendant Fasano.

**SUPPLEMENTAL ANSWER:** As a further supplement to Plaintiffs' Responses to Interrogatories submitted by Defendants Leonard A. Fasano and Fasano, Ippolito & Lee, L.L.C., Plaintiffs state that the RICO predicate acts committed by Defendant Fasano are the provision of knowing and substantial assistance to Defendant Charles A. Flanagan ("Flanagan") in connection with (a) the settlement proceeds scheme -- the scheme to assist Flanagan in the recharacterization of the $75,000 in settlement proceeds so as to avoid Plaintiffs' execution efforts; (b) the shifting stock scheme -- the scheme to assist Flanagan in the movement, restrictions on and pledging of his T&P stock so as to avoid Plaintiffs' execution efforts; and (c) the secret checking accounts scheme -- the scheme to assist Flanagan in the hiding of his rental property income and other income in checking accounts in the name of a corporation controlled by Flanagan (MJCC Corp.) and in the names of Flanagan's minor children, Mathew Flanagan and Jeremy Flanagan. In connection with each of the above schemes, Defendant Fasano knew or could reasonably have anticipated that the United States mail and/or interstate wires would be used in connection with the execution of those schemes.

As far as individual or particular acts of mailings and interstate wire communications by Defendant Fasano:

    (a) mailings -- Pxs 1, 2, 6, 24, 58, 62, 90, 105, 133, 156, 188, 191 & 195;

    (b) interstate wire communications -- Pxs 25A, 25B, 130, 133, 141, 146, 156, 191 & 195.

**INTERROGATORY NO. 24.** Identify each and every RICO predicate act you contend was committed by defendant Fasano and Ippolito (n/k/a Fasano, Ippolito & Lee, LLC).

**SUPPLEMENTAL ANSWER:** As a further supplement to Plaintiffs' Responses to Interrogatories submitted by Defendants Leonard A. Fasano and Fasano, Ippolito & Lee, L.L.C., Plaintiffs state that the RICO predicate acts committed by Defendant Fasano & Ippolito (n/k/a Fasano, Ippolito & Lee, L.L.C.) ("F&I") are the provision of knowing and substantial assistance to Defendant Charles A. Flanagan ("Flanagan") in connection with (a) the settlement proceeds scheme -- the scheme to assist Flanagan in the recharacterization of the $75,000 in settlement proceeds so as to avoid Plaintiffs' execution efforts; (b) the shifting stock scheme -- the scheme to assist Flanagan in the movement, restrictions on and pledging of his T&P stock so as to avoid Plaintiffs' execution efforts; and (c) the secret checking accounts scheme -- the scheme to assist Flanagan in the hiding of his rental property income and other income in checking accounts in the name of a corporation controlled by Flanagan (MJCC Corp.) and in the names of Flanagan's minor children, Mathew Flanagan and Jeremy Flanagan. In connection with each of the above schemes, Defendant F&I knew or could reasonably have anticipated that the United States mail and/or interstate wires would be used in connection with the execution of those schemes.

As far as individual or particular acts of mailings and interstate wire communications by Defendant F&I:

    (a) mailings -- Pxs 1, 2, 6, 24, 58, 62, 90, 105, 133, 156, 188, 191 & 195;

    (b) interstate wire communications -- Pxs 25A, 25B, 130, 133, 141, 146, 156, 191 & 195.

```
                                    Respectfully submitted,

                                    ARMSTRONG LAW FIRM

                                    By /s/ F. Dean Armstrong
DATED: September 7, 2004.           _____
                                    F. Dean Armstrong
                                    Ct. Fed. Bar #CT22417
                                    1324 Dartmouth Road
                                    Flossmoor, IL 60422
                                    (708) 798-1599
                                    Fax (708) 798-1597

                                    Edward C. Taiman, Esq.
                                    SABIA & HARTLEY, LLC
                                    190 Trumbull Street
                                    Suite 202
                                    Hartford, CT 06103-2205
                                    (860) 541-2077
                                    Fax (860) 713-8944

                                    Attorneys for Plaintiffs
                                    The Cadle Company and
                                    D.A.N. Joint Venture,
                                    A Limited Partnership
```

### Certificate of Service

I certify that a correct copy of the foregoing instrument was mailed on September 7, 2004 to all defense counsel as shown on the attached Service List.


F. Dean Armstrong

-3-

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY and D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP, | § § § | No. 3:01CV531(AVC) |
| Plaintiffs, | § | |
| vs. | § | |
| CHARLES A. FLANAGAN, et al. | § | March 25, 2005 |
| Defendants. | § | |

PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' RESPONSES TO INTERROGATORIES SUBMITTED BY DEFENDANTS LEONARD A. FASANO AND FASANO, IPPOLITO & LEE, L.L.C.

INTERROGATORY NO. 23. Identify each and every RICO predicate act you contend was committed by defendant Fasano.

SUPPLEMENTAL ANSWER: As a further supplement to Plaintiffs' Responses to Interrogatories submitted by Defendants Leonard A. Fasano and Fasano, Ippolito & Lee, L.L.C., Plaintiffs state that the RICO predicate acts committed by Defendant Fasano are the provision of knowing and substantial assistance to Defendant Charles A. Flanagan ("Flanagan") in connection with (a) the settlement proceeds scheme -- the scheme to assist Flanagan in the recharacterization of the $75,000 in settlement proceeds so as to avoid Plaintiffs' execution efforts; (b) the shifting stock scheme -- the scheme to assist Flanagan in the movement, restrictions on and pledging of his T&P stock so as to avoid Plaintiffs' execution efforts; and (c) the secret checking accounts scheme -- the scheme to assist Flanagan in the hiding of his rental property income and other income in checking accounts in the name of a corporation controlled by Flanagan (MJCC Corp.) and in the names of Flanagan's minor children, Mathew Flanagan and Jeremy Flanagan. In connection with each of the above schemes, Defendant Fasano knew or could reasonably have anticipated that the United States mail and/or interstate wires would be used in connection with the execution of those schemes.

As far as individual or particular acts of mailings and interstate wire communications by Defendant Fasano:

  (a) mailings -- Pxs 1, 2, 6, 24, 58, 62, 90, 105, 131, 133, 156, 188, 191 & 195;

  (b) interstate wire communications -- Pxs 3, 25A, 25B, 105, 130, 131, 133, 141, 146, 156, 191 & 195.

  **INTERROGATORY NO. 24.** Identify each and every RICO predicate act you contend was committed by defendant Fasano and Ippolito (n/k/a Fasano, Ippolito & Lee, LLC).

  **SUPPLEMENTAL ANSWER:** As a further supplement to Plaintiffs' Responses to Interrogatories submitted by Defendants Leonard A. Fasano and Fasano, Ippolito & Lee, L.L.C., Plaintiffs state that the RICO predicate acts committed by Defendant Fasano & Ippolito (n/k/a Fasano, Ippolito & Lee, L.L.C.) ("F&I") are the provision of knowing and substantial assistance to Defendant Charles A. Flanagan ("Flanagan") in connection with (a) the settlement proceeds scheme -- the scheme to assist Flanagan in the recharacterization of the $75,000 in settlement proceeds so as to avoid Plaintiffs' execution efforts; (b) the shifting stock scheme -- the scheme to assist Flanagan in the movement, restrictions on and pledging of his T&P stock so as to avoid Plaintiffs' execution efforts; and (c) the secret checking accounts scheme -- the scheme to assist Flanagan in the hiding of his rental property income and other income in checking accounts in the name of a corporation controlled by Flanagan (MJCC Corp.) and in the names of Flanagan's minor children, Mathew Flanagan and Jeremy Flanagan. In connection with each of the above schemes, Defendant F&I knew or could reasonably have anticipated that the United States mail and/or interstate wires would be used in connection with the execution of those schemes.

  As far as individual or particular acts of mailings and interstate wire communications by Defendant F&I:

  (a) mailings -- Pxs 1, 2, 6, 24, 58, 62, 90, 105, 131, 133, 156, 188, 191 & 195;

  (b) interstate wire communications -- Pxs 3, 25A, 25B, 105, 130, 131, 133, 141, 146, 156, 191 & 195.

Respectfully submitted,

ARMSTRONG LAW FIRM

DATED: March 25 2005.

By: /s/ F. Dean Armstrong
F. Dean Armstrong
Ct. Fed. Bar #CT22417
1324 Dartmouth Road
Flossmoor, IL 60422
(708) 798-1599
Fax (708) 798-1597

Edward C. Taiman, Esq.
SABIA & HARTLEY, LLC
190 Trumbull Street
Suite 202
Hartford, CT 06103-2205
(860) 541-2077
Fax (860) 713-8944

Attorneys for Plaintiffs
The Cadle Company and
D.A.N. Joint Venture,
A Limited Partnership

## Certificate of Service

I certify that a correct copy of the foregoing instrument was mailed on March 25 2005 to all defense counsel as shown on the attached Service List.

/s/ F. Dean Armstrong
F. Dean Armstrong

-3-