<u>*UNITED STATES DISTRICT COURT*</u>

<u>*DISTRICT OF CONNECTICUT*</u>

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL | : | Case No. 3:01-CV 531 |
|     Plaintiff | : |   (AVC) |
| | : | |
| VS. | : | |
| | : | |
| CHARLES A. FLANAGAN, ET AL | : | MAY 18, 2005 |
|     Defendants | | |

**DEFENDANT STANLEY PRYMAS AND THOMPSON
& PECK'S MOTION TO QUASH A TRIAL SUBPOENA
SERVED ON HIS TRIAL COUNSEL, WILLIAM F. GALLAGHER**

**I.  STATEMENT OF FACTS**

The plaintiffs' claims in the present matter stem from their efforts to collect certain debts owed by former defendant Charles A. Flanagan.[1]  Defendant Flanagan is alleged to have conspired with others for the purpose of shielding his assets. Defendants Prymas and Thompson & Peck are parties by virtue of certain allegations that they assisted two conspiracies initiated by Flanagan:  the so-called Settlement Proceeds Scheme and the Shifting Stock Scheme.

Attorney William F. Gallagher has a long standing relationship as counsel for defendant Stanley F. Prymas, but not in connection with the events alleged in the complaint.  He is counsel of record for both Stanley F. Prymas and Thompson & Peck in this matter.

**ORAL ARGUMENT REQUESTED**

---

[1] On April 5, 2005, the plaintiffs provided a comprehensive release of all claims to former defendant Flanagan.  He is no longer a party to this action.

1

In deciding the present motion, it is important to realize that there is no claim that any defendant took any action at issue upon the advice of Atty. Gallagher. True, defendant Prymas has filed a special defense in which he alleges that he was following the advice of counsel when he took certain actions with regard to the so-called Settlement Proceeds Scheme. However, it is well known amongst the parties that this advice was provided by Todd Bainer, corporate counsel to defendant Thompson & Peck, not by Atty. Gallagher.

On or about May 13, 2005 , the plaintiffs caused a subpoena to be served upon Attorney Gallagher, seeking to compel his appearance at trial as a witness in this matter.

**II.   OVERVIEW**

It hardly needs to be stated that attempts to compel opposing counsel to testify at trial are highly disfavored. Such attempts are rarely allowed, and only upon the showing of the gravest necessity. No such showing has been made by the plaintiffs in the present matter.

As one court has noted,

> "[d]iscussion of this principle that attorneys should not be compelled to testify against their clients primarily arises in the context of depositions, most likely because the practice of calling opposing counsel as a witness at trial is so offensive to our conception of the adversarial process. Courts have made clear that attorneys should, only in rare and special circumstances, be forced to testify against their own clients.

Giannicos v. Bellevue Medical Center, 7 Misc.3d 403, 2005 WL 277311.

For the reason given in Giannicos, there is a dearth of reported case law on compelling opposing counsel to testify at trial. The reported cases that follow necessarily discuss compelling opposing counsel to testify at a deposition, but the same principles

apply to testimony compelled at trial. If anything, testimony at trial is even more disfavored.

### III.    LEGAL ARGUMENT

It has long been the rule in this circuit that "depositions of opposing counsel are disfavored." Unites States v. Yonkers Board of Education, 946 F.2d 180, 185 (2d Cir. 1991); citing Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947) and Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986).

In Hickman, the Supreme Court held that an attorney cannot be compelled to repeat the oral statements that potential witnesses have made to him. The court expressed its disapproval of having an attorney called to testify by an opposing party:

> [D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rule 30(b) and 31(d) [of the Federal Rules of Civil Procedure], limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.

Id. at 507-08, 67 S.Ct. at 392.

In dicta, the Court stated that any rule allowing a party to call the opposing party's attorney to testify would inevitably result in inefficiency, unfairness and sharp practices in the giving of legal advice and in the preparation of cases for trial. "The effect on the legal profession would be demoralizing. And the interests of clients and the cause of justice would be poorly served." Id. at 511, 67 S.Ct. at 394.

The courts have also recognized that an attorney might be required to testify for an opposing party, given extreme circumstances in which the attorney was the only

3

possible source of critical information. In Shelton, supra, the Eighth Circuit was confronted with a plaintiff who contended that counsel for the corporate defendant should be compelled to acknowledge the existence of otherwise non-privileged documents. The court held that an opposing counsel could not be compelled to so testify. Shelton, 805 F.2d at 1326.

The Shelton court formulated the following rule to balance the needs of discovery with the protection of the attorney-client privilege:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. ***But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.***

Id. at 1327 (emphasis added).

The district courts of this Circuit have generally followed the rule stated in Shelton. Yonkers, supra, Niagara Mohawk Power Corp. v. Stone & Webster, 125 F.R.D. 578, 594 (N.D.N.Y. 1989); Alcon Laboratories v. Pharmacia Corp., 225 F.Supp.2d 340, 342 (S.D.N.Y. 2002); Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D.N.Y. 2001); Pereira v. United Jersey Bank, No. 94 Civ. 1565(LAP), 94 Civ. 1844 (LAP), 1997 WL 773716 (S.D.N.Y,.December 11, 1997) at *7-8; U.S. Fidelity & Guarantee v. Braspetro Oil Services, Nos. 97Civ.6134(JGK)(THK), 98Civ.3099 (JGK)(THK), 2000 WL 1253262 (S.D.N.Y., September 1, 2000); and Maher v. Monahan, 2000 WL 777877 (S.D.N.Y.). See also Giannicos (applying New York law).

The opinion in Niagra Mohawk, above, is particularly instructive. The court refused to allow the deposition of one Steven J. Agresta, an attorney for the plaintiff, noting that "[c]ourts have become critical of the increasing use of depositions against opposing counsel" because the practice "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and cost of litigation." The court also noted that the practice can serve as a thinly veiled attempt to disqualify an opposing party's attorney from representation at trial. Id., 125 F.R.D. at 593.

"Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c) protective order." Id. at 594. The court held that the defendants in Niagra Mohawk, as in the present case, could obtain the necessary information by deposing a representative of the corporation. Thus, the first prong of Shelton is not met where a representative of the corporation is available to be questioned.

In the present case, the plaintiffs have made no attempt at a showing that would satisfy any of the three prongs of the Shelton test. They have not established that "no other means exist to obtain the information" than through Attorney Gallagher's testimony. Shelton, 805 F. 2d 1327. Indeed, the testimony concerning the parties intent concerning the tax classification of the monies payable to Flanagan is available directly from the parties to that settlement, Prymas and Flanagan, both of whom are on the witness list for this trial.

Similarly, Attorney Gallagher's testimony about what Attorney Bainer meant in referring to Flanagan's "predicament" in Bainer's letter (PX 72) is available from

5

Attorney Bainer, who is expected to testify at trial. Attorney Gallagher is not competent to testify about what "predicament" Attorney Bainer meant in his letter. Moreover, the deposition excerpt cited by the plaintiffs clearly refutes their characterization of Attorney Gallagher's testimony. He unequivocally testified that it was his understanding that Prymas and Thompson & Peck were not willing to help Flanagan out of his "predicament." (Gallagher dep. P. 27, cited at Plaintiffs' motion , page 7)

Testimony about a previous incident of an execution on Flanagan's stock is also available from Prymas. Prymas' testimony will show, neither he nor the Thompson & Peck's board had any notice or knowledge of the court's turn over order in Cadle I.[2] Moreover, Mr. Prymas will also testify that after the earlier attempt by another creditor to execute against Flanagan's stock, Flanagan no longer kept his stock certificates at Thompson & Peck, and, consequently, Thompson & Peck had no ability to comply with the court's turn over order even it had been given notice of the order. Finally, there is no evidence that Attorney Gallagher, who did not actively represent any of the parties in 1998, had any knowledge of the turn over order. The letter plaintiffs cite does not refer to the order, and there is no basis for plaintiffs' attempt to suggest that the letter evidences Attorney Gallagher's knowledge of the order.

The other areas on which plaintiffs want to examine Attorney Gallagher are not admissible. Plaintiffs claim they want to elicit Attorney Gallagher's speculation about the motives of Flanagan, Prymas or Thompson & Peck in changing the tax classification (in which he had no involvement). However, Attorney Gallagher's conjecture about

---

[2] Although the order was directed to Flanagan and Thompson & Peck, the Court never ordered Thompson & Peck, which was not a party to Cadle I, to be served with its order. Thus, neither Prymas nor Thompson & Peck had notice of the turn over order until after Flanagan paid the judgment and the Court vacated the turn over order.

those motives is lay opinion that lacks the foundation of actual perception required by F.R. Evid. 701, and is therefore inadmissible. See <u>JGR Inc. v Thomasville Furniture Indus, Inc</u>, 370 F 3d 519, 525-26 (6th Cir. 2004).  In addition, Attorney Gallagher's hearsay conversations about his speculative opinion that Flanagan was a "slumlord" is similarly not admissible or relevant. <u>Id.</u> ; F.R. Evid. 701, 802, 402.  Because the proferred testimony is not admissible, plaintiffs cannot satisfy the second and third prongs of <u>Shelton,</u> which requires the information to be relevant and crucial. <u>Shelton</u>, 805 F. 2d 1327.

Moreover, the plaintiffs' timing is suspect.  The plaintiffs have waited until the eve of trial to notice Mr. Gallagher as a witness at the trial, in a transparent to disrupt defendants' trial preparations and defense of this action.  At this late date, the subpoena is clearly  the product of sharp practice and bad faith, intended mainly to harass defendant Prymas by denying him of his choice of counsel at trial.[3]

In this regard, Local Rule 83.13 generally prohibits an attorney from acting as both counsel to a party and as a witness in the same trial.  The plaintiffs' subpoena can serve no purpose other than to set the stage for a later disqualification motion.

The Second Circuit has adopted

> a restrained approach [to attempts to disqualify opposing counsel] that focuses primarily on preserving the integrity of the trial process. … The Circuit has adopted this restrained approach, however, primarily because disqualification motions are often interposed for tactical reasons and even when made in the best of faith, such motions inevitably cause delay.

<u>Discotrade Ltd. v. Wyeth-Ayerst International</u>, 200 F.Supp.2d 355, 360 n. 11 (S.D.N.Y. 2002) (internal punctuation omitted), citing <u>Armstrong v. McAlpin</u>, 625 F.2d 433, 444

---

[3] Indeed, Plaintiffs' motion "for clarification," in reality a motion to disqualify Attorney Gallagher, was served during the preparation of this motion.

(2d Cir. 1980) (en banc), vacated on other grounds, 449 U.S. 1106, 101 S.Ct. 911 (1981); Allegaert v. Perot, 565 F.2d 246, 251 (2d Cir. 1979); and Board of Ed. Of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979).

> Generally, courts have expressed reluctance [to take actions that favor] disqualification motions because of their concerns regarding: (1) the immediate adverse effect disqualification has on the client separated from his lawyer; (2) the desire to preserve, to the greatest extent possible, the individual's right to be represented by counsel of his or her choice; and (3) the awareness that disqualification motions are being made, with increasing frequency, with purely strategic purposes in mind.

Agee v. Paramount Communications, Inc., 853 F.Supp. 778, 783 (1994) (internal punctuation omitted), citing Vegetable Kingdom, Inc.v. Katzen, 653 F.Supp. 917, 921 (N.D.N.Y. 1987); Nyquist, 590 F.2d at 1246; and Hull v. Celanese Corp., 513 F.2d 568, 569 (2d Cir. 1975).  See also Smith v. Whatcott, 757 F.2d 1098, 1099-1100 (10th Cir. 1985); International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1289 (2d Cir 1975); and Red Ball Interior Demolition Corp. v. Palmadessa, 908 F.Supp. 1226, 1239 (S.D.N.Y. 1995).

"[M]otions to disqualify counsel should be subjected to heightened scrutiny. Accordingly, the moving party bears a heavy burden of proving the facts required for disqualification." Agee, above, quoting Evans v. Artek Systems Corp., 715 F.2d 788, 794 (2d Cir. 1983) (internal punctuation omitted).  See also Bottaro v. Hatton Associates, 680 F.2d 895, 896-97 (2d Cir. 1982); Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978); In re Joint Eastern and Southern District Asbestos Litigation, 133 F.R.D. 425, 429 (E.D.N.Y. 1990); Vegetable Kingdom, 653 F.Supp. at 922.

Accordingly, a subpoena with no purpose other than to set the stage for a later disqualification motion should also be subjected to heightened scrutiny and quashed.

## IV. CONCLUSION

The present motion to quash the subpoena compelling the testimony of Attorney William F. Gallagher should be granted. The plaintiffs have not made any showing that the information is not available from any other source or that it is relevant and crucial to the issues in this case, required under Shelton. The information plaintiffs seek to elicit is equally available from other sources, notably Stanley Prymas and Charles Flanagan. The other evidence plaintiffs want to introduce through Attorney Gallagher's testimony is not admissible, and, consequently, not relevant or crucial to their claims.

A subpoena with no purpose other than to set the stage for a strategic disqualification motion, designed to deprive Prymas and Thompson & Peck of their trial counsel on the eve of trial, should not be countenanced by this Court and should be quashed. The Court should decline to disqualify Attorney Gallagher from representing Prymas and Thompson & Peck as trial counsel.

*Respectfully Submitted,*

THE DEFENDANTS,
Stanley F. Prymas
and Thompson & Peck, Inc.

BY: _____
BARBARA L. COX,
Federal Bar #ct08523
The Gallagher Law Firm
1377 Boulevard – P.O. Box 1925
New Haven, CT 06509
Tel: (203) 624-4165
Fax: (203) 865-5598

9

## *CERTIFICATION OF SERVICE*

This is to certify that a copy of the foregoing was hand delivered or mailed on the date above written to all counsel and *pro se* parties of record, namely:

F. Dean Armstrong, Esq.
1324 Dartmouth Road
Flossmoor, Ill.  60422

Edward C. Taiman, Esq.
Michael G. Albano, Esq.
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT  06103-2205

Todd R. Bainer, Esq.
P.O. Box 1092
Branford, CT 06405

Mary Anne A. Charron, Esq.
Gerald R. Swirsky, Esq.
R. Bradley Wolfe, Esq.
Gordon, Muir & Foley
Hartford Square North
Ten Columbus Boulevard
Hartford, CT 06106

Douglas S. Skalka, Esq.
James A. Lenes, Esq.
Neubert, Pepe & Monteith
195 Church Street, 13th Floor
New Haven, CT 06510-2026

Bradley K. Cooney, Esq.
69 Island Avenue
Madison, CT 06443

David G. Hill
June Sullivan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Lisa G. Flanagan, *pro se*
12 Green Hill Road
North Haven, CT 06473-2146

Paul Morgan Gaide, Esq.
713 Lovely Street
Avon, CT 06001

Richard Roberts, Esq.
Karen T. Gerber, Esq.
Amber J. Branciforte, Esq.
Nuzzo & Roberts, LLC
One Town Center
P.O. Box 747
Cheshire, CT 06410

_

                                                                                                    _____
                                                                                                     Barbara L. Cox, Esq.