"In this Circuit, the alleged racketeering activity must have extended over at least two years in order to [establish liability under RICO]." See, Kadouri v. Fox, 2005 WL 783255 at 4 (E.D.N.Y.), citing GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995). The reason, quite simply, is that "Congress was concerned in RICO with long-term criminal conduct," not conduct extending over a few weeks or months. See Id., citing H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900 (1989). In fact, since the Supreme Court decided H. J. Inc., the Second Circuit "has never found a closed-ended pattern where the [alleged] predicate acts spanned fewer than two years. See, FCAM v. Brickelbush, Inc., 150 F. Supp. 2d 624, 634 & nn. 37-41 (S.D.N.Y. 2001); Mason Tenders District Council Pension Fund v. Messera, 1996 WL 351250 at 8-9 (S.D.N.Y. June 25, 1996)." First Capital Asset Mgmt. Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 204). Every case involving acts of less than two years has been dismissed for lack of jurisdiction. See, e.g., DeFalco, 244 F. 3d at 321; and Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). This case should be no different. As a result, the plaintiffs' RICO claims should be dismissed as a matter of law.

## 2.     The Plaintiffs Did Not Prove Open-Ended Continuity

Similarly, the plaintiffs did not prove open-ended continuity as well. "To satisfy open-ended continuity, the plaintiff … must show a threat of continuing criminal activity beyond the

26

period during which the predicate acts were allegedly performed.  FCAM, Inc., 385 F.3d at 180

citing Cofacredit, 187 F.3d at 242.  Again, the plaintiffs must do so as to each defendant

individually.  FCAM, Inc., 385 F.3d at 180; DeFalco, 244 F.3d at 306, 322 n.22; Persico, 832

F.2d at 714.  However, at trial, the plaintiffs never attempted to prove open-ended continuity.  In

fact, the court will note that the plaintiffs never alleged open-ended continuity in any of their

complaints.  See, most recently, Plaintiffs' Third Amended Complaint dated May 12, 3005.

Instead, they only reference a **total** time period of over 2 years (i.e. of closed-ended continuity)

as to all defendants (including Flanagan), but not as to any one defendant individually.

More importantly, the plaintiffs did not offer any evidence of open-ended continuity at

trial (i.e., no evidence of a threat of future criminal activity).  Indeed, the only evidence at trial is

that the Fasano defendants filed a bankruptcy schedule in March 1999, but were replaced as

counsel immediately thereafter.  Clearly, the jury cannot infer a threat of future criminal activity

by simply filing one bankruptcy schedule.  In fact, this case is identical to a number of Second

Circuit cases which previously "concluded that the alleged bankruptcy fraud does not amount to

or pose a threat of continued criminal activity."  See FCAM, 385 F.3d at 180-181 (internal

quotation marks omitted), citing Cofacredit, 187 F.3d at 244; GICC, 67 F.3d at 466; and H.J. Inc.

at 239.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

Indeed, the facts of this case fall short of those cases cited above. For example, in *FCAM*, the debtor defendant filed bankruptcy in July 1997, however, the plaintiff alleged that the predicate acts of perjury and mail fraud continued for the next 2½ years (until December 1999). Nevertheless, the Second Circuit found (1) that two years of continuous bankruptcy fraud did not "imply a threat of continued criminal activity"; *FCAM*, 385 F.3d at 180; (2) that unlike organized crime, the alleged bankruptcy fraud was "inherently terminable"; *Id.*; (3) when the debtor filed for bankruptcy, the scheme in effect came to its conclusion (notwithstanding two more years of predicate acts); *Id.* at 181; (4) that it defies logic to suggest that a threat of continued looting activity exists when there is nothing left to loot; *Id.*; and (5) continued concealment of assets in a bankruptcy scheme is not a predicate act. *Id.* Thus, if the facts of those cases (particularly FCAM) do not pose a threat of continuing activity, clearly the facts of our case do not either. As a result, the plaintiff cannot prove open-ended continuity, thus, judgment should enter as a matter of law.

### E.      The Plaintiffs Did Not Prove Reliance

As part of the plaintiffs' proof of causation, they must prove reliance on the alleged misrepresentations. Bank of China v. NBM, LLC, 359 F.3d 171 (2d Cir. 2004); Metromedia Co. v. Fugazy, 983 F.2d 350 (2d Cir. 1992), cert. denied, 508 U.S. 952 (1993). The plaintiffs need not be the entity that relied upon the fraud, they can show that a third party relied upon it; Ideal

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

Steel Supply Corp. v. Anza, 373 F.3d 251, 263 (2d Cir. 2004); however, it is not enough simply to prove a misrepresentation; the plaintiffs must prove that their injuries resulted from reliance upon it. Falise v. American Tobacco Co., 94 F. Supp. 2d 306, 334 (E.D.N.Y.). In this matter, the plaintiffs have not shown any misrepresentations by Fasano, let alone that they relied upon them, or that a third party relied upon them.

The Court will recall that the only evidence regarding reliance was a series of questions posed to Fasano as to whether he intended others to rely on his pleadings. Mr. Fasano answered affirmatively to at least one of those questions. However, the plaintiffs never offered evidence that they in fact relied upon those misrepresentations, or that a third party actually relied upon them. In addition, the plaintiffs did not offer any evidence that pleadings were indeed "misrepresentations" as far as Fasano was concerned. Both Fasano and Flanagan admitted that all of the information in those pleadings was provided by Flanagan, and that Fasano did not know the information was inaccurate. How then can they constitute fraud? Again, if all of the witnesses deny that an event essential to the plaintiff's case occurred, the jury may well disregard those denials, but they cannot draw a contrary conclusion absent some independent basis for doing so. See Goldhirsh, supra; Martin supra; see also, Bose Corp., supra.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976

TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

VII.   **WITHOUT A SUBSTANTIVE RICO OFFENSE, THERE CAN BE NO RICO CONSPIRACY LIABILITY.**

In 2000, the U.S. Supreme Court, in Beck v. Prupis, 529 U.S. 494 (2000) took the opportunity to address 18 U.S.C. §1962(d), distinguishing civil RICO conspiracy from criminal RICO conspiracy stating:

> Petitioner suggests that we should look to criminal, rather than civil, common-law principles to interpret the statute. We have turned to the common law of criminal conspiracy to define what constitutes a violation of §1962(d), see Salinas v. United States, 522 U.S. 52, 63-65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), a mere violation being all that is necessary for criminal liability. This case, however, does not present simply the question of what constitutes a violation of §1962(d), but rather the meaning of a civil cause of action for private injury by reason of such a violation. In other words, our task is to interpret §§1964(c) and 1962(d) in conjunction, rather than §1962(d) standing alone. The obvious source in the common law for the combined meaning of these provisions is the law of civil conspiracy.

Id. at 501. The Court very thoroughly analyzed civil common law caselaw regarding civil conspiracy and referenced authorities such as the Restatement (2d) of Torts.

Unlike criminal conspiracy, which is in and of itself a punishable offense, "conspiracy fails as a basis for the imposition of civil liability absent the actual commission of some independently recognized tort; and when such separate tort has been committed, it is that tort, and not the fact of the combination, which is the foundation of civil liability. Id. at 502. (Citations omitted) (Emphasis in original) Thus, the Supreme Court concluded that "injury caused by an overt act that is not the act of racketeering or otherwise wrongful under RICO, is

30

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

not sufficient to give rise to a cause of action under §1964(c) for a violation of 1962(d)." Id. at 505. It is for this reason that this Court's jury charge regarding overt acts is incorrect and certainly misleading.

The Beck Court holding had limitations, as it expressly declined to "resolve whether a plaintiff suing under 1964(c) for a RICO conspiracy must allege an actionable violation under §1962(a)-(c)," Id. at 506 fn. 6. Consequently, the question was left to the separate Circuit courts.

In 2002, the Southern District of New York in First Capital Asset Management, Inc. v. Brickellbush, 219 F. Supp. 2d 576, 588 (S.D.N.Y. 2002) stated "in the absence of contrary direction from the Supreme Court, the law of this circuit requiring actionable violations of §1962(a)-(c) in order to establish a conspiracy claim under §1962(d) controls." Thus, a claim under §1962(d) fails as a matter of law if the substantive claims based on other subsections are defective. Id. The Second Circuit Court of Appeals in First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) affirmed this position. Id. at 182. The districts of the Second Circuit have also agreed with this holding. Kadouri v. Fox, 2005 WL 783255, *6 (E.D.N.Y.); Wood v. Incorporated Village of Patchague of N.Y., 311 F. Supp. 2d 344, 360 (E.D.N.Y. 2004); Kades v. Organic, Inc., 2003 WL 470331 at 14 (S.D.N.Y. 2/24/03) (citations omitted); Int'l Broth. Of Teamsters v. Carey, 297 F. Supp. 2d 706, 718-19 (S.D.N.Y. 2004); RD Management Corp. v. Samuels, 2003 WL 21254076 (S.D.N.Y. 2003); Weizmann Institute of

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

Science v. Neschis, 229 F. Supp. 2d 234, 255 (S.D.N.Y. 2002); FD Property Holding, Inc. v.

U.S. Traffic Corp., 206 F. Supp. 2d 362 (E.D.N.Y. 2002); Vicon Fiber Optics Corp. v. Scrivo,

201 F. Supp. 2d 216 (S.D.N.Y. 2002); Allen v. New World Coffee, Inc., 2002 WL 432685

(S.D.N.Y. 2002); West 79th St. Corp. v. Congregation Kahl Minchas, 2004 WL 2187069;

Medinol Ltd. V. Boston Scientific Corp., 346 F. Supp. 2d 575 (S.D.N.Y. 2004); Odyssey Re:

(London) Ltd. V. Stirling Cooke Broun Holdings Ltd., 85 F. Supp. 2d 282, 303 (2000).

Moreover, a valid substantive claim under §1962(a)-(c) must be established as to each

defendant alleged to be a co-conspirator under §1962(d).  In First Capital Asset Management,

Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) the Second Circuit Court of Appeals held

that "because plaintiffs did not adequately allege a substantive violation of RICO in Count Five

on the part of either Sohrah or Afsar [individual defendants], the District Court properly

dismissed Count Six, which alleged a RICO conspiracy in violation of 18 U.S.C. §1962(d)."  See

Cofacredit, 187 F.3d at 244; Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996)

vacated on other grounds, 525 U.S. 128 (1998) ("Since we have held that the prior claims do not

state a cause of action for substantive violations of RICO, the present claim does not set forth a

conspiracy to commit such violations").  See also, Kadouri v. Fox, 2005 WL 783255, *6

(E.D.N.Y.) ("Claim four of the complaint alleges conspiracy in violation of RICO between H.

Molnar, F. Molnar and Fox.  Because plaintiffs have not adequately alleged a substantive

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                     FACSIMILE (860) 525-4849                     JURIS No. 24029

violation of RICO against these defendants, the Court also dismisses the RICO conspiracy claim against all of them. (Citations omitted)) Wood, 311 F. Supp. 2d at 359-60. ("As set forth above, the only remaining claims under the civil RICO statute are the §1962(c) causes of action against [defendants] Keegan, Ihne, Kracht & Tomeo. Therefore, only the §1962(d) causes of action relating to the §1962(c) [claims] against Keegan, Ihne, Kracht & Tomeo remains.")

As relates to defendants Bainer, T & P and Prymas, this jury found as a matter of fact that they did not violate §1962(c). Without a substantive violation, as a matter of law there can be no §1962(d) RICO conspiracy verdict against them.

## VIII.   THE DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CIVIL RICO CONSPIRACY CLAIM.

### A.   The Evidence was Insufficient to Support a Finding That the Damages Awarded by the Jury were Proximately Caused by Any Crime Under RICO.

Plaintiffs failed to prove any substantive RICO violation against Bainer, Prymas or T & P. They also failed to present adequate evidence supporting a verdict of participation in a RICO conspiracy under 18 U.S.C. §1962(d). Plaintiffs' RICO conspiracy claim against Prymas and T & P must fail as a matter of law, because under the law of this Circuit a civil plaintiff cannot recover for injury allegedly arising solely out of a RICO conspiracy. Beck v. Prupis, 529 U.S. 494 (2000); First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361            FACSIMILE (860) 525-4849            JURIS No. 24029

In <u>Beck,</u> the Supreme Court concluded that an injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action for a civil RICO conspiracy.  <u>Id.</u>, 505.

> [W]e conclude that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO, ... is not sufficient to give rise to a cause of action under §1964(c) for a violation of §1962(d).  As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury that caused by any act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an "ac[t] of a tortious character," ... meaning an act that is independently wrongful under RICO.

<u>Id.</u>, 505-06 (citation omitted, last emphasis added).

The evidence presented at trial was insufficient to demonstrate that plaintiffs' collection expense damages were the result of any of the crimes enumerated under RICO.  The jury were never asked to identify which RICO crimes they found to have caused the damages awarded, sufficient to support the imposition of civil RICO conspiracy liability against Bainer, Prymas and T & P.  Instead the jury was erroneously misled into equating the plaintiffs' various claimed "schemes" with RICO predicate crimes.  The plaintiffs contended at trial that they suffered injury from (1) a change in the tax treatment of the settlement monies payable to Flanagan under the 1997 Connecticut Superior Court judgment, (2) the failure to pay settlement monies owed to Flanagan in response to the <u>Cadle I</u> writ of execution, (3) the failure to turn over Flanagan's

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

stock in response to the <u>Cadle I</u> turnover order, and (4) from the placement of a restrictive legend on Flanagan's stock. However, none of these acts was an act of racketeering under RICO.

As in <u>Beck</u>, the plaintiffs' claimed injuries in this case were not caused by acts that are crimes under RICO. <u>Beck</u> requires the entry of judgment in favor of Bainer, Prymas and T & P, because they committed no RICO crime that caused plaintiffs' claimed injuries.

### 1.     The So-called "Settlement Proceeds Scheme" Does Not, as a Matter of Law Constitute a RICO Crime.

Plaintiffs failed to establish that the change from one alternative tax treatment to another, the centerpiece of the so-called "settlement proceeds scheme," constitutes a crime under RICO. The uncontroverted evidence presented at trial was that in 1997, T & P's accountant advised Pyrmas that the settlement proceeds could be considered either W-2 income or 1099 miscellaneous income. (Prymas testimony, 5/31/05) T & P's accountant initially told Prymas that W-2 was the preferred classification, but advised T & P's principals to classify the monies 1099 because of the Sun Trust loan covenant. <u>Id</u>. At the end of 1997, Prymas determined that under either classification, the settlement monies did not create a violation of the employee compensation covenant of the Sun Trust loan. <u>Id</u>. The change from one alternative tax treatment to one more preferable, where both treatments are permissible, cannot, as a matter of law, constitute either mail, wire, or bankruptcy fraud, or any other RICO crime. Plaintiffs have never

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

provided any authority supporting their contention that the change from one permissible tax classification to another can be a crime under RICO.

The evidence shows that Prymas and T & P role in the change in tax treatment of the payments due to Flanagan under the terms of the stipulated judgment was based on professional accounting and legal advice. The change in tax classification from 1099 income to wages was not racketeering activity for which civil liability under §1962(d) may be imposed.

Plaintiffs had no protected interest or right in the tax treatment of the stipulated judgment monies. The purpose of a tax classification is to establish taxpayer's (and employer's) liability for payment of federal income tax. The tax classification is not made for the benefit of third parties, such as creditors. Although plaintiffs seem to assume that they had some vested right in the tax treatment of the settlement monies, and that once one classification was selected, the classification could not be changed, they have never cited any legal authority for either assumption. Plaintiffs cannot seriously claim that T & P or Prymas had any superior duty to plaintiffs, or any of Flanagan's creditors, with respect to the tax treatment of the stipulated judgment monies. T & P's obligation was to apply the most correct tax classification to the monies. That obligation extended only to the United States government and to Flanagan.

Prymas and Bainer's primary duty was to act in the best interests of T & P. See Arrigoni v. Adorno, 129 Conn. 673, 681 (1943). T & P's tax classification of the payment to a proper

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

one, based on accounting advice, fulfilled their superior duty to the corporation, which superceded any conflicting duty they may have had to Flanagan's creditors. The mere fact that the tax treatment may have had *some* effect on Cadle's ability to execute[3] on the judgment monies does not transform a legitimate in tax classification, based on accounting advice, into an illegal act, much less a RICO predicate act. No Civil RICO liability may be imposed on either Prymas or T & P for the tax classification of the judgment monies payable to Flanagan.

There is ample authority that the payments pursuant to the stipulated judgment were properly classified as wages in 1988. Flanagan had sued Prymas to recover a claimed shortfall in compensation from T & P. The sums payable to Flanagan were to equalize his compensation from T & P with Prymas. PX 21, ¶2, 12. The payments to Flanagan of past due compensation under the settlement agreement, later reduced to a judgment, were properly considered wages for federal income tax purposes. E.g., United States v. Cleveland Indians Baseball Company, 532 U.S. 200, 121 S.Ct. 1433, (2001)(settlement payments representing back wages subject to FICA and FUTA taxes according to year in which the wages were in fact paid); Hemelt v. United States, 122 F.3d 204, 210 (4th Cir. 1997)(settlement payments representing wage-based relief should be treated as wages).

---

[3] It should be noted that the change in tax treatment did not place the monies beyond plaintiffs' reach. Once classified as wages, Cadle could have, but did not seek to garnish Flanagan's wages.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

The defendants were entitled to rely on the advice of professionals in choosing one of the alternative tax treatments available for the judgment payments to Flanagan. See Streber v. Commissioner of Internal Revenue, 138 F.3d 216, 222-23 (5th Cir. 1998) (no penalty could be assessed for selection of one of alternative tax treatments based on professional advice). As a matter of law, no civil RICO liability may be imposed on them for the application of an appropriate tax treatment of the judgment monies, based on the advice of accountants and counsel.

2.     **The Failure to Pay Money in Response to the Writ of Execution, in Compliance with the Terms of the Writ, Was Lawful and Not a RICO Crime.**

The court in Cadle I issued a writ of execution on October 7, 1997. PX 68A. By its terms, the writ of execution expired four months after issuance. Id., p. 2. C.G.S. §52-356a (3). Plaintiff Cadle Company caused the writ to serve by a sheriff on January 5, 1998. Id. The writ directed Thompson & Peck as follows:

> *Twenty days from the date of the service* of this property execution, you must deliver to the sheriff property owned by the judgment debtor, *EXCEPT (1) If an exemption claim has been filed with the court you shall withhold delivery of the property or payment of the debt owed by you subject to the determination of the exemption claim by the court. . .*

Id. (emphasis added); see also C.G.S. §52-356a (4) (C) (requiring third person to withhold payment for twenty days after service.

38

Under the terms of the writ, T & P was required to pay any debts owing to Flanagan within twenty days, January 25, 1998, unless a claim of exemption was filed. On January 20, 1998, Flanagan filed a claim of exemption. PX 25. The court did not resolve the exemption claim before the writ expired on February 7, 1998. Under these facts, T & P's failure to pay any monies in response to the writ cannot, as a matter of law, be a crime or other unlawful act under RICO required for imposition of §1962(d) liability on Bainer, Prymas or T & P. Beck, supra.

Moreover, C.G.S. §52-356a(5) provides immunity from suit to any third party who withholds payment in compliance with its terms: "Levy under this section on property held by, or a debt due from, a third person *shall bar an action for such property against the third person provided the third person acted in compliance with the execution.*" Id. (Emphasis added). Plaintiffs are thus precluded by Connecticut law from basing any claim against these defendants on the Cadle I writ of execution.

**3.      Bainer, Prymas and T & P Cannot be Held Liable for Any Claim Based on The Cadle I Turnover Order.**

Neither Bainer, Prymas nor T & P may be held liable under civil RICO for failing to comply with the injunction and turnover order issued in Cadle I. Fed.R.Civ.P. 65(d), requires: "Every order granting an injunction and every restraining order ... is binding **only** upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them *who receive actual notice* of the order by

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361        FACSIMILE (860) 525-4849        JURIS No. 24029

personal service or otherwise." (Emphasis added)  See also <u>Vermont Women's Health Center v. Operation Rescue</u>, 617 A.2d 411, 413 (Vt. 1992); see also <u>Federation of Flight Attendants v. Cooper</u>, 134 F.3d 917, 920 (8th Cir. 1998) (non-party may be held in contempt for violation of an injunction only if the non-party has notice of the order and the non-party's obligations are clear and unequivocal).  The evidence was uncontroverted that Bainer, Prymas and T & P were not personally served with notice of the court's injunction order, entered on March 9, 1998. Consequently, they committed no crime under RICO and cannot be held liable for failing to abide by the injunction.

In <u>Cadle I</u>, the Cadle Co. was required to follow state procedures in enforcing its judgment for the payment of money against Flanagan.  F.R.Civ.P. 69(a).  Connecticut state law requires that a turnover order directed against a third person, such T & P, be given notice of the order by *personal service* by a sheriff, marshal or process server.  C.G.S. §52-356b(b), (d). Notice of the turnover order on T & P was also required to contain a notice that failure to comply with the turnover order might subject T & P to contempt of court.  <u>Id.</u>  Because there is no evidence that T & P was served with this court's Turnover order in the manner required by Connecticut law, neither T & P, Prymas nor Bainer may be held liable for any violation of that turnover order.  In any event, the unwitting noncompliance with the injunction and turnover

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361    FACSIMILE (860) 525-4849    JURIS NO. 24029

order by third persons who had no notice, under these circumstances cannot constitute a RICO

crime necessary for the imposition of liability on those defendants under §1962(d) under Beck.

### 4.    The Placement of a Restrictive Legend on Flanagan's Stock Was Not a RICO Crime.

The plaintiffs have also failed to show that any of Bainer, Prymas or T & P's conduct in

the so-called "shifting stock scheme" constituted a RICO crime sufficient for the imposition of

RICO conspiracy liability.  Plaintiffs presented no evidence that the placement of a restrictive

legend on Flanagan's stock certificates constitute RICO predicate acts that caused their injury.

Plaintiffs have submitted no evidence to support that the placement of the restrictive legend on

Flanagan's stock caused any injury much less an injury for which civil RICO provides redress.

There is no evidence that the legend impeded any of plaintiffs' efforts to locate or execute on the

stock.  There is no evidence that the stock legend in any way insulated the stock from execution.

Plaintiffs have failed to demonstrate that they were injured by "an act of racketeering or

otherwise wrongful under RICO" committed by Bainer, Prymas or T & P.  Beck v. Prupis, supra,

holds that injuries caused by overt acts that are not crimes under RICO are an insufficient basis

to give rise to a civil cause of action for RICO conspiracy.  The plaintiffs failed to meet their

burden of demonstrating that any act of Bainer, Prymas, or T & P was "an act of racketeering or

otherwise wrongful under RICO" and caused their injuries.  Therefore, the verdict finding

liability civil RICO conspiracy against those defendants must be set aside as contrary to law.

41

## IX.     ABUSE OF PROCESS – THE COURT CANNOT CONDONE ACTIVITY THAT IS ILLEGAL OR AGAINST PUBLIC POLICY.

One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed, is subject to liability for abuse of process. Restatement (Second) of Torts, § 682. In fact, the Restatement identifies our exact scenario as the "usual case" of abuse of process.

"The usual case of abuse of process is one of … using the process to put pressure upon another to compel him to pay a different debt." Id., comment b. This is the type of behavior that both the Connecticut Supreme Court and the Second Circuit found actionable.

In Mozzochi v. Beck, 204 Conn. 490, 529, A.2d 171, 173 (1987), the Connecticut Supreme Court adopted both the Restatement's definition of abuse of process, as well as its commentary cited above. It found, and the Second Circuit confirmed, that any action taken to utilize the court's processes for collateral purposes not related to the suit in question is an abuse of process. Doctor's Associates, Inc. v. Weible, 92 F.3d 108, 114 (2d Cir. 1996), citing Lodges 743 and 1746 v. United Aircraft, 534 F.2d 422, 465 (2d Cir. 1975). See also, W. Page Keeton, et al., Prosser and Keeton on Torts §121, at 898 (5th Ed. 1984).

Closer to home, Judge Arterton went even further in Equality, Inc. v. I-Link Communications, 76 F.Supp. 2d 227 (1999), when she stated that an abuse of process exists when a party "uses the pleadings or the process in the [underlying] case as leverage to coerce the

42

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361     FACSIMILE (860) 525-4849     JURIS No. 24029

plaintiff to pay a debt or surrender property unrelated to that litigation." Equality, 76 F.Supp. 2d at 230, (citing Mazzochi, 204 Conn. at 493). Again, this is the exact scenario the plaintiffs attempted here.

The court will recall that several witnesses for the plaintiff testified that (1) Cadle obtained over $1 million in judgments against the debtor, Flanagan; (2) Cadle tried to obtain Flanagan's stock in T & P to satisfy those judgments; (3) Paul Gaide testified his client (Cadle) would not authorize him to accept the payoff amount when it was tendered; and (4) Dan Cadle admitted that Attorney Gaide was not authorized to accept the payoff because he wanted the stock sold to satisfy Flanagan's other debt. Clearly, the plaintiffs attempted to abused the process of the courts by attempting to seize Flanagan's stock in a case in which they were paid in full to satisfy debts in other cases.

Plaintiffs cannot recover for acts that may have frustrated their attempts to violate public policy by abusing the process of the courts. This Court cannot enforce an award that compensates plaintiffs for interference with their ability to violate the law or contravenes public policy. See, Park Plaza Hotel v. Local 217 et al., 1990 WL 178880 (D. Conn.). As a result, judgment should enter for the defendants as a matter of law.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS No. 24029

## X.   PLAINTIFFS DID NOT PROVE CONTINUITY WITH RESPECT TO THE CONSPIRACY ALLEGATIONS

To prevail on the §1962(d) claims plaintiffs, plaintiffs had to prove that the "conspiracy" comprised of a series of "criminal" acts contained for an extended period of time as fully briefed in §VI.D (pp. 24-28), infra, there was no proof of the continuity required in this Circuit.  Thus, the finding that the defendants conspired must fail as a RICO offense as a matter of law for the reasons stated in that prior section which is incorporated herein.

## XI.   CONCLUSION

For all the foregoing reasons, defendants request judgment as a matter of law be entered in their favor.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976

TELEPHONE (860) 525-5361    FACSIMILE (860) 525-4849    JURIS No. 24029

DEFENDANTS: TODD R. BAINER and
TODD R. BAINER, L.L.C.

By _____
      R. BRADLEY WOLFE
      Federal Bar No. ct04332
      GERALD R. SWIRSKY
      Federal Bar No. ct05574
      MARY ANNE A. CHARRON
      Federal Bar No. ct02274
      Gordon, Muir and Foley, LLP
      Ten Columbus Boulevard
      Hartford, CT 06106-1976
      Telephone (860) 525-5361
      Facsimile (860) 525-4849

DEFENDANTS: STANLEY F. PRYMAS
AND THOMPSON & PECK, INC.

By _____

WILLIAM F. GALLAGHER
Federal Bar No. ct04147
BARBARA L. COX
Federal Bar No. ct08523
The Gallagher Law Firm
1377 Boulevard
P.O. Box 1925
New Haven, CT 06590
Telephone (203) 624-4165
Facsimile (203) 865-5598

DEFENDANTS
LEONARD A. FASANO
FASANO, IPPOLITO & LEE, LLC

By_____

    David G. Hill of
    HALLORAN & SAGE LLP
    Fed. Bar No. ct13435
    Their Attorneys
    Halloran & Sage, LLP
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    Phone (860) 522-6103
    Fax (860) 548-0006

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, to all counsel and pro se parties of record on June 24, 2005:

F. Dean Armstrong, Esquire
1324 Dartmouth Road
Flossmoor, IL 60422

Edward C. Taiman, Esquire
Sabia & Hartley, LLC
190 Trumbull Street, #202
Hartford, CT 06103-2205

David G. Hill, Esquire
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT 06103-4303

Bradley K. Cooney, Esquire
69 Island Avenue
Madison, CT 06443

Barbara L. Cox, Esquire
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT 06509-1925

Todd R. Bainer, Esquire
71 Cedar Street
P.O. Box 1092
Branford, CT 06405-8092

Roger J. Frechette, Esquire
Frechette & Frechette
12 Trumbull Street
New Haven, CT 06511

_____
R. BRADLEY WOLFE
MARY ANNE A. CHARRON

::ODMA\PCDOCS\DOCS\396368\1