UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CADLE COMPANY, ET AL | : | CIVIL ACTION NO:<br>3:01-CV-531 (AVC) |
| V. | : | |
| CHARLES A. FLANAGAN, ET AL | : | JUNE 24, 2005 |

## MOTION FOR NEW TRIAL
## AND/OR MOTION FOR REMITTITUR

**I.   Standard of Review**

Under Federal Rules of Civil Procedure 59(a), "[a] new trial <u>may</u> be granted . . . for <u>any</u> of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." (Emphasis added). Thus, the language of Rule 59(a) "supports a broad grant of discretion to the district court." <u>Gasperini v. Center for Humanities, Inc.</u>, 149 F.3d 137, 142 n.2 (2d Cir. 1998). A new trial may be granted when the jury's verdict is against the weight of the evidence; <u>DLC Management Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133 (2d Cir. 1998); "when . . . the jury has reached a seriously erroneous result or . . . [when] the verdict is a miscarriage of justice." <u>Song v. Ives Labs, Inc.</u>, 957 F.2d 1041, 1047 (2d Cir. 1992).

The standard governing a motion for new trial differs in two significant ways from the standard governing a Rule 50 motion. Unlike judgment as a matter of law, a new trial may be granted even if there is "substantial evidence" supporting the jury's verdict. <u>Landau</u>, 155 F.3d at 104; <u>Song</u>; 957 F.2d at 1047; <u>Benevino v. Saydjari</u>, 574 F.2d 676,

683 (2d Cir. 1978).  Moreover, a district judge "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner."  Landau, 155 F.3d at 104; Farrior, 277 F.3d at 634-35; Song, 957 F.2d at 1047.

It is "inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of the witnesses."  Landau, 155 F.3d at 104.  See Song, 957 F.2d at 1047.  In fact, the district court is "in a unique position to assess the credibility of the witnesses and to determine the weight which should be accorded to their testimony."  Song, 957 F.2d at 1047.  Thus, "principles of deference to the jury do not override the trial judge's duty to 'see that there is no miscarriage of justice.'"  Landau, 155 F.3d at 105.  Accordingly, "[i]f convinced that there has been [a miscarriage of justice] then it is [the trial judge's] duty to set the verdict aside . . . .'"  Id.

Moreover, the ability of a district judge to assess the credibility of the witnesses in the context of a new trial motion is well-established.  See Landau, 155 F.3d at 104-05. "The judge's power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it."  11 Wright & Miller, § 2806 at 74.  Thus, it "long has been understood if the trial judge is not satisfied with the verdict of a jury, the judge has the right – and indeed the duty – to set the verdict aside and order a new trial."  Id. See Benevino, 574 F.2d at 684.

## II.     The Court Should Order a Remittitur

As the Court will recall, the jury specifically found that the plaintiffs did not suffer any lost debt damages, but limited its award to $500,000 in "collection expense damages." This award has no basis in fact or in the evidence, therefore, it must be set aside.  See Defendants' Rule 50 Joint Motion for Judgment.  At the very least, the Court should order a remittitur that limits the plaintiffs' recovery to the evidence they introduced at trial.

### 1.     There is no evidence of $500,000 in damages by the plaintiffs

Respectfully, the Court never instructed the jury on the definition of "collection expense damages", nor did the court advise the jury what they could consider as "collection expense damages".  See Stochastic Decisions v. DiDomenico, 995 F.2d 1158, 1166 (2d Cir.), cert. denied, 510 U.S. 945 (1993).  Instead, the Court advised the jury that they should "reasonably and fairly compensate the [plaintiffs] for ANY harm that was proximately caused by the defendants." See Charge to the Jury, J. Covello, June 8, 2005 (emphasis added).  Unfortunately, the Court's charge directly contravenes the Supreme Court's holding in Beck v. Prupis, 529 U.S. 494 (2000), which stated that a civil RICO plaintiff may only recover damages for injuries that result directly from RICO predicate crimes, not just wrongful acts.  In addition, based on the jury's award, it is clear that they took this court's charge literally.

First, there is no evidence of $500,000 in damages of any kind; thus, clearly the jury was speculating. Second, the only evidence remotely close to this estimate was the testimony of Dan Cadle, whose testimony was limited to one broad statement:

> Q. Now, what are the collection damages sir?
>
> A. We spent $494,000 on chasing the assets.

(Dan Cadle testimony, June 2, 2005). At no time did Mr. Cadle tell the jury what he meant by "collection damages;" at no time did Mr. Cadle tell the jury what he meant by "chasing the assets"; at no time was either term defined for the jury; and at no time did Mr. Cadle itemize his alleged collection damages. In fact, the only evidence of "collection expense damages" was the testimony of The Cadle Company's attorney, Paul Gaide, who testified that he was not sure what additional fees he spent, but thought it was between "$10,000 to $15,000". (Paul Gaide testimony, May 25, 2005).

In short, clearly there was no evidence by which the jury could have awarded $500,000 in "collection expense damages". As a result, the verdict should be set aside. Alternatively, the court should order a remittitur, thus reducing the award to the amount proven by the plaintiffs as their "attorneys' fees damages". At best, that amount was "$10,000 to $15,000".

### 2. There is no basis to treble the jury award

There is no proof that the plaintiffs suffered any "loss of business or property" due to RICO crimes. In addition, there is no proof that the alleged loss was proximately caused

by predicate acts in furtherance of alleged schemes.  As a result, there is no basis for this Court to treble the damages under §1964(c).

18 U.S.C. §1964(c) allows for "threefold" damages for one who is injured in his business or property, plus the costs of the suit.  The distinction between "injured in his business or property" and "costs of the suit" is critical.  The former is trebled, the latter is not.  However, the jury was never told of this distinction, nor were any of those terms defined for them.  In fact, after the jury reached its verdict, the Court submitted interrogatories asking them to explain their verdict.  Clearly, the jury was confused; in fact, upon receipt of the interrogatories, their first question was whether their answers needed to be unanimous.

The only evidence of "collection expense damages" was that of Cadle's counsel, Paul Gaide, who estimated the amount of attorneys' fees at "$10,000 to $15,000".  (Paul Gaide testimony, May 25, 2005).  There is no other evidence of injuries to the plaintiffs' business or property.  As a result, the only number this Court should consider trebling is Mr. Gaide's estimate.  There simply is no evidence to support an award of "collection expense damages" of $500,000, therefore, there is no basis to treble that amount.  Again, Mr. Cadle testified that he spent $494,000 "chasing the assets", but without any more specificity, this Court cannot find $494,000 in business or property loss (i.e. in damages to be trebled).  In fact, if the Court reviews Mr. Cadle's testimony, it seems clear that he was not discussing "collection expense damages" from Cadle I, but "the cost of the suit" in the

present case.  As a result, there is no basis by which this Court should treble the jury award of $500,000.

### III. A New Trial Should Be Granted Because The Jury Deliberated on a RICO Claim Having Heard Evidence of Negligence

The evidence regarding the procedural history of this case is not in dispute by any of the parties:

    a.    suit was initially commenced in April 2001;

    b.    for 4+ years, the only allegation against the defendants was that of RICO;

    c.    in fact, at the time of jury selection (May 5, 2005), the only claim against the defendants was that of RICO;

    d.    on May 12, 2005, 4 years after suit was commenced, and one week after jury selection, the plaintiffs requested leave to amend their complaint to include allegations of negligence <u>for the first time</u>;

    e.    the Court granted plaintiffs request over objection on May 19, 2005, four days before trial;

    f.    trial occurred during the next three weeks (May 23 – June 10, 2005) as to both the negligence claim and the RICO claim;

    g.    on June 8, 2005, during its charging conference, the Court advised the parties that it was dismissing the negligence claims from the case;

    h.    the Court did so *sua sponte*; none of the defendants requested that the negligence claims be dismissed.

The prejudice to the defendants cannot be overstated.  For 4+ years, the allegations were limited to RICO, the standard for which was "specific intent to defraud."  However, four days before trial, the Court changed the standard to "knew or should have known."

- 6 -

Though the Court ultimately removed the negligence claim from the case, the damage had already been done – the jury heard a slew of negligence evidence that would otherwise been inadmissible in a claim limited to RICO.  Moreover, having heard that evidence, the jury was not allowed to consider the claim of negligence, they were given only an "all or nothing" option of RICO.  Clearly, the amendment should not have been allowed four days before trial.  Even more clearly, the jury should not have heard evidence of negligence throughout the course of the trial, particularly if the Court was inclined to dismiss it *sua sponte* at the end of the case.  Lastly, having allowed the amendment, and the evidence that came with it, the Court should have allowed the jury the option of finding the lesser offense of negligence.

In short, the prejudice to the defendants should be clear.  The Court changed the scope of the case four days before trial; it allowed evidence under this new theory of recovery, evidence that would otherwise have been inadmissible; it removed the new theory from the case *sua sponte* after the evidence was complete; and it allowed the jury to deliberate on a RICO claim using evidence from a negligence claim.  Again, the prejudice should be clear, therefore, the only way to rectify it is to grant a new trial.

### IV.   The Court Should Order a New Trial Due to the Misconduct of Plaintiff's Counsel

The Court will recall that it reserved judgment on two separate motions for mistrial.  Each of the reasons for mistrial are too numerous to mention, but respectfully, all have one common element – the misconduct of plaintiffs' counsel.  In particular, counsel repeatedly

testified in front of the jury, read from depositions transcripts, read from documents not in evidence, read from documents specifically precluded from evidence, made inappropriate comments in the jury's presence, made inappropriate comments during closing arguments, and vouched for the credibility of his witnesses. Clearly, the combined effect of some or all of these acts prejudiced the jury, tainted the trial, and most importantly, eliminated any possibility of a level playing field. As a result, the Court should grant a new trial to avoid any further harm from occurring.

Most egregiously, counsel's closing argument was replete with improper personal references to himself, touting his "expertise" in RICO, fulfilling his lifelong goal of bringing corrupt attorneys to justice, fulfilling his parents' career aspirations, and satisfying his "life's work" in search for civil RICO justice. In addition:

1. Attorney Armstrong specifically identified his two crucial witnesses [Gaide; Cadle] as his "friends", and improperly vouched for their credibility;

2. Attorney Armstrong frequently ignored rulings by the Court on evidentiary matters. On some items (e.g.: the lawyers' letter) he repeatedly tried to revisit the issue in front of the jury, he repeatedly tried to introduce the same letters into evidence, he asked questions of witnesses quoting portions of the letters, he asked questions of witnesses quoting portions of deposition testimony, and he often referred to letters that had been excluded from evidence by reading depositions transcripts that quoted portions of those same letters;

3. Attorney Armstrong told the Court (in the jury's presence) that the letters were "critical" to his case, directly implying that there was strong evidence of misconduct by the defendants that was not being shown to the jury;

4. Attorney Armstrong further stated in the jury's presence "Judge, I really need those letters";

5. he also publicly declared (again, in the jury's presence) "Judge, you're prohibiting me from putting on my case";

6. respectfully, the Court compounded the problem by not admonishing counsel despite several requests to do so, and by explaining to the jury the basis for excluding the letters, specifically referring to "lawyers' letters" during this explanation, which unfortunately added to the suspicion created by Mr. Armstrong about the letters;

7. Attorney Armstrong improperly referred to witnesses who were not called to testify, at one point even suggesting a negative inference;

8. Attorney Armstrong personally vouched for the importance of the case, and of the jury's "need" to do something about "bad people";

9. he spoke of his "20 years experience in RICO matters," then proceeded to lecture the jury on the law;

10. he complained about "speaking objections" from defense counsel while persistently doing so himself;

11. he repeatedly and persistently asked compound questions, prefacing his questions with speeches containing embedded misrepresentations and mischaracterizations that were inadmissible;

12. he frequently prefaced an objection with "Judge, you know I don't like to object, but . . ." which was intended to infer that the defendants like to object;

13. he improperly linked defendant Bainer's early representation of Crocker House to the Crocker House checkbook that occurred a decade later; and

14. he referred to Thompson and Peck, Inc. as a multi-million dollar company when there was no evidence of this.

Clearly, the cumulative effect of Attorney Armstrong's misconduct was to compromise the fairness of the trial. In fact, counsel's conduct pales in comparison to a number of cases where new trials have been ordered. See <u>Floyd v. Meachum</u>, 907 F.2d 347, 354 (2d Cir. 1990) (prosecutor impermissibly asked jury to pass on her personal integrity and

personally vouched for a witness's credibility); Koufakis v. Carvel, 425 F.2d 892, 904 (2d Cir. 1970) (improper personal references and reference to matters outside the record). Indeed, plaintiff's counsel's arguments were the type of improper summation that went far beyond "permissible limits of fair comment" and thus, require a new trial, as were required in Floyd and Koufakis. As the Second Circuit noted in Koufakis:

> We think it clear that [plaintiffs' counsel] so persistently and continuously abused the freedom afforded counsel that his presentation – particularly in summation – was based 'on appeal to passion and prejudice not warranted by the proof' … [W]here the number and gravity of counsel's improprieties reach the level presented by this record, the admonitions by the trial judge in the charge and in response specific objections cannot possibly serve to cure all the prejudice.

Id.

Lastly, the Court's failure to admonish Armstrong for *any* of his misconduct – often in the presence of the jury, after repeated requests from defense counsel – added to the problem. In addition, the Court's attempted curative instructions were insufficient to prevent the harm that flowed from Counsel's misconduct. As a result, the Court should grant a new trial to avoid any further harm from occurring. The Court should do so with costs to all defendants for having to prepare and conduct a second trial.

**VI.   The Court Should Order a New Trial Due the Jury's Premature Discussions/ Deliberations**

Lastly, the Court should order a new trial under Rule 59 because the entire trial was tainted by the Court's instructing the jury that it could discuss and/or deliberate on the case throughout the trial, as opposed to admonishing the jury not to discuss the case until it was

submitted to them.  Respectfully, the Court's instruction was inconsistent with well-established rules followed by the federal courts and state courts in both criminal and civil cases.  It constituted reversible error and improperly prejudiced the defendants.  Accordingly, a new trial should be ordered.

"'It is a generally accepted principle of trial administration that jurors must not engage in discussions of a case before they have heard both the evidence and the court's legal instructions and have begun formally deliberating as a collective body.'" United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003), cert. denied, 540 U.S. 859 (2003) (quoting United States v. Resko, 3 F.3d 684, 688 (3d Cir. 1993)).  Jurors are admonished not to engage in premature deliberations in order to protect a defendant's Sixth Amendment right to a fair trial by an impartial jury as well as his or her due process right to place the burden on the plaintiff to prove its case under the governing burden of proof.  See Cox, 324 F.3d at 86.  These principles apply with equal force to civil litigants' due process rights that are guaranteed by the Fifth and Seventh Amendments.  Steele v. Atlanta Maternal-Fetal Medicine, P.C., 271 Ga. App. 662, 610 S.E. 2d 546, 552 (2005). Here, the Court instructed the jury that it could engage in such deliberations or discussions, which is a direct violation of the defendants' Fifth and Seventh Amendment rights.

### A.     Federal Case Law Supports The Granting of A New Trial Based on Premature Discussions/Deliberations

The two leading cases on this issue in the federal courts have come from the Third and Eighth Circuits.  First, in Winebrenner v. United States, 147 F.2d 322 (8th Cir. 1945),

the defendants were charged with a conspiracy to defraud the United States in connection with the procurement of military aircraft equipment. As part of its instructions to the jury, the district court on the first day of the trial instructed the jury that they could discuss the case among themselves prior to the conclusion of the case. Id. at 326-27. On appeal, the Eighth Circuit reversed the judgment against the defendants and remanded the case with directions that a new trial be granted. The court stated that whether guilty or innocent, the defendants were entitled to a fair trial by an impartial jury under the Fifth and Sixth Amendments to the Constitution. Id. at 327. Thus, the Eighth Circuit concluded that the district court's instruction regarding deliberations amounted to reversible error. Specifically, the Winebrenner court recognized:

> Under the court's admonition the jurors were warranted as a result of discussion among themselves, either in small groups or large ones, to form opinions so long as such opinions were not so absolutely fixed that they would 'prevent you from changing after you had heard all of the evidence in the case.' Such an opinion of necessity could result from discussion of only part of the evidence, the evidence not having all been submitted. Such an opinion once formed could only be removed, if at all, by evidence. This in effect shifted the burden of proof and placed upon the defendants the burden of changing by evidence the opinions thus formed. A juror having in discussion not only formed but expressed his view as to the guilt or innocence of the defendant, his inclination thereafter would be to give special attention to such testimony as to his mind strengthened, confirmed or vindicated the views which he had already expressed to his fellow jurors, whereas, had there been no discussion and no expression of tentative opinion, he would not be confronted with embarrassment before his fellow jurors should he change the tentative opinion which he might entertain from hearing evidence.

Id. at 328.

Respectfully, the Winebrenner court's instruction was much more restrictive than our instruction, however, it was still grounds for a new trial. The reason, of course, is that the court recognized the rule against premature jury deliberations has long been a part of trials in American courts. For example, as part of its reasoning, the Eighth Circuit noted that allowing premature deliberations by jurors was inconsistent with Chief Justice Marshall's analysis in the trial of United States v. Aaron Burr, C.C. Va., Fed. Cas. No. 14, 692g. which commented on the qualifications of a juror who may have heard testimony at a previous trial:

> Such a person may believe that he will be regulated by testimony, but the law suspects him, and certainly not without reason. He will listen with more favor to that testimony which confirms, than to that which would change his opinion; it's not to be expected that he will weigh[ ] evidence or argument as fairly as a man whose judgment is not made up in the case.

Winebrenner, 147 F.2d at 328. The Winebrenner court also quoted the court's analysis in Pool v. Chicago B. & O. R. Co., C.C. Iowa, 6 F. 844, 850 (1881). In Pool, the court emphasized:

> There is no right more sacred than the right to a fair trial. There is no wrong more grievous than the negation of that right. An unfair trial adds a deadly tang to the bitterness of defeat.
>
> Now, the human mind is constituted so that what one himself publicly declares touching any controversy is much more potent in biasing his judgment and confirming his predilections than similar declarations which he may hear by other persons. When most men commit themselves publicly to any fact, theory, or judgment they are too apt to stand by their own public declarations, in defiance of evidence. This pride of opinion and of consistency belongs to human nature.

Winebrenner, 147 F.2d at 328.

The court should note that Pool v. Chicago B. & O. R. Co. is a civil case.

The Eighth Circuit also identified several reasons for its holding that premature deliberations were inconsistent with the right to a fair trial by an impartial jury and due process:

> If … the jurors may discuss the case among themselves, either in groups of less than the entire jury, or with the entire jury, they are giving premature consideration to the evidence.  By due process of law is meant 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.'  The jury should not discuss the case among themselves because, first, they have not heard all the evidence; second, they have not heard the instructions of the court as to how this evidence is to be considered by them, and neither have they heard the arguments of counsel.

Winebrenner, 147 F.2d at 328.

Second, in United States v. Resko, 3 F.3d 68 (3d Cir. 1993), the defendants were convicted of a conspiracy to distribute cocaine and heroine.  On appeal, the Third Circuit held that the district court erred by refusing to conduct a more searching inquiry into the potential prejudice to the defendants from the jury's misconduct.  That misconduct was the jury's engaging in premature deliberations.  Id. at 688-95.  The Third Circuit emphasized that "it is now firmly established and practiced in federal court, as well as in most, if not all, state courts" that jurors must not engage in discussions of a case before they have heard both the evidence and the court's legal instructions and have begun formally deliberating as a collective body.  Id. at 688-89.  Consequently, the Third Circuit also recognized the well-established practice to admonish the jury at the outset of a trial not to discuss the case with anyone before the conclusion of the trial.  Id. at 688.  In particular, the court

noted that the treatise by Devitt and Blackmar on federal jury trials, which is used by "most federal trial judges," contained a form preliminary instruction admonishing jurors not to discuss the case among themselves or with anyone else. Id. at 689 n.3.[1]

Furthermore, the Resko court identified six reasons for its determination that premature deliberations or discussions by the jury required a new trial.

1. first, since the prosecution (or in a civil case the plaintiff) presents its evidence first, any premature discussions are likely to occur before the defendant has a chance to present all of his or her evidence, and it is likely that any initial opinions formed by the jurors, which will likely influence other jurors, will be unfavorable to the defendant for this reason. 3 F.3d at 689;

2. second, once a juror expresses his or her views in the presence of other jurors, he or she is likely to continue to adhere to that opinion and to pay greater attention to evidence presented that comports with that opinion. Id. Consequently, the mere act of openly expressing his or her views may tend to cause a juror to approach the case with less than a fully open mind and to open to the publicly expressed viewpoint. Id;

3. third, the jury system is meant to involve decision-making as a collective, deliberative process and premature discussions among individual jurors may thwart that goal. Id;

4. fourth, because the trial court provides a jury with legal instructions only after all the evidence has been presented, jurors who engage in premature deliberations do so without the benefit of the court's instructions. Id;

---

[1]/   The Devitt and Blackmar treatise cited by the Resko court is currently in its fifth edition. The lead author is now Chief Judge Kevin F. O'Malley of the United States District Court for the Northern District of Indiana. Section 5.10 of the current volume of the treatise contains a statement indicating that jurors "should be admonished not to converse or communicate among themselves … until [the case] has been finally submitted to them." Appendix E to the current version of the treatise contains a preliminary jury instruction in civil and criminal cases which instructs the jury not to discuss the case until the case is submitted to it. Kevin F. O'Malley, Jay E. Grenig & William C. Lee, 1 Fed. Jury Prac. & Instr., § 5.10, App. E (5th ed.). See id. § 9.01 n.1 ("Obviously, it is expected that the jury will not begin deliberations until after it has been instructed to do so by the court."). This preliminary instruction is consistent with the instruction contained in § 6.05 of the Benchbook For U.S. District Court Judges issued by the Federal Judicial Center. The Benchbook is available through WESTLAW.

5. fifth, if premature deliberations occur before the defendant has had an opportunity to present all of his or her evidence, jurors may form premature conclusions about the case, which will, in effect, shift the burden of proof to the defendant, who has "'the burden of changing by evidence the opinion thus formed.'" Id. (quoting Winebrenner, 147 F.2d at 328); and

6. finally, requiring the jury to refrain from prematurely discussing the case with fellow jurors helps protect a defendant's Fifth, Sixth or Seventh Amendment right to a fair trial as well as his or her due process right to place the burden on the plaintiff to prove its case under the burden of proof. Id. at 689-90.

### B. State Law Also Supports The Granting of A New Trial Based on Premature Discussions/Deliberations

State appellate courts have also concluded that premature deliberations by jurors are inappropriate and require the granting of a new trial. See e.g., Commonwealth v. Kerpan, 498 A.2d 829, 831-32 (Pa. 1985); State v. Castonguay, 481 A.2d 56, 66-68 (Conn. 1984); State v. Washington, 438 A.2d 1144, 1147-49 (Conn. 1980); State v. Gill, 255 S.E.2d 455, 457 (S.C. 1979). In fact, one of the leading state court decisions was rendered by the Connecticut Supreme Court in 1980. In State v. Washington, the trial court instructed the jurors that they could discuss the testimony and the evidence amongst themselves prior to the conclusion of the evidence and the final jury instructions. 438 A.2d at 422. The Connecticut Supreme Court reversed the defendant's conviction and remanded the case for a new trial. The Court recognized that "[b]y permitting the jurors to discuss the case among themselves, either as a whole or in groups, the trial court authorized and encouraged them to give premature consideration to the evidence

presented – consideration unaided by the final instructions of the trial court as to the law to be applied to the facts of the case." Id. at 1147. [2]

In addition, the Washington court emphasized that "[a]lmost without exception, where the issue has been properly raised, every court has held that an instruction permitting the jurors to discuss the case before its submission to them constitutes reversible error." Id. at 1148. It specifically refused to draw a distinction between discussions and deliberations. Id. at 1148-49. Instead, it held that premature deliberations by the jury violated the defendant's rights under the Sixth and Fourteenth Amendments to the Federal Constitution and under the Connecticut Constitution. Id. at 1147 & nn. 4-5. Indeed, the Court even concluded that because the error was of such a constitutional magnitude, the defendant did not have to prove prejudice to warrant a new trial. The burden was on the plaintiff/State to show that the error was harmless beyond a reasonable doubt. Id. at 1149. This rationale was reiterated in Castonguay, where the Connecticut Supreme Court again rejected an argument that the defendant must establish prejudice to receive a new trial if the trial judge allows and instructs jurors to engage in premature deliberations. 481 A.2d at 67 & n.19 (prejudice is presumed). [3]

---

2/    The Washington case was cited favorably by the Connecticut Supreme Court in 1988 in the case of State v. Wood, 208 Conn. 125, 131 (1988). One of the justices of the Wood panel, who agreed with the premise of Washington was The Honorable Alfred Covello.

3/    Though a showing of prejudice is not required, one need look no further than the jury's question after it reached its verdict. As the Court may recall, after the jury reached a verdict, the Court submitted a series of interrogatories to the jury. Upon receiving the interrogatories/special verdict form, the jury asked whether it needed to reach a unanimous verdict in its answers to the interrogatories/special verdict form. Clearly, this question demonstrates that the jury was confused about the process and about its deliberations, confusion that constitutes prejudice to all the parties, particularly the defendants. Accordingly, the court should order a new trial. See Fed. R. Civ. P. 59.

Again, these principles apply equally to the right of civil litigants. Steele, *supra*. "[I]t is improper for jurors to discuss a case among themselves until all the evidence has been presented, counsel have made final arguments, and the case has been submitted to them after final instructions by the trial court." Hunt v. Methodist Hospital, 240 Neb. 838, 485 N.W. 2d 737, 743 (1992), quoting State v. Washington, 182 Conn. 425. There is no principled rationale that distinguishes the universal prohibition against early deliberations by jurors in criminal cases from civil cases. In both instances, discussion of the evidence before it is concluded, before closing arguments, and before the judge's instructions, violates the defendants' constitutional right to a fair trial. "As confirmed by the case law, the constitutional right in both civil and criminal cases protects parties from juror discussions prior to deliberations. Anything short of silence is juror misconduct, and at some point nondeliberation dialogue prejudices a party and voids a trial." Id., 485 N.W. at 744.

In short, the defendants' right to a trial by an impartial jury has been violated. The procedure employed by the Court was both inappropriate and unconstitutional. As a result, the defendants' are entitled to a new trial under Federal Rule 59.

### VII.    CONCLUSION

For all of the foregoing reason, the defendants hereby request that this Court order a remittitur, or alternatively, that this Court order a new trial.

Respectfully submitted,

DEFENDANTS,
LEONARD A. FASANO
FASANO, IPPOLITO & LEE, LLC

By_____
    David G. Hill of
    HALLORAN & SAGE  LLP
    Fed. Bar No. ct13435
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    Their Attorneys

## CERTIFICATION

This is to certify that on this 24th day of June 2005, I hereby mailed or hand delivered a copy of the foregoing to:

Edward C. Taiman, Jr., Esq.
Michael G. Albano, Esq.,
Sabia & Hartley, LLC
190 Trumbull Street, Ste. 202
Hartford, CT 06103-2205
**For Plaintiffs The Cadle Company &**
**D.A.N. Joint Venture, A Limited Partnership**

Barbara L. Cox, Esq.
William F. Gallagher, Esq.
Gallagher & Calistro
1377 Ella Grasso Boulevard
P. O. Box 1925
New Haven, CT 06509-1925
**For Defendant Stanley Prymas**
**& Thompson & Peck, Inc.**

F. Dean Armstrong, Esq.
Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, IL 60422
**For Plaintiffs The Cadle Company &**
**D.A.N. Joint Venture, A Limited Partnership**

Bradley K. Cooney, Esq.
Bradley K. Cooney, P.C.
69 Island Avenue
Madison, CT 06443
**For Defendant Thompson & Peck, Inc.**

Mary Anne Charron, Esq.
R. Bradley Wolfe, Esq.
Gerald R. Swirsky, Esq.
Gordon, Muir & Foley
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106-5123
**For Defendant Todd R. Bainer, LLC**

Todd R. Bainer, Esq.
Todd R. Bainer, LLC
71 Cedar Street
Branford, CT 06405
**For Defendant Todd R. Bainer**

Roger J. Frechette, Esq.
Frechette & Frechette
12 Trumbull Street
New Haven, CT 06511
**For Defendant Leonard Fasano**

_____
David G. Hill

702028_1.DOC