Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1

Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)

(Cite as: 1999 WL 778586 (D.Or.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Oregon.
Tim SCHMITZ, Plaintiff,
v.
CITY OF WILSONVILLE, Arlene Loble and
Cynthia Thompson, in both their
individual and official capacities, Defendants.
No. CV-96-1306-ST.

Sept. 17, 1999.

OPINION AND ORDER

STEWART.

### INTRODUCTION

*1 On September 13, 1996, Plaintiff, Tim Schmitz ("Schmitz"), filed a Complaint alleging that his former employer, the City of Wilsonville, and other individuals violated his rights of free speech, association, petition, and assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution based on their retaliation against him for engaging in union activities while he worked as a bus driver for the City of Wilsonville. At the final pretrial conference on May 7, 1999, this court ruled on the admissibility of proposed exhibits to be admitted at trial and other motions in limine. Subsequently, Schmitz dismissed several individuals as defendants, leaving the City of Wilsonville, Arlene Loble ("Loble"), and Cynthia Thompson ("Thompson") (collectively "defendants") as the only remaining defendants. A three-day jury trial commenced on May 11, 1999, resulting in a verdict for all defendants on all claims on May 14, 1999.

Now before the court is plaintiff's post-trial motion for a new trial pursuant to FRCP 59 (docket # 83). For the reasons stated below, plaintiff's motion is denied.

### STANDARDS

After a jury trial, the court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FRCP 59(a)(1). "A district court has discretion to grant a new trial if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.' " *Rattray v. City of National City,* 51 F.3d 793, 800 (9th Cir1994), *cert denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 39 (1995), quoting *Roy v. Volkswagen of Am., Inc.,* 896 F.2d 1174, 1176 (9th Cir1990).

"The existence of substantial evidence does not, however, prevent the court from granting a motion for a new trial pursuant to Fed.R.Civ.P. 59 if the verdict is against the clear weight of the evidence." *Landes Constr. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir1987). "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.' " *Roy,* 896 F.2d at 1176, quoting *Wilhelm v. Associated Container Transp. (Australia) Ltd.,* 648 F.2d 1197, 1198 (9th Cir1981). The trial court also "need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co.,* 833 F.2d at 1371.

However, in determining whether to grant a motion for a new trial, the trial judge must balance two important considerations.
> On the one hand, the trial judge does not sit to approve miscarriages of justice. His power to set aside the verdict is supported by clear precedent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 1**

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)
**(Cite as: 1999 WL 778586 (D.Or.))**

at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his doubts in the matter. Probably all that the judge can do is to balance these conflicting principles in the light of the facts of the particular case. If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.
*2 *Id* at 1371-72.

### DISCUSSION

Schmitz seeks a new trial because: (1) the jury's verdict is against the clear weight of the evidence; or, in the alternative, (2) the court erred in excluding the testimony of Randy Watson ("Watson") regarding the City of Wilsonville's investigation of him in May-July 1994, when he was active as the union's grievance officer, the search of his desk as part of that investigation, and the surrounding events including, among other things, the City of Wilsonville's instruction to him that he could not process employee grievances.

I. *Weight of the Evidence*

A. *Schmitz' Arguments*

Schmitz argues that the jury's verdict is against the clear weight of the evidence because of all the evidence he presented at trial. First, the evidence was clear that he had engaged in protected speech and association (union) activity. Thompson was the City of Wilsonville's Transit Director and Schmitz' supervisor at the time of his termination. Schmitz presented evidence that he had informed Thompson that she violated Oregon law by not paying transit employees for traveling to Portland to be fitted for uniforms and had contacted Helen Moss ("Moss"), the Oregon Public Employees Union field representative, about the wage violation and enlisted her help to ensure that the employees were paid. He also presented evidence that he informed Thompson about bad brakes on city buses, told her that something should be done about the problem, that it was against Oregon law to drive buses over 65 miles per hour on freeways, that Oregon law required bus drivers, not other employees, to perform the full pre-trip bus inspections, and that overtime waivers had to be voluntarily signed and personally declined to sign such a waiver. Schmitz further presented evidence that in his capacity as an elected union representative, he was vocal at bargaining sessions with the City of Wilsonville and was terminated in November 1994, a short period of time after he declined to sign an overtime waiver.

Second, Schmitz argues that he clearly tied his protected speech and union activity to his termination because Thompson knew of his protected speech and union activity. This conclusion is based on evidence that Thompson was at a bargaining session where he was vocal regarding scheduling issues and that he personally informed her of all of the laws the City of Wilsonville transit department was violating regarding its employees. He argues that Loble, City Manager for the City of Wilsonville and Thompson's boss, testified that Thompson informed her about Schmitz' union activities and that Loble knew that Schmitz had commented about pay for employees who traveled to Portland to be fitted for uniforms. He also points to testimony at trial that Moss informed the City of Wilsonville that Schmitz had been elected as a union representative. All of this evidence, Schmitz argues, proves that defendants knew of his protected activity at the time they terminated him.

*3 Defendants introduced evidence at trial of a legitimate, non-discriminatory reason for terminating Schmitz. That evidence showed that Thompson recommended to Loble, who had ultimate hiring and firing authority for all employees of the City of Wilsonville, that Schmitz should be terminated because he did not listen to her, did not respect her, and suffered from a "boss complex." Schmitz argues that this legitimate, non-discriminatory reason is a mere pretext because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3

Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)

**(Cite as: 1999 WL 778586 (D.Or.))**

during cross examination, Thompson could not point to a single instance where Schmitz did not listen to or did not respect her. Schmitz bolsters his argument of pretext with his good job evaluations and one instance when Thompson told Schmitz not to smoke or engage in horseplay, to which he complied.

At trial, defendants also argued that they terminated Schmitz based on items noted in a mid-performance evaluation. Schmitz argues that this document is unreliable because it was not located in his personnel file, was neither shown to him nor discussed with him, and allegedly surfaced after the litigation began. Further, Schmitz argues that Thompson stated in her deposition that she had not made the decision to terminate him at the time of his mid-performance evaluation.

Schmitz further argues that Thompson's irritation helps prove her motivation to retaliate and that Schmitz' termination shortly after he refused to voluntarily sign an overtime waiver gives rise to an inference that his termination was in retaliation for his union activities. Schmitz argues that Loble knew of the turmoil in the transit department regarding terminations and intimidation of union employees shortly before Schmitz was hired and that Loble testified that she did not want to inform Thompson about any specifics or provide her with any training regarding these problems. Further, Loble admitted that she was upset when union officers raised issues of public concern in a letter to the city council regarding Loble's performance as City Manager and the problems in the transit department, including Schmitz' termination.

B. *Analysis*

As with all employment cases, this case rested completely on credibility and factual issues best suited for a jury to determine. Although Schmitz believes that he was terminated solely because of his involvement in union activities, Thompson testified that he did not respect her as a supervisor and did not listen to her. She analogized Schmitz' probationary period to an engagement to see if she and other transit department employees could work and get along with Schmitz and to see if he would fit in with the transit department. Defendants also introduced evidence to the jury regarding the many employment positions Schmitz held in a relatively short period of time prior to being hired by the City of Wilsonville. This evidence supported defendants' theory that Schmitz has a "boss complex" which Thompson discovered during Schmitz' probationary period and which led her to believe that Schmitz did not respect her authority and would not listen to her. Further, defendants relied on Schmitz's mid-performance evaluation in deciding to terminate him.

*4 The jury was free to accept defendants' legitimate, non-discriminatory reasons for terminating Schmitz or accept Schmitz' unlawful reason. It chose the latter and this court finds no reason to disregard that finding. The jury considered and apparently rejected Schmitz' objections regarding his mid-performance evaluation. Further, Thompson's failure to decide to terminate Schmitz at the time she completed his mid-performance evaluation does not mean that she could not later rely on that evaluation as supporting evidence to terminate him.

Both sides had a full and fair chance to introduce evidence and present and cross examine witnesses to set forth their versions of what happened. No reason exists to believe that any of the witnesses testified untruthfully at trial or that any evidence introduced at trial was false. All of Schmitz' evidence rests on inferences and circumstantial evidence. When a plaintiff's case rests predominantly, if not entirely, on inferences and circumstantial evidence, a miscarriage of justice does not occur if the jury rejects the plaintiff's claims. Such cases should be properly determined by a jury. This court is mindful that "respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases a judge should accept the findings of the jury." *Landes Constr. Co.,* 833 F.2d at 1371.

Accordingly, the jury's verdict was not against the clear weight of the evidence and a miscarriage of justice will not occur by upholding the jury's verdict.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 4

Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)

**(Cite as: 1999 WL 778586 (D.Or.))**

II. *Vouching*

Schmitz argues that even if this court does not find that the jury's verdict is against the clear weight of the evidence, it can still order a new trial based on defense counsel's improper vouching for Thompson's credibility during closing arguments. Schmitz objects to the following statement made by defense counsel in his closing argument:

> Cynthia Thompson, from the day I have been acquainted with her, has had the most integrity and credibility of anyone I have met in one of these cases, with all due respect to Ms. Loble. It is not a comment on her credibility. But, when you all got the chance to watch Cynthia Thompson testify, you heard her. Hopefully, you watched her body language. You looked her in the eye. You decide.

Normally a party must object to improper vouching before a court will entertain a motion to set aside a jury verdict. Although Schmitz' counsel did not object at trial, he argues that the court can order a new trial based on plain error vouching, relying on *United States v. Leon-Reyes,* 177 F.3d 816 (9th Cir1999).

In the Ninth Circuit, " '[v]ouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony.' " *Id* at 821, quoting *United States v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir1993). In *Leon-Reyes,* the prosecutor vouched for his own credibility during his closing argument. Although the court found that prosecutor's closing argument to be objectionable, it did not rise to the level of plain error vouching.

*5 It is unclear whether the improper vouching rule only applies to prosecutors in criminal cases or whether it applies to all attorneys regardless of the nature of the case. Schmitz' counsel has not pointed to, nor could this court find, any case applying the improper vouching rule in a civil case.

Logically, the improper vouching rule would only apply in criminal cases in which the government is a party. The theory behind this rule is to ensure that criminal defendants receive a constitutionally fair trial. Because jurors will presumably believe the government if it states that a witness or some party is truthful, courts forbid prosecutors from vouching for the credibility of any witness during trial. However, in a civil case in which the government is not a party, the concern that jurors will be swayed by one attorney's comments on the evidence or a witness's credibility does not exist.

Furthermore, the improper vouching rule does not derive from any statute or the common law. Instead, it was established by the courts when deciding whether a criminal defendant has received a constitutionally fair trial. Both the American Bar Association Model Rules of Professional Conduct and Oregon's Code of Professional Responsibility specifically forbid attorneys from asserting their personal opinion as to the credibility of a witness. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.4(e) (1983); Oregon Code of Professional Responsibility, DR 7-106(C)(4) (1999). However, these rules are ethical rules to which attorneys must comply but do not have the force of law.

Because the improper vouching rule only has been applied in criminal cases when a prosecutor has personally commented on witness's credibility, and such conduct only is prohibited by ethical rules which do not have the force of law, this court declines to apply that rule in a civil case in which the government is not a party.

Even if the improper vouching rule applies in civil cases, this court would not order a new trial in this case because any vouching that may have occurred did not affect any substantial right of Schmitz. This court must first determine whether vouching occurred before making a determination as to whether it was plain error vouching. To determine whether vouching has occurred, the Ninth Circuit considers the following factors:

> the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 5
Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)
**(Cite as: 1999 WL 778586 (D.Or.))**

witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.
*United States v. Rudberg*, 122 F.3d 1199, 1204 (9th Cir1997), quoting *Necoechea*, 986 F.2d at 1278.

*6 Defense counsel's statement implied that he had extra-record knowledge and the capacity to monitor Thompson's truthfulness. He stated that Thompson has "the most integrity and credibility of anyone I have met in one of these cases." This statement implies that he is familiar with employment termination cases and that Thompson is more credible than other people in employment termination cases.

His statement also completely rests upon his personal opinion and experiences. He based his remarks on his past experience in litigating employment termination cases. Furthermore, this case was based almost entirely on credibility issues. Thompson's testimony was crucial to the defendants' case and defense counsel's statement directly corresponded to her credibility. Thus, defense counsel improperly vouched for a witness's credibility.

Because Schmitz' attorney failed to object at trial to defense counsel's improper vouching, this court must next determine if plain error vouching occurred. Plain error vouching occurs if the vouching "affect[s] a substantial right or adversely affect the 'fairness, integrity or public reputation of judicial proceedings.' " *Leon-Reyes*, 177 F.3d at 822, quoting *Johnson v. United States*, 520 U.S. 461, 469-71, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

Although defense counsel inappropriately commented on Thompson's credibility, the error did not affect any substantial right of Schmitz. Sufficient other evidence existed to prove that Schmitz was terminated because of his attitudes regarding bosses, as well as problems with his performance. Furthermore, defense counsel told the jury to decide Thompson's credibility itself ("you decide"), which paralleled the court's instruction to the jury to make the ultimate determination regarding credibility issues. The Ninth Circuit has held that a general jury instruction can be sufficient to correct impermissible vouching. *See Rudberg*, 122 F.2d at 1205; *Necoechea*, 986 F.2d at 1280.

Therefore, any impermissible vouching that may have occurred in this case did not rise to the level of plain error vouching. Accordingly, Schmitz' request for a new trial is denied on that basis.

III. *Exclusion of Evidence*

In the alternative, Schmitz argues that this court should order a new trial because it erred by excluding Watson's testimony regarding the City of Wilsonville's treatment of him as a union officer. Specifically, Watson's proposed testimony included that he, as an active grievance officer for the union, was subjected to a groundless investigation by the City of Wilsonville in May and July 1994 which included a search of his desk, and that City of Wilsonville management personnel informed him that he could no longer process employee grievances. Defendants argue that Watson's testimony was not relevant to any of the claims or issues in this case and was properly excluded under Federal Rules of Evidence ("FRE") 401 & 402.

*7 In order to obtain a new trial based on a court's evidentiary ruling, a plaintiff must first demonstrate that the ruling was erroneous and refusal to grant a new trial would be "inconsistent with substantial justice," and second, the error must affect the substantial rights of the parties. FRCP 61.

A. *Schmitz' Arguments*

Schmitz argues that Watson's testimony was critical in showing a pattern or practice of retaliation against transit department employees for engaging in union activities, as well as unlawful motives by the City of Wilsonville and its management

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6

Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)

**(Cite as: 1999 WL 778586 (D.Or.))**

employees. In response to defendants' arguments that any of these acts, if they in fact occurred, are irrelevant to Schmitz' employment and termination, Schmitz maintains that this activity occurred at the time he was hired and when Thompson served as Interim Transit Director prior to being named permanent Transit Director.

Schmitz argues that this activity also occurred at a time when transit workers were objecting to scheduling issues and seeking union assistance, but that the City of Wilsonville slowed the grievance process creating an atmosphere of intimidation. Schmitz believes that Watson's testimony would have helped to prove that the City of Wilsonville's pattern and practice of retaliation continued, and ultimately affected, Schmitz and that Loble herself retaliated on the same basis, or at least was deliberately indifferent to the union retaliation that was taking place.

Finally, Schmitz argues that Watson's testimony would have helped to place into context for the jury issues raised by defense counsel in his closing argument, namely the relationship between the City of Wilsonville and the union to show why mediation failed and why Loble agreed to pay for Watson's attorney fees.

B. *Analysis*

At the pretrial conference, this court excluded Watson's testimony for two reasons: (1) it was irrelevant to the issues in this case under FRE 401 & 402 because the events surrounding the investigation of Watson substantially occurred before Schmitz was hired by the City of Wilsonville and during the time period before Thompson became Transit Director; and (2) it was cumulative evidence based on Plaintiff's Exhibits 11 and 12 which the court admitted, would have confused the jury as to the issues in this case, and would have required the jury to resolve mini-trials regarding Watson's allegations which are irrelevant to this case and which would have needlessly wasted time.

Schmitz relies on *Heyne v. Caruso,* 69 F.3d 1475 (9th Cir1995), to argue that this court erred by not admitting Watson's testimony because that evidence is both relevant and admissible. He argues that this testimony would have showed a tendency by the defendants to demonstrate hostility towards the union and union members and could have allowed the jury to infer that defendants' true reason for terminating Schmitz was based on this hostility. Schmitz' reliance on *Heyne* is misplaced. *Heyne* was a *quid pro quo* sexual harassment case in which the court allowed the plaintiff to admit evidence regarding the defendant's prior sexually harassing conduct to prove motivation. In contrast in this case, Schmitz wishes to admit evidence regarding actions by a former interim transit director against a different union member to prove that hostility existed between the City of Wilsonville and the union. Such evidence is irrelevant to Thompson's motivation and has no bearing on her independent decision to terminate Schmitz.

*8 Although application of *Heyne* is closer to Loble, Watson's testimony also is irrelevant to her motivation. Schmitz argues that because Loble allegedly was deliberately indifferent regarding the investigation of Watson and the search of his desk apparently due to her dislike of the union and union employees, she also was deliberately indifferent regarding Thompson's recommendation to terminate Schmitz. However, the record contained no evidence that Loble knew about and/or approved of the investigation of Watson or the search of his desk when those events occurred. Without that evidence, the investigation and subsequent search are too tenuous to Loble's decision to accept Thompson's recommendation to terminate Schmitz.

Furthermore, under FRE 611, a "court shall exercise reasonable control over the mode and order of ... presenting evidence so as to (1) make the ... presentation effective for the ascertainment of the truth [and] (2) avoid needless consumption of time...." This court determined that Watson's testimony was relevant to the extent it revealed disagreements and hostility between the City of Wilsonville and the union. This court allowed evidence to this extent to be presented to the jury through two exhibits. Those exhibits were a letter from the union to Loble dated July 1994 discussing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 7

Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)

**(Cite as: 1999 WL 778586 (D.Or.))**

the problems it perceived in the transit department (Plaintiff's Exhibit 12) and Loble's responsive letter a few weeks later (Plaintiff's Exhibit 11). These exhibits were given to the jury to consider. However, this court did not allow Watson to testify in detail regarding his investigation or the search of his desk because those actions were specific instances evidencing the hostility between the union and the City of Wilsonville, and the reasons justifying those actions are disputed. This court believed that presenting that evidence would have forced the jury to determine that factual dispute in a mini-trial having no direct bearing on this case. Further, resolution of that dispute is irrelevant to a determination as to the reasons for Schmitz' termination and would have both confused the issues presented to the jury and needlessly wasted time. Under FRE 403 and 611, this court excluded that evidence.

In addition, in response to Schmitz' complaints that he did not have an opportunity to fully present evidence regarding the hostility that existed between the union and the City of Wilsonville during the spring and summer of 1994, this court admitted Plaintiff's Exhibit 8 during Schmitz' rebuttal testimony. That exhibit is a letter from the union officers to all union employees at the City of Wilsonville dated May 24, 1994, presenting the union's version of various events that occurred between May 9 and 24, 1994, including the investigation of Watson and search of his desk by City of Wilsonville personnel. Plaintiff's Exhibits 8, 11, and 12 adequately informed the jury that hostility and problems existed between the union and the City of Wilsonville. The jury was free to accept this evidence as circumstantial proof that the City of Wilsonville disliked union employees and terminated them because of that dislike. However, the jury also was free to reject this evidence as proof that the defendants terminated Schmitz because of this dislike.

*9 Any additional evidence regarding the hostility that existed would have been cumulative and unnecessary. Because the jury received sufficient evidence regarding the City of Wilsonville's alleged dislike of union employees and the hostility that existed between the union and the City of Wilsonville, Schmitz' motion for a new trial based on excluding Watson's testimony is denied.

*ORDER*
For the reasons discussed above, plaintiff's post-trial motion pursuant to FRCP 59 (docket # 83) is denied.

Not Reported in F.Supp.2d, 1999 WL 778586 (D.Or.)

**Motions, Pleadings and Filings (Back to top)**

• 3:96cv01306 (Docket)
(Sep. 13, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.