UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY and D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP, | § | No. 3:01CV531(AVC) |
| | § | |
| Plaintiffs, | § | |
| vs. | § | |
| CHARLES A. FLANAGAN, et al., | § | November 7, 2005 |
| Defendants. | § | |

PLAINTIFFS' RESPONSE TO DEFENDANTS'
JOINT MOTION FOR JUDGMENT AS A MATTER OF LAW

## I.  Introduction

It is readily apparent from the Verdict (Px A) and Supplemental Verdict (Px B) that the Jury in this case did not believe the Defendants' denials about their conspiracy with Charles A. Flanagan ("Flanagan") to hide, transfer and otherwise shield the substantial assets of Flanagan from the judgment claims of Plaintiffs.  While the Defendants' demeanor on the witness stand was indicative of a lack of truthfulness, the pre-litigation documents which were admitted into evidence proved that lack of truthfulness.

After service of the writ of execution on Defendant Thompson & Peck, Inc. ("T&P") on January 5, 1998, Flanagan wrote to Defendant Leonard A. Fasano ("Fasano") as follows:

> Please see enclosed which was served to
> Stanley Prymas this morning. I have not
> received anything as yet, however I should
> be served shortly. My concern here is with

> the money I am currently receiving from
> Thompson & Peck Inc. as a result of the
> Settlement between Mr. Prymas and I.    Is
> this subject to being taken? . . . Kindly
> advise on the above.

(Px 144)

The next day, Flanagan faxed a memo to Fasano as follows:

> Does it make sense for you to contact Atty.
> Bainer on my behalf and find out now what
> the issues are with T&P Inc. over this.  Why
> would Gaide have S. Prymas served over my
> matter?    I also do not want it disclosed
> where my Stock is presently kept.    There may
> by an attempt to grab this stock.    If there
> is a concern here, please let me know if I
> should be doing anything different than what
> is presently being done.

(Px 3)

After a meeting among the Defendants on February 9, 1998 to discuss any creative ways to "skirt the writ", Defendant Todd R. Bainer ("Bainer") summarized what was discussed at that meeting as follows:

> As we discussed at the meeting, no matter
> what you call the monies, and no matter how
> correct that new interpretation may or may
> not be -- now -- the change of positions on
> what the money is characterized as [as to
> how it has been treated in the past by the
> Corporation] in response to the service of
> the execution is troubling to me.  I believe
> we   need   to   go   very   slowly   and   very
> carefully, here. [deleted portion]    That is
> a risk that needs to be seriously assessed .
> . ..

(Px 72-R (emphasis added))

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

On May 8, 1998 Bainer confirmed the "overall plan" to place a restrictive legend on Flanagan's T&P stock:

> As we have discussed previously, part of the overall plan would be to place restrictive language on the original stock certificates to restrict transfer except through the utilization of a Buy-Sell agreement . . . .. This restrictive covenant, which must be placed on the face of the original stock certificates, would most likely make Thompson & Peck, Inc. less attractive to creditors of the individual stockholders.

(Px 128)

On July 28, 1998 Flanagan wrote to Bainer about the plan to put the restrictive legend on Flanagan's T&P stock:

> I received your fax regarding the delivery of the T&P Stock Certificates from Stanley and I. . . . I can deliver the T&P Inc. stock that pertains to me, have the restrictive wording put on my stock and take my stock back with me. Before this is done, it is my understanding that you were going to review with Atty. Ippolito [Fasano's partner] on Tues. 7-28-98 the Buy Sell Agreement for Atty. Ippolito's input.

(Px 56)

And then on December 28, 1998 Flanagan faxed another letter to Bainer confirming the need for joint conduct to defeat the judgment claims of Plaintiffs:

> I thought at our last Board of Directors Meeting that BEFORE anything was <u>agreed</u> to with Atty. Gaide that we would all <u>discuss</u> <u>what</u> <u>each</u> <u>other</u> <u>was</u> <u>to</u> <u>do</u>. If this has changed I need to know as I will move forward with one of my options. If this is every man for himself I will meet with Atty. Gaide and cut a deal that is best for me

-3-

> only.   Maybe Caddle [sic] Co. can give me a
> full release if I surrender my Stock in both
> Corporations.   This is not the time to be
> doing anything of a "voluntary" nature if
> the goal here is to weather this storm.   If
> I am missing something please let me know.
> I will go with Plan B myself.

(Px 122 (emphasis added))

The Jury in our case thoroughly studied the Charge and reviewed the evidence, and made the sound determination that Fasano and his law firm (collectively, the "Fasano Defendants") engaged in conduct in violation of §1962(c) of RICO.  (Px A p. 1 #1)  The Jury, however, found that the Plaintiffs did not prove that Defendants Bainer, T&P and Stanley F. Prymas ("Prymas") also engaged in conduct in violation of §1962(c).  (Id.)

The Jury then found that the Fasano Defendants engaged in conspiratorial conduct in violation of §1962(d) of RICO in connection with the settlement proceeds scheme; the checking account scheme; the shifting stock scheme; and the bankruptcy fraud scheme.   (Px A #2; Px B pp. 1 #1 & 2 #2)   Further, the Jury found that Bainer, Prymas and T&P engaged in conspiratorial conduct in violation of §1962(d) in connection with the settlement proceeds scheme and the shifting stock scheme.  (Px A #2; Px B p. 2 #2)

The trial of this case lasted over two weeks.   The evidence of the Defendants' fraudulent conduct was overwhelming.   The only prejudice that flowed to the Defendants was the prejudice

-4-

that naturally flows from having engaged in a fraudulent scheme. As shown by the following, the trial was fair, the verdict is proper, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

## II.  Standard Of Review

Under Second Circuit precedent, the verdict of a jury in a civil RICO case should not be lightly disregarded.  See DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001); Metromedia Company v. Fugazy, 983 F.2d 350, 361 (2d Cir. 1992).  Under Rule 50 Fed.R.Civ.P.,

> judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for" a party.  Fed.R.Civ.P. 50(a)(1). In ruling on a motion for judgment as a matter of law, the court "must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor." Samuels v. Air Transport Local 504, 992 F.2d 12, 16 (2d Cir. 1993).

See, also, Metromedia, 983 F.2d at 361.

Judgment as a matter of law may not properly be granted under Rule 50

> unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in [Plaintiffs'] favor.  A court must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence.  Thus, judgment as a

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW
190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

> matter of law should be granted only if: (1)
> there is such complete absence of evidence
> supporting the verdict that the jury's
> findings could only have been the result of
> sheer surmise and conjecture, or (2) there
> is such an overwhelming amount of evidence
> in favor of the movant that reasonable and
> fair minded [persons] could not arrive at a
> verdict against [it].

Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000)
(internal citations and quotations omitted). The Court must
"view the evidence in the light most favorable to the party in
whose favor the verdict was rendered, giving that party the
benefit of all reasonable inferences that the jury might have
drawn in his favor." Blue Cross and Blue Shield of New Jersey
v. Philip Morris USA Inc., 344 F.3d 211, 222 (2d Cir. 2003)
(quoting Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir.
1988)). A party, therefore, "seeking to overturn a verdict
based on the sufficiency of evidence bears 'a very heavy
burden.'" Id. As shown by the following, the Defendants have
failed in their burden.

### III. Plaintiffs' RICO Claims For Collection Expense Damages Are Ripe.

The Defendants claim that the Court does not have
jurisdiction over Plaintiffs' RICO claims because Plaintiffs
supposedly lack standing to pursue those claims. According to
the Defendants, Plaintiffs' RICO claims are not ripe because
Flanagan's bankruptcy proceeding has not yet closed. While the
Defendants are correct that Flanagan's bankruptcy proceeding is

-6-

still open, the Defendants are wrong that Plaintiffs' civil RICO claims for collection expense damages are not ripe.

Here Plaintiffs sought two categories of damages recoverable under RICO: (1) lost debt damages and (2) collection expense damages.  See Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1165 (2d Cir. 1993); Bankers Trust Company v. Rhoades, 859 F.2d 1096, 1105-06 (2d Cir. 1988); First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F.Supp.2d 369, 379-80 & 382-83 (S.D.N.Y. 2002), aff'd on other grounds, 385 F.3d 159, 169-70 (2d Cir. 2004).  In the Verdict, the Court defined these two categories of RICO damages as:

> For lost debt damages, the plaintiffs must show by a preponderance of the evidence the amount of the debt that they most likely would have been able to collect from Charles Flanagan, but were prevented from doing so because of the defendant(s)' alleged RICO violations.
>
> For collection expense damages, the plaintiffs must show by a preponderance of the evidence the amount of legal fees and other expenses that they incurred in their unsuccessful attempts to collect on Flanagan's assets which were proximately caused by the Defendant(s)' alleged RICO violations?

(Px A pp. 2-3)

As of November of 1998, the principal amount of Plaintiff's judgment and other debt claims that they held against Flanagan exceeded $1,053,000. (5/2/05 Tr. pp. 13-19 & 21)  Flanagan, however, filed for bankruptcy on February 17, 1999, and

SABIA & HARTLEY, LLC      190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
ATTORNEYS AT LAW          tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

> [Plaintiffs] chased down all his assets and
> all the assets were already transferred out
> of his name and he didn't have anything
> left.

(6/2/05 Tr. p. 28)    The evidence was undisputed that there was no realistic chance of any financial recovery from Flanagan's bankruptcy estate, and that Flanagan was, in essence, "judgment proof". (<u>Id</u>. pp. 29-30 & 57)

With interest, Plaintiffs' loss debt damages exceeded $1,700,000 (6/2/05 Tr. pp. 21 & 31-32), with Plaintiffs' out-of-pocket loss in the amount of $1,500,000. (<u>Id</u>. p. 74)    The amount of legal fees and other expenses that Plaintiffs incurred in their unsuccessful attempts to locate and collect on Flanagan's assets (<u>i.e.</u>, "collection expense damages") was in excess of $500,000.    (6/2/05 Tr. pp. 17-18 & 22-26)

In the Original Verdict the Jury awarded Plaintiffs a total of $500,000 in compensatory damages. (Px A p. 3 #3)    In the Supplemental Verdict the Jury allocated those compensatory damages as $0 for lost debt damages, and the full $500,000 for collection expense damages.    (Px B p. 3 #3)

While the Defendants may have had an argument that any amount of lost debt damages was not yet ripe because of the ongoing Flanagan bankruptcy proceeding (<u>see</u> <u>Stochastic Decisions</u>, 995 F.2d at 1165; <u>Bankers Trust</u>, 859 F.2d at 1105), that argument is irrelevant for purposes of the Defendants' motion because the Jury did not award any lost debt damages.

-8-

There is no argument, however, about the ripeness of Plaintiffs' RICO claims for recovery of collection expense damages. See Stochastic Decisions, 995 F.2d at 165; First Capital Asset Mgmt., 218 F.Supp.2d at 379-80 & 382-83, aff'd on other grounds, 385 F.3d at 169-70. Indeed, in Stochastic Decisions the Second Circuit affirmed the district court's judgment awarding the plaintiff RICO collection expense damages for the attorney fees incurred in pursuing collection of the unsatisfied underlying judgments:

> The district court held . . . that the attorney fees expended in pursuing collection of the judgments constituted RICO damages . . . .
>
> * * *
>
> The asserted RICO violations in this case are defendants' illegal actions in impeding Stochastic's collection of those judgments.
>
> * * *
>
> [W]e explicitly ruled in Bankers Trust that legal fees may constitute RICO damages when they are proximately caused by a RICO violation. . . . We accordingly reject [defendants'] contention that the district court improperly allowed the $50,000 legal fees expended by Stochastic in collecting the New Jersey judgments as (trebled) RICO damages.

995 F.2d at 1165-67.

This Court has previously ruled on the recoverability of Plaintiffs' collection expense damages. In overruling Fasano's motion for summary judgment, the Court ruled:

-9-

> [T]he court concludes that RICO damages are
> nevertheless properly alleged.  "Legal fees
> may constitute RICO damages when they are
> proximately caused by a RICO violation."
> Stochastic Decisions, Inc. v. DiDomenico,
> 995 F.2d 1158, 1166-67 (2d Cir. 1993)
> (incurring legal fees was RICO injury where
> predicate acts included preventing
> plaintiff's collection efforts on
> outstanding judgment); see also Bankers
> Trust Co. v. Rhodes, 859 F.2d 1096, 1105 (2d
> Cir. 1988) (plaintiff suffered RICO injury
> by paying attorneys' fees defending
> frivolous lawsuits started by defendant and
> designed to forestall collection on an
> outstanding bankruptcy claim).
>
> Because legal fees incurred in fighting a
> debtor's attempt to frustrate collection can
> constitute the basis for a RICO injury, and
> the record reflects that, indeed, Cadle
> expended money in fighting the defendants'
> efforts to frustrate collection through
> fraud, the cause of action does not fail for
> want of RICO injury.

Cadle Company v. Flanagan, ____ F.Supp. 2d ___, ____, 2005 WL
1039005 at *12-13 (D. Conn. 5/2/05).

The Court has jurisdiction over Plaintiffs' civil RICO
claims, and Plaintiffs have standing to pursue those claims.
Further, Plaintiffs' claims for recovery of collection expense
damages under RICO were and are ripe.  Accordingly, the Court
should overrule Defendants' Joint Motion for Judgment as a
Matter of Law.

-10-

### IV. (A) There Was Sufficient Evidence To Support The Jury's Award Of $500,000 In Collection Expense Damages.

The Defendants claim that the evidence offered in support of Plaintiffs' collection expense damages is insufficient because Plaintiffs supposedly offered no specific evidence of collection expenses that are allowable in the Second Circuit. In particular, the Defendants contend that Plaintiffs' evidence of collection expense damages improperly included attorneys' fees incurred in obtaining the underlying judgments; attorney's fees incurred in connection with Flanagan's bankruptcy; and attorney's fees incurred in connection with <u>Cadle I</u>. The Defendants are wrong.

At the trial, the Plaintiffs' representative, Dan Cadle, testified that Plaintiffs' damage calculations for collection expense damages included "the amount in attorney's fees and costs that we expended chasing all these assets that kept disappearing on us." (6/2/05 Tr. pp. 17-18) In addition, Mr. Cadle testified as follows:

> Q: And second category, collection expense damages, what are those?

> A: That is checks that I have to write to attorneys and sheriffs and court costs in order to try to get the assets.

\* \* \*

-11-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

Q:  Mr. Cadle, have you included in your
    collection expense damages the attorney's
    fees for prosecuting this suit or is that a
    separate category?

A:  That is a separate category.

Q:  So the figure you're about to give to folks
    on the jury doesn't include the attorney's
    fees for prosecuting this?

A:  That is correct.

                    * * *

Q:  Was there any interest on this collection
    expense damages, sir?

A:  No.

Q:  Okay. Now, what are the collection expense
    damages, sir?

A:  We spent $494,000 on chasing the assets.

                    * * *

Q:  Was there any amount above that?

A:  Yes.

Q:  Can you explain to the jury why you
    deducted --

                    * * *

A:  We didn't include some of our attorney fees
    that we normally would spend to collect on
    a judgment. You know if you are going to
    sue someone you're going to pay an attorney
    fee. That's not part of this 494,000.

    On the Gaide grievance we spent tens of
    thousands.

                    * * *

-12-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

Q:    Did you spend the money but not include it
      in the calculation?

A:    Yes, I did.

Q:    What other major category would that be?

A:    On the Paul Gaide grievance, I paid those
      attorney fees to defend his grievance, I
      did not include those in this calculation.
      There was a contempt order.   I did not
      include those attorney fees in this matter
      either,   in   addition   to   the   normal
      collection expense.

                         *  *  *

Q:    The collection expense damages, that was
      rounding up or rounding down?

                         *  *  *

A:    Rounding down.

(6/2/05 Tr. pp. 18 & 22-26)   Further, Paul Gaide, the attorney

for Plaintiffs in connection with their efforts to collect on

the five underlying obligations owed by Flanagan, testified that

as a result of the Defendants' failure to comply with this

Court's writ of execution, injunction and turnover order, there

were increased legal fees incurred by Plaintiffs, with Attorney

Gaide's increased legal fees totaling approximately $10,000.

(5/25/05 Tr. pp. 127-28)

      In the Court's Charge, the Jury was instructed that:

            Now,   in   this   RICO   case   the   plaintiffs'
            damages   are   limited   to   one,   lost   debt
            damages.   .   .   .   [A]nd, two, money expended
            pursuing the fraudulently concealed monies.

(6/8/05 Tr. p. 115)   And then in the Verdict Form, the Jury was

instructed that:

-13-

> For <u>collection expense damages</u>, the plaintiffs must show by a preponderance of the evidence the amount of legal fees and other expenses that they incurred in their unsuccessful attempts to collect on Flanagan's assets which were proximately caused by the Defendant(s)' alleged RICO violations?

(Px A pp. 2-3)

Plaintiffs expended in excess of $500,000 in their futile efforts to chase down and execute upon Flanagan's scattered assets.   (6/2/05 Tr. pp. 18 & 22-26; 5/25/05 Tr. pp. 127-28) Moreover, the "rounding down" of approximately $494,000 in collection expense damages did not include any interest.   (<u>Id</u>.)

Drawing all reasonable inferences in Plaintiffs' favor, and according due deference to the reasonable inferences of the Jury (<u>see</u> <u>Blue Cross</u>, 344 F.3d at 222), there was sufficient evidence to support the Jury's award of $500,000 in collection expense damages.   <u>See</u> <u>DeFalco v. Bernas</u>, 244 F.3d 286, 324-27 (2d Cir. 2001) (overruling defendants' claim that plaintiffs failed to establish with specificity and certainty damages proximately caused by the defendants' RICO predicate acts).

Moreover, at no time during the trial did the Defendants object to the alleged generality or lack of specificity of the evidence pertaining to Plaintiffs' collection expense damages. In addition, at no time did the Defendants object to the generality or alleged lack of specificity in connection with the Court's Charge or form for the Jury's Verdict.   Accordingly, any

-14-

tardy objections which the Defendants now attempt to assert have been waived.     See DeFalco, 244 F.3d at 315 n. 19 & 317; Metromedia Company v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992). As long ago noted by the Supreme Court:

> Courts are not inclined to grant a new trial merely on account of ambiguity in the charge of the court to the jury, where it appears that [defendants] made no effort at the trial to have the point explained.

Tweed's Case, 83 U.S. 504, 516 (1872).

Finally, contrary to the representations of the Defendants, there was no evidence that Plaintiffs' collection expense damages included any attorneys' fees incurred in obtaining the underlying judgments.     Further, there was no evidence that Plaintiffs' collection expense damages included any unrecoverable bankruptcy attorneys' fees or any unrecoverable attorneys' fees incurred in connection with Cadle I.     See First Capital Asset Mgmt., 218 F.Supp.2d at 379-80 & 382-83, aff'd on other grounds, 385 F.3d at 169-70.

There was sufficient evidence to support the Jury's award of $500,000 in collection expense damages.     Further, the Defendants did not object to, and thereby waived any objections to, the generality or lack of specificity of Plaintiffs' evidence pertaining to collection expense damages, the Court's Charge, or the Verdict Form.     Accordingly, the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

-15-

IV. (B) As Related Parties And Joint Plaintiffs
Seeking Damages For The Same Wrongful
Conduct, Plaintiffs Need Not Separate Out
The Amount Of Damages Suffered
Individually By Each Plaintiff.

The Defendants claim that Plaintiffs cannot recover damages in this suit because Plaintiffs did not separate out the amount of damages suffered individually by each Plaintiff. The Defendants, again, are wrong.

The evidence showed that Plaintiffs are related entities, substantially owned and controlled by Dan Cadle. (6/2/05 Tr. p. 3) The evidence also showed that Plaintiffs sought joint damages in this suit for the same wrongful conduct. (5/25/05 Tr. pp. 127-29; 6/2/05 Tr. p. 57) The Defendants failed to object to the evidence as to the joint damages sought by the Plaintiffs, and failed to object to the Court's Charge and the Verdict Form, which did not require any breakdown as to the damages sought by each individual Plaintiff. Accordingly, any tardy objection by the Defendants at this time as to Plaintiffs' failure to separate out the amount of damages suffered individually by each Plaintiff has been waived. See DeFalco, 244 F.3d at 315 n.19 & 317.

There are no cases which hold that when two related parties have been damaged by the same wrongful conduct, those two related parties, when proceeding as joint plaintiffs, must prove the specific and separate amount of damages incurred by each, as opposed to the total and joint amount of damages incurred by

-16-

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

both.    Indeed,  how  the  Plaintiffs  divide  the  total  amount  of

damages  between  themselves  is  of  no  consequence  to  the

Defendants.    See  Central Vermont Railway Company v. White, 238

U.S.  507,  513-14  (1915);  Jefferson & N.W. Ry. Co. v. Woods, 64

S.W.  830,  831  (Tex.  Civ.  App.  1901).

The  class  action/class  certification  cases  cited  by  the

Defendants  are  not  apposite.    The  issue  in  determining  whether

to  certify  a  class  action  under  Fed.R.Civ.P.  23  (whether

commonality/typicality  of  claims,  including  proof  of  damages,

predominate  over  individual  issues)  is  far  different  than  the

unobjected-to proof of joint collection expense damages suffered

by  two  related  plaintiffs  proximately  caused  by  the  same

wrongful  conduct.

As  related  parties  and  joint  plaintiffs  seeking  damages  for

the  same  wrongful  conduct,  Plaintiffs  did  not  have  to  separate

out  the  amount  of  damages  suffered  individually  by  each

Plaintiff.    See  Central Vermont Railway,  238  U.S.  at  513-14;

Jefferson & N.W. Ry.,  64  S.W.  at  831.    As  such,  it  was  not  error

for  the  Jury  to  make  one  damage  award  to  encompass  the  claims  of

both  related  Plaintiffs.    Id.  Moreover,  the  Defendants  waived

any  complaints  by  (a)  their  failure  to  object  to  the  testimony

pertaining  to  the  joint  damages  sought  by  the  Plaintiffs,  and

(b)  their  failure  to  object  to  the  Court's  Charge  and  Verdict

Form,  which  did  not  require  an  apportionment  of  the  individual

-17-

damages sought by each Plaintiff.  Accordingly, the Defendants'
Joint Motion for Judgment as a Matter of Law should be denied.

### V.    Plaintiffs Have Standing Because They Suffered A Loss In Connection With Unrecouped Collection Expenses.

The Defendants claim that because Plaintiffs supposedly
suffered no out-of-pocket loss, Plaintiffs suffered no RICO
damages.  Once again, the Defendants are wrong.

There was no evidence that Plaintiffs fully recovered the
amounts owed by Flanagan in connection with the underlying
judgments.  Moreover, there was no evidence that Plaintiffs
recouped the over $500,000 that they expended in trying to track
down and execute on Flanagan's deceitfully diverted and
skillfully scattered assets.  Indeed, the evidence was that
Plaintiffs' out-of-pocket loss was $1,500,000.  (6/2/05 Tr. p.
74)  Accordingly, the cases cited by the Defendants do not stand
as a bar to Plaintiffs' recovery of their collection expense
damages.

Indeed, the decision in Stochastic Decisions supports,
rather than undercuts, Plaintiffs' collection expense claims in
this case.  In Stochastic Decisions the Second Circuit affirmed
the district court's disallowance of the plaintiff's attempt to
recover lost debt damages because those claims were not yet
ripe, but found that the plaintiff was entitled to RICO
collection expense damages based on the "defendants' illegal
actions in impeding [plaintiff's] collection of those

-18-

judgments." 995 F.2d at 1166. As recognized by the Second Circuit, "legal fees may constitute RICO damages when they are proximately caused by a RICO violation." Id. at 1167, citing Bankers Trust, 859 F.2d at 1105. Thus, despite the fact that the plaintiff in Stochastic Decisions was not entitled to recover lost debt damages, the plaintiff was still entitled to recover under RICO for its collection expense damages. Id.

There is no evidence that Plaintiffs fully recovered on the underlying judgments, and no evidence that Plaintiffs recouped the over $500,000 that they expended in their unsuccessful efforts to locate and execute upon Flanagan's transitory assets. Unlike the cases cited by the Defendants, the $500,000 in collection expenses incurred by the Plaintiffs was expended as a direct result of the Defendants' RICO violations, and has not been recouped. These damages, therefore, were properly awarded, and the Jury Verdict should not be disturbed. Accordingly, Plaintiffs' unrecouped collection expense damages constitute RICO damages available for recovery in this case, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

### VI. There Is Sufficient Evidence To Support The Jury's Verdict That The Fasano Defendants Violated §1962(c) Of RICO.

In essence, the Defendants ask the Court to accord special treatment to Defendant Leonard A. Fasano because he is an attorney. A license to practice law, however, does not grant an

-19-

attorney immunity from liability for violations of RICO when that attorney crosses the line from being an advocate _for_ his client, into the swamp of being a co-conspirator _with_ his client. As noted by the Eighth Circuit in a similar RICO-fraudulent transfer case:

> An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments. Neither Reves v. Ernst & Young, 507 U.S. 170, 113 (S.Ct. 1163, 122 L.Ed.2d 525 (1993)] nor RICO itself exempts professionals, as a class, from the law's proscriptions, and the fact that a defendant has the good fortune to possess the title "attorney at law" is, standing alone, completely irrelevant to the analysis dictated by the Supreme Court. It is a good thing, we are sure, that we find it extremely difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney). This result, however, is not compelled by the fact that the person happens to be a lawyer, but for the reason that these actions do not entail the operation or management of an enterprise. Behavior prohibited by §1962(c) will violate RICO regardless of the person to whom it may be attributed, and we will not shrink from finding an attorney liable when he crosses the line between traditional rendition of legal services and active participation in directing the enterprise. The polestar is the activity in question, not the defendant's status.

Handeen v. LeMaire, 112 F.3d 1339, 1349 (8th Cir. 1997).

Moreover, this Court has, on two separate occasions, ruled on when it may be appropriate to hold an attorney like Fasano

-20-

liable under §1962(c) of RICO for crossing the line between the traditional rendition of legal services and the morass of co-conspirator:

> While the court agrees with the defendant that attorneys violate no rule of law by simply providing legal advice and services to their clients, the amended complaint alleges conduct far beyond that of simply furnishing legal advice. In particular, the amended complaint alleges that Fasano was a member of an association-in-fact [enterprise] (amended complaint at ¶82.2) and in this capacity: (1) lied to this court for Flanagan about an IRS investigation to shield Flanagan from disclosing asset information; (2) worked with Flanagan to create a fraudulent scheme to hide Flanagan's income from creditors; and (3) fabricated a bogus stock pledge agreement to shield Flanagan's stock from a turn-over order from the court. In the court's view, the allegations alleged conduct "cross[ing] the line between traditional rendition of legal services [and] active participation in directing the enterprise" . . . .

(5/7/02 Order Overruling Fasano Defendants' Motion for Reconsideration of Ruling on Motions to Dismiss)   And then on May 2, 2005 the Court, in overruling the Fasano Defendants' Motion for Summary Judgment, ruled:

> [T]he court concludes that the evidence is sufficient to raise a genuine issue of material fact that Fasano embraced the objectives of the alleged conspiracy and agreed to commit at least two predicate acts in furtherance thereof. In particular, there is evidence that Fasano assisted Flanagan with the settlement proceeds scheme and the shifting stock scheme -- schemes that not only were intended to defraud Cadle from collecting on its lawful claims, but schemes that, through their execution,

-21-

demonstrate a disregard for the rule of law
and the authority of this court.    In
particular, there is evidence that Fasano
may have:  (1)  instructed  Flanagan  to
disregard a court order requiring the
disclosure and a turn-over of Flanagan's
assets; (2) assisted Flanagan in setting up
checking accounts in his minor children's
names in order to hide rental income --
though the court had placed a freeze on
Flanagan's  assets;  (3)  conspired  with
Flanagan, Bainer, and Prymas to wrongfully
change the characterization of payments that
Flanagan was receiving from Thompson & Peck
from settlement proceeds to wages -- all in
an effort to undermine a court order and
property execution; (4) disregarded a turn-
over order of the court and conspired with
Flanagan, Prymas and Bainer to place a
restrictive  legend  on  Flanagan's  stock
certificates; (5) knowingly filed fictitious
notices of compliance in response to a order
of the court requiring the turn over of
Flanagan's stock; and (6) despite knowledge
to the contrary, represented to the court
that  Flanagan  did  not  make  any  asset
transfers after the court's March 9, 1998
order freezing Flanagan's assets.    Such
conduct far exceeds the rendering of legal
advice  and  suggests  participation  in
fraudulent conduct.

Cadle Company v. Flanagan, 2005 WL 1039005 at *11.

Contrary to Defendants' hyperbolic arguments, an attorney

-- Fasano -- is not being held liable for the acts of his

client.   Rather, Fasano and his law firm are being held liable

for their own violations of RICO and their own active

participation in a conspiracy to defraud Plaintiffs by

conspiring to not only violate orders of this Court, but by

conspiring to hide, transfer and otherwise shield Flanagan's

-22-

assets from the judgment claims of Plaintiffs. Indeed, here the Jury was specifically instructed that:

> Now with respect to the attorney defendants in this case, you may not find them liable under 1962(c) of RICO if you find that they did nothing more than furnish legal advice or provide standard legal services to a client or their clients.

(6/8/05 Tr. p. 108)

The RICO statute was enacted to provide new remedies for old problems that had, for whatever reason, slipped between the cracks in the law.  As noted by the Second Circuit, Congress enacted RICO

> to deal with a broadly based, deeply rooted problem by establishing new prohibitions, enhanced sanctions, and new remedies to deal with the activities of those engaged in illegal practices.

Bankers Trust, 859 F.2d at 1103.

While this is not the first case where a plaintiff seeks to hold an attorney accountable under RICO for providing knowing and active assistance in a client's fraudulent transfer scheme[1], this is the first case where a jury has been asked to hold a wayward attorney liable for that wrongful conduct.  Giving honor to our Jury's verdict is not only right under the law and the facts, a resounding judgment by this Honorable Court affirming that verdict just might help slow down the unseemly proliferation of an attorney's active role in assisting a

---

[1]    See Handeen v. LeMaire, 112 F.3d 1339 (8th Cir. 1997); and Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.Tex. 1991).

-23-

client's illegal activities -- fraudulently transferring assets in an effort to avoid a debt that a judge has ordered to be paid.  See Gutierrez v. Givens, 989 F.Supp. 1033, 1047-48 (S.D.Cal. 1997).

### A.    There Was Sufficient Evidence For The Jury To Find The Existence Of An Association-In-Fact Enterprise.

In the Court's July 3, 2003 ruling on Flanagan's Motion to Dismiss, the Court ruled on the requirements for a RICO association-in-fact enterprise:

> 18 U.S.C. §1961(4) provides that: an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court has clarified that an enterprise may also include "a group of persons associated together for a common purpose of engaging in a course of conduct" over a period of time and encompasses both legitimate and illegitimate enterprises. United States v. Turkette, 452 U.S. 576, 582-5, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). . . .
>
> An association-in-fact enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The existence of an association-in-fact enterprise is often more readily proven by what it does, rather than by abstract analysis of its structure. . . . Thus, proof of various predicate acts may help establish the existence of the enterprise. U.S. v. Coonan, 938 F.2d 1553, 1560 (2d Cir. 1991).

-24-

<u>Cadle Co. v. Flanagan</u>, 271 F.Supp.2d 379, 386-87 (D.Conn. 2003).

In the Court's Charge, a RICO enterprise was properly defined

as:

> an <u>association</u> of individuals, formal or
> informal,    associated    together    and
> <u>functioning</u> <u>as</u> <u>a</u> <u>common</u> <u>unit</u> for the <u>common</u>
> <u>purpose</u> of engaging in a <u>course</u> <u>of</u> <u>conduct</u>
> <u>to</u>  <u>defraud</u>  <u>the</u>  <u>plaintiffs</u>.    Now   the
> enterprise   is   not   the   pattern   of
> racketeering  activity  to  which  I  just
> referred, it is an entity separate and apart
> from the pattern of activity in which it
> engages.    It is not required that each
> defendant be associated with the enterprise
> for  the  entire  time  that  the  enterprise
> existed.

(6/8/05 Tr. p. 103 (emphasis added))

The Defendants would have this Court believe that the

Plaintiffs must prove Fasano's fraudulent conduct by direct

evidence, and that because the Fasano Defendants themselves

denied any participation in Flanagan's fraudulent conduct (which

the Jury chose to disbelieve), the Jury Verdict against them

must be set aside.  The law, however, allows a jury to consider

circumstantial as well as direct evidence when reaching its

verdict.[2]    The  direct  and  circumstantial  evidence  here  was

sufficient  for  a  reasonable  jury  to  have  found  that  an

association-in-fact enterprise existed, and that the Fasano

Defendants provided knowing and active assistance in the

direction and operation of that enterprise.

---

[2]     The Jury was properly charged on the role of circumstantial evidence.
(<u>See</u> 6/8/05 Tr. pp. 98-99)

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW
190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

Plaintiffs produced sufficient evidence at trial of an associational enterprise-in-fact that was devoted to the purpose of hiding, transferring and otherwise shielding Flanagan's assets from the judgment and other debt claims of Plaintiffs. The facts established at trial support the finding by the Jury that the Fasano Defendants, along with Flanagan and others, were "engag[ed] in a course of conduct to defraud the plaintiffs." (6/8/05 Tr. p. 103)

> (1) **There Was Sufficient Evidence For The Jury To Conclude That Fasano, Along With Co-Conspirators Flanagan And Others, Functioned As A Common Unit As They Engaged In A Course Of Conduct To Defraud The Plaintiffs.**

The Defendants claim that there was "no proof" that Fasano and co-conspirators Flanagan and others "functioned as a 'common unit', or that they were 'engag[ed] in a course of conduct to defraud the plaintiffs'." (D's Mem. p. 16)    The Defendants' argument is both meritless and sanctionable.

The Defendants claim that the only testimony pertaining to whether Fasano and Flanagan functioned as a "common unit" or that they were "engaged in course of conduct to defraud the plaintiffs" was that of Fasano and Flanagan, and that both of them "denied that Fasano knew of Flanagan's actions, or that Fasano was involved in Flanagan's alleged schemes." (Id.) (D's Mem. p. 16)    As admitted by the Defendants, "[o]bviously, the jury disbelieved their denials, which they were entitled to do."

-26-

SABIA & HARTLEY, LLC    190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
ATTORNEYS AT LAW    tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

(<u>Id</u>).    While   the   Defendants   are   correct   that   the   Jury

disbelieved   Fasano's   and   Flanagan's   denials,   there   was

substantial   evidence   that   Fasano   and   Flanagan   did,   indeed,

function   as   a   common   unit   (<u>see</u>   Px   B   p.   2   #2),   and   that   they

were,   in   fact,   engaged   in   a   course   of   conduct   to   defraud   the

Plaintiffs.       (<u>See</u>   5/25/05   testimony   of   Paul   Gaide;   5/31/05

testimony   of   Paul   Gaide;   6/3/05   testimony   of   Charles   Flanagan;

6/3/05   testimony   of   Charles   Flanagan;   &   Pxs   144,   3,   72-R,   128,

56   &   122)[3]

### (2) There Was Sufficient Evidence For The Jury To Find An Enterprise Which Was Separate And Apart From The Underlying Racketeering Activities.

Further,   the   Defendants   contend   that   Plaintiffs   did   not

prove   that   an   enterprise   existed   "which   was   separate   and   apart

from   the   underlying   racketeering   activities",   and   "which   was

distinct   from   the   person   conducting   the   enterprise's   affairs."

(Ds' Mem. p. 17)   Once again, the Defendants are wrong.

The   requirement   that   an   enterprise   must   be   "separate   and

distinct   from   the   racketeering   activity"   does   not   mean   that   the

proof   pertaining   to   the   commission   of   the   predicate   acts   cannot

---

[1]      The Defendants did not make any reference to any specific pages of the trial transcript inn their Joint Motion for Judgment as a Matter of Law. Plaintiffs respectfully request that the Court require Defendants to supplement their Motion within seven days of this Response, and then accord Plaintiffs an additional three days to supplement their Response with additional specific references to the trial transcripts.

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

also be used to prove the existence of the enterprise. Rather, it simply means that there must be more to the enterprise than the mere commission of the RICO predicate acts:

> [To establish a §1962(c) association-in-fact enterprise] it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses. The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement. . . . [T]here is sufficient evidence to find that the enterprise served a clearinghouse and coordination function above and beyond that necessary to carry out any single one of the racketeering activities charged against the individual defendants.

United States v. Riccobene, 709 F.2d 214, 223-24 (3d. Cir. 1983).

In United States v. Mazzei, 700 F.2d 85 (2d Cir. 1983) the defendant was charged under §1962(c) of RICO for engaging in an associational enterprise-in-fact designed to profit from the fixing of Boston College basketball games. Relying upon United States v. Turkette, 452 U.S. 576 (1981), the defendant in Mazzei argued on appeal that the jury verdict against him was improper because there was insufficient evidence that the alleged enterprise was separate and distinct from the alleged predicate acts. The Second Circuit disagreed:

-28-

> We agree that <u>Turkette</u> requires the government to prove both the existence of an "enterprise" and a "pattern of racketeering activity." We do not, however, read <u>Turkette</u> to hold that proof of these separate elements be distinct and independent, as long as the proof offered is sufficient to satisfy both elements.

700 F.2d at 89. The <u>Mazzei</u> Court went on to conclude:

> <u>Turkette</u> expressly provides that the proof used to establish the "pattern of racketeering activity" element "may in particular case coalesce" with the proof offered to establish the "enterprise" element of RICO. 452 U.S. at 583. In our judgment, the proof of these elements coalesce comfortably in the present action. The government here proved an enterprise that was a "group of individuals associated in fact" with evidence establishing a common or shared purpose among the individuals and evidence that they functioned as a continuing unit. . . . The prosecution showed the B.C. conspirators shared a common purpose -- illegally shaving points on B.C. games to maximize their chances of betting successfully on those games -- and that they functioned as a continuing unit, i.e., during the 1978-79 B.C. basketball season.

<u>Id</u>. <u>See</u>, <u>also</u>, <u>United States v. Indelicato</u>, 865 F.2d 1370, 1384 (2d Cir. 1989) (discussing interrelationship of pattern and proof of enterprise); <u>DeFalco</u>, 244 F.3d at 307 (affirming RICO jury verdict on proof of enterprise); <u>Securitron Magnalock Corp. v. Schnabolk</u>, 65 F.3d 256, 262-63 (2d Cir. 1995) (same).

The Defendants' argument that there was no evidence as to the existence of the association-in-fact enterprise other than the proof of the underlying predicate acts is false. The evidence summarized above in §VI(A)(1) shows that there was

-29-

sufficient evidence for the Jury to find, in conformance with the Court's Charge, that the enterprise devoted to the "common purpose" of "defraud[ing] the plaintiffs" was "separate and apart from the pattern of activity in which it engages." (6/8/05 Tr. p. 103)    Accordingly, the Court should overrule Defendants' Joint Motion for Judgment as a Matter of Law.

### B.    The Evidence Was Sufficient For The Jury To Find That Fasano Participated In The Operation Or Management Of The Enterprise.

The Defendants claim that Plaintiffs "failed to prove that Fasano participated in the operation or management of the enterprise . . .." (Ds' Mem. p. 18)    Once again, the Defendants' argument is without merit.

The Court previously addressed the "operation or management" issue when it overruled Fasano's motion for summary judgment:

> Fasano next moves for summary judgment arguing that, because he simply furnished legal advice and services to Flanagan, the record lacks evidence that he participated in the operation or management of the enterprise sufficient to constitute a violation of RICO section 1962(c). . . .
>
> RICO section 1962(c) makes it unlawful for any person to "participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs through a pattern of racketeering activity."    Id.    "One must participate in the operation or management of the enterprise itself in order to be subject to §1962(c) liability."    Reves v. Ernst & Young, 507 U.S. 170, 185 113 S.Ct. 1163 (1993).    This test is satisfied by "knowingly implementing decisions, as well

-30-

> as by making them." <u>United States v. Allen</u>,
> 155 F.3d 35, 42 (2d Cir. 1988).  Further,
> > it is no great leap to find that one
> > who assists in the fraud also conducts
> > or participates in the conduct of the
> > affairs of the enterprise.
>
> <u>First Capital Asset Management v. Satinwood,
> Inc.</u>, 358 F.3d 159, 178 (2d Cir. 2004).  The
> issue of whether a RICO defendant operated
> or managed the affairs of an enterprise is
> essentially a question of fact.  <u>United
> States v. Allen</u>, 155 F.3d 35, 42-43 (2d Cir.
> 1998).
>
> A genuine issue of material fact exists as
> to whether Fasano's conduct rises to the
> level of operation or management.  As the
> court has previously concluded, the record
> suggests that Fasano actively assisted
> Flanagan with the settlement proceeds scheme
> and the shifting stock scheme, among others
> -- conduct which the court cannot say, as a
> matter of law, fails to rise to operation or
> management sufficient to constitute a
> violation of RICO section 1962(c).

<u>Cadle Company v. Flanagan</u>, 2005 WL 1039005 at *12.  <u>See</u>, <u>also</u>,

<u>DeFalco</u>, 244 F.3d at 309-12 (sufficient evidence for a jury to

conclude that the defendant played a role in the operation or

management of the enterprise).

Moreover, the <u>Reves</u> "operation or management" test "does

not protect a law firm that is alleged to have helped execute a

scheme to hide assets from a judgment creditor . . . .."

<u>Guiterrez</u>, 1 F.Supp.2d at 1086, <u>citing</u> <u>Handeen</u>, 112 F.3d at

1349.  Further, under Second Circuit precedent, the "operation

or management" test is a relatively low hurdle for a RICO

plaintiff to clear.  <u>Baisch</u>, 346 F.3d at 377.

-31-

SABIA & HARTLEY, LLC     190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
ATTORNEYS AT LAW         tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

In the Court's Charge, the Jury was instructed that:

> Section 1962(c) requires that the plaintiffs prove that the defendants were employed by or associated with the enterprise, that the defendants and the enterprise were separate entities, and that the defendants participated in the operation or management of the enterprise.
>
> Participation is defined in this context as knowingly implementing decisions as well as making them with the intent to engage in a fraudulent course of conduct and with the purpose of achieving that fraudulent end.
>
> Now with respect to the attorney defendants in this case, you may not find them liable under 1962(c) of RICO if you find that they did nothing more than furnish legal advice or provide standard legal services to a client or their clients.

(6/28/05 Tr. pp. 107-08)

As summarized in §VI(A)(1) above, the evidence was sufficient for the Jury to find that Fasano participated in the operation or management of the enterprise -- the formal or informal association of individuals associated together and functioning as a common unit for the common purpose of engaging in a course of conduct to defraud the Plaintiffs. (6/8/05 Tr. p. 103) Accordingly, the Court should overrule the Defendants' Joint Motion for Judgment as a Matter of Law.

**C.    There Was Sufficient Evidence For The Jury Conclude That The Fasano Defendants Engaged In Predicate Acts In Furtherance Of The Overall Fraudulent Scheme.**

The Defendants contend that Plaintiffs did not introduce any evidence that the Fasano Defendants engaged in any predicate

-32-

acts in furtherance of any of the fraudulent schemes.  (Ds' Mem.
pp. 19-20)    The Defendants, however, proceed on the false
assumption that Fasano cannot be held liable under §1962(c) of
RICO unless Fasano, himself, personally engaged in the mailing
of a letter containing an affirmative misrepresentation; or
personally engaged in a long distance telephone call wherein he
made an affirmative misrepresentation; or personally engaged in
all of the conduct constituting bankruptcy fraud.    The law,
however, will not assist Fasano in escaping accountability for
his fraudulent conduct.

     "The crime of mail fraud is committed when the mails are
used as part of a scheme or artifice to defraud." Landry, 901
F.2d at 428, citing United States v. Margiotta, 688 F.2d 108,
121 (2d Cir. 1982).   For a mail fraud or a wire fraud claim[4], a
plaintiff need not prove that the mailing or interstate wire
communications, in and of themselves, contained any
misrepresentations. See Carpenter v. United States, 484 U.S.
19, 27 (1987); Baisch, 346 F.3d at 374; Cadle Co., 779 F.Supp.
at 400 (citing cases at n. 50). Rather, all that is necessary is
that the mail or interstate telephone lines be a part of the
execution of the overall fraudulent scheme.    See Schmuck v.

---

[4]     The elements necessary to establish violations of the mail fraud and
wire fraud statutes are essentially identical; hence, courts apply identical
analyses to both statutes.  See Ideal Steel Supply Corp. v. Anza, 373 F.3d
251, 257 (2d Cir.2004); Cadle Co., 779 F.Supp. at 399 n. 37.

-33-

United States, 489 U.S. 705, 710-12 (1989).[5]  Accordingly, even
"'innocent' mailings -- ones that contain no false information -
- may supply the mailing element."  Schmuck, 489 U.S. at 715.

In addition, a RICO plaintiff need not show that each
defendant personally utilized the mails or long distance wire
communications in connection with the execution of the overall
fraudulent scheme.  See United States v. Zichettello, 208 F.3d
72, 105-06 (2d Cir. 2000).[6]  As noted by Judge Buchmeyer in a
very similar case:

> Under RICO, one co-schemer is liable for the
> other co-schemers' predicate acts.  Indeed,
> upon joining a fraudulent conspiracy, each
> defendant becomes liable for the prior
> conduct of the earlier conspirators, and
> remains liable for the subsequent conduct of
> the other conspirators.

Cadle Co., 779 F.Supp. at 400.

For a mail fraud or wire fraud claim, a RICO plaintiff need
only prove the connection of the defendant to the overall
fraudulent scheme which, during some part thereof, involves the
use of the mail or long distance wire communications.
Zichettello, 208 F.3d at 105-06.  Indeed, so long as one

---

[5]   See, also, United States v. Finney, 714 F.2d 420, 423 (5th Cir.1983);
United States v. Green, 494 F.2d 820, 823-24 (5th Cir.1974); Sun Savings,
825 F.2d at 196.

[6]   See, also, Cadle Co. v. Schultz, 779 F.Supp. 392, 399 (N.D.Tex. 1991);
Constellation Bank, N.A. v. C.L.A. Management Co., 1995 WL 42285 at *4
(S.D.N.Y. Feb 1, 1995); Morrow v. Black, 742 F.Supp. 1199, 1203-04
(E.D.N.Y.1990); Center Cadillac v. Bank Leumi Trust Company of New York, 808
F.Supp. 213, 228 (S.D.N.Y. 1992); 131 Main Street Associates v. Manko, et
al., 897 F.Supp. 1507, 1530 (S.D.N.Y.1995).

-34-

participant in a fraudulent scheme "causes" the use of the mail
or interstate telephone wires in the execution of the fraudulent
scheme, all other knowing participants in the scheme are legally
liable for the use of the mail or the interstate wires. Id. A
defendant "causes" a use of the mail or wires when that
defendant does an act knowing that the use of the mail or wires
will follow in the ordinary course of business, or if the
defendant reasonably could foresee that the use of the mail or
wires would follow, even if the defendant did not actually
intend for the use of the mail or wires to follow. Id. See,
also, United States v. Amrep Corp., 560 F.2d 539, 545 (2d
Cir.1977); United States v. Jones, 648 F.Supp. 225, 235 & n. 8
(S.D.N.Y.1996).

In overruling Fasano's motion for summary judgment, this
Court commented on the summary judgment evidence as to Fasano's
role in the commission of multiple acts of mail fraud and wire
fraud:

> The court is of the opinion that Flanagan
> can be charged with having committed
> multiple acts of mail and wire fraud. For
> example, Flanagan's conduct in defeating the
> lawful claims of Cadle by (1) intentionally
> misrepresenting settlement proceeds as
> wages; (2) intentionally hiding his rental
> properties and his rental income; and (3)
> intentionally hiding his stock certificates
> -- all evidence a specific intent to
> defraud, with actual harm to Cadle at least
> contemplated. Further, the record reflects
> that Flanagan, Fasano, Bainer, and Prymas
> routinely used the mail and wires for

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com