UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY and D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP, | § § | No. 3:01CV531(AVC) |
| Plaintiffs, | § | |
| vs. | § | |
| CHARLES A. FLANAGAN, et al., | § | November 9, 2005 |
| Defendants. | § | |

PLAINTIFFS' AMENDED RESPONSE TO DEFENDANTS'
JOINT MOTION FOR JUDGMENT AS A MATTER OF LAW

I.  Introduction

It is readily apparent from the Verdict (Px A) and
Supplemental Verdict (Px B) that the Jury in this case did not
believe the Defendants' denials about their conspiracy with
Charles A. Flanagan ("Flanagan") to hide, transfer and otherwise
shield the substantial assets of Flanagan from the judgment
claims of Plaintiffs.  While the Defendants' demeanor on the
witness stand was indicative of a lack of truthfulness, the pre-
litigation documents which were admitted into evidence proved
that lack of truthfulness.

After service of the writ of execution on Defendant
Thompson & Peck, Inc. ("T&P") on January 5, 1998, Flanagan wrote
to Defendant Leonard A. Fasano ("Fasano") as follows:

> Please see enclosed which was served to
> Stanley Prymas this morning.  I have not
> received anything as yet, however I should

> be served shortly. <u>My</u> <u>concern</u> <u>here</u> <u>is</u> <u>with</u>
> <u>the</u> <u>money</u> <u>I</u> <u>am</u> <u>currently</u> <u>receiving</u> from
> Thompson & Peck Inc. as a result of the
> <u>Settlement</u> between Mr. Prymas and I. Is
> this subject to being taken? . . . Kindly
> advise on the above.

(Px 144 (emphasis added))

The next day, Flanagan faxed a memo to Fasano as follows:

> Does it make sense for you to contact Atty.
> Bainer on my behalf and find out now what
> the issues are with T&P Inc. over this. Why
> would Gaide have S. Prymas served over my
> matter? I also <u>do</u> <u>not</u> <u>want</u> <u>it</u> <u>disclosed</u>
> <u>where</u> <u>my</u> <u>Stock</u> <u>is</u> <u>presently</u> <u>kept</u>. There may
> by an attempt to grab this stock. If there
> is a concern here, <u>please</u> <u>let</u> <u>me</u> <u>know</u> <u>if</u> <u>I</u>
> <u>should</u> <u>be</u> <u>doing</u> <u>anything</u> <u>different</u> <u>than</u> <u>what</u>
> <u>is</u> <u>presently</u> <u>being</u> <u>done</u>.

(Px 3 (emphasis added))

After a meeting among the Defendants on February 9, 1998 to discuss creative ways to "skirt the writ", Defendant Todd R. Bainer ("Bainer") summarized what was discussed at that meeting as follows:

> As we discussed at the [February 9, 1998]
> meeting, <u>no</u> <u>matter</u> <u>what</u> <u>you</u> <u>call</u> <u>the</u> <u>monies</u>,
> and no matter how correct that new
> interpretation may or may not be -- now --
> <u>the</u> <u>change</u> <u>of</u> <u>positions</u> on what the money is
> characterized as [as to how it has been
> treated in the past by the Corporation] <u>in</u>
> <u>response</u> <u>to</u> <u>the</u> <u>service</u> <u>of</u> <u>the</u> <u>execution</u> is
> troubling to me. I believe we need to go
> very slowly and very carefully, here.
> [Deleted portion] That is a risk that needs
> to be seriously assessed . . ..

(Px 72-R (emphasis added))

On May 8, 1998 Bainer confirmed the "overall plan" to place a restrictive legend on Flanagan's T&P stock:

> As we have discussed previously, part of the <u>overall</u> <u>plan</u> would be to <u>place</u> <u>restrictive</u> <u>language</u> <u>on</u> <u>the</u> <u>original</u> <u>stock</u> <u>certificates</u> to restrict transfer except through the utilization of a Buy-Sell agreement . . .. This restrictive covenant, which must be placed on the face of the original stock certificates, would most likely make Thompson & Peck, Inc. <u>less</u> <u>attractive</u> <u>to</u> <u>creditors</u> of the individual stockholders.

(Px 128 (emphasis added))

On July 28, 1998 Flanagan wrote to Bainer about the plan to put the restrictive legend on Flanagan's T&P stock:

> I received your fax regarding the delivery of the T&P Stock Certificates from Stanley and I. . . . <u>I</u> <u>can</u> <u>deliver</u> <u>the</u> <u>T&P</u> <u>Inc.</u> <u>stock</u> <u>that</u> <u>pertains</u> <u>to</u> <u>me,</u> <u>have</u> <u>the</u> <u>restrictive</u> <u>wording</u> <u>put</u> <u>on</u> <u>my</u> <u>stock</u> <u>and</u> <u>take</u> <u>my</u> <u>stock</u> <u>back</u> <u>with</u> <u>me.</u> Before this is done, it is my understanding that you were going to <u>review</u> <u>with</u> <u>Atty.</u> <u>Ippolito</u> [Fasano's partner] on Tues. 7-28-98 the Buy Sell Agreement for Atty. Ippolito's input.

(Px 56 (emphasis added))

And then on December 28, 1998 Flanagan faxed another letter to Bainer confirming the need for joint conduct to defeat the judgment claims of Plaintiffs:

> I thought at our last Board of Directors Meeting that BEFORE anything was <u>agreed</u> to with Atty. Gaide that we would all <u>discuss</u> <u>what</u> <u>each</u> <u>other</u> <u>was</u> <u>to</u> <u>do</u>. If this has changed I need to know as I will move forward with one of my options. If this is every man for himself I will meet with Atty. Gaide and cut a deal that is best for me

only.  Maybe Caddle [sic] Co. can give me a
full release if I surrender my Stock in both
Corporations.  This is not the time to be
doing anything of a "voluntary" nature if
the goal here is to weather this storm.  If
I am missing something please let me know.
I will go with Plan B myself.

(Px 122 (emphasis added))

Interspersed with all of the above, a strategy is developed whereby Flanagan will use a pending I.R.S. investigation as a pretext to avoid disclosing the location of his T&P stock by invoking the 5th Amendment; hundreds of thousands of dollars of Flanagan's rental income is diverted through nominee checking accounts at Fasano's suggestion to avoid this Court's injunction; and Fasano deliberately deceives Plaintiffs and this Court about the location of Flanagan's T&P stock by claiming that the stock had been pledged to one Sharon Demetropoulous, and then -- whoops -- one Socrates Babacus.  Because Flanagan was concerned that "[t]here may be an attempt to grab [his] stock", Fasano was to "let [Flanagan] know if [he] should be doing anything different than what is presently being done." (Px 3)  And then later it was Fasano who informed Flanagan that Flanagan did not have to comply with this Court's turnover order when Flanagan delivered his T&P stock to Bainer for placement of the restrictive legend on Flanagan's stock.

The Jury in our case thoroughly studied the Charge (6/9/05 Tr. pp. 2 & 10) and carefully reviewed the evidence, and made

the sound determination that Fasano and his law firm (collectively, the "Fasano Defendants") engaged in conduct in violation of §1962(c) of RICO. (Px A p. 1 #1) The Jury, however, found that the Plaintiffs did not prove that Defendants Bainer, T&P and Stanley F. Prymas ("Prymas") also engaged in conduct in violation of §1962(c). (Id.)

The Jury then found that the Fasano Defendants engaged in conspiratorial conduct in violation of §1962(d) of RICO in connection with (a) the settlement proceeds scheme; (b) the checking account scheme; (c) the shifting stock scheme; and (d) the bankruptcy fraud scheme. (Px A #2; Px B pp. 1 #1 & 2 #2) Further, the Jury found that Bainer, Prymas and T&P engaged in conspiratorial conduct in violation of §1962(d) in connection with (a) the settlement proceeds scheme and (b) the shifting stock scheme. (Px A #2; Px B p. 2 #2)

The trial of this case lasted over two weeks. The evidence of the Defendants' fraudulent conduct was overwhelming. The only prejudice that flowed to the Defendants was the prejudice that naturally flows from having engaged in a fraudulent scheme. As shown by the following, the trial was fair, the verdict is proper, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

## II.  **Standard Of Review**

Under Second Circuit precedent, the verdict of a jury in a
civil RICO case should not be lightly disregarded.  See DeFalco
v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001); Metromedia Company
v. Fugazy, 983 F.2d 350, 361 (2d Cir. 1992).  In accordance with
Rule 50, Fed.R.Civ.P.,

> judgment as a matter of law is appropriate
> where "there is no legally sufficient
> evidentiary basis for a reasonable jury to
> find for" a party.  Fed.R.Civ.P. 50(a)(1).
> In ruling on a motion for judgment as a
> matter of law, the court "must view the
> evidence in a light most favorable to the
> non-movant and grant that party every
> reasonable inference that the jury might
> have drawn in its favor."  Samuels v. Air
> Transport Local 504, 992 F.2d 12, 16 (2d
> Cir. 1993).

See, also, Metromedia, 983 F.2d at 361.

Judgment as a matter of law may not properly be granted
under Rule 50

> unless the evidence, viewed in the light
> most favorable to [Plaintiffs], is
> insufficient to permit a reasonable juror to
> find in [Plaintiffs'] favor.  A court must
> give deference to all credibility
> determinations and reasonable inferences of
> the jury, and may not weigh the credibility
> of witnesses or otherwise consider the
> weight of the evidence.  Thus, judgment as a
> matter of law should be granted only if: (1)
> there is such complete absence of evidence
> supporting the verdict that the jury's
> findings could only have been the result of
> sheer surmise and conjecture, or (2) there
> is such an overwhelming amount of evidence
> in favor of the movant [the Defendants] that

reasonable and fair minded [persons] could not arrive at a verdict against [it].

Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000) (internal citations and quotations omitted).    The Court must "view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party [Plaintiffs] the benefit of all reasonable inferences that the jury might have drawn in [Plaintiffs'] favor."    Blue Cross and Blue Shield of New Jersey v. Philip Morris USA Inc., 344 F.3d 211, 222 (2d Cir. 2003) (quoting Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1988)).    The Defendants, therefore, "seeking to overturn a verdict based on the sufficiency of evidence[,] bear[] 'a very heavy burden.'"    Id.    As shown by the following, the Defendants have failed in their burden.

### III. Plaintiffs' RICO Claims For Collection Expense Damages Are Ripe.

The Defendants claim that the Court does not have jurisdiction over Plaintiffs' RICO claims because Plaintiffs supposedly lack standing to pursue those claims.    According to the Defendants, Plaintiffs' RICO claims are not ripe because Flanagan's bankruptcy proceeding has not yet closed.    While the Defendants are correct that Flanagan's bankruptcy proceeding is still open, the Defendants are wrong that Plaintiffs' civil RICO claims for collection expense damages are not ripe.

-7-

Here Plaintiffs sought two categories of damages recoverable under RICO: (1) lost debt damages and (2) collection expense damages.  See Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1165 (2d Cir. 1993); Bankers Trust Company v. Rhoades, 859 F.2d 1096, 1105-06 (2d Cir. 1988); First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F.Supp.2d 369, 379-80 & 382-83 (S.D.N.Y. 2002), aff'd on other grounds, 385 F.3d 159, 169-70 (2d Cir. 2004).  In the Verdict, the Court defined these two categories of RICO damages as:

> For lost debt damages, the plaintiffs must show by a preponderance of the evidence the amount of the debt that they most likely would have been able to collect from Charles Flanagan, but were prevented from doing so because of the defendant(s)' alleged RICO violations.
>
> For collection expense damages, the plaintiffs must show by a preponderance of the evidence the amount of legal fees and other expenses that they incurred in their unsuccessful attempts to collect on Flanagan's assets which were proximately caused by the Defendant(s)' alleged RICO violations?

(Px A pp. 2-3)

As of November of 1998, the principal amount of Plaintiffs' judgment and other debt claims that they held against Flanagan exceeded $1,053,000. (5/2/05 Tr. pp. 13-19 & 21)  Flanagan, however, filed for bankruptcy on February 17, 1999,  and

> [Plaintiffs] chased down all of his assets and all the assets were already transferred

out of his name and he didn't have anything
left.

(6/2/05 Tr. p. 28)  The evidence was undisputed that there was
no realistic chance of any financial recovery from Flanagan's
bankruptcy estate, and that Flanagan was, in essence, "judgment
proof". (Id. pp. 29-30 & 57)

With interest, Plaintiffs' lost debt damages exceeded
$1,700,000 (6/2/05 Tr. pp. 21 & 31-32), with Plaintiffs' out-of-
pocket loss in the amount of $1,500,000. (Id. p. 74)  The amount
of legal fees and other expenses that Plaintiffs incurred in
their unsuccessful attempts to track-down and collect on
Flanagan's assets (i.e., "collection expense damages") was in
excess of $500,000.  (6/2/05 Tr. pp. 17-18 & 22-26)

In the Verdict the Jury awarded Plaintiffs a total of
$500,000 in compensatory damages. (Px A p. 3 #3)  In the
Supplemental Verdict the Jury allocated those compensatory
damages as $0 for lost debt damages, and the full $500,000 for
collection expense damages.  (Px B p. 3 #3)

While the Defendants may have had an argument that any
amount of lost debt damages was not yet ripe because of the
ongoing Flanagan bankruptcy proceeding (see Stochastic
Decisions, 995 F.2d at 1165; Bankers Trust, 859 F.2d at 1105),
that argument is irrelevant for purposes of the Defendants'
motion because the Jury did not award any lost debt damages.

-9-

There is no argument, however, about the ripeness of Plaintiffs' RICO claims for recovery of collection expense damages. See Stochastic Decisions, 995 F.2d at 165; First Capital, 218 F.Supp.2d at 379-80 & 382-83, aff'd on other grounds, 385 F.3d at 169-70. Indeed, in Stochastic Decisions the Second Circuit affirmed the district court's judgment awarding the plaintiff RICO collection expense damages for the attorney fees incurred in pursuing collection of the unsatisfied underlying judgments:

> The district court held . . . that the attorney fees expended in pursuing collection of the judgments constituted RICO damages . . ..
>
>                * * *
>
> The asserted RICO violations in this case are defendants' illegal actions in impeding [plaintiff's] collection of those judgments.
>
>                * * *
>
> [W]e explicitly ruled in Bankers Trust that legal fees may constitute RICO damages when they are proximately caused by a RICO violation. . . . We accordingly reject [defendants'] contention that the district court improperly allowed the $50,000 legal fees expended by [plaintiff] in collecting the New Jersey judgments as (trebled) RICO damages.

995 F.2d at 1165-67.

This Court has previously ruled on the recoverability of Plaintiffs' collection expense damages. In overruling Fasano's motion for summary judgment, the Court ruled:

> [T]he court concludes that RICO damages are nevertheless properly alleged. "Legal fees may constitute RICO damages when they are proximately caused by a RICO violation." <u>Stochastic Decisions, Inc. v. DiDomenico</u>, 995 F.2d 1158, 1166-67 (2d Cir. 1993) (incurring legal fees was RICO injury where predicate acts included preventing plaintiff's collection efforts on outstanding judgment); <u>see</u> <u>also</u> <u>Bankers Trust Co. v. Rhoades</u>, 859 F.2d 1096, 1105 (2d Cir. 1988) (plaintiff suffered RICO injury by paying attorneys' fees defending frivolous lawsuits started by defendant and designed to forestall collection on an outstanding bankruptcy claim).
>
> Because legal fees incurred in fighting a debtor's attempt to frustrate collection can constitute the basis for a RICO injury, and the record reflects that, indeed, Cadle expended money in fighting the defendants' efforts to frustrate collection through fraud, the cause of action does not fail for want of RICO injury.

<u>Cadle Company v. Flanagan</u>, ____ F.Supp. 2d ___, ____, 2005 WL 1039005 at *12-13 (D. Conn. 5/2/05).

This Court has jurisdiction over Plaintiffs' civil RICO claims, and Plaintiffs have standing to pursue those claims. Further, Plaintiffs' claims for recovery of collection expense damages under RICO were and are ripe. Accordingly, the Court should overrule Defendants' Joint Motion for Judgment as a Matter of Law.

### IV.(A) There Was Sufficient Evidence To Support The Jury's Award Of $500,000 In Collection Expense Damages.

The Defendants claim that the evidence offered in support of Plaintiffs' collection expense damages is insufficient because Plaintiffs supposedly offered no specific evidence of collection expenses that are allowable in the Second Circuit. In particular, the Defendants contend that Plaintiffs' evidence of collection expense damages improperly included attorney fees incurred in obtaining the underlying judgments; attorney fees incurred in connection with Flanagan's bankruptcy; and attorney fees incurred in connection with Cadle I.  The Defendants are wrong.

At the trial, Plaintiffs' representative, Dan Cadle, testified that Plaintiffs' damage calculations for collection expense damages included "the amount in attorney's fees and costs that we expended chasing all these assets that kept disappearing on us." (6/2/05 Tr. pp. 17-18)  In addition, Mr. Cadle testified as follows:

> Q:   And second category, collection expense damages, what are those?
>
> A:   That is checks that I have to write to attorneys and sheriffs and court costs in order to try to get the assets.

* * *

Q:   Mr. Cadle, have you included in your collection expense damages the attorney's fees for prosecuting this suit or is that a separate category?

A:   That is a separate category.

Q:   So the figure you're about to give to folks on the jury doesn't include the attorney's fees for prosecuting this?

A:   That is correct.

                        * * *

Q:   Was there any interest on this collection expense damages, sir?

A:   No.

Q:   Okay. Now, what are the collection expense damages, sir?

A:   We spent $494,000 on chasing the assets.

                        * * *

Q:   Was there any amount above that?

A:   Yes.

Q:   Can you explain to the jury why you deducted --

                        * * *

A:   We didn't include some of our attorney fees that we normally would spend to collect on a judgment. You know if you are going to sue someone you're going to pay an attorney fee. That's not part of this 494,000.

     On the Gaide grievance we spent tens of thousands.

                        * * *

-13-

Q:    Did you spend the money but not include it
      in the calculation?

A:    Yes, I did.

Q:    What other major category would that be?

A:    On the Paul Gaide grievance, I paid those
      attorney fees to defend his grievance, I
      did not include those in this calculation.
      There was a contempt order.  I did not
      include those attorney fees in this matter
      either, in addition to the normal
      collection expense.

                    * * *

Q:    The collection expense damages, that was
      rounding up or rounding down?

                    * * *

A:    Rounding down.

(6/2/05 Tr. pp. 18 & 22-26)  Further, Paul Gaide, the attorney

for Plaintiffs in connection with their efforts to collect on

the five underlying obligations owed by Flanagan, testified that

as a result of the Defendants' failure to comply with this

Court's writ of execution, injunction and turnover order, there

were increased legal fees incurred by Plaintiffs, with Attorney

Gaide's increased legal fees totaling approximately $10,000.

(5/25/05 Tr. pp. 127-28)

    In the Court's Charge, the Jury was instructed that:

          Now, in this RICO case the plaintiffs'
          damages are limited to one, lost debt
          damages. . . . [A]nd, two, money expended
          pursuing the fraudulently concealed monies.

-14-

(6/8/05 Tr. p. 115)  And then in the Verdict Form, the Jury was instructed that:

> For <u>collection expense damages</u>, the plaintiffs must show by a preponderance of the evidence the amount of legal fees and other expenses that they incurred in their unsuccessful attempts to collect on Flanagan's assets which were proximately caused by the Defendant(s)' alleged RICO violations?

(Px A pp. 2-3)

Plaintiffs expended in excess of $500,000 in their futile efforts to chase down and execute upon Flanagan's scattered assets.  (6/2/05 Tr. pp. 18 & 22-26; 5/25/05 Tr. pp. 127-28)  Moreover, the "rounding down" of approximately $494,000 in collection expense damages did not include any interest.  (<u>Id</u>. pp. 23 & 26)

Drawing all reasonable inferences in Plaintiffs' favor, and according due deference to the reasonable inferences of the Jury (<u>see</u> <u>Blue Cross</u>, 344 F.3d at 222), there was sufficient evidence to support the Jury's award of $500,000 in collection expense damages.  <u>See</u> <u>DeFalco v. Bernas</u>, 244 F.3d 286, 324-27 (2d Cir. 2001) (overruling defendants' claim that plaintiffs failed to establish with specificity and certainty damages proximately caused by the defendants' RICO predicate acts).

Moreover, at no time during the trial did the Defendants object to the alleged generality or lack of specificity of the evidence pertaining to Plaintiffs' collection expense damages.

In addition, at no time did the Defendants object to the generality or alleged lack of specificity in connection with the Court's Charge or form for the Jury's Verdict. Accordingly, any tardy objections which the Defendants now attempt to assert have been waived. See DeFalco, 244 F.3d at 315 n. 19 & 317; Metromedia Company v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992). As long ago noted by the Supreme Court:

> Courts are not inclined to grant a new trial merely on account of ambiguity in the charge of the court to the jury, where it appears that [defendants] made no effort at the trial to have the point explained.

Tweed's Case, 83 U.S. 504, 516 (1872).

Finally, contrary to the representations of the Defendants, there was no evidence that Plaintiffs' collection expense damages included any attorneys' fees incurred in obtaining the underlying judgments. Further, there was no evidence that Plaintiffs' collection expense damages included any unrecoverable bankruptcy attorneys' fees or any unrecoverable attorneys' fees incurred in connection with Cadle I. See First Capital, 218 F.Supp.2d at 379-80 & 382-83, aff'd on other grounds, 385 F.3d at 169-70.

There was sufficient evidence to support the Jury's award of $500,000 in collection expense damages. Further, the Defendants did not object to, and thereby waived any objections to, the generality or lack of specificity of Plaintiffs'

evidence pertaining to collection expense damages, the Court's
Charge, and the Verdict Form.    Accordingly, the Defendants'
Joint Motion for Judgment as a Matter of Law should be denied.

> **IV.(B) As Related Parties And Joint Plaintiffs
> Seeking Damages For The Same Wrongful
> Conduct, Plaintiffs Need Not Separate Out
> The Amount Of Damages Suffered
> Individually <u>By Each Plaintiff</u>.**

The Defendants claim that Plaintiffs cannot recover damages
in this suit because Plaintiffs did not separate out the amount
of damages suffered individually by each Plaintiff.    The
Defendants, again, are wrong.

The evidence showed that Plaintiffs are related entities,
substantially owned and controlled by Dan Cadle.  (6/2/05 Tr. p.
3)    The evidence also showed that Plaintiffs sought joint
damages in this suit for the same wrongful conduct.  (5/25/05
Tr. pp. 127-29; 6/2/05 Tr. p. 57)    The Defendants failed to
object to the evidence as to the joint damages sought by the
Plaintiffs, and failed to object to the Court's Charge and the
Verdict Form, which did not require any breakdown as to the
damages sought by each individual Plaintiff.    Accordingly, any
tardy objection by the Defendants at this time as to Plaintiffs'
failure to separate out the amount of damages suffered
individually by each Plaintiff has been waived.    <u>See</u> <u>DeFalco</u>,
244 F.3d at 315 n.19 & 317.

There are no cases which hold that when two related parties have been damaged by the same wrongful conduct, those two related parties, when proceeding as joint plaintiffs, must prove the specific and separate amount of damages incurred by each, as opposed to the total and joint amount of damages incurred by both. Indeed, how the Plaintiffs divide the total amount of damages between themselves is of no consequence to the Defendants. See Central Vermont Railway Company v. White, 238 U.S. 507, 513-14 (1915); Jefferson & N.W. Ry. Co. v. Woods, 64 S.W. 830, 831 (Tex. Civ. App. 1901).

The class action/class certification cases cited by the Defendants are not apposite. The issue in determining whether to certify a class action under Fed.R.Civ.P. 23 (whether commonality/typicality of claims, including proof of damages, predominate over individual issues) is far different than the unobjected-to proof of joint collection expense damages suffered by two related plaintiffs proximately caused by the same wrongful conduct.

As related parties and joint plaintiffs seeking damages for the same wrongful conduct, Plaintiffs did not have to separate out the amount of damages suffered individually by each Plaintiff. See Central Vermont Railway, 238 U.S. at 513-14; Jefferson & N.W. Ry., 64 S.W. at 831. As such, it was not error for the Jury to make one damage award to encompass the claims of

-18-

both related Plaintiffs. Id. Moreover, the Defendants waived any complaints by (a) their failure to object to the testimony pertaining to the joint damages sought by the Plaintiffs, and (b) their failure to object to the Court's Charge and Verdict Form, which did not require an apportionment of the individual damages sought by each Plaintiff. Accordingly, the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

**V.   Plaintiffs Have Standing Because They Suffered A Loss In Connection With Unrecouped Collection Expenses.**

The Defendants claim that because Plaintiffs supposedly suffered no out-of-pocket loss, Plaintiffs suffered no RICO damages. Once again, the Defendants are wrong.

There was no evidence that Plaintiffs fully recovered the amounts owed by Flanagan in connection with the underlying judgments. Moreover, there was no evidence that Plaintiffs recouped the over $500,000 that they expended in trying to track down and execute on Flanagan's deceitfully diverted and skillfully scattered assets. Indeed, the evidence was that Plaintiffs' out-of-pocket loss was $1,500,000. (6/2/05 Tr. p. 74) Accordingly, the cases cited by the Defendants do not stand as a bar to Plaintiffs' recovery of their collection expense damages.

Indeed, the decision in Stochastic Decisions supports, rather than undercuts, Plaintiffs' collection expense claims in

this case.  In <u>Stochastic Decisions</u> the Second Circuit affirmed the district court's disallowance of the plaintiff's attempt to recover lost debt damages because those claims were not yet ripe, but found that the plaintiff was entitled to RICO collection expense damages based on the "defendants' illegal actions in impeding [plaintiff's] collection of those judgments."  995 F.2d at 1166.  As recognized by the Second Circuit in <u>Stochastic Decisions</u>, "legal fees may constitute RICO damages when they are proximately caused by a RICO violation." <u>Id</u>. at 1167, <u>citing</u> <u>Bankers Trust</u>, 859 F.2d at 1105.  Thus, despite the fact that the plaintiff in <u>Stochastic Decisions</u> was not entitled to recover lost debt damages, the plaintiff was still entitled to recover under RICO for its collection expense damages. <u>Id</u>.

There is no evidence that Plaintiffs fully recovered on the underlying judgments; no evidence that Plaintiffs fully recovered their $1,500,000 out-of-pocket loss; and no evidence that Plaintiffs recouped the over $500,000 that they expended in their unsuccessful efforts to locate and execute upon Flanagan's transitory assets.  Unlike the cases cited by the Defendants, the $500,000 in collection expenses incurred by the Plaintiffs was expended as a direct result of the Defendants' RICO violations, and has not been recouped.  These damages, therefore, were properly awarded, and the Jury Verdict should

not be disturbed. Accordingly, Plaintiffs' unrecouped collection expense damages constitute RICO damages available for recovery in this case, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

**VI. There Is Sufficient Evidence To Support The Jury's Verdict That The Fasano Defendants Violated §1962(c) Of RICO.**

In essence, the Defendants ask the Court to accord special treatment to Defendant Leonard A. Fasano because he is an attorney. A license to practice law, however, does not grant an attorney immunity from liability for violations of RICO when that attorney crosses the line from being an advocate _for_ his client, into the swamp of being a co-conspirator _with_ his client. As noted by the Eighth Circuit in a similar RICO-fraudulent transfer case:

> An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments. Neither Reves [v. Ernst & Young, 507 U.S. 170, 113 (S.Ct. 1163, 122 L.Ed.2d 525 (1993)] nor RICO itself exempts professionals, as a class, from the law's proscriptions, and the fact that a defendant has the good fortune to possess the title "attorney at law" is, standing alone, completely irrelevant to the analysis dictated by the Supreme Court. It is a good thing, we are sure, that we find it extremely difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney). This result, however, is not compelled by the fact that

the person happens to be a lawyer, but for
the reason that these actions do not entail
the operation or management of an
enterprise. Behavior prohibited by §1962(c)
will violate RICO regardless of the person
to whom it may be attributed, and we will
not shrink from finding an attorney liable
when he crosses the line between traditional
rendition of legal services and active
participation in directing the enterprise.
The polestar is the activity in question,
not the defendant's status.

Handeen v. LeMaire, 112 F.3d 1339, 1349 (8th Cir. 1997).

Moreover, this Court has, on two separate occasions, ruled
on when it may be appropriate to hold an attorney like Fasano
liable under §1962(c) of RICO for crossing the line between the
traditional rendition of legal services and the morass of co-
conspirator:

While the court agrees with the defendant
that attorneys violate no rule of law by
simply providing legal advice and services
to their clients, the amended complaint
alleges conduct far beyond that of simply
furnishing legal advice. In particular, the
amended complaint alleges that Fasano was a
member of an association-in-fact
[enterprise] (amended complaint at ¶82.2)
and in this capacity: (1) lied to this court
for Flanagan about an IRS investigation to
shield Flanagan from disclosing asset
information; (2) worked with Flanagan to
create a fraudulent scheme to hide
Flanagan's income from creditors; and (3)
fabricated a bogus stock pledge agreement to
shield Flanagan's stock from a turn-over
order from the court. In the court's view,
the allegations alleged conduct "cross[ing]
the line between traditional rendition of
legal services [and] active participation in
directing the enterprise" . . . .

(5/7/02 Order Overruling Fasano Defendants' Motion for Reconsideration of Ruling on Motions to Dismiss)

And then on May 2, 2005 the Court, in overruling the Fasano Defendants' Motion for Summary Judgment, ruled:

> [T]he court concludes that the evidence is sufficient to raise a genuine issue of material fact that Fasano embraced the objectives of the alleged conspiracy and agreed to commit at least two predicate acts in furtherance thereof. In particular, there is evidence that Fasano assisted Flanagan with the settlement proceeds scheme and the shifting stock scheme -- schemes that not only were intended to defraud Cadle from collecting on its lawful claims, but schemes that, through their execution, demonstrate a disregard for the rule of law and the authority of this court. In particular, there is evidence that Fasano may have: (1) instructed Flanagan to disregard a court order requiring the disclosure and a turn-over of Flanagan's assets; (2) assisted Flanagan in setting up checking accounts in his minor children's names in order to hide rental income -- though the court had placed a freeze on Flanagan's assets; (3) conspired with Flanagan, Bainer, and Prymas to wrongfully change the characterization of payments that Flanagan was receiving from Thompson & Peck from settlement proceeds to wages -- all in an effort to undermine a court order and property execution; (4) disregarded a turn-over order of the court and conspired with Flanagan, Prymas and Bainer to place a restrictive legend on Flanagan's stock certificates; (5) knowingly filed fictitious notices of compliance in response to a order of the court requiring the turn over of Flanagan's stock; and (6) despite knowledge to the contrary, represented to the court that Flanagan did not make any asset transfers after the court's March 9, 1998 order freezing Flanagan's assets. Such

> conduct far exceeds the rendering of legal
> advice and suggests participation in
> fraudulent conduct.

Cadle Company v. Flanagan, 2005 WL 1039005 at *11.

Contrary to Defendants' hyperbolic arguments, an attorney -- Fasano -- is not being held liable for the acts of his client. Rather, Fasano and his law firm are being held liable for their own violations of RICO and their own active participation in a conspiracy to defraud Plaintiffs by conspiring to not only violate orders of this Court, but by conspiring to hide, transfer and otherwise shield Flanagan's assets from the judgment claims of Plaintiffs. Indeed, here the Jury was specifically instructed that:

> Now with respect to the attorney defendants
> in this case, you may not find them liable
> under 1962(c) of RICO if you find that they
> did nothing more than furnish legal advice
> or provide standard legal services to a
> client or their clients.

(6/8/05 Tr. p. 108) As the Court will recall, Flanagan testified at his deposition, and reluctantly confirmed at trial, that (a) it was Fasano who had advised Flanagan to run his rental property income through nominee checking accounts in the name of Flanagan's minor children, all in violation of this Court's injunction (6/3/05 Tr. pp. 43-44); and (b) it was Fasano who advised Flanagan that he did not have to comply with this Court's turnover order when Flanagan delivered his T&P stock to

Bainer for placement of the restrictive legend on Flanagan's stock. (6/2/05 Tr. pp. 226 & 228)

The RICO statute was enacted to provide new remedies for old problems that had, for whatever reason, slipped between the cracks in the law. As noted by the Second Circuit, Congress enacted RICO

> to deal with a broadly based, deeply rooted problem by establishing new prohibitions, enhanced sanctions, and new remedies to deal with the activities of those engaged in illegal practices.

Bankers Trust, 859 F.2d at 1103.

While this is not the first case where a plaintiff seeks to hold an attorney accountable under RICO for providing knowing and active assistance in a client's fraudulent transfer scheme[1], this is the first case where a jury has been asked to hold a wayward attorney liable for that wrongful conduct. Giving honor to our Jury's verdict is not only right under the facts and the law, a resounding judgment by this Honorable Court affirming that verdict just might help slow down the unseemly proliferation of an attorney's active role in assisting a client's illegal activities -- fraudulently transferring assets in an effort to avoid a debt that a judge has ordered to be paid. See Gutierrez v. Givens, 989 F.Supp. 1033, 1047-48 (S.D.Cal. 1997).

---

[1] See Handeen v. LeMaire, 112 F.3d 1339 (8th Cir. 1997); and Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.Tex. 1991).

A.    **There Was Sufficient Evidence For The Jury To Find The Existence Of An Association-In-Fact Enterprise.**

In the Court's July 3, 2003 ruling on Flanagan's Motion to Dismiss, the Court ruled on the requirements for a RICO association-in-fact enterprise:

> 18 U.S.C. §1961(4) provides that: an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court has clarifed that an enterprise may also include "a group of persons associated together for a common purpose of engaging in a course of conduct" over a period of time and encompasses both legitimate and illegitimate enterprises. <u>United States v. Turkette</u>, 452 U.S. 576, 582-5, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). . . .
>
> An association-in-fact enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." <u>United States v. Turkette</u>, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The existence of an association-in-fact enterprise is often more readily proven by what it does, rather than by abstract analysis of its structure. . . . Thus, proof of various predicate acts may help establish the existence of the enterprise. <u>U.S. v. Coonan</u>, 938 F.2d 1553, 1560 (2d Cir. 1991).

<u>Cadle Co. v. Flanagan</u>, 271 F.Supp.2d 379, 386-87 (D.Conn. 2003).

In the Court's Charge, the RICO enterprise at issue in this case was properly defined as:

> an <u>association</u> of individuals, formal or informal, associated together and

> <u>functioning as a common unit</u> for the <u>common</u>
> <u>purpose</u> of engaging in a <u>course of conduct</u>
> <u>to defraud the plaintiffs</u>.    Now the
> enterprise    is    not    the    pattern    of
> racketeering    activity    to    which    I    just
> referred, it is an entity separate and apart
> from the pattern of activity in which it
> engages.    It is not required that each
> defendant be associated with the enterprise
> for the entire time that the enterprise
> existed.

(6/8/05 Tr. p. 103 (emphasis added))

The Defendants would have this Court believe that the Plaintiffs must prove Fasano's fraudulent conduct by direct evidence, and that because the Fasano Defendants themselves denied any participation in Flanagan's fraudulent conduct (which the Jury chose to disbelieve), the Jury Verdict against them must be set aside.    The law, however, allows a jury to consider circumstantial as well as direct evidence when reaching its verdict.[2]    The direct and circumstantial evidence here was sufficient for a reasonable jury to have found that an association-in-fact enterprise existed, and that the Fasano Defendants provided knowing and active assistance in the direction and operation of that enterprise.

Plaintiffs produced sufficient evidence at trial of an associational enterprise-in-fact that was devoted to the purpose of hiding, transferring and otherwise shielding Flanagan's assets from the judgment and other debt claims of Plaintiffs.

_____

[2]    The Jury was properly charged on the role of circumstantial evidence. (<u>See</u> 6/8/05 Tr. pp. 98-99)

The facts established at trial support the finding by the Jury that the Fasano Defendants, along with Flanagan and others, were "engag[ed] in a course of conduct to defraud the plaintiffs." (6/8/05 Tr. p. 103)

> **(1) There Was Sufficient Evidence For The Jury To Conclude That Fasano, Along With Co-Conspirators Flanagan And Others, Functioned As A Common Unit As They Engaged In A Course Of Conduct To <u>Defraud The Plaintiffs</u>.**

The Defendants claim that there was "no proof" that Fasano and co-conspirators Flanagan and others "functioned as a 'common unit', or that they were 'engag[ed] in a course of conduct to defraud the plaintiffs'." (Ds' Mem. p. 16)   The Defendants' argument is both meritless and sanctionable.

The Defendants claim that the only testimony pertaining to whether Fasano and Flanagan functioned as a "common unit" or that they were "engaged in course of conduct to defraud the plaintiffs" was that of Fasano and Flanagan, and that both of them "denied that Fasano knew of Flanagan's actions, or that Fasano was involved in Flanagan's alleged schemes." (<u>Id</u>.) (Ds' Mem. p. 16)   As admitted by the Defendants, "[o]bviously, the jury disbelieved their denials, which they were entitled to do." (<u>Id</u>).   While the Defendants are correct that the Jury disbelieved Fasano's and Flanagan's denials, there was substantial evidence that Fasano and Flanagan did, indeed, function as a common unit, and that they were, in fact, engaged

in a course of conduct to defraud the Plaintiffs.  (See  Pxs
144, 3 & 72-R; 6/2/05 Tr. pp. 226 & 228; 6/3/05 Tr. pp. 43-44;
5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05,
6/3/05 & 6/6/05 testimony of Charles Flanagan; Pxs 1-4, 6, 8,
20, 22, 24, 25, 25A, 25B, 56, 68, 122, 128, 135 & 160)[3]

> **(2) There Was Sufficient Evidence For The
> Jury To Find An Enterprise Which Was
> Separate And Apart From The Underlying
> Racketeering Activities.**

Further, the Defendants contend that Plaintiffs did not
prove that an enterprise existed "which was separate and apart
from the underlying racketeering activities", and "which was
distinct from the person conducting the enterprise's affairs."
(Ds' Mem. p. 17)  Once again, the Defendants are wrong.

The requirement that an enterprise must be "separate and
distinct from the racketeering activity" does not mean that the
proof pertaining to the commission of the predicate acts cannot
also be used to prove the existence of the enterprise.  Rather,
it simply means that there must be more to the enterprise than
the mere commission of the RICO predicate acts:

> [To establish a §1962(c) association-in-fact
> enterprise] it is not necessary to show that
> the enterprise has some function wholly
> unrelated to the racketeering activity, but
> rather that it has an existence beyond that

---

[3]     The Defendants did not make any reference to any specific pages of the
trial transcript in their Joint Motion for Judgment as a Matter of Law.
Plaintiffs respectfully request that the Court require Defendants to
supplement their Motion within seven days of this Response, and then accord
Plaintiffs an additional three days to supplement their Response with
additional specific references to the trial transcript.

> which is necessary merely to commit each of
> the acts charged as predicate racketeering
> offenses.  The function of overseeing and
> coordinating the commission of several
> different predicate offenses and other
> activities on an on-going basis is adequate
> to satisfy the separate existence
> requirement. . . . [T]here is sufficient
> evidence to find that the enterprise served
> a clearinghouse and coordination function
> above and beyond that necessary to carry out
> any single one of the racketeering
> activities charged against the individual
> defendants.

United States v. Riccobene, 709 F.2d 214, 223-24 (3d. Cir.
1983).

In United States v. Mazzei, 700 F.2d 85 (2d Cir. 1983) the
defendant was charged under §1962(c) of RICO for engaging in an
associational enterprise-in-fact designed to profit from the
fixing of Boston College basketball games.  Relying upon United
States v. Turkette, 452 U.S. 576 (1981), the defendant in Mazzei
argued on appeal that the jury verdict against him was improper
because there was insufficient evidence that the alleged
enterprise was separate and distinct from the alleged predicate
acts.  The Second Circuit disagreed:

> We agree that Turkette requires the
> government to prove both the existence of an
> "enterprise" and a "pattern of racketeering
> activity."  We do not, however, read
> Turkette to hold that proof of these
> separate elements be distinct and
> independent, as long as the proof offered is
> sufficient to satisfy both elements.

700 F.2d at 89.  The Mazzei Court went on to conclude:

> Turkette expressly provides that the proof
> used to establish the "pattern of
> racketeering activity" element "may in a
> particular case coalesce" with the proof
> offered to establish the "enterprise"
> element of RICO. 452 U.S. at 583. In our
> judgment, the proof of these elements
> coalesce comfortably in the present action.
> The government here proved an enterprise
> that was a "group of individuals associated
> in fact" with evidence establishing a common
> or shared purpose among the individuals and
> evidence that they functioned as a
> continuing unit. . . . The prosecution
> showed the B.C. conspirators shared a common
> purpose -- illegally shaving points on B.C.
> games to maximize their chances of betting
> successfully on those games -- and that they
> functioned as a continuing unit, i.e.,
> during the 1978-79 B.C. basketball season.

Id. See, also, United States v. Indelicato, 865 F.2d 1370, 1384

(2d Cir. 1989) (discussing interrelationship between proof of a

RICO pattern and proof of enterprise); DeFalco, 244 F.3d at 307

(affirming RICO jury verdict on proof of enterprise); Securitron

Magnalock Corp. v. Schnabolk, 65 F.3d 256, 262-63 (2d Cir. 1995)

(same).

The Defendants' argument that there was no evidence as to

the existence of the association-in-fact enterprise other than

the proof of the underlying predicate acts is false. The

evidence summarized above in §VI(A)(1) shows that there was

sufficient evidence for the Jury to find, in conformance with

the Court's Charge, that the enterprise devoted to the "common

purpose" of "defraud[ing] the plaintiffs" was "separate and

apart from the pattern of activity in which it engages."

(6/8/05 Tr. p. 103)   Accordingly, the Court should overrule Defendants' Joint Motion for Judgment as a Matter of Law.

**B.    The Evidence Was Sufficient For The Jury To Find That Fasano Participated In The <u>Operation Or Management Of The Enterprise</u>.**

The Defendants claim that Plaintiffs "failed to prove that Fasano participated in the operation or management of the enterprise . . .." (Ds' Mem. p. 18)   Once again, the Defendants' argument is without merit.

The Court previously addressed the "operation or management" issue when it overruled Fasano's motion for summary judgment:

> Fasano next moves for summary judgment arguing that, because he simply furnished legal advice and services to Flanagan, the record lacks evidence that he participated in the operation or management of the enterprise sufficient to constitute a violation of RICO section 1962(c). . . .
>
> RICO section 1962(c) makes it unlawful for any person to "participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs through a pattern of racketeering activity." <u>Id</u>.   "One must participate in the operation or management of the enterprise itself in order to be subject to §1962(c) liability." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185 113 S.Ct. 1163 (1993).   This test is satisfied by "knowingly implementing decisions, as well as by making them." <u>United States v. Allen</u>, 155 F.3d 35, 42 (2d Cir. 1988).   Further, it is no great leap to find that one who assists in the fraud also conducts or participates in the conduct of the affairs of the enterprise.

> First Capital Asset Management v. Satinwood,
> Inc., 358 F.3d 159, 178 (2d Cir. 2004). The
> issue of whether a RICO defendant operated
> or managed the affairs of an enterprise is
> essentially a question of fact. United
> States v. Allen, 155 F.3d 35, 42-43 (2d Cir.
> 1998).
>
> A genuine issue of material fact exists as
> to whether Fasano's conduct rises to the
> level of operation or management. As the
> court has previously concluded, the record
> suggests that Fasano actively assisted
> Flanagan with the settlement proceeds scheme
> and the shifting stock scheme, among others
> -- conduct which the court cannot say, as a
> matter of law, fails to rise to operation or
> management sufficient to constitute a
> violation of RICO section 1962(c).

Cadle Company v. Flanagan, 2005 WL 1039005 at *12.

Moreover, the Reves "operation or management" test "does not protect a law firm that is alleged to have helped execute a scheme to hide assets from a judgment creditor . . .." Guiterrez, 1 F.Supp.2d at 1086, citing Handeen, 112 F.3d at 1349. Further, under Second Circuit precedent, the "operation or management" test is a relatively low hurdle for a RICO plaintiff to clear. Baisch, 346 F.3d at 377.

In the Court's Charge, the Jury was instructed that:

> Section 1962(c) requires that the plaintiffs
> prove that the defendants were employed by
> or associated with the enterprise, that the
> defendants and the enterprise were separate
> entities, and that the defendants
> participated in the operation or management
> of the enterprise.
>
> Participation is defined in this context as
> knowingly implementing decisions as well as

> making them with the intent to engage in a
> fraudulent course of conduct and with the
> purpose of achieving that fraudulent end.
>
> Now with respect to the attorney defendants
> in this case, you may not find them liable
> under 1962(c) of RICO if you find that they
> did nothing more than furnish legal advice
> or provide standard legal services to a
> client or their clients.

(6/28/05 Tr. pp. 107-08)  As summarized in §VI(A)(1) above, the
evidence was sufficient for the Jury to find that Fasano
participated in the operation or management of the enterprise --
the formal or informal association of individuals associated
together and functioning as a common unit for the common purpose
of engaging in a course of conduct to defraud the Plaintiffs.
(6/8/05 Tr. p. 103) See DeFalco, 244 F.3d at 309-12 (sufficient
evidence for a jury to conclude that the defendant played a role
in the operation or management of the enterprise).

        Indeed, as the Court will recall, Flanagan testified at his
deposition, and reluctantly confirmed at trial, that (a) it was
Fasano who advised Flanagan to run his rental property income
through nominee checking accounts set up in the name of
Flanagan's minor children, all in violation of this Court's
injunction (6/3/05 Tr. pp. 43-44); and (b) it was Fasano who
advised Flanagan that he didn't have to comply with the Court's
turnover order when Flanagan had Bainer place the restrictive
legend on Flanagan's T&P stock. (6/2/05 Tr. pp. 226 & 228)  As
noted by the Second Circuit in First Capital, "it is no great

leap to find that one who assists in the fraud [Fasano] also conducts or participates in the conduct of the affairs of the enterprise." 385 F.3d at 178. (See Pxs 144, 3 & 72-R)

Accordingly, the Court should overrule the Defendants' Joint Motion for Judgment as a Matter of Law.

**C.   There Was Sufficient Evidence For The Jury Conclude That The Fasano Defendants Engaged In Predicate Acts In Furtherance Of The Overall Fraudulent Scheme.**

The Defendants contend that Plaintiffs did not introduce any evidence that the Fasano Defendants engaged in any predicate acts in furtherance of any of the fraudulent schemes. (Ds' Mem. pp. 19-20)   The Defendants, however, proceed on the false assumption that Fasano cannot be held liable under §1962(c) of RICO unless Fasano, himself, (a) personally engaged in the mailing of a letter containing an affirmative misrepresentation; or (b) personally engaged in a long distance telephone call wherein he made an affirmative misrepresentation; or (c) personally engaged in all of the conduct constituting bankruptcy fraud.   The law, however, will not assist Fasano in his efforts to escape accountability for his fraudulent conduct.

"The crime of mail fraud is committed when the mails are used as part of a scheme or artifice to defraud." Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 428 (5th Cir. 1990), citing United States v. Margiotta, 688 F.2d 108, 121 (2d Cir. 1982).

For a mail fraud or a wire fraud claim[4], a plaintiff need not prove that the mailing or interstate wire communications, in and of themselves, contained any misrepresentations. See Carpenter v. United States, 484 U.S. 19, 27 (1987); Baisch, 346 F.3d at 374; Cadle Co., 779 F.Supp. at 400 (citing cases at n. 50). Rather, all that is necessary is that the mail or interstate telephone lines be a part of the execution of the overall fraudulent scheme. See Schmuck v. United States, 489 U.S. 705, 710-12 (1989).[5] Accordingly, even "'innocent' mailings -- ones that contain no false information -- may supply the mailing element." Schmuck, 489 U.S. at 715.

In addition, a RICO plaintiff need not show that each defendant personally utilized the mails or long distance wire communications in connection with the execution of the overall fraudulent scheme. See United States v. Zichettello, 208 F.3d 72, 105-06 (2d Cir. 2000).[6] As noted by Judge Buchmeyer in a very similar case:

---

[4]    The elements necessary to establish violations of the mail fraud and wire fraud statutes are essentially identical; hence, courts apply identical analyses to both statutes. See Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 257 (2d Cir.2004); Cadle Co., 779 F.Supp. at 399 n. 37.

[5]    See, also, United States v. Finney, 714 F.2d 420, 423 (5th Cir.1983); United States v. Green, 494 F.2d 820, 823-24 (5th Cir.1974); Sun Savings & Loan Association v. Dierdorff, 825 F.2d 187, 196 (9th Cir.1987).

[6]    See, also, Cadle Co. v. Schultz, 779 F.Supp. 392, 399 (N.D.Tex. 1991); Constellation Bank, N.A. v. C.L.A. Management Co., 1995 WL 42285 at *4 (S.D.N.Y. Feb 1, 1995); Morrow v. Black, 742 F.Supp. 1199, 1203-04 (E.D.N.Y.1990); Center Cadillac v. Bank Leumi Trust Company of New York, 808 F.Supp. 213, 228 (S.D.N.Y. 1992); 131 Main Street Associates v. Manko, et al., 897 F.Supp. 1507, 1530 (S.D.N.Y.1995).

> Under RICO, one co-schemer is liable for the other co-schemers' predicate acts. Indeed, upon joining a fraudulent conspiracy, each defendant becomes liable for the prior conduct of the earlier conspirators, and remains liable for the subsequent conduct of the other conspirators.

Cadle Co., 779 F.Supp. at 400.

For a mail fraud or wire fraud claim, a RICO plaintiff need only prove the connection of the defendant to the overall fraudulent scheme which, during some part thereof, involves the use of the mail or long distance wire communications. Zichettello, 208 F.3d at 105-06. Indeed, so long as one participant in a fraudulent scheme "causes" the use of the mail or interstate telephone wires in the execution of the fraudulent scheme, all other knowing participants in the scheme are legally liable for the use of the mail or the interstate wires. Id. A defendant "causes" a use of the mail or wires when that defendant does an act knowing that the use of the mail or wires will follow in the ordinary course of business, or if the defendant reasonably could foresee that the use of the mail or wires would follow, even if the defendant did not actually intend for the use of the mail or wires to follow. Id. See, also, United States v. Amrep Corp., 560 F.2d 539, 545 (2d Cir.1977); United States v. Jones, 648 F.Supp. 225, 235 & n. 8 (S.D.N.Y.1996).

In overruling Fasano's motion for summary judgment, this Court commented on the summary judgment evidence as to Fasano's role in the commission of multiple acts of mail fraud and wire fraud:

> The court is of the opinion that Flanagan can be charged with having committed multiple acts of mail and wire fraud. For example, Flanagan's conduct in defeating the lawful claims of Cadle by (1) intentionally misrepresenting settlement proceeds as wages; (2) intentionally hiding his rental properties and his rental income; and (3) intentionally hiding his stock certificates -- all evidence a specific intent to defraud, with actual harm to Cadle at least contemplated. Further, the record reflects that Flanagan, Fasano, Bainer, and Prymas routinely used the mail and wires for communicating plans and strategies in furtherance of the above.

(Id.)

In the Court's Charge, the Jury was instructed that:

> Mail and wire fraud can be lumped together under one heading. To prove the crime of mail fraud or wire fraud, the plaintiffs must show that an individual participated in a scheme or artifice to defraud; two, with money or property as the object of the scheme; three, that an individual in the scheme used the mail or interstate telephone communications or caused the mail or interstate telephone communications to be used.
>
> One causes the use of mail or wires when that person commits some act knowing or reasonably foreseeing that the use of the mail or wires will follow in the ordinary course of business even if not actual use of the mail or wires follow; and, four, the use of the mail or interstate telephone

> communications was for the purpose of executing the scheme.
>
> Further, with respect to wire fraud, there must be evidence of interstate telephone communications. That is, communications between individuals in at least two different states.
>
> <u>The use of the mail or telephone communications is chargeable to all the participants in the scheme</u> even if the other participants could not have foreseen that the use of the wires, mails or wires would occur.

(6/8/05 Tr. pp. 103-05 (emphasis added)) In addition to the testimony at trial, the use of the mail as part of the execution of the overall fraudulent scheme was shown by Pxs 1, 2, 6, 13, 24, 62, 72-R, 79, 90, 100, 118, 135, 186, 188, 254, 255 & 256, and use of interstate telephone lines was shown by Pxs 4 & 8 (faxed from Socates Babacus in Springfield, Massachusetts to Fasano's office in New Haven, Connecticut) and Pxs 20, 25A, 25B, 56, 59, 68, 69, 72-R, 116, 122 & 135 (intrastate addressee, but faxed via use of interstate telephone lines). Indeed, Flanagan testified that the Caporale rent checks were mailed to Flanagan's post office box from December of 1998 until October of 1999 when the properties were deeded back to Flanagan. (6/3/05 Tr. pp. 22, 24-26, 28 & 30-32)

In overruling Fasano's motion for summary judgment, the Court also discussed the RICO predicate act of bankruptcy fraud:

> "Section 152 of Title 18 of the United States Code provides that it is unlawful for

> any individual . . . to knowingly and
> fraudulently transfer or conceal any of his
> . . . property in contemplation of a
> bankruptcy proceeding, or with the intent to
> defeat the bankruptcy law." <u>United States
> v. DePalma</u>, 461 F.Supp. 778, 798
> (S.D.N.Y.1978). Where a defendant is
> alleged to have fraudulently transferred an
> asset and subsequently concealed the same
> asset by making false statements in a
> bankruptcy petition, there are two separate
> violations of the bankruptcy fraud statute
> sufficient to constitute a pattern of
> racketeering activity within the meaning of
> RICO. <u>See</u> <u>Cadle v. Flanagan</u>, 271 F.Supp.2d
> 279, 385 (D. Conn. 2003) (<u>citing</u> <u>Bankers
> Trust v. Feldesman</u>, 648 F.Supp. 17 (S.D.N.Y.
> 1986), on reargument, 676 F.Supp. 496
> (S.D.N.Y. 1987), rev'd sub nom. on other
> grounds, <u>Bankers Trust v. Rhoades</u>, 859 F.2d
> 1096 (2d Cir. 1988)).

2005 WL 1039005 at *11. <u>See</u>, <u>also</u>, <u>First Capital Asset
Management, Inc. v. Satinwood, Inc</u>., 385 F.3d 159, 179 (2d Cir.
2004).

The Court then commented on the sufficiency of the summary
judgment evidence to sustain a predicate act claim of bankruptcy
fraud:

> On February 17, 1999, Flanagan filed for
> relief under Chapter 11 of the United States
> Bankruptcy Code. Flanagan did not disclose
> in that petition that he owned three
> residential properties or the rental income
> he received from tenants of those
> properties. Just a few months prior to his
> bankruptcy filing, in December of 1998,
> Flanagan transferred title to his
> residential properties to his wife's cousin,
> one Joseph Caporale, and then used
> Caporale's name to collect the rental income
> for himself during the pendency of the
> bankruptcy petition. The foregoing

> constitutes evidence that Flanagan fraudulently transferred assets and subsequently concealed the same assets by making false statements in a bankruptcy petition. Accordingly, <u>there is predicate conduct of bankruptcy fraud sufficient to constitute the basis for a cause of action under RICO</u>.

2005 WL 1039005 at *11 (emphasis added).

In the Court's Charge the Jury was instructed on bankruptcy fraud as a RICO predicate act as follows:

> The third predicate act is bankruptcy fraud. Now to prove bankruptcy fraud, the plaintiff must show that an individual knowingly concealed property, or engaged in knowing falsity under penalty of perjury in contemplation of a bankruptcy proceeding. Specifically, the plaintiffs must prove, first, that an individual knowingly and fraudulently concealed from creditors of the United States Trustee any property belonging to the bankruptcy estate of Charles Flanagan; or B, an individual knowingly and fraudulently made a false declaration, certificate, verification, or statement under penalty of perjury in relation to a bankruptcy proceeding.

(6/8/05 Tr. p. 105)

As shown by the evidence introduced at trial, and as discussed below, there was sufficient evidence for the Jury to conclude that the Fasano Defendants engaged in the predicate acts of mail fraud, wire fraud and bankruptcy fraud as the Defendants and Flanagan (<u>see</u> Px B p. 2 #2) operated as a "common unit for the common purpose of engaging in a course of conduct to defraud the plaintiffs." (6/8/05 Tr. p. 103)

-41-

> **(1) There Is Sufficient Evidence To Support The Conclusion Of The Jury That The Fasano Defendants Were Involved In The <u>Settlement Proceeds Scheme</u>.**

The Defendants contend that the only evidence as to Fasano's involvement in the settlement proceeds scheme was Fasanos's supposed insistence "that the characterization [of the settlement proceeds] be accurate." (Ds' Mem. p. 20) The Defendants' argument is without merit. (<u>See</u> Pxs 144, 3 & 72-R; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan; 5/31/05 testimony of Andrea Steele; Pxs 3, 20-22, 24, 25, 25A, 25B, 65, 68, 68A, 69, 72-R, 90, 119, 140, 144, 145 & 227)[7]

> **(2) There Is Sufficient Evidence To Support The Conclusion Of The Jury That The Fasano Defendants Were Involved In The <u>Checking Account Scheme</u>.**

The Defendants contend that there was

> no proof that Fasano knew of the so-called checking account scheme, that he advised Flanagan to divert money into his children's account, or that he advised Flanagan to divert money into the corporate account of MJCC. In fact, the Court will recall that Flanagan admitted he acted alone.

(Ds' Mem. p. 21) The Defendants' argument is not only meritless, it is sanctionable. Indeed, the Court will recall that Flanagan testified at this deposition, and reluctantly confirmed at trial, that it was <u>Fasano</u> who advised Flanagan to

---

[7]    <u>See</u> n. 3.

run his rental property income through nominee checking accounts in the name of Flanagan's minor children, all in violation of this Court's injunction and turnover order. (See 6/3/05 Tr. pp. 43-44; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan; Pxs 3, 13, 79, 100, 144, 254, 255 & 256)[8]

> **(3)    There Is Sufficient Evidence To Support The Conclusion Of The Jury That The Fasano Defendants Were Involved In The Shifting Stock Scheme.**

The Defendants argue that there was "no evidence" that the Fasano Defendants "knew that the [restrictive] legend had been placed [on Flanagan's T&P stock]", and that "[t]he only evidence to that effect are the denials by both Fasano and Flanagan." (Ds' Mem. p. 22)   Once again, the Defendants' arguments are meritless and sanctionable.   As the Court will recall, Flanagan testified at his deposition, and reluctantly confirmed at trial, that it was Fasano who advised Flanagan that he didn't have to comply with this Court's turnover order when Flanagan delivered his T&P stock to Bainer for placement of the restrictive legend on that stock.   (See 6/2/05 Tr. pp. 226 & 228; Pxs 3, 128 & 56; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05,

---

[8]    See n. 3.

6/3/05 & 6/6/05 testimony of Charles Flanagan; Pxs 1-4, 6, 8, 20, 57-59, 61, 62, 130, 144 & 160)[9]

**(4)  There Is Sufficient Evidence To Support The Conclusion Of The Jury That The Fasano Defendants Were Involved In The <u>Bankruptcy Fraud Scheme</u>.**

The Defendants raise a number of complaints about the Jury finding that the Fasano Defendants were involved in the bankruptcy fraud scheme.  First, the Defendants contend that the "[bankruptcy fraud] scheme should not have been allowed into evidence due to lack of disclosure."  Next, the Defendants claim that Plaintiffs did not plead bankruptcy fraud with the particularity required by Rule 9(b), Fed.R.Civ.P.  Third, the Defendants claim that there was no evidence of the Fasano Defendants' fraudulent intent in connection with the bankruptcy fraud scheme.  And finally, the Defendants argue that there was no bankruptcy fraud because "it now appears" that Flanagan's bankruptcy schedules were accurate.  (Ds' Mem. pp. 23-24)  All of the Defendants' arguments are without merit.

First, Plaintiffs did, in fact, make an adequate disclosure of their claim of bankruptcy fraud as a predicate act under RICO.  Plaintiffs not only specifically alleged bankruptcy fraud as a RICO predicate act in Plaintiffs' Second Amended Complaint and Plaintiffs' Third Amended Complaint (¶80.1), Plaintiffs outlined their proof of bankruptcy fraud as a RICO predicate act

---

[9]      <u>See</u> n. 3.

in connection with Plaintiffs' April 18, 2005 Second Amended
Response to Defendant Fasano's Motion for Summary Judgment.
(See pp. 52-53)

     Second, Plaintiffs did, in fact, plead bankruptcy fraud
with the particularity required by FRCP 9(b). As noted by the
Court in its July 3, 2003 ruling on Flanagan's motion to
dismiss:

>             The allegations in this case are that
>             Flanagan fraudulently transferred a portion
>             of his assets to others prior to filing
>             bankruptcy and that he did so in order to
>             keep those assets out of the bankruptcy
>             estate and away from his creditors. The
>             second amended complaint further alleges
>             that Flanagan filed false bankruptcy
>             accounts in connection with his Title 11
>             proceeding. Taken as true, these
>             allegations are sufficient to establish that
>             Flanagan engaged in racketeering activity
>             for purposes of RICO.

Cadle Company v. Flanagan, 271 F.Supp.2d at 285-86. See, also,
First Capital, 385 F.3d at 179. Plaintiffs plead their
bankruptcy fraud claims with sufficient particularity to put the
Defendants on fair notice of the nature of Plaintiffs' claims.
See Quaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990);
Update Traffic Systems v. Gould, et al., 857 F.Supp. 274, 281
(E.D.N.Y.1994); Center Cadillac v. Bank Leumi Trust Company of
New York, 808 F.Supp. 213, 228 (S.D.N.Y.1992); Corwin v. Marney,
Orton Investments, 788 F.2d 1063, 1068 n. 4 (5th Cir.1986);
Cadle Co., 779 F.Supp. at 396.

Third, there was ample evidence for the Jury to conclude that Fasano acted with the requisite fraudulent intent in connection with the bankruptcy fraud scheme. (See Px 130; 5/23/05 testimony of Joseph Caporale; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan; Pxs 130, 209 & 210)[10]

Finally, the evidence introduced at trial was sufficient for the Jury to conclude that Flanagan's bankruptcy schedules were not, in fact, accurate. The Defendants claim that "it now appears that the information in [Flanagan's bankruptcy schedules] was . . . accurate" because Flanagan did not hold record title to his rental properties at the time that he filed for bankruptcy. (Ds' Mem. pp. 23-24) It was still bankruptcy fraud, however, for Fasano to fail to list in Flanagan's bankruptcy schedules the rental income that Flanagan continued to receive even after he transferred paper title to his rental properties to his relative, Joe Caporale, on the eve of bankruptcy. (See 5/23/05 testimony of Joseph Caporale; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan)[11]

---

[10]     See n. 3.

[11]     See n. 3.

### D.  There Was Sufficient Evidence To Support The Jury Finding Of Continuity.

The Defendants contend that the evidence was insufficient to support the Jury finding of either closed-ended continuity (related wrongful conduct over a closed and fixed period of time exceeding two years) or open-ended continuity (related wrongful conduct over a short period of time which contains an implicit threat of continuing wrongful conduct).  The Defendants, again, are wrong.

In overruling Flanagan's motion to dismiss, this Court summarized the RICO "continuity" requirement as follows:

> Section 1961(5) provides: "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."  18 U.S.C. §1961(5) (2000).  The United States Supreme Court has determined that the definition in section 1961(5) "places an outer limit on the concept of a pattern of racketeering activity . . ." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).  "[T]he statement that a pattern 'requires at least' two predicates implies 'that while two acts are necessary, they may not be sufficient.'" H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, n.4, 105 S.Ct. 3275, 87 L.Ed2d 346; Id. at 527, 105 S.Ct. 3275 (1985)).  In order to prove "a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell

Telephone Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original).  Two or more acts are related if the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240.  However, the relatedness of "racketeering activities is not alone enough to satisfy §1962's pattern element." Id.

271 F.Supp.2d at 388.

The Court then concluded:

"[I]t must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." Id. (emphasis in original).  "What a plaintiff . . . must prove is continuity of racketeering activity, or its threat, simpliciter . . .. This may be done in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 249.  The Supreme Court has held that a RICO complainant "may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time . . .. or by proving the threat of continuity" of related predicates. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed2d 195 (1989) (emphasis in original).

Id. at 388-89.  The evidence introduced at trial was sufficient for the Jury to find both closed-ended and open-ended

continuity.   Accordingly,   the   Defendants'   Joint   Motion   for
Judgment as a Matter of Law should be denied.

### (1)   There Was Sufficient Evidence To Support The Jury Finding Of Closed-Ended Continuity.

The Defendants contend that Plaintiffs only proved wrongful
acts that occurred over a 13 month period from January of 1998
until February of 1999, and thus did not prove closed-ended
continuity.   (Ds' Mem. p. 25)   Once again, the Defendants are
wrong.

In   overruling   Flanagan's   motion   to   dismiss,   the   Court
concluded:

> The second amended complaint alleges that
> several persons, including friends, family
> members and various legal entities allegedly
> created by Flanagan, schemed together to
> defraud various financial institutions.  The
> predicate acts supporting the scheme took
> place over several years, but within a ten-
> year period.  Viewing the second amended
> complaint in a light most favorable to the
> plaintiffs, it sufficiently alleges closed-
> ended continuity by setting forth a series
> of related predicate acts extending over a
> substantial period of time that was within
> the statutory time frame.

271 F.Supp.2d at 389.

At trial, the Court instructed the Jury on closed-ended
continuity as follows:

> Predicate acts -- again under this heading
> of closed-ended continuity, predicate acts
> that are related and are shown to have
> continued over a substantial period of time
> meet the RICO requirement of closed-ended
> continuity.      Related   predicate   acts

> occurring during a period of less than two
> years do not constitute a substantial period
> of time for purposes of closed-ended
> continuity.

(6/8/05 Tr. p. 106)  Here, the Jury specifically found that the Fasano Defendants conspired with Flanagan in connection with (a) the settlement proceeds scheme; (b) the checking account scheme; (c) the shifting stock scheme; and (d) the bankruptcy fraud scheme.  (Px B p. 2 #2)

Near the end of the trial, on June 6, 2005 the Court discussed with counsel the parties' contentions on the issue of continuity and the duration of the alleged predicate acts. (6/6/05 Tr. pp. 23-25 & 74-86)  At that time, Plaintiffs' counsel summarized the evidence as to the duration of the predicate acts commencing in 1994 (id. pp. 74-75) and June of 1997 (id. pp. 75-76) until October of 2000.  (Id. pp. 24 & 86)

On the predicate acts/continuity issue, counsel for the Fasano Defendants took the position that Plaintiffs could only look back to June or December of 1997 for the earliest predicate acts.  (Id. pp. 81-82)  Counsel for Bainer and counsel for Prymas and T&P argued that Plaintiffs could only look back to January 5, 1998 for the earliest predicate acts.  (Id. pp. 83-84)

But it was agreed that the four months of recharacterized settlement agreement checks would be moved back to the end of the settlement pay-out (which was June 1, 2000 (Px 227)), so the

settlement proceeds scheme continued until October of 2000 (June 1, 2000 <u>plus</u> each of the four months of settlement agreement checks that were moved back to end of the original pay-out period). The evidence introduced at trial showed that the schemes continued over a substantial period of time from at least 1997 until at least October of 2000, a period in excess of three years. (<u>See</u> 5/31/05 Tr. p. 66; Px 227; 5/23/05 testimony of Joseph Caporale; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan)[12]

Accordingly, there was sufficient evidence to support the Jury finding of closed-ended continuity, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

### (2) **There Was Sufficient Evidence To Support The Jury Finding Of Open-Ended Continuity.**

The Defendants claim that "plaintiffs never alleged open-ended continuity in any of their complaints", and that "plaintiffs did not offer any evidence of open-ended continuity at trial . . .." (Ds' Mem. p. 27) Once again, the Defendants' arguments are both meritless and sanctionable.

Contrary to the Defendants' representations, Plaintiffs did specifically allege open-ended continuity in each of their complaints. As stated in ¶81 of Plaintiffs' Third Amended Complaint:

---

[12]    <u>See</u> n. 3.

> [T]here was <u>continuity</u> of conduct in that the <u>predicate acts and other wrongful activities</u> of the Defendants described herein extended over a considerable period of time and <u>involved conduct with the threat of continuing wrongful activities</u>.

For short term wrongful activities (<u>i.e.</u>, covering only "a few weeks or months", <u>H.J.</u>, 492 U.S. at 242), a RICO plaintiff must show, in addition to the related wrongful conduct, the threat of continuing wrongful activities. <u>Id</u>. This threat of continuing wrongful activities can be shown either through the nature of the wrongful acts themselves, or through the nature of the business enterprise. <u>Id</u>. at 242-43.

As made clear by the Supreme Court in <u>H.J.</u>, the nature of certain predicate acts themselves may pose the threat of continuing wrongful activities:

> A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. . . . Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity.

492 U.S. at 242. Further, the Second Circuit in <u>Cosmos Forms, Ltd. v. Guardian Life Insurance Co.</u>, 113 F.3d 308, 310 (2d Cir. 1997) ruled:

> The requirement of continuity is met since the unlawful acts recurred with regularity over at least fifteen months, and the open-

> ended activity stopped only when [the plaintiffs started to investigate the defendants' conduct].

In addition, the very nature of Flanagan's past wrongful conduct posed a distinct threat of continuing wrongful conduct. See United States v. Busacca, 936 F.2d 232, 237-38 (6th Cir.1991). Further, the proof of mail fraud, wire fraud and bankruptcy fraud in connection with the fraudulent transfers and continuing custodianship of Flanagan's assets involved a distinct threat of repetition continuing indefinitely into the future, and thus supplied the requisite threat of continuity. H.J., 492 U.S. at 242. Although the wrongful acts of the Defendants constituted long-term related wrongful conduct, the nature of the wrongful acts themselves also posed an implicit threat of continuing wrongful conduct. Thus under the evidence, Plaintiffs proved facts sufficient to meet the continuity requirement of a RICO pattern. See H.J., 492 U.S. at 250; Landry, 901 F.2d at 426.

Further, the threat of continuity may be established by showing the relationship of the predicate acts to the nature of the defendant's business enterprise. In addition to showing the nexus between the predicate acts and the more traditional criminal enterprise,

> the continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in

> the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise".

H.J., 492 U.S. at 243.

In addition, continuity is a prospective determination, made at the time of the wrongful conduct, not in hindsight after the Defendants have gotten caught. Cosmos, 113 F.3d at 310; Busacca, 936 F.2d at 238; Morrow v. Black, 742 F.Supp. 1199, 1207 (E.D.N.Y.1990). As stated by the court in Busacca:

> An analysis of the threat of continuity cannot be made solely from hindsight. All racketeering activity must necessarily come to an end sometime. The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict.
>
> Rather, in the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred.

936 F.2d at 238 (emphasis added)[13].

Moreover, at the time the Defendants were assisting Flanagan with his fraudulent transfer scheme and aiding with the "continuing custodianship" over Flanagan's assets, Flanagan had no intention of stopping even if he had met some intermediate

---

[13] See, also, DeFalco, 244 F.3d at 323; Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir.1994); First International Advisors, 956 F.Supp. at 486; Welch Foods, Inc. v. Moran, 1996 WL 107130 at *6 (W.D.N.Y. Mar. 6, 1996); Morrow v. Black, 742 F.Supp. 1199, 1207 (E.D.N.Y. 1990).

goal.  See DeFalco, 244 F.3d at 323-24; Tabas v. Tabas, 47 F.3d 1280, 1296 (3d Cir.1995).

Finally, the determination of a RICO "pattern" is a question of fact for resolution by the trier of fact.  See Handeen, 112 F.3d at 1353; Landry, 902 F.2d at 426 & 433; Brant v. Schal Associates, Inc., 854 F.2d 948, 952 (7th Cir.1988); George, 718 F.Supp. at 551.  Here the Jury was justified in finding open-ended continuity.  See DeFalco, 244 F.3d at 322-24; Metromedia, 983 F.2d at 368-69.

The illogical allegations and pleading deficiencies addressed in First Capital are distinguishable from the evidence and the Jury findings in this case.  In First Capital the plaintiffs' bankruptcy fraud allegations were not plead with sufficient particularity and, under the facts alleged, simply did not make sense.  385 F.3d at 179-80.  "Lacking both particularity and rationality, [the plaintiffs' bankruptcy fraud] allegations likewise fail to allege predicate acts adequately."  Id. at 180.  In addition, under the inadequate and illogical facts as alleged by the plaintiffs in First Capital, the scheme came to a quick conclusion (id. at 181), and thus there was "nothing left to loot."  Id.  Here, however, the proof as to not only the bankruptcy fraud scheme, but the other schemes as well, was logical and compelling to the Jury, and the evidence showed that there was a concerted effort by the

Defendants to maintain continuing custodianship over Flanagan's assets in a continuing effort to defraud the Plaintiffs. Accordingly, the decision in First Capital is distinguishable from the facts of this case.

In DeFalco the RICO defendants contended that "the alleged scheme . . . was inherently finite and therefore did not pose a threat of repetition." 214 F.3d at 323. The Second Circuit disagreed:

> [T]he record reveals sufficient evidence from which a reasonable jury could infer that the nature of the predicate acts committed by the . . . defendants implied a threat of continued criminal activity.
>
> * * *
>
> In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and the predicate acts are relevant. . . . Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity.

DeFalco, 244 F.3d at 323 (emphasis added). As in DeFalco, the nature of the enterprise in this case involves inherently unlawful activities, and thus there was sufficient evidence for the jury to find open-ended continuity.

Under the evidence introduced at trial, a threat of continuing wrongful activities was established by showing that the predicate acts committed by Flanagan and his co-conspirator

-56-

Defendants were a regular way of conducting or participating in the conduct of the RICO enterprise, the association-in-fact enterprise dedicated to the purpose of hiding, shielding and continuing the custodianship over Flanagan's assets. See H.J., 492 U.S. at 250.[14] Simply, under the teachings of the Supreme Court in H.J. and the Second Circuit in DeFalco, the evidence introduced at trial was sufficient for the Jury to find the existence of an implicit threat of continuing wrongful activities by Flanagan and the Defendants.

In overruling Flanagan's motion to dismiss, the Court commented on Plaintiffs' open-ended continuity allegations as follows:

> The second amended complaint also alleges that the "continuing custodianship" of Flanagan's assets involves "a distinct threat of repetition continuing indefinitely into the future" since the enterprise is "dedicated to hiding and shielding and continuing the custodianship over Flanagan's assets." Taken as true and drawing all reasonable inferences therefrom, the second amended complaint sufficiently alleges open-ended continuity.

271 F.Supp.2d at 389. Likewise, the evidence introduced at trial was sufficient to support the Jury finding of open-ended continuity. (See 6/6/05 Tr. pp. 23-25 & 74-76 (discussion with Court on continuity issue); 5/23/05 testimony of Joseph

---

[14] See, also, Akin v. Q-L Investments, Inc., 959 F.2d 521, 533 (5th Cir.1992); Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450-51 (9th Cir. 1991); Ikuno v. Yip, 912 F.2d 306, 309-19 (9th Cir. 1990).

Caporale; 5/23/05, 5/25/05 & 5/31/05 testimony of Paul Gaide; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan; 5/31/05 testimony of Andrea Steele; Px 227; Px 142 ("our agreement <u>going forward</u> . . ..")) [15]

Accordingly, there was sufficient evidence for the Jury to find open-ended continuity, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

**E.     There Was Sufficient Evidence To Support The Jury's Finding Of Reliance.**

The Defendants contend that Plaintiffs did not offer any evidence as to reliance.  According to the Defendants, the only evidence regarding reliance was a series of questions posed to Fasano as to whether he intended others to rely on his pleadings but, supposedly, there was no evidence that anyone relied on Fasano's false pleadings.  Further, the Defendants claim that "[b]oth Fasano and Flanagan admitted that all of the information in [Fasano's false] pleadings was provided by Flanagan . . .." (Ds' Mem. p. 29)  The Defendants, again, are wrong.

First, it was Fasano, and not Flanagan, who provided the false information in Flanagan's pleadings.  (6/3/05 Tr. pp. 51, 53-55 & 66)

And second, there was ample additional evidence of reliance introduced at trial.

---

[15]     <u>See</u> n. 3.

Reliance can be established through circumstantial evidence and by conduct.  See Vasquez v. Superior Court, 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964, 972-73 (1971); Cook v. Hayden, 183 Va. 203, 31 S.E.2d 625 (1944).  In addition, when a misrepresentation involves the failure to disclose material information, reliance is presumed. See Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc., 967 F.2d 742, 747-48 (2d Cir. 1992); Simon DeMartolo Group L.P. v. Richard E. Jacobs, 186 F.3d 157, 173 (2d Cir. 1999).  In a non-disclosure case when reliance is presumed, the burden then shifts to the defendant to show that the plaintiff did not, in fact, rely upon the non-disclosure.  See DuPont v. Brady, 828 F.2d 75, 78-79 (2d Cir. 1987); Burke v. Jacoby, 981 F.2d 1372, 1379 (2d Cir. 1992).

The Court charged the Jury on the RICO reliance issue as follows:

> The plaintiffs under RICO must also prove reliance.  That is, reasonable reliance on any of the defendants' alleged fraudulent acts.  The plaintiffs need not be the party that relied on the fraudulent acts, however. In this regard if the plaintiffs established that the defendants' misrepresentations to a third-party harmed the plaintiffs, the plaintiffs need only show that the third-party reasonably relied on the misrepresentations.

(6/8/05 Tr. p. 106)[16] Because of the Defendants' fraud, misrepresentations and non-diclosures about compliance with the writ of execution, injunction and turnover order, Plaintiffs took additional legal action (5/25/05 Tr. pp. 38, 47, 62, 68-69, 83; 5/26/05 Tr. pp. 105 & 115), which resulted in increased legal fees to Plaintiffs (5/25/05 Tr. pp. 126-27), and the loss by Plaintiffs of the opportunity to execute on Flanagan's assets toward satisfaction of Plaintiffs' judgments against Flanagan. (5/25/05 Tr. pp. 118-20, 135-36, 138 & 141) Thus, there was sufficient evidence to support the Jury finding of reliance.

In addition, Andrea Steele (T&P's bookkeeper) took action in reliance upon the Defendants' misrepresentations about the settlement agreement payments when she changed the payments to Flanagan from 1099 miscellaneous income (subject to the Court's writ of execution) to wages (which would be exempt from execution). Further, there was circumstantial evidence that numerous banks relied on the Defendants' misrepresentations when they opened up checking accounts in the names of Flanagan's minor children so Fasano and Flanagan could run Flanagan's rental property income through those accounts in defiance of the Court's injunction. Accordingly, there was sufficient evidence

---

[16]    The issue of what reliance, if any, is required in a RICO mail fraud or wire fraud action is now pending before the Supreme Court. See Bank of China v. NBM, 125 S.Ct. 348 & 125 S.Ct. 2956 (2005) (certiorari granted).

for the Jury to conclude that both Plaintiffs and third parties relied upon the Defendants' misrepresentations.[17]

### VII. Because There Was The Commission Of An Underlying RICO Substantive Offense, The Defendants Can Be Held Liable Under §1962(d) As RICO Co-Conspirators.

Relying on Beck v. Prupis, 529 U.S. 494 (2000), the Defendants claim that because the Jury did not find Bainer, T&P and Prymas liable for violating §1962(c), those Defendants cannot be held liable as co-conspirators with the Fasano Defendants under §1962(d). (Ds' Mem. p. 33) The Defendants, once again, are wrong.

The Defendants have engaged in a glib and superficial reading of some of the words used in the Beck v. Prupis decision. The decision in Beck v. Prupis does not stand for the proposition that a defendant cannot be held liable for a civil RICO conspiracy claim under §1962(d) unless that defendant is also liable for a RICO substantive offense under §1962(a), (b) or (c). Rather, the Supreme Court in Beck v. Prupis simply held that a civil RICO conspiracy claim, like a common law conspiracy claim, is a cause of action that does not exist absent the finding that an underlying substantive offense was committed. 529 U.S. at 506-07.

In other words, a civil RICO conspiracy claim, like a common law conspiracy claim, is a parasitic cause of action

---

[17]     See n. 3.

which can only be asserted against the co-conspirators if the underlying wrongful conduct by one or more of the co-conspirators constitutes the commission of a substantive offense. Id. Indeed, the Supreme Court in Beck v. Prupis specifically ruled that:

> Under our interpretation [of RICO], a plaintiff could, through a [RICO] §1964(c) [civil damage] suit for a [conspiracy] violation of §1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962.

529 U.S. at 506-07.

Therefore, under the Supreme Court's interpretation of RICO in Beck v. Prupis, here Plaintiffs can pursue a §1964(c) RICO civil damage action against Bainer, T&P and Prymas as co-conspirators with the Fasano Defendants and Flanagan for a violation of §1962(d) even though the Jury did not find Bainer, T&P and Prymas liable for a substantive offense under §1962(c). Accordingly, the Defendants' arguments on the applicability of Beck v. Prupis are without merit, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

### VIII. There Was Sufficient Evidence For The Jury To Hold The Defendants Liable As Co-Conspirators Under §1962(d).

The Defendants raise a number of arguments attacking the Jury finding that Bainer, T&P and Prymas violated §1962(d) in connection with their conspiratorial conduct to assist the Fasano Defendants and Flanagan in violating §1962(c) of RICO.

First, the Defendants argue that Plaintiffs failed to present adequate evidence supporting a verdict of participation in a RICO conspiracy under §1962(d).   Second, the Defendants argue that Plaintiffs' RICO conspiracy claims against Prymas and T&P (but apparently not the Fasano Defendants or Bainer) must fail as a matter of law because a plaintiff cannot recover for injury allegedly arising solely out of a RICO conspiracy.   And third, the Defendants reargue their limited (and rejected) version of the facts and claim that the evidence presented at trial was insufficient to demonstrate that Plaintiffs' collection expense damages were the result of any of the crimes enumerated under RICO. (Ds' Mem. pp. 33-35)   Again, the Defendants are wrong.

**A.   The Evidence Was Sufficient For The Jury To Conclude That The Defendants Were Co-Conspirators With Flanagan In Violation Of §1962(d).**

The Defendants claim that Plaintiffs failed to present adequate evidence supporting a verdict of participation in a RICO conspiracy under §1962(d).   (Ds' Mem. p. 33)   The Defendants' argument is without merit.

Here the Jury found that the Fasano Defendants (but not Bainer, T&P and Prymas) engaged in substantive violations of §1962(c) of RICO.   (Px A p. 1 #1)   The Jury, however, found that all of the Defendants, including Bainer, T&P and Prymas, engaged in a RICO conspiracy in violation of §1962(d).   (Px A p. 2 #2)

Then the Jury found that Fasano conspired with Flanagan, Bainer, T&P and Prymas in connection with the settlement proceeds scheme; the checking account scheme; the shifting stock scheme; and the bankruptcy fraud scheme. (Px B p. 2 #2(A) & (B)) The Jury also found (a) that Bainer conspired with Flanagan, Fasano, Prymas & T&P in connection with the settlement proceeds scheme and the shifting stock scheme; (b) that Prymas conspired with Flanagan, Bainer, Fasano and T&P in connection with the settlement proceeds scheme and the shifting stock scheme; and (c) that T&P conspired with Flanagan, Prymas, Bainer and Fasano in connection with the settlement proceeds scheme and the shifting stock scheme. (Px B p. 2 #2(A) & (B)) There was sufficient evidence introduced at trial for the Jury to conclude that the Defendants engaged in conspiratorial conduct in violation of §1962(d) of RICO.

As recently noted by the Second Circuit:

> We also note that the requirements for RICO's conspiracy charges under §1962(d) are less demanding. A "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997). In the civil context, a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme." Id. at 66. Baisch [the RICO plaintiff] has presented a genuine question as to [the alleged RICO co-conspirator's]

> knowledge of the racketeering enterprise and
> his willingness to promote it.

Baisch v. Gallina, 346 F.3d 366, 376-77 (2d Cir. 2003). See,

also, First Capital, 385 F.3d at 178. The evidence was

sufficient to show affirmative acts by all of the Defendants to

assist Flanagan in, at a minimum, the settlement proceeds scheme

and the shifting stock scheme. (See 6/9/05 Tr. p. 47)

Further, contrary to the Defendants' assertions, §1962(d)

of RICO does not require proof that each co-conspirator agreed

to commit two predicate acts. Zichettello, 208 F.3d at 99 n.

13. Indeed, the Supreme Court has ruled that:

> Even if [the co-conspirator] did not commit
> [two or more acts of racketeering activity],
> there was ample evidence that he conspired
> to violate [§1962](c). The evidence showed
> that [the primary wrongdoer] committed at
> least two acts of racketeering activity . .
> . and that [the co-conspirator] knew about
> and agreed to facilitate the scheme. This
> is sufficient to support a conviction under
> §1962(d).

United States v. Salinas, 522 U.S. 52, 118 S.Ct. 469, 478

(1997). See, also, Baisch, 346 F.3d at 366-77 (citing Salinas

as controlling in a §1962(d) civil conspiracy case under RICO).

In addition, a RICO conspiracy claim can be proven if the

defendant embraced the objective of the alleged conspiracy, and

agreed to commit predicate acts in furtherance thereof.

Zichettello, 208 F.3d at 99. To prove a RICO conspiracy it need

only be shown that the defendants know the general nature of the

conspiracy and that the conspiracy extends beyond their individual roles. <u>Id</u>. In applying this analysis, a court need inquire only whether an alleged conspirator knew what the other conspirators "were up to" or whether the situation would logically lead an alleged conspirator "to suspect he was part of a larger enterprise." <u>Id</u>.

Further, there is no rule requiring that a plaintiff prove that a RICO conspirator knew of all predicate acts by insiders in furtherance of the conspiracy. <u>Id</u>. at 100. To be held liable as a RICO conspirator, a defendant need only be shown to have possessed knowledge of the general contours of the conspiracy. <u>Id</u>. Simply, a plaintiff need not prove that a RICO conspirator-defendant agreed with every other conspirator, or knew all of the other conspirators, or had full knowledge of all the details of the conspiracy. <u>Id</u>.

For RICO conspiracy liability under §1962(d), Plaintiffs need not prove that the Defendants, individually, committed each element of each predicate act. <u>See</u> <u>Cadle Co</u>., 779 F.Supp. at 400. Further, the Supreme Court has ruled:

> Under our interpretation, a plaintiff could, through a [RICO] §1964(c) [civil damage] suit for a violation of §1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962.

<u>Beck v. Prupis</u>, 529 U.S. 494, 506-07 (2000).

In the Court's Charge, the Jury was instructed on
Plaintiffs' §1962(d) conspiracy claims as follows:

> Now Section 1962(d), the second section,
> provides that it shall be unlawful for any
> person to conspire to violate Section
> 1962(c).
>
> Now a conspiracy charge is proven if the
> plaintiffs show that the defendants embraced
> the objective of the alleged conspiracy and
> agreed to commit at least two predicate acts
> in furtherance thereof.
>
> A conspiracy in this sense is a combination
> or agreement of two or more persons to join
> together to accomplish an offense, which
> would be in violation of Section 1962(c) of
> RICO. That is, an offense where a defendant
> participated in the operation or management
> of the enterprise. To prove their
> conspiracy claims, the plaintiffs do not
> have to show that the defendants had full
> knowledge of all of the details of the
> conspiracy, but only that each defendant was
> aware of the general nature of the
> conspiracy and that the conspiracy extended
> beyond the defendants' individual role.
>
> If the plaintiffs prove, again by a
> preponderance of the evidence, that a
> particular defendant has knowingly and
> willfully joined the alleged conspiracy, it
> does not matter that the defendant, that
> defendant may not have participated in the
> earlier stages of the alleged conspiracy or
> scheme.
>
> Further, the plaintiffs must prove by a
> preponderance of the evidence that at least
> one of the alleged conspirators committed at
> least one overt act during the existence of
> the alleged conspiracy.
>
> An <u>overt</u> <u>act</u> is a transaction or event, <u>even</u>
> <u>one</u> <u>which</u> <u>may</u> <u>be</u> <u>entirely</u> <u>legal</u> <u>and</u> <u>innocent</u>
> <u>when</u> <u>considered</u> <u>alone</u>, but which is

> knowingly committed by a conspirator in an
> attempt to accomplish some unlawful object
> of the conspiracy.

(6/8/05 Tr. pp. 108-09 (emphasis added))

Finally, a plaintiff does not have to prove that the co-conspirator defendants have full knowledge of all of the details of the conspiracy, but only that each defendant was aware of the general nature of the conspiracy and that the conspiracy extended beyond the defendant's individual role. <u>Zichettello</u>, 208 F.3d at 99. <u>See</u>, <u>also</u>, <u>Baisch</u>, 346 F.3d at 376-77.

The Jury was justified in finding from the facts presented that the Defendants knowingly took part with Flanagan in Flanagan's fraudulent scheme. <u>See</u> <u>Ricciuti v. N.Y.C. Transit Authority</u>, 124 F.3d 123, 131 (2d Cir. 1997). A reasonable jury could have reasonably inferred that Flanagan and the Defendants were jointly involved in a common scheme -- a conspiracy to hide, transfer or otherwise shield Flanagan's assets from the judgment claims of Plaintiffs. (Px B p. 2 #2)

There was sufficient evidence presented at trial to support a Jury finding that all the Defendants engaged in conspiratorial conduct in violation of §1962(d). (6/9/05 Tr. p. 47; 5/23/05 testimony of Joseph Caporale; 5/25/05, 5/26/05 & 5/31/05 testimony of Paul Gaide; 5/31/05 testimony of Andrea Steele; 6/2/05, 6/3/05 & 6/6/05 testimony of Charles Flanagan; Pxs 1-4, 6, 8, 20, 22, 24, 25, 25A, 25B, 56, 68, 72-R, 122, 128, 135, 144

& 160)[18]  Accordingly, the Defendants' Joint Motion for Judgment
as a Matter of Law should be denied.

**B.  With A Substantive Violation Under §1962(c),
The Jury Was Justified In Finding The
Defendants Liable As Co-Conspirators Under
§1962(d).**

In again misconstruing <u>Beck v. Prupis</u>, the Defendants argue
that Plaintiffs' RICO conspiracy claims against Prymas and T&P
(but apparently not as to the Fasano Defendants and Bainer) fail
as a matter of law because a plaintiff cannot recover for injury
allegedly rising solely out of a RICO conspiracy.  (Ds' Mem. p.
33)  Again, the Defendants are wrong.

As discussed previously in §VII, there was a Jury finding
as to both a substantive violation under §1962(c) <u>and</u> a
conspiracy violation under §1962(d).  (Px A pp. 1-2, ##1 & 2)
With the existence of a substantive violation under §1962(c) it
was perfectly proper for the Jury to hold the Defendants jointly
and severally liable as co-conspirators under §1962(d) for the
damages proximately flowing from the violation of §1962(c).
Accordingly, the Defendants' Joint Motion for Judgment as a
Matter of Law is without merit, and should be denied.

---

[18]    <u>See</u> n. 3.

C.    **Because There Was A Substantive Violation Of §1962(c), Plaintiffs Can Hold The Defendants Jointly And Severally Liable As RICO Co-Conspirators Under §1962(d).**

The Defendants do not allege that there was insufficient evidence to show that Plaintiffs' collection expense damages were proximately caused by the Fasano Defendants' violations of §1962(c).  Rather, the Defendants claim that, under <u>Beck v. Prupis</u>, a plaintiff cannot claim RICO damages from an overt act that is not the act of racketeering or otherwise wrongful under RICO.  (Ds' Mem. p. 34)  The Defendants, once again, misconstrue the limited holding in <u>Beck v. Prupis</u>.

In <u>Beck v. Prupis</u> the Supreme Court stated:

> [I]njury caused by an overt act [<u>i.e</u>., an act in furtherance of the conspiracy] that is not the act of racketeering or otherwise wrongful under RICO [<u>i.e</u>., conduct that does not constitute a substantive violation of §1962(a)(b) or (c)] is not sufficient to give rise to a cause of action under §1964(c) [a civil RICO damage action] for a violation of §1962(d).

529 U.S. at 505.  Here, however, there was an underlying substantive violation of §1962(c).  (Px A p. 1 #1)  Accordingly, it was perfectly proper for the Jury to hold the Defendants jointly and severally liable as RICO co-conspirators for the damages proximately flowing from the Fasano Defendants' substantive violations of §1962(c).

Next the Defendants regurgitate their closing argument in claiming that the participation of Prymas and T&P (but not the

Fasano Defendants and Bainer) in the settlement proceeds scheme
and the shifting stock scheme do not constitute a violation of
RICO.  Although the Jury was (a) charged that the mere violation
of orders of this Court did not, in and of themselves,
constitute RICO predicate acts (6/8/05 Tr. pp. 103-04); (b)
charged as to the requirements of responding to a writ of
execution (id. p. 112); and (c) charged as to the notice
requirements for violations of the Court's injunction and
turnover order (id. p. 110), the Jury still found the
Defendants' arguments unavailing.

        Moreover, as the Court instructed the Jury in connection
with Plaintiffs' civil RICO conspiracy claims under §1962(d):

> An overt act is a transaction or event, <u>even
> one</u> <u>which</u> <u>may</u> <u>be</u> <u>entirely</u> <u>legal</u> <u>and</u> <u>innocent</u>
> <u>when</u>  <u>considered</u>  <u>alone</u>,  but  which  is
> knowingly committed by a conspirator in an
> attempt to accomplish some unlawful object
> of the conspiracy.

(6/8/05 Tr. p. 109 (emphasis added))  Simply, the claim by the
Defendants that some of the affirmative conduct by Prymas and
T&P may have been, when considered in a vacuum, technically
legal, that isolated fact does not shield them from liability as
RICO co-conspirators for conspiring with Flanagan in connection
with the execution of Flangan's fraudulent scheme to hide,
transfer and otherwise shield his assets from the judgment
claims of Plaintiffs.  (6/8/05 Tr. p. 109)

Indeed, the Defendants fail to realize that the RICO predicate acts of mail fraud and wire fraud do not require that the mailing or wire communications, by themselves, contain all of the elements of the wrongful conduct. Rather, the crime of mail fraud or wire fraud is committed when the mails or wire communications "are used as <u>part of</u> a scheme or artifice to defraud." <u>Landry</u>, 901 F.2d at 428. Accordingly, the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

**IX. The Defendants' Unplead And Unproved Affirmative Defense Of Abuse Of Process Does Not Bar Plaintiffs' RICO Claims.**

The Defendants claim that Plaintiffs' attempt to use post-judgment collection procedures in <u>Cadle I</u> in an effort to execute on assets for satisfaction of other judgments that Plaintiffs held against Flanagan constitutes abuse of process, barring Plaintiffs' claims in this case. (Ds' Mem. p. 42) The Defendants, again, are wrong.

While Plaintiffs disagree that the evidence introduced at trial proves a claim for abuse of process (5/25/05 testimony of Paul Gaide; 6/2/05 testimony of Dan Cadle; <u>see</u> <u>Mozzochi v. Beck</u>, 204 Conn. 490 (Conn. 1987))[19], any such claim by the Defendants would constitute an affirmative defense under Rule 8(c), Fed.R.Civ.P., and thus the burden was upon the Defendants to

---

[19]     <u>See</u> n.3.

plead and prove that affirmative defense.  See Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984) ("Failure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case.'" (citing 5 C. Wright & Miller, Federal Practice & Procedure §1278, at 339 (1969)). See also, United States v. Continental Ilinois National Bank and Trust Company of Chicago, 889 F.2d 1248, 1253 (2d Cir. 1989) ("Failure to plead an affirmative defense in the answer results in a waiver of that defense and its exclusion from the case." (internal citations and quotations omitted)).

Not only did the Defendants fail to plead the affirmative defense of abuse of process/illegality in response to Plaintiffs' Third Amended Complaint, the Defendants failed to submit the issue to the Jury in a proposed charge in substantially correct form.  Accordingly, the Defendants waived the claim that Plaintiffs' conduct in connection with their execution efforts constituted a bar to Plaintiffs' RICO claims in this case.  See United States v. Walsh, 700 F.2d 846, 855-56 (2d Cir. 1983) (failure to request a jury instruction and/or object to the lack of a jury instruction regarding an affirmative defense is fatal).

Accordingly, the Defendants' abuse of process/illegality argument is without merit, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

**X.    There Was Sufficient Evidence For The Jury
       To Find Continuity In Connection With The
       Defendants' RICO Conspiracy Violations.**

As discussed in §VI(D), there was sufficient evidence
introduced for the Jury to find both open-ended and closed-ended
continuity in connection with Plaintiffs' RICO conspiracy claims
against the Defendants.  Accordingly, the Defendants' argument
is without merit, and the Defendants' Joint Motion for Judgment
as a Matter of Law should be denied.

**XI.   The Defendants' Motion Should Be Struck Or
       Supplemented Because The Defendants Failed
       To Make Specific Citations To The Record.**

The Defendants raised numerous alleged errors at trial upon
which they based their Motion for Judgment as a Matter of Law.
Conspicuously absent from their Motion and Brief, however, was
any specific references to the trial transcript.  Plaintiffs and
this Court, therefore, are left to hunt through thousands of
pages of transcripts to find references that Defendants might
believe support their claims.  Plaintiffs have been highly
prejudiced by Defendants' failure to reference the specific
portions of the transcripts that they believe support their
arguments.  While Plaintiffs have attempted to address as many
of the allegations as possible in this Memorandum, they have
been unable to locate all the references, and therefore, have
not been able to address all of the allegations.  Plaintiffs,

therefore, have been unable to fully rebut many of Defendants'
arguments.

Toward this end, Local Rule 7(a)(1) states that:

> Nothing in this Rule shall
> require the Judge ruling on the
> motion to review portions of the
> record in response to a motion,
> where the moving papers do not
> make specific reference to such
> portions of the record.

This Court, therefore, is not required to entertain Defendants'
motion because the Defendants have failed to provide even the
most rudimentary references to the record. Furthermore,
Defendants' failure to provide these references is highly
prejudicial to Plaintiffs because absent this information,
Plaintiffs have been unable to fully respond in opposition to
the Motion.

Toward that end, Plaintiffs request that Defendants' Motion
for Judgment as a Matter of Law be dismissed in its entirety.
In the alternative, Plaintiffs request that this Court order
Defendants to supplement their Motion with specific references
to the record and provide Plaintiffs a reasonable amount of time
to respond to the same.[20]

### Conclusion

Based on the foregoing, Plaintiffs respectfully request
that the Court deny Defendants' Joint Motion for Judgment as a

---

[20]     See n. 3.

Matter of Law, and that the Court enter judgment in favor of Plaintiffs' on the Jury Verdict and Supplemental Jury Verdict

                                        Respectfully submitted,
                                        ARMSTRONG LAW FIRM


DATED: November 9, 2005.            By_____
                                        F. Dean Armstrong
                                        Ct. Fed. Bar #CT22417
                                        1324 Dartmouth Road
                                        Flossmoor, IL 60422
                                        (708) 798-1599
                                        Fax (708) 798-1597

                                        Edward C. Taiman, Esq.
                                        SABIA & HARTLEY, LLC
                                        190 Trumbull Street
                                        Suite 202
                                        Hartford, CT 06103-2205
                                        (860) 541-2077
                                        Fax (860) 713-8944

                                        Attorneys for Plaintiffs
                                        The Cadle Company and
                                        D.A.N. Joint Venture,
                                        A Limited Partnership


### Certificate of Service

        I certify that a correct copy of the foregoing instrument was mailed on November 9, 2005 to all defense counsel as shown on the attached Service List.


                                    _____
                                        F. Dean Armstrong