UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CADLE COMPANY, ET AL.            :        CIVIL ACTION NO:
                                          3:01-CV-531 (AVC)

V.                               :

CHARLES A. FLANAGAN, ET AL.      :        DECEMBER 21, 2005

## DEFENDANTS' JOINT REPLY BRIEF TO
## PLAINTIFFS' AMENDED RESPONSE TO MOTION FOR JUDGMENT

This brief is in reply to plaintiffs' Amended Response to Defendants' Joint

Motion for Judgment as a Matter of Law, dated November 7, 2005.  As defendants

have devoted a significant amount of time and energy to their oral and written

Motions for Judgment and Motion for New Trial and/or Remittitur, this brief will

address only those issues raised by plaintiffs that require clarification and response.

Additionally, this brief addresses specific transcript references of witness testimony,

previously unavailable at the time of the Motion for Judgment pending post trial

motions.

**I.     Plaintiffs Have Not Proven a 1962(c) Claim Against Fasano Defendants**

The Court will recall that it initially granted summary judgment for the

Defendants by order dated March 28, 2005.  In so doing, the Court cited a number

of deficiencies in the Plaintiffs' evidence:

> The court will not divine from a string citation to 15 exhibits how each
> exhibit supports one or more of the [plaintiffs' claims].  Moreover, the
> court will not marshal evidence to fit argument that implicitly must be

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

10361.0088
HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> made and yet is nowhere to be found, that is, argument concerning whether the evidence supports a finding of the crimes charged and a pattern of racketeering activity.

<u>See</u> Order Granting Summary Judgment, March 28, 2005.  Unfortunately, Plaintiffs' Amended Response is filled with those same deficiencies.  In fact, the deficiencies are worse, as Plaintiffs routinely cite misleading evidence, insufficient evidence, and in some cases, no evidence at all.  As a result, Defendants' Motion for Judgment should be granted for the reasons set forth on June 24, 2005.  However, unlike summary judgment, Plaintiffs should not be given a second chance to respond.  After 3 weeks of trial, and 4+ months to review the transcript, their failure to cite any evidence, and their continued use of "string citations", should be fatal.

Plaintiffs' deficiencies are most apparent in their 1962(c) claims, particularly those involving the RICO enterprise, control of the enterprise and continuity.

### a.    <u>RICO Enterprise</u>

Defendants' Rule 50 motion cited two specific deficiencies in Plaintiffs' proof of a RICO enterprise: first, Plaintiffs did not prove that an "enterprise" existed; and second, they did not prove that the enterprise was separate and distinct from the racketeering activity.  In response, Plaintiffs offered ***no evidence*** as to the latter point (See Plaintiffs' Amended Response, dated November 9, 2005, pp. 29-31), and a string citation as to the former (See Amended Response, pp. 28-29), neither of which is sufficient.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> The "enterprise" is not the "pattern of racketeering activity"; it is
> an entity separate and apart from the pattern of activity in which it
> engages.  The existence of an enterprise at all times remains a
> separate element which must be prove[n] by the [plaintiffs].

United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).  "[It] must have

a structure distinct from the pattern of racketeering activity in which its members

engage."  Heffernan v. HSBC Bank USA, 2001 WL 803719 (E.D.N.Y. 2001) at p.4,

citing Turkette, 452 U.S. at 583.  "An association in fact enterprise is not created

every time a combination of individuals . . . acts in concert to commit racketeering

acts."  Heffernan, 2001 WL 803719 at p. 5.  Therefore, even if the Plaintiffs proved a

"combination of individuals" who acted "in concert" to hide Charlie Flanagan's assets,

they still have not met their burden of proof, as they have not proven a "separate and

distinct" entity.  Instead, their Amended Response makes only brief mention of this

element on pages 28-29 without citing **any evidence** in the record to support their

claim of a separate entity.  The reason, respectfully, is that no such evidence exists.

More importantly, after 3 weeks of trial, and 4+ months of reviewing the transcript,

Plaintiffs apparently have not found any evidence either.  As a result, judgment

should enter for the Fasano defendants as to the 1962(c) claims.


### b.    Operation or Management of the Enterprise

Similarly, Plaintiffs have not proven that Fasano operated or managed the

alleged enterprise.  "[I]n order to be subject to 1962(c) liability, a defendant must

participate in the operation or management of the enterprise itself."  Reves v. Ernst &

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>Young</u>, 507 U.S. 170, 185, 113 S.Ct. 1163 (1993).  Mere association with the enterprise is not enough, nor is the relatedness of the predicate acts to the affairs of the enterprise.  "The plaintiff must show that the defendant exercised at least some degree of control over the affairs of the enterprise."  <u>Amalgamated Bank v. Marsh</u>, 823 F. Supp. 209, 220-21 (S.D.N.Y. 1993).

Despite this burden, Plaintiffs' Amended Response cited only two references to the transcript (6/3/05 Tr. pp. 43-44 and 6/2/05 Tr. pp. 226 and 228), neither of which are remotely related to operation or control.  At best, Plaintiffs' evidence suggests a "couple conversations" between Fasano and Flanagan during which Fasano allegedly advised his client.  (Tr. 6/2/05, pp. 226-228 and Tr. 6/3/05 pp. 43-44).  Conspicuously absent from this testimony is any evidence of control.  In addition, the alleged conversations occurred in the context of an attorney giving advice to his client. [1]  Thus, notwithstanding Flanagan's repeated denials that he got

---

1/      Tr. 6/2, p. 226:

    Q.      Did any attorney advise you whether or not you had to turn over the stock?
    A.      Never was discussed.

    Tr. 6/2, p. 227:

    Q.      Does that refresh your recollection as to whether or not you got –
            THE COURT:    What, if anything – what advice, if any, you got about –
    A.      Like I said a moment ago, I've had enough of these things, I try to recall as best as I can.  I don't recall as I sit here today that I had any legal advice as to turning that stock over after the legend having been put on.

    Tr. 6/2, p. 228:

    Q.      Did you at some point in the past give a different answer, sir?

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

any advice to hide his assets, the sole basis for Plaintiffs' claim of control is an alleged conversation between an attorney and his client during which the attorney gave advice to his client.  This evidence is the exact evidence that our courts have found to be insufficient as a matter of law.

> Providing legal advice and legal services does not constitute participation in the operation or management of an enterprise [in] violation of § 1962(c).  Morin v. Trupin, 835 F.Supp. 126, 135 (S.D.N.Y. 1993); see also Nolte v. Pearson, 994 F.2d 1311, 1317 (8th Cir. 1993) (attorneys who prepared allegedly false opinion letters and informational memoranda regarding a music recording leasing program had not participated in "operation or management"); University of Maryland v. Peat, Marwick & Co., 996 F.2d 1534, 1539 (3d Cir. 1993) ("[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"); Sassoon v. Altgelt, 777 Inc., 822 F.Supp. 1303 (N.D. Ill.1993) (attorneys' provision of legal services to general partners and limited partnership did not constitute operation or management of enterprise that would support liability under Section 1962(c)); Gilmore v. Berg. 820 F.Supp. 179, 183 (D.N.J.1993) (attorney who prepared false limited partnership documents not liable under §1962(c)).

Arons v. Lalime, 3 F.Supp.2d 314, 321 (W.D.N.Y. 1998).  Clearly, if the facts of these cases do not constitute "operation or management", the facts of our case do not either.  In fact, if preparing false opinion letters is insufficient under RICO, and if preparing false limited partnership documents is not enough for RICO, the facts of our case are not even close.

---

A.    I said in this (the deposition) that somebody asked me after the legend had been put on what – counsel advised me that I didn't have to turn over the stock and I stated on this date it was Attorney Fasano.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

c.     **Closed-ended Continuity**

Plaintiffs' claim of continuity is perhaps the most deficient of all.  On pages 49-51 of Plaintiffs' Amended Response, Plaintiffs claim three years of purported criminal activity.  However, each page is more deficient than the next – Page 49 has no references to the record; Page 50 cites only arguments by counsel; and Page 51 has the worst of Plaintiffs' string citations.  Plaintiffs do not cite specific portions of the record, they instead cite the *entire testimony* of Charlie Flanagan (all three days of it), the *entire testimony* of Paul Gaide (all three days of it) and the *entire testimony* of Joseph Caparole.  See Amended Response, p. 51.  Clearly, Plaintiffs want this Court to "marshal evidence" for them, as they have not attempted to do so them-selves.  Respectfully, the Court should not do so.  The burden belongs to the Plaintiffs, not to the Court.  In addition, if the Court reviews each of the Plaintiffs' citations, it will see that there is no evidence of two years of predicate acts.  Clearly, if there was such evidence, Plaintiffs would have cited it.  Once again, however, their omission is conspicuous.  As a result, Plaintiffs have not proven closed-ended continuity, therefore, judgment should enter for the Fasano defendants.

d.     **Open-ended Continuity**

Unfortunately, Plaintiffs' have utilized the same strategy for open-ended continuity.  Again, no references to specific portions of the record, only vague refer-ences to three days of testimony by Mr. Flanagan, three days of testimony by Mr.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Gaide, and the entire testimony of Joseph Caporale.  See Amended Response, pp.
57-58.  Curiously, the Plaintiffs also cite the entire testimony of Andrea Steele, as if
she somehow provided proof of future criminal activity.  Clearly, if there was any
specific proof of future criminal activity, or any threat of such activity, Plaintiffs would
have cited it in their brief.  However, after 4+ months of reviewing the transcript, they
again refer the Court to the testimony of 4 witnesses, and ask the Court to find the
evidence itself.

Furthermore, Plaintiffs have done nothing to refute the law of the Second
Circuit as established in First Capital Asset Mgmnt. Inc. v. Satinwood, Inc., 385 F.3d
159 (2d Cir. 2004); and Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d
229 (2d Cir. 1999); as well as our Supreme Court in H.J. Inc. v. Northwestern Bell
Tel. Co., 492 U.S. 229, 109 S. Ct. 2893 (1989).  First, "[t]o satisfy open-ended
continuity, the plaintiff . . . must show a threat of continuing criminal activity beyond
the period during which the predicate acts were allegedly performed.  FCAM, Inc.,
385 F.3d at 180 citing Cofacredit, 187 F.3d at 242.  Second, Plaintiffs must do so as
to each defendant individually.  FCAM, Inc., 385 F.3d at 180; DeFalco v. Bernas, 244
F.3d 286, 306, 322 n.22 (2d Cir. 2001); and United States v. Persico, 832 F.2d 705,
714 (2d Cir. 1987).  Third, the Second Circuit has long established that "alleged
bankruptcy fraud does not amount to or pose a threat of continued criminal activity."
See FCAM, 385 F.3d at 180-181 (internal quotation marks omitted), citing Cofacredit,
187 F.3d at 244; GICC, 67 F.3d at 466; and H.J. Inc. at 239.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Conspicuously, Plaintiffs do not discuss two of these cases; instead, their only response is to try and distinguish the <u>FCAM</u> case with a claim by Mr. Armstrong that is completely unsupported by the record:

> "Here, however, the proof as to not only the bankruptcy fraud scheme, but the other schemes as well, was logical and compelling . . . and the evidence showed that there was a concerted effort by the Defendants to maintain continuing custodianship over Flanagan's assets in a continuing effort to defraud the Plaintiffs."

<u>See</u> Amended Response, pp. 55-56.  Predictably, there are no citations to support the "logical and compelling" claim of continuity, or the "concerted effort to maintain continuing custodianship over Flanagan's assets".  Indeed, the only evidence at trial is that the Fasano defendants filed the "initial bankruptcy papers" in February 1999, after which they were replaced by other counsel (Robert Skelton) immediately thereafter.  (Tr. 6/1/05, pp. 93-94 and Tr. 6/3/05, pp. 92-93).  Clearly, the Second Circuit does not infer a threat of future criminal activity by simply filing one bankruptcy schedule.  In fact, the facts of our case fall well short of those cases cited above.  For example, in <u>FCAM</u>, the debtor defendant filed bankruptcy in July 1997, however, the alleged predicate acts of perjury and mail fraud continued for the next 2½ years (until December 1999).  Nevertheless, the Second Circuit still found:

(1)     that two years of continuous bankruptcy fraud did not "imply a threat of continued criminal activity";  <u>FCAM</u>, 385 F.3d at 180;

(2)     that unlike organized crime, bankruptcy fraud is "inherently terminable"; <u>Id.</u>;

(3)     when a debtor files for bankruptcy, the scheme in effect comes to its conclusion (despite two more years of predicate acts); <u>Id.</u> at 181;

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(4)     that it defies logic to suggest that a threat of continued looting activity exists when there is nothing left to loot;  *Id.*; and

(5)     continued concealment of assets in a bankruptcy scheme is not a predicate act.  *Id.*

Thus, if the facts of those cases (particularly FCAM) do not pose a threat of continuing criminal activity, the facts of our case do not either.  Indeed, Plaintiffs admitted as much in their Amended Response when they argued that their claim was ripe.  Specifically, Plaintiffs argued on pages 8-9:

> Flanagan filed for bankruptcy on February 17, 1999, and . . . [t]he evidence was undisputed that there was no realistic chance of any financial recovery from Flanagan's estate, and that Flanagan was, in essence, "judgment proof". (citation omitted).

<u>See</u> Amended Response, pp. 8-9.  Respectfully, Plaintiffs can't have it both ways – they cannot argue that their claim was ripe because "there was no chance of any recovery from Flanagan", but then argue a threat of continued looting activity when "there was nothing left to loot."  As a result, Plaintiffs cannot prove open-ended continuity, thus, judgment should enter as a matter of law.

## II.     <u>Plaintiffs Are Not Entitled to Collection Expense Damages</u>

### a.     <u>No Standing</u>

The jury found that Plaintiffs suffered no lost debt damages, therefore, the question remains as to whether Plaintiffs are entitled to any other RICO damages.  In their Amended Response, Plaintiffs cite <u>Stochastic Decisions Inc. v. DiDomenico</u>,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

995 F.2d 1158 (2d Cir. 1993) to claim collection expense damages.  <u>Stochastic</u> held

that a plaintiff may recover legal fees as RICO damages, provided that the fees were

"proximately caused by a RICO violation."  <u>Id.</u> at 1167.  However, the court in

<u>Stochastic</u> specifically limited its ruling to collection expense damages incurred in

enforcing **unpaid** judgments.  <u>Id.</u> at 1166-67.  Moreover, the court did not allow RICO

damages for those judgments that were paid.  In fact, in <u>every</u> <u>case</u> where the

judgment was paid, including <u>Stochastic</u>, the Second Circuit has not allowed RICO

damages.  See <u>Commercial Union Assurance v. Milken</u>, 17 F.3d 608, 609 and 613

(2d Cir. 1994)(there is no RICO liability where the plaintiffs suffered no out-of-pocket

loss, even though defendants actions would otherwise subject them to liability); <u>First</u>

<u>Nationwide Bank v. Gelt Funding Corp.</u>, 27 F. 3d 763, 768-9 (2d Cir. 1994)(to the

extent plaintiffs received the return actually bargained for, they suffered no

compensable RICO injury); and <u>Carlisle Ventures, Inc. v. Banco Espanol de Credito,</u>

<u>S.A.</u>, 176 F.3d 601, 606 (2d Cir. 1999)(without damages or direct pecuniary losses,

there is no claim).  Therefore, Plaintiffs reliance upon <u>Stochastice</u> in misplaced, as

the underlying judgment in Cadle I was paid, thus the jury found no lost debt

damages.  However, once they did so, they could not as a matter of law award

collection expense damages.

     **b.**     <u>**No Proximate Cause**</u>

     Subsequent to <u>Stochastic</u>, the Eastern District of New York held in <u>Chera v.</u>

<u>Chera</u>, 2000 WL 1375271 (E.D.N.Y. 2000) that litigation costs that were not the direct

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

result of racketeering acts could not be RICO damages.  Injuries that are "neither the preconceived purpose nor the specifically-intended consequence" of the defendant's acts will not sustain the plaintiff's proximate cause burden. Id. at 6 (citing In re American Express Co. Shareholder Litigation, 39 F.3d 395, 400 (2d Cir.1994) (internal quotation marks omitted)). More recently, the Second Circuit Court of Appeals in Motorola Credit Corp. v. Uzar, 322 F.3d 130 (2d Cir. 2003) held that "a fraud defendant is not liable for all losses that may occur, only those actually suffered, only after the lender has exhausted the bargained for remedies available to it…. In short, a plaintiff who claims that a debt is uncollectible because of defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated." Id. at 136.

Stochastic and progeny stand for the proposition that in order to be recoverable as RICO damages, collection costs must be the direct and intended proximate cause of the RICO violations and not part of the "bargained for contractual remedies available" to all creditors attempting to collect on a debt.  Plaintiffs presented no evidence satisfying the standard allowing recovery of their collection expense as civil RICO damages.  There was no allegation and no proof by the plaintiffs that an increase in their collection costs was the "preconceived purpose or the specifically-intended consequence" of the defendants' acts.  Plaintiffs' failure to provide any evidence that their collection expenses were proximately caused by the RICO violations found by the jury to be committed by the defendants, can only lead to

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the conclusion that the jury's verdict of $500,000.00 was improper and that judgment as a matter of law in favor of defendants should be granted.

      c.    **Plaintiffs' Evidence is Insufficient As a Matter of Law**

We know from the evidence the following:

1.     Attorney Gaide was assigned by plaintiffs to pursue the Flanagan matters which are the subject of this lawsuit.  **(Tr. 6/2/05, p. 12, lines 15-17)**

2.     Cadle fully recovered its debt, fees and costs in Cadle I, the federal court action, against Mr. Flanagan when Mr. Flanagan paid $99,000.00 into court. **(Exhibit 514; Tr. 5/26/05, p. 71, lines 1-4)**

3.     Cadle had, at that time, three other judgments for which Gaide instituted lawsuits, but initiated no collection efforts, because "[t]he overall strategy was to use the discovery from the federal action in pursuit of the other judgments. **(Tr. 5/25/05, p. 99, lines 18)**  In fact, Cadle's strategy was to seize Flanagan's stock in Thompson & Peck ("T&P") in Cadle I and use it to satisfy Flanagan's obligations in other cases.  **(Tr. 5/25, p. 112)**

4.     The "settlement proceeds" came to light in the federal court action and several motions and two executions filed by Gaide focused on these items**.  (Tr. 5/25/05, p. 110, lines 3-7 and p. 55, lines 19-25)**

5.     The MJCC "checking account scheme" was also known to Gaide during the pendancy of the Cadle I litigation.  **(Tr. 5/25/05, pp. 121-122)**

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

6.    Cadle learned who actually possessed the stock in the federal court action.  **(Tr. 5/25/05, p. 109, lines 14-18)**

7.    Mr. Cadle acknowledged that bankruptcy was a possibility for a debtor like Charles Flanagan.  **(Tr. 6/2/05, p. 85, lines 1-15)**

8.    In the normal course of Cadle's business, Cadle recovered and sold the properties that were the subject of one of its foreclosure actions for $100,000.00.  **(Tr. 6/2/05, p. 89, lines 1-25, p. 92, lines 11-15)**

9.    Cadle also recovered properties that were owned by MJCC, a corporation alleged to be controlled by Mr. Flanagan, one sold for $485,000.00 and one had with a fair market value of $250,000.00.  **(Tr. 6/2/05, p. 96, lines 17-18)**

10.    Gaide, as the sole attorney for Cadle during times relevant to this lawsuit, represented to this court that the extra litigation costs related to the alleged schemes amounted to only $10,000.00 - $15,000.00.  **(Tr. 5/25/05, p. 128, line 25)**

11.    The jury heard evidence from Mr. Cadle that the plaintiffs spent $494,000.00 on collection expenses, **(Tr. 6/2/05, p. 24, line 13)** exclusive of the litigation costs of this case **(Tr. 6/2/05, pp. 22-3, lines 21-25, 1-2)** and attorneys' fees "we would normally spend to collect on a judgment" **(Tr. 6/2/05, p. 23, line 25, p. 24, lines 1-3)**; the fees paid to representative Attorney Gaide in the **grievance (Tr. 6/2/05, p. 24, lines 4-22)**, and defense of the contempt order.  **(Tr. 6/2/05, p. 25, lines 1-3)**

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

12.    There was never any documentary proof supporting this claim of $494,000.00.

As <u>Stochastic</u> and progeny state, "benefit of the bargain damages" are not recoverable under RICO.  Therefore, litigation costs that Cadle allegedly incurred simply to collect on the notes, "in the normal course of its business" are not recoverable.

Although Mr. Cadle testified about spending $494,000.00, nothing supports this testimony, not even the testimony of his own counsel, Attorney Gaide.  As stated previously, Attorney Gaide testified that both the stock and settlement proceeds issues were addressed in Cadle I, for which full recovery was made.  Since the settlement proceeds and the stock were assets sought in the Cadle I proceedings, and since there was full recovery in that case, under <u>Stochastic</u> and <u>Commercial Union</u>, 17 F.3d 608 (2d Cir. 1994) there can be no collection expense damages associated with these two "schemes", especially where the plaintiffs' intent to seize assets in Cadle I to satisfy other Flanagan debts would perpetrate an abuse of process.  <u>See</u> Motion for Judgment.  Indeed, Mr. Gaide testified that he knew of the various checking accounts utilized by Flanagan, constituting the "checking account" scheme during the pendency of Cadle I.  **(Tr. 5/25/05, p. 121-122)**  So, if all of these schemes came to light during Cadle I, and Mr. Gaide's own testimony places an extra litigation value of $10,000.00 - $15,000.00 on this work, where is the evidence of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

$494,000.00 allegedly spent by plaintiffs by Mr. Cadle?  Moreover, where is the required evidence of proximate causation?

Since, there is no evidence that plaintiffs spent $494,000 as a result of any of the settlement shifting stock and checking account "schemes," as of December 1998 (when Cadle I terminated) the last possibility is that he spent it on the "bankruptcy fraud" scheme"[2].

The problem with this possibility is twofold:  First, bankruptcy is part and parcel of debt collection and therefore part of the normal course of "bargained for remedies" in plaintiffs' collection business. Consequently, attorneys fees and costs associated with bankruptcy proceedings are not recoverable as collection expense damages under civil RICO.  See § I.A. *supra*.   Second, there is no evidence of the plaintiffs' bankruptcy attorney fees and costs, incurred *as a result* of the claimed bankruptcy fraud.  There were no bills from any of plaintiffs' bankruptcy attorneys, including Attorney Gaide, and no other evidence expressly linking the claimed acts of bankruptcy fraud with legal fees and costs.

In fact, not a shred of evidence was produced or elicited by plaintiffs at trial showing that any of the claimed "schemes" impacted plaintiffs' only post Cadle I collection effort, the prejudgment remedy hearing in New Haven, and the bankruptcy.

Under First Nationwide Bank v. Gelt Funding Corp., 27 F. 3d 763 (2d Cir. 1994), the 2d Circuit Court of Appeals addressed several factors used to determine

---

[2] It should be remembered that neither Bainer, Prymas or T&P were found to have been involved in the claimed bankruptcy fraud "scheme."

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

whether proximate cause exists.  The court specifically addressed the circumstance of an "intervening direct" or "independent" cause of the injury, stating that such intervening cause "cannot be said to have occurred by reason of the defendant's actions."  Id.  Here, there is significant evidence in the record that Flanagan's insolvency, not, the conduct of the defendants, was the direct cause of plaintiff's inability to recover from Flanagan.  Both Mr. Gaide and Mr. Cadle testified that bankruptcy cut off their efforts to use the stock to satisfy the other judgments/debts **(Tr. 5/25/05 pp. 129, 136-37, 140; Tr. 5/26/05 pp. 7-8)**.  Sometime after Flanagan filed bankruptcy, Cadle determined that Flanagan had no assets and there was no realistic chance for any financial recovery of plaintiffs' claims **(Tr. 6/2/05 pp. 28,30)**.

Further, although plaintiffs pled three RICO violations: mail fraud, wire fraud and bankruptcy fraud, plaintiffs never asked this court to have the jurors identify which if any RICO violations were committed by each respective defendant. Defendant's Proposed Jury Interrogatories asked the jurors to identify which of these violations were committed and further asked jurors to find whether plaintiffs' injuries were factually and proximately caused by the pattern of predicate acts.  The Court's Verdict Form asked the jurors only to identify schemes, not predicate acts.  Plaintiffs did not object.  Consequently, there is no indication that the jurors found a RICO violation let alone that they found (i) that RICO damages were proximately caused by violations committed by these defendants; or (ii) that the alleged collection expense damages were proximately caused by a RICO violation.  The record is devoid of

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

evidence of proximate causation and therefore, the defendants' motion for judgment must be granted.

III.    **Plaintiffs Have Not Proven Which, If Either, of the Plaintiffs Suffered Damages**

Notwithstanding the claims of counsel, the evidence is clear that the Plaintiffs are separate entities, with different ownership interests for both.  (Tr. 6/2/05, pp. 3-4 and 55-56).  The fact that Dan Cadle is the sole owner of one and the majority owner of the other is irrelevant.  The fact that his wife is part owner of one is irrelevant.  The fact that one of the plaintiffs owns 1% of the other plaintiff is irrelevant.  What is relevant is that the plaintiffs have not proven their individual damages.  They arguably have proven their joint damages, but not their individual damages.

"A plaintiff suing under civil RICO must demonstrate injury . . . and a specifiable amount of damages."  Sikes v. Teleline, Inc., 281, F.3d 1350, 1365 (4th Cir. 1996).  A RICO plaintiff may NOT recover for speculative losses or where the award of damages is unprovable.  First Nationwide Bank v. Gulf Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994), citing Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir. 1988).  (Emphasis added).  In fact, "specific damages are required because the purpose of a civil RICO award is to return the plaintiff to the same financial position he would have enjoyed absent the illegal conduct.  Trustees of Plumbers & Pipefitters v. Transworld Mechanical, Inc., 886 F. Supp 1134, 1146 (S.D.N.Y. 1995) citing Bankers Trust Co., 859 F.2d at 1106.  How then can we return

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

both plaintiffs to their "same financial position" if they themselves do not know that position?   More importantly, how can we return them to their "same financial position" if there is no evidence of their damages, their individual damages?

As discussed in the Rule 50 Motion, we should look to the way our courts handle cases with multiple plaintiffs as our guide.  Generalized or class-wide proof of damages is insufficient.  Broussard v. Meineke Discount Muffler Shops,  155 F.3d 331, 342-43 (4th Cir. 1988), quoting Windham v. American Brands, 565 F.2d 59, 66 (4th Cir. 1977).  Proof of actual, individual damages is a critical element of a plaintiff's claim.  Id.  This is necessarily so because "the gravamen of the [claim] is not the conspiracy; the crux of the action is injury, individual injury."  Id.  In this case, the plaintiffs have made no attempt to prove individual injury.  They simply presented evidence of one set of damages, and admitted they have no idea how much of these damages should be attributed to either plaintiff.  Clearly, the plaintiffs have not met their burden of proof.  As a result, judgment should enter as a matter of law.

Respectfully submitted,

DEFENDANTS,
LEONARD A. FASANO
FASANO, IPPOLITO & LEE, LLC


By_____
    David G. Hill of
    HALLORAN & SAGE  LLP
    Fed. Bar No. ct13435
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Respectfully submitted,

DEFENDANT,
TODD R. BAINER, LLC

By_____
   Mary Anne Charron, Esq.
   R. Bradley Wolfe, Esq.
   Gerald R. Swirsky, Esq.
   Gordon, Muir & Foley
   Hartford Square North
   10 Columbus Blvd.
   Hartford, CT 06106-5123

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Respectfully submitted,

DEFENDANTS,
STANLEY PRYMAS &
THOMPSON & PECK, INC.

By_____
     Barbara L. Cox, Esq.
     William F. Gallagher, Esq.
     Gallagher & Calistro
     1377 Ella Grasso Boulevard
     P. O. Box 1925
     New Haven, CT  06509-1925

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>CERTIFICATION</u>

      This is to certify that on this 21st day of December 2005, I hereby mailed or hand delivered a copy of the foregoing to:

Edward C. Taiman, Jr., Esq.
Michael G. Albano, Esq.,
Sabia & Hartley, LLC
190 Trumbull Street, Ste. 202
Hartford, CT  06103-2205
**For Plaintiffs The Cadle Company &**
**D.A.N. Joint Venture, A Limited Partnership**

Barbara L. Cox, Esq.
William F. Gallagher, Esq.
Gallagher & Calistro
1377 Ella Grasso Boulevard
P. O. Box 1925
New Haven, CT  06509-1925
**For Defendant Stanley Prymas**
**& Thompson & Peck, Inc.**

F. Dean Armstrong, Esq.
Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, IL  60422
**For Plaintiffs The Cadle Company &**
**D.A.N. Joint Venture, A Limited Partnership**

Bradley K. Cooney, Esq.
Bradley K. Cooney, P.C.
69 Island Avenue
Madison, CT  06443
**For Defendant Thompson & Peck, Inc.**

Mary Anne Charron, Esq.
R. Bradley Wolfe, Esq.
Gerald R. Swirsky, Esq.
Gordon, Muir & Foley
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106-5123
**For Defendant Todd R. Bainer, LLC**

Todd R. Bainer, Esq.
Todd R. Bainer, LLC
71 Cedar Street
Branford, CT  06405
**For Defendant Todd R. Bainer**

Roger J. Frechette, Esq.
Frechette & Frechette
12 Trumbull Street
New Haven, CT 06511
**For Defendant Leonard Fasano**

_____
David G. Hill

770856v.1

HALLORAN
& SAGE LLP

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105