UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CADLE COMPANY, ET AL. | : | CIVIL ACTION NO: 3:01-CV-531 (AVC) |
| V. | : | |
| CHARLES A. FLANAGAN, ET AL. | : | DECEMBER 21, 2005 |

**DEFENDANTS' JOINT REPLY TO
PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO MOTION FOR NEW TRIAL AND/OR REMITTITUR**

Defendants Motion for New Trial and/or Remittitur was filed when the trial transcript was not available, therefore, specific references to the record were not possible. As a result, the Defendants hereby supplement their motion with specific citations to specific portions of the record.

I.   **Premature Discussions/Deliberations**

Contrary to Plaintiffs assertions, the Defendants preserved their objection to the court's preliminary instructions concerning pre-deliberation discussions among the jury. In fact, the Defendants did so on three separate occasions. The first occurred on May 23, 2005 when counsel for Stanley F. Prymas and Thompson & Peck objected as follows:

> MR. GALLAGHER: Your Honor, in your preliminary charge this morning, you had indicated to the jury, members of the panel, that they could discuss the case. You also cautioned them not to reach any conclusions.



10361.0088

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

>           THE COURT: Yes, I did.
>
>           MR. GALLAGHER: That concerns me a great deal. The reason is this. The defendants have to await the conclusion of the plaintiff's [sic] case before they put evidence on. The Supreme Court, Connecticut Supreme Court has ruled on this very issue in a case, it's either <u>State v. Washington</u> or <u>Washington v. State</u>. Justice Speziale set out that the problem with allowing jurors to discuss a case during the course of trial is they become entrenched in a particular position that they take. And as a result of that, at the end of the case even though they're cautioned not to formulate a judgment, they do. And that's the evil of allowing this. And I would ask Your Honor to reconsider that. I can't remember which cite it is, but I'll get it at the lunchtime and call it to your attention.

Transcript ("Tr.") 5/23/05, 117-18.

The second occurred after the lunch break when defense counsel provided the Court with the citation to <u>State v. Washington</u>:

>           MR. GALLAGHER: I gave your clerk the <u>State v. Washington</u> cite.
>
>           THE COURT: I saw that you were counsel of record. And it certainly seems to be directly contrary to what I told this jury this morning and we're doing more research on it. I'm a little surprised that the Federal Judicial Center would be advising us to do that in view of the authority that's in there. It appears that the <u>Washington</u> case was a criminal case. Whether there's some reason to make a distinction, I don't know. I'm still looking at it, sir, and grateful for your bringing it to your attention. We may have to advise this jury to the contrary.

Tr. 5/23/05, 169-70.

When no further instruction to the jurors was forthcoming, defense counsel raised the issue for the third time on May 31, 2005:

- 2 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> MR. GALLAGHER: Your Honor, before we resume, I recognize the Court's desire to move along with this matter, but let me tell you what troubles me about the fact that there wasn't any recross by me of Mr. Gaide. The problem is that on the redirect questions were raised with respect to the timeframe of the execution and I wanted to clarify it to show that issued, as the exhibit shows, on October 7th, so that it would have expired four months later on February 7. But, more important, the document itself states that if there is an exemption claim form, the person served and holder of asset is not to turn it over an exemption claim form was filed and Mr. Gaide was the one who issued or obtained issuance of the execution. Normally it wouldn't make any difference. And I concede the Court has discretion to do what – the problem is that in this case is that the jury is talking about the evidence as we progress. And the prejudice to us is that I'll have to probably call Mr. Gaide, some time at the end of this week or next week on that issue, and in the meantime they've maybe done what the Supreme Court said in State versus Washington, as someone articulated a position on it, and I think under the circumstances it's – it poses a real time problem.

Tr. 5/31/05, 53-54.

Thus, defense counsel unquestionably raised the Court's error in its preliminary instruction in a timely fashion. Again, not only did counsel seasonably object to the instruction, but they also provided the Court with a case citation and reminded the Court of the problem several days later. Although the Court conceded that it may have to alter its preliminary instruction, the Court never gave any further curative instructions concerning premature deliberation. Therefore, for the reasons articulated by counsel on May 23 and May 31, 2005, as well as the reasons stated in the Motion for New Trial, the Court's failure to further instruct the jury on this issue was prejudicial to the defendants.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## II. Misconduct of Plaintiffs' Counsel

Furthermore, contrary to Plaintiffs' assertions, counsel did in fact commit numerous acts of misconduct throughout the course of trial. On pages 8-9 of the Motion for New Trial, Defendants listed a series of impermissible acts by counsel, but again, were not able to make the necessary references to the transcript. Now, with the benefit of the transcript, the Defendants will once again list the acts of misconduct, but this time with specific references to the record.

First, the Court will recall that it reserved decisions on two Motions for Mistrial. Tr. 6/1/05, p. 63-64. Second, the Court will also recall that defense counsel requested on numerous occasions that counsel be admonished for his actions. Tr. 5/25/05, p. 43-44, 53; Tr. 5/31/05, p. 92; Tr. 6/1/05, p. 64; Tr. 6/3/05, p. 37-38, to name just a few.

Third, counsel's closing argument was replete with improper personal references to himself, touting his "expertise" in RICO, fulfilling his lifelong goal of bringing corrupt attorneys to justice, fulfilling his parents' career aspirations, and satisfying his "life's work" in search for civil RICO justice. Tr. 6/7, p. 55; Tr. 6/8, pp. 67-68, 70, 88-89. Lastly:

1. Attorney Armstrong specifically identified his two crucial witnesses [Gaide; Cadle] as his "friends", and improperly vouched for their credibility; Tr. 5/25/05, p. 129, 131; Tr. 6/2/05, p. 3; Tr. 6/8/05, p. 71;

2. Attorney Armstrong frequently ignored rulings by the Court on evidentiary matters. On some items (e.g.: the lawyers' letter) he repeatedly tried to revisit the issue in front of the jury, he repeatedly tried to introduce the same letters into evidence, he asked questions of

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

      witnesses quoting portions of the letters, he asked questions of witnesses quoting portions of deposition testimony, and he often referred to letters that had been excluded from evidence by reading depositions transcripts that quoted portions of those same letters; Tr. 5/23/05, p. 16-17, 73-75; Tr. 5/24/05, p. 56-58, 65-66, 83-84, 185; 6/1/05 pp. 14, 33, 34, 71, 81;

3. Attorney Armstrong told the Court (in the jury's presence) that the letters were "crucial" to his case, directly implying that there was strong evidence of misconduct by the defendants that was not being shown to the jury; Tr. 5/23/05, p. 47;

4. Attorney Armstrong further stated in the jury's presence "Judge, I really need those letters"; Tr. 5/23/05, p. 61, 78;

5. he also publicly declared (again, in the jury's presence) "Judge, you're prohibiting me from putting on my case";

6. respectfully, the Court compounded the problem by not admonishing counsel despite several requests to do so, and by explaining to the jury the basis for excluding the letters, specifically referring to lawyers' letters during this explanation, which unfortunately added to the suspicion created by Mr. Armstrong about the letters; Tr. 5/24/05, p. 73;

7. Attorney Armstrong improperly referred to witnesses who were not called to testify, at one point even suggesting a negative inference; Tr. 6/8/05, pp. 76-77;

8. Attorney Armstrong personally vouched for the importance of the case, and the need to make lawyer's accountable when they cross "into the swamp of being a co-conspirator"; Tr. 6/8/05, p. 88;

9. he spoke of his "20 years experience in RICO matters," then proceeded to lecture the jury on the law; Tr. 6/8/05, pp. 67, 70;

10. he complained about "speaking objections" from defense counsel while persistently doing so himself; Tr. 5/23/05, pp. 13; Tr. 6/1, pp. 27, 33;

11. he repeatedly and persistently asked compound questions, prefacing his questions with speeches containing embedded misrepresentations and mischaracterizations that were inadmissible; Tr. 5/23/05, p. 15; Tr.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

      5/24/05, p. 185, 188; Tr. 5/25/05, pp. 43, 52-53; 92-93; Tr. 6/1/05, pp. 63-64; Tr. 6/2/05, p. 158; Tr. 6/3/05, p. 38;

12.   he frequently prefaced an objection with "Judge, you know I don't like to object, but . . . " which was intended to infer that the defendants like to object; Tr. 5/24/05, p. 183; Tr. 6/1/05, pp. 126, 207, 210;

13.   he improperly linked defendant Bainer's earlier representation of Crocker House to the Crocker House checkbook that occurred a decade later; Flanagan testimony 6/3/05, p. 47-48, 50; Tr. 6/7/05, pp. 78-79; and

14.   he referred to Thompson and Peck as a multi-million dollar company when there was no evidence of its financial status. Tr. 6/7/05, p. 85

Clearly, the cumulative effect of Attorney Armstrong's misconduct was to compromise the fairness of the trial. In fact, counsel's conduct is considerably more egregious than that found in the cases cited in Defendants' Rule 59(a) Motion, cases where new trials were ordered for misconduct that pales by comparison.

### III.   <u>The Court Should Order a Remittitur</u>

Again, there was no evidence by which the jury could award $500,000 in collection expense damages. The only testimony remotely close was that of Dan Cadle who testified that he spent $494,000 "chasing the assets". (Tr. 6/2/05, p. 24). However, Mr. Cadle did not specify what he meant by "chasing the assets", other than to claim:

    Q.    . . . collection expense damages, what are those?

    A.    This is checks that I have to write to attorneys and sheriffs and court costs in order to get the assets.

- 6 -


HALLORAN
& SAGE LLP

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(Tr. 6/2/05, p. 18).

Clearly, there is no basis for this claim. First, Mr. Cadle was very specific about what it didn't include – the litigation costs of this case (Tr. 6/2/05, p. 24), the attorneys' fees Cadle normally spent to collect on the judgment in Cadle I (Tr. 6/2/05, p. 23-24), the fees paid to Attorney Gaide in the grievance matter (Tr. 6/2/05, p. 24), or the defense of the related contempt order (Tr. 6/2/05, p, 25) – but he never specified what it included. Second, we know as a matter of law that it cannot include the legal fees initially expended in obtaining debt collection judgments in any of the various lawsuits filed by Cadle; <u>Stochastic v. DiDomenico</u>, 995 F.2d 1158, 1166 (2d Cir. 1993); or any legal fees incurred by Cadle during Flanagan's bankruptcy proceeding. <u>Bankers Trust Company v. Rhodes</u>, 859 F.2d 1096, 1106 (2d Cir. 1988). Third, this Court can take judicial notice of the approximate costs of the two of the three items of expenses (sheriffs and court costs) claimed by Cadle for the "checks that [he had] to write to attorneys and sheriffs and court costs". Having done so, what is left that could possible add up to $494,000? More importantly, how do we reconcile Cadle's testimony with that of his counsel, Paul Gaide, who claimed only "$10,000 - $15,000" in extra litigation costs due to the alleged schemes. (Tr. 5/25/05, p. 128).

Clearly, there is no basis in law or fact for Plaintiff's claim of $494,000 in collection expense damages. Further, there was no basis for the jury to award a higher amount in collection expense damages. The only possible evidence of

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

damage is that of Mr. Gaide, therefore, the only number this Court should consider trebling is the only amount with any basis in reality -- $10,000 - $15,000.

                              Respectfully submitted,

                                   DEFENDANTS,
                                   LEONARD A. FASANO
                                   FASANO, IPPOLITO & LEE, LLC


                              By_____
                                   David G. Hill of
                                   HALLORAN & SAGE LLP
                                   Fed. Bar No. ct13435
                                   One Goodwin Square
                                   225 Asylum Street
                                   Hartford, CT 06103
                                   Their Attorneys

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Respectfully submitted,

DEFENDANT,
TODD R. BAINER, LLC


By_____
  Mary Anne Charron, Esq.
  R. Bradley Wolfe, Esq.
  Gerald R. Swirsky, Esq.
  Gordon, Muir & Foley
  Hartford Square North
  10 Columbus Blvd.
  Hartford, CT 06106-5123

- 9 -



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Respectfully submitted,

DEFENDANTS,
STANLEY PRYMAS &
THOMPSON & PECK, INC.

By_____
   Barbara L. Cox, Esq.
   William F. Gallagher, Esq.
   Gallagher & Calistro
   1377 Ella Grasso Boulevard
   P. O. Box 1925
   New Haven, CT  06509-1925

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

      This is to certify that on this 21st day of December 2005, I hereby mailed or hand delivered a copy of the foregoing to:

| | |
|---|---|
| Edward C. Taiman, Jr., Esq.<br>Michael G. Albano, Esq.,<br>Sabia & Hartley, LLC<br>190 Trumbull Street, Ste. 202<br>Hartford, CT  06103-2205<br>**For Plaintiffs The Cadle Company &**<br>**D.A.N. Joint Venture, A Limited Partnership** | Barbara L. Cox, Esq.<br>William F. Gallagher, Esq.<br>Gallagher & Calistro<br>1377 Ella Grasso Boulevard<br>P. O. Box 1925<br>New Haven, CT  06509-1925<br>**For Defendant Stanley Prymas**<br>**& Thompson & Peck, Inc.** |
| F. Dean Armstrong, Esq.<br>Armstrong Law Firm<br>1324 Dartmouth Road<br>Flossmoor, IL  60422<br>**For Plaintiffs The Cadle Company &**<br>**D.A.N. Joint Venture, A Limited Partnership** | Bradley K. Cooney, Esq.<br>Bradley K. Cooney, P.C.<br>69 Island Avenue<br>Madison, CT  06443<br>**For Defendant Thompson & Peck, Inc.** |
| Mary Anne Charron, Esq.<br>R. Bradley Wolfe, Esq.<br>Gerald R. Swirsky, Esq.<br>Gordon, Muir & Foley<br>Hartford Square North<br>10 Columbus Blvd.<br>Hartford, CT 06106-5123<br>**For Defendant Todd R. Bainer, LLC** | Todd R. Bainer, Esq.<br>Todd R. Bainer, LLC<br>71 Cedar Street<br>Branford, CT  06405<br>**For Defendant Todd R. Bainer** |
| Roger J. Frechette, Esq.<br>Frechette & Frechette<br>12 Trumbull Street<br>New Haven, CT 06511<br>**For Defendant Leonard Fasano** | |

 

                                              _____
                                              David G. Hill

771633v.1

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

- 11 -

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105