UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL. | : | CIVIL NO. 3:01CV531(AVC) |
| PLAINTIFFS. | | |
| VS. | : | |
| CHARLES FLANAGAN, ET AL. | | |
| DEFENDANTS | : | DECEMBER 19, 2005 |

DEFENDANT LEONARD A. FASANO'S SUPPLEMENTAL
MOTION TO SET ASIDE THE "COLLECTION EXPENSE DAMAGES
$500,000.00" AND ENTER JUDGMENT IN FAVOR OF
LEONARD A. FASANO

In Cadle I, Cadle obtained a judgment against Flanagan in the amount of $90,747.87 on March 20, 1997, and collected that sum with interest to date on November 19, 1998, the total sum of $99,542.87.

In the case at bar, the jury found - - "**lost debt damages –0-.**" As set forth below, and as set forth in the cases of First National Bank v. Gelt Funding, 27 F. 3d. 763 (1994), and Commercial Union Assurance Co. v. Milken, 17 F. 3rd 308 (2nd Cir. 1994) the law is clear that there can be no attorney's fees, "Collection Expense Damages" without "Lost Debt Damage".

**BACKGROUND**

In 1996 the Cadle Company sued Charles Flanagan, Civ. No. 3:96cv2648 (AVC) and obtained a judgment against Flanagan in the sum of $90,747.87 on March 20, 1997. On January 5, 1998, a writ of execution was served on Thompson and Peck, Inc., a company that Flanagan owned with Stanley Prymas. On February 25, 1998, Cadle served Flanagan with a subpoena

1

duces tecum for a March 9, 1998 examination of judgment debtor, and Attorney Robert Skelton, Flanagan's then attorney, appearing for Flanagan, represented to the Court that because Flanagan was under criminal investigation by the FBI and the IRS, that Flanagan would invoke his Fifth Amendment Right against self-incrimination. The Court issued an order prohibiting Flanagan from transferring his assets, and ordering an "in camera" inspection of those assets. Attorney Fasano later reported to the Court that there were literally thousands of documents, and they would be produced during the next week. On November 16, 1998, Flanagan [not Attorney Fasano] was held in contempt, and the Court ordered him committed to the Federal Bureau of Prisons; the Court ordered a stay, and three days later on November 19, 1998 the sum of $99,542.87, the amount of the judgment plus interest through that date, which was deposited in the registry of the court, as Cadle refused to accept it. Apparently, Cadle intended to use the coercive powers of the Federal Court judgment in **Cadle I** to attempt to collect **other** State Court judgments. Such conduct constitutes an abuse of process as was admitted by Daniel Cadle in his testimony before this Honorable Court. The entire debt was paid in full. In the case at bar, the **jury** found **no lost debt damages**. In other words, no actions of any of the Defendants prevented the Plaintiffs from collecting "one red cent" from Flanagan, whether the Plaintiffs' claimed debt arose from **Cadle I or from any of the Plaintiffs' other State Court judgments**.

It is that absolutely correct award by the jury (No loss debt damages) which necessitates this Honorable Court setting aside the "Collection Expense Damages, $500,000" and issuing judgment for the Defendant, Leonard A. Fasano, (indeed all Defendants). The jury found:

2

> "3.   RICO damages.
>
> If you have awarded RICO damages, please indicate the
> amount of lost debt damages and the amount of
> Collection Expense damages.
> Lost Debt Damages: - 0 –
> Collection Expense Damages: $500,000"

Plaintiffs, who do not have any "lost debt damages –0-" cannot recover collection expense damages. On page two of the verdict form it states:

> For **Lost Debt Damages**, the plaintiffs must show by a
> preponderance of the evidence the amount of the debt that they
> most likely would have been able to collect from Charles
> Flanagan, **but were prevented from doing so because of the
> defendant(s), alleged RICO violations**. [Emphasis added].

As stated in the prior quotation, the jury found: "Lost Debt Damages –0-". That should be, and must be, as hereinbefore set forth, the end of the instant case, and judgment must enter in favor of Attorney Fasano, indeed all defendants.

Further on page two of the verdict form it states:

> For **collection expense damages**, the plaintiffs must show by a
> preponderance of the evidence the amount of legal fees and other
> expenses that they incurred **in their unsuccessful attempts to
> collect on Flanagan's assets** which were proximately caused by
> the Defendant(s)' alleged RICO violations? [Emphasis added].

Because there was no "unsuccessful attempts to collect on Flanagan's assets," caused by Fasano, there can be no collection expense damages. This is to say, as the Plaintiff was not prevented from collecting "one red cent" from Flanagan as a result of any actions by any of the defendants,

3

there can be, by definition, therefore, no "unsuccessful attempt to collect on Flanagan's assets" which was proximately caused by the actions of Fasano or any of the defendants. The attempts to collect the aforesaid judgment in the amount of $90,747.87, together with the interest in the amount of $8,795.00, a total of $99,542.87, was **successfully collected** by the deposit into the court registry on November 19, 1998, thereby proving, as the jury found, that there were **no unsuccessful** attempts to collect the principal and interest owed by Flanagan, but **only** a successful attempt as hereinbefore set forth. The form submitted to the jury, proven by the analysis of Gelt, supra, and Commercial Union Assurance Co., PLC v. Milken, 17 F. 3d 608 (2nd Cir. 1994), should not have been submitted to the jury, as if there are no lost debt damages, that terminates the jury's action in the instant case and on the verdict form.

In Cadle II, Cadle brought suit on its entire lost debt damages that it claimed in every state court case that it had against Flanagan, and all that was proven, as found by the jury, was that the amount of $99,542.87, before the institution of Cadle II was paid, and for that reason, the jury found "**Lost Debt Damages –0-.**" For Cadle to have made the claim in Cadle II that it could use the Cadle I judgment to demand collection of its entire claims against Flanagan is a gross example of abuse of process. Nevertheless, the jury found that in all of Cadle's claimed judgments that it was trying to collect, that they proved **no lost debt damages**. Having failed to prove **any** lost debt damages by the payment to Cadle I, by Flanagan, in the amount of $99,542.87, and because of the jury's failure, and obviously of Cadle's failure to prove lost debt damages to the other illegal abuse of process attempts to collect those judgments, the jury

4

nevertheless found, again "Lost Debt Damages –0–". Therefore, whether one takes the Cadle I issue, the illegal attempts to obtain recovery on other judgments, or both, Cadle failed to prove lost debt damages and therefore, the collection expense damages of $500,000.00 against Fasano, indeed all defendants, must be set aside as a matter of law.

There is not one case in the United States that awards collection expense damages when there are no lost debt damages, indeed, Cadle II proves that Cadle owes the defendants money for abuse of process.

As the Court held in First National Bank v. Gelt Funding Corp., 27 F. 3d 763, 766 (2nd Cir. 1994) in referring to RICO damages:

> To show that an injury resulted **"by reason of" the defendant's action**, and therefore to have standing under RICO, the plaintiff must allege "that the defendant's violations were a **proximate cause of the plaintiff's injury**. i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." …Furthermore, when factors **other than the defendant's fraud** are in intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions…Although we are mindful of the admonition that RICO is to be liberally construed, the foregoing holds true in a RICO setting because proximate cause, **a common law concept, exists independently of the statute**. [Emphasis added]. Id. at 769.

Indeed "…[The] two essential elements of a RICO claim – injury and proximate causation - …" are absent in the case at bar. First Nationwide Bank v. Gelt Funding Corp., 27 F. 3d 763, 768 (2nd Cir. 1994). The court in Gelt Funding talks at great length about the

5

existence of **injury** being necessary to impart RICO standing and/or RICO damages. Said the court:

> In determining fraud damages, any amount recovered by the fraudulently induced lender necessarily reduces the damages that can be claimed as a result of the fraud. Because the fraud defendant is not liable for all losses that may occur, **but only for those actually suffered**, only after the lender has exhausted the bargained-for remedies available to it can the lender asset that it was damaged by the fraud, and then only to the extend of the deficiency...**The rule of fraud damages described above has been adopted by this court in the context of deciding whether a defrauded plaintiff has standing under RICO. A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation**." [Emphasis added].

Indeed, in the case at bar, it is manifest from the **factual funding of the jury that no conduct of any of the defendants caused the Plaintiff to suffer "one red cent" of damages. This is not so only because the defendants claim that it is so; rather, this is what the jury found as a fact**. Said the court in Gelt Funding, Id. 869:

> To show that an injury resulted "**by reason of**" **the defendant's action,** and therefore to have standing under RICO, the plaintiff must allege "that the defendant's violations were a **proximate cause of the plaintiff's injury**, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." ...Furthermore, when factors **other than the defendant's fraud** are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions...Although we are mindful of the admonition that RICO is to be liberally construed, the foregoing holds true in a RICO setting because proximate cause, **a common**

6

**law concept, exists independently of the statute**. [Emphasis added].

As stated in <u>Commercial Union Assurance Co., PLLC v. Milken</u>, 17 F. 3d 608, 609:

> But the signature of the causes of action before us is **harm** to plaintiffs...and injury to plaintiffs' business or property in the RICO cause of action. Here plaintiffs, who are investors, may have feared they would suffer harm, but they actually suffered no out-of-pocket loss since their investments were fully paid, plus interest. [Just as Cadle was fully paid in the case at bar].

Further, at page 612 in <u>Milken</u>, <u>Id.</u>,

> Dismissal of the RICO claim must be affirmed because appellants' claim lacks that most fundamental of all legal elements necessary to support a viable cause of action – **any demonstrable damages**. [Emphasis added].

<u>Commercial Union Assur. Co., PLC v. Milken</u>, 17 F. 3d 608 (2nd Cir. 1994) and particularly at 612 wherein the Court held:

> The RICO claim was dismissed by the district court on alternative grounds: one in the finding that appellants had not suffered compensable damages under RICO...Dismissal of the RICO claim must be affirmed because appellants' claim lacks that most fundamental of legal elements necessary to support a viable cause of action – any demonstrable damages.

The Court further held:

> Civil RICO provides a treble-damages remedy, but that remedy inures to persons who have been "injured in [their] business or property by reason of a RICO violation. 18 U.S.C. §1964(c)...(a RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured"...But damages as compensation on a RICO §1964(c) for injury to property must, under the familiar rule of law, place appellants in the same position it would have

> been in but for the illegal conduct. Here, appellants have already been placed by the defendants in that position. Hence, in the instant case, without provable damages, no viable RICO cause of action may be maintained.

That is identical with the instant case as Cadle has been fully compensated by Flanagan, and has not proven any other lost debt damages, and therefore, as hereinbefore stated in <u>Milken</u>, <u>Id</u>., "hence, in the instant case, without provable damages, no viable RICO cause of action may be maintained".

It is axiomatic that in order to prove a RICO action, it is essential that there be causation to prove that the alleged RICO violation caused an injury. (This is the same requirement as that of common law fraud. See, <u>Johnson v. Cheesebrough-Pond's USA Co.</u>, 918 F. Supp. 543, 549 (Conn. 1996)). To allow a plaintiff to recover without this element of proximate cause/injury would be a windfall to the plaintiff.

As stated by the court in <u>Bastian v. Petren Resources Corp.</u>, 892 F. 2d 680, 686 (7th Cir. 1990):

> A civil RICO suit requires pleading and proof of loss "by reason of" the defendant's violation. 18 U.S.C. §1964(c). This means cause…If the plaintiffs would have lost their shirts in the oil and gas business **<u>regardless of the defendant's violations of RICO, they have incurred no loss for which RICO provides a remedy</u>**.

That is the identical situation that the jury found in the instant case. The plaintiffs have suffered: "Lost Debt Damages: -0- ." Again, at the end of all of the evidence set forth by the plaintiffs, the jury found that Fasano, indeed all of the defendants, did not cause the plaintiffs any "Lost

Debt Damages –0–." In fact, the plaintiffs recovered every penny from Flanagan, the total of $99,542.87 paid on November 19, 1998, paying the plaintiff in full, before this suit was brought.

As further stated by the court in <u>Bastian v. Petren Resources Corp.</u>, 892 F. 2d 680, 683-684 (7th Cir. 1990):

> Indeed what securities lawyers call "loss causation" <u>is</u> the standard common law fraud rule (on which see Prosser and Keeton on the Law of Torts § 110, at p. 767 (5th ed. 1984) merely borrowed for use in federal securities fraud cases. It is more fundamental still; it is an instance of the common law's universal requirement <u>that the</u> <u>**tort plaintiff prove causation**…**No hurt, no tort**</u>…If the plaintiffs would have lost their investment regardless of the fraud, any award of damages to them <u>**would be a windfall**</u>…Common law fraud is not actionable without proof of harm…"Loss causation" is an exotic name – perhaps an unhappy one,…for the standard rule of tort law that the plaintiff must allege and prove that, but for the defendant's wrongdoing, the plaintiff would not have incurred the harm of which he complains. [Emphasis added].

Judge Posner goes on to state in <u>Bastian, Id.</u>, 685, where the issue involved oil and gas ventures the following:

> If the defendants' oil and gas ventures failed not because of the personal shortcomings that the defendants concealed but because of industry-wide phenomena that destroyed all or most of such ventures, then the plaintiffs, given their demonstrated desire to invest in such ventures, <u>**lost nothing by reason for the**</u> <u>**defendant's fraud and have no claim to damages**</u>.

It is clear **<u>as a result of the jury's verdict that there were no lost debt damages</u>**, that the plaintiffs were in no way harmed by the defendant's conduct and therefore have absolutely no claim under RICO. In other words, just as the oil and gas ventures failed of their own accord in

9

Bastian, so too the plaintiffs in the case at bar **never** would have recovered "one red cent" from Flanagan **regardless of any conduct of the plaintiffs**.

The plaintiffs have "overdone" their attempt to collect Flanagan's debt which they bought, but that, respectfully, was their decision to make, and their mistake to make. As the jury found, there simply were no assets that could **ever** be collected from Flanagan **regardless** of any conduct on the part of the defendants. That is to say, as found by the jury, Flanagan simply did not have any assets to collect. That is why the jury found **"no lost debt damages."** Cadle simply purchased a bad debt. They collected $99,542.87 in Cadle I on that debt. That shortcoming is, respectfully, what they bargained for when they purchased this debt for pennies on the dollar. Cadle should not be surprised to find that when it paid pennies on the dollar, it could not collect 100% of the dollar. In this case, defendants had no impact on the amount Cadle collected. That is what the jury found, and the jury further found that Leonard A. Fasano did not prevent Cadle from collecting **any** lost debt damages in **any** case whatsoever.

This proves beyond any doubt that, in the instant case, Cadle is not permitted to recover a penny in "Collection Expenses Damages - $500,000".

It is essential to understand that Stochastic Decision, Inc. v. DiDomenico, 955 F. 2d 1158 (2nd Cir. 1993), is inapposite to the instant Cadle case in which it is clear that the judgment was paid before the institution of the instant case. In Stochastic, the judgment was paid after the institution of Stochastic Decisions, Inc. v. DiDomenico in the Federal Court. On page 1162 of Stochastic Decisions, Inc. v. DiDomenico, it is clear that on January 10, 1986 Stochastic

10

instituted the "Insurance Case", and, on June 13, 1988, it got judgment in New Jersey; on October 31, 1988, <u>Stochastic</u> moved in New York for a receiver to be appointed. On 12/6/88, the receiver was appointed. On page 1163 of <u>Stochastic</u>, on January 31, 1989, the <u>Stochastic</u> case was commenced in the United States District Court for the Eastern District of New York, alleging civil RICO conspiracies. On October 30, 1989, the "Insurance Case" was affirmed [it is essential to note that this is <u>nine months after</u> the <u>Stochastic</u> federal case was commenced], and, on January 25, 1990, certification was denied. <u>Stochastic</u> <u>eventually</u> recovered the full amount of the judgment <u>*subsequent to the filing of the Stochastic Decisions, Inc. v. DiDomenico case*</u>. That proves that <u>Stochastic</u>, <u>Id</u>., is no authority that "Collection Expense Damages - $500,000" may be awarded in this case. This proves beyond any doubt that, in the instant case, Cadle is not permitted to recover a penny in "Collection Expense Damages - $500,000".

<u>Stochastic Decision, Inc. v. DiDomenico</u>, 995 F. 2d 1158, 1165, (2nd Cir. 1993) refers to <u>Bankers Trust</u>: "As <u>Bankers trust</u> recognized, a debt is "lost" and thereby becomes a basis for RICO trebling only if the debt (1) cannot be collected (2) "by reason of "a RICO violation". Inasmuch Cadle instituted suit in 1996 and on March 19, 1997 obtained judgment in the amount of $90,747.87, which was fully paid, plus interest, by Flanagan paying him the sum of $99,542.87 by deposit into the court registry, which sum included both the debt and interest to the date of November 19, 1998, which paid Cadle in full on that date. The debt was paid in full **before** the institution of the instant lawsuit. That is why the jury correctly both found "lost debt damages –0-," and that is why there can be <u>no</u> recovery of collection expense damages because

11

the debt and interest were paid **and the jury found no lost debt damages** arising out of the Cadle I case, nor in any other case for that matter.

Further, at page 1166 Stochastic, Id., holds:

> Bankers Trust makes clear that such a RICO claim does not accrue until it is established that collection of the claim or judgment has been **successfully frustrated**. In other words, to the extent of a successful collection, the RICO claim is abated *pro tanto*, prior to any application of trebling. [Emphasis added].

This proves that collection expenses cannot apply to the instant case as the full amount of the judgment plus interest was fully paid, **and the jury found no lost debt damages**.

At pages 1166-67 of Stochastic, the Court held:

> The Supreme Court has made it clear that a RICO injury must stem from and be proximately caused by a RICO violation...Plaintiff...can only recover to the extent that...he has been injured in his business or property by the conduct constituting the violation.

However, in the Cadle case, Cadle got all of the judgment plus interest to date. The quotation in Your Honor's May 2, 2005 ruling on the Motion for Summary Judgment states:

> Legal fees may constitute RICO damages when they are proximately caused by a RICO violation, **Stochastic Decisions, Inc. v. DiDomenico**, 995 F. 2d 1158, 1166-67 92d Cir. 1993) (incurring legal fees was RICO injury where predicate acts included preventing plaintiff's collection efforts on outstanding judgment).

The reason this statement does not apply in the instant case is that Cadle collected the judgment of $90,747.87 plus interest in the amount of $8,779.00, a total of $99,542.87, payment by

12

Flanagan into the court registry on November 19, 1988, **before this suit was brought**. This is in no way a criticism of Your Honor, as on May 2, 2005, Your Honor was referring to a motion for summary judgment, but the jury, after hearing the **whole** case, deliberated, and concluded that Fasano, indeed all the Defendants, **did not cause any "Lost Debt Damages –0-" to Cadle**. Cadle's unsupported claim for collection expenses only concern alleged other debts it claims to have against Flanagan, and for a claim that it incurred that "expense" in this case clearly constitutes a chronic example of abuse of process, by which Cadle himself admitted his is liable to Attorney Fasano, indeed all Defendants, for that tort. It is clear as set forth in the Restatement (Second) of torts, §682 states, "The usual case of abuse of process is one of …using pressure upon another to compel him to pay a **different debt**." That is the law of Connecticut in Mozzochi v. Beck, 204 Conn. 490 (1987) as well as the 2d Cir. in Doctor's Associates, Inc.v. Weible, 92 F. 3rd 108, 114 (2d Cir. 1996). Commercial Union Assurance Co., PLLC v. Milken, (hereinafter 'Milken") 17 F. 3d 608 2d. (Cir. 1994) leaves no question that collection expense damages cannot be awarded by the jury to Cadle, and that portion of the verdict must be set aside and judgment must enter on behalf of Fasano, indeed all defendants, against Cadle. The first paragraph of that opinion, Milken, Id., 609, is quoted because it is dispositive of this issue:

> But the signature of the causes of action before us is **harm** to plaintiffs…and injury to plaintiffs' business or property in the RICO cause of action. Here plaintiffs, who are investors, may have feared they would suffer harm, but they actually suffered no out-of-pocket loss since their investments were fully paid, plus interest. [Just as Cadle was fully paid in the case at bar].

13

That is the identical situation in the instant case where Flanagan furnished the $99,540.87 to pay the judgment, with interest to date, **before** the instant case was commenced. Milken continues "Thus, while we have no difficulty in finding that plaintiffs' causes of action might well subject defendants to liability, plaintiffs can prove no damages." It is not only the undersigned's claim that Cadle could prove no damages, but the jury found "Loss of Debt Damages – 0-". More importantly, while Milken, Id., is a summary judgment case, the instant case is even more compelling. The jury found no damages **after trial**! Further, at page 612:

> Dismissal of the RICO claim must be affirmed because appellants' claim lacks that most fundamental of all legal elements necessary to support a viable cause of action – **any demonstrable damages**. [Emphasis added].

Further, at page 612 of Milken, Id., as applies to the instant case and Stochastic, supra,:

> We recently ruled that after a RICO claim has been successfully collected, it is "abated pro tanto" prior to any application of trebling. Stochastic, supra, 1166.

That Court also held, page 612:

> But damages as compensation under RICO § 1964(c) for injury to property must, under the familiar rule of law, **place appellants in the same position they would have been but for the illegal conduct. Here, appellants have already been placed by defendants in that position**. Hence, in the instant case, without provable damages, no viable RICO cause of action may be maintained. [Emphasis added].

That is what the jury found. Both Gelt, supra, and Milken, supra, mandate that no collection expense damages may possibly be awarded.

14

Further <u>Carlisle Ventures, Inc. v. Banco Espanol de Credito S.A.</u>, 176 F. 3d 601, 606 (2d. Cir. 1994) is dispositive of this case as it holds: "Our central concern in <u>Milken</u> was that the plaintiff had suffered no direct pecuniary losses because they recouped their entire initial investment as well as a return on their investment."

In <u>First National Bank v. Gelt Funding Corp.</u> 27 F.3d 765, 769 (2nd Cir. 1994), the Second Circuit held:

> "Citing Stochastic Decisions, we rejected this claim and held **that to the extent the plaintiffs received the return actually bargained for, they had suffered no compensable RICO injury**.
> Id."

THEREFORE, the verdict on collection expense damages be set aside and judgment enter in favor of Attorney Fasano indeed all the defendants.

If the plaintiffs claim the Collection Expense Damages involve the bankruptcy proceedings, <u>Stochastic</u>, supra, prohibits this claim, because the plaintiffs may collect everything.

It is clear that the collection expense damages $500,000.00 must be reversed, and judgment enter in favor of the defendant, Leonard A. Fasano, indeed all defendants.

RESPECTFULLY SUBMITTED,<br>
LEONARD FASANO<br>
BY _/s/ Roger J. Frechette_<br>
ROGER J. FRECHETTE, ESQ. (CT0823)<br>
ITS COUNSEL<br>
FRECHETTE & FRECHETTE, ESQS.<br>
12 TRUMBULL STREET<br>
NEW HAVEN, CT 06511<br>
TEL. NO. 203-865-2133

## ORDER

The above motion, having come before the Court the same is hereby granted and the verdict of the jury awarding the Collection Expense Damages of $500,000 is hereby set aside and judgment is entered on behalf of Leonard A. Fasano and all defendants against the plaintiffs.

BY ORDER OF THE COURT

_____
JUDGE/CLERK

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid on this 19th day of December, 2005 to:

David G. Hill, Esq.
June M. Sullivan
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06106

Edward C. Taiman, Jr., Esq.
Michael G. Albano, Esq.
Sabla & Hartley, LLC
190 Trumbull Street, Ste. 202
Hartford, CT 06103-2205

F. Dean Armstrong, Esq.
Armstrong Law Firm
1324 Dartmouth Road
Flossmoor, IL 60422

Mary Anne Charron, Esq.
R. Bradley Wolfe, Esq.

Barbara L. Cox, Esq.
William F. Gallagher, Esq.
1377 Ella Grasso Boulevard
P.O. Box 1925
New Haven, CT 60509-1925

Bradley K. Cooney, Esq.
Bradley K. Cooney, P.C.
60 Island Avenue
Madison, CT 06443

Todd R. Bainer, Esq.
Todd R. Bainer, LLC
71 Cedar Street
Branford, CT 06405

Gordon, Muir & Foley
Hartford Square North
10 Columbus Boulevard
Hartford, CT 06106-5123

_____
Roger J. Frechette