UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **THE CADLE COMPANY** and **D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP,** | § § | **No. 3:01CV531(AVC)** |
| Plaintiffs, | § | |
| vs. | § | |
| **CHARLES A. FLANAGAN, et al.,** | § | **January 24, 2006** |
| Defendants. | § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS'**
**SUPPLEMENTAL MOTION FOR JUDGMENT**

In Defendants' Joint Reply Brief to Plaintiffs' Amended Response to Motion for Judgment, the Defendants attempt to "address[ ] specific transcript references of witness testimony, previously unavailable at the time of the Motion for Judgment . . .." (Id. p. 1) Plaintiffs respond to Defendants' "supplemental motion" as follows[1]:

**I.     There Is Sufficient Evidence To Support The Jury's Verdict That The Fasano Defendants Violated §1962(c) Of RICO**

---

[1]     In addition, to the extent necessary, Plaintiffs hereby seek leave of Court to file this Supplemental Response in order to bring to the Court's attention additional references to the record supporting the jury verdict in this case.

A.   **There Was Sufficient Evidence For The Jury To Find An Enterprise Which Was Separate And Apart From The Underlying Racketeering Activities**.

The Defendants contend that there was "no evidence" that a RICO enterprise existed which "was separate and distinct from the racketeering activity." The Defendants are wrong.

There was an abundance of evidence introduced at trial to support the jury finding that the enterprise devoted to the "common purpose" of "defraud[ing] the plaintiffs" was "separate and apart from the pattern of activity in which it engages." (6/8/05 Tr. p. 103)

As admitted by counsel for T&P, "once the clamps were brought down on Charlie Flanagan in the insurance business, he shifted his criminal enterprise to the real estate game." (6/8/05 Tr. p. 91) In the early 1990s, however, Flanagan was in deep financial trouble in his real estate ventures. (5/24/05 Tr. p. 24) Indeed, by March of 1998, Cadle was vigorously pursuing Flanagan's assets. (6/2/05 Tr. pp. 140-41)

During 1998, Flanagan was considering various plans or various strategies on how to protect his assets. (6/2/05 Tr. p. 141) At the T&P board meetings, there were strategies

discussed among Flanagan, Prymas and Bainer about how they could work together to avoid Cadle's collection efforts. (6/2/05 Tr. pp. 144, 206-07 & 208-10)

As admitted by counsel for Fasano, "clearly there was a scheme going on" (5/23/05 Tr. p. 27), and "Flanagan was involved in some sort of shell game . . .." (Id. p. 21) Counsel for Fasano also admitted that Flanagan was "the ring leader and the master of this scheme . . .." (Id. p. 26) Further, prior to the filing of this suit in April of 2001, Bainer had a concern that there was a conspiracy afoot to defraud Flanagan's creditors by improperly hiding assets and otherwise moving Flanagan's T&P stock around. (5/23/05 Tr. pp. 131-32)

As far as the settlement proceeds scheme, prior to the service of the writ of execution on January 5, 1998, Prymas told Bainer that the "strategy" among Flanagan, Prymas and T&P was to characterize the settlement agreement payments as 1099 income so the proceeds wouldn't be subject to Flanagan's wage garnishments, and, therefore, Flanagan wouldn't have to pay a percentage to the garnishing creditor. (5/24/05 Tr. p. 42) After service of the writ of execution, Prymas acknowledged

that "T&P does have an obligation to [Flanagan]".  (Px 69)
Flanagan then suggested that he, Prymas, Bainer and Fasano meet
the next day "to address this problem."  (Id.)  Prymas admitted
that he was "willing to work with Charlie to help make things
work out in his favor . . .."  (Id.)

The "plan" that was worked out was that the settlement
agreement payments by T&P to Flanagan would be recharacterized
from 1099 miscellaneous income to wages in order to "skirt the
writ".  (5/31/05 Tr. pp. 85-87; 124-25; & 186)  Bainer then
apprised Flanagan, Prymas, T&P and Fasano that, if they changed
the characterization of the settlement agreement payments after
this Court's writ of execution was issued, they all faced the
risk of being sued for a civil conspiracy to defraud Flanagan's
creditors.  (5/24/05 Tr. p. 54 & Px 72-R)

The Defendants, however, made the conscious and deliberate
decision to take that risk.  On May 8, 1998 Bainer advised
Flanagan and Prymas that the writ of execution expired on that
date (Px 157), and both Flanagan and Prymas "agreed" that
"going forward" the ¶12 settlement agreement payments owed by
T&P to Flanagan could be recharacterized as wages, and thus no

longer subject to the Court's writ of execution.  (Id. & Px 142)

As far as the shifting stock scheme, on January 6, 1998 Flanagan informed Fasano that Flanagan did not want Fasano to disclose where Flanagan's T&P stock was kept.  (Px 3)  Flanagan then informed Fasano that Fasano should let Flanagan know if he (Flanagan) "should be doing anything different [hiding Flanagan's T&P stock] than what is presently being done." (Id.; 6/3/05 Tr. p. 67)

Flanagan, Fasano, Prymas and Bainer had worked out a "plan A" whereby they would all word together with the "goal" to "weather this storm" on Cadle's attempts to execute on Flanagan's T&P stock.  (Px 122)  In acting in concert to avoid Cadle's attempts to execute on Flanagan's T&P stock, the Defendants and Flanagan agreed to be on the "same page". (Pxs 130 & 135)  Indeed, Prymas and T&P agreed to work with Flanagan to try to resist Cadle's efforts to execute on Flanagan's T&P stock.  (Px 135 p. 2)  Part of the "overall plan" was to place a restrictive legend on Flanagan's T&P stock which would make that stock less attractive to Plaintiffs.  (Px 128)

As noted by Prymas:

> Apparently, a collection attorney Gaide has made some significant [progress] against Charlie (Charlie paid him over $90,000 a few weeks ago to settle a debt and Gaide has close to $1 million more in judgments against), and it appears that desperation is setting in. Gaide has his sights on Charlie's stock and it now looks like he will get it.

(Px 20)  Accordingly, Prymas wanted to set up a meeting to "develop a game plan to deal with this crisis." (Id., emphasis added)

Part of the "game plan" to deal with the "crisis" over Plaintiffs' attempts to execute on Flanagan's T&P stock was to "sue Gaide to get him out of the litigation". (6/2/05 Tr. pp. 151-53 & 156; 6/3/05 Tr. p. 91)  Gaide, as counsel for Plaintiffs, was very aggressive in his collection efforts on Flanagan's assets. (6/3/05 Tr. p. 77)  Gaide was extremely steadfast at trying to collect on behalf of Cadle. (Id. p. 78)

There were a number of T&P board meetings about trying to keep Cadle from T&P's assets. (6/3/05 Tr. p. 74)  Flanagan, Prymas and Bainer discussed in several T&P board meetings the mechanisms of trying to stop Gaide's collection efforts on Flanagan's T&P stock (6/3/05 Tr. p. 193), and the filing of a grievance against Gaide was one of them. (Id.)  Although it

was Bainer's idea about how to get Gaide to back off of his collection efforts by bringing suit against Gaide (6/2/05 Tr. pp. 151-53), Fasano provided advice and counsel in connection with the grievances that were filed by Flanagan against Gaide. (5/25/05 Tr. p. 160)

After Bainer made the suggestion about suing Gaide to get him out of the litigation, there was a grievance filed by Flanagan against Gaide. (6/2/05 Tr. p. 156) The attorney for Flanagan in connection with the grievance against Gaide was Bainer. (Id. p. 157) Although T&P agreed to pay Bainer's legal fees for prosecuting Flanagan's grievance against Gaide (5/31/05 Tr. p. 117 & 6/2/05 Tr. p. 156), Bainer insisted on indemnification by T&P before he would proceed with representation of Flanagan for the grievance against Gaide. (5/31/05 Tr. p. 118 & 6/2/05 Tr. pp. 157-58)

There was no evidentiary hearing as to probable cause to proceed with Flanagan's grievance against Gaide. (5/26/05 Tr. p. 102) The Grievance Committee, however, found probable cause to proceed with Flanagan's grievance against Gaide "because of the various lies of the people involved." (5/26/05 Tr. pp. 94-95) When Gaide had the chance for an evidentiary hearing to

put on all of the evidence countering Flanagan's grievance, Gaide was exonerated on all issues. (5/26/05 Tr. pp. 102-03 & 94)

There was ample evidence to support a finding by the jury that the enterprise devoted to the "common purpose" of "defraud[ing] the plaintiffs" was separate and distinct from the mere commission of predicate acts by the various Defendants. (6/8/05 Tr. p. 103) Accordingly, Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

**B.  The Evidence Was Sufficient For The Jury To Find That Fasano Participated In The Operation Or Management Of The Enterprise**

The Defendants also contend that there was insufficient evidence that Fasano participated in the operation or management of the enterprise which was devoted to the "common purpose" of "defraud[ing] the plaintiffs". (6/8/05 Tr. p. 103) The Defendants, once again, are wrong.

As noted by the Court in its preliminary instructions, "as a general proposition, . . . attorneys giving legal advice to their clients . . . cannot constitute a RICO violation; it has to be something more than that on their part." (5/23/05 Tr.

pp. 44-45)  In addition, in the charge the Court instructed the jury that:

> With respect to the attorney defendants in this case, you may not find them liable under §1962(c) of RICO if you find that they did nothing more than furnish legal advice or provide standard legal services to a client or their clients.

(6/8/05 Tr. p. 108)  The evidence fully supported the jury finding that Fasano crossed the line from providing legal advice into participating in the management or operation of Flanagan's enterprise to delay, hinder or defraud Plaintiffs in their efforts to execute on Flanagan's assets.

### (1) <u>Settlement Proceeds Scheme</u>.

As far as the settlement proceeds scheme, the evidence was abundant and overwhelming to support the verdict of the jury that Fasano provided knowing and active participation in the operation and management of the enterprise associated with the settlement proceeds scheme.  Rather than summarize the evidence which supports the jury verdict, a brief review of the following is sufficient to support the verdict of the jury in this case:

> 5/25/05 Tr. p. 148; Px 144; 5/24/05 Tr. p. 54; Px 72-R; Pxs 24, 25, 25-A, 25-B & 69;

5/26/05 Tr. pp. 41-43; 5/31/05 Tr. p. 79;
6/1/05 Tr. p. 22; & 6/3/05 Tr. p. 75.

**(2)   Shifting Stock Scheme.**

As far as the shifting stock scheme, the evidence was abundant and overwhelming to support the verdict of the jury that Fasano provided knowing and active participation in the operation and management of the enterprise associated with the shifting stock scheme.   Rather than summarize the evidence which supports the jury verdict, a brief review of the following is sufficient to support the verdict of the jury in this case:

Px 3; 6/2/05 Tr. pp. 159 & 161; 5/26/05 Tr.
p. 46; 5/23/05 Tr. pp. 138-39; 5/23/05 Tr.
pp. 140-42; 6/2/05 Tr. pp. 226-28; 5/23/05
Tr. pp. 61-62, 66 & 72; 6/1/05 Tr. pp. 45 &
48; Pxs 1 & 2; 6/1/05 Tr. p. 47; 5/25/05
Tr. p. 70; 6/1/05 Tr. pp. 48-49; 5/26/05
Tr. p. 119; 6/3/05 Tr. pp. 50-51, 54-55 &
66; Px 6; 6/1/05 Tr. p. 59; Px 130; 6/3/05
Tr. p. 155; 5/24/05 Tr. p. 150; 6/2/05 Tr.
pp. 215-17; 6/1/05 Tr. pp. 59-61 & 96-97;
Px 160; 6/2/05 Tr. pp. 226 & 228; 6/1/05
Tr. pp. 94-95; 6/1/05 Tr. pp. 42-43; 6/2/05
Tr. pp. 170, 173-75; 193-95 & Px 130 p. 2.

**(3)   Checking Account Scheme.**

As far as the checking account scheme, the evidence was abundant and overwhelming to support the verdict of the jury

that Fasano provided knowing and active participation in the operation and management of the enterprise associated with the checking account scheme. Rather than summarize the evidence which supports the jury verdict, a brief review of the following is sufficient to support the verdict of the jury in this case:

> 6/3/05 Tr. pp. 5, 32, 35-36; 6/2/05 Tr. pp. 195-97 & 200; Pxs 79, 100 & 13; 6/3/05 Tr. pp. 39-41; 6/3/05 Tr. pp. 43, 111-12, 133; 5/26/05 Tr. pp. 45 & 113; 6/3/05 Tr. pp. 43-44; 6/1/05 Tr. pp. 12, 16 & 20; Px 90; 6/1/05 Tr. pp. 85-89 & 218; 6/2/05 Tr. p. 238; Pxs 254-56; 6/1/05 Tr. p. 11; 6/2/05 Tr. pp. 197-200; 6/3/05 Tr. pp. 110 & 131; Px 62 ¶13; & 6/1/05 Tr. pp. 65-66.

**(4)  Bankruptcy Fraud Scheme.**

As far as the bankruptcy fraud scheme, the evidence was abundant and overwhelming to support the verdict of the jury that Fasano provided knowing and active participation in the operation and management of the enterprise associated with the bankruptcy fraud scheme. Rather than summarize the evidence which supports the jury verdict, a brief review of the following is sufficient to support the verdict of the jury in this case:

Px 130 pp. 2-3; 6/1/05 Tr. pp. 80 & 82-83; 5/23/05 Tr. pp. 160-62 & 173; 6/3/05 Tr. pp. 22, 31-32 & 92-93; 6/7/05 Tr. p. 74; & Px 209 (Schedule D - Babacus; Schedule I - not list rental income); Px 210 p. 1 #2 - not list income from rental properties; p. 4 #11 & 12 - not list checking accounts; 6/1/05 Tr. pp. 93-94 & 100; 5/31/05 Tr. pp. 11 & 13-14; & 6/1/05 Tr. pp. 101-02.

The "operation or management" test for conducting the affairs of an enterprise under §1962(c) "does not protect a law firm that is alleged to have helped execute a scheme to hide assets from a judgment creditor . . .." Guiterrez v. Givens, 1 F.Supp.2d 1077, 1086 (S.D. Cal. 1998), citing Handeen v. LeMaire, 112 F.3d 1339, 1349 (8th Cir. 1997). Further, under Second Circuit precedent, the "operation or management" test is a relatively low hurdle for a RICO plaintiff to clear. Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003). As recently noted by the Second Circuit in First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004), "it is no great leap to find that one who assists in the fraud [Fasano] also conducts or participates in the conduct of the affairs of the enterprise." (See Pxs 144, 3 & 72-R) Accordingly, the Defendants' Joint Motion for Judgment as a matter of law should be denied.

**C.    There Was Sufficient Evidence To Support The Jury Finding Of Closed-Ended Continuity**

The Defendants claim that there was no evidence to support the jury finding of interrelated wrongful acts that occurred for a period in excess of two years.  The Defendants are wrong.  This evidence was summarized for the Court at trial (6/6/05 Tr. pp. 23-25 & 74-86), with the finding of the jury on closed-ended continuity supported by the evidence.  (See 5/31/05 Tr. p. 66; Px 227; 5/31/05 Tr. pp. 51-52, 54-56 & 61-62; 6/3/05 Tr. pp. 24 & 31-32)  Accordingly, there was sufficient evidence to support the jury finding of closed-ended continuity, and the Defendants' Motion for Judgment as a Matter of Law should be denied.

**D.    There Was Sufficient Evidence To Support The Jury Finding Of Open-Ended Continuity**

The Defendants contend that there was insufficient evidence to support the jury finding of open-ended continuity.  Once again, the Defendants are wrong.  See Px 142 ("our agreement going forward . . ."); Px 157 (both Flanagan and Prymas agreed that "going forward . . ."); 5/31/05 Tr. pp. 51-52, 54-56, 61-62 & 66; Px 227 (recharacterized settlement

-13-

agreement payments to be continued to at least 6/1/00); Px 20 (the need to develop a "game plan" to deal with the "crisis" pertaining to Plaintiffs' efforts to execute on Flanagan's T&P stock).

Indeed, with Flanagan's continued receipt of the rental property income after the filing of bankruptcy, the failure to disclose his continued receipt of that rental property income after the filing of bankruptcy (6/3/05 Tr. pp. 31-32) indicates that the filing of bankruptcy was not the end of the scheme, but rather simply a further step in the continuation of the plan to hide, transfer and otherwise shield Flanagan's assets from the judgment claims of Plaintiffs. Accordingly, there was sufficient evidence for the jury to find open-ended continuity, and the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

## II. Plaintiffs Are Entitled To Recover Collection Expense Damages

### A. Plaintiffs Have Standing To Recover Their Collection Expense Damages

Claiming that "[t]he jury found that Plaintiffs suffered no lost debt damages", the Defendants argue that Plaintiffs do

not have standing to recover their collection expense damages. The Defendants, again, are wrong.

First, the jury did not find, as represented by the Defendants, that Plaintiffs suffered no lost debt damages. Rather, the jury simply found that Plaintiffs failed to meet their burden of proving their claim for lost debt damages. The failure of a plaintiff to meet its burden of proving a certain proposition does not mean that the jury found the opposite of that proposition. Rather, it simply means that the party with the burden of proof on that issue -- herein, the Plaintiffs -- failed to meet its burden of proving that proposition, nothing more.

And second, even though Plaintiffs failed to meet their burden of proving their lost debt damages, under Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1165-67 (2d Cir. 1993), Plaintiffs are still entitled to recover their collection expense damages. In Stochastic Decisions the Second Circuit affirmed the district court's disallowance of the plaintiff's attempt to recover lost debt damages because those claims were not yet ripe, but found that the plaintiff was entitled to recover collection expense damages based on the

"defendants' illegal actions in impeding [plaintiff's] collection of those judgments." 995 F.2d at 1166. As recognized by the Second Circuit in <u>Stochastic Decisions</u>, "legal fees may constitute RICO damages when they are proximately caused by a RICO violation." <u>Id</u>. at 1167. Thus, despite the fact that the plaintiff in <u>Stochastic Decisions</u> was not entitled to recover lost debt damages, the plaintiff was still entitled to recover under RICO for its collection expense damages. <u>Id</u>.

There is no evidence that Plaintiffs fully recovered on the underlying judgments; no evidence that Plaintiffs fully recovered their $1,500,000 out-of-pocket loss; and no evidence that Plaintiffs recouped the over $500,000 that they expended in their unsuccessful efforts to locate and execute upon Flanagan's transitory assets. Unlike the cases cited by the Defendants, the $500,000 in collection expenses incurred by the Plaintiffs was expended as a direct result of the Defendants' RICO violations, and has not been recouped. These damages, therefore, were properly awarded, and the Jury Verdict should not be disturbed. Accordingly, Plaintiffs have standing to

recover their collection expense damages, and the Defendants' Motion for Judgment as a Matter of Law should be denied.

### B. There Was Sufficient Evidence To Support The Jury Finding Of Proximate Cause

Changing their argument from reliance to proximate cause, the Defendants now contend that there was no evidence to support the jury verdict that Plaintiffs' collection expenses were proximately caused by the Defendants' RICO violations. The Defendants, once again, are wrong.

Because of the Defendants' deliberate efforts to hide, transfer and to otherwise shield Flanagan's assets from the numerous judgment claims that Plaintiffs held against Flanagan, Plaintiffs took additional legal action (5/25/05 Tr. pp. 38, 39, 46, 47, 62, 68-69, 77, 83, 110, 114; 5/26/05 Tr. pp. 99, 104-06 & 115), which resulted in increased legal fees to Plaintiffs (5/25/05 Tr. pp. 126-28), and the loss by Plaintiffs of the opportunity to execute on Flanagan's assets toward satisfaction of Plaintiffs' numerous judgments against Flanagan. (5/25/05 Tr. pp. 117-20, 125-28, 135-36, 138 & 141) Accordingly, there was sufficient evidence to support the jury

finding of proximate cause, and the Defendants' Motion for Judgment as a Matter of Law should be denied.

### C.    The Evidence Is Sufficient To Support The Jury Verdict

Raising a smorgasbord of arguments that sound very much like a belated closing argument, the Defendants argue that the jury should have ruled in their favor.  The Defendants, however, have not offered any justification for the Court to set aside the jury verdict in this case.

The Defendants reliance upon Commercial Union Assurance Co. v. Milken, 17 F.3d 608 (2d Cir. 1994) is misplaced.  In Commercial Union the undisputed summary judgment evidence showed that the plaintiffs were fully repaid in connection with their investments and suffered no out-of-pocket loss.  Here, however, there is no evidence that Plaintiffs fully recovered on all of the underlying judgments; no evidence that Plaintiffs fully recovered their $1,500,000 out-of-pocket loss; and no evidence that Plaintiffs recouped the over $500,000 that they expended in their unsuccessful efforts to locate and execute upon Flanagan's ephemeral assets.

Likewise, First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994) does not help the Defendants escape accountability for their wrongful conduct.  In First Nationwide Bank the plaintiff's claims were not ripe because plaintiff had not yet exercised its contractual right to foreclose on the collateral that was pledged to secure the loans in question. Here Plaintiffs had no such collateral pledged to secure the numerous judgments owed by Flanagan, and Flanagan's assets had already been scattered and dissipated in the Defendants' concerted efforts to delay, hinder and defraud Plaintiffs in their attempts to execute on Flanagan's assets.

Under Stochastic Decisions, Plaintiffs are entitled to recover for the collection expense damages they incurred in their unsuccessful efforts to locate and execute upon Flanagan's transitory assets.  Accordingly, the Defendants' Motion for Judgment as a Matter of Law should be denied.

### III. As Related Parties And Joint Plaintiffs Seeking Damages For The Same Wrongful Conduct, Plaintiffs Need Not Separate Out The Amount Of Damages Suffered Individually By Each Plaintiff

In addition to the arguments and evidence cited at pp. 17-19 of Plaintiffs' Amended Response to Defendants' Joint

Motion for Judgment as a Matter of Law filed herein on November 9, 2005, please see Fasano Ex. 502 p. 6 n. 2, wherein it is stated that Plaintiff D.A.N. Joint Venture and Plaintiff The Cadle Company "have similar economic interests between their respective shareholders and partners." As related parties and joint plaintiffs seeking damages for the same wrongful conduct, Plaintiffs did not have to separate out the amount of damages suffered individually by each Plaintiff.  See Central Vermont Railway Company v. White, 238 U.S. 507, 513-14 (1915); Jefferson & N.W. Ry. Co. v. Woods, 64 S.W. 830, 831 (Tex. Civ. App. 1901).  As such, it was not error for the jury to make one damage award to encompass the claims of both related Plaintiffs.  Id. Moreover, the Defendants waived any complaints by (a) their failure to object to the testimony pertaining to the joint damages sought by the Plaintiffs, and (b) their failure to object to the Court's Charge and Verdict Form, which did not require an apportionment of the individual damages sought by each Plaintiff.  Accordingly, the Defendants' Joint Motion for Judgment as a Matter of Law should be denied.

### Conclusion

-20-

Based on the foregoing, and for the reasons set forth in Plaintiffs' Amended Response to Defendants' Joint Motion for Judgment as a Matter of Law filed herein on November 9, 2005, Plaintiffs respectfully request that the Court deny Defendants' Joint Motion for Judgment as a Matter of Law, and that the Court then enter judgment for Plaintiffs on the Jury Verdict and Supplemental Jury Verdict.

Respectfully submitted,

ARMSTRONG LAW FIRM

DATED: January 24, 2006.          By_____/s/_____
                                     F. Dean Armstrong
                                     Ct. Fed. Bar #CT22417
                                  1324 Dartmouth Road
                                  Flossmoor, IL 60422
                                  (708) 798-1599
                                  Fax (708) 798-1597

                                  Edward C. Taiman, Esq.
                                  SABIA & HARTLEY, LLC
                                  190 Trumbull Street
                                  Suite 202
                                  Hartford, CT 06103-2205
                                  (860) 541-2077

Fax (860) 713-8944

Attorneys for Plaintiffs
The Cadle Company and
D.A.N. Joint Venture,
A Limited Partnership

## Certificate of Service

I certify that a correct copy of the foregoing instrument was faxed and mailed on January 24, 2006 to all defense counsel as shown on the attached Service List.


_____/s/_____
F. Dean Armstrong