UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **THE CADLE COMPANY** and **D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP,** | § § § | No. 3:01CV531(AVC) |
| Plaintiffs, | § | |
| vs. | § | |
| **CHARLES A. FLANAGAN, et al.,** | § | January 24, 2006 |
| Defendants. | § | |

### PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' SUPPLEMENTAL MOTION FOR NEW TRIAL AND/OR REMITTITUR

In Defendants' Joint Reply to Plaintiffs' Memorandum in Opposition to Motion for New Trial and/or Remittitur, the Defendants attempt to "supplement their motion with specific citations to specific portions of the record." (Id. p. 1) Plaintiffs respond to the Defendants' "supplemental motion" as follows[1]:

**I.  The Defendants Have Failed To Show Any Harm Or Prejudice As A Result Of The Court's Instruction To The Jury On Joint Discussions**

On May 23, 2005 the Court instructed the Jury as follows:

---

[1] In addition, to the extent necessary, Plaintiffs hereby seek leave of Court to file this Supplemental Response in order to bring to the Court's attention additional references to the record supporting the jury verdict in this case.

> [D]uring the course of a trial, we want you to discuss this case among yourselves. . . . A couple of very important warning points, however. If you are going to discuss the case, be certain that you're all present.
>
> * * *
>
> Second, if you are going to [discuss this case among yourselves] <u>or even if you don't discuss the case</u>, don't form an opinion until all of the evidence is in. We don't want you to start to deliberate until you've heard all of the evidence and the Court's charge at the end of the case.

(5/23/05 Tr. pp. 47-48)

The Defendants have failed to show any harm or prejudice as a result of the Court's instruction to the jury on joint discussions. As noted by the Court, while the jury was free to engage in a joint discussion about the case, the jury didn't have to. (5/23/05 Tr. p. 48) At the end of the trial, the Defendants failed to poll the jury to see if, indeed, the jury had engaged in any such joint discussions prior to the time the case was submitted to the jury for resolution. There is no evidence that the Defendants were in any way harmed or prejudiced as a result of the Court's instruction to the jury

that they could, but didn't have to, engage in a joint discussion of the case.

> **II. The Defendants Have Failed To Show That There Was Any Misconduct By Plaintiffs' Counsel That Resulted In Any Harm Or Prejudice To The Defendants**
>
> **A. No Unfair Or Prejudicial Vouching**

As far as identifying Paul Gaide and Dan Cadle as friends of Attorney Armstrong, the unobjected to testimony at the time of the trial showed that Mr. Gaide and Mr. Cadle were friends of Mr. Armstrong. (See 5/25/05 Tr. p. 129 & 6/2/05 Tr. pp. 3-4) Indeed, Defendant Fasano's attorney, David Hill, Esq., brought out the relationship between Attorney Armstrong and Mr. Gaide in his own cross examination of Mr. Gaide. (5/25/05 Tr. p. 157) Because the Defendants failed to object to this evidence, any tardy arguments that they now seek to assert have been waived.

Moreover, besides making fair comment on the unobjected to evidence introduced during the trial, where does Attorney Armstrong allegedly engage in improper argument vouching for the credibility of Mr. Gaide or Mr. Cadle? The Defendants cite the Court to the Attorney Armstrong's rebuttal closing argument

(6/8/05 Tr. p. 71) as their proof that Attorney Armstrong engaged in improper vouching for the credibility of Mr. Gaide and Mr. Cadle. But Attorney Armstrong's comment was in rebuttal to the arguments that had been made by the Defendants' attorneys during their closing arguments. Indeed, the attorneys for the Defendants used the evidence of the friendship between Attorney Armstrong and Messrs. Gaide and Cadle as jury argument <u>against</u> the Plaintiffs. (6/8/05 Tr. pp. 31-32, 53 & 56)

Accordingly, the Defendants waived any objection to the evidence as to the friendship between Attorney Armstrong and Messrs. Gaide and Cadle by failing to raise any objection at the time the facts relating to that relationship came into evidence. Moreover, the Defendants waived any objection by using the unobjected to friendship evidence as part of their own closing arguments against Plaintiffs' claims.

### B. No Unfair Or Prejudicial Questions Or Comments

At the request of the Defendants, the Court reminded the jury that questions and arguments by the attorneys are not evidence. (5/25/05 Tr. pp. 2-3 & 8; 6/9/05 Tr. p. 11) The

Defendants have not shown that any questions or comments by Attorney Armstrong caused any harm or prejudice to the Defendants, or that the jury disregarded the instructions of the Court that questions and arguments by the attorneys were not to be considered as evidence.

Moreover, it was counsel for the Defendants who commented in their closing arguments on Attorney Armstrong's (a) expertise in RICO matters (6/8/05 Tr. pp. 30-31); (b) attempts to get documents into evidence (id. p. 61); (c) speaking objections (id. pp. 61-62); and (d) other alleged improper conduct. (Id.) The Defendants waived any objections to the conduct of Attorney Armstrong at trial by reminding the jury of that allegedly improper conduct and using that conduct as the basis for their own closing arguments against Plaintiffs' claims.

### C. No Unfair Or Prejudicial Reference To A Missing Witness

As far as Attorney Armstrong's reference in closing argument that Flanagan's accountant, Andrew D'Agostino, did not testify at trial, the Court, at the request of the Defendants (6/9/05 Tr. pp. 5-8), gave a curative instruction to the jury.

(Id. p. 11)  The Defendants did not object to the Court's curative instruction, and did not request that the Court provide any additional instruction on that point.  There was no evidence that there was any misconduct by Plaintiffs' counsel that resulted in any harm or prejudice to the Defendants.

    **D.   No Unfair Or Prejudicial Reference To Bainer's Representation Of Crocker House Associates**

As far as the relationship between Bainer and Crocker House Associates, the questioned reference in Attorney Armstrong's closing argument (6/8/05 Tr. pp. 78-79) was not objected to, and was fair comment based on the evidence.  (See 5/23/05 Tr. pp. 128-29; 6/2/05 Tr. p. 229; 6/3/05 Tr. pp. 7-9 & 47; Px 75; Px 77 ¶3; 6/8/05 Tr. p. 75)  According to counsel for T&P, Bainer, as corporate counsel for T&P, was aware of the "misfeasance"[2] by Flanagan going back to 1994.  (6/8/05 Tr. p. 90)

For reasons that are not apparent from the record, the Defendants chose not to put on any additional evidence in an effort to distance Bainer from Flanagan's operations of Crocker

---

[2]   According to Black's Law Dictionary (7th Ed. 1999), misfeasance is "[a] lawful act performed in a wrongful manner."

House Associates.  Indeed, there was no evidence that Bainer was not involved in Flanagan's operations of Crocker House Associates.  Accordingly, there was no unfair or prejudicial reference to Bainer's representation of Crocker House Associates.

  **D. No Unfair Or Prejudicial Reference To T&P As A Multimillion Dollar Corporation**

And as far as the reference in Attorney Armstrong's closing argument to T&P being a "multimillion dollar corporation" (6/8/05 Tr. p. 85), that reference was fair comment based on the evidence.  (See 5/25/05 Tr. pp. 138 & 141; 5/31/05 Tr. p. 70; 6/2/05 Tr. p. 71; and Px 209 (Schedule B; Schedule C; and Schedule D))  Moreover, the Defendants failed to raise a timely objection to this reference, and thus any tardy objection that they attempt to assert at this time has been waived.  Accordingly, there was no unfair or prejudicial reference to T&P as a multimillion dollar corporation.

  **III. The Evidence, Along With The Reasonable Inferences Therefrom, Was Sufficient To Support The $500,000 Jury Verdict For Collection Expense Damages**

The Defendants claim that "Mr. Cadle was very specific about what [Plaintiffs' claim for collection expense damages] didn't include", but, supposedly, "he never specified what it included." The Defendants are wrong.

In addition to Cadle I, there were numerous other court actions -- both in Connecticut and out-of-state -- whereby Plaintiffs were frustrated in their efforts to execute on Flanagan's ephemeral assets. (See 5/25/05 Tr. pp. 13-18 & 99; 5/26/05 Tr. pp. 32-33; 6/6/05 Tr. p. 6; Pxs 20 & 130; Fasano Ex. 502 pp. 4-5) Flanagan, however, had been obstructionistic from the get-go in terms of providing information or documentation pertaining to his assets and ability to pay not only the federal court judgment in Cadle I, but the other judgments as well. (5/26/05 Tr. p. 99)

At the trial, the Plaintiffs' representative, Dan Cadle, testified that Plaintiffs' damage calculations for collection expense damages included "the amount in attorney's fees and costs that we expended chasing all these assets that kept disappearing on us." (6/2/05 Tr. pp. 17-18) In addition, Mr. Cadle testified as follows:

-8-

Q:   And second category, collection expense damages, what are those?

A:   That is checks that I have to write to attorneys and sheriffs and court costs in order to try to get the assets.

* * *

Q:   Mr. Cadle, have you included in your collection expense damages the attorney's fees for prosecuting this suit or is that a separate category?

A:   That is a separate category.

Q:   So the figure you're about to give to folks on the jury doesn't include the attorney's fees for prosecuting this?

A:   That is correct.

* * *

Q:   Was there any interest on this collection expense damages, sir?

A:   No.

Q:   Okay. Now, what are the collection expense damages, sir?

A:   We spent $494,000 on chasing the assets.

* * *

Q:   Was there any amount above that?

A:   Yes.

> Q: Can you explain to the jury why you deducted --
>
> * * *
>
> A: We didn't include some of our attorney fees that we normally would spend to collect on a judgment. You know if you are going to sue someone you're going to pay an attorney fee. That's not part of this 494,000.
>
> On the Gaide grievance we spent tens of thousands.
>
> * * *
>
> Q: Did you spend the money but not include it in the calculation?
>
> A: Yes, I did.
>
> Q: What other major category would that be?
>
> A: On the Paul Gaide grievance, I paid those attorney fees to defend his grievance, I did not include those in this calculation. There was a contempt order. I did not include those attorney fees in this matter either, in addition to the normal collection expense.
>
> * * *
>
> Q: The collection expense damages, that was rounding up or rounding down?
>
> * * *
>
> A: Rounding down.

(6/2/05 Tr. pp. 18 & 22-26)

-10-

When Attorney Armstrong attempted to ask Mr. Cadle about other categories of costs and expenses that weren't included in his calculation of collection expense damages, the Court instructed Attorney Armstrong to "Move on.  I think we've got the basis of what his claim is."  (6/2/05 Tr. pp. 25-26)

As far as additional categories of expenses which were included in Mr. Cadle's calculation of collection expense damages, the Court instructed counsel for the Defendants as follows: "You people [counsel for the Defendants] are going to ask him [Mr. Cadle] about this once he testifies."  (6/2/05 Tr. p. 23)  The Defendants, however, failed to follow the Court's direction and, for reasons not apparent from the record, chose not to cross examine Mr. Cadle about any additional components within his calculation of collection expense damages.  Indeed, there was no evidence that there were any impermissible elements within Mr. Cadle's calculation of collection expense damages.

Plaintiffs expended in excess of $500,000 in their futile efforts to chase down and execute upon Flanagan's scattered assets.  (6/2/05 Tr. pp. 18 & 22-26; 5/25/05 Tr. pp. 127-28)  Moreover, the "rounding down" of approximately $494,000 in

collection expense damages did not include any interest. (Id.) Drawing all reasonable inferences in Plaintiffs' favor, and according due deference to the reasonable inferences of the jury, there was sufficient evidence to support the jury's award of $500,000 in collection in collection expense damages.

Contrary to the representations of the Defendants, there was no evidence that Plaintiffs' collection expense damages included any attorneys' fees incurred in obtaining the underlying judgments. Further, there was no evidence that Plaintiffs' collection expense damages included any unrecoverable bankruptcy attorneys' fees or any unrecoverable attorneys' fees incurred in connection with Cadle I. See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F.Supp.2d 369, 379-80 & 382-83 (S.D.N.Y. 2002), aff'd on other grounds, 385 F.3d 159, 169-70 (2d Cir. 2004). As long ago noted by the Supreme Court:

> Courts are not inclined to grant a new trial merely on account of ambiguity in the charge of the court to the jury, where it appears that [defendants] made no effort at the trial to have the point explained.

Tweed's Case, 83 U.S. 504, 516 (1872).

The evidence, along with the reasonable inferences therefrom, was sufficient to support the $500,000 jury verdict for collection expense damages. Further, the Defendants did not object to, and thereby waived any objections to, the generality or lack of specificity of Plaintiffs' evidence pertaining to collection expense damages, the Court's Charge, or the Verdict Form. Accordingly, the Defendants' Motion for New Trial and/or Remittitur should be denied.

                                    Respectfully submitted,

                                    ARMSTRONG LAW FIRM

DATED: January 24, 2006.        By_____
                                        F. Dean Armstrong
                                        Ct. Fed. Bar #CT22417
                                    1324 Dartmouth Road
                                    Flossmoor, IL 60422
                                    (708) 798-1599
                                    Fax (708) 798-1597


                                    Edward C. Taiman, Esq.
                                    SABIA & HARTLEY, LLC
                                    190 Trumbull Street
                                    Suite 202
                                    Hartford, CT 06103-2205
                                    (860) 541-2077
                                    Fax (860) 713-8944

                                    Attorneys for Plaintiffs

                                      The Cadle Company and
                                      D.A.N. Joint Venture,
                                      A Limited Partnership

### Certificate of Service

     I certify that a correct copy of the foregoing instrument was faxed and mailed on January 24, 2006 to all defense counsel as shown on the attached Service List.

                                      _____
                                      F. Dean Armstrong