credibility of witnesses or otherwise consider the weight of the evidence. Thus, judgment as a matter of law should be granted only if: (1) there is such complete absence of evidence supporting the verdict that the jury's findings could only have been the result of a sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000).

### DISCUSSION

1. RICO Standing

The defendants first argue that they are entitled to judgment as a matter of law because, at the time of trial, Flanagan's bankruptcy proceeding was still pending and therefore, the RICO claims were not yet ripe. In response, the plaintiffs maintain that to the contrary, their claims for RICO collection expense damages were ripe regardless of the status of the bankruptcy proceeding. The court agrees with the plaintiffs.

The law is clear that where a judgment creditor pursues a debtor in bankruptcy court for fraudulently conveying assets during that proceeding, RICO damages may be unrecoverable as speculative in the district court until the bankruptcy proceeding has terminated. Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir. 1988). The law is equally clear, however, that a claim for legal fees incurred as a proximate cause of a RICO violation constitutes a claim for RICO damages that does not fail

14

for indefiniteness. Stochastic Decisions, Inc. v DiDomenico, 995 F.2d 1158, 1166-67 (2d Cir. 1993) (incurring legal fees was RICO injury where predicate acts included illegal actions impeding the plaintiff's collection efforts on outstanding judgment). Consequently, although Flanagan's bankruptcy case may still have been pending at the time of trial in this matter, the plaintiffs were nevertheless entitled to pursue RICO claims for damages incurred in collecting outstanding debts where the defendants had frustrated collection through fraud.

2. Sufficiency of the Evidence - $500,000 Damages

The defendants next argue that the jury's award of $500,000 in RICO collection expense damages was not supported by the evidence because the sum included collection costs that are not recoverable under Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1166-67 (2d Cir. 1993), that is, attorneys' fees in obtaining judgments, bankruptcy attorneys' fees, and attorneys fees incurred in pressing the first Cadle v. Flanagan case, i.e., Cadle I. In response, the plaintiffs maintain that the defendants are simply wrong. The court agrees with the plaintiffs.

As set forth in Stochastic Decisions, Inc., attorneys' fees incurred by a judgment creditor in collecting a debt are not recoverable as RICO damages. Id. at 1166. Where, however, the debtor engages in illegality in impeding collection, the costs of collection may constitute RICO damages. Id.

The plaintiffs did not precisely identify the measure of

15

costs they incurred in defeating the defendants' fraudulent efforts to frustrate collection. They did, however, offer a reasonable estimate of more than $500,000 in costs and were careful to identify them as separate from generic collection costs. Specifically, the plaintiffs' representative, Dan Cadle, explained that he spent $494,000 chasing assets and that this figure did not include fees for prosecuting the present action or interest. Cadle also noted that it,

> didn't include some of our attorney fees that we normally spend to collect on a judgment. <u>You know if you are going to sue someone you're going to pay an attorney fee. That's not part of this [$]494,000.</u>

(emphasis added). Further, Paul Gaide, one of the attorneys for the plaintiffs, testified that as a result of the defendants' failure to comply with the court's writ of execution, injunction and turnover order, there were increased legal fees of $10,000, bringing the total to $ 504,000. No evidence was offered generally of fees incurred in obtaining judgments, fees incurred in connection with Flanagan's bankruptcy, or fees incurred in connection with <u>Cadle I</u>.

When the court delivered the jury charge, the court specifically instructed the jury that:

> in this RICO case the plaintiffs' damages are limited to one, lost debt damages. . . [a]nd, two, money expended pursuing the fraudulently concealed monies.
> 
> . . . .
> 
> For collection expenses damages, the plaintiffs must show by a preponderance of the evidence the amount of legal fees and

16

> other expenses that they incurred in their
> <u>unsuccessful attempts to collect on Flanagan's
> assets which were proximately caused by the
> defendant(s)' alleged RICO violations</u>.

(emphasis added). Drawing all reasonable inferences in the plaintiffs favor, the jury could have reasonably found that the plaintiffs suffered $500,000 in collection expense damages- damages incurred in pursuing fraudulently concealed debts and excluding "normal" collection expenses.

3. <u>Sufficiency of the Evidence - Individual Injury</u>

The defendants next argue that they are entitled to judgment as a matter of law because the plaintiffs failed to prove individual injury, that is, the extent to which damages should have been apportioned to each plaintiff. In response, the plaintiffs maintain that no apportionment was required. The court agrees with the plaintiffs.

As a general rule, the failure to apportion damages among several plaintiffs does not constitute the basis for reversal of a judgment unless the defendant can show prejudice caused by the failure. <u>Central Vermont Railway Co. v. White</u>, 238 U.S. 507, 514 (1915). Prejudice in this regard would arise if the failure to apportion would allow either plaintiff to recover more than once. <u>Jefferson & N.M. Ry. Co. v. Woods</u>, 64 S.W. 830, 831 (Tex. Civ. App. 1901).

In this case the plaintiffs offered competent evidence that they suffered damages in the amount of $500,000. The failure to separate out damages is not reversible because satisfaction of

17

this judgment would bar either plaintiff from pursuing a second recovery.[6]

4. RICO Damages

The defendants next argue that because the jury found that the plaintiffs were not entitled to lost debt damages, there can be no RICO damages as a matter of law. The plaintiffs respond that regardless of their failure to prove lost debt damages, their collection expenses constitute RICO damages as a matter of law. The court agrees with the plaintiffs.

"Legal fees may constitute RICO damages when they are proximately caused by a RICO violation." Stochastic Decisions, Inc. v DiDomenico, 995 F.2d 1158, 1166-67 (2d Cir. 1993) (incurring legal fees was RICO injury where predicate acts included preventing plaintiff's collection efforts on outstanding judgment); see also Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1005 (2d Cir. 1988) (plaintiff suffered RICO injury by paying attorneys' fees for defending frivolous lawsuits started by defendant and designed to forestall collection on an outstanding bankruptcy claim).

Because legal fees incurred in fighting a debtor's attempt to frustrate collection can constitute the basis for a RICO injury, and the record reflects that, indeed, the plaintiffs expended

---

[6] Further, because the defendants failed to object to the court's charge and verdict form which did not require a breakdown as to the damages sought by each individual plaintiff, they have waived any claim of error. DeFalco v. Bernas, 244 F.3d 286, 315 n. 19 (2d Cir. 2001).

some $500,000 in fighting the defendant's efforts to frustrate collection through fraud, the defendants are not entitled to judgment as a matter of law.

5. Attorney Liability and Fasano

The Fasano defendants next argue that they are entitled to judgment as a matter of law because holding them liable under RICO § 1962(c) for the acts of a client would have a dangerous ripple effect for the legal profession at large.

Although the court agrees that holding an attorney liable for the wrongful acts of a client would be manifestly unjust and, at the very least, have disastrous effects for the legal profession - this concern was never an issue in this case. The lawyers here were called to answer for their own conduct - conduct that included wrongfully advising a client that he was free to disregard a federal injunction and turnover order, and knowingly filing false documents with the court in an attempt to frustrate collection. In the court's view, this conduct far exceeded the rendering of legal advice and constituted participation in fraudulent conduct in violation of RICO. See Handeen v. LeMaire, 112 F.3d 1339, 1349 (8th Cir. 1997) ("An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments [including RICO].").

6. RICO Enterprise and RICO § 1962(c)

The defendants next argue that the plaintiffs failed to prove

two of the elements necessary to establish a RICO enterprise, that is, (A) that an enterprise existed, and (B), that the enterprise was separate and distinct from the racketeering activity. For the following reasons, the court does not agree.

A. RICO Enterprise

The defendants argue that evidence was insufficient to establish the court's definition of a RICO enterprise because, while "the plaintiffs proved that Leonard Fasano and Charles Flanagan were associated together as attorney and client, [] there [was] no evidence that they functioned as a 'common unit' or that they were 'engaged in a course of conduct to defraud the plaintiffs.'" Specifically, they argue that "the only testimony of this effect was that of Flanagan and Fasano, both of whom denied that Fasano knew of Flanagan's actions, or that Fasano was involved in Flanagan's schemes. . . [and] the jury was not entitled to make a contrary conclusion." The court does not agree.

A trial, the court instructed the jury that a RICO enterprise is defined as "an association of individuals . . . associated together and functioning as a common unit for the common purpose of engaging in a course of conduct to defraud the plaintiffs."

Despite their denials, there was evidence from which the jury could find that Fasano and Flanagan worked together as a common unit for the common purpose of engaging in a course of conduct to defraud the plaintiffs. Specifically, correspondence admitted into evidence disclosed that on January 5, 1998, Flanagan reached

20

out to Fasano for help in hiding from a writ of execution funds that he was receiving pursuant to a settlement agreement with Prymas. Thereafter, Fasano filed documents with the court in which he falsely characterized the proceeds as wages exempt from the execution when in fact the proceeds were 1099 income subject to execution. Further, Flanagan recalled at trial that during a deposition, he testified that Fasano advised him that he need not surrender his stock in T&P, notwithstanding a turn-over order requiring him to do so, and that he consulted with Fasano before he transferred rental property income in violation of an injunction prohibiting such transfers. The facts at trial therefore supported a finding that Fasano and Flanagan worked together as a common unit to defraud the plaintiffs.

B. <u>Enterprise Separate and Distinct from Racketeering Activity</u>

The defendants also argue that the plaintiffs failed to prove a material element of their RICO claim, that is, that the enterprise existed separate and apart from the racketeering activity in which its members engaged. In the defendants' view, the plaintiffs only offered evidence of predicate racketeering acts, acts which are insufficient to prove the existence of an enterprise. The court cannot agree.

In order to prove the existence of a RICO enterprise, a plaintiff must show "an entity separate and apart from the pattern of activity in which it engages." <u>United States v. Riccobene</u>, 709 F.2d 214, 223-24 (3d Cir. 1983). "The function of

21

overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement." Id. The "proof used to establish the 'pattern of racketeering activity' element 'may in particular cases coalesce' with the proof offered to establish the 'enterprise' element of RICO." United States v. Mazzei, 700 F.2d 85, 89 (2d Cir. 1983).

The evidence presented at trial demonstrated not only that the defendants engaged in multiple predicate acts to defraud the plaintiffs of their lawful claims, but that they did so in a coordinated fashion constituting a function above and beyond that necessary to carry out any single one of the racketeering activities proven at trial. Accordingly, the evidence did support a RICO enterprise.

7. Operation and Management - RICO § 1962(c)

The Fasano defendants next argue that they are entitled to judgment as a matter of law with respect to the finding that they violated RICO section 1962(c) because the plaintiffs failed to offer any evidence that Fasano participated in the operation or management of the enterprise. In response, the plaintiffs maintain that the evidence was sufficient for such a finding. The court agrees with the plaintiffs.

RICO section 1962(c) makes it unlawful for any person to "participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs through a pattern of racketeering activity." Id. "One must participate in the operation or management of the

22

enterprise itself in order to be subject to § 1962(c) liability." Reves v. Ernst & Young, 507 U.S. 170, 185 113 S.Ct. 1163 (1993). This test may be satisfied by "knowingly implementing decisions, as well as by making them." United States v. Allen, 155 F.3d 35, 42 (2d Cir. 1998).

With respect to the various schemes at issue during trial, the jury could have found that, on January 5, 1998, Flanagan reached out to Fasano for help in hiding from a writ of execution funds that he was receiving pursuant to a settlement agreement, and that it was Fasano who advised him to characterize the proceeds as wages exempt from execution knowing all the while that the proceeds were 1099 income subject to execution. A jury could have also found that on January 20, 1998, and in furtherance of this scheme, Fasano knowingly filed a false claim exemption form and an objection to property execution on behalf of T&P which falsely represented to the court that "other than wages, there is no property [belonging to Flanagan] held by Thompson & Peck."

With respect to the shifting stock scheme, the jury could have found that Fasano advised Flanagan that he need not surrender his T&P stock even though the court had issued a turn-over order requiring him to do so, and that in furtherance of what had become a plan -- on October 21, 1998, October 22, 1998, and November 12, 1998 -- Fasano knowingly filed false compliance statements with the court in which Fasano represented that Flanagan had complied with the court's turnover order.

23

In the court's view, the filing of false claim exemptions and compliance statements is conduct reaching beyond the furnishing of advice, and constitutes decision making for the enterprise or, at the very least, the knowing implementation of decisions designed to defraud the plaintiffs. Consequently, the evidence at trial did support a finding that Fasano participated in the operation or management of the enterprise in violation of RICO § 1962(c).

8. Racketeering Activity -Predicate Acts

The Fasano defendants next argue that the plaintiffs failed to prove that Fasano knowingly participated in any of the schemes to defraud, that he used the mails or transmission facilities to further those schemes, or that he knowingly concealed assets from the bankruptcy court.

The law governing RICO liability among co-defendants for racketeering activity has been painstakingly set forth in the court's May 2, 2005 summary judgment ruling and the court's charge to the jury. Ignoring that standard, the defendants make the sweeping assertion that the evidence simply did not support a finding that Fasano knowingly participated in the several schemes or predicate acts. The argument is simply without merit.

9. Racketeering Activity and Continuity

The defendants next argue that they are entitled to judgment as a matter of law because, in their view, the plaintiffs failed to prove the RICO requirement that the pattern of racketeering activity have continuity. The court cannot agree.

24

In order to prove a RICO claim, a plaintiff must show, among other things, that the defendants engaged in a pattern of racketeering activity. Cadle v. Flanagan, 271 F. Supp.2d 379, 387 (D. Conn. 2003). "At least two acts of racketeering activity must occur within ten years of each other to constitute a pattern." Id. at 388 (citing 18 U.S.C. § 1961(5)). The Supreme Court has construed the pattern element as additionally requiring a showing that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893 (1989). Acts are related if they "have the same or similar purpose, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240.

"The continuity necessary to prove a pattern can be either 'close-ended continuity' or 'open ended continuity.'" Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). "Close-ended continuity is demonstrated by predicate acts that 'amount to continued criminal activity' by a particular defendant." Id. "To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" Id. "The Second Circuit "has never held a period of less that two years to constitute a 'substantial period of time.'" Id.

The evidence at trial supported a finding of interrelated fraudulent acts occurring over two years and hence, close-ended

25

continuity. Specifically, the jury could have reasonably found that the schemes began in January 1998 with the settlement proceeds scheme, wherein the defendants wrongfully agreed to characterize settlement proceeds as wages in order to defeat the plaintiffs' collection efforts. This mischaracterization continued for over two years, was accompanied by the shifting stock scheme and the checking account scheme, and became a predicate for the bankruptcy fraud scheme when Fasano failed to disclose this income in Flanagan's bankruptcy filing as an asset for purposes of Flanagan's bankruptcy estate. Since Flanagan continued to receive these hidden funds through June of 2000, a jury could have reasonably found a series of related predicates extending over a period of more than two years.[7]

10. Reliance

The Fasano defendants next argue that they are entitled to judgment as a matter of law because, in their view, the plaintiffs failed to prove reliance. The court cannot agree.

"[I]n order to prevail on a civil RICO claim, the plaintiff must show that the defendant's violation was the proximate cause of the plaintiff's injury." Bank of China v. NBM, LLC, 359 F.3d 171, 176 (2d Cir. 2004). "It is well established in this Circuit that where mail [or wire] fraud is the predicate act for a civil RICO claim, the proximate cause element [] requires the plaintiff

---

[7] Because the jury could have reasonably found close ended continuity, the court does not address the issue of whether the evidence also supported a finding of open ended continuity.

26

to show 'reasonable reliance.'" Id. The Second Circuit has "accepted the principle that a RICO claim based on mail [or wire] fraud may be proven where the misrepresentations were relied upon by a third person, rather than the plaintiff." Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 262 (2d Cir. 2004). Consistent with this standard, the court charged the jury that:

> The plaintiffs under RICO must [] prove reliance. That is, reasonable reliance on any of the defendants' alleged fraudulent acts. The plaintiffs need not be the party that relied on the fraudulent acts, however. In this regard if the plaintiffs established that the defendants' misrepresentations to a third-party harmed the plaintiffs, the plaintiffs need only show that the third party reasonably relied on the misrepresentations.

In this case, a jury could have reasonably found that the defendants misrepresented to the plaintiffs and the court: (a) that T&P did not hold any property belonging to Flanagan at the time the plaintiffs served the property execution; (b) that Flanagan did not have possession of his stock in T&P at the time the court issued the turn over order; (c) that Flanagan did not transfer his assets in violation of the court's injunction; and (d) that for purposes of Flanagan's bankruptcy filing, Flanagan did not own real estate or receive rental income or settlement proceeds. Further, the jury could have reasonably found that the plaintiffs relied upon these misrepresentations when, as a result of them, they were forced to pursue costly collection alternatives.

11. Liability under 18 U.S.C. § 1962(d) - RICO Conspiracy

27

The defendants, Bainer, Prymas, and T&P next argue that they are entitled to judgment as a matter of law on the jury finding of RICO conspiracy because, in their view, they cannot be held liable for conspiracy when the jury found that they did not violate a substantive provision of RICO. In response, the plaintiffs maintain that the jury properly found the defendants liable for conspiracy because the law does not require that the defendants themselves violate a substantive provision of RICO, rather all that is required is what the jury found here, that is, that they served as co-conspirators with Fasano – a defendant whom the jury found to have violated one of RICO's substantive provisions, i.e., 18 U.S.C. § 1962(c). The court agrees with the plaintiffs.

Although a RICO conspiracy claim under "[s]ection 1962(d) fails as a matter of law if the substantive claims based on [section 1962 (a) -(c)] are defective" First Capital Asset Mgtm v. Brickellbush, 219 F. Supp.2d 576, 588 (S.D.N.Y. 2002), a plaintiff who claims that one conspirator has violated a substantive provision may "sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962." Beck v. Prupis, 529 U.S. 494, 506-507 (2000); see also Contawe v. Crescent Heights of America, Inc., No. Civ. A.04-2304, 2004 WL 2244538, *1 (E.D.Pa. Oct. 1, 2004) ("A defendant need not himself be charged with a substantive RICO violation to face § 1962(d) liability, as long as the plaintiff has adequately pled substantive claims against the defendant's co-conspirators.")

28

(citing Salinas v. United States, 522 U.S. 52, 65-66 (1997)).

Because the jury found Fasano liable for violating 18 U.S.C. § 1962(c) - a substantive provision of RICO - the jury's finding that Bainer, T&P, and Prymas acted a co-conspirators under 18 U.S.C. § 1962(d) is not erroneous as a matter of law.

12. Other Arguments

The defendants, Bainer, Prymas, and T&P have also argued: (a) that the evidence was insufficient to show that the damages awarded were proximately caused by any crime under RICO; (b) that the defendants are entitled to judgment as a matter of law because the plaintiffs engaged in abuse of process; and (c) the evidence was insufficient to show continuity with respect to the conspiracy allegations.

The court has reviewed these arguments and concludes that they are without merit.

## CONCLUSION

For the foregoing reasons, the joint motion for judgment as a matter of law (document no. 558) is DENIED.

It is so ordered this 31st day of March, 2006 at Hartford, Connecticut.

                                  _____
                                  Alfred V. Covello
                                  United States District Judge