531

2005 JUN -6 P 12: 56

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, ET AL<br>Plaintiffs, | : | CIVIL ACTION NO.<br>3:01CV531(AVC) |
| vs. | : | |
| CHARLES A. FLANAGAN, ET AL<br>Defendants. | : | JUNE 6, 2005 |

**PLAINTIFFS' MOTION TO ADMIT REDACTED
LETTERS FOR PURPOSES OF IMPEACHMENT**

1. On the first day of the trial, the Court ruled that the "lawyer-to-lawyer" letters were not admissible for the purposes for showing mail fraud or wire fraud under RICO. After that ruling, the Defendants have carefully crafted their testimony to that of positions which are at odds with the admissions that were made in their lawyer-to-lawyer letters.

2. On the second day of trail, however, the Court clarified its prior ruling by making it clear that the lawyer-to-lawyer letters – <u>if</u> redacted – might be admissible for the independent purpose of impeachment:

> By the same token, correspondence such as that might be the subject of impeachment of the testimony of the witness, and perhaps what's going to have to happen with respect to these letters is that they're all going to have to be expurgated and perhaps a sentence or two out of them authorized.

(5/24/05 Tr. at p. 62, copy attached as Px A) Indeed, the Defendants did not to preclude Plaintiffs' use of the letters for all purposes – they only claimed that lawyer-to-lawyer letters were not admissible for purpose of proving mail fraud or wire fraud.

Granted to the extent reflected in the trial transcript.

Alfred W. Covello, U.S.D.J.

December 12, 2005.
SO ORDERED.

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW
190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

June 7, 2005 Trial Transcript

36

1             THE COURT:  All right.  That's granted.
2             MR. ARMSTRONG:  Excuse me, your Honor.  Our
3    motion to admit redacted versions is granted?
4             THE COURT:  I'm sorry, the objection is
5    sustained.
6             MR. ARMSTRONG:  Very good, your Honor.
7             THE COURT:  Thanks for correcting me.
8             MR. ARMSTRONG:  That's okay, Judge.
9             Your Honor, was the only one the Court was
10   considering was 195?
11            THE COURT:  Was the 195, and the Court has
12   corrected its position on that.
13            MR. ARMSTRONG:  Could I ask the Court to
14   consider directly PX 72, which is the February 9th, 1998
15   meeting -- February 25.  If I could approach, your Honor,
16   it may make it a bit easier.  May I approach?
17            THE COURT:  Yes.  I don't have 72 in the motion.
18            MR. ARMSTRONG:  The 72 was in the motion.  It
19   was the very first request.  And this one is, and I can
20   show pages from Mr. -- from Mr. Bainer's deposition.
21            All of the defendants, Judge, have denied that
22   at that meeting that they talked about a civil conspiracy.
23   They have denied that they changed the characterization as
24   a result of this Court's writ of execution.  They have
25   said they changed the characterization based on the

```
 1     accountant's opinion letter.  That representation and that
 2     redacted version directly contradicts the defendants',
 3     each and every one's position in this case, Judge.
 4               THE COURT:  This is Attorney Bainer speaking?
 5               MR. ARMSTRONG:  That's Attorney Bainer and
 6     carbon copy to Charlie Flanagan and Stan Prymas.
 7               Attorney Bainer has denied it was changed as a
 8     result of the Court's writ of execution.  That is directly
 9     contradicted by what he put there.  They have denied they
10     met and conferred and talk about a civil conspiracy.  As a
11     matter of fact, Mr. Bainer said absolutely not when I
12     asked him about that.
13               MR. WOLFE:  It's a --
14               THE COURT:  I'm sorry.
15               MR. WOLFE:  May I be heard?
16               THE COURT:  Of course.
17               MR. WOLFE:  I didn't want to jump in while your
18     Honor was reading.
19               So we have this situation of a letter between
20     lawyers fifteen -- two weeks after a meeting that Brother
21     Armstrong wants to have dragged into this where the
22     questions were what happened at the meeting and then we
23     have the comments of one lawyer to another lawyer not to
24     show an inconsistent statement but this letter is to prove
25     his case.
```

38

1         MR. ARMSTRONG: Could I show the Judge the
2 transcript?
3         MR. WOLFE: But the transcript -- the whole
4 argument on the discussion, and I assume that's the
5 transcript of the deposition, sir, as opposed --
6         MR. ARMSTRONG: Transcript of the trial where he
7 said absolutely not, they didn't meet and confer about
8 changing the characterization.
9         MR. WOLFE: That's at the meeting and they never
10 talk about changing the characterization as a basis for
11 the -- because of what Cadle was doing. These are
12 exactly -- this is the document your Honor ruled on.
13         MR. ARMSTRONG: And this is the document that
14 the judge had in contemplation when he said may be
15 admissible for the purpose of impeachment.
16         That's directly contrary to what Bainer said,
17 your Honor.
18         MS. COX: There's also a relevance problem with
19 that letter, your Honor, because as of the date of the
20 letter and the meeting that it allegedly refers to, the
21 writ of execution had already expired. There was no
22 obligation as of February 7th to pay any money in response
23 to that writ of execution.
24         MR. ARMSTRONG: Impeachment is the issue, Judge.
25         MS. COX: It's a moot point.

```
 1              MR. ARMSTRONG:  It's impeachment, it's not a
 2     moot point.  Impeachment, credibility is always an issue.
 3              THE COURT:  Okay.  I'll take the papers on that.
 4              There's no question the sentence about the civil
 5     conspiracy would come out as its prejudicial value --
 6              MR. ARMSTRONG:  The main thing, Judge, is in
 7     reliance.
 8              THE COURT:  -- probative value, but --
 9              MR. ARMSTRONG:  I understand.
10              THE COURT:  I suggest you take a couple minutes
11     to get a sandwich and we'll have the revised charge for
12     you.
13              MR. WOLFE:  Your Honor, may I express a concern
14     on the record?  In reading the Federal Rules of Civil
15     Procedure, Rule 51, it seems to imply, and it doesn't --
16     it states that we, the Court, must give the parties an
17     opportunity to object on the record in and out of the
18     jury's hearing to proposed instructions before the
19     instructions and arguments are delivered, and that is
20     51(b)(2) and that seemed to be contrary to the practice we
21     were talking about.
22              THE COURT:  Okay.
23              MR. WOLFE:  If indeed that's --
24              THE COURT:  If that's what you want to do,
25     that's what we'll do, sir.
```

40

```
 1              MR. ARMSTRONG:  I have a bathroom emergency, I
 2    apologize.
 3              MR. WOLFE:  I want to call that to the Court's
 4    attention because we will need a record.
 5              THE COURT:  If that's what you want done.
 6              MR. WOLFE:  Yes, sir.
 7                   (Recess.)
 8              MR. GALLAGHER:  Your Honor, at some point are we
 9    going to have opportunity to put our motions for directed
10    verdict and the reasons for them on the record?
11              THE COURT:  Absolutely.
12              MR. GALLAGHER:  Is that now or at a later time?
13              THE COURT:  I said yesterday, at a later time.
14    You may file something in writing, you can state it orally
15    in court, whatever your preference is.
16              MR. HILL:  That may be duplicative, but whether
17    or not we're calling it directed verdict or something
18    similar to Rule 50 motion for summary judgment.
19              THE COURT:  Absolutely, sir.
20              MR. WOLFE:  Your Honor, I understand that you
21    have taken that under advisement for all defendants.
22              THE COURT:  Yes.
23              MR. WOLFE:  Just so the record reflects that.
24    Thank you.
25              THE COURT:  All right.  Exhibit 72 as it's been
```

41

```
 1    redacted becomes Plaintiff's Exhibit 72.  The reason for
 2    the redaction is that portion that was redacted is
 3    prejudicial, its impact outweighs its probative value.
 4              The Court has had an opportunity to speak with
 5    the court reporter about the status of the transcripts and
 6    as counsel has articulated that's correct and in fairness
 7    to everybody please don't read from or project any
 8    transcribed testimony in the course of your closing
 9    arguments.
10              Now the person most impacted by the modest
11    changes that have been made to the jury charge is you,
12    Attorney Armstrong, so if you want to take a few minutes
13    to look at it -- not that the changes most seriously
14    implicate you, but you're going to be the first person
15    arguing.
16              MR. ARMSTRONG:  Could I have Exhibit 72, please?
17              MR. WOLFE:  I placed it on the table, your
18    Honor.  I hadn't expected this, number one.  It wasn't
19    mentioned.  And now we have a further redaction.  But,
20    your Honor, I should have an opportunity to take a look at
21    this document.  There are other things in this letter
22    that, totality of the letter was what was being objected
23    to.
24              THE COURT:  I would propose what is being taken
25    as the exhibit is about seven lines, sir.
```

42

1      MR. WOLFE:  Note my objection to the record,
2  your Honor.  I think this is prejudicial.  It's a document
3  that shows up at the last minute that now I have to deal
4  with and I can only deal with it on argument, can't use
5  the rest of the document, I can't have --
6      THE COURT:  If you want, sir, I'm perfectly
7  amenable to admitting the entire letter.
8      MR. WOLFE:  I have to read it, your Honor.
9      THE COURT:  Okay.
10     MR. ARMSTRONG:  Your Honor, would it be fair to
11 say the portions in bold are the changes?
12     THE COURT:  That's correct.
13     MR. ARMSTRONG:  Thank you so much.
14     THE COURT:  The changes that are being made to
15 the charge are those that are in bold.
16     MR. ARMSTRONG:  The bold wouldn't necessarily go
17 to the folks on the jury.
18     Thank you.  You just saved me a bunch of time,
19 your Honor.
20     MR. HILL:  Your Honor, I guess I'm a little
21 confused.  This issue didn't involve me.
22     Now that the Court has respectfully done what I
23 perceive is a 180-degree turn, what's the relevance of
24 this document?  It's purportedly to show -- I'll let
25 counsel -- I don't get the relevance of this document with

43

```
 1    just these seven lines.
 2              THE COURT:  Sir, could I see what you have
 3    there?
 4              MR. HILL:  Sure.
 5              THE COURT:  That's the redacted portion.
 6              MR. ARMSTRONG:  It's impeachment, pure and
 7    simple.
 8              MR. HILL:  Impeachment as to whom?  What are we
 9    trying to impeach with this?
10              THE COURT:  The portions of the transcript that
11    were offered to the Court was Mr. Bainer's denial --
12              MR. HILL:  Mr. Bainer, as far as I know, at no
13    point --
14              THE COURT:  We're waiting for Attorney Armstrong
15    here to decide and we're going on with the closing
16    argument.
17              MR. ARMSTRONG:  Just --
18              THE COURT:  Please take your time.
19              MR. ARMSTRONG:  I appreciate -- bottom of page
20    eight, while you have had it should be heard.  Bottom of
21    page eight, last line to the right.
22              THE COURT:  Yes, thank you.
23              MR. ARMSTRONG:  Through page nine.  No problems,
24    your Honor.  Except page nine, I understand the Court did
25    consider, I believe, the current Second Circuit ruling on
```