UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE CADLE CO., INC., ET AL. : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 3:01-CV-00531 (AVC) |
| CHARLES A. FLANAGAN, ET AL. : | |
| Defendants. : | MARCH 21, 2007 |

### DEFENDANT JOSEPH CAPORALE'S
### MOTION TO SET ASIDE DEFAULT

The relevant procedural history is set out in Joseph Caporale's March 21, 2007 memorandum objecting to and opposing the plaintiffs' motion for entry of a default judgment, and will not be repeated at any length here. This motion addresses the factors bearing on whether the Court should reopen the default entered against Mr. Caporale on December 19, 2002 and permit him to present a defense on the merits of the plaintiffs' claims.

As is apparent from the plaintiffs' December 10, 2002 motion for default, it was served on Mr. Caporale's attorney,

Robert Skelton.[1]  Apparently unknown to the plaintiffs, and certainly unknown to Mr. Caporale, Attorney Skelton had died more than four months earlier, on August 3, 2002.  By the time the plaintiffs moved for an extension of time within which to seek a default judgment against Mr. Caporale and the other non-answering defendants on January 13, 2003, the plaintiffs had become aware of Attorney Skelton's death.[2]  The certification of service nevertheless shows the motion being served on Attorney Skelton, although it also claims to have been mailed to the non-appearing defendants as well.  Mr. Caporale has no recollection of having received the motion and believes he did not.[3]  Indeed he had no communication regarding this action subsequent to September 7, 2001, when Attorney Skelton told him that the action soon would be dismissed as to him,[4] until February, 2007, when he received the plaintiffs' Second Amended Motion for Final Judgment, and this Court's Order to Show Cause concerning it.[5]  Despite their awareness that Attorney Skelton was deceased, the

---

[1] See, Docket Entry No. 109.
[2] Docket Entry No. 114, p. 2, n. 1.
[3] Affidavit of Joseph Caporale, ("Caporale Affidavit"), ¶ 18.
[4] Caporale Affidavit, ¶ 9.
[5] Caporale Affidavit, ¶ 14.

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW
52 TRUMBULL STREET  P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

plaintiffs continued to certify pleadings to him for at least another fourteen months.[6]

In May or June, 2005, Mr. Caporale was subpoenaed to, and testified at, the trial of this action. In the course of that appearance, no one said or did anything which alerted him that he was still considered a party, rather than merely a witness.[7] Indeed, the fact that Mr. Caporale appeared at trial as a subpoenaed witness, and the person whom he believed was his lawyer with respect to this matter, Attorney Skelton, was not there, further supported Mr. Caporale's belief that, just as Attorney Skelton had assured him in 2001, he had been dismissed from the action.

F.R.Civ.P. Rule 55(c) permits the Court to set aside an entry of default "for good cause shown." A motion seeking such relief is addressed to the Court's discretion, but the range of that discretion is narrowed because of the "strong policies favoring the resolution of genuine disputes on the merits." Traguth v. Zuck, 710 F.2d 90, 94 (1983). It is long settled in this Circuit that in deciding whether to grant or deny a motion

---

[6] See, e.g., Docket Entry No. 171 and entries preceding it.
[7] Caporale Affidavit, ¶¶ 11-14.

- 3 -

to set aside a default, the Court must focus on three principal factors: whether the default was willful; whether the movant demonstrates the existence of a meritorious defense; and whether, and to what extent, setting aside the default will prejudice the non-defaulting party. Traguth v. Zuck, supra; SEC v. McNulty, 137 F.3d 732, 738 (2nd Cir., 1998); Powerserve International, Inc. v. Lavi, 239 F.3d 508, 514 (2001); State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2nd Cir., 2004); State of New York v. Green, 420 F.3d 99, 108 (2005). In the present case, each of these factors weighs in favor of setting aside the default entered against Mr. Caporale.

**WILLFULNESS**: Mr. Caporale's affidavit clearly demonstrates that the default in this case did not occur because of his willful conduct. In the present context, "willfulness" requires "something more than mere negligence," such as "egregious or deliberate conduct." State of New York v. Green, supra, 420 F.3d, at 108; Am. Alliance Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 60-61 (2nd Cir., 1996). Mr. Caporale's conduct was not only not egregious or deliberate, it was not even negligent. Mr. Caporale retained an attorney who, after examining the complaint

- 4 -

and discussing it with Mr. Caporale, informed him that the case would be dismissed or disposed of as to him, and that there was nothing he needed to do or worry about.  Mr. Caporale, having no legal background or training, had every reason to credit his attorney's representation, and to believe that his role as a defendant in the case would be concluded shortly thereafter.

Nearly five and a half years passed between Attorney Skelton's statements to Mr. Caporale and the next communication which informed him he was still a party, an interval that only solidified Mr. Caporale's belief that, as Attorney Skelton had assured him, he would be dismissed as a party.  Significantly, that interval included Mr. Caporale's appearance as a trial witness with nothing said by any party or by the Court which alerted him either to the fact that his lawyer had died nearly three years earlier or that he remained a defendant.

**MERITORIOUS DEFENSES:**  There is no dispute that, acceding to the request of a relative, Charles Flanagan, Mr. Caporale permitted Mr. Flanagan to convey title in certain properties to Mr. Caporale.  Mr. Caporale had no knowledge of these properties, and never saw or possessed deeds to them; he had no knowledge of Mr. Flanagan's business affairs; he did not

- 5 -

establish or participate in the establishment of a post office box with Mr. Flanagan; he had no knowledge concerning Mr. Flanagan's debts or creditors in general, and no knowledge of the plaintiffs or of their claims against Mr. Flanagan; he had no part in receiving or negotiating any rent checks associated with Mr. Flanagan's properties, and was in fact entirely unaware that there were any rent checks; he did not knowingly or deliberately join any conspiracy, as alleged by the plaintiffs; he did not make or knowingly participate in any transfers which he knew or believed to be fraudulent, as alleged by the plaintiffs; and he did nothing unlawful.  The RICO predicate act alleged in connection with what the plaintiffs' characterize as "the Caporale property transfer scheme" consists of alleged mail fraud in "the mailing of the monthly rent checks from Flanagan's tenants to the P.O. box in Hamden," but Mr. Caporale had no role whatsoever in either mailing any such checks, or in receiving, handling or negotiating them.  What the evidence would show at trial is that Mr. Caporale, while certainly too trusting, was a dupe in Mr. Flanagan's scheme to avoid paying his debts to the plaintiffs, and not a co-conspirator.  While the plaintiffs allege that all of the defendants, including Mr. Caporale, "made

- 6 -

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET  P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

or knowingly participated in the fraudulent transfers...with actual intent to hinder, delay or defraud Plaintiffs," and were all part of a conspiracy with that purpose,[8] their Complaint offers no facts which would support that conclusion as to Mr. Caporale, and the allegation is, in fact, untrue. Mr. Caporale knew nothing about Mr. Flanagan's business affairs generally, and knew nothing whatsoever about the plaintiffs.

To qualify as a RICO conspirator, a defendant must "adopt the goal of furthering or facilitating the criminal endeavor," which requires that the "the defendant knew about and agreed to facilitate the scheme." <u>Baisch v. Gallina</u>, 346 F.3d 366, 377 (2nd Cir., 2003). It must be shown that "the defendant embraced the objective of the conspiracy, and agreed to commit two predicate acts in furtherance thereof." <u>Madanes v. Madanes</u>, 981 F.Supp. 241, 258 (S.D.N.Y., 1997). What the evidence would show is that Mr. Caporale had no idea that the plaintiffs even existed, much less that Mr. Flanagan's request that Mr. Caporale allow title to the properties to pass into his name had anything to do with a scheme to delay, hinder or defraud the plaintiffs.

---

[8] <u>Complaint</u>, ¶ 71.

- 7 -

LYNCH, TRAUB, KEEFE AND ERRANTE, P.C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

Mr. Caporale could hardly have "embraced the objective of the conspiracy" when the objective was entirely unknown to him.

**PREJUDICE TO THE PLAINTIFFS**: Setting aside the default against Mr. Caporale and permitting him to offer a defense on the merits would clearly impose delay on the plaintiffs. However, it is settled that in the present context "delay alone is not a sufficient basis for establishing prejudice." Davis v. Musler, 713 F.2d 907, 916 (2nd Cir., 1983); State of New York v. Green, supra, 420 F.3d, at 110. Arguably, the plaintiffs could claim prejudice through being compelled to attempt to prove their case against Mr. Caporale now, when it would have been more economical to do so in the trial which occurred in 2005. This claim would fail, however, for several reasons.

First, any prejudice that the plaintiffs might now claim on that basis arises largely from the plaintiffs' own willful conduct. The plaintiffs chose to move for a default against Mr. Caporale in December, 2002, and to subsequently seek an extension of time within which to move for a default judgment. Had the plaintiffs complied with this Court's order and filed their motion for a default judgment on or before March 18, 2003, more than two years before the trial occurred, it is highly

likely that Mr. Caporale would have learned prior to trial that he was a defendant, and he could then have moved to set aside the default or sought relief from the judgment, and participated in the trial.

Second, in the plaintiffs' forty-page complaint, the entire body of factual allegations concerning Mr. Caporale consists of six paragraphs,[9] and some of the factual claims contained in those paragraphs will not be disputed, e.g., that Mr. Caporale permitted Mr. Flanagan to convey certain properties into his name.  It would hardly be necessary for the plaintiffs to present evidence concerning the broad sweep of their claims as to Mr. Flanagan or the other defendants.  Instead, plaintiffs would simply have to offer evidence supporting their allegations that Mr. Caporale was a witting co-conspirator, as opposed to a trusting dupe, and thus that he knowingly made or participated in transfers which he knew or believed were fraudulent as to the plaintiffs.  Indeed, since there is good reason to believe that the plaintiffs are entirely without evidence which would support their claim that Mr. Caporale was a witting co-conspirator, it

---

[9] See, Complaint, ¶¶ 62-67.

- 9 -

is entirely possible that their claims against him could be resolved on summary judgment, obviating any trial.  Even if a trial is required, the prejudice arising from requiring the plaintiffs to prove their own narrow allegations concerning Mr. Caporale is slight to non-existent, and is certainly <u>de minimus</u> as compared to the injustice of subjecting Mr. Caporale to a crippling judgment with no opportunity to test the plaintiffs' evidence and submit his defenses to a jury.

    Because Mr. Caporale's affidavit establishes that his default was not willful and that he possesses meritorious defenses, because the plaintiffs would suffer little or no cognizable prejudice from setting aside the default, and because of the strong policies favoring a resolution of genuine disputes on their merits, Joseph Caporale's motion to set aside the default entered against him should be granted.

                                    RESPECTFULLY SUBMITTED,

                                    THE DEFENDANT, JOSEPH CAPORALE

                                    BY: _____
                                        ERIC P. SMITH, ESQ.
                                        FEDERAL BAR NO. ct16141
                                        e-mail: ESmith@ltke.com

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

## CERTIFICATION OF SERVICE

    I hereby certify that on March 21, 2007, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

BY: _____
ERIC P. SMITH, ESQ.
FEDERAL BAR NO. ct16141
e-mail: ESmith@ltke.com

- 11 -